In The

# United States Court of Appeals
### For The Fourth Circuit

## JEFFERY V. HOWES; TONYA H. HOWES,

*Plaintiffs – Appellants*,

**v.**

## WELLS FARGO BANK, N.A.; US BANK NATIONAL ASSOCIATION; CARRINGTON MORTGAGE SERVICES, LLC; CHRISTIANA TRUST, a Division of Wilmington Savings Fund Society, FSB,

*Defendants – Appellees*,

**and**

## SELENE FINANCE, L.P.,

*Defendant*,

## ELLEN W. COSBY,

*Trustee*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

_____

**BRIEF OF APPELLANTS**

_____

Gregory Bryl, Esq.
BRYL LAW OFFICES
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 360-4950

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2332    Caption: Jeffrey v. Howes, et al. vs. Wells Fargo Bank, NA et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

JEFFERY V. HOWES; TONY A H. HOWES
(name of party/amicus)

who is _____ appellants _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
    If yes, identify any trustee and the members of any creditors' committee:

    Ellen W. Cosby
    Chapter 13 Trustee
    300 E Joppa Road, #409
    Baltimore, MD 21286

Signature: _____        Date: _____11/12/15_____

Counsel for: Appellants_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____11/12/15_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Michael T. Cantrell, Esquire
Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

Counsel for Carrington Mortgage Services, LLC and
Wilmington Savings Fund Society, FSB.

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

Counsel for Wells Fargo Bank, N.A. and U.S. Bank,
NA

_____        _____11/12/15_____
(signature)                                 (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.     The Loan Transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.     Default and Related Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.     Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.    The Lower Courts Failed to Take the Allegations of the
         Complaint as True . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         A.    In Maryland, as in most States, only a holder, a
               transferee, or a nonholder meeting specific criteria can
               enforce a mortgage note . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         B.    While the Note remained enforceable, the purported
               secured creditor did not establish its right to enforce the
               Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

         C.    Count I stated a claim for fraud: intent is inferred and
               reliance is presumed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        1.     The Complaint stated all the elements of fraud . . . . . . 17

    D.    Appellants stated a claim to determine extent and
validity of the lien and a claim of objection to proof of
claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Burson*,
  424 Md. 232, 35 A.3d 452 (2011) . . . . . . . . . . . . . . . . . . . . . . 13, 15, 28, 29

*Bradford v. HSBC Mortg. Corp.*,
  829 F. Supp. 2d 340 (E.D. Va. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chisolm v. TranSouth Financial Corp.*,
  194 F.R.D. 538 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Baltimore v. Landay*,
  267 A.2d 156, 258 Md. 568 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Deutsche Bank v. Brock*,
  430 Md. 714, 63 A.3d 40 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dynacorp Ltd. v. Arametel Ltd.*,
  208 Md. App. 403 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*E.E.O.C. v. Seafarers Int'l Union*,
  394 F.3d 197 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*First Union Nat'l Bank v. Steele Software Sys. Corp.*,
  154 Md. App. 94 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fox ex rel. Fox v. Elk Run Coal Co.*,
  739 F.3d 131 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gilbert v. Residential Funding LLC*,
  678 F.3d 271 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hamlin Mach. Co. v. Holtite Mfg. Co.*,
  197 Md. 148, 78 A.2d 450 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Nieves*,
    648 F.3d 232 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ndeumeni v. Kemogne*,
    No. 1992 (Md. App. Dec. 1, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Shepherd v. Burson*,
    427 Md. 541, 50 A.3d 567 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Slorp v. Lerner, Sampson & Rothfuss*,
    587 Fed. Appx. 249 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . 13, 21-23

*Syrcek v. Rosenberg*,
    203 Md. App. 705, 40 A.3d 494 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

11 U.S.C. § 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 157(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 158(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Md. Code, Com. Law § 1-201(b)(21)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Md. Code, Com. Law § 3-203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Md. Code, Com. Law § 3-301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 20

Md. Code, Com. Law § 3-309 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16, 20, 25-26

Md. Code, Com. Law § 3-309(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

**RULE**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**OTHER AUTHORITY**

www.lawyersandsettlements.com/lawsuit/excessive-bank-overdraft-fees.html
(last accessed February 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATEMENT OF JURISDICTION

This is an appeal arising out of an adversary proceeding in bankruptcy. The Bankruptcy court had original jurisdiction pursuant to 28 U.S.C. §§ 157(b), 1334. The district court had bankruptcy appellate jurisdiction pursuant to 28 U.S.C. § 158(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(d).

## STATEMENT OF THE ISSUES

1. Did the lower courts err in failing to take the Complaint's allegations as true and rejecting the allegations of fraudulent intent and reliance where the false statements were made in court documents and correcting those statements would have necessitated starting over the legal proceedings, proceeding under a more stringent standard, and incurring additional costs?

2. Did the lower courts err in dismissing Counts 1-3 and 9 grounded in each claimant's failure to establish itself as the person entitled to enforce the debt instrument when the courts conceded that proof of entitlement to enforce was still required and wanting?

3. Did the lower courts err when ruling on Defendants' motions to dismiss, in finding that the trust purported to have held Plaintiffs' mortgage did not cease to exist before Wells Fargo executed and filed multiple documents on its behalf, including the Second Foreclosure Case, Objection to Plan Confirmation, and the assignment of the Deed of Trust dated October 30, 2013?

5. Did the lower courts err in directing Plaintiffs-Appellants to omit, when amending the Complaint, any reference to fraud or misrepresentation arising from the lack of standing to foreclose or file bankruptcy claims by the entities that, by the courts' own admission, failed to establish their right to enforce the debt instrument?

6. Did the District Court err in misstating Appellants position regarding the effect of trust termination by incorrectly stating that Appellants contended trust termination rendered the debt instrument unenforceable where Appellants instead contended that a terminated trust and its agents, none of whom were in possession of the Note lacked standing to enforce the Note?

7. Did the District Court err in affirming dismissal of Count II (Determination of Scope, Extent, and Validity of Lien) where the Bankruptcy Court never ruled any of the Appellees to be entitled to enforce the Note, and where Count II contained sufficient factual matter to state a claim?

11. Did the District Court err in affirming the Bankruptcy Court's dismissal of Count IX (Claim Objection) where the Bankruptcy Court itself admitted that, as Appellants had argued, none of the Appellees had established standing to enforce the Note based on the record before the Bankruptcy Court.

12. Did the District Court err by considering Judge Gordon's Memorandum Opinion of November 5, 2014, explaining the Bankruptcy Court's orders that are

the subject of this appeal, which opinion was filed after the parties had fully

briefed the district court appeal?

## STATEMENT OF THE CASE

While justice is supposed to be blind and provide equality under some

parties are apparently "more equal" than others in the District of Maryland.  This

case arises out of a purported creditor's failure to abide by the most basic

requirements of law and procedure.  At first blush it may seem like an innocent

oversight.  But upon closer scrutiny, the alleged creditors' behavior, starting with

giving bogus excuses for not modifying a loan and culminating with glaring

failures of proof in filing "*proofs*"of claim and other documents in bankruptcy,

shows that the mortgage industry is broken and fraught with improper incentives.

Such improper incentives lead to loan servicers denying loan modifications even

where it is advantageous to both debtor and investor, and misleading the courts in

an effort to cut costs and recoup improper fees at the expense of both debtors and

investors.

This case raises the issue of whether, in an effort to cut corners and make a

profit, a party that one day serviced the loan can deny modification, commence

foreclosure, file a proof of claim in bankruptcy and object to plan confirmation at

the time that such party's principal (the entity on whose behalf the loan was

serviced) was no longer the noteholder, and no agency relationship was established with the new noteholder.

## STATEMENT OF THE FACTS

Appellants (Plaintiffs below) Jeffrey and Tonya Howes are residents of Maryland and owners (title holders) of the residential property located in Fulton, Maryland ("Property").  Appx. at 222, 328.

### A.     The Loan Transaction

On or about November 30, 2001, The Howes executed a document styled as a deed of trust ("DOT") referencing the Property and purporting to secure a loan ("Loan") evidenced by a promissory note ("Note") also referenced in the same DOT.  Appx. at 388, 384.  The DOT names "Columbia Bank" as the "Lender" thereunder.  *Id.*  The DOT "secures to Lender (I) the repayment of the Loan . . . and (ii) the performance of Borrower's covenants and agreements under [the DOT] and the Note."  *Id.*  The DOT also provides in ¶ 13 that the "covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."  *Id.*  In Section 20, the DOT specifically differentiates between "Lender" and "Servicer" and their respective rights, defining Servicer as an "entity . . . that collects periodic payments due under the Note . . . and performs other loan servicing obligations."  *Id.*  The DOT provides in ¶ 20 that Lender's and Servicer's respective rights are transferred

-4-

separately and independently of each other. Under the terms of the DOT, mortgage servicing obligations do not include exercising Lender's remedies such as loan acceleration because those are reserved to the Lender by providing in ¶ 22 that it is "Lender [that] shall give notice to Borrower prior to acceleration" and that it is "Lender [that] at its option may require immediate payment in full . . ., invoke the power of sale and any other remedies." *Id.*

## B.    Default and Related Events

The Howes made timely payments on the subject loan from 2001 to 2009.[1] Appx. at 22-56, 370-80. Around April-May 2009, in the aftermath of the 2008 financial crisis (which was brought about by the mortgage industry), the Howes fell behind on their payments. Appx. at 27-30. The Howes then contacted then-current servicer Wells Fargo to request a loan workout. *Id.* Wells Fargo screened the Howes for HAMP ("Home Affordable Modification Program") and sent them a stack of documents, telling the Howes to complete the documents if they wanted to be considered for any workout options, including a loan modification. *Id.*

On June 16, 2009, Wells Fargo Home Mortgage ("Wells Fargo") mailed the Howes a letter entitled Notice of Intent to Foreclose ("NIF") and identifying "Wells Fargo Home Mortgage" as the secured party. On July 22, 2009 and

---

[1] The terms of the note were modified in 2003 to reduce principal balance to $650,000.00 for reasons unrelated to the Howes' ability to pay. Appx. at 272, 275.

September 28, 2009, Wells Fargo sent to the Howes two more NIFs, each identifying "Wells Fargo Home Mortgage" as the secured party. *Id.* On December 1, 2009, Wells Fargo sent the Howes another NIF, this time identifying "U.S. Bank National Association as Trustee for WFASC 2003-4" as the secured party. *Id.*

On July 19, 2010, a year after the Howes applied for HAMP after Wells Fargo's screening of them for eligibility, one Susan Gordon of Wells Fargo informed the Howes over the phone that they were not eligible for HAMP because "the investors of [the] loan do not participate in HAMP." *Id.* Later, on October 15, 2010, Wells Fargo sent the Howes a letter identifying the secured party as "a MBS Trust" and informing them that said trust did not participate in HAMP. *Id.* As a result, the Howes spent *more than a year*, over nineteen hundred hours, and engaged in over 100 communications with the servicer, pursuing the "phantom" option of a loan modification through Wells Fargo. *Id.* The Howes believed that they were dealing with their loan and rectifying the matter, while in actuality they were going further and further into debt, accumulating arrears and default fees and falling further and further behind, while simultaneously losing all the other options available to them, such as a sale, a short sale, etc. *Id.*

On April 26 2011, Wells Fargo sent the Howes another NIF, identifying "Wells Fargo Bank, N.A." as the secured party. On May 10, 2011, Wells Fargo

sent the Howes yet another NIF, this time identifying the secured party as "U.S. Bank National Association as Trustee for WFASC 2003-4". *Id.*

In the first three weeks of January 2012, the subject loan was transferred out of the WFASC 2003-4 Trust, and on January 25, 2012, all of the loans were transferred out of the Trust and the Trust was dissolved and ceased to exist. Appx. 22-55, 62-66. On February 21, 2012, the same and now nonexistent Trust initiated a foreclosure proceeding in the Howard County Circuit Court in Maryland. *Id.*

On November 15, 2012, the Howes filed a Chapter 13 bankruptcy in an effort to adjust their debts and find a workable solution for their home mortgage by confronting the risk-bearer of their loan within the bankruptcy court's forum. *Id.* On January 9, 2013, Wells Fargo filed an objection to plan confirmation in the bankruptcy proceedings, identifying itself as the servicer of the subject loan and representing to the court that the 2003-4 Trust (with U.S. Bank as Trustee) was the secured party / noteholder. Appx. at 22-55; 307.

On March 8, 2013, Wells Fargo filed a Proof of Claim within the bankruptcy proceedings, identifying itself is the servicer and the 2003-4 Trust as the noteholder. Appx. at 370. On March 15, 2013, Wells Fargo amended the Proof of Claim and identified itself as the secured party, while attaching a copy of the Note specially endorsed in favor of the 2003-4 Trust. Appx. at 374.

On September 3, 2013, the Howes filed their adversary complaint "to determine secured status, sanctions, and other relief." Appx. at 22-56.

### C. Procedural History

The Chapter 13 Bankruptcy case below was commenced on November 15, 2012. Appx. at 21. Prior to the commencement of the bankruptcy and after failed modification attempts, two irregular foreclosures were filed against the Howes: the first one in 2011, which was dismissed due to robo-signed affidavits and the second one in February 2012, at the time that the foreclosing entity no longer existed. Appx. at 31-35, 66. Per standard Maryland procedure, the second case was referred to mediation. During the mediation, Wells Fargo did an about-face and informed the Howes that they now qualified for a modification. *Id.* Nonetheless, no modification was ultimately worked out, and the Howes had filed for bankruptcy reorganization. *Id.*

The Howes promptly filed a proposed Chapter 13 plan, to which Wells Fargo objected on January 9, 2013. Appx. at 19, 307. Wells Fargo's Objection identified Wells Fargo as the servicer and stated that "US Bank National Association, as Trustee . . . for Wells Fargo Asset Securites [sic] Corporation, Mortgage Pass-Through Certificates, Series 2003-4 is the holder of a note secured by a Deed of Trust/Mortgage on the [Property]." Appx. at 307.

On March 8, 2013, Wells Fargo filed a proof of claim (Claim 4) listing U.S. Bank as Trustee for the 2003-4 Trust as the secured party. Appx. at 370. On March 15, 2013, WF filed an amended proof of claim listing Wells Fargo Bank, N.A. as the secured party. Appx. at 374. On April 2, 2013, the Howes filed an objection to Wells Fargo's proofs of claim. Appx. at 18. On June 17, 2013, the bankruptcy judge held a hearing and overruled the Howes' objection on the basis that, after the objection, the subject Claim 4 had been transferred to another entity, which had not been served with the objection. Appx. at 36-37, 324. During the June 17, 2013 hearing, the court suggested to the Howes' counsel to resolve proof of claim issue through the upcoming adversary complaint after said counsel indicated that such a complaint would be forthcoming. *Id.* That June 17, 2013 denial was entered on the docket on June 24, 2013. Appx. at 12-13.

One September 3, 2013, the Howes filed their Adversary Complaint against the named Defendnats-Appellees, asserting 9 counts. The counts were (1) fraud upon the court; (2) determination of extent and validity of the lien; (3) sanctions for defective proof of claim; (4) unlawful inspection fees; (5) lack of TILA notices; (6) violations of FDCPA; (7) violation of Maryland collection laws; (8) violation of Maryland consumer protection laws; and (9) Objection to Claim under 11 U.S.C. § 502. Appx. at 22-56.

On January 6, 2014, the bankruptcy judge held the first hearing on the Adversary Complaint and continued the matter to March 4, 2014. On March 4, 2014, the judge made an oral ruling from the bench dismissing the Complaint as follows: Count 1 (fraud upon the court) with prejudice anc Counts 2-9 without prejudice. The judge also gave the Howes until May 3, 2014 to file an amended complaint or an objection to claim or both and required the Claim 4 transferee (Christiana Trust) to file and affidavit of debt ownership. Appx. at 418-516.

The affidavit of debt ownership was filed on April 3, 2014. Appx. at 318. On May 5, 2014, the Howes moved for reconsideration of the March 4, 2014 oral ruling. After the March 4, 2014 oral ruling was formalized in an order entered on the docket on May 12, 2014, the Howes filed another motion to reconsider, directed at that formal order. The judge held a hearing on the motions to reconsider on July 16, 2014, and denied the motions, again allowing seven days for the Howes amend their complaint or file an objection to claim or both, even though no new or amended proofs of claim had been filed. *Id.*

On August 5, 2014, the Howes appealed the denial of their motions to reconsider to the U.S. District Court for the District of Maryland. On November 5, 2014, after the district court appeal had been fully briefed, the Bankruptcy Court issued a follow-up memorandum opinion expanding the reasons for its March 4, 2014 ruling. On September 30, 2015, without oral argument, the District Court

(Judge Hollander) issued an order affirming the bankruptcy judge's dismissal of the Howes' complaint. *Id.*; Appx. at 418. The Howes have now appealed the matter to this Court by noticing their appeal on October 27, 2015.

## SUMMARY OF ARGUMENT

Appellants filed an adversary Complaint that facially stated claims for fraud, determination of the extent and validity of the lien, and a valid objection to proof of claim. These claims were supported by the purported creditors' court filings. Instead of taking the Complaint's allegations as true and making all inferences in favor of Appellants, the courts below erected their own straw men and then demolished them, while utterly failing to analyze the Complaint's allegations taken as true, as required by law. The lower courts discussed whether Wells Fargo and U.S. Bank gained any unfair advantage in misrepresenting that they were the "holder," whether the subject Note remained enforceable after the prior noteholder Trust had terminated, whether securitization was bad or affected a borrower's obligation, whether there were any allegations of fraud at origination, etc. None of those strawman issues were relevant and none of them were raised by Appellants. Instead, the lower courts should have focused on the elements of each claim as stated and made all inferences in favor of Appellants.

Appellants stated valid claims that should proceed. Not one party filing proofs of claim and other documents established itself as the "person entitled to

enforce" the Note that was the basis for the secured claim.  There is no authority in Maryland law that allows reputed secured creditors to bypass standard procedural and evidentiary burdens simply because the amount of the claim is substantial, the claim relates to residential property, and an apparent default can be shown.

Appellants challenged the lack of the right to enforce the note in an adversary proceeding and alleged specific misrepresentations and other violations on the part of the purported creditors, relating to the right to enforce.  Even if the challenged defects may ultimately be cured, Appellants are still entitled to relief based on the acts that have already occurred, not on what can speculatively happen in the future.

## ARGUMENT

### I.     Standard of Review

In Bankruptcy appeals, the "legal conclusions of both the district court and the bankruptcy court are reviewed *de novo* and the factual findings of the bankruptcy court are reviewed for clear error." *In re Nieves*, 648 F.3d 232, 237 (4th Cir.  2011).  The dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo. See Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir. 2012); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In its review, the Appellate Court "construes the evidence in the light most favorable to the non-movant," *E.E.O.C. v. Seafarers Int'l Union*,

394 F.3d 197, 200 (4th Cir. 2005), and "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff," *Mylan Labs.*, 7 F.3d at 1134; *see also Gilbert*, 678 F.3d at 274 (same).

## II.    The Lower Courts Failed to Take the Allegations of the Complaint as True.

"If Bank . . . had no right to file the foreclosure action, it makes no difference whether [borrower] previously had defaulted on his mortgage." *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249, 254-56 (6th Cir. 2014). The record shows that the bankruptcy judge made a clearly erroneous finding of fact (that the Howes did not pay their mortgage since 2003, Appx. 261, 340, 402) and then leaped to a preconceived result instead of taking the allegations as true, as the law requires. The district court then affirmed, again failing to take the allegations as true and applying incorrect and irrelevant legal standards.

### A.    In Maryland, as in most States, only a holder, a transferee or a nonholder meeting specific criteria can enforce a mortgage note.

Under Maryland law, the right to enforce a promissory note and other negotiable instruments is governed by Maryland's Commercial Law Article. *See Deutsche Bank v. Brock*, 430 Md. 714, 728; 63 A.3d 40 (2013); *Shepherd v. Burson*, 427 Md. 541, 550, 50 A.3d 567, 573 (2012); *Anderson v. Burson*, 424 Md. 232, 245, 35 A.3d 452, 460 (2011). "Whether a negotiable instrument, such as a deed of trust note, is transferred or negotiated dictates the enforcement rights

of the note transferee." *Anderson*, 424 Md. at 246, 35 A. 3d at 461. Once a note is transferred, "the right to enforce the deed of trust follow[s]." *Syrcek v. Rosenberg*, 203 Md. App. 705, 727, 40 A.3d 494, 507 (2012).

Maryland Code (2013 Repl. Vol., 2014 Supp.), C.L. § 3-301 outlines three categories of persons "entitled to enforce [an] instrument": (I) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309. *See* C.L. § 3-301.

"Holder" is the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" C.L. § 1-201(b)(21)(I). In short, "holder" requires "possession" plus "indorsement." In turn, the "noneholder in possession" status requires establishing that there was a "transfer" of the instrument, i.e., that there have been "delivery" and "purpose." C.L. § 3-203. Lastly, C.L. § 3-309 provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (I) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined . . . .

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 3-308 applies to the

case as if the person seeking enforcement had produced the instrument. . . .

Thus, "the nonholder who lacks possession of the note bears the burden of proving the right to enforce it. C.L. § 3-309(b). And, a lack of competing interests in the instrument does not establish that a person is entitled to enforce it." D.C. Op. at 68; Appx. at 418. Instead, the person seeking to enforce the instrument "must prove the terms of the instrument and the person's right to enforce the instrument." C.L. § 3-309(b).

**B.** **While the Note remained enforceable, the purported secured creditor did not establish its right to enforce the Note.**

Both courts below made much of the fact that Appellants did not allege that, in filing documents containing false statements, "Wells Fargo knowingly acted in contravention of some other entity's right to enforce the Note." DC Op. at 57; Appx. at 475. Or that Appellants were not being asked to answer two masters. DC Op. at 48; Appx. at 466. This is not the law, however, and the identification of "some other entity" is irrelevant. C.L. §§ 3-301, 3-309; *Anderson v. Burson, supra, passim.* Instead, the test is whether Fells Fargo, as the person acting to enforce the note, falls under any of the three categories of persons specified in C.L. § 3-301, i.e., whether Wells Fargo is a holder, a transferee, or a nonholder with rights under § 3-309. The record discloses that not a single purported creditor established itself as fitting into any of the three categories. Morever, the

record shows that none of the claimants possessed the Note because it was lost and that none of them attempted to proceed under C.L. §3-309 at the time of dismissal. Appx. at 272; 374. Therefore, there was nothing in the record to contradict the allegations of the Complaint.

The judges below also noted that the Note remained enforceable notwithstanding the termination of the trust. DC Op. at 49-50; Appx. at 467-68. This is just another strawman erected and demolished by the courts below. The issue is not whether the Note remains enforceable, but whether Wells Fargo is cutting corners and paying fast and loose with the judicial system by concealing that neither it nor its principal U.S. Bank was the holder or could have been the holder of the subject debt at the time of commencing foreclosure and filing papers in bankruptcy, as discussed below.

## C. Count I stated a claim for fraud: intent is inferred and reliance is presumed.

The District Court first analyzed the Howes' fraud claim under the "fraud upon the court" doctrine. DC Op. At 52, 54-56. However, that doctrine is wholly inapposite to the instant case, as that doctrine is a narrow exception to the finality of judgments rule. "Because the power to vacate a judgment for fraud upon the court is so free from procedural limitations, it is limited to fraud that seriously affects the integrity of the normal process of adjudication." *Fox ex rel. Fox v. Elk*

*Run Coal Co.*, 739 F.3d 131 (4th Cir. 2014).  In this case however, the Howes did not seek to set aside any final judgement, so the high bar of the fraud upon the court to set aside a final judgment was inapplicable.

The District Court also summarily dismissed the Howes' fraud claim under the common law fraud analysis.  To achieve the desired result, the court below artificially restricted its analysis to fraudulent concealment and erected other straw men in the form of unraised questions of whether the note remained enforceable after the termination of the trust and whether the Howes signed the original note. DC Op. at 51-52, 61; Appx. at 418-79.  Instead, the District Court should have conducted a proper *de novo* review and looked to whether the Complaint, <u>with all referenced made in favor of the Howes</u>, stated the elements of fraud.  This the district court (along with the bankruptcy judge) failed to do, *id.*, and thus committed reversible error.

### 1.    The Complaint stated all the elements of fraud.

In Maryland, a fraud claim must contain the following elements:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.'

*Ndeumeni v. Kemogne*, No. 1992, at *18 (Md. App. December 1, 2015) (citations omitted). Notably, the "knowledge" requirement is objective and the defendant's subjective intent is irrelevant. *Id.* at *21; *see also First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 94, 159 (2003) ("fraudulent intent can be inferred from circumstantial evidence"); *Dynacorp Ltd. v. Arametel Ltd.*, 208 Md. App. 403, 457 (2012) (a "plaintiff satisfies the elements of false representation and knowledge of falsity where circumstantial evidence establishes that a defendant makes a promise without intending to perform").

Similarly, no specific "reliance" need be alleged where the fraudulent statement is made in a public document, such as a court filing. *See*, *e.g.*, *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 560–61, 560 n. 24 (E.D. Va. 2000) (noting that reliance can be "self-proving" in certain kinds of transactions, sometimes termed "presumed reliance"). This is the "fraud upon the court" aspect of the Howes' claim, the fact that the false statements were made in court documents, to use the machinery of the state to achieve a desired result (Appx. 66, 307, 370, 374). Reliance is presumed and need *not* be alleged or proven in such circumstance. *Id.*[2]

---

[2] Wells Fargo's March 15, 2013 Amended Proof of Claim contains the following materially false statements:

1. "The promissory note is either made payable to Creditor or has

The Complaint alleges that appellees falsely asserted that Wells Fargo was acting as a servicer on behalf of U.S. Bank as Trustee as the noteholder after January 25, 2012 (when the Trust had been dissolved) in state court and then in the bankruptcy proceedings. Appx. at 22-55. Appellees later countered by arguing that either Wells Fargo Bank or U.S. Bank as Trustee was the noteholder, depending on the expediency of the situation. *Id.*; Appx. at 159. All of these statements were false. Appx. at 38-41. The Trust had terminated and could not have been the "holder" at the time of making the statements, just as Wells Fargo could not have been U.S. Bank's servicer. *Id.* Further, since Appellees later admitted that the note has been lost, Appx. at 272, none of the "holder" statements could have been true, including the judicially estoppable change of position that Wells Fargo was the holder instead of U.S. Bank. Appx. at 307, 370, 374. With

---

been duly indorsed." (The Note was neither indorsed to Wells Fargo nor payable to it; the note was indorsed to the 2003-4 Trust, Appx. at 61, but that Trust had ceased to exist by then, as admitted by Wells Fargo, Appx. at 333, lns. 6-7.)

2. "Creditor, directly or through an agent, has possession of the promissory note." (The Note had been lost, as stated in the Lost Note Affidavit, Appx. at 272. A similarly false statement is found in the state foreclosure case, where U.S. Bank as Trustee is claimed to be in possession of the note as the "holder," Appx. at 67-68, and in Wells Fargo's January 6, 2013 objection to plan confirmation, Appx. at 307.)

Wells Fargo being the servicer and charged with knowledge on whose behalf it was servicing the loan, such endless changes of position are the height of "approbating and reprobating".  *See, e.g., City of Baltimore v. Landay*, 267 A.2d 156, 258 Md. 568 (Md. 1970); *Hamlin Mach. Co. v. Holtite Mfg. Co.*, 197 Md. 148, 78 A.2d 450 (Md. 1951).

The false statements were made with knowledge, as the loan servicer is charged with knowledge on whose behalf it services the loan.  *See*, *e.g.*, *Bradford v. HSBC Mortg. Corp.*, 829 F.Supp.2d 340, 353-54 (E.D. Va. 2011) (Ellis, J.) (noteholder identity unreasonably withheld by servicer, resulting in equitable tolling and attorney fees award of some $35,000.00).  Instead of asking the Howes who the noteholder was, DC Op. at 22, the judges below should have asked Wells Fargo how it could possibly contend that it did not know, or made a mistake, about on whose behalf it serviced the loan.  "It is the creditor's responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth."  *In re Nosek*, 386 B.R. 374, 382 (Bankr. D. Mass. 2008).

The objective fact of Wells Fargo's long-time status as the servicer shows that the false statements were made with knowledge.  While underlying motivations, such as avoiding having to re-file a foreclosure case and having to carry a higher evidentiary burden (to meet lost note requirements §3-309) are

easily discernible, both lower courts speculated otherwise (finding no "real advantage", DC Op. at 57; Appx. at 475). This was error because those motivations and cost amounts are ultimately irrelevant. C.L. §§ 3-301; 3-309. What's relevant is that the statements were made knowingly under the objective standard looking at the circumstances. *Ndeumeni*, *supra*, at *18-20; *Slorp*, *supra*, at *9 ("[b]ecause [plaintiff] alleges that the assignment was fraudulent and that Bank of America therefore did not hold title at the time of the foreclosure, [not being a party to the assignment] does not bar his suit"). *See also In re Nosek*, 386 B.R. 374, 385 ("Virtually all of parties argue that there was no intent to mislead the Court. Because the standard to be applied is an objective one, the Court may quickly dispatch this argument. Intent is irrelevant."). This is why the lower courts' subjective characterization of Appellee's false statements as "bumbling" and "sloppiness", Appx. at 226, is irrelevant and contrary to law.

Indeed, just like in this case, the putative secured creditors in *Nosek* argued that their false statements were innocent and no big deal. The bankruptcy court (unlike the courts below) did not buy this argument and stated:

> Ameriquest represents that it is not uncommon for the original noteholder or mortgagee to take back the note and/or mortgage when a borrower defaults. Using these excuses, the parties' attitude appears to be that confusion as to a party's role is understandable against the current commercial climate. If the transfer of such negotiable instruments occurs at such a fast pace and without timely recorded evidence of the transfers, why should the Court and Debtor's counsel

be expected to know the roles of the parties? The burden is clearly on the sophisticated, albeit careless, lenders and servicers.

*Nosek*, 386 B.R. at 382-83.

The judges below therefore also erred in assessing and ruling that saving or collecting $2,000.00 in extra fees was a "small fraud" and not a "large fraud" or "real advantage." *Id.* That analysis is irrelevant, not to mention that both judges failed to consider that Wells Fargo settled a number of class action suits where it squeezed consumers for as little as $25.00 in account fees. (*See*, *e.g.*, www.lawyersandsettlements.com/lawsuit/excessive-bank-overdraft-fees.html (last accessed February 15, 2016). What may be small in one case is quite large when taken in the aggregate. But costs, whether large or small, are not a legal justification for fraud.

Lastly, the damage element is also satisfied. The Howes have the obvious interest and right to prevent a party from taking their property unless and until that party complies with the requirements of the law. That includes filing truthful foreclosure papers and meeting the applicable burden of proof, and filing truthful proofs of claim and again meeting the applicable burden of proof instead of playing fast and loose with the judicial system in an effort to cut costs. As the Sixth Circuit noted not so long ago,

> If the defendants were not authorized to initiate the foreclosure proceedings, [plaintiff]'s injuries were caused by their fraud rather than his own alleged default.
>
> . . .
>
> Assuming [the complaint's allegations] to be true, as we must, Bank of America wrongfully initiated foreclosure proceedings against Slorp, and his damages were proximately caused by the defendants' institution of fraudulent foreclosure proceedings that led Slorp to incur attorney's fees. The allegedly fraudulent assignment allowed the defendants to perpetrate and conceal the fraud by precluding the state court from ascertaining whether the defendants were the proper parties to initiate the foreclosure proceedings. On those facts it was the defendants' alleged misrepresentations rather than Slorp's default that led to his injuries.

*Slorp*, *supra*, at *23. The instant case is virtually identical to *Slorp*, and is even stronger because of Appellees' repeated changes of position and the underlying Trust's termination. Therefore, this Court should follow the reasoning in *Slorp* and ensure that homeowners can proceed on legitimate claims when purported creditors play fast and loose with the judicial process.

### D. Appellants stated the claims to determine extent and validity of lien and objection to proof of claim.

For similar reasons, the Complaint also stated a claim for determination of the extent and validity of the lien (Count 2) and a valid objection to proof of claim (Count 9). Appx. at 41, 54. Notably, the district court acknowledged that "the burden is on the person or entity seeking to enforce the instrument to establish his/its interest." DC Op. at 72; Appx. at 418. The district court then admitted that "Judge Gordon explicitly stated that the question of who has the right to enforce

the Note remains open, subject to proof and to challenge." *Id.* Since that is true, then even under the best scenario for Appellees (although the applicable standard is the opposite – all inferences in favor of Appellants), the extent of the lien could be reduced by the improper foreclosure fees listed on the amended proof of claim. Appx. at 374. The extent-of-lien claim should therefore have gone forward.

Specifically, while the claim *could* have been amended to make it more pointed, it did not *have* to be amended because it already contained all the requisite elements to show that either the validity or the extent of the lien, or both would likely have to be adjusted, and the district court conceded as much. DC Op. at 74, 99. The district court wrote that "Judge Gordon permitted the Howes to file an amended complaint and/or a claim objection to dispute the right to enforce the note." DC Op. at 74. But such a complaint, including a claim objection in Count 9, was already before the court. Appx. at 41-56.

It was legal error to hold that Appellants had valid claims as to the noteholder identity, right to enforce, and proofs of claim, *id.*, and simultaneously dismiss the Complaint containing these very claims. The Complaint alleged that neither Wells Fargo nor U.S. Bank as Trustee, nor their purported transferees were in possession of the Note. Appx. at 22-55. The Complaint also alleged that the Note did not bear an indorsement by a holder and in favor of any claimed transferee. *Id.* The Complaint likewise alleged that the entity falsely asserting to

the state and bankruptcy courts to be the noteholder (the 2003-4 Trust) through its agent-servicer (Wells Fargo) did not exist on the date of such assertions. *Id.* Morever, later submissions, such as the Ostermann Affidavit, Appx. at 272, produced more evidence that none of the claimants held the Note because the Note had been lost. *Id.* With these allegations taken as true, the Complaint properly stated a claim to determine the extent and validity of the lien (Count II) and a claim of objection to creditor's proof of claim (Count IX).

Whether Wells Fargo or any purported transferee could have proceeded under §3-309 (as discussed *supra*) and ultimately succeeded in defeating Appellants objections, and to what extent, was the issue to be resolved on summary judgment. It was improper for both lower courts to make giant leaps in an effort to achieve a preconceived result and deprive Appellants of their day in court. DC Op. at 74, 98-99; Appx. 492, 516-17.

The proper procedure would have been to allow the claims to proceed and consider the parties' respective positions on summary judgment, including the subsequently-filed Affidavit of Ownership, which Appellants believed was still defective, but which Appellants had no way to challenge due to the improper dismissal of the Complaint.[3]

---

[3] The district court thus erred in holding that the "Howes then had two avenues to challenge the claim of ownership [using] leave to file an amended

### III. Evidence submitted after dismissal supports the dismissed claims.

As discussed above, Wells Fargo and the other purported claimants engaged

in substantial effort to avoid proceeding under C.L. §3-309 even though the law

requires them to do so under the facts of this case. Notably, Wells Fargo was

already denied stay relief due to a defective lost note affidavit and its resulting

inability to enforce the note by the U.S. Bankruptcy Court for the Western District

of North Carolina as follows:

> The terms of the Note do not appear to be in dispute under §
> 25-3-309(b), but the parties do dispute Wells Fargo's right to enforce
> it. And simply put, the Affidavit prepared by Wells Fargo is
> insufficient to demonstrate its right to enforce the Note. Although the
> Affidavit indicates that the Note could not be located after a thorough
> and diligent search, it does not provide that Wells Fargo was in
> possession of the Note and entitled to enforce it when loss of
> possession occurred or that the loss of possession was not the result
> of a transfer by Wells Fargo or a lawful seizure. Therefore, the court
> concludes that because Wells Fargo has not complied with the lost
> note provisions of § 25-3-309, it has not demonstrated that it is
> entitled to enforce the Note and denies the Motion for Relief without
> prejudice.

*In re Patterson*, Case No. 12-50201 (Bankr. W.D.N.C., 2012) (Appx. 282-4).

---

claim objection to the Amended Proof of Claim [or] an amended complaint." DC
Op. at 74. There was nothing to amend in the Howes' objection to the Amended
Proof of Claim ("APC") because the March 15, 2013 APC had not changed. The
only change had been that the APC claim had been purportedly assigned to
another entity, but that entity did not file any proofs of claim or amend a prior
defective proof of claim already challenged in the Complaint. Appx. at 4-10.

Despite the glaring defects and false statements, discussed above, thee fact that the

Ostermann Affidavit proving that Appellees' repeated representations to the court

regarding holder status were false, and the impossible 2013 Trust Assignment, the

bankruptcy court stated the following with respect to the lost note affidavit:

> Whether that would prevent a foreclosure in Maryland, I am not
> certain. But as to the entitlement to enforce the "right to payment"
> here in the Bankruptcy Court, I don't see how the present claimant's
> right to do so can reasonably be questioned.

Tr. 7/16/14 (ECF 4-2), 14 at 21-25 (Appx. 365). The Affidavit Documents also

included an unrecorded Corporate Assignment of Deed of Trust, dated October 31,

2013, from Wells Fargo as attorney-in-fact for U.S. Bank as trustee for the Trust,

assignor, to Wells Fargo as assignee, effective October 30, 2013, purportedly

signed by Susan E. Balfanz, Vice President Loan Documentation, and

notarized by Jonathen Edward Johnson in Minneapolis, Minnesota (the "2013

Trust Assignment"). ECF 1-37 at 29(Appx. 278). The 2013 Trust Assignment also

is defective since the Trust no longer owned Appellants' note after it received

payment in full for it on January 1, 2012, and the Trust ceased to hold any assets

and terminated on January 25, 2012. Compl. ¶ 43 (Appx. 33). Appellants

requested but never received a copy of the agreements authorizing Wells Fargo to

sign the 2013 Trust Assignment as US Bank's attorney in fact.15 ECF 1-35 at 7 ¶

11 (Appx. 244-5).

Finally, the Affidavit Documents included an unrecorded Assignment of Deed of Trust, dated March 20, 2014, from Wells Fargo as assignor, to WSFS Bank as trustee for the Stanwich Trust, and executed by Carrington as Wells Fargo's attorney in fact by Elizabeth A. Osterman, Vice President, Default, SCRA for Carrington, attorney in fact (the "2014 Assignment"). ECF 1-37 at 31(Appx. 280-1). Appellants requested but have not been provided with the documents evidencing the attorney-in-fact powers exercised in the 2014 Assignment. ECF 1-35 at 8 ¶ 12 (Appx. 245). Since Wells Fargo has not established its title to Appellants' note, as a result of claiming to take title from the Trust after the Trust no longer owned Appellants' note, it has not established its power to assign the corresponding deed of trust.

The Maryland Court of Appeals puts the burden to prove the right to enforce the Note on Appellees, including all prior transfers, but they failed to do so in the Ostermann Affidavit and Affidavit Documents. Under § 3-201 of Maryland's Commercial Law Article, the subject Note is order paper, and since it is not made payable to Wells Fargo, there is no evidence that Wells Fargo had the right to assign it to the Stanwich Trust. The *Anderson* Court rule bears repeating:

> a reputed transferee in possession of an unindorsed mortgage note has the burden to establish its rights under that note. [T]he Maryland Commercial Law Article . . . requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is

entitled to payment under § 3-308(a)). Additionally, given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

*Anderson v. Burson*, 424 Md. at 245-246 (footnote omitted). In conclusion, after a review of all the evidence regarding whether Debtor "sidestepped his mortgage payment obligations," and the characterizations of the Mortgage Litigation Defendants as "mortgage holders" and Debtor's "present home mortgage lenders" with "lien rights," the Court should be left with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

   **IV.    The lower courts' subjective notion of justice and preconceived result were wrong and inequitable.**

Finally, to complete an accurate picture of the equities supporting the Howes and their treatment by the lower courts, it is important to note the reason Howes fell into mortgage default in the first place, and their diligent, albeit extremely frustrating and beguiling, efforts to cure his default through loan modification beginning in July 2009. As detailed in the Loan Modification Efforts section of the Adversary Complaint (ECF 2-34 (Appx. 30-40) ¶¶ 18-34), the Howes fell behind on their mortgage in April 2009 through circumstances beyond their control as a result of our great national financial crisis (brought to us largely by the mortgage industry). Instead of getting the prompt loan modification help he

was promised by our federal government under the U.S. Treasury's Home Affordable Modification Program ("HAMP"), the Howes were misled about the identity of the holder of the mortgage and whether they qualified for the HAMP program. The Howes spent over nineteen hundred hours of lost time from work through July 19, 2010, preparing and submitting to Wells Fargo at least five full HAMP applications, and engaging in over 100 communications with Wells Fargo, all as required by Wells Fargo to process the Howes' HAMP application (Compl. ¶ 19), only to be told on July 19, 2010 that he did not qualify for HAMP (Compl. ¶ 20), then told in June 2012 that he may indeed qualify for HAMP (Compl. ¶ 24). Accordingly, Howes submitted yet another HAMP application in June 2012 (Compl. ¶27), which was denied in August 2012 because "your mortgage cannot be modified based on the results of your NPV evaluation[,]" attaching its Net Present Value (NPV) Input Data Values, including a property value of $795,000 at Input Data Field 7 (Compl. ¶ 30). The Howes objected to this NPV analysis on September 11, 2012, stating that the value is overstated by $150,000, and noting that the prior BPO valuations "are all over the place, with values of $625,000 on 5/4/11 and $830,000 on 11/5/11 (a 33% difference over six months!)." Compl. ¶ 32. Although it had a duty to do so, Wells Fargo never responded to the Howes' NPV Dispute Fax. Compl. ¶ 33. Had Wells Fargo used reasonable input variables and properly run the NPV test on the 2012 HAMP Application, the result would

have been positive and the application would have been granted, resulting in a modified Note capitalizing the arrears, all late fees waived, new interest rates of 2% for five years then 3.2% thereafter to maturity, and with a new monthly Mortgage payment of $3,137.56. Compl. ¶34. Instead of modifying Howes's mortgage, a foreclosure sale of Howes's home was scheduled for November 16, 2012 (ECF 2-31 ¶ 4) (Appx. 328), and this bankruptcy case was filed the day before to stop that sale. It is very disturbing, to put it mildly, to have the bankruptcy court paint a picture of the Howes's case so very different than what is mandated by the record, on so many grounds. No standing to enforce Howes's note has been established, a fact the bankruptcy court ignores, the Howes have over-funded the plan, another fact the bankruptcy court chose to ignore, and the Howes' demonstrated financial ability to confirm a plan, yet another key fact the bankruptcy court chose to ignore. The bankruptcy court also chose to ignore the blameless nature of the Howes' default and his diligent and tireless efforts to cure that default. This is what happens when lower tribunals employ subjective notions of justice and sidestep the law in an effort to achieve a preconceived result instead of humbly following and applying the law as written.

## CONCLUSION

The district court erred in dismissing the claims contained in the Adversary Complaint. Each Count of the Complaint and particularly Counts I, II, and IX

-31-

state a claim for relief and could proceed without any amendments.  The

bankruptcy court's order of dismissal should therefore be reversed.  The case

should be remanded to proceed on the claims set forth in the Complaint.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants do not request oral argument on this appeal.

Respectfully submitted,

_____/s/ Gregory Bryl_____
Gregory Bryl, Esq.
BRYL LAW OFFICES
1629 K Street NW, Suite 300
Washington, DC 20006
202-360-4950
703-997-5925 fax
help@bryllaw.com
*Counsel for Plaintiffs-Appellants Jeffrey and Tonya Howes*

**CERTIFICATE OF COMPLIANCE**
(Type-Volume Limitation, Typeface Requirements, and Type Style Requirements)


1. Appellants' Opening Brief complies with the type-volume limitation of FED.R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 8,015 words or less, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14-point Times New Roman font.


Date: February 16, 2016


_____*/s/ Gregory Bryl*_____
Gregory Bryl, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2016, the foregoing Opening Brief of

Appellants was filed with the Court via hand delivery and electronically

using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

>   Douglas Brooks Riley, Esq.
>   TREANOR, POPE & HUGHES, PA
>   500 York Road
>   Towson, MD 21204-0000
>   Direct: 410-494-7777
>   Email: dbriley@tph-law.com


>   Michael Thomas Cantrell, Esq.
>   Kyle James Moulding, Esq.
>   MCCABE WEISBERG & CONWAY, LLC
>   312 Marshall Avenue, Suite 800
>   Laurel, MD 20707
>   Direct: 301-490-3361
>   Email: MdFederalEfilings@mwc-law.com
>   Email: kmoulding@mwc-law.com


>   _____ /s/ Gregory Bryl _____
>   Gregory Bryl, Esq.