NO. 15-2332

In The

# United States Court of Appeals
For The Fourth Circuit

JEFFREY V. HOWES,
TONYA H. HOWES,

Appellants

v.

WELLS FARGO BANK, N.A. U.S.
BANK, NATIONAL ASSOCIATION,
CARRINGTON MORTGAGE SERVICES, LLC,
CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVING FUND SOCIETY, FSB, AND SELENE FINANCE, LLP

Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## BRIEF OF APPELLEES

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
Tel: 410-494-7777, Fax: 410-494-1658
Email: dbriley@tph-law.com

Counsel for Wells Fargo Bank, N.A. and U.S.
Bank, National Association, Appellees

Kyle James Moulding
McCabe Weisburg and Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Tel: 301-490-3361, Fax: 301-490-1568
Email: kmoulding@mwc-law.com

Counsel for Carrington Mortgage Services, LLC,
and Christiana Trust, a Division of Wilmington
Saving Fund Society, FSB, Appellees

Appeal: 15-2332    Doc: 4    Filed: 11/09/2015    Pg: 1 of 2

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2332__        Caption: __Jeffrey V. Howes, et al. v. Wells Fargo Bank, N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Wells Fargo Bank, N.A.__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:
      Wells Fargo Bank, N.A. is a national banking association organized under the laws of the United States of America, and a division of Wells Fargo & Company. Wells Fargo & Company is a corporation publicly traded on the New York Stock Exchange under the ticker symbol WFC.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☑ YES ☐ NO
      If yes, identify all such owners:
      Wells Fargo Bank, N.A. is a national banking association organized under the laws of the United States of America, and a division of Wells Fargo & Company. Wells Fargo & Company is a corporation publicly traded on the New York Stock Exchange under the ticker symbol WFC.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:

    Ellen W. Cosby, Chapter 13 Trustee
    300 East Joppa Road
    Towson, Maryland 21286

Signature: __Douglas B. Riley, 01220_____   Date: ___November 9, 2015___

Counsel for: __Wells Fargo Bank, N.A._____

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___November 9, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876

Ellen W. Cosby, Chapter 13 Trustee
300 East Joppa Road
Towson, Maryland 21286

Michael T. Cantrell, Esquire
Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

__Douglas B. Riley, 01220_____          ___November 9, 2015___
        (signature)                                    (date)

Appeal: 15-2332   Doc: 5   Filed: 11/09/2015   Pg: 1 of 2

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2332__     Caption: __Jeffrey V. Howes, et al. v. Wells Fargo Bank, N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__U.S. Bank National Association__
(name of party/amicus)

_____

who is _____an appellee,_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                          ☑ YES ☐ NO
     If yes, identify all parent corporations, including all generations of parent corporations:
     U.S. Bank National Association, Defendant, is a wholly-owned national banking subsidiary of U.S. Bancorp, whose shares are traded on the New York Stock Exchange under the ticker symbol USB

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☑ YES ☐ NO
     If yes, identify all such owners:
     U.S. Bank National Association, Defendant, is a wholly-owned national banking subsidiary of U.S. Bancorp, whose shares are traded on the New York Stock Exchange under the ticker symbol USB

Appeal: 15-2332    Doc: 5    Filed: 11/09/2015    Pg: 2 of 2

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding? ☑ YES ☐ NO
If yes, identify any trustee and the members of any creditors' committee:

     Ellen W. Cosby, Chapter 13 Trustee
     300 East Joppa Road
     Towson, Maryland 21286

     No creditors' committee

Signature: **Douglas B. Riley**          Date:   November 9, 2015

Counsel for: **U.S. Bank National Association**

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on   November 9, 2015   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876

Ellen W. Cosby, Chapter 13 Trustee
300 East Joppa Road
Towson, Maryland 21286

Michael T. Cantrell, Esquire
Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

Douglas B. Riley, 01220             November 9, 2015
(signature)                                   (date)

Appeal: 15-2332      Doc: 11      Filed: 11/12/2015      Pg: 1 of 3

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2332__      Caption: __Jeffery Howes v. Wells Fargo Bank, N.A.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carrington Mortgage Services, LLC__
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including all generations of parent corporations:
    See addendum attached

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
If yes, identify any trustee and the members of any creditors' committee:
Ellen W. Cosby

Signature: /s/ Kyle J. Moulding                          Date:        11/12/2015

Counsel for: Carrington Mortgage Services, LLC

## CERTIFICATE OF SERVICE
**************************

I certify that on  November 12, 2015  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robert Haeger
11403 Seneca Forest Circle
Germantown, MD 20876
Ellen W. Cosby
300 E. Joppa Road, Suite 409
Towson, MD 21286

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

/s/ Kyle J. Moulding                                    11/12/2015
            (signature)                                          (date)

Question 2 Addendum:

Carrington Mortgage Services, LLC is a Delaware limited liability company and is wholly owned by Carrington Mortgage Holdings, LLC.

Carrington Mortgage Holdings, LLC is a Delaware limited liability company and is 99.5% owned by Carrington Holding Company, LLC and 0.5% owned by a private individual.

Carrington Holding Company, LLC is wholly owned by The Carrington Companies, LLC, a Delaware limited liability company. The Carrington Companies, LLC is 99.5% owned by a private individual and 0.5% owned by a private individual.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>15-2332</u>          Caption: <u>Jeffery Howes v. Wells Fargo Bank, N.A.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>CHRISTIANA TRUST A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE</u>
(name of party/amicus)

<u>For Stanwich Mortgage Loan Trust, Series 2013-2</u>

who is <u>          Appellee          </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                      ☑ YES ☐ NO
        If yes, identify all parent corporations, including all generations of parent corporations:
        See addendum attached

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                        ☐ YES ☑ NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?   ☑ YES ☐ NO
    If yes, identify any trustee and the members of any creditors' committee:
    Ellen W. Cosby

Signature: /s/ Kyle J. Moulding                    Date:      11/12/2015

Counsel for: Christiana Trust

## CERTIFICATE OF SERVICE
**********************************

I certify that on  November 12, 2015  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Robert Haeger
11403 Seneca Forest Circle
Germantown, MD 20876
Ellen W. Cosby
300 E. Joppa Road, Suite 409
Towson, MD 21286

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

/s/ Kyle J. Moulding                              11/12/2015
      (signature)                                    (date)

Question 2 Addendum:

Corporate Information: Christiana Trust is a Division of Wilmington Savings Fund Society, FSB. Wilmington Savings Fund Society, FSB,  is a federal savings bank, member FDIC, and a Delaware Corporation with its place of business located at 3801 Kennett Pike, Greenville, DE  19807.

Corporate Disclosure: Christiana Trust is a Division of Wilmington Savings Fund Society, FSB and a wholly owned subsidiary of WSFS Financial Corporation.

## TABLE OF CONTENTS

Jurisdictional Statement ........................................................................ 1

Statement of Issues ............................................................................... 1

Statement of the Case............................................................................ 2

Facts of the Case ................................................................................... 7

Summary of Argument ........................................................................ 13

Argument ............................................................................................. 14

Standard of Review............................................................................. 14

I.     THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE COMPLAINT FOR FAILING TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ...................................................................... 15

     A.     All Counts Of The Complaint Turn Upon The Same Allegation That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely Claim To Hold The Note And Are Entitled To Enforce The Deed Of Trust.......... 15

     B.     The Complaint Fails To Credibly Allege That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely Claim To Hold The Note And Are Entitled To Enforce The Deed Of Trust ....................................... 17

     C.     Counts Two Through Nine Of The Complaint Cannot Survive Because The Bankruptcy Court Concluded That As A Matter Of Law There Was No Fraud.............................................................................. 24

II.     THE DISTRICT COURT DID NOT ERR IN CONSIDERING JUDGE GORDON'S MEMORANDUM OPINION OF NOVEMBER 5, 2014 ....................................... 25

Conclusion .......................................................................................... 28

Request for Oral Argument................................................................. 29

CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) .............. 30

CERTIFICATE OF SERVICE ............................................................ 31

INDEX TO ADDENDUM ................................................................. 32

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Burson,* 424 Md. 232, 35 A.3d 452 (2011)........................................ 16, 22, 23

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929
    (2007)........................................................................................................ 15, 19

*Blaine v. Whirlpool Corp.,* 891 F.2d 203 (8th Cir.1989).................................................. 26

*Deutsche Bank v. Brock,* 430 Md. 714, 63 A.3d 40 (2013).................................. 21, 22, 23

*District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609
    F.2d 1083 (4th Cir.1979) ........................................................................... 15

*Edwards v. City of Goldsboro,* 178 F.3d 231 (4th Cir. 1999)........................................... 15

*Frey v. Bank One,* 91 F.3d 45 (7th Cir.1996) .................................................................. 14

*Hall v. Virginia,* 385 F.3d 421 (4th Cir. 2004) ................................................................ 17

*In re Grand Jury Proceedings Under Seal v. United States,* 947 F.2d 1188
    (4th Cir. 1991)............................................................................................. 26

*In re Porges,* 44 F.3d 159 (2nd Cir. 1995)........................................................................ 6

*In re Simmerman,* 463 B.R. 47 (Bankr.S.D.Ohio 2011)................................................. 22

*In re Thorp,* 655 F.2d 997 (9th Cir.1981)........................................................................ 26

*In re Veal,* 450 B.R. 897 (9th Cir. BAP 2011)................................................................ 22

*In re Walker,* 466 B.R. 271 (Bankr.E.D.Pa.2012) ......................................................... 22

*Jaimes v. JP Morgan Chase Bank, N.A.,* WL 677740 (N.D. Ill. 2013)........................... 23

*Lewis v. Tobacco Workers' Int'l Union,* 577 F.2d 1135 (4th Cir.1978), *cert.*
    *denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979) ......................... 26

*Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987) ..................................... 14

*Muth v. United States,* 1 F.3d 246 (4th Cir. 1993)........................................................... 27

*Philips v. Pitt County Memorial Hospital,* 572 F.3d 176 (4th Cir. 2009) ...................... 17

*Republic Steel Corp. v. Penn Engineering Corp.,* 785 F.2d 174 (7th
    Cir.1986) ..................................................................................................... 14

*Republican Party v. Martin,* 980 F.2d 943 (4th Cir.1992) .............................................. 14

*SMS Financial, LLC v. ABCO Homes, Inc.,* 167 F.3d 235 (5th Cir.1999)...................... 22

*Turbe v. Government of V.I.,* 938 F.2d 427 (3d Cir.1991)................................................ 14

**Statutes**

28 U.S.C. § 158 ............................................................................................... 1

Md. Code Ann., Commercial Law Article § 3–203 ......................................... 22

Md. Code Ann., Commercial Law Article § 3–301 ..................................... 22, 23

**Other Authorities**

5 C. Wright & Miller, *Federal Practice & Procedure* § 1367 (3d ed.) ............................ 14

16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice &*
    *Procedure* § 3949 (1977) ............................................................ 26

*Moore's Federal Practice* ¶ 203.11 (2d ed. 1991) .......................................... 26

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................... 7, 14, 15, 17

## BRIEF OF APPELLEES

Appellees Wells Fargo Bank, N.A. ("Wells Fargo"), U.S. Bank, National Association ("U.S. Bank"), Carrington Mortgage Services, LLC ("Carrington"), and Christiana Trust, a Division of Wilmington Savings Fund Society, FSB ("Christiana Trust"), by their undersigned attorneys, file their Brief of Appellees.

## Jurisdictional Statement

The courts of appeal have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered by the district courts from appeals of final judgments, orders, and decrees of the bankruptcy judges pursuant to 28 U.S.C. § 158(d)(1).

## Statement of Issues

Did the district court err in affirming the bankruptcy judge's dismissal, with prejudice, of Count I of the Complaint for failing to state a claim upon which relief can be granted?

Did the district court err in affirming the bankruptcy judge's dismissal, without prejudice, of Counts II, III, and IX of the Complaint for failing to state claims upon which relief can be granted?

## Statement of the Case

On November 15, 2012, Jeffrey V. Howes filed a petition for Chapter 13 relief in the United States Bankruptcy Court for the District of Maryland [Case No. 12-30614]. Apx. 4.  On September 3, 2013, Appellants Jeffrey V. Howes and his non-debtor spouse, Tonya H. Howes, filed a 35-page, nine-count, Complaint to Determine Secured Status, Sanctions, or Other Relief ("Complaint") against four defendants: U.S. Bank, Wells Fargo, Carrington, and Christiana Trust.  Apx. 22-76.

On October 9, 2013, Carrington and Christiana Trust filed a Motion to Dismiss for Failure to State a Claim, which was subsequently amended and re-filed on December 18, 2013.  Apx. 165-171. Likewise, on October 17, 2013, U.S. Bank and Wells Fargo filed their Motion to Dismiss Complaint to Determine Secured Status, Sanctions, and Other Relief and supporting Memorandum.  Apx. 77-126.

On October 31, 2013, Appellants filed a Response to U.S. Bank and Wells Fargo's Motion to Dismiss, and on January 2, 2014, they responded to Carrington and Christiana Trust's Amended Motion to Dismiss Adversary Proceeding.  Apx. 127-157, 172-181.

On January 6, 2014, the bankruptcy court heard oral argument on the Motions to Dismiss and Responses thereto, and invited U.S. Bank and Wells

Fargo to submit a supplemental brief on the effect of trust termination. On January 21, 2014, U.S. Bank and Wells Fargo filed a Supplemental Memorandum in Support of Motion to Dismiss, to which Appellants duly responded on February 5, 2014. Apx. 182-199, 200-206.

On March 4, 2014, the bank court reconvened, and Bankruptcy Judge Robert A. Gordon announced his decision (a) to dismiss Count I of the Complaint with prejudice for failing to state a claim on which relief can be granted; (b) to dismiss the remaining counts without prejudice; (c) directing Carrington and Christiana Trust to submit an affidavit explaining their claim of ownership to the subject note and mortgage; and (d) directing Appellants to file either an objection to Claim No. 4-2[1] or an amended complaint, or both, by May 3, 2014 "or the Complaint shall be dismissed with prejudice." This ruling was reduced to a written Order and entered on May 12, 2014. Apx. 285-287.

As directed, Carrington filed an Affidavit Certifying Ownership of Debt Instrument on April 3, 2014. Apx. 236-237. Appellants, however, neither objected to Claim No. 4-2 nor filed an amended complaint by May 3,

---

[1] Claim No 4-2 is a secured claim filed by U.S. Bank, amended by Wells Fargo, and subsequently assigned to Christiana Trust and Carrington. It has been subsequently assigned to Selene Finance, LLP ("Selene"), which now owns and services the debt instrument.

3

2014. Instead, on May 5, 2014, Appellants filed a Motion to Reconsider Oral Ruling on Motion to Dismiss and Objection to Ownership Affidavit, to which the four Appellants filed responses on May 19, 2014 and May 20, 2014, respectively.  Apx. 238-284, 288-293, 294-296.

On July 16, 2014, the court heard oral argument on Appellants' Motion to Reconsider, entering a formal order on July 22, 2014 denying the relief requested. Apx. 297-298. The court expressly found that, "…to the extent the [Appellants] may have legitimate claims that (1) one or more of the present defendant/claimants are not entitled to enforce the underlying loan documents or (b) the amount of debt asserted in Proof of Claim No. 4-2 is incorrect, then those assertions must be raised through either an objection to claim or amended complaint." Apx. 298. The court, having previously given Appellants until May 3, 2014 to file either an amended complaint or objection to claim, then extended this deadline to July 23, 2004. Apx. 298.

Rather than to file an amended complaint or objection to Wells Fargo's proof of claim, Appellants noted an appeal to the district court on August 5, 2014.  The Notice of Appeal challenged two orders of the bankruptcy court: (1) Order Dismissing Complaint for Failure to State a Claim, entered on May 12, 2014, and (2) Order Denying Plaintiffs' Motions to Reconsider Order

Dismissing Complaint and Objection to Ownership Affidavit, entered on July 22, 2014.  Apx. 285-287, 297-298.

The record of the adversary proceeding was transmitted to the district court on September 4, 2014.[2]  Add. 108.  Appellees' Brief was initially filed on September 29, 2014, amended two days later, and re-filed in its final form (with reference to a late-filed Appendix) on October 30, 2014.  Add. 9-64. On October 13, 2014, U.S. Bank and Wells Fargo filed their Brief of Appellees, and on October 16, 2014, Carrington and Christiana Trust, filed their Brief of Appellees.  Add. 65-95, 96-109.  On October 30, 2014, Appellants filed a Reply Brief.  Add. 110-126.

After all briefing was complete in the district court, Judge Gordon filed in the bankruptcy court a Memorandum Opinion further explaining his prior Order Dismissing Complaint for Failure to State a Claim and Order Denying Plaintiffs' Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit.  App. 127-151; *see also* Apx. 285-287, 297-298. Neither Appellants nor Appellees objected to the district court's consideration

---

[2]  Remarkably, Appellants have included in the Appendix <u>none</u> of the documents from the district court appeal, except for Judge Hollander's Memorandum Opinion (which is slipped into the Appendix without assigned page numbers).  Accordingly, the Brief of Appellees contains an Addendum to the Appendix ("Addendum") comprised of the District Court record, the pages of which are marked as Add. 1, 2, 3, and so on.

5

of Judge Gordon's untimely Memorandum Opinion, and no request was made for leave to file supplemental briefing in response thereto.

On September 30, 2015, the district court entered a 99 page Memorandum Opinion and Order, in which Judge Ellen L. Hollander affirmed the bankruptcy court's Order dismissing Count I, with prejudice, and dismissing Counts II through IX, without prejudice. The district court also affirmed the bankruptcy court's Order denying Appellants' motions for reconsideration. App. 152-250.

On October 27, 2015, Appellants noted this appeal. App. 251-254. After an unsuccessful attempt at mediation, Appellants filed their Opening Brief and Appendix on February 17, 2016. U.S. Bank, Wells Fargo, Carrington, and Christiana Trust now file their consolidated Brief of Appellees.[3]

---

[3] On March 4, 2016, the bankruptcy court dismissed Appellant Jeffrey Howes' Chapter 13 case "with prejudice to the Debtor's refiling for twenty-four (24) months ..." Add. 264-266. Dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction should be left to the sound discretion of the court where the adversary proceeding is pending. In making such a determination, the court must consider four factors: judicial economy, convenience of the parties, fairness, and comity. *In re Porges*, 44 F.3d 159, 162-163 (2nd Cir. 1995). Considering here (1) how long the parties have been in litigation and (2) that Appellant Tonya Howes was not a bankruptcy debtor, these factors all weigh in favor of this Court retaining jurisdiction to hear the appeal.

## Facts of the Case

*Factual Allegations of the Complaint*

For a Rule 12(b)(6) motion, the facts of the case are drawn from the Complaint.

1.     On or about November 30, 2001, Appellants executed a Construction Note payable to The Columbia Bank in the principal amount of $696,130.00.[4]  Complaint, ¶ 15, Exhibit 1, Apx. 26, 58-61.

2.     The Note was secured by certain real property owned by Appellants and described as Lot 45 in the subdivision known as "Pindell Woods" located in Howard County, Maryland ("Property").[5]  Complaint, ¶¶15, 16, Apx. 26.

---

[4]  The Construction Note was amended by a Loan Modification Agreement dated April 16, 2003 and recorded among the Land Records of Howard County at Liber 07153, folio 094.  Under the Loan Modification Agreement, Appellants' unpaid principal balance was $650,000.00, and their interest rate was lowered from a floating rate of 6%-11% to a fixed rate of 5.75%.  A copy of the Loan Modification Agreement may be found in the Appendix, at 98-105.

[5]  The Property is commonly known as 7000 Meandering Stream, Fulton, Maryland 20759.  See Complaint, Exhibits 3 and 4, Apx. 66-76.

3.    In April 2009, Appellants defaulted on the Note and fell more than 60 days behind by June 2009. After August 31, 2009, they stopped making any payments on the Note.[6] Complaint, ¶ 17, Apx. 26-27.

4.    On August 18, 2009, Appellants applied to Wells Fargo for a loan modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP"). Complaint, ¶ 19, Apx. 27.

5.    On July 19, 2010, Appellants were informed that they were not eligible for a HAMP loan modification, and were subsequently told: "… we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP)." Complaint, ¶¶ 21, 22, Apx. 27-28.

6.    Nevertheless, on October 6, 2010, Wells Fargo offered Appellants a Forbearance Agreement temporarily reducing their payments and lowering their interest rate, but requiring an upfront payment of $24,683.61, and a balloon payment of $58,766.56 at maturity.[7] Complaint, ¶ 22, Apx. 27-28.

---

[6] As reflected in paragraphs 17 and 59 of the Complaint, Appellants paid nothing toward their mortgage loan from August 31, 2009 until May 2, 2013, almost four years later. On May 2, 2013 and June 13, 2013, Appellants allegedly sent two monthly payments to Wells Fargo, but these were returned as Mr. Howes had filed for bankruptcy relief.

[7] According to the terms of the Loan Modification Agreement, Appellants' monthly payments of principal and interest were $3,792.22. Apx. 98-102. With additional amounts escrowed for taxes and insurance, their total monthly

7.    Appellants rejected Wells Fargo's offered Forbearance Agreement.  Complaint, ¶ 23, Apx. 28.

8.    Upon rejecting Wells Fargo's Forbearance Agreement, Appellants made a counter offer to Wells Fargo, offering to cure their default "in exchange for a new fixed rate mortgage at the current market average rate." Wells Fargo rejected the counter offer.  Complaint, ¶ 23, Apx. 28.

9.    On February 21, 2012, U.S. Bank as principal, and Wells Fargo, as agent, initiated a foreclosure action ("Foreclosure Case") against Appellants.[8] Complaint, ¶ 36, Apx. 31.

10.    In June 2012, Appellants renewed their efforts to obtain "an equitable, long-term modification" from Wells Fargo and submitted a second HAMP loan modification. Complaint, ¶¶ 27- 28, Apx. 29-30.

---

payments were approximately $4,500.00. Accordingly, having made no mortgage payments since August 31, 2009, Appellants were more than 11 months in arrears, or approximately $50,000.00 delinquent. The upfront cash payment that Wells Fargo proposed for a loan modification was less than half the amount then due.

[8] According to the Complaint, this was the second foreclosure action initiated by U.S. Bank and Wells Fargo. The first had been filed on January 20, 2010, but voluntarily dismissed a year later on January 3, 2011, apparently because it was supported by defective affidavits. Complaint, ¶¶ 36, 38-40, Apx. 31-32

11.     On or about August 13, 2012, Wells Fargo advised Appellants that, due to their Net Present Value ("NPV"), including the value of the Property, their Mortgage could not be modified.  Complaint, ¶ 30, Apx. 30.

12.     On September 11, 2012, Appellants disputed the NPV, but Wells Fargo did not respond.  Complaint, ¶ ¶ 32-33, Apx. 30.

13.     On November 15, 2012, Mr. Howes filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code, and filed a plan providing to cure $35,662.00 in pre-petition mortgage arrears, while maintaining post-petition payments directly to Wells Fargo.  Complaint, ¶ 50, Apx. 35.

15.     On January 9, 2013, Wells Fargo filed an Objection to Confirmation of Plan ("Plan Objection") as Servicer for U.S. Bank, Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust").[9]  Complaint, ¶ 52, Apx. 35-36.

---

[9] On September 19, 2013, the Court entered an Order Denying Confirmation of Chapter 13 Plan with Leave to Amend.  On October 4, 2013, Mr. Howes filed an Amended Plan providing, *inter alia,* that, if not disallowed, the secured claim of the "Successor to The Columbia Bank … shall be paid or otherwise dealt with outside the plan directly by the Debtor, and it will not be discharged upon completion of the plan."  The amended plan, which does not address the pre-petition arrearage or explain how the debt will be "otherwise dealt with," has not been confirmed.

15.    On March 8, 2013, U.S. Bank filed a timely proof of claim which, on March 15, 2013, was amended by Wells Fargo, asserting a secured claim of $740,334.24, with pre-petition arrearages of $200,196.79. Complaint, ¶¶ 53-54, Apx. 36.

16.    On June 11, 2013, Wells Fargo's proof of claim was transferred to Wilmington Savings Fund Society, FSB, with payments to be made to Carrington Mortgage Services, LLC.  Complaint, ¶ 57, Apx. 37.

17.    Appellants do not know the identity of the rightful owner of the Note because, according to Exhibit 2 attached to their Complaint, the Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012.  Complaint, ¶¶ 43, 62, Apx. 33, 38.

*Relief Sought in the Complaint*

There are nine counts set forth in the Complaint, but Appellants have appealed the dismissal of only Counts I, II, III and IX.[10]  *See* Brief of Appellants, pp. 1-3, 11-12.  These four counts are summarized below:

---

[10] Appellees argued in the district court that Count IV was properly dismissed because, on its face, U.S. Bank's Proof of Claim did not include any illegal inspection fees. Add. 85-87. Count V and Count VI were properly dismissed because Appellants' claims under the Truth in Lending Act and Fair Debt Collection Procedures Act were time-barred. Add. 87-91. Count VIII was properly dismissed because there were no reliance from which a misrepresentation under the Maryland Consumer Protection Act could arise.

COUNT I – Fraud Upon the Court (as to Wells Fargo and U.S. Bank). By not disclosing that the Trust allegedly terminated in January 2012, U.S. Bank and Wells Fargo intended to defraud the Court when Wells Fargo (1) objected to Mr. Howes' Chapter 13 plan as Servicer for U.S. Bank, and (2) filed its Amended Proof of Claim in the name of Wells Fargo Bank, N.A. Appellants seek sanctions, attorneys' fees, and such other relief as necessary to prevent future fraud. Apx. 38-41.

COUNT II – Determination of Scope, Extent and Validity of Lien (as to all Defendants). On the premise that U.S. Bank had no right to enforce the Note or standing to file the Amended Proof of Claim, Appellants seek a determination that their Note is unenforceable, and there is no secured claim against the Property. Apx. 41-43.

COUNT III – Sanctions for Defective Proof of Claim (as to Wells Fargo and U.S. Bank). Proof of Claim 4-2 allegedly failed to include an itemized statement of the interest, fees, and expenses incurred pre-petition, an escrow account statement, or other necessary attachments. Moreover, when Mr. Howes filed his initial Claim Objection, Wells Fargo did not respond.

---

Add. 91-93. The dismissal of Counts IV, V, VI, VII and VIII by the bankruptcy court was appealed to the district court. However, the district court's decision affirming dismissal of Counts IV, V, VI, VII and VIII has not been appealed to this Court.

Appellants seek an order precluding U.S. Bank and Wells Fargo from presenting any evidence in support of their Amended Proof of Claim, and awarding attorneys' fees to Appellants. Apx. 43-45.

COUNT IX – Objection to Claim.  As U.S. Bank and Wells Fargo allegedly lacked standing to file the Amended Proof of Claim, failed to credit Appellants with all payments made, and sought fees and other costs to which they were not entitled, the Amended Proof of Claim should be disallowed or reduced by the amount of damages awarded under their Complaint. Appellants ask the bankruptcy court to disallow the Amended Claim. Apx. 54-55.

## Summary of Argument

I.     The district court did not err in affirming the bankruptcy judge's dismissal, with prejudice, of Count I of the Complaint for failing to state a claim upon which relief can be granted.

II.     The district court did not err in affirming the bankruptcy judge's dismissal, without prejudice, of Counts II, III, and IX of the Complaint for failing to state claims upon which relief can be granted.

13

## **Argument**

*Standard of Review*

The circuit court reviews a district court's dismissal *de novo* and in doing so applies the standard for a Rule 12(b)(6) motion. *See Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996); *Turbe v. Government of V.I.,* 938 F.2d 427, 428 (3d Cir.1991); *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987); *Republic Steel Corp. v. Penn Engineering Corp.,* 785 F.2d 174, 182 (7th Cir.1986); 5C Wright & Miller, *Federal Practice and Procedure,* § 1367 (3d ed.).   The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.*

However, for purposes of Rule 12(b)(6), the circuit court is not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609

14

F.2d 1083,1085 (4th Cir.1979). Moreover, to survive a Rule 12(b)(6) motion, "[factual allegations must be enough to raise a right to relief above the speculative level, and have enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999).

I.   THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE COMPLAINT FOR FAILING TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

   A. All Counts Of The Complaint Turn Upon The Same Allegation That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely Claim To Hold The Note And Are Entitled To Enforce The Deed Of Trust.

The gist of the Complaint is that neither U.S. Bank nor Wells Fargo has standing to foreclose on the Property, to object to Appellants' Chapter 13 plan, or to file a proof of claim pursuant to the Note and Deed of Trust under which Appellants borrowed $650,000.00 to improve the Property. The Complaint further avers that the Amended Proof of Claim is defective in that it includes improper fees, misstates the pre-petition arrearage, and fails to include certain exhibits. In response, U.S. Bank and Wells Fargo contend that, even if the Appellants' Note was removed from the Trust, or if the Trust terminated as alleged on January 25, 2012, Appellants are still indebted to the holder of the

Note because there is no allegation that the Note was ever paid. Moreover, the holder of the Note was U.S. Bank, for whom Wells Fargo was servicer.[11]

It is evident that all nine counts of the Complaint, particularly Counts I, II, III and IX now at issue, turn upon the same premise, namely, that U.S. Bank, and Wells Fargo as its servicer, do not hold Appellants' Note and, therefore, are not entitled to enforce the Deed of Trust. Appellants contend that, by representing otherwise, U.S. Bank and Wells Fargo committed fraud upon the bankruptcy court, falsely filed foreclosure and bankruptcy pleadings, and violated the Truth in Lending Act, Fair Debt Collection Practices Act, Maryland Consumer Debt Collection Act, and Maryland Consumer Protection Act. For this reason, Appellants further assert, Proof of Claim No. 4-2 should be disallowed.

---

[11] Appellants' mortgage loan was sold by their initial lender in order to be securitized. As explained in *Anderson v. Burson,* 424 Md. 232, 237, 35 A.3d 452, 455 (2011), "Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. The investment bank bundles together the multitude of mortgages if purchases into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors."

### B. The Complaint Fails To Credibly Allege That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely Claim To Hold The Note And Are Entitled To Enforce The Deed Of Trust.

Count I of the Complaint was dismissed because "Plaintiffs failed to state, and could not assert, a legitimate claim for fraud ..." Order Dismissing Complaint, Apx. 286. This determination is clearly supported by the Land Records of Howard County, which reveal that, as a matter of public record, Appellants' mortgage loan was held by "U.S. Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" on the following pertinent dates:

- February 21, 2012, when U.S. Bank initiated the second foreclosure case in Howard County;

- January 9, 2013, when Wells Fargo, as servicer for U.S. Bank, filed its Objection to Confirmation of Plan.

- March 8, 2013, when U.S. Bank filed its proof of claim in Appellants' Chapter 13 case.

In reviewing a Rule 12(b)(6) motion, a court may look beyond the four corners of the complaint and take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004); *Philips v. Pitt County Memorial Hospital*, 572 F.3d. 176, 179-180 (4th Cir. 2009). In this case, the

17

Land Records of Howard County were brought to the bankruptcy court's

attention through pleadings and exhibits filed by U.S. Bank and Wells Fargo.

Apx. 79, 87, 103-107.  These records reveal that:

> On April 16, 2003, The Columbia Bank assigned the Deed of Trust on the Property, together with the Note and all money due thereunder ("Security Instrument") to Wells Fargo Home Mortgage, Inc., Liber 07153, folio 099. Apx. 103.

> On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union National Bank, as Trustee, Liber 9083, folio 417. Apx. 105

> On July 20, 2011, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust")., Liber 13351, folio 169. Apx 106-107.[12]

These records are entirely consistent with Appellants' repeated allegations

that Wells Fargo held itself out as loan servicer for U.S. Bank.  Complaint, ¶¶

9, 10, 18, 35, 47, 52, Apx.  3, 4, 6, 31, 35, 36.  In fact, Appellants aver they

dealt exclusively with Wells Fargo in connection with their loan, asserting

---

[12]    The Security Instrument and underlying claim were subsequently transferred to Christiana Trust by Assignments dated October 30, 2013 and March 20, 2014, and more recently to Selene as noted by the Affidavit Certifying Ownership of Debt Instrument filed in the bankruptcy court. Apx. 234-237, 250-281.

18

that they sought a loan modification and other debt relief from Wells Fargo. Complaint, ¶¶ 18-34, Apx. 27-31.

The question that Appellants raise, therefore, is not whether Wells Fargo was the loan servicer, but rather for whom was Wells Fargo servicing the loan? Wells Fargo responds that, as seen in the Land Records, it was servicing the loan for U.S. Bank.[13]  Appellants contend, however, that the Trust terminated on January 25, 2012, so U.S. Bank was *not* acting as a trustee and, therefore, had no right to enforce the Note and no standing to file the Proof of Claim.  Complaint, ¶¶ 43, 76, Apx. 33, 41.

The bankruptcy court concluded that Appellants' allegations of trust termination were little more than speculation; in view of contradictory foreclosure affidavits, a sworn proof of claim, and recorded assignments, Appellants failed to set forth a claim of fraud "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). As the bankruptcy court determined: "[Appellants] failed to state, and

---

[13]  In the Memorandum in Support of Motion to Dismiss, counsel for U.S. Bank and Wells Fargo confused his clients' respective roles, drawing no distinction between the owner of the Note and its holder, and arguing that Wells Fargo acquired Appellants' loan in 2012.  See, e.g., Apx. 85-90. However, as the bankruptcy court correctly discerned, U.S. Bank was the holder, and Wells Fargo the servicer, at all times relevant to the Complaint.

could not assert, a legitimate claim for fraud …" Order Dismissing Complaint, Apx. 286.

Furthermore, the bankruptcy court properly observed that Appellants were in no way damaged by the alleged trust termination, another element required to assert a legitimate claim for fraud. Apx. 342-45. The Appellants did not rely on the alleged fraud and could not articulate to the bankruptcy court exactly what the fraud was:

> THE COURT: Why don't you tell me what the fraud is [as to Count I]?
>
> MR. HAEGER: The main fraud is trying to hide the fact that there was no standing to file the foreclosure case.
>
> THE COURT: How did your clients rely on that? And have they been damaged by it?
>
> MR. HAEGER: Well the fraud is alleged in connection with fraud on the Court.
>
> THE COURT: No, you say on the debtors, that is what your complaint says. You say well it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you . . . .
>
> MR. HAEGER: Well, that is separate -- that is correct. That is separate --
>
> THE COURT: . . . . So, what is the fraud?
>
> MR. HAEGER: So, I would say that there are two areas. The first area and the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT: Because the trust terminated?

MR. HAEGER: That is correct, Your Honor.

THE COURT: So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER: The Plaintiffs would love to know.

THE COURT: That is not an answer. As a lawyer, what happened to it?

Apx. 342-45

But, even if the Complaint credibly alleged the Trust's termination on January 25, 2012, it fails to address who then could enforce the Note or foreclose under the Deed of Trust. As noted above, Appellants could not even articulate in oral argument what happens to the trust as a matter of law when it terminates. The Complaint alleges only that the Note is no longer owned by the Trust; it is silent as to U.S. Bank's status as holder. This allegation is not credible given Appellants own admission that they have not paid off the debt. Apx. 220-221. In a similar Maryland case, *Deutsche Bank v. Brock,* 430 Md. 714, 63 A.3d 40 (2013), a borrower challenged the authority of various individuals and entities to lawfully foreclose on her residence. Among her contentions was that the trust, to which her note had been assigned, had ceased to exist and, therefore, no longer owned the note. She argued that, "regardless of which entity is the holder of the Note, only the owner may enforce the Note

21

and bring an action to foreclose." *Id.* at 730, 49. The Court of Appeals found

otherwise and explained:

> Brock contends that, regardless of which entity is the holder of
> the Note, only the owner may enforce the Note and bring an
> action to foreclose. The Commercial Law Article makes clear,
> however, the distinction between a holder and an owner. As the
> Comment to § 3–203 states, "[the right to enforce an instrument
> and ownership of the instrument are two different concepts." The
> holder of a note is "entitled to enforce the instrument even, if it
> is not the owner of the instrument or is in wrongful possession of
> the instrument." *Id.* at § 3–301. *See also In re Veal,* 450 B.R. 897,
> 909 (9th Cir. BAP 2011) ("Article 3 does not necessarily equate
> the proper person to be paid with the person who owns the
> negotiable instrument."); *SMS Financial, LLC v. ABCO Homes,
> Inc.,* 167 F.3d 235, 238–39 (5th Cir.1999) (noting that a party's
> status as a holder and its attendant right to enforce an instrument
> is separate from the party's status as the owner of that
> instrument); *In re Walker,* 466 B.R. 271, 280
> (Bankr.E.D.Pa.2012) ("[The borrower's obligation is to pay the
> person entitled to enforce the note (who need not be the 'owner'
> of the note).");  *In re Simmerman,* 463 B.R. 47, 60
> (Bankr.S.D.Ohio 2011) (noting that "the holder of the note may
> differ from the owner of the note"). As the court noted in *In re
> Veal,* "[under established rules, the maker, of a note should be
> indifferent as to who owns or has an interest in the note so long
> as it does not affect the maker's ability to make payments on the
> note." 450 B.R. at 912. Here, Brock does not contend that she
> does not know to which entity her payments are due, and thus,
> the question of which entity owns the Note is irrelevant to the
> resolution of the present case.

*Deutsche Bank v. Brock,* 430 Md. at 730-731, 63 A.3d at 49-50. Comparing

this result to that reached in *Anderson v. Burson,* 424 Md. 232, 35 A.3d 452

(2011), the Court of Appeals wrote:

In stark contrast to *Anderson,* however, the present case involves a Note that contains all necessary indorsements. There is no gap in the indorsements purporting to transfer the Note and, indeed, Brock does not argue in this Court that the indorsements were insufficient to negotiate the Note to BAC, BAC Home Loans Servicing, LP, now known as Bank of America, N.A.. BAC is in possession of the Note that is indorsed in blank. BAC is therefore the holder of the Note, and, as the holder, is a person or entity entitled to enforce it. *See* Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–301. Thus, whether the Trust is (or is not) the owner of the Note is irrelevant for present purposes.

Brock maintains that the existence of the Trust is a material fact because the Deed of Appointment of the Substitute Trustees was executed by BAC as "attorney in fact" on behalf of the Trust. Brock argues that, if the Trust is nonexistent, the Deed of Appointment is ineffective, and the Substitute Trustees and BAC do not have authority to foreclose, because "BAC cannot act as agent for an entity which does not legally exist." As Petitioners note, however, whether BAC signed the Deed of Appointment on its own authority or as agent on behalf of the Trust "is a distinction without a difference." In either capacity, BAC has the authority to appoint the Substitute Trustees and is bound by the Deed of Appointment. Thus, even if there is a dispute of fact over the Trust's continued existence, it is not material to the outcome of this case.

*Deutsche Bank v. Brock,* 430 Md. at 732-733, 63 A.3d at 51. Accord *Jaimes*

*v. JP Morgan Chase Bank, N.A.,* 2013 WL 677740 (N.D. Ill. 2013), holding

that the servicing rights on a borrower's loan do not end with the Trust's

termination.[14]  Add. 255-263.

---

[14]    The *Jaimes* decision is discussed at length in the Supplemental Memorandum in Support of Motion to Dismiss Filed by U.S. Bank and Wells Fargo.  Apx. 185-187.

23

Here, also, there are no gaps in the indorsements and assignments purporting to transfer the Note from The Columbia Bank to U.S. Bank. Moreover, the Declaration of Substitution of Trustees attached to the Complaint as Exhibit 3 further establishes that U.S. Bank is the "present holder of the indebtedness." Apx. 67-68. Clearly, the Complaint itself makes implausible Appellants' allegations that U.S. Bank was not entitled to enforce the Note. Even if the Trust were terminated in 2012, U.S. Bank was still the holder of the Note – a fact that is uncontested in the Complaint. As the holder, U.S. Bank, through Wells Fargo its servicer, had standing to initiate the foreclosure, object to Appellants' Chapter 13 plan, and file a proof of claim. There being no *plausible* claim of fraud, the bankruptcy court did not err in dismissing Count I. There being no *possible* claim of fraud, the bankruptcy court did not err in dismissing Count I with prejudice.

> C. Counts Two Through Nine Of The Complaint Cannot Survive Because The Bankruptcy Court Concluded That As A Matter Of Law There Was No Fraud.

The remaining eight counts, as drafted, were all built upon Appellants' fraud allegations. Having found no fraud, the bankruptcy court correctly dismissed Counts II through IX, but then gave Appellants leave to refile them under an amended set of allegations. Order Dismissing Complaint, Apx. 285-287. The court even encouraged Appellants to file a new objection to Proof of

24

Claim No. 4-2, as its original objection had been dismissed for insufficient service. Apx. 286, 312. The bankruptcy court initially gave Appellants two months, from March 4, 2014 to May 3, 2014, to "file either an objection to Claim No. 4-2 or an amended complaint or both, or the Complaint shall be dismissed with prejudice." Apx. 285-287. Then, in considering Appellants' Motion for Reconsideration, the bankruptcy court extended for another 2½ months - until July 23, 2014 - the time for Appellants to "file either an amended complaint or objection to claim, or both, or the Complaint shall be dismissed with prejudice." Apx. 297-298. Notwithstanding the court's generous leave, Appellants chose not to amend their Complaint or to file an objection to the Proof of Claim. They are now bound by the allegations of their initial Complaint that, for the reasons discussed above, fail to state a claim upon which relief can be granted. The bankruptcy court did not err in dismissing all nine counts of the Complaint, and the district court did not err in affirming the order of dismissal and subsequent order denying reconsideration.

## II. THE DISTRICT COURT DID NOT ERR IN CONSIDERING JUDGE GORDON'S MEMORANDUM OPINION OF NOVEMBER 5, 2014

Among Appellants' grounds to set aside the district court's decision is that, after the appeal was fully briefed, Judge Gordon filed a Memorandum

Opinion in Support of Orders Dismissing Complaint and Denying Motions to Reconsider, in which he further explained his reasons for dismissing Count I, with prejudice, and Counts II through IX, without prejudice.  As the district court observed, Judge Gordon filed his Memorandum Opinion under the authority of *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991), in which this Court explained:

> The general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals. 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11 (2d ed. 1991); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure* § 3949 (1977). *See Lewis v. Tobacco Workers' Int'l Union,* 577 F.2d 1135 (4th Cir.1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979).

> The rule is not absolute, however. One exception to the rule is that a district court does not lose jurisdiction to proceed as to matters in aid of the appeal. *In re Thorp,* 655 F.2d 997, 998 (9th Cir.1981); 9 *Moore's Federal Practice* ¶ 203.11; 16 *Federal Practice & Procedure* § 3949 & 1991 Supp. The rule is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Thorp,* 655 F.2d at 998 (quoting 9 *Moore's Federal Practice* ¶ 203.11).

> The district court's order filed March 12 was filed after the March 11 notice of appeal was filed. However, the district court had already announced its ruling in the March 11 hearing prior to the filing of the notice of appeal. The written order simply memorialized the district court's oral ruling. It aids the appeal by giving this Court a written order to review. Therefore, the district court had jurisdiction to enter the March 12 order. *See Blaine v. Whirlpool Corp.,* 891 F.2d 203, 204 (8th Cir.1989).

The March 15 order was filed after two notices of appeal were filed and dealt with the subject of the appeals. The order expanded the scope of the earlier orders by allowing questioning into communications which occurred prior to the meeting among the attorney, appellant, and his accountant. Nevertheless, we find that the district court had jurisdiction to enter the March 15 order. The March 15 hearing addressed for the first time the specific issue raised by appellant's motions and was, therefore, directly in aid of these appeals. The participation of a judge of this Court in the process made it highly unlikely that the hearing would result in any duplication of effort. Therefore, we find that the district court had jurisdiction to enter all three of the orders appealed from by the appellant.

*Id.* at 1190.

Granted, Judge Gordon's Memorandum Opinion was filed not within days of Appellants' notice of appeal, but well after all parties had fully briefed the issues. In many instances, this could be prejudicial to the litigants. But here, Judge Gordon's written opinion only expanded upon the reasons he had previously given from the bench and in his orders for dismissing the Complaint. Indeed, the written opinion closely matches the oral opinion. Apx. 209-232. Moreover, none of the parties moved the district court to exclude the Memorandum Opinion from consideration, or requested leave to file a supplemental brief. As this Court has repeatedly held, issues raised for the first time on appeal generally will not be considered. *Muth v. United States,* 1 F.3d 246, 250 (4th Cir. 1993). Having not timely objected, Appellants cannot

be heard to complain that the district court erred in considering Judge Gordon's Memorandum Opinion of November 5, 2014.[15]

## **Conclusion**

The Complaint is devoid of credible factual allegations to support Appellants' claims that U.S. Bank, through its servicer Wells Fargo (1) was not the holder of the Note as alleged Counts I and II, and (2) filed a defective proof of claim as asserted in Count III. As the Complaint failed to credibly plead a defective proof of claim, Count IX – raising a claim objection – was properly dismissed, without prejudice. The district court did not err in affirming dismissal. As the Complaint failed to state claims upon which relief can be granted, this Court should now uphold the decision of the district court, which affirmed the bankruptcy court's dismissal of Count I, with prejudice, and Counts II through IX, without prejudice.

---

[15] In fact, Judge Hollander did not rule upon the appeal until September 30, 2015, nearly 11 months after Judge Gordon entered his Memorandum Opinion. There was, therefore, ample time for Appellants to supplement their brief or to otherwise object to the bankruptcy court's late filing before the district court resolved the appeal against them.

## **Request for Oral Argument**

Appellees, Wells Fargo Bank, N.A., U.S. Bank, National Association, Carrington Mortgage Services, LLC, and Christiana Trust, a Division of Wilmington Saving Fund Society, FSB, request oral argument on this appeal.

/s/ Douglas B. Riley
Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
Tel: 410-494-7777, Fax: 410-494-1658
Email: dbriley@tph-law.com

Counsel for Wells Fargo Bank, N.A. and U.S. Bank, National Association, Appellees

/s/ Kyle J. Moulding
Kyle James Moulding
McCabe, Weisberg, and Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Tel: 301-490-3361, Fax: 301-490-1568
Email: kmoulding@mwc-law.com

Counsel for Carrington Mortgage Services, LLC, and Christiana Trust, a Division of Wilmington Saving Fund Society, FSB, Appellees

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e)

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because it contains 7,767 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/   Douglas B. Riley
Attorneys for Appellees,
Wells Fargo Bank, N.A. and U.S. Bank, National Association

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this <u>18th</u> day of March, 2016, copies of the foregoing Brief of Appellees were served electronically through the Court's CM/ECF transmission facilities, as authorized by Local Rule 25, on each party registered as a CM/ECF participant who has consented to electronically service and, if not a party registered as a CM/ECF participant, then mailed, first-class mail, postage prepaid, fully addressed as follows:

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876
Email: www.haegerlaw.com

*Attorney for Appellants,*
*Jeffrey V. Howes and Tonya H. Howes*

Gregory Bryl, Esquire
Bryl Law Offices
1629 K Street NW, Suite 300
Washington, DC 20006
help@bryllaw.com

*Attorney for Appellees, Carrington Mortgage Services, LLC and Wilmington Savings Fund Society, FSB*

  /s/  Douglas B. Riley
Douglas B. Riley

# INDEX TO ADDENDUM

Docket Sheet for *Howes v. Wells Fargo Bank, N.A., et al.,* United States District Court for the District of Maryland, Case # 1:14-cv-02814-ELH — ADD. 1 - 8

Appellants' Second Amended Brief — ADD. 9 - 64

Brief of Appellees, U.S. Bank, N.A. and Wells Fargo Bank, N.A. — ADD. 65 - 95

Brief of Appellees, Carrington Mortgage Services, LLC and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2 — ADD. 96 - 109

Appellants' Reply Brief — ADD. 110 - 126

Memorandum Opinion in Support of Orders Dismissing Complaint and Denying Motions to Reconsider — ADD. 127 - 151

Memorandum Opinion — ADD. 152 - 250

Notice of Appeal to United States Court of Appeals For the Fourth Circuit — ADD. 251 – 254

*Jaimes v. JPMorgan Chase Bank*, not reported in F.Supp.2d, 2013 WL677740 (N.D.Ill.) — ADD. 255 – 263

Order Dismissing Case with Prejudice to Debtor's Refiling for Twenty-Four Months (entered March 4, 2016) — ADD. 264 - 266

APPEAL,CLOSED

# U.S. District Court
# District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:14-cv-02814-ELH

Howes v. Wells Fargo Bank, N.A. et al
Assigned to: Judge Ellen L. Hollander
Related Case: 1:15-cv-01617-ELH
Case in other court: U.S. Bankruptcy Court, 12-30614 &
                13-00510
                Fourth Circuit Court of Appeals,
                15-02332
Cause: 11:101 Bankruptcy (Definitions)

Date Filed: 09/04/2014
Date Terminated: 09/30/2015
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal
(801)
Jurisdiction: Federal Question

**Appellant**

**Jeffrey V. Howes**                    represented by    **Robert John Haeger**
                                                         Haeger Law
                                                         11403 Seneca Forest Circle
                                                         Germantown, MD 20876
                                                         13016709787
                                                         Fax: 13016706291
                                                         Email: ecf@haegerlaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Selene Finance LP**

V.

**Appellee**

**Wells Fargo Bank, N.A.**              represented by    **Douglas B Riley**
                                                         Treanor Pope and Hughes PA
                                                         500 York Rd
                                                         Towson, MD 21204
                                                         14104947777
                                                         Fax: 14104941658
                                                         Email: dbriley@tph-law.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Appellee**

**US Bank, National Association**          represented by  **Douglas B Riley**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Appellee**

**Carrington Mortgage Services, LLC**      represented by  **Michael Thomas Cantrell**
                                                           McCabe Weisberg and Conway PC
                                                           312 Marshall Ave Ste 800
                                                           Laurel, MD 20707
                                                           13014903361
                                                           Fax: 13014901568
                                                           Email: MdFederalEfilings@mwc-
                                                           law.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kyle James Moulding**
                                                           McCabe Weisberg and Conway LLC
                                                           312 Marshall Ave Ste 800
                                                           Laurel, MD 20707
                                                           3014903361
                                                           Fax: 3014901568
                                                           Email: kmoulding@mwc-law.com
                                                           *ATTORNEY TO BE NOTICED*

**Appellee**

**Christiana Trust, a Division of          represented by  **Michael Thomas Cantrell**
Wilmington Savings Fund Society,                           (See above for address)
FSB**                                                      *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kyle James Moulding**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Appellee**

**Selene Finance LP**                      represented by  **Michael Thomas Cantrell**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Kyle James Moulding**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Debtor**

**Jeffrey V. Howes**                    represented by   **Robert John Haeger**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


**Trustee**

**Ellen W. Cosby**                      represented by   **Ellen W Cosby**
                                                        Chapter 13 Trustee
                                                        PO Box 20016
                                                        Baltimore, MD 21284
                                                        14108255923
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Susan C Scanlon**
                                                        Office of Ellen W Cosby, Chapter 13
                                                        Trustee
                                                        300 E Joppa Rd., Ste. 409
                                                        Towson, MD 21286
                                                        14108255923
                                                        Fax: 14108255904
                                                        Email: sscanlon@ch13balt.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*


| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/04/2014 | 1 | NOTICE OF APPEAL FROM BANKRUPTCY COURT (Maryland). Adversary Proceeding Case #13-00510 and Bankruptcy Petition Case #12-30614, filed by Jeffrey V. Howes. (Attachments: # 1 Transmittal, # 2 Adversary Case Docket Sheet with designations , # 3 Bankruptcy Docket Sheet, APPELLANT DESIGNATIONS FROM ADVERSARY CASE# 13-00510: # 4 Adversary case pleading #1, # 5 Adversary case pleading #1-1, # 6 Adversary case pleading #1-2, # 7 Adversary case pleading #1-3, # 8 Adversary case pleading #1-4, # 9 Adversary case pleading #1-5, # 10 Adversary case pleading #1-6, # 11 Adversary case pleading #5, # 12 Adversary case pleading #5-1, # 13 Adversary case pleading #8, # 14 Adversary case pleading #8-1, # 15 Adversary case pleading #8-2, # 16 Adversary case pleading #8-3, # 17 Adversary case pleading #, # 18 |

|  |  |  |
|---|---|---|
|  |  | Adversary case pleading #5, # 19 Adversary case pleading #11, # 20 Adversary case pleading #12, # 21 Adversary case pleading #12-1, # 22 Adversary case pleading #12-2, # 23 Adversary case pleading #13, # 24 Adversary case pleading #14, # 25 Adversary case pleading #16, # 26 Adversary case pleading #17, # 27 Adversary case pleading #17-1, # 28 Adversary case pleading #18, # 29 Adversary case pleading #21, # 30 Adversary case pleading #21-1, # 31 Adversary case pleading #22, # 32 Adversary case pleading #24, # 33 Adversary case pleading #26, # 34 Adversary case pleading #26-1, # 35 Adversary case pleading #27, # 36 Adversary case pleading #27-1, # 37 Adversary case pleading #27-2, # 38 Adversary case pleading #27-3, # 39 Adversary case pleading #28, # 40 Adversary case pleading #30, # 41 Adversary case pleading #30-1, # 42 Adversary case pleading #34, # 43 Adversary case pleading #34-1, # 44 Adversary case pleading #35, # 45 Adversary case pleading #36, # 46 Adversary case pleading #42, # 47 Adversary case pleading #43, # 48 Adversary case pleading (Entered: 09/05/2014) |
| 09/04/2014 | 2 | APPELLANT DESIGNATIONS FROM BANKRUPTCY PETITION CASE # 12-30614 by Jeffrey V. Howes (and Bankrupty case docket sheet with designations) (Attachments: # 1 Bankruptcy case pleading #25, # 2 Bankruptcy case pleading #36, # 3 Bankruptcy case pleading #36-1, # 4 Bankruptcy case pleading #51, # 5 Bankruptcy case pleading #51-1, # 6 Bankruptcy case pleading #57, # 7 Bankruptcy case pleading #57-1, # 8 Bankruptcy case pleading #61, # 9 Bankruptcy case pleading #61-1, # 10 Bankruptcy case pleading #61-2-2, # 11 Bankruptcy case pleading #61-3, # 12 Bankruptcy case pleading #61-4, # 13 Bankruptcy case pleading #61-5, # 14 Bankruptcy case pleading #61-6, # 15 Bankruptcy case pleading #61-7, # 16 Bankruptcy case pleading #61-8, # 17 Bankruptcy case pleading #61-9, # 18 Bankruptcy case pleading #61-10, # 19 Bankruptcy case pleading #61-11, # 20 Bankruptcy case pleading #61-12, # 21 Bankruptcy case pleading #65, # 22 Bankruptcy case pleading #83, # 23 Bankruptcy case pleading #111)(dass, Deputy Clerk) Modified on 9/5/2014 (dass, Deputy Clerk). (Entered: 09/05/2014) |
| 09/05/2014 |  | Set Deadlines: Appellant's Brief due by 9/19/2014. (dass, Deputy Clerk) (Entered: 09/05/2014) |
| 09/05/2014 | 3 | Bankruptcy Letter to Counsel re: Briefs and ECF filing requirements. (dass, Deputy Clerk) (Entered: 09/05/2014) |
| 09/10/2014 | 4 | SUPPLEMENTAL DESIGNATION OF RECORD by Jeffrey V. Howes (Attachments: # 1 Adversary Proceeding case no. 13-0510 Docket Sheet, # 2 Adversary case pleading #46, # 3 Adversary case pleading #46-1, # 4 Adversary case pleading #, # 5 Adversary case pleading #47-1)(dass, Deputy Clerk) (Entered: 09/11/2014) |
| 09/18/2014 | 5 | Consent MOTION for Extension of Time to File *Appellants' Brief to September 29, 2014* by Jeffrey V. Howes Responses due by 10/6/2014 (Attachments: # 1 Text of Proposed Order)(Haeger, Robert) (Entered: 09/18/2014) |

| 09/18/2014 | 6 | ORDER granting 5 Consent Motion for Extension of Time to File Apellants' Brief. Signed by Judge Ellen L. Hollander on 9/18/14. (dass, Deputy Clerk) (Entered: 09/18/2014) |
| 09/18/2014 | | Set/Reset Deadlines: Appellant Brief due by 9/29/2014. (dass, Deputy Clerk) (Entered: 09/18/2014) |
| 09/29/2014 | 7 | Appellant's BRIEF by Jeffrey V. Howes. Appellee Brief due by 10/17/2014. (Haeger, Robert) (Entered: 09/29/2014) |
| 10/01/2014 | 8 | Appellant's AMENDED BRIEF by Jeffrey V. Howes. Appellee Brief due by 10/20/2014. (Haeger, Robert) Modified on 10/2/2014 (dass, Deputy Clerk). (Entered: 10/01/2014) |
| 10/05/2014 | 9 | Appellant's Appendix to 8 Amended BRIEF by Jeffrey V. Howes. (Haeger, Robert) Modified on 7/2/2015 (hmls, Deputy Clerk). (Entered: 10/05/2014) |
| 10/06/2014 | 10 | MOTION to Supplement Record on Appeal re 9 Appellant's Brief *Appendix* by Jeffrey V. Howes Responses due by 10/23/2014 (Attachments: # 1 Text of Proposed Order)(Haeger, Robert) (Entered: 10/06/2014) |
| 10/13/2014 | 11 | Appellee's BRIEF by US Bank, National Association, Wells Fargo Bank, N.A.. Appellant Reply Brief due by 10/27/2014. (Riley, Douglas) (Entered: 10/13/2014) |
| 10/14/2014 | 12 | MOTION for Extension of Time to File Response/Reply *to Appellants' Brief* by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Responses due by 10/31/2014 (Attachments: # 1 Text of Proposed Order)(Cantrell, Michael) (Entered: 10/14/2014) |
| 10/14/2014 | 13 | ORDER granting Appellees' 12 Motion for Extension of Time to File Response to Appellants Brief. Signed by Judge Ellen L. Hollander on 10/14/14. (dass, Deputy Clerk) (Entered: 10/15/2014) |
| 10/16/2014 | 14 | ORDER granting Appellants' 10 Motion to supplement record on appeal; setting deadline that Appellees may move to rescind order. Signed by Judge Ellen L. Hollander on 10/15/14. (dass, Deputy Clerk) (Entered: 10/16/2014) |
| 10/16/2014 | 15 | Appellee's BRIEF by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Appellant Reply Brief due by 10/30/2014. (Moulding, Kyle) (Entered: 10/16/2014) |
| 10/27/2014 | 16 | Consent MOTION for Extension of Time to File Response/Reply as to 11 Appellee's Brief *to October 30, 2014* by Jeffrey V. Howes Responses due by 11/13/2014 (Attachments: # 1 Text of Proposed Order)(Haeger, Robert) (Entered: 10/27/2014) |
| 10/29/2014 | 17 | ORDER granting 16 Unopposed Motion for Extension of Time to File Appellants' First Reply Brief. Signed by Judge Ellen L. Hollander on 10/28/2014. (dass, Deputy Clerk) (Entered: 10/29/2014) |

| 10/30/2014 | 18 | Appellant's REPLY BRIEF by Jeffrey V. Howes. (Haeger, Robert) (Entered: 10/30/2014) |
|---|---|---|
| 10/30/2014 | 19 | Appellant's BRIEF by Jeffrey V. Howes. Appellee Brief due by 11/17/2014. (Haeger, Robert) (Entered: 10/30/2014) |
| 10/31/2014 | 20 | MOTION to Strike 19 Appellant's Brief *[Appellants' Second Amended Brief filed on October 30, 2014]* by US Bank, National Association, Wells Fargo Bank, N.A. Responses due by 11/17/2014 (Attachments: # 1 Text of Proposed Order Striking Appellants' Second Amended Brief)(Riley, Douglas) (Entered: 10/31/2014) |
| 11/05/2014 | 21 | NOTICE of Appearance by Kyle James Moulding on behalf of Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP (Moulding, Kyle) (Entered: 11/05/2014) |
| 11/08/2014 | 22 | RESPONSE to Motion re 20 MOTION to Strike 19 Appellant's Brief *[Appellants' Second Amended Brief filed on October 30, 2014]* filed by Jeffrey V. Howes. Replies due by 12/1/2014. (Attachments: # 1 Exhibit Redlined Version, # 2 Text of Proposed Order)(Haeger, Robert) (Entered: 11/08/2014) |
| 12/15/2014 | 23 | Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* by Jeffrey V. Howes Responses due by 1/5/2015 (Attachments: # 1 Exhibit 1-Bankruptcy Continuance Motions, # 2 Exhibit 2-Amended Chapter 13 Plan, # 3 Text of Proposed Order)(Haeger, Robert) (Entered: 12/15/2014) |
| 12/15/2014 | 24 | ORDER re 23 Appellants Emergency Motion to Stay Plan Confirmation Pending Appeal filed by Jeffrey V. Howes. Signed by Judge Ellen L. Hollander on 12/15/2014. (jnls, Deputy Clerk) (Entered: 12/15/2014) |
| 12/15/2014 | 25 | RESPONSE to Motion re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Replies due by 1/5/2015. (Attachments: # 1 Exhibit Objection to Chapter 13 Plan by Appellee, # 2 Exhibit Trustee's Opposition to Continuance)(Moulding, Kyle) (Entered: 12/15/2014) |
| 12/15/2014 | 26 | RESPONSE to Motion re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by US Bank, National Association, Wells Fargo Bank, N.A.. Replies due by 1/5/2015. (Riley, Douglas) (Entered: 12/15/2014) |
| 12/15/2014 | 27 | RESPONSE in Opposition re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by Ellen W. Cosby. Replies due by 1/5/2015. (Scanlon, Susan) (Entered: 12/15/2014) |
| 12/16/2014 | 28 | NOTICE of Appearance by Susan C Scanlon on behalf of Ellen W. Cosby (Scanlon, Susan) (Entered: 12/16/2014) |

| 12/16/2014 | 29 | ORDER granting 23 Emergency Motion to Stay Plan Confirmation Pending Appeal subject to the posting of a bond by appellants within 24 hours of the docketing of this order in the bond amount of $100,000. Signed by Judge Ellen L. Hollander on 12/16/2014. (jnls, Deputy Clerk) (Entered: 12/16/2014) |
| --- | --- | --- |
| 09/30/2015 | 30 | MEMORANDUM OPINION. Signed by Judge Ellen L. Hollander on 9/30/2015. (jnls, Deputy Clerk) (Entered: 10/01/2015) |
| 09/30/2015 | 31 | ORDER denying 20 Motion of Wells Fargo and US Bank to Strike; the Bankruptcy Courts Order entered May 12, 2014, and its Order entered July 22, 2014, are AFFIRMED; denying 1 Appeal. Signed by Judge Ellen L. Hollander on 9/30/2015. (jnls, Deputy Clerk) (Entered: 10/01/2015) |
| 10/27/2015 | 32 | NOTICE OF APPEAL as to 31 Order on Motion to Strike, by Jeffrey V. Howes. Filing fee $ 505, receipt number 0416-5674561. (Haeger, Robert) Modified on 10/28/2015 (sls, Deputy Clerk). (Entered: 10/27/2015) |
| 10/28/2015 | 33 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 32 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (sls, Deputy Clerk) (Entered: 10/28/2015) |
| 10/29/2015 | 34 | USCA Case Number 15-2332 for 32 Notice of Appeal filed by Jeffrey V. Howes. Case Manager - Richard Sewell (sls, Deputy Clerk) (Entered: 10/29/2015) |
| 11/04/2015 | 35 | ORDER re teleconference. Signed by Judge Ellen L. Hollander on 11/4/2015. (jnls, Deputy Clerk) (Entered: 11/05/2015) |
| 11/10/2015 | 36 | DESIGNATION of Record on Appeal by Jeffrey V. Howes re 32 Notice of Appeal (Haeger, Robert) (Entered: 11/10/2015) |
| 11/10/2015 | 37 | DESIGNATION of Record on Appeal by Jeffrey V. Howes re 32 Notice of Appeal (Haeger, Robert) (Entered: 11/10/2015) |
| 11/23/2015 | 38 | ORDER re teleconference. Signed by Judge Ellen L. Hollander on 11/23/2015. (jnls, Deputy Clerk) (Entered: 11/23/2015) |
| 12/08/2015 | 39 | MEMORANDUM. Signed by Judge Ellen L. Hollander on 12/8/2015. (jnls, Deputy Clerk) (Entered: 12/09/2015) |
| 12/08/2015 | 40 | ORDER dismissing ELH-15-1617 as moot. Signed by Judge Ellen L. Hollander on 12/8/2015. (jnls, Deputy Clerk) (Entered: 12/09/2015) |

**PACER Service Center**

**Transaction Receipt**

02/29/2016 13:00:54

| PACER Login: | tp0047:2647332:0 | Client Code: | |
| --- | --- | --- | --- |

| Description: | Docket Report | Search Criteria: | 1:14-cv-02814-ELH |
|---|---|---|---|
| Billable Pages: | 5 | Cost: | 0.50 |

APPEAL NO. 1:14-cv-02814-ELH
(BANKRUPTCY CASE NO. 12-30614-RAG
& ADV. PROC. 13-00510-RAG)

---

IN THE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

---

IN THE MATTER OF JEFFREY V. HOWES,

*Debtor*

JEFFREY V. HOWES, ET AL.

*Plaintiff-Appellants*

---

Wells Fargo Bank N.A., et al.

*Defendant-Appellees*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

---

APPELLANTS' SECOND AMENDED BRIEF

---

ROBERT J. HAEGER, BAR NO. 25434
ATTORNEY FOR APPELLANTS  JEFFREY V. HOWES AND TONYA H. HOWES
11403 SENECA FOREST CIRCLE
GERMANTOWN, MD 20876
(888) 463-3520; www.haegerlaw.com
BOARD CERTIFIED – CONSUMER BANKRUPTCY LAW
– AMERICAN BOARD OF CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF BASIS OF APPELLATE JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW. . . 1
    A.    Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Course of the Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    Disposition Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    D.    Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        THE BANKRUPTCY COURT ERRED DISMISSING COUNT 1 OF THE
        COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A FRAUD
        CLAIM, RELYING ON THE JAIMES CASE, RATHER THAN THE
        ESTABLISHED MARYLAND PRECEDENT IN ANDERSON, IN ADOPTING
        THE "TWO MASTERS" RULE AND HOLDING THAT TRUST
        TERMINATION DID NOT MATTER, IMPROPERLY CONSIDERED
        FATALLY DEFECTIVE EVIDENCE EXTRINSIC TO THE COMPLAINT IN A
        FUNDAMENTALLY UNFAIR PROCEDURE, AND DISMISSED COUNTS 2
        THROUGH 9 ALTHOUGH THOSE COUNTS CLEARLY STATED VALID
        CLAIMS FOR RELIEF WITHOUT REGARD TO THE TRUST
        TERMINATION ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Count 1 - Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        Complaint Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        All Elements of Concealment Fraud Alleged. . . . . . . . . . . . . . . . . . . . 10
            1.    Duty of Disclosure Owed. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.    Failure to Disclose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            3.    Intent to Defraud or Deceive. . . . . . . . . . . . . . . . . . . . . . . . . 11
            4.    Action Taken in Justifiable Reliance. . . . . . . . . . . . . . . . . . . 11
            5.    Damage Suffered from Concealment. . . . . . . . . . . . . . . . . . . 11
        Fraud on the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        The Jaimes Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            Absurd Jaimes "Two Masters" Rule. . . . . . . . . . . . . . . . . . . . . 21
        Anderson v. Burson: Burden on Appellees to Prove Chain of Title. . . . . . . . . . 22
        Leave to Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

|   |   |   |
|---|---|---|
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| B. | <u>Count 2 - Determination of Scope, Extent and Validity of Lien</u>. . . . . . . . . . . . . | 24 |
|   | Complaint Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 |
|   | No Extrinsic Evidence of Holder Status. . . . . . . . . . . . . . . . . . . . . . | 27 |
|   | Extrinsic Evidence - Defective Ownership Affidavit. . . . . . . . . . . . . . . . . . | 29 |
|   |     Defective Lost Note Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |
|   |     Defective 2013 Trust Assignment. . . . . . . . . . . . . . . . . . . . . . | 31 |
|   |     Defective 2014 Assignment. . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
|   |     Extrinsic Evidence - Defective Procedure. . . . . . . . . . . . . . . . . . . | 33 |
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33 |
| C. | <u>Count 3 – Sanctions for Defective Proof of Claim</u>. . . . . . . . . . . . . . . . | 33 |
|   | Complaint Allegations - Count 3. . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 38 |
| D. | <u>Claim 4 - Unlawful Inspection Fees</u>. . . . . . . . . . . . . . . . . . . . . . . . | 38 |
|   | Complaint Allegations - Count 4. . . . . . . . . . . . . . . . . . . . . . . . . . . | 39 |
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
| E. | <u>Counts 5-8</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 40 |
|   | 1.    Count V - TILA Recoupment. . . . . . . . . . . . . . . . . . . . . . . . | 41 |
|   | 2.    Count VI - FDCPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 42 |
|   | 3.    Count VIII - Maryland Consumer Protection Act. . . . . . . . . . . . . . | 43 |
|   | Count VI (Fair Debt Collection Practices Act). . . . . . . . . . . . . . . . . . | 44 |
|   | Count VII (Violation of Maryland Consumer Debt Collection Act). . . . . . . . . . | 45 |
|   | Count VIII (Violation of Maryland Consumer Protection Act). . . . . . . . . . . . | 45 |
|   | Plan Objection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 45 |
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 46 |
| F. | <u>Count 9 – Claim Objection</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 46 |
|   | Complaint Allegations - Count 9. . . . . . . . . . . . . . . . . . . . . . . . . . . | 47 |
|   | Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 48 |

ii

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).. . . . . 25

*Woodruff v. Chase HomeFinance, LLC*, 2010 WL 386209 (Bankr. M.D. Ala 2010) . . . . . . . . 13

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . 25

*Galante v. Ocwen Loan Servicing LLC* (D. Md. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Galante v. Ocwen Loan Servicing LLC*, Civ. No. ELH-13-1939 (D. Md., July 18, 2014). . . . . . 23

*Great Coastal Exp., Inc. V. International Broth. Of Teamsters, Chauffers, Warehouseman and Helpers of America*, 675 F. 2d 1349, 1356 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Coxson*, 43 F.3d 189 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*In re Nosek*, 386 B.R. 374 (Bankr. D. Mass. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Patterson*, Case No. 12-50201 (Bankr. W.D.N.C., 2012).. . . . . . . . . . . . . . . . . . . . . . . . . 31

*Jaimes v. JPMorgan Chase Bank, N.A.*, WL 677740 (N.D .Ill. February 25, 2013). . . . . . . . 15-21

**FEDERAL STATUTES**

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

11 U.S.C. § 502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 46

11 U.S.C. § 506. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

15 U.S.C. § 1640(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

15 U.S.C. § 1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

15 U.S.C. §§ 1639c(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

iii

## FEDERAL RULES

Bankruptcy Rule 3001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 30, 33-35, 37, 38, 46

Fed. R. Civ. P. 15(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## STATE CASES

*Anderson v. Burson*, 424 Md. 232; 35 A.3d 452; 2011 Md. LEXIS 777 (Md. 2011). . 15, 16, 21, 22, 25, 30, 32, 33

*Bank of New York v. Romero*, 320 P.3d 1, 11 (NM 2014). . . . . . . . . . . . . . . . . . . . . . . 18

*JP Morgan Chase Bank, Natl. Assn. v. Butler*, 2013 N.Y. Misc. LEXIS 2761, 2013 N.Y. Slip Op 51050, at 2.¶2, (Sup. Ct. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Green v. H&R Block, Inc.*, 355 Md. 488, 735 A.2d 1039 (Md. 1999). . . . . . . . . . . . . . . . . . 6

*Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 388-389, 744 A.2d 549, 2000 Md. LEXIS 11 (Md. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Pines Plaza Ltd. P'ship v. Berkley Trace, LLC,* 431 Md. 652, 675-676, 66 A.3d 720, 2013 Md. LEXIS 296 (Md. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Pines Point Marina v. Rehak,* 406 Md. 613, 641, 961 A.2d 574, 591 (2008) . . . . . . . . . . . 16, 23

*Stewart v. Bierman*, 859 F. Supp. 2d 754, 760 (D. Md., 2012), *aff'd* (4th Cir. June 12, 2013) . . . 43

## STATE & LOCAL STATUTES

Md. Code Ann., Commercial Law Article, § 3-201. . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 32

Md. Code Ann., Commercial Law Article, § 12-1001(f). . . . . . . . . . . . . . . . . . . . . . . . . 39

Md. Code Ann., Commercial Law Article, § 12-1001(g). . . . . . . . . . . . . . . . . . . . . . . . . 39

Md. Code Ann., Commercial Law Article, § 12-1027 . . . . . . . . . . . . . . . . . . . . . . . . . 38-40

Md. Code Ann., Commercial Law Article,  §§ 13-101 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . 43

Md. Code Ann., Real Prop. Article, § 7-105.1(d-1). . . . . . . . . . . . . . . . . . . . . . . . 17, 28, 30

iv

Md. Code Ann., Real Prop. Article, § 7-105.1(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

v

## APPELLANTS BRIEF

Appellants Jeffrey V. Howes and Tonya H. Howes, by their attorney, Robert J. Haeger, hereby file this Second Amended Brief in order to add references to the Appendix.

## I.    STATEMENT OF BASIS OF APPELLATE JURISDICTION

Appellate jurisdiction is based on Rule 8001(a) of the Federal Rules of Bankruptcy Procedure.

## II.    STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW

### A.    Issues Presented

1.    Did the bankruptcy court err in looking beyond the four corners of the Complaint, when ruling on Defendants' motions to dismiss, relying on patently false and defective ownership documents provided by Defendant Carrington, at the court's direction, to prove its right to enforce Plaintiffs' Note, and rejecting Plaintiffs' allegations of misrepresentation and fraudulent intent?

2.    Did the bankruptcy court err in granting Defendants' motions to dismiss for failure to state claims upon which relief can be granted, and dismissing all nine counts of the Complaint, including Counts 2 and 9 although not all Defendants requested their dismissal, since there were other plausible claims for relief that were independent of fraud or trust termination?

3.    Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1) for failure to state a valid claim, holding that trust termination did not affect the trust's standing to enforce Plaintiffs' mortgage, and that Defendants did not act with fraudulent intent.

4.    Did the bankruptcy court err, when ruling on Defendants' motions to

dismiss, in finding that the trust holding Plaintiffs' mortgage did not cease to exist before Wells Fargo executed and filed multiple documents on its behalf, including the Second Foreclosure Case, Objection to Plan Confirmation, and the purported assignment of the Deed of Trust dated October 30, 2013?

5.    Did the bankruptcy court err in directing Plaintiffs to omit, when amending the Complaint, any reference to fraud or misrepresentation arising from the lack of standing to foreclose or file bankruptcy claims by the trust that held Plaintiffs' mortgage?

**B.    Standard of Review**

The standard of review is set forth in Bankruptcy Rule 8013 and provides that conclusions of law are reviewed *de novo* and findings of fact shall not be set aside unless clearly erroneous.

**III.    STATEMENT OF THE CASE**

**A.    Nature of the Case**

This case involves the all too familiar problems suffered by American consumers trying to deal with the mortgage industry, but it also includes unique facts and legal issues: (a) thousands of hours in pointless efforts to get a loan modification based on misrepresentations about eligibility; (b) mortgage companies trying to recover foreclosure fees for cases dismissed due to materially false affidavits; (c) mortgage companies trying to recover foreclosure fees for a second foreclosure case filed after the principal ceased to exist, and also containing materially false affidavits; (d) mortgage companies filing false proofs of claim and a plan objection in the subject bankruptcy case, in an effort to hide the fact that the second foreclosure case was a nullity, having been filed without standing, in order to recover money not owed; (e) statutory

2

violations for unlawful inspection fees, failure to notify of alleged mortgage transfers, improper debt collection conduct, and unfair and deceptive acts and practices; and (f) misrepresentations to the bankruptcy court regarding Holder status and mortgage assignments.

### B.    Course of the Proceedings

Jeffrey Howes filed the subject bankruptcy case to stop a foreclosure sale of the Howes' home that was prosecuted in a foreclosure case that had been filed by a terminated mortgage trust. The terminated trust filed a proof of claim in the bankruptcy case and objected to approval of Mr. Howes' chapter 13 plan. Wells Fargo filed an amended proof of claim as creditor. Mr. Howes filed an objection to these claims. The bankruptcy court denied the objection after the claims were transferred for lack of notice on the transferees. Appellants then commenced the subject adversary proceeding, which incorporated Ms. Howes' claim objection.

Appellees moved to dismiss the Complaint pursuant to Bankruptcy Rules 7012(b)(6), Bankruptcy Rule 7009, and Federal Rules of Civil Procedure 12(b)(6) and 9(b), for failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and that some Counts are time barred. Appellants responded.

Mr. Howes efforts to have his plan approved have been repeatedly and considerably delayed while the proof of claim problems addressed in the Complaint are resolved.

### C.    Disposition Below

In an oral ruling on March 4, 2014, the bankruptcy court dismissed Count 1 with prejudice, and Counts 2-9 with leave to amend, and ordered the Holder of the subject note to prove its right to enforce the note. The ruling was based primarily on the Court's finding that the foreclosing Trust did not terminate, as Plaintiffs alleged in their Complaint, since Plaintiffs admit

they have not paid off their loan. The alternate basis for dismissal was that trust termination does not matter, and did not affect standing to foreclose, or the right of the terminated trust to continue to file false papers in the bankruptcy court. Appellants moved to reconsider the court's oral ruling, arguing the court committed clear error, and objected to the ownership proof as fatally flawed that they had received as a result of the court's ruling. The court denied the motion to reconsider, but admitted its possibly mistaken reliance on there having been no trust termination, resting its dismissal instead on trust termination being irrelevant to fraud or standing to foreclose, but not explaining the basis for dismissal of the remaining counts.

> ### D.    Facts

Since this appeal is before the Court on dismissal of the Complaint in its entirety for failure to state claims, the facts relevant to the issues presented are set forth in the Complaint and will not be set forth separately here. However, the facts may be summarized as follows.

This adversary proceeding involves Plaintiffs' mortgage on their home, the actions Defendants have taken to enforce it, and the proofs of claim regarding it filed herein. Plaintiffs filed a nine count complaint against Defendants Wells Fargo Bank, N.A. ("Wels Fargo"), U.S. Bank, National Association ("US Bank"), Carrington Mortgage Services, LLC ("Carrington"), and Christiana Trust ("WSFS Bank"), a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (the "Stanwich Trust"), alleging fraud on the court (Count I) for trying to collect foreclosure fees from Plaintiffs by hiding the fact that a foreclosure case was prosecuted by US Bank as trustee for a trust ("Trust") that no longer owned Plaintiffs loan and ceased to exist before the foreclosure case was filed. Plaintiffs also sought a determination of Defendants' rights in the mortgage on their home (Count II), sanctions for Rule

4

3001 violations (Count III), damages for unlawful inspection fees (Count IV), failure to provide

Truth in Lending Act transfer notices (Count V), violations of the Fair Debt Collection Practices

Act (Count VI), violations of the Maryland Consumer Debt Collection Act (Count VII),

violations of the Maryland Consumer Protection Act (Count VIII), and an objection to related

mortgage Claim No. 4.

## IV.   ARGUMENT

**THE BANKRUPTCY COURT ERRED DISMISSING COUNT 1 OF THE COMPLAINT WITH PREJUDICE FOR FAILURE TO STATE A FRAUD CLAIM, RELYING ON THE JAIMES CASE, RATHER THAN THE ESTABLISHED MARYLAND PRECEDENT IN ANDERSON, IN ADOPTING THE "TWO MASTERS" RULE AND HOLDING THAT TRUST TERMINATION DID NOT MATTER, IMPROPERLY CONSIDERED FATALLY DEFECTIVE EVIDENCE EXTRINSIC TO THE COMPLAINT IN A FUNDAMENTALLY UNFAIR PROCEDURE, AND DISMISSED COUNTS 2 THROUGH 9 ALTHOUGH THOSE COUNTS CLEARLY STATED VALID CLAIMS FOR RELIEF WITHOUT REGARD TO THE TRUST TERMINATION ISSUE.**

### A.    Count 1 - Fraud

Appellants alleged fraud in Count 1 based on Wells Fargo and US Bank filing the Second

Foreclosure Case, and the Plan Objection in the present case, on behalf of a trust *after the trust*

*had terminated and ceased to exist* (Compl. ¶¶ 41-43, 52, 68, 127 (Appendix ("Apx.") 32-33, 35-

36, 39, and 50). Appellants also alleged that Wells Fargo falsely filed its Amended Claim in the

present case on March 15, 2013, misrepresenting its identity as "Creditor" (Compl. ¶67-68) (Apx.

39), and concealing the fact that the trust had not existed since January 25, 2012.

The bankruptcy court dismissed Count 1, with prejudice, for failure to allege fraud with

the required specificity, reasoning that no fraud occurred as alleged since "[trust termination] has

5

nothing to do with fraud[,] that there is some deception going on[,] because there is still an

enforceable obligation that demands to be enforced, Tr. 7/16/14, 8 at 19-21 (Apx. 359), and that

"all the involved creditor-related parties are before the court and they all agree that the creditors

at the end of the chain, Christiana and Carrington, are entitled to enforce the obligations[,]" Tr.

7/16/14, 12 at 2-6 (Apx. 363). The bankruptcy court did acknowledge, however, that "trust

termination might somehow affect the identity of the proper claimant but it doesn't wipe out the

obligation of the Plaintiffs. And it doesn't give the Plaintiffs a cause of action for fraud." Tr.

7/16/14, 12 at 9-12 (Apx. 363).

In finding that fraud had not been pled with specificity, the bankruptcy court relied on the

Maryland Court of Appeal's fraudulent concealment analysis[1] in *Green v. H&R Block, Inc.*, 355

Md. 488, 735 A.2d 1039 (Md. 1999), and held that

> What we have is the mere speculative allegation that the proof of claim was filed in this
> Court to somehow cover up the termination of the trust and the claimant's ineligibility to
> foreclose without any of the other factual elements needed to support a legitimate claim
> of fraud[.] [T]o the extent they are alleging a "fraud on the Court," trust termination does
> not impact or alter their obligation to pay the debt.
>
> So what is the benefit gain by the filing of the proof of claim? The sloppiness does sow
> confusion. There is no doubt about that, and perhaps even worse, than that. But, so what
> as far as the Howes' obligation to pay goes?

Tr. 7/16/14, 11 at 10-20 (Apx. 362).

**Complaint Allegations**

Appellants rely on the entire Complaint for a complete recitation of the factual

---

[1] ... the essential elements of a claim for fraudulent concealment. They include: (1) the
defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to
disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff
took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a
result of the defendant's concealment. *Green*, 355 Md. at 525, 735 A.2d at 1059.

6

allegations. However, Appellants alleged the following key facts in support of Count 1 of their

Complaint:

      64.    Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

      65.    Wells Fargo and US Bank filed the Claim on behalf of the Trust with the intent to defraud this Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012.

      66.    The Claim included a false arrearage claim for $200,196.79, not itemized, but the same arrearage amount as stated in the Amended Claim.  The $200,196.79 arrearage is itemized in the Amended Claim and includes $2,924.50 in fees and costs allegedly incurred from May 27, 2011 through October 26, 2012 ("Second Foreclosure Fees"). Upon information and belief, the Second Foreclosure Fees all relate to the Second Foreclosure Case.

      67.    Wells Fargo filed its Amended Claim as creditor with the intent to defraud this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees. Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, although required to do so by Bankruptcy Rule 3001 and the settlement it reached with the 49 State Attorneys' General effective April 5, 2012 (hereinafter "AG Settlement"). Wells Fargo failed to disclose Trust termination in the Amended Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed, contained numerous false and fraudulent affidavits regarding standing to foreclose, including the Ownership Affidavit, Declaration Affidavit, and NIF Affidavit, and the fact that the Trust lacked standing to file the Claim.

      68.    In furtherance of its scheme to defraud and hide the fact of Trust termination, Wells Fargo and US Bank filed the Plan Objection in which they maintained the continued existence of the Trust and its ownership of the Note over one year after the Note was removed from the Trust and nearly 12 months after the Trust terminated and ceased to exist.

      69.    Wells Fargo and US Bank have engaged in a pattern or practice of filing so many false proofs of claim in the United States Bankruptcy Courts that the sheer numbers involved indicate the fraud is being perpetrated on an institutional basis.

      70.    Properly filed proofs of claim are entitled to a presumption of validity and are deemed allowed absent objection by 11 U.S.C. § 502. Wells Fargo and US Bank relied on the presumption of validity and the paucity of time Debtor had to evaluate the

7

Claim, filed March 8, 2013, and the Amended Claim, filed March 15, 2013, in attempting
to perpetrate their fraud by filing them less than 30 days before the plan confirmation
hearing scheduled for April 3, 2013 in the Bankruptcy Case. Due to the presumption of
validity, the limited time available to investigate claims, and the pressure to confirm
chapter 13 plans without delay, it is difficult to detect fraud in the bankruptcy claims
filing process which might otherwise be exposed during the usual discovery process
provided in a civil action.

71.    There is an enormous disparity of resources between Wells Fargo and US
Bank, two of the largest financial institutions in the world, and the Howes or any chapter
13 debtor, indicating a limited ability of debtors to ferret out fraud on a case by case
basis.

72.    The Debtor has a great deal more to lose by choosing to object to a
mortgage claim than Wells Fargo or US Bank in asserting a false claim, since Defendants
are playing with "house money" and are in control of most of the facts, while the Debtor
must use his limited financial resources and overcome Defendants' enormous information
advantage to prevail. Debtor already has incurred substantial legal fees as a result of the
Claim Objection and preparation of this adversary proceeding. Often debtors choose to
not object to claims they know are off by thousands of Dollars, since the potential reward
does not justify the risk of using their limited resources against a much stronger
adversary.

73.    Although an enormous number of claims are filed in bankruptcy court,
very few are actually litigated with evidence taken, suggesting that the fraud perpetrated
by Wells Fargo and US Bank in filing false proofs of claim often goes undetected. In
those instances where the debtor does detect the "error," Wells Fargo and US Bank can
withdraw or amend the claim under the guise of an error and thwart detection of a larger
pattern by the Court.

Compl. ¶¶ 64-73 (Apx. 38-40). The Complaint allegations regarding trust termination and lack of

standing to file the Second Foreclosure Case are as follows:

41.    Plaintiffs lacked standing to file the Second Foreclosure Case since the
alleged owner of the Note ceased to exist by February 21, 2012, the date the case was
filed.

42.    Filed in the Second Foreclosure Case on February 21, 2012, at Doc No. 5,
is an Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted
Herewith (hereinafter "Ownership Affidavit"), dated January 18, 2012, allegedly signed
by Alisha M. Allen, Vice President of Loan Documentation for WFHM, as servicing
agent, which identifies "US Bank National Association, as Trustee, successor in interest

8

to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities
Corporation, Mortgage Pass-Through Certificates, Series 2003-4" (hereinafter the
"Trust"), as the "owner and holder of the loan evidenced by the Note." A true and correct
copy of the Ownership Affidavit is attached hereto as EXHIBIT 1.

43.    The Mortgage was removed from the Trust on January 1, 2012, and the
Trust terminated and ceased to exist on January 25, 2012, before the Second Foreclosure
Case was filed, as evidenced by the Certificateholder Distribution Summary for the Trust
showing an ending certificate balance total for all Trust certificates of zero, attached as
EXHIBIT 2A, the Collateral Statement showing all loans in the Trust as Paid in Full,
attached as EXHIBIT 2B, and the Loan Level Data for the Mortgage reported by US Bank
showing the Mortgage was paid off on January 1, 2012, attached as EXHIBIT 2C.

44.    Attached to the Ownership Affidavit is an alleged copy of the Note with
the following endorsements: (A) Pay to the order of Wells Fargo Home Mortgage, Inc.,
by Michael Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of
Wachovia Bank, National Association, as Trustee under the pooling and servicing
agreement dated as of May 29, 2003, by Beverly Cro[ckett], Assistant Secretary, Wells
Fargo Home Mortgage, Inc.

45.    Attached to the Ownership Affidavit is what purports to be an Allonge
dated November 21, 2009 (hereinafter the "Allonge"), identifying "Wachovia Bank,
National Association, as Trustee under the pooling and servicing agreement dated as of
May 29, 2003[,]" (hereinafter "Wachovia") as the present holder, further stating it
"hereby assigns all of its rights, title and interest in said Note to US Bank National
Association, as Trustee for WFASC 2003-4[,]" and then states "Pay to the Order of US
Bank National Association, as Trustee for WFASC 2003-4 (Without recourse,
representation, or warranty express or implied)" and is allegedly signed by Karan
Abernethy as Vice President of Wachovia.

46.    Filed in the Second Foreclosure Case on February 21, 2012 at Doc No. 7 is
an *Affidavit Pursuant to 14-207(b)(4)* (hereinafter "Declaration Affidavit") allegedly
signed by Shannon Mennapace as one of the Substituted Trustees in the action, stating
that a true and correct copy is attached thereto of the *Declaration of Substitution of
Trustees*, dated October 28, 2011 (hereinafter "Declaration"), allegedly executed by
Defendant Wells Fargo as attorney-in-fact for the Trust, attached as EXHIBIT 3, and
purports to appoint the Second Foreclosure Case plaintiffs as trustees for the Trust under
the Deed of Trust.

Compl. ¶¶ 41-46 (Apx. 32-34).

The Complaint allegations regarding filing in the Bankruptcy Case the Plan Objection,

9

Claim, Amended Claim, and Claim Objection are as follows:

52.     On January 9, 2013, Defendant Wells Fargo filed at Docket No. 25 in the Bankruptcy Case an *Objection to Confirmation of Plan* (hereinafter "Plan Objection"), and identified itself as "Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4."

53.     On March 8, 2013, Defendant US Bank caused to be filed in the Bankruptcy Case as Claim No. 4 (hereinafter the "Claim") (a sworn proof of claim in the amount of $740,334.24, of which $200,196.79  was claimed as pre-petition arrears. US Bank was identified in the claim as creditor with all notices to be sent to WELLS FARGO HOME MORTGAGE, ATTENTION Bankruptcy Department MAC #D3347-014, 3476 STATEVIEW BLVD, FORT MILL, SC 29715.The claim was signed on January 2, 2013 by Brian McNair who identified himself as an attorney with the law firm of CBD&D. No documents were attached to the claim, thus no evidence of perfection was provided nor was any breakdown of the claimed arrearage.

54.     On March 15, 2013, Defendant Wells Fargo caused to be filed Amended Claim 4 (hereinafter the "Amended Claim"), which identifies Wells Fargo as creditor, is dated March 15, 2013, and attached thereto is a Mortgage Proof of Claim Attachment pursuant to Rule 3001(c)(2), an Escrow and Account Disclosure Statement dated November 21, 2012, the Deed of Trust, and what it claims to be the endorsed Note and Allonge. No evidence of Wells Fargo's standing to file the Amended Claim was attached.

55.     On April 2, 2013, Debtor filed in the Bankruptcy Case an objection to the Amended Claim (hereinafter "Claim Objection"), alleging Wells Fargo lacked standing to file the Amended Claim, and that the amount claimed is excessive due to not all payments being credited, foreclosure fees and costs are sought although incurred without the requisite standing to file the foreclosure action, and unlawful inspection fees disguised as broker's price opinion fees are claimed. The Claim Objection was properly served on Wells Fargo on April 2, 2013, and it provided notice to Wells Fargo it had 30 days to respond unless it wished to rely solely on the Amended Claim. Wells Fargo filed no response. On May 10, 2013, the Court scheduled a hearing on the objection for June 17, 2013.

Compl. ¶¶ 52-55 (Apx. 35-37).

**All Elements of Concealment Fraud Alleged**

Appellants alleged in their Complaint all the elements of the fraud of concealment, or

those elements may be reasonably inferred from their allegations:

10

1. <u>Duty of Disclosure Owed</u>

Wells Fargo and US Bank owed Appellants a duty to disclose the true holder of their

Note when the Ownership Affidavit (Compl. ¶ 42) (Apx. 32-33) was filed in the Second

Foreclosure Case, and when the Plan Objection (Compl. ¶ 52), Claim (Compl. ¶ 53), and

Amended Claim (Compl. ¶ 54) were filed in the Bankruptcy Case (Apx. 35-36).

2. <u>Failure to Disclose</u>

Wells Fargo failed to disclose that the Trust terminated and no longer held their Note

before it filed the Second Foreclosure Case (Compl. ¶ 67) (Apx. 39), Plan Objection (Compl. ¶

52) (Apx. 35-36), and Amended Claim (Compl. ¶ 54) (Apx. 36). Appellants further alleged, with

specificity, multiple misrepresentations in letters sent by Appellees to Appellants, and false

affidavits filed in the First Foreclosure (Compl.¶¶ 37-40) (Apx. 31-32).

3. <u>Intent to Defraud or Deceive</u>

Wells Fargo and US Bank intended to defraud or deceive Appellants and the bankruptcy

court into believing the Second Foreclosure Case and related fees were legitimate (Compl. ¶ 67)

(Apx. 39), and any foreclosure proceeds would convey to the Trust investors.

4. <u>Action Taken in Justifiable Reliance</u>

Appellants took action in justifiable reliance on the concealment by filing the Bankruptcy

Case on November 15, 2012 to stop the foreclosure sale of their home scheduled in the Second

Foreclosure Case for November 16, 2012,[2] objecting to the Claim (ECF 2-2) (Apx. 309-311), and

---

[2] Most chapter 13 bankruptcy cases are filed to stop a foreclosure sale. Appellants failed to include in the record Mr. Howes' Statement of Financial Affairs, filed in the Bankruptcy Case as ECF 16 at 28 (Apx. 408), which states that a foreclosure sale was scheduled for November 16, 2012, the day after the Bankruptcy Case was filed, and they will seek leave to supplement the record by adding ECF 16.

11

filing the subject Complaint (ECF 1-4) (Apx. 22-79).

    5.   <u>Damage Suffered from Concealment</u>

Appellants suffered damages as a result of the concealment by having to file the Bankruptcy Case to stop the foreclosure sale, incurred legal fees to uncover and stop Wells Fargo and US Bank from benefitting from their concealment, and they suffered damages from the delay this litigation has caused in getting their bankruptcy reorganization approved.

**<u>Fraud on the Court</u>**

The "nebulous" doctrine of "fraud on the court" is recognized by the Fourth Circuit. *Great Coastal Exp., Inc. V. International Broth. Of Teamsters, Chauffers, Warehouseman and Helpers of America*, 675 F. 2d 1349, 1356 (4th Cir. 1982). It is usually invoked in the Rule 60(b)(3) context to obtain relief from judgment. It does not require conduct by an officer of the court. *Id.* at 1357.

> "Fraud upon the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action.

*Id.* at 1356, quoting 7 Moore's Federal Practice § 60.33 at 515 (1971).

In this case there was no final judgment from the Second Foreclosure Case, nor was that case filed in the bankruptcy court, but there was a foreclosure sale scheduled in that case that required Mr. Howes to file the instant Bankruptcy Case, and false proofs of claim were filed in the Bankruptcy Case that are deemed allowed under 11 U.S.C. § 502 unless an objection is filed and sustained.

12

The reason Appellants asserted a "fraud on the court" claim is based on the fact that the adversary process is truncated and vulnerable to false claims in bankruptcy proceedings, due to the fast pace of the proceedings and the lack of time to adequately evaluate claims (Compl. ¶ 70) (Apx. 39-40), the enormous disparity of resources between creditors and debtors (Compl. ¶ 71) (Apx. 40), typically the lack of financial incentive to object to claims (Compl. ¶ 72) (Apx. 40), and the fact that claims are deemed allowed when filed (Compl. ¶ 70) (Apx. 39-40). *See Woodruff v. Chase HomeFinance, LLC*, 2010 WL 386209 (Bankr. M.D. Ala 2010) (discussing "fraud on the court" in the bankruptcy context, albeit involving a final judgment). When false claims are filed in bankruptcy court, all too often it means that "the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Great Coastal, supra,* 675 F.2d at 1356. *See* Porter, Katherine M., *Misbehavior and Mistake in Bankruptcy Mortgage Claims*, 87 Texas L. Rev. (2008):

> Hundreds of thousands of Americans file Chapter 13 bankruptcy each year hoping to save their homes from foreclosure. Reliable claims are crucial to the success of the bankruptcy system because the claims mechanism implements the two core goals of bankruptcy policy: to help debtors obtain a fresh start by paying their debts and to ensure that creditors receive a fair share of debtors' assets. From external indicia, the claims process in consumer bankruptcy cases seems like an exemplar of a well-designed legal system that balances the interests of consumers and industry. The claims rules are unambiguous; all parties typically are represented; the process is uniform; the federal judicial system brings gravitas to the procedures; and specialized actors such as bankruptcy judges and trustees are present to police the system.
>
> Yet, despite these reassuring features, the empirical data show that many mortgagees fail to comply with applicable law. The data establish a widespread, current practice of filing incomplete claims with vaguely identified fees. This hinders any meaningful or effective scrutiny of whether mortgage companies are only charging the correct amounts to struggling homeowners. The structural incentives are insufficient to uphold bankruptcy's potential as a home-saving device and to ensure the integrity of the bankruptcy system.

*Id.* at 181-182.

Although the allegations in Count 1 may not be the best fit for "fraud on the court," they certainly state a claim for relief in some fashion. This is especially apparent from the false representations of holder status made by Appellees in the Bankruptcy Case, and Wells Fargo's impossible 2013 Trust Assignment that was provided to Appellants at the court's direction. *See* Count 2 analysis *infra.*

In the oral ruling on March 4, 2014, when the court dismissed Count 1, with prejudice, the court appears to misstate Appellants' allegations in Count 1:

> What it comes down to is the allegation that this mortgage became part of the securitization package, and that's not fair. And therefore, I, the Debtor, have been injured. That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud. Therefore, count one will be dismissed with prejudice.

Tr. 3/4/14, 19 at 9-14 (Apx. 225). Appellants', however, have not alleged any wrongdoing related to the securitizing of their loan.  Appellants' allege that Wells Fargo engaged in executing and filing false documents in the name of the non-existent trust, in the bankruptcy court and circuit court, and attempting to mislead the circuit court into believing that any proceeds awarded in the foreclosure would convey to the benefit of the trust investors, even though that was an impossibility. Appellants further allege that Wells Fargo now falsely misrepresents itself as the secured creditor in the present case, and continues to execute false documents used as evidence in this proceeding (see 2013 Trust Assignment, ECF 1-37 at 29 (Apx. 278), discussed infra under Count 2), in an attempt to abuse the judicial process and collect a debt that is not due it.

### The Jaimes Opinion

The bankruptcy court erred when it ignored the allegations of the Complaint that the

14

plaintiffs in the Second Foreclosure Case lacked standing to file that foreclosure case, and Wells

Fargo and US Bank hid that lack of standing from Appellants in order to recover their related

foreclosure costs and fees, holding instead that trust termination had no impact on standing,

relying on the *Jaimes*[3] case to reach its conclusion. The bankruptcy court should not have found

the *Jaimes* opinion persuasive since it is not binding precedent, it involves significantly different

facts than the case at bar, and the *Jaimes* language relied upon by Judge Gordon is *dicta* and

contrary to the Maryland Court of Appeals opinion in *Anderson v. Burson*, 424 Md. 232; 35 A.3d

452; 2011 Md. LEXIS 777 (Md. 2011), the controlling Maryland precedent for determining the

right to enforce a note and foreclose. *See* Pls.' Supp. Memo. (Apx. 200-206).

> The bankruptcy court applied *Jaimes* to this case as follows:

> But nevertheless, I did ask the question about what happens as a matter of law when the trust terminates. *** Defendant Wells Fargo has answered the question in a manner that could and probably should be devastating to the Debtor's alleged causes of action. And that answer, the one provided in *Jaimes* -- that is J-a-i-m-e-s -- *v. J.P. Morgan Chase*, 2013 West Law 677740, out of the Federal District Court in the Northern District of Illinois, a 2013 case just about a year or so ago was entered, is one that makes estimable sense. The answer in that case does.

> It is, and the answer is, insofar as the Debtor's obligation to pay goes, **termination of the trust doesn't matter. The Debtor/Creditor relationship is unchanged by the existence of the trust. Termination would only matter if the Debtor was put in the position of having to choose between two masters,** if one of these Defendants was demanding or, worse, receiving payment that it was not legally entitled to receive or demand. The question raised in the *Jaimes* case, and that question must be put to the Debtor, is who else became the servicer. (Emphasis added.)

Tr. 3/4/14, 8 at 7-8, 8 at 18 to 9 at 11 (Apx. 214-215).

> The facts in *Jaimes* are significantly different than the instant case. *Jamies* involved a

---

[3] *Jaimes v. JPMorgan Chase Bank, N.A.*, WL 677740 (N.D .Ill. February 25, 2013); filed herein as ECF 1-30 (Apx. 191).

15

mortgage that had been owned by a terminated Washington Mutual securitized mortgage trust.

Following trust termination, Chase claimed it was the current creditor and servicer of the Jaimes'

mortgage, and filed a foreclosure action against them. *Jaimes*, WL 677740 at 3. The Jaimeses

filed suit under the Fair Debt Collection Practices Act alleging Chase never acquired an interest

in their note or mortgage. *Id*. The court dismissed the complaint with leave to amend based on a

public record establishing that Chase purchased all of Washington Mutual's assets from its

receiver, the Federal Deposit Insurance Corporation, *Id*. at 2, and Seventh Circuit precedent that a

servicer could bring a foreclosure suit against the borrower if it retained the servicing rights when

transferring title to the trust, the pooling and servicing agreement granted the servicer the power

to foreclose, and the servicer retained the servicing rights after trust termination. *Id*. at 7.

The Jaimes case is not on point. Here, the Second Foreclosure Case was filed by the

substituted trustees appointed by the Trust, not Wells Fargo acting as servicer. Compl. ¶ 46 (Apx.

34). Since the Trust terminated and ceased to exist before the Second Foreclosure Case was filed,

the substituted trustees' power to foreclose also terminated. Accordingly, plaintiffs in the Second

Foreclosure Action lacked standing to file it, and that foreclosure case filing was a nullity. *See*

*Pines Point Marina v. Rehak*, 406 Md. 613, 641, 961 A.2d 574, 591 (2008) (no standing to bring

suit where corporate charter had been forfeited); *Anderson v. Burson, supra*, 424 Md. at 236

(prerequisites to foreclose)[4]; Maryland Rules 14-204 (institution of action)[5] and 2-201 (real party

---

[4] "A foreclosure plaintiff commences an action to foreclose a deed of trust, which
contains a power of sale provision, by filing an order to docket. *See Md. Rule 14-207(a)(1); Md.
Code Ann., Real Prop. § 7-105.1(d)* (LexisNexis Supp. 2011). An **[***7]** order to docket must
include, among other documentation: a copy of the deed of trust, supported by an affidavit that it
is a true and accurate copy; a copy of the debt instrument, supported by an affidavit certifying
ownership of the debt instrument; and a deed of appointment of a substitute trustee, supported by
an affidavit that it is a true and accurate copy of the deed of appointment. *Md. Rule 14-207(b);*

16

in interest); Md. Code Ann., *Real Prop.* § 7-105.1(d-1) (affidavit certifying ownership of debt instrument and copy thereof). Therefore, one of the factual predicates for the misbehavior alleged in the rest of the Complaint is present, i.e., lack of standing to foreclose, and the bankruptcy court erred when it found Trust termination irrelevant, no fraud or misrepresentations, and dismissed the Complaint. Whatever rights Wells Fargo may have had as servicer are simply irrelevant since it was the terminated Trust that purported to foreclose, not Wells Fargo as servicer for some unidentified viable entity. Likewise, the terminated Trust purported to file the Claim and Plan Objection, not Wells Fargo.

There are other material factual differences between *Jaimes* and the case at bar. While *Jaimes* may seem similar on the surface because it includes the termination of a trust, the matter of trust termination in *Jaimes* was moot because there was no evidence that the note was ever endorsed to the trust. *See Jaimes* Compl., ¶ 21 (two versions of the note were produced, one unendorsed, and one endorsed in blank). In *Jaimes*, Defendant Washington Mutual ("WaMu") was a party to the note as the original lender, and retained possession of the note. *Jaimes, supra* at 2. Chase purportedly acquired the note, endorsed in blank, as part of a Purchase and Acquisition Agreement ("P&A") with WaMu. The note in *Jaimes* never left the original lender, and was never endorsed to any other party until being endorsed in blank and becoming bearer paper.

In *Jaimes*, it was also uncontested that the person attempting to enforce the note, Chase,

---

*Real Prop. § 7-105.1(d)(1)-(2)." Anderson v. Burson, supra*, 424 Md. at 236 n6.

[5] Md. Rule 14-204(a)(1): Under power of sale. Subject to compliance with subsection (a)(3) of this Rule, any individual authorized to exercise a power of sale may institute an action to foreclose the lien.

17

was in possession of the note, acquiring it by way of the P&A. In the present case, none of the

Appellees are the original lender, none are in possession of the Note (Tr. 7/16/14, 14 at 14-15

(Apx. 365); Lost Note Affidavit (Apx. 272)), and the only evidence attached to the Claim[6] is a

copy of a note specially endorsed to an entity not a party to the case (Compl. ¶¶ 44-45, 54) (Apx.

33-34, 36).

Unlike *Jaimes*, the Appellants here alleged (Compl. ¶¶ 42, 52-53) (Apx. 32-33, 35-36)

that Wells Fargo continued to execute, and file with the court, documents in the Trust's name

long after the Trust ceased to exist, in an attempt to mislead the Appellants and the court that

proceeds would benefit the Trust, when in fact, any such proceeds could not possibly be

conveyed to a non-existent entity, and thus would be improperly kept by Wells Fargo, who is not

the Lender, Creditor or noteholder, and did not lend any money to the Appellants.

The *Jaimes* plaintiffs argued that "WaMu lost all interest in the loan" when the trust was

terminated. *Jaimes, supra* at 8. In the instant case, however, Appellants do not argue that Wells

Fargo lost any interest in the note when the trust terminated, because, based on its own evidence

attached to the Claim, Wells Fargo had already relinquished all rights to the note years earlier,

and had no rights under the note to lose when the trust terminated.

The Appellants in the present case have not alleged that payment obligations under the

Note ended when the Trust was terminated, as did the plaintiffs in *Jaimes*. Rather, the Appellants

argue that none of the Appellees are the party to whom that obligation is owed. If some amount

remains due and payable under the Note, then that fact alone is not proof that Wells Fargo,

---

[6] Although Appellants designated Claim 4 and Amended Claim 4 for inclusion in the
record on appeal, those documents do not appear to have been transmitted to the Court by the
bankruptcy court. *See* ECF 1-46 (Apx. 300).

Carrington, or any of the other Appellees possess the right to enforce the Note. As the Supreme Court of New Mexico succinctly put it, "Failure of Another Entity to Claim Ownership of the Romeros' Note Does Not Make the Bank of New York a Holder"). *Bank of New York v. Romero*, 320 P.3d 1, 11 (NM 2014).

In it's oral ruling at the March 4, 2014 hearing, the bankruptcy court, paraphrasing the *Jaimes* court, concluded that "The Debtor/Creditor relationship is unchanged by the existence of the trust."Tr. 3/4/14, 9 at 4-5 (Apx. 215). This conclusion would not be factual if the trust were the real creditor. Moreover, it is based on the presumption that Wells Fargo was the Creditor secured by Appellants' Note, but Wells Fargo has not provided any evidence on which to base that theory.

The bankruptcy court seems to be confusing servicing rights with the right to enforce the note. "The question raised in the *Jaimes* case, and that question must be put to the Debtor, is who else became the servicer." Tr. 3/4/14, 9 at 9-11 (Apx. 215). But that is not the issue here because Wells Fargo filed the Amended Claim as principal, and the party secured by the Note, not as servicer, and it failed to establish therein its right to enforce the Note as required by Bankruptcy Rule 3001 and the AG Settlement (*see* analysis of Count 3 below). Compl. ¶¶ 67, 90-96 (Apx. 39, 43-45). Wells Fargo entered into a Consent Order in connection with the AG Settlement which provides in relevant part, at Exhibit A, I.D.1: "[Wells Fargo] shall ensure that each POC is documented by attaching: a. The original or a duplicate of the note, including all indorsements." Compl. ¶ 94 (Apx. 44). In the event that any of the Appellees in this case are acting as a servicer, the important question, in determining who has the right to enforce the Note and standing to file the Claim, becomes "on who's behalf is the servicer acting?"

19

The bankruptcy court, in it's analysis of *Jaimes,* stated: "If it was wrong for either US Bank or Wells Fargo to claim credit[or] or slash service[r] status, then the Debtor must proffer who the correct servicer was." Tr. 3/4/14, 18 at 17-19 (Apx. 224). However, the concept that, when confusion has been created over a particular party's status as Creditor, it is Debtor's responsibility to somehow figure out and identify the proper party, is not consistent with the opinions of other court in cases in identical situations. *See, e.g., In re Nosek*, 386 B.R. 374 (Bankr. D. Mass. 2008):

> "This Court will not countenance creditors and creditors's attorneys holding themselves
> to a different and clearly lower standard than what they expect of the Debtor. It will not
> tolerate a lender's or servicer's disregard for the rules that govern litigation, including
> contested matters, in the federal courts. **It is the creditor's responsibility to keep a**
> **borrower and the Court informed as to who owns the note and mortgage and is**
> **servicing the loan, not the borrower's or the Court's responsibility to ferret out the**
> **truth.**" [emphasis added]

*Nosek,* 386 B.R. at 382.

The *Jaimes* court's ruling is also markedly inconsistent with at least one other court, in New York Supreme Court Judge Athur M. Schack's opinion in *JP Morgan Chase Bank, Natl. Assn. v. Butler*, 2013 N.Y. Misc. LEXIS 2761, 2013 N.Y. Slip Op 51050, at 2.¶2, (Sup. Ct. 2013). Judge Schack was faced with almost identical facts in contention as in *Jaimes*, and the same transaction between WaMu, Chase, and the FDIC. Chase, after asserting for almost two years it was the owner and secured party of the Butler note, via an asset purchase agreement with FDIC, admitted that it only owned the servicing rights when finally forced to prove its ownership of the note.

> This case is troubling because various counsel for CHASE falsely claimed for almost two
> years, from January 20, 2010 until December 2011, that CHASE was the owner of the
> mortgage and note. Ultimately, in late 2011, after the subject mortgage had been satisfied,

20

plaintiff CHASE's counsel admitted, in opposition to defendant BUTLER's October 26, 2011 order to show cause, that plaintiff CHASE did not own the BUTLER mortgage and note, but only the servicing rights to it. *** Further, Mr. De Castro makes the ludicrous claim, in violation of New York law, that "[a]s Fannie Mae's servicer, CHASE has authority to commence a foreclosure action on the Loan and to receive and/or collect the proceeds from the sale of the Property. *Id.* at 2.

It is clear, that after almost two years of its bad faith assertions to the contrary, CHASE never owned the subject mortgage and note. Therefore, CHASE lacks authority to be the plaintiff in the instant action. "The foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt." (Bank of New York v Silverberg, 86 AD3d 274, 280 [2d Dept 2011])." *Id.* at 5.

*Butler, supra.*

In this case, the bankruptcy court also should have been troubled by the false representations of holder status made to it (one cannot be a holder without possession of the note, or the necessary endorsement if order paper), and the apparent inability of Appellees to prove a chain of title to the Note in compliance with the requirements set forth in *Anderson*. Appellees failed to prove the required chain of title in the Claim or Amended Claim, and they failed to prove a valid chain of title when the court directed them to do so. *See* Ownership Affidavit and attachments, ECF 1-33, 34, and 37 (Apx. 234-237, 250-281), and the discussion below of Count 2. Appellees repeated failure to prove the required chain of title should have raised serious questions for the bankruptcy court, rather than its apparent eagerness to accept Appellees' facially defective claims instead.

### Absurd Jaimes "Two Masters" Rule

Finally, the "two masters" language[7] in *Jaimes* that the bankruptcy court relied upon is

---

[7] "...termination of the trust doesn't matter. The Debtor/Creditor relationship is unchanged by the existence of the trust. Termination would only matter if the Debtor was put in the position of having to choose between two masters... Tr. 3/4/14, 9 at 3-7 (Apx. 215).

21

dicta. The *Jaimes* court found that Chase had standing to foreclose as servicer under Seventh

Circuit precedent, since WaMu retained the servicing rights when transferring title to the trust,

the pooling and servicing agreement granted the servicer the power to foreclose, and the servicer

retained the servicing rights after trust termination. *Id.* at 7. Therefore, the court's discussion in

*Jaimes*, about having to pay two masters, was unnecessary, unwise, and dicta. There is no similar

Maryland precedent allowing servicers to foreclose, nor is the borrower required to find a

competing claimant when the current claimant is unable to prove the required chain of

ownership. Such a "two masters" rule would be absurd and result in a great deal more mischief

from the mortgage industry, and we have already suffered from too much of that already. The

bankruptcy court should have rejected the *Jaimes* dicta and, instead, stuck with the analysis

*Anderson* requires to determine if the Trust had standing to cause the filing of the Second

Foreclosure Case, and whether Appellees had standing to file the Claim and Amended Claim or

the power to enforce Appellants' Note.

### Anderson v. Burson: Burden on Appellees to Prove Chain of Title

The other major problem with the bankruptcy court's reliance on *Jaimes* is its resulting

failure to follow controlling Maryland law in determining whether the Trust had standing to file

the Second Foreclosure Case, and by putting the burden on Appellants to figure out who did. The

Maryland Court of Appeals, in *Anderson v. Burson, supra*, puts the burden to prove the right to

enforce the Note on the party seeking to enforce it, and details what proof is required.

> a reputed transferee in possession of an unindorsed mortgage note has the **burden** to
> establish its rights under that note. [T]he Maryland Commercial Law Article *** requires
> a person in possession of an unindorsed mortgage note to prove that note's prior transfer
> history (as opposed to a holder, whom the Commercial Code presumes is entitled to
> payment under *§ 3-308(a)*). Additionally, given the chain-of-possession document

22

quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

*Anderson v. Burson*, 424 Md. at 245-246 (footnote omitted; emphasis added).

Under § 3-201 of Maryland's Commercial Law Article, the subject Note is order paper, and since it is payable to the Trust, and the Trust ceased to exist before the Second Foreclosure Case was filed, the plaintiffs in the Second Foreclosure Case lacked the necessary standing to file it, and that case was a nullity. *See Pines Point Marina v. Rehak, supra*, 406 Md. at 641. The record is devoid of any evidence, moreover, that Wells Fargo had the right to enforce the Note and file the Second Foreclosure Case, nor would it be proper to consider extrinsic evidence at this stage on motions to dismiss. Therefore, the bankruptcy court erred when it held that trust termination did not matter in determining whether plaintiffs had standing in the Second Foreclosure Case, and by putting the burden on Appellants to find a competing claimant, or pay the claimant before the court despite its failure to establish its right to enforce the note. That is not the standard set forth in *Anderson*.

**Leave to Amend**

Appellants requested leave to amend in the event the court dismissed the Complaint. ECF 1-21, at 29 (Apx. 155). The bankruptcy court should have granted Appellants leave to amend Count 1 pursuant to Fed. R. Civ. P. 15(a)(2), since the "court should freely give leave when justice so requires[,]" unless to do so would be futile, prejudicial to the opposing party, or there has been bad faith on the part of the moving party. *Galante v. Ocwen Loan Servicing LLC*, Civ. No. ELH-13-1939 (D. Md., July 18, 2014). The court denied leave to amend Count 1 since it believed amendment was futile based on its holding that trust termination "doesn't give the

23

Plaintiffs a cause of action for fraud." Tr. 7/16/14, 12 at 11-12 (Apx. 363). Appellants argue

herein that trust termination does give rise to a valid fraud count, and complaint amendment

would not be unduly prejudicial, nor have Appellants engaged in bad faith.

Appellants did not explicitly allege in the Complaint that the Bankruptcy Case was filed

to stop the foreclosure sale that was scheduled in the Second Foreclosure Case, although that may

have been reasonably inferred, so amendment to add that allegation may be necessary. In

addition, if the fraud allegations do not state a claim, those same allegations certainly state a

claim for sanctions, and amendment also should have been allowed for that reason.

### Conclusion

In conclusion, since Appellants adequately alleged fraud in Count 1, or should have been

granted leave to amend, the bankruptcy court's decision dismissing Count 1 with prejudice must

be reversed.

**B.**    **Count 2 - Determination of Scope, Extent and Validity of Lien**

The bankruptcy court dismissed Count 2 for failure to state a claim (Apx. 285-287), as

follows:

> This is my ruling as to count two. There is confusion here created by the securitization
> process that has been exacerbated by bumbling. Therefore, the present holder of the note
> will provide a detailed affidavit, under penalty of perjury, within 30 days of today
> confirming who owns and has a right to enforce the loan documents. All relevant
> transactional documents will be identified and provided to the Debtor, if the Debtor
> requests them. In other words, we don't want this to turn into harassment. But under the
> circumstances, the Debtor probably does have a right to at least know with certainty the
> basis for the present noteholder's claim to ownership to the note, because of the
> sloppiness that has gone on historically in this case. And that sloppiness doesn't add up to
> a cause of action for fraud. ***
>
> The Debtor will have 30 days from the filing of the affidavit and documents to file an
> objection to claim or an amended complaint or both.

24

Tr. 3/14/14, 20 at 12-25, 21 at 12-14 (Apx. 226-7).

Count 2 is directed at determining pursuant to 11 U.S.C. §§ 105 and 506, the scope,

extent, and validity of the lien asserted in the Amended Claim.[8] Compl. ¶¶ 74-85 (Apx. 41-42).

Section 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. Section 506 provides in relevant part:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. ***

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1) such claim was disallowed only under section 502 (b)(5) or 502 (e) of this title; or
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506.

A review of the four corners of the Complaint reveals that none of the Appellees have the

right to enforce the Note, because the Note is payable to the order of a terminated trust (Compl.

¶¶ 43-45, 54, 75-79) (Apx. 33-34, 36, 41), not to any of the Appellees, and none of the Appellees

has possession (Compl. ¶ 63, 80) (Apx. 38, 41). *See Anderson, supra*, 424 Md. at 245-246.

---

[8] Although Appellants designated Claim 4 and Amended Claim 4 for inclusion in the record on appeal, those documents do not appear to have been transmitted to the Court by the bankruptcy court. *See* ECF 1-46 (Apx. 300).

25

Accordingly, the bankruptcy court must have relied on extrinsic evidence to dismiss Count 2. On a motion to dismiss, however, this is error since the court is limited to a consideration of the complaint, and must accept as true the well pled allegations therein. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In addition, all reasonable inferences from the allegations of the Complaint are to be drawn in Appellants' favor, not Appellees as the bankruptcy court apparently did. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

### **Complaint Allegations**

Appellants rely on the entire Complaint for a complete recitation of the factual allegations. However, Appellants alleged the following key facts in support of Count 2 of their Complaint:

74.     Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

75.     The Note and Allonge attached to the Amended Claim contain a series of purported endorsements resulting, if bona fide, in the Note being payable to the order of US Bank as trustee for the Trust.

76.     US Bank does not have the right to enforce the Note or standing to file the Claim since the Trust terminated and ceased to exist in January 2012.

77.     The Note is "order paper" under section 3-201(b) of the Commercial Law Article, Annotated Code of Maryland; therefore, negotiation requires transfer of possession of the instrument and its indorsement by the holder.

78.     US Bank did not endorse the Note and make it payable to the order of Wells Fargo.

79     Wells Fargo is not a holder of the Note.

80.     Upon information and belief, Wells Fargo did not possess the Note when it filed the Amended Claim.

26

81.    Wells Fargo did not attach to the Amended Claim any evidence that it has the right to enforce the Note under applicable state law.

82.    Wells Fargo does not have the right to enforce the Note or standing to file the Amended Claim.

83.    Defendant CMS acquired no interest in the Note or Amended Claim, notwithstanding the Transfer Notice, since the purported transferor, Wells Fargo, did not have the right to enforce the Note or standing to file the Amended Claim, and CMS cannot acquire greater rights in the Note or Amended Claim than its purported transferor had. CMS also failed to attach to its Transfer Notice the required proof of transfer.

84.    Defendant WSFS Bank acquired no interest in the Note or Amended Claim, notwithstanding the Amended Transfer Notice, since the purported transferor, Wells Fargo, did not have the right to enforce the Note or standing to file the Amended Claim, and WSFS Bank cannot acquire greater rights in the Note or Amended Claim than its purported transferor had. WSFS Bank also failed to attach to its Amended Transfer Notice the required proof of transfer.

85.    None of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law.

Compl. ¶¶ 74-85 (Apx. 41-42).

### No Extrinsic Evidence of Holder Status

In dismissing Count 2 despite its well pled allegations, the bankruptcy court presumably

relied on Appellees' erroneous representations of holder status[9], which cannot be true since the

---

[9] The court asked Carrington if it was Holder. Carrington's counsel replied "Christiana Trust is currently the note holder," immediately after which the court opened its ruling with the statement, "Okay. All right. Fine. Well, here is my ruling, *then*. I appreciate that information." (emphasis added). Tr. 3/4/14, 5 at 12-23 (Apx. 211).

Wells Fargo, in its Motion to Dismiss, asserts that it is holder when it argues that Plaintiffs' allegation that it is not holder is "mistaken." "Counts I, II, III, VI, VII, VIII, and IX, all based on the mistaken premise that Wells Fargo was not the holder, fail to state a claim for relief and should be dismissed." ECF 1-14, at 13-14 (emphasis added) (Apx. 89-90). As the court noted, however, Wells Fargo seemed unsure as to the identity of the Holder when, in the same motion, it referred to the holder of the Note and DOT as "whoever that might be" (*Id.*, at 9) (Apx. 85). *See also* Wells Fargo's Mortgage Proof of Claim Attachment, Amended Claim 4 filed March 15, 2013, where, at the bottom of the last page, Wells Fargo asserts:

27

note is payable to the terminated trust (Compl. ¶¶ 43-45, 54, 75) (Apx. 33-34, 36, 41), not any of

the Appellees, and none of Appellees possess the Note ( Compl. ¶ 63 (Apx. 38)); Lost Note

Affidavit (Apx. 272), two independent and sufficient reasons holder status is impossible here.

Wells Fargo and US Bank had argued in their motion to dismiss Count 2 that Wells Fargo

was the holder of the Note: "Mr. and Mrs. Howe provide no factual basis whatsoever for their

claims that Wells Fargo (a) is not the holder of the Note as alleged Counts I and II." Defs' Memo,

(Apx. 88). "Counts I, II, III, VI, VII, VIII, and IX, all based on the *mistaken* premise that Wells

Fargo was not the holder, fail to state a claim for relief and should be dismissed." *Id.* at 13-14

(Apx. 89-90). However, since the Note is made payable to the order of the Trust, Wells Fargo

cannot be the holder. Compl. ¶¶ 77-79 (Apx. 41).

In addition, Appellees admitted, following the bankruptcy court's March 4, 2014 oral

ruling dismissing the complaint, that none of them has possession of the Note (LNA (Apx. 272)),

which directly contradicts their repeated and material representations to the court of holder status.

Wells Fargo, moreover, is apparently unwilling or unable to state when and how possession was

acquired, having omitted that vital information from the LNA in contravention of *Md. Code*

*Ann.*, *Real Prop.* § 7-105.1(f).[10] ECF 1-37 at 23. *See* Plaintiffs' Motion to Reconsider Oral

---

1. "The promissory note is either made payable to Creditor or has been duly indorsed."

2. "Creditor, directly or through an agent, has possession of the promissory note."

3. "Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust"

[10] "Notwithstanding any other law, the court may not accept a lost note affidavit in lieu of a copy of the debt instrument required under subsection (e)(2)(iii) of this section, unless the affidavit:
(1) Identifies the owner of the debt instrument and states from whom and the date on

28

Ruling on Motion to Dismiss and Objection to Ownership Affidavit ("Pls' Recon. Mot.") ¶¶ 9-10 (Apx. 243-4).

One has to wonder why Appellees have been unable to satisfy the *Anderson* requirements and prove their right to enforce the Note, despite the bankruptcy court having given them every opportunity to do so at the motion to dismiss stage. It is also unwise and presumptuous of the bankruptcy court to have characterized Appellees' failure to prove ownership as the result of mere "bumbling" or "sloppiness." Tr. 3/14/14, 20 at 14 and 24-25 (Apx. 220). However, the time for resolving these factual issues is not ripe for adjudication on a motion to dismiss, since they fall outside the four corners of the Complaint.

### Extrinsic Evidence - Defective Ownership Affidavit

In dismissing the Complaint, the court also may have relied on the fatally flawed Ownership Affidavit and related documents (Apx. 234-237, 250-281) that Appellees filed at the bankruptcy court's direction (Tr. 3/14/14, 20 at 12-25, 21 at 12-14) (Apx. 226-7) following the March 4, 2014 hearing on the motions to dismiss. Pursuant thereto, WSFS Bank filed an Affidavit Certifying Ownership of Debt Instrument on April 3, 2014 (Apx. 236), executed by Elizabeth A. Ostermann, Vice President, Default, SCRA for Carrington, Attorney in Fact, as loan servicer for WSFS Bank, as trustee for the Stanwich Trust ("Ostermann Affidavit"). In addition, Appellants' counsel was provided with a copy of the documents listed in the Ostermann Affidavit ("Affidavit Documents"). ECF 1-37 (Apx. 250-281). The Ostermann Affidavit and

---

which the owner acquired ownership;
(2) States why a copy of the debt instrument cannot be produced; and
(3) Describes the good faith efforts made to produce a copy of the debt instrument.
Md. Code Ann., *Real Prop.* § 7-105.1(f).

29

Affidavit Documents do not establish Appellees' right to enforce Appellants' loan. *See* Pls'

Recon. Mot., discussed next (Apx. 238-284).

### Defective Lost Note Affidavit

The Affidavit Documents included the defective LNA from Wells Fargo dated February

12, 2013, although the Exhibit A referenced therein was not produced. ECF 1-37 at 23 (Apx.

272). Appellants requested but never received a copy of that Exhibit A.[11] ECF 1-35 at 6 ¶ 9 (Apx.

243). The requirements for a valid lost note affidavit are set forth in Md. Code Ann., *Real Prop.*

§ 7-105.1(f).

> Notwithstanding any other law, the court may not accept a lost note affidavit in lieu of a
> copy of the debt instrument required under subsection (e)(2)(iii) of this section, unless the
> affidavit:
> (1) Identifies the owner of the debt instrument and states from whom and the date on
> which the owner acquired ownership;
> (2) States why a copy of the debt instrument cannot be produced; and
> (3) Describes the good faith efforts made to produce a copy of the debt instrument.

*Id.* The Anderson Court summarized the rule as follows:

> The Circuit Court may not accept a lost note affidavit, in lieu of a copy of the debt
> instrument, unless the affidavit: "(1) [i]dentifies the owner of the debt instrument and
> states from whom and the date on which the owner acquired ownership; (2) [s]tates why a
> copy of the debt instrument cannot be produced; and (3) [d]escribes the good faith efforts
> made to produce a copy of the debt instrument." *Real Prop. § 7-105.1(d-1).*

*Anderson v. Burson, supra,* 424 Md. 232 at 236 n6.

Here, the LNA is defective and may not be used to foreclose since it fails to satisfy the

first prong of the test – it does not identify "from whom and the date on which the owner

acquired ownership." The LNA also fails to satisfy the third prong of § 7-105(f) since it does not

---

[11] This procedure was patently unfair to Appellants as no discovery was possible under
the court's Scheduling Order (ECF 1-24) while the motion to dismiss was pending.

"[d]escribe the good faith efforts made to produce a copy of the debt instrument." US Bank and

Wells Fargo also violated Bankruptcy Rule 3001 by not attaching the LNA to their proofs of

claim, and by failing to state "the circumstances of the loss or destruction..." as required by Rule

3001(c)(1). *See* Count 3 analysis, *infra*. Wells Fargo was denied stay relief due to a defective lost

note affidavit and its resulting inability to enforce the note by the U.S. Bankruptcy Court for the

Western District of North Carolina.

> The terms of the Note do not appear to be in dispute under § 25-3-309(b), but the parties
> do dispute Wells Fargo's right to enforce it. And simply put, the Affidavit prepared by
> Wells Fargo is insufficient to demonstrate its right to enforce the Note. Although the
> Affidavit indicates that the Note could not be located after a thorough and diligent search,
> it does not provide that Wells Fargo was in possession of the Note and entitled to enforce
> it when loss of possession occurred or that the loss of possession was not the result of a
> transfer by Wells Fargo or a lawful seizure. Therefore, the court concludes that because
> Wells Fargo has not complied with the lost note provisions of § 25-3-309, it has not
> demonstrated that it is entitled to enforce the Note and denies the Motion for Relief
> without prejudice.

*In re Patterson*, Case No. 12-50201 (Bankr. W.D.N.C., 2012) (Apx. 282-4).

Despite these glaring defects, the fact that the LNA proves Appellees' repeated

representations to the court regarding holder status were false, and the impossible 2013 Trust

Assignment (discussed next), the bankruptcy court stated the following regarding the LNA:

> Whether that would prevent a foreclosure in Maryland, I am not certain. But as to the
> entitlement to enforce the "right to payment" here in the Bankruptcy Court, I don't see
> how the present claimant's right to do so can reasonably be questioned.

Tr. 7/16/14, 14 at 21-25 (Apx. 365).

### Defective 2013 Trust Assignment

The Affidavit Documents also included an unrecorded Corporate Assignment of Deed of

Trust, dated October 31, 2013, from Wells Fargo as attorney-in-fact for U.S. Bank as trustee for

31

the Trust, assignor, to Wells Fargo as assignee, effective October 30, 2013, purportedly signed by
Susan E. Balfanz, Vice President Loan Documentation, and notarized by Jonathen Edward
Johnson in Minneapolis, Minnesota (the "2013 Trust Assignment"). ECF 1-37 at 29 (Apx. 278).
The 2013 Trust Assignment also is defective since the Trust no longer owned Appellants' note
after it received payment in full for it on January 1, 2012, and the Trust ceased to hold any assets
and terminated on January 25, 2012. Compl. ¶ 43 (Apx. 33). Appellants requested but never
received a copy of the agreements authorizing Wells Fargo to sign the 2013 Trust Assignment as
US Bank's attorney in fact.[12] ECF 1-35 at 7 ¶ 11 (Apx. 244-5).

### Defective 2014 Assignment

Finally, the Affidavit Documents included an unrecorded Assignment of Deed of Trust,
dated March 20, 2014, from Wells Fargo as assignor, to WSFS Bank as trustee for the Stanwich
Trust, and executed by Carrington as Wells Fargo's attorney in fact by Elizabeth A. Osterman,
Vice President, Default, SCRA for Carrington, attorney in fact (the "2014 Assignment"). ECF 1-
37 at 31 (Apx. 280-1). Appellants requested but have not been provided with the documents
evidencing the attorney-in-fact powers exercised in the 2014 Assignment. ECF 1-35 at 8 ¶ 12
(Apx. 245). Since Wells Fargo has not established its title to Appellants' note, as a result of
claiming to take title from the Trust after the Trust no longer owned Appellants' note, it has not
established its power to assign the corresponding deed of trust.

The Maryland Court of Appeals puts the burden to prove the right to enforce the Note on
Appellees, including all prior transfers, but they failed to do so in the Ostermann Affidavit and

---

[12] Again, this procedure was patently unfair to Appellants as no discovery was possible
under the court's Scheduling Order (Apx. 162-3) while the motion to dismiss was pending.

Affidavit Documents. Under § 3-201 of Maryland's Commercial Law Article, the subject Note is

order paper, and since it is not made payable to Wells Fargo, there is no evidence that Wells

Fargo had the right to assign it to the Stanwich Trust. The Anderson Court rule bears repeating:

> a reputed transferee in possession of an unindorsed mortgage note has the **burden** to establish its rights under that note. [T]the Maryland Commercial Law Article *** requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to payment under *§ 3-308(a)*). Additionally, given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

Anderson v. Burson, 424 Md. at 245-246 (footnote omitted; emphasis added).

### Extrinsic Evidence - Defective Procedure

Appellants address the defects in the extrinsic evidence without waiving the fact that such

evidence was improperly considered by the bankruptcy court in dismissing the Complaint.

Indeed, Appellants sought in Count 3 of their Complaint to have all such evidence excluded as a

sanction pursuant to Bankruptcy Rule 3001(c)(2)(D), and it is improper to consider such

evidence on a motion to dismiss. Instead of following the well established rules for resolving a

motion to dismiss, the bankruptcy court ordered the present holder of the note to provide a

detailed affidavit confirming who owns and has a right to enforce the loan documents, and gave

Mr. Howes 30 days thereafter to file an amended complaint or claim objection. Tr. 3/14/14,

*supra*, 20 at 12-25, 21 at 12-14 (Apx. 226-7).This procedure was patently unfair to Appellants as

no discovery was possible under the court's Scheduling Order (Apx. 162-3) while the motion to

dismiss was pending.

### Conclusion

Since the bankruptcy court made no determination of Appellees lien rights as requested in

33

Count 2, Count 2 states a valid basis to seek such a determination, and the court's dismissal must

have been based on improper consideration of extrinsic evidence, the bankruptcy court should

not have dismissed Count 2, and this part of its decision also must be reversed.

### C.    Count 3 – Sanctions for Defective Proof of Claim

Appellants sought sanctions in Count 3 against Wells Fargo and US Bank pursuant to

Bankruptcy Rule 3001(c)(2)(D) for filing defective proofs of claim. The bankruptcy court

dismissed Count 3 for failure to state a claim without explaining why. Appellants had responded

to the motion to dismiss as follows:

> Movants argue that Count III (Sanctions for Defective Proof of Claim) should be
> dismissed because Plaintiffs have provided "no factual basis whatsoever" that Wells
> Fargo filed a defective proof of claim. Memo. 12. This argument also is without merit as
> the Complaint is replete with such evidence. Wells Fargo failed to comply with Rule
> 3001 and the AG Consent Order when it did not attach to the Amended Claim evidence
> of its standing to file it. Compl. ¶ 91, 94-95. In addition, the Amended Claim contains
> bogus fees and fails to credit all of Debtor's payments. Compl. ¶ ¶ 36-47, 96, 99-105. By
> focusing only on Wells Fargo's conduct, moreover, Movants apparently concede that US
> Bank's Claim was defective.

Pls.' Memo 23 (Apx. 149).

Bankruptcy Rule 3001 provides in relevant part:

Rule 3001. Proof of Claim

(a) Form and Content. A proof of claim is a written statement setting forth a creditor's
claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) Who May Execute. A proof of claim shall be executed by the creditor or the creditor's
authorized agent except as provided in Rules 3004 and 3005.

(c) Supporting Information.

(1) Claim Based on a Writing. Except for a claim governed by paragraph (3) of
this subdivision, when a claim, or an interest in property of the debtor securing the
claim, is based on a writing, a copy of the writing shall be filed with the proof of

34

claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply. In a case in which the debtor is an individual:

>   (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

>   (B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

>   (C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

>   (D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

>   >   (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

>   >   (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

(3) Claim Based on an Open-End or Revolving Consumer Credit Agreement. ***

(d) Evidence of Perfection of Security Interest. If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected. ***

(f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

35

Bankruptcy Rule 3001 (in part).

## Complaint Allegations - Count 3

Appellants rely on the entire Complaint for a complete recitation of the factual

allegations. However, Appellants alleged the following key facts in support of Count 3 of their

Complaint:

86.    Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

87.    The Claim filed by US Bank, which was dated January 2, 2013, but filed March 8, 2013, claimed a security interest in property that is Debtor's principal residence, and it claimed interest, fees, and expenses incurred before the Bankruptcy Case was filed.

88.    US Bank failed to attach to the Claim a copy of the writing upon which it was based such as the Note and Deed of Trust, or evidence that the security interest claimed has been perfected.

89.    US Bank also failed to attached to the Claim (a) an itemized statement of the interest, fees, and expenses incurred before the Bankruptcy Case was filed, (b) the attachment prescribed by the proof of claim Official Form, and (c) an escrow account statement prepared as of the date the Bankruptcy Case was filed in a form consistent with applicable non-bankruptcy law.

90.    The Amended Claim filed by Wells Fargo claimed a security interest in property that is Debtor's principal residence, and it claimed interest, fees, and expenses incurred before the Bankruptcy Case was filed.

91.    Wells Fargo failed to attach to the Amended Claim a copy of the writing upon which it was based since the Note it attached is made payable to the order of the Trust, and the Trust terminated and ceased to exist in January 2012.

92.    In Debtor's Claim Objection filed April 2, 2013, Debtor notified Wells Fargo that the Amended Claim is defective since it included no evidence of Wells Fargo's standing to file it.

93.    Debtor's Claim Objection also notified Wells Fargo: "Since the underlying foreclosure cases were filed by entities that lacked standing, and inspection fees are prohibited by Section 12-121 of the Commercial Law Article, Annotated Code of Maryland, the foreclosure fees and costs, and the inspection fees, are not authorized by

36

the Note or Deed of Trust and must be disallowed."

94.     Wells Fargo entered into a Consent Order in connection with the AG Settlement (hereinafter the "Wells Fargo AG Consent Order") which provides in relevant part, at Exhibit A, I.D.1: [Wells Fargo] shall ensure that each POC is documented by attaching: a. The original or a duplicate of the note, including all indorsements."

95.     The Wells Fargo AG Consent Order also provides, at Exhibit A, I.A.15:

> Servicer shall not file a POC in a bankruptcy proceeding which, when filed, contained **materially inaccurate information**. In cases in which such a POC may have been filed, **Servicer shall not rely on such POC and shall** (a) in active cases, at Servicer's expense, take appropriate action, consistent with state and federal law and court procedure, to **substitute such POC with an amended POC as promptly as reasonably practicable (and, in any event, not more than 30 days) after acquiring actual knowledge of such material inaccuracy** and provide appropriate written notice to the borrower or borrower's counsel; and (b) in other cases, at Servicer's expense, take appropriate action after acquiring actual knowledge of such material inaccuracy.

96.     Wells Fargo did not respond to the Claim Objection. Although more than four months have passed since Wells Fargo was put on notice of the absence of evidence of its standing to file the Amended Claim and of the errors in the amount claimed, it still has not filed a second amended claim with the missing evidence of its standing, nor has it amended the amount claimed in the Amended Claim by removing the bogus foreclosure fees and costs and the inspection fees and crediting all of Debtor's payments.

97.     Defendants' failure to comply with Rule 3001 has harmed Debtor and caused him to incur substantial attorney's fees in preparing and prosecuting his Claim Objection and this adversary proceeding, in addition to the mental anguish he has suffered due to the resulting delay in resolving this Bankruptcy Case through confirmation of his Plan.

Compl. ¶¶ 86-97 (Apx. 43-5).

Appellants alleged numerous instances of Wells Fargo and US Bank's failure to comply

with Rule 3001, including the requirement in subsection (c)(1) that

> ...when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim.  If the writing has

37

been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

Bankruptcy Rule 3001(c)(1). US Bank attached no writing to its Claim (Compl. 87-88) (Apx. 43), and Wells Fargo attached a note payable to the terminated Trust (Compl. 90-91) (Apx. 43). Although Wells Fargo represented to the bankruptcy court that it was the holder of the Note, it subsequently admitted that the Note was lost, and failed to include in the Amended Claim (or the LNA) "a statement of the circumstances of the loss or destruction..." as required by Rule 3001(c)(1). Wells Fargo also violated the terms of the AG Consent Order when it failed to attach a note including all indorsements. Compl. 94. Accordingly, the Claim and Amended Claim were not filed in accordance with Rule 3001 and do not "constitute prima facie evidence of the validity and amount of the claim. Rule 3001(f).

**Conclusion**

Since Appellants clearly pled a valid claim for relief under Rule 3001, even had the bankruptcy court improperly considered the extrinsic evidence before it ( as heretofore discussed at length under Count 2), the bankruptcy court therefore erred in dismissing Count 3 for failure to state a valid claim.

**D.      Claim 4 - Unlawful Inspection Fees**

In Count 4, Appellants alleged statutory violations under section 12-1027 of the Maryland's Commercial Law Article for unlawful inspection fees. The bankruptcy court dismissed Count 3 for failure to state a claim without explaining why. Appellants had responded to the motion to dismiss as follows:

> Plaintiffs allege that Movants have sought to collect unlawful Inspection Fees in the Claim and Amended Claim in violation of Section 12-1027 of Maryland's Commercial

38

Law Article. Compl. ¶¶ 98-106. Movants seek dismissal of this Count IV because the fees are characterized as "Appraisal/broker's price opinion fees" in the Amended Claim, rather than inspection fees. Memo. 14. However, these four alleged valuations are claimed to have occurred over a very short period of time, from September 16, 2010 through June 13, 2012, from which a reasonable inference is that some or all of these fees are disguised inspection fees. In addition, one of the fees is for $50, while three are for $90 each, also leading to a reasonable inference that the $50 fee was not for a valuation.

Pls.' Memo at 25 (Apx. 151).

Section 12-1027 of Maryland's Commercial Law Article provides:

(a) "Lender's inspection fee" defined. -- In this section, "lender's inspection fee" means a fee imposed by a credit grantor to pay for a visual inspection of residential real property.
(b) Not imposed. -- Except as provided in subsection (c) of this section, a credit grantor may not impose a lender's inspection fee in connection with a loan made to a consumer borrower that is secured by residential real property.
(c) Imposed. -- A lender's inspection fee may be imposed on a consumer borrower if the inspection is needed to ascertain completion of:
     (1) Construction of a new home; or
     (2) Repairs, alterations, or other work required by the credit grantor.
(d) Appraisals. -- This section does not apply to an appraisal of the value of real property by a credit grantor or to fees imposed in connection with an appraisal.

Md. Code Ann., *Com. Law*, §12-1027.

### Complaint Allegations - Count 4

Appellants rely on the entire Complaint for a complete recitation of the factual

allegations. However, Appellants alleged the following key facts in support of Count 4 of their

Complaint:

      98.    Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

      99.    Each Plaintiff is a "consumer borrower" as that term is defined in § 12-1001(f) of the Commercial Law Article, Annotated Code of Maryland (hereinafter, "CL").

      100.    By filing the Amended Claim, Wells Fargo asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

39

101.    By filing the Claim, US Bank asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

102.    By filing the Amended Transfer Notice, WSFS Bank asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

103.    The Claim and Amended Claim include the following charges: "Appraisal/broker's price opinion fees 9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00, 6/13/12: $90.00 (collectively, "Inspection Fees").

104.    The Inspection Fees were for visual inspections of the Property, were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants.

105.    The Inspection Fees are violations of CL § 12-1027 and may not be imposed. Any credit grantor who violates § 12-1027 may collect only the principal amount of the Note and may not collect any interest, costs, fees, or other charges with respect to the Note. In addition, a credit grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

106.    Plaintiffs have been damaged by the imposition of the Inspection Fees, including incurring attorney's fees and costs to vindicate their rights.

Compl. ¶¶ 98-106 (Apx. 45-6).

Appellants argue that the labels they placed on charges should determine whether Appellants were charged"Appraisal/broker's price opinion fees" in the Amended Claim, rather than inspection fees. Defs' Memo. at 14 (Apx. 90). However, these four alleged valuations are claimed to have occurred over a very short period of time, from September 16, 2010 through June 13, 2012, from which a reasonable inference is that some or all of these fees are disguised inspection fees. In addition, one of the fees is for $50, while three are for $90 each, also leading to a reasonable inference that the $50 fee was not for a valuation.

**Conclusion**

40

Since Appellants pled a valid claim for relief under CL 12-1027 of Maryland's Commercial Law Article, after drawing all reasonable inferences in Appellants' favor, the bankruptcy court therefore erred in dismissing Count 4 for failure to state a valid claim.

### E.    Counts 5-8

The bankruptcy court dismissed Counts 5-8 of the Complaint for failure to state valid claims without explaining why. Since these counts clearly state valid claims without regard to the bankruptcy court's faulty trust termination analysis (heretofore examined in detail under Count 1), Appellants will, in the interest of time, simply quote here what they presented to the bankruptcy court in their Memo. in Support of Plaintiffs' Response to Motion to Dismiss Filed by Wells Fargo Bank, N.A. and U.S. Bank, N.A. ("Pls' Memo"), ECF 1-21 at 25-28 (Apx. 151-4):

### 1.    Count V – TILA Recoupment

In Count V, Plaintiffs seek recovery under the Truth in Lending Act for Movants' failure to provide the required statutory notices required by 15 U.S.C. §§ 1639c(h) and 1641(g) when the Mortgage was allegedly transferred. Compl. ¶¶ 107-121. Movants seek dismissal of this Count V because of the one year limitations period set forth in 15 U.S.C. § 1640(e).

Plaintiffs' damage claims in Count V are valid as recoupment or setoff claims to reduce the Note balance should the Amended Claim be allowed. Section 1640(e) provides:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from

41

> asserting a violation of this subchapter in an action to collect the debt which was
> brought more than one year from the date of the occurrence of the violation as a
> matter of defense by recoupment or set-off in such action, except as otherwise
> provided by State law.

15 U.S.C. § 1640(e); *In re Coxson*, 43 F.3d 189 (5th Cir. 1995) (TIL claim can be raised

defensively by way of adversary proceeding objecting to proof of claim in a chapter 13

case). Here, Plaintiffs have objected to the Amended Claim in Count IX, and they

requested recoupment relief in Count V:

> Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are
> otherwise barred by a limitations or other defense.

Compl. ¶ 121, Wherefore Clause. Accordingly, Plaintiffs stated a valid claim in Count V.

### 2.    Count VI - FDCPA

Plaintiffs seek recovery against Movants in Count VI under the Fair Debt

Collection Practices Act for using false, deceptive, or misleading representations or

means in connection with the collection of a debt, as prohibited by 15 U.S.C. § 1692e.

Compl ¶¶ 135. Movants seek dismissal on the basis the latest allegation of misconduct

occurred on February 21, 2012, more than one year before the September 3, 2013 date the

Complaint was filed. Memo. 17-18.

Plaintiffs state a valid claim in Count VI for at least two reasons. Plaintiffs' are

entitled to recoupment against the Amended Claim, should it be allowed, since Plaintiffs'

FDCPA claims arise out of the same transaction as the Amended Claim and Maryland

recognizes the common law right of recoupment. *See, e.g., Pines Plaza Ltd. P'ship v.*

*Berkley Trace, LLC,* 431 Md. 652, 675-676, 66 A.3d 720, 2013 Md. LEXIS 296 (Md.

2013) (recoupment allowed even though could not affirmatively seek to collect

42

indemnification judgment); *Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 388-389, 744 A.2d 549, 2000 Md. LEXIS 11 (Md. 2000).

Secondly, the limitations period had not yet run on some of the misrepresentations, since Plaintiffs allege the Plan Objection, Claim, and Amended Claim all violated the FDCPA, yet those representations all occurred within one year before filing the Complaint. Compl. ¶¶ 127-129.

In addition, Maryland recognizes the discovery rule in determining when a cause of action accrues under the FDCPA. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 760 (D. Md., 2012), *aff'd* (4th Cir. June 12, 2013) (unpublished opinion). Plaintiffs request leave to amend Count VI of the Complaint to add allegations regarding when Plaintiffs discovered the alleged misrepresentations in the event the Court dismisses Count VI.

### 3. Count VIII - Maryland Consumer Protection Act

In Count VIII of the Complaint, Plaintiffs seek recovery from Movants for their violations of the Maryland Consumer Protection Act ("MCPA"), Sections 13-101 *et seq.* of Maryland's Commercial Article, which prohibits the violations of Maryland's Consumer Debt Collection Act ("MCDCA") set forth in Count VII, and any

> (1) False, falsely disparaging, or misleading oral or written statement, ... which has the
> capacity, tendency, or effect of deceiving or misleading consumers ...

Compl. ¶ 143. The Plaintiffs further allege that Movants violated MCPA

> by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case, Claim, and Amended Claim, by falsely telling the Debtor that the Howes were eligible for a HAMP modification (¶¶ 18, 20-21 *infra*), by concealing Trust termination, by failing to inform the beneficial owner of the Note about the Howes First and Second Offers (¶¶ 23, 28-29 *infra*), and by

43

failing to run the NPV test in accordance with HAMP requirements (¶¶ 30-34 *infra*).

Compl. ¶ 143.

Movants seek dismissal of Count VIII on the basis that Plaintiffs have failed to allege reliance. Memo. 19. Since a violation of the MCDCA is a violation of the MCPA, and there is no reliance requirement to finding a violation of the MCDCA, Count VIII states a valid claim to the extent Count VII states a valid claim, regardless of reliance. However, Plaintiffs did allege reliance on Movants' false statements that they were eligible for a HAMP mortgage modification.

18.    In July, 2009, Debtor contacted Wells Fargo, as the alleged servicer of the Note, to determine modification eligibility and completed a loss mitigation telephone application. Upon completion of the telephone application, Wells Fargo told Debtor that the Howes were eligible for a mortgage modification under the U.S. Treasury's Home Affordable Modification Program (hereinafter "HAMP"). Accordingly, the Howes completed a HAMP application dated August 18, 2009, and submitted it to Wells Fargo.

19.    Debtor spent over nineteen hundred hours of lost time from work through July 19, 2010, preparing and submitting to Wells Fargo at least five full HAMP applications, and engaging in over 100 communications with Wells Fargo involving information request responses, re-documentation and re-submission responses, all as required by Wells Fargo to process the Howes' HAMP application.

20.    On July 19, 2010, Wells Fargo's employee Susan Gordon informed Debtor by email that the Howes were not eligible for a HAMP loan modification.

Compl. ¶¶ 18-20. Accordingly, Plaintiffs have stated a valid claim in Count VIII.

Pls' Memo, at 25-28 (headings revised to conform to brief) (Apx. 151-4).

Appellants also addressed Counts 6 (FDCPA), 7 (MDCA), and 8 (MCPA) elsewhere in Pls' Memo:

44

Movants also argue that Count VI (Fair Debt Collection Practices Act) should be dismissed because Plaintiffs have provided no evidence that Wells Fargo falsely stated that Debtor was liable to it for $740,334.24 (as stated in ¶ 129 of the Complaint). Memo. 12. However, as stated in the preceding paragraph, there is ample evidence in the Complaint that the Amended Claim contains bogus fees and fails to credit all of Debtor's payments. Compl. ¶ ¶ 36-47, 96, 99-105. Likewise, Movants' argument that there is no evidence to support the allegation in Count VII (Violation of Maryland Consumer Debt Collection Act), that Wells Fargo sought to collect amounts it knows are not lawfully due, also fails. *Id.*

Movants attack Count VIII (Violation of Maryland Consumer Protection Act) for lack of evidence Wells Fargo falsely or wrongly asserted ownership of the Note in the Second Foreclosure Case, Claim, and Amended Claim. Memo. 13. This argument also fails since Wells Fargo falsely asserted that the Trust was the owner of the Note in the Second Foreclosure Case and Claim despite the fact that the Trust had ceased to exist. Compl ¶¶ 41-47. Movants also ignore the other allegations of Count VIII regarding

> falsely telling the Debtor that the Howes were eligible for a HAMP modification ( ¶¶ 18, 20-21 *infra*), by concealing Trust termination, by failing to inform the beneficial owner of the Note about the Howes First and Second Offers (¶¶ 23, 28-29 *infra*), and by failing to run the NPV test in accordance with HAMP requirements (¶¶ 30-34 *infra*.

Compl. ¶ 143. Accordingly, Count VIII states a valid claim.

Finally, Wells Fargo argues that its Plan Objection was harmless since it was the holder of the claim rather than the servicer for the Trust as stated in the Objection. Memo. 13. However, there is no evidence of Wells Fargo's holder status, Plaintiffs allege Wells

Fargo is not the note holder, Compl. ¶¶ 77-79. and Movants ignore the role the Plan

Objection played in their scheme to defraud.

> In furtherance of its scheme to defraud and hide the fact of Trust termination,
> Wells Fargo and US Bank filed the Plan Objection in which they maintained the
> continued existence of the Trust and its ownership of the Note over one year after
> the Note was removed from the Trust and nearly 12 months after the Trust
> terminated and ceased to exist.

Compl. ¶ 68.

> Accordingly, Plaintiffs have stated valid claims in Counts I, II, III, VI, VII, VIII,

and IX since there is no evidence of Wells Fargo's holder status and these Counts are not

based solely on Wells Fargo's holder status.

Pls. Memo at 23-25 (Apx. 149-151).

### Conclusion

Since Appellants pled a valid claims for relief in Counts 5-8, after drawing all reasonable

inferences in Appellants' favor, the bankruptcy court therefore erred in dismissing Count 5-8 for

failure to state valid claims.

F.    **Count 9 – Claim Objection**

In Count 9, Appellants object to the allowance of the Amended Claim pursuant to 11

U.S.C. § 502. The bankruptcy court dismissed Count 9 of the Complaint for failure to state valid

claims without explaining why.

Section 502 provides in relevant part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed
allowed, unless a party in interest, including a creditor of a general partner in a
partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such

46

objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;   ***

11 U.S.C. § 502.

In addition, Bankruptcy Rule 3001 details the information that must be provided when filing a proof of claim. For the reasons set forth herein under Count 3, Appellees failed to comply with Rule 3001, rendering their claims subject to sanctions and devoid of any presumptive validity.

### Complaint Allegations - Count 9

Appellants rely on the entire Complaint for a complete recitation of the factual allegations. However, Appellants alleged the following key facts in support of Count 9 of their Complaint:

144.    The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

145.    Debtor previously filed the Claim Objection, Wells Fargo filed no response, the Court scheduled the matter for hearing, then notices of claim transfer were filed by CMS and WSFS Bank (¶¶ 55-58 *infra*). The Court denied the objection without prejudice due to notice of the Claim Objection not having been provided to CMS and WSFS Bank. Cause exists pursuant to 11 U.S.C. § 502(j) to reconsider the Amended Claim, since the Claim Objection was denied without prejudice to Debtor bringing this adversary proceeding and providing notice of its objection to CMS and WSFS Bank.

146.    The Claim and Amended Claim must be disallowed for the following reasons:
a.    Defendants US Bank and Wells Fargo lacked standing to file the Claim or Amended Claim;
b.    Alternatively, the claim must be reduced by the damages awarded Plaintiffs pursuant to this Complaint, and by their recoupment rights for those claims

47

otherwise barred by a statute of limitations;

      c.    The Claim and Amended Claim fail to credit Plaintiffs with all payments made (¶¶ 17, 22 *infra*);

      d.    The Claim and Amended Claim seek (i) foreclosure fees and costs that were unreasonably incurred in the First Foreclosure Case, which was dismissed due to numerous and fatal robo signing defects (¶¶ 36-40 *infra*), (ii) foreclosure fees and costs for the Second Foreclosure Case filed without standing on behalf of the Trust after it ceased to exists (¶¶ 41-49 *infra*), and (iii) unlawful inspection fees disguised as broker's price opinion fees (Count IV).

Compl. ¶¶ 144-146 (Apx. 54-5).

The arguments made before the bankruptcy court in support of Count 9 are found herein under all the other counts, since those counts deal with Wells Fargo's lack of standing to file the Amended Claim, the amount due thereunder, and the numerous setoff claims Appellants alleged. If appellants stated a valid claim in any of their other eight counts, they also stated a valid claim in Count 9 (Compl. ¶ 146(b)). In addition, Count 9 also states a valid claim on its own based on lack of standing (Compl. ¶ 146(a)), and because the amount claimed is excessive since the Amended Claim fails to credit Appellants with all payments made (Compl. ¶ 146(c)), unreasonably seeks recovery of foreclosure fees for false affidavits filed in a foreclosure case that was dismissed due to those defects, and unreasonably seeks recovery of foreclosure fees for a foreclosure case that is a nullity due to lack of standing to file it (Compl. ¶ 146(d)).

**Conclusion**

Since Appellants clearly pled a valid claim objection in Count 9, the bankruptcy court therefore erred in dismissing Count 9 for failure to state a valid claim.

                     Respectfully submitted,
                     */s/ Robert J. Haeger, October 30, 2014*
                     Robert J. Haeger, Bar No. 25434
                     Attorney for Appellants
                     11403 Seneca Forest Circle

48

Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified -- Consumer Bankruptcy Law
-- American Board of Certification

49

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing No Opposition Motion to Extend Time to File Appellants' Brief to be sent on October 30, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Appellees*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorneys for Appellees Carrington*
*Mortgage Services, LLC and Wilmington*
*Savings Fund Society, FSB*

*/s/ Robert J. Haeger, October 30, 2014*
Robert J. Haeger

50

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

---

Appeal No.  1:14-cv-02814-ELH

Bankruptcy Case No. 12-30614-RAG

Adversary Proceeding No. 13-00510-RAG

---

JEFFREY V. HOWES, et al.,

Appellants

v.

WELLS FARGO BANK, N.A., et al.,

Appellees

---

Appeal from the United States Bankruptcy Court for the District of Maryland
(The Honorable Robert A. Gordon, Bankruptcy Judge)

---

## BRIEF OF APPELLEES, U.S. BANK, NATIONAL
## ASSOCIATION AND WELLS FARGO BANK, N.A.

---

Douglas B. Riley, 01220
Treanor Pope & Hughes, P.A.
500 York Road, Towson, Maryland 21204
Tel:  410-494-7777, Fax: 410-494-1658
Email: dbriley@tph-law.com

Attorneys for U.S. Bank, National
Association and Wells Fargo Bank, N.A.

October 13, 2014

## TABLE OF CONTENTS

Statement of the Basis of Appellate Jurisdiction ................................................. 1

Statement of the Issues Presented ..................................................................... 1

The Standard of Review...................................................................................... 1

Statement of the Case......................................................................................... 2

Statement of the Facts Relevant to the Issues Presented ..................................... 5

The Counts of the Complaint.............................................................................. 8

Argument .......................................................................................................... 11

I.     THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING THE COMPLAINT FOR FAILING TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED................................................... 11

     A.     All Counts Of The Complaint Turn Upon The Same Allegation That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely Claim To Hold The Note And Are Entitled To Enforce The Deed Of Trust .................................................... 11

II.    COUNT IV OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE THE PROOF OF CLAIM DID NOT INCLUDE AN ILLEGAL INSPECTION FEE .......................................... 17

III.   COUNT V OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ITS TILA CLAIM WAS TIME-BARRED ...................................................................................... 19

IV.   COUNT VI OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ITS FDCPA CLAIMS WERE TIME-BARRED ...................................................................................... 21

V.    COUNT VIII OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE THERE WERE NO ALLEGATIONS OF RELIANCE ON THE ALLEGED MISREPRESENTATIONS OF U.S. BANK AND WELLS FARGO........................................................ 22

VI.   THE BANKRUPTCY COURT DID NOT ERR IN DENYING APPELLANTS' MOTION FOR RECONSIDERATION....................... 23

Conclusion ........................................................................................................ 24

Certificate of Service ......................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Allen v. CitiMortgage, Inc.*, 2011 WL 3425665 at *9 (D. Md., August 4, 2011) ................................................................................................................ 22

*Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011) ............................................. 11, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..................................................................................................... 2, 14, 19

*Deutsche Bank v. Brock*, 430 Md. 714, 63 A.3d 40 (2013) ................................. 14, 15, 16

*Faulkner* Adver. *Assocs., Inc. v. Nissan Motor Corp.*, 945 F.2d 694 (4ᵗʰ Cir. 1991) ............................................................................................................... 19

*Glover v. Federal Deposit Insurance Corporation*, 698 F.3d 139 (3ʳᵈ Cir. 2012) ............................................................................................................... 21

*Greenhouse v. MCG Capital Corp.*, 392 F.3d 655 (4ᵗʰ Cir. 2004) .............................. 1

*Hall v. Virginia*, 385 F.3d 421 (4ᵗʰ Cir. 2004) .................................................... 2, 12

*Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir.1993) ....................................................... 24

*In re Simmerman*, 463 B.R. 47 (Bankr.S.D.Ohio 2011) .................................................. 15

*In re Veal*, 450 B.R. 897 (9th Cir. BAP 2011) .................................................................. 15

*In re Walker*, 466 B.R. 271, (Bankr.E.D.Pa.2012) ......................................................... 15

*Jaimes v. JP Morgan Chase Bank, N.A.*, WL 677740 (N.D. Ill. 2013) ....................... 16

*Khaliq v. Draper & Goldberg, P.L.L.C.*, 286 Fed.Appx. 72 (4ᵗʰ Cir. 2008) ................. 21

*Kloth v. Microsoft Corp.*, 444 F.3d 312 (4ᵗʰ Cir. 2006) .................................................. 2

*Labram v. Havel*, 43 F.3d 918 (4ᵗʰ Cir. 1995) ................................................................. 19

*Lennon v. Penn Waste, Inc.*, 2009 WF 3255238 (M.D. Pa. October 7, 2009) ........................................................................................................................ 21

*Lennon v. Penn Waste, Inc.*, 2009 WL 3255294 at *6 (M.D. Pa. June 29, 2009) ............................................................................................................... 21

*Mylan Laboratories v. Matkari*, 7 F.3d 1130 (4ᵗʰ Cir. 1993) ........................................ 1

*Pacific Insurance Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396 (4th Cir.1998) ........................................................................................................ 2, 23

*Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4ᵗʰ Cir. 2009) ................... 2, 13

*Shahed Farasat v. Wells Fargo Bank, N.A.*, 913 F.Supp.2d 197 (D.Md 2012) ............................................................................................................. 22, 23

*SMS Financial, LLC v. ABCO Homes, Inc.*, 167 F.3d 235 (5th Cir.1999) ...................... 15

*Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012) .............................................. 23

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298 (D. Md. 2000) ......................................................................................................... 22

*Terry v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1832376 (D. Md. April 30, 2013) ...................................................................................... 20

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284 (4ᵗʰ Cir. 2002) ........................................................................................................ 24

*Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273 (D. Md. 1983) .......................... 22

**Statutes**

15 U.S.C. § 1629K(d) ........................................................................... 21
15 U.S.C. § 1639c(h) ................................................................... 9, 19, 20
15 U.S.C. § 1640(e) .............................................................................. 20
15 U.S.C. § 1641(g) ..................................................................... 9, 19, 20
15 U.S.C. § 1692e(10) .......................................................................... 10
15 U.S.C. § 1692e(2)(A) ....................................................................... 10
28 U.S.C. § 158 ...................................................................................... 1
Md. Code Ann., Commercial Law Article § 12-1027 ............................. 9
Md. Code Ann., Commercial Law Article § 13-101 ............................. 10
Md. Code Ann., Commercial Law Article § 13-301(1) ................... 22, 23
Md. Code Ann., Commercial Law Article § 14-201 ............................. 10
Md. Code Ann., Commercial Law Article § 3–203 .............................. 15
Md. Code Ann., Commericial Law Article § 3–301 ............................. 15

**Rules**

Fed. R. Civ. P. 59(e) ................................................................... 2, 23, 24
Fed. R. Civ. P. 9(b) .............................................................................. 22
Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 2, 12, 14

## BRIEF OF APPELLEES, U.S. BANK, NATIONAL ASSOCIATION AND WELLS FARGO BANK, N.A.

Appellees U.S. Bank, National Association ("U.S. Bank") and Wells Fargo Bank,

N.A. ("Wells Fargo") by their undersigned attorneys, file their Appellees' Brief.

### Statement of the Basis of Appellate Jurisdiction

An appeal from a judgment, order, or decree of a bankruptcy court to the district

court is permitted by 28 U.S.C. § 158(a)(1).

### Statement of the Issues Presented

Did the bankruptcy court err in dismissing Count I of the Complaint, with prejudice,

for failing to state a claim upon which relief can be granted?

Did the bankruptcy court err in dismissing Counts II through IX of the Complaint,

without prejudice, for failing to state claims upon which relief can be granted?

Did the bankruptcy court err in denying Appellants' Motion for Reconsideration

with respect to its dismissal of Counts I through IX of the Complaint?

### The Standard of Review

The district court reviews *de novo* the bankruptcy court's dismissal for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6). *Greenhouse v. MCG Capital

Corp.,* 392 F.3d 650, 655 (4th Cir. 2004). In considering the matter, the court accepts as

true all well-pleaded allegations and views the complaint in the light most favorable to

plaintiff. *Mylan Laboratories v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, to

survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to

relief above the speculative level [and have] enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965,

1

167 L.Ed.2d 929 (2007).  The court need not accept the plaintiff's legal conclusions drawn

from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions,

or arguments.  *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).  Moreover, in

reviewing a Rule 12(b)(6) dismissal, the appellate court may properly take judicial notice

of matters of public record, just as the lower court was entitled to do.  *Hall v. Virginia*, 385

F.3d 421, 424 (4th Cir. 2004), *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176, 180

(4th Cir. 2009).

The denial of a Rule 59(e) motion for a new trial or to alter or amend a judgment

or order is reviewed by the appellate court for an abuse of discretion. *Pacific Insurance Co.*

*v. American Nat'l Fire Ins. Co.,* 148 F.3d 396, 402 (4th Cir.1998).

### **Statement of the Case**

On September 3, 2013, Appellants Jeffrey V. Howes and Tonya H. Howes filed a

35-page, nine-count, Complaint to Determine Secured Status, Sanctions, or Other Relief

("Complaint") against four defendants: U.S. Bank and Wells Fargo, Carrington Mortgage

Services, LLC ("Carrington"), and Christiana Trust, A Division of Wilmington Savings

Fund Society, FSB ("Christiana Trust").  [Appendix, pp. 22-76].

On October 9, 2013, Carrington and Christiana Trust filed a Motion to Dismiss for

Failure to State a Claim and, on October 17, 2013, with leave of the court, U.S. Bank and

Wells Fargo filed their Motion to Dismiss Complaint to Determine Secured Status,

Sanctions, and Other Relief.   [Carrington and Christiana Trust's Motion to Dismiss was

omitted from the Appendix; U.S. Bank's and Wells Fargo's Motion to Dismiss is fount at

Appendix 77-126].

2

On October 23, 2013 and October 31, 2013, Appellants filed Responses to the respective Motions to Dismiss. On December 18, 2013, Carrington and Christiana Trust filed an Amended Motion to Dismiss Adversary Proceeding, to which Appellants filed a Response on January 2, 2014. [Appendix, pp. 127-157, 165-171].

On January 6, 2014, the court heard oral argument on the respective Motions to Dismiss and Responses thereto, inviting U.S. Bank and Wells Fargo to submit a supplemental brief on the effect of trust termination. On January 21, 2014, U.S. Bank and Wells Fargo filed a Supplemental Memorandum in Support of Motion to Dismiss, to which Appellants duly responded on February 5, 2014. [Appendix, pp. 182-199, 200-206].

On March 4, 2014, the court reconvened, and The Honorable Judge Robert A. Gordon announced his decision (a) to dismiss Count I of the Complaint with prejudice for failing to state a claim on which relief can be granted; (b) to dismiss the remaining counts without prejudice; (c) directing Carrington and Christiana Trust to submit an affidavit explaining their claim of ownership to the subject note and mortgage; and (d) directing Appellants to file either an objection to Claim No. 4-2[1] or an amended complaint, or both, by May 3, 2014 "or the Complaint shall be dismissed with prejudice." This ruling was reduced to a written Order and entered on May 12, 2014. [Appendix, pp. 285-287].

As directed, Carrington filed an Affidavit Certifying Ownership of Debt Instrument on April 3, 2014. Appellants, however, neither objected to Claim No. 4-2 nor filed an amended complaint by May 3, 2014. Instead, on May 5, 2014, Appellants filed a Motion

---

[1]  Claim No 4-2 is a secured claim filed by U.S. Bank, amended by Wells Fargo, and subsequently assigned to Christiana Trust and Carrington which now own and service the debt instrument.

3

to Reconsider Oral Ruling on Motion to Dismiss and Objection to Ownership Affidavit, to which the four Appellants filed responses on May 19, 2014 and May 20, 2014, respectively. [Appendix, pp. 238-284, 288-293, 294-296].].

On July 16, 2014, the court heard oral argument on Appellants' Motion to Reconsider, entering a formal order on July 22, 2014 denying the relief requested. [Appendix, pp. 297-298]. The court expressly found that, "...to the extent the [Appellants] may have legitimate claims that (1) one or more of the present defendant/claimants are not entitled to enforce the underlying loan documents or (b) the amount of debt asserted in Proof of Claim No. 4-2 is incorrect, then those assertions must be raised through either an objection to claim or amended complaint." [Appendix, p. 298]. The court, having previously given Appellants until May 3, 2014 to file either an amended complaint or objection to claim, then extended this deadline to July 23, 2004. [Appendix, p. 298].

Rather than to file an amended complaint or objection to Wells Fargo's proof of claim, Appellants noted this appeal on August 5, 2014. The Notice of Appeal challenges two orders of the bankruptcy court: Order Dismissing Complaint for Failure to State a Claim, entered on May 12, 2014 [Appendix, pp. 285-287] and Order Denying Plaintiffs' Motions to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit, entered on July 22, 2014 [Appendix, pp. 297-298].

The record was transmitted on September 4, 2014, and by leave of Court, Appellants filed Appellants' Brief on September 29, 2014. Two days later, Appellants filed an Amended Brief. Then, on October 5, 2014, Appellants filed a 417-page appendix, which included several documents not previously designated, but to which U.S. Bank and Wells Fargo have no objection.

Appellees U.S. Bank and Wells Fargo now file their Brief of Appellees.

## Statement of the Facts Relevant to the Issues Presented

The factual allegations of the Complaint may be summarized as follows:

1.     On or about November 30, 2001, Appellants executed a Construction Note payable to The Columbia Bank in the principal amount of $696,130.00.[2] Complaint, ¶ 15, Exhibit 1 [Appendix, p. 26, 58-61].

2.     The Note was secured by certain real property owned by Appellants and described as Lot 45 in the subdivision known as "Pindell Woods" located in Howard County, Maryland ("Property").[3] Complaint, ¶15, 16 [Appendix, p. 26].

3.     In April 2009, Appellants defaulted on the Note and fell more than 60 days behind by June 2009. After August 31, 2009, they stopped making any payments on the Note.[4] Complaint, ¶ 17 [Appendix, pp. 26-27].

4.     On August 18, 2009, Appellants applied to Wells Fargo for a loan modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP"). Complaint, ¶ 19 [Appendix, p. 27].

---

[2]   The Construction Note was amended by a Loan Modification Agreement dated April 16, 2003 and recorded among the Land Records of Howard County at Liber 07153, folio 094. Under the Loan Modification Agreement, Appellants' unpaid principal balance was $650,000.00, and their interest rate was lowered from a floating rate of 6%-11% to a fixed rate of 5.75%. A copy of the Loan Modification Agreement may be found in the Appendix, pp. 98-105.

[3]   The Property is commonly known as 7000 Meandering Stream, Fulton, Maryland 20759. See Complaint, Exhibits 3 and 4 [Appendix, pp. 66-76].

[4]   As reflected in paragraphs 17 and 59 of the Complaint, Appellants paid nothing toward their mortgage loan from August 31, 2009 until May 2, 2013, almost four years later. On May 2, 2013 and June 13, 2013, Appellants allegedly sent two monthly payments to Wells Fargo, but these were returned as Mr. Howes had filed for bankruptcy relief.

5

5.      On July 19, 2010, Appellants were informed that they were not eligible for a HAMP loan modification, and were subsequently told: "… we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP)." Complaint, ¶¶ 21, 22 [Appendix, pp. 27-28].

6.      Nevertheless, on October 6, 2010, Wells Fargo offered Appellants a Forbearance Agreement temporarily reducing their payments and lowering their interest rate, but requiring an upfront payment of $24,683.61, and a balloon payment of $58,766.56 at maturity.[5]  Complaint, ¶ 22 [Appendix, pp. 27-28].

7.      Appellants rejected Wells Fargo's offered Forbearance Agreement. Complaint, ¶ 23 [Appendix, p. 28].

8.      Upon rejecting Wells Fargo's Forbearance Agreement, Appellants made a counter offer to Wells Fargo, offering to cure their default "in exchange for a new fixed rate mortgage at the current market average rate." Wells Fargo rejected the counter offer. Complaint, ¶ 23 [Appendix, p. 28].

9.      On February 21, 2012, U.S. Bank as principal, and Wells Fargo, as agent, initiated a foreclosure action ("Foreclosure Case") against Appellants.[6]  Complaint, ¶ 36 [Appendix, p. 31].

---

[5]      According to the terms of the Loan Modification Agreement, Appellants' monthly payments of principal and interest were $3,792.22. [Appendix, pp. 98-102]. With additional amounts escrowed for taxes and insurance, their total monthly payments were approximately $4,500. Accordingly, having made no mortgage payments since August 31, 2009, Appellants were more than 11 months in arrears, or approximately $50,000.00 delinquent.  The upfront cash payment that Wells Fargo proposed was less than half the amount then due.

[6]      According to the Complaint, this was the second foreclosure action initiated by U.S. Bank and Wells Fargo.  The first had been filed on January 20, 2010, but voluntarily

6

10.    In June 2012, Appellants renewed their efforts to obtain "an equitable, long-term modification" from Wells Fargo and submitted a second HAMP loan modification. Complaint, ¶¶ 27- 28 [Appendix, pp. 29-30].

11.    On or about August 13, 2012, Wells Fargo advised Appellants that, due to their Net Present Value ("NPV"), including the value of the Property, their Mortgage could not be modified. Complaint, ¶ 30 [Appendix, p. 30].

12.    On September 11, 2012, Appellants disputed the NPV, but Wells Fargo did not respond. Complaint, ¶¶ 32-33 [Appendix, p. 30].

13.    On November 15, 2012, Mr. Howes filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code, and filed a plan providing to cure $35,662.00 in pre-petition mortgage arrears, while maintaining post-petition payments directly to Wells Fargo. Complaint, ¶ 50 [Appendix, p. 35].

15.    On January 9, 2013, Wells Fargo filed an Objection to Confirmation of Plan ("Plan Objection") as Servicer for U.S. Bank, Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust").[7]  Complaint, ¶ 52 [Appendix, pp. 35-36].

---

dismissed a year later on January 3, 2011, apparently because it was supported by defective affidavits. Complaint, ¶¶ 36, 38-40. [Appendix, pp. 31-32].

[7]    On September 19, 2013, the Court entered an Order Denying Confirmation of Chapter 13 Plan with Leave to Amend. On October 4, 2013, Mr. Howes filed an Amended Plan providing, *inter alia,* that, if not disallowed, the secured claim of the "Successor to The Columbia Bank … shall be paid or otherwise dealt with outside the plan directly by the Debtor, and it will not be discharged upon completion of the plan." The amended plan, which does not address the pre-petition arrearage or explain how the debt will be "otherwise dealt with," has not been confirmed. The confirmation hearing has been postponed several times and is now scheduled for December 17, 2014. Bankruptcy Docket No. 127.

7

15.     On March 8, 2013, U.S. Bank filed a timely proof of claim which, on March 15, 2013, was amended by Wells Fargo, asserting a secured claim of $740,334.24, with pre-petition arrearages of $200,196.79.  Complaint, ¶¶ 53-54 [Appendix, p. 36].

16.     On June 11, 2013, Wells Fargo's proof of claim was transferred to Wilmington Savings Fund Society, FSB, with payments to be made to Carrington Mortgage Services, LLC.  Complaint, ¶ 57 [Appendix, p. 37].

17.     Appellants do not know the identity of the rightful owner of the Note because, according to Exhibit 2 attached to their Complaint, the Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012.  Complaint, ¶¶ 43, 62 [Appendix, pp. 33, 38].

### The Counts of the Complaint

Based on these factual allegations, Appellants made nine claims which are summarized as follows:

COUNT I - Fraud Upon the Court.  By not disclosing that the Trust allegedly terminated in January 2012, U.S. Bank and Wells Fargo intended to defraud the Court when Wells Fargo (1) objected to Mr. Howes' Chapter 13 plan as Servicer for U.S. Bank, and (2) filed its Amended Proof of Claim in the name of Wells Fargo Bank, N.A. Appellants sought sanctions, attorneys' fees, and such other relief as necessary to prevent future fraud. [Appendix, pp. 38-41].

COUNT II -- Determination of Scope, Extent and Validity of Lien.  On the premise that U.S. Bank had no right to enforce the Note or standing to file the Amended Proof of Claim, Appellants sought a determination that their Note is unenforceable, and there is no secured claim against the Property.  [Appendix, pp. 41-43].

8

COUNT III – Sanctions for Defective Proof of Claim.  Proof of Claim 4-2 allegedly failed to include an itemized statement of the interest, fees, and expenses incurred pre-petition, an escrow account statement, or other necessary attachments.  Moreover, when Mr. Howes filed his initial Claim Objection, Wells Fargo did not respond.  Appellants sought an order precluding U.S. Bank and Wells Fargo from presenting any evidence in support of their Amended Proof of Claim, and awarding attorneys' fees to Appellants. [Appendix, pp. 43-45].

COUNT IV – Unlawful Inspection Fees.  The Amended Proof of Claim allegedly includes inspection fees that violate § 12-1027 of the Maryland Commercial Law Article. Appellants sought a finding that U.S. Bank, Wells Fargo, or their successors could not collect any interest, costs, fees, or other charges with respect to the Note. [Appendix 45-47].

COUNT V – TILA New Owner Notices.  When U.S. Bank acquired Appellants' loan, it is alleged that neither U.S. Bank nor its servicer, Wells Fargo, provided to Appellants the new creditor notice required by 15 U.S.C. § 1641(g) or a partial payment policy disclosure required by 15 U.S.C. § 1639c(h).  Likewise, such notices were omitted when the loan was allegedly removed from the Trust on January 1, 2014.  Appellants sought statutory damages in the amount of $4,000.00 for each violation. [Appendix, 47-49].

COUNT VI – Fair Debt Collection Procedures Act.  Appellants allege that Wells Fargo falsely claimed $740,334.24 in its Amended Proof of Claim. They also contend that U.S. Bank filed multiple false affidavits in the foreclosure cases.  As false, deceptive, or misleading representations are prohibited under the Fair Debt Collection Procedures Act

9

[15 U.S.C. §§1692e(2)(A) and 1692e(10)], Appellants demanded statutory damages in the amount of $1,000.00 for each violation, and a reduction in the balance of the Note by way of recoupment. [Appendix, pp. 49-52].

COUNT VII – Maryland Consumer Debt Collection Act. U.S. Bank and Wells Fargo allegedly sought to collect from Appellants amounts that they know are not lawfully due, which constitutes conduct violating the Maryland Consumer Debt Collection Act [Md. Com. Law Code, § 14-201, *et seq.*]. Appellants demanded actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment. [Appendix, pp. 52-53].

COUNT VIII – Maryland Consumer Protection Act. The alleged misconduct of U.S. Bank and Wells Fargo in falsely or wrongly asserting ownership of the Note and monies due was unfair and deceptive and violated the Maryland Consumer Protection Action [Md. Com. Law. Code, § 13-101, *et seq.*]. Appellants demanded actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment. [Appendix, pp. 53-54].

COUNT IX – Objection to Claim. As U.S. Bank and Wells Fargo allegedly lacked standing to file the Amended Proof of Claim, failed to credit Appellants with all payments made, and sought fees and other costs to which they were not entitled, the Amended Proof of Claim should be disallowed or reduced by the amount of damages awarded under their Complaint. Appellants asked the bankruptcy court to disallow the Amended Claim. [Appendix, pp. 54-55].

**Argument**

I.   THE BANKRUPTCY COURT DID NOT ERR IN DISMISSING
     THE COMPLAINT FOR FAILING TO STATE CLAIMS UPON
     WHICH RELIEF CAN BE GRANTED.

   A. All Counts Of The Complaint Turn Upon The Same Allegation
      That U.S. Bank As Trustee And Wells Fargo As Servicer Falsely
      Claim To Hold The Note And Are Entitled To Enforce The Deed
      Of Trust.

The gist of the Complaint is that neither U.S. Bank nor Wells Fargo has standing to

foreclose on the Property, to object to Appellants' Chapter 13 plan, or to file a proof of

claim pursuant to the Note and Deed of Trust under which Appellants borrowed

$650,000.00 to improve the Property.  Appellants also allege that the Amended Proof of

Claim is defective in that it includes improper fees, misstates the pre-petition arrearage,

and fails to include certain exhibits.  In response, U.S. Bank and Wells Fargo contend that,

even if the Appellants' Note was removed from the Trust, or the Trust terminated as alleged

on January 25, 2012, Appellants are still indebted to the holder of the Note because there

is no allegation that the Note was ever paid.  Moreover, the holder of the Note was U.S.

Bank, for whom Wells Fargo is servicer.[8]

---

[8]    Appellants' mortgage loan was sold by their initial lender in order to be
securitized.  As explained in *Anderson v. Burson,* 424 Md. 232, 237, 35 A.3d 452, 455
(2011), "Securitization starts when a mortgage originator sells a mortgage and its note to a
buyer, who is typically a subsidiary of an investment bank.  The investment bank bundles
together the multitude of mortgages if purchases into a "special purpose vehicle," usually
in the form of a trust, and sells the income rights to other investors.  **A pooling and
servicing agreement establishes two entities that maintain the trust:  a trustee, who
manages the loan assets, and a servicer, who communicates with and collects monthly
payments from the mortgagors."**  [Emphasis added].

11

It is evident that all nine counts of the Complaint turn upon the same premise, namely, that U.S. Bank, and Wells Fargo as its servicer, do not hold Appellants' Note and, therefore, are not entitled to enforce the Deed of Trust.  Appellants contend that, by representing otherwise, U.S. Bank and Wells Fargo committed fraud upon the Court, falsely filed foreclosure and bankruptcy pleadings, and violated the Truth in Lending Act, Fair Debt Collection Procedures Act, Maryland Consumer Debt Collection Act, and Maryland Consumer Protection Act.  For this reason, Appellants assert, Proof of Claim No. 4-2 should be denied.

Count I of the Complaint was dismissed because "Plaintiffs failed to state, and could not assert, a legitimate claim for fraud ..." Order Dismissing Complaint, Appendix, p. 286.  In making this determination, the bankruptcy court presumably took notice of the Land Records of Howard County, which clearly show that Appellants' mortgage loan was held by "U.S. Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" on the following pertinent dates:

- February 21, 2012, when U.S. Bank initiated the second foreclosure case in Howard County;

- January 9, 2013, when Wells Fargo, as servicer for U.S. Bank, filed its Objection to Confirmation of Plan.

- March 8, 2013, when U.S. Bank filed its proof of claim in Appellants' Chapter 13 case.

In reviewing a Rule 12(b)(6) motion, the court may look beyond the four corners of the complaint and take judicial notice of matters of public record.  *Hall v. Virginia*, 385

12

F.3d 421, 424 (4th Cir. 2004); *Philips v. Pitt County Memorial Hospital*, 572 F.3d. 176,

179-180 (4th Cir. 2009).  In this case, the Land Records of Howard County were brought

to the court's attention through pleadings and exhibits filed by U.S. Bank and Wells Fargo.

Appendix, pp. 79, 87, 103-107.  These records reveal that:

> On April 16, 2003, The Columbia Bank assigned the Deed of Trust on the Property, together with the Note and all money due thereunder ("Security Instrument") to Wells Fargo Home Mortgage, Inc. [Liber 07153, folio 099] Appendix, p. 103.

> On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union National Bank, as Trustee.  [Liber 9083, folio 417] Appendix, p. 105

> Then, on July 20, 2011, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank,  National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust"). [Liber 13351, folio 169] Appendix pp. 106-107.[9]

These records are entirely consistent with Appellants' repeated allegations that Wells Fargo

held itself out as loan servicer for U.S. Bank.   Complaint, ¶¶ 9, 10, 18, 35, 47, 52

[Appendix, pp.  3, 4, 6, 31, 35, 36].  In fact, Appellants aver they dealt exclusively with

Wells Fargo in connection with their loan, requesting a loan modification and other debt

relief from Wells Fargo.  Complaint, ¶¶ 18-34 [Appendix, pp. 27-31].

     The question that Appellants raise, therefore, is not whether Wells Fargo was the

loan servicer, but rather for whom was Wells Fargo servicing the loan?  Wells Fargo now

---

[9]   The Security Instrument and underlying claim were subsequently transferred to Christiana Trust by Assignments dated October 30, 2013 and March 20, 2014.  Appendix, pp. 234-237.

13

contends that, as seen in the Land Records, it was servicing the loan for U.S. Bank.[10]

Appellants contend, however, that the Trust terminated on January 25, 2012, so U.S. Bank was *not* acting as a trustee and, therefore, had no right to enforce the Note and no standing to file the Proof of Claim.  Complaint, ¶¶ 43, 76 [Appendix, pp. 33, 41].

The bankruptcy court may have concluded that Appellants' allegations of trust termination were little more than speculation and, in view of contradictory foreclosure affidavits, a sworn proof of claim, and recorded assignments, did not set forth a  claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).  This appears to be the court's reasoning from its finding that, "[Appellants] failed to state, and could not assert, a legitimate claim for fraud …" Order Dismissing Complaint, Appendix, p. 286.

But, even if the Complaint credibly alleged the Trust's termination on January 25, 2012, it fails to address who then could enforce the Note or foreclose under the Deed of Trust.  The Complaint alleges only that the Note is no longer owned by the Trust; it is silent as to U.S. Bank's status as holder.  In a similar case, *Deutsche Bank v. Brock*, 430 Md. 714, 63 A.3d 40 (2013), the borrower challenged the authority of various individuals and entities to lawfully foreclose on her residence.  Among her contentions was that the trust, to which her note had been assigned, had ceased to exist and, therefore, no longer owned the note.  She argued that, "regardless of which entity is the holder of the Note, only the owner may

---

[10]  In the Memorandum in Support of Motion to Dismiss, counsel for U.S. Bank and Wells Fargo confused his clients' respective roles, drew no distinction between the owner of the Note and its holder, and argued that Wells Fargo acquired Appellants' loan in 2012.  See, e.g., Appendix, pp. 85-90.  However, as the bankruptcy court correctly discerned, U.S. Bank was the holder, and Wells Fargo the servicer, at all times relevant to the Complaint.  Despite counsel's confusion, the bankruptcy court on the basis of sounder reasoning dismissed the Complaint under Rule 12(b)(6).

14

enforce the Note and bring an action to foreclose." *Id.* at 730, 49. The Court of Appeals found otherwise and explained:

> Brock contends that, regardless of which entity is the holder of the Note, only the owner may enforce the Note and bring an action to foreclose. The Commercial Law Article makes clear, however, the distinction between a holder and an owner. As the Comment to § 3–203 states, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." The holder of a note is "entitled to enforce the instrument even [if it is] not the owner of the instrument or is in wrongful possession of the instrument." *Id.* at § 3–301. *See also In re Veal,* 450 B.R. 897, 909 (9th Cir. BAP 2011) ("Article 3 does not necessarily equate the proper person to be paid with the person who owns the negotiable instrument."); *SMS Financial, LLC v. ABCO Homes, Inc.,* 167 F.3d 235, 238–39 (5th Cir.1999) (noting that a party's status as a holder and its attendant right to enforce an instrument is separate from the party's status as the owner of that instrument); *In re Walker,* 466 B.R. 271, 280 (Bankr.E.D.Pa.2012) ("[T]he borrower's obligation is to pay the person entitled to enforce the note (who need not be the 'owner' of the note)."); *In re Simmerman,* 463 B.R. 47, 60 (Bankr.S.D.Ohio 2011) (noting that "the holder of the note may differ from the owner of the note"). As the court noted in *In re Veal,* "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912. Here, Brock does not contend that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case.

*Deutsche Bank v. Brock,* 430 Md. at 730-731, 63 A.3d at 49-50. Comparing this result to that reached in *Anderson v. Burson,* 424 Md. 232, 35 A.3d 452 (2011), the Court of Appeals wrote:

> In stark contrast to *Anderson,* however, the present case involves a Note that contains all necessary indorsements. There is no gap in the indorsements purporting to transfer the Note and, indeed, Brock does not argue in this Court that the indorsements were insufficient to negotiate the Note to BAC [BAC Home Loans Servicing, LP, now known as Bank of America, N.A.]. BAC is in possession of the Note that is indorsed in blank. BAC is therefore the holder of the Note, and, as the holder, is a person or entity entitled to enforce it. *See* Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–301. Thus, whether the Trust is (or is not) the owner of the Note is irrelevant for present purposes.

15

> Brock maintains that the existence of the Trust is a material fact because the Deed of Appointment of the Substitute Trustees was executed by BAC as "attorney in fact" on behalf of the Trust. Brock argues that, if the Trust is nonexistent, the Deed of Appointment is ineffective, and the Substitute Trustees and BAC do not have authority to foreclose, because "BAC cannot act as agent for an entity which does not legally exist." As Petitioners note, however, whether BAC signed the Deed of Appointment on its own authority or as agent on behalf of the Trust "is a distinction without a difference." In either capacity, BAC has the authority to appoint the Substitute Trustees and is bound by the Deed of Appointment. Thus, even if there is a dispute of fact over the Trust's continued existence, it is not material to the outcome of this case.

*Deutsche Bank v. Brock*, 430 Md. at 732-733, 63 A.3d at 51. Accord *Jaimes v. JP Morgan Chase Bank, N.A.*, WL 677740 (N.D. Ill. 2013), not reported in F.Supp.2d.[11]

Here, also, there are no gaps in the indorsements and assignments purporting to transfer the Note from The Columbia Bank to U.S. Bank. Moreover, the Declaration of Substitution of Trustees attached to the Complaint as Exhibit 3 further establishes that U.S. Bank is the "present holder of the indebtedness." Appendix, 67-68. Clearly, the Complaint itself makes implausible Appellants' allegations that U.S. Bank is not entitled to enforce the Note. Even if the Trust were terminated in 2012, U.S. Bank is still the holder of the Note – a fact that is uncontested in the Complaint. As the holder, U.S. Bank, through Wells Fargo its servicer, had standing to initiate the foreclosure, object to Appellants' Chapter 13 plan, and file a proof of claim. There being no *plausible* claim of fraud, the bankruptcy court did not err in dismissing Count I. There being no *possible* claim of fraud, the bankruptcy court did not err in dismissing Count I with prejudice.

---

[11]    The *Jaimes* decision, which persuasively holds that the servicing rights on a borrower's loan do not end with the Trust's termination, is discussed at length in the Supplemental Memorandum in Support of Motion to Dismiss Filed by U.S. Bank and Wells Fargo. Appendix, pp. 185-187.

The remaining eight counts, as drafted, were all built upon Appellants' fraud allegations. Having found no fraud, the bankruptcy court correctly dismissed Counts II through IX, but then gave Appellants leave to refile them under an amended set of allegations. Order Dismissing Complaint, Appendix, pp. 285-287. The court even encouraged Appellants to file a new objection to Proof of Claim No. 4-2, as its original objection had been dismissed for insufficient service. Appendix, pp. 286, 312. The bankruptcy court initially gave Appellants two month, from March 4, 2014 to May 3, 2014, to "file either an objection to Claim No. 4-2 or an amended complaint or both, or the Complaint shall be dismissed with prejudice." Appendix, pp. 285-287. Then, in considering Appellants' Motion for Reconsideration, the bankruptcy court extended for another 2 ½ months - until July 23, 2014 - the time for Appellants to "file either an amended complaint or objection to claim, or both, or the Complaint shall be dismissed with prejudice." Appendix, pp. 297-298. Notwithstanding the court's generous leave, Appellants chose not to amend their Complaint or to file an objection to the Proof of Claim. They are now bound by the allegations of their initial Complaint that, for the reasons discussed above, fail to state a claim upon which relief can be granted. The bankruptcy court did not err in dismissing all nine counts of the Complaint.

II.    COUNT IV OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE THE PROOF OF CLAIM DID NOT INCLUDE AN ILLEGAL INSPECTION FEE.

In Count IV of the Complaint, Appellants contend that Wells Fargo's Proof of Claim contains inspection fees that are proscribed by §12-1027 of the Maryland Commercial Law Article. [Appendix, pp. 45-47]. Specifically, they refer to the Statement of Prepetition Fees, openly attached to the Proof of Claim, itemizing in detail every element

17

of Wells Fargo's claim.  Among these itemized fees, of which there are 21 categories, are

the following charges:

| | | |
|---|---|---|
| 9. | **Appraisal/broker's price opinion fees**<br>9/16/10: $50.00, 5/27/11: $90.00<br>11/29/11: $90.00, 6/13/12: $90.00 | $ 320.00 |
| 10. | **Property inspection fees** | $  0.00 |

Neither subtly nor with any factual predicate, Appellants re-label the

"Appraisal/broker's price opinion fees" as unlawful "Inspection Fees."  Complaint, ¶ 103

[Appendix, 46].  In a conclusory allegation, they argue that these Inspection Fees "were

not bona fide appraisals of the value of the Property, and were not needed to ascertain

completion of construction of a new home or repairs, alterations, or other work required by

Defendants.  Complaint, ¶ 104 [Appendix, p. 46].  This, however, is but an opinion without

any factual basis.

The Deed of Trust, to which the Complaint repeatedly refers, provides at paragraph

9 as follows:

> **Protection of Lender's Interest in the Property and Rights Under this
> Security Instrument.**  If (a) Borrower fails to perform the covenants and
> agreements contained in this Security Instrument, (b) there is a legal
> proceeding that might significantly affect Lender's interest in the Property
> and/or right under this Security Instrument (such as a proceeding in
> bankruptcy ...), or (c) Borrower has abandoned the Property, then Lender
> may do and pay for whatever is reasonable or appropriate to protect
> Lender's interest in the Property and rights under this Security Instrument,
> including protecting and/or assessing the value of the Property, ...
>
> Any amounts disbursed by Lender under this Section 9 shall become
> additional debt of Borrower secured by this Security Instrument. ...

A copy of the Deed of Trust, attached to the Motion to Dismiss as Exhibit C, is found in

the Appendix, pp. 108-126.

18

Thus, Appellants expressly agreed that, if they stopped paying their mortgage or went into bankruptcy, the holder of their Note would have the right to charge them for periodically assessing the value of the Property. There is no factual allegation in the Complaint that warrants the relabeling of this valuation an unlawful inspection fee, or that allows Count IV to stand.

On its face, Count IV fails to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007). There is nothing here but a legal conclusion, and not a single allegation upon which this conclusion is plausibly supported. *See also Faulkner Adver. Assocs., Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). The bankruptcy court did not err in dismissing Count IV for failing to state a claim upon which relief can be granted.

III.    COUNT V OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ITS TILA CLAIM WAS TIME-BARRED.

Count V of the Complaint fails to state a claim under TILA.[12] [Appendix, pp. 47-49]. Appellants contend that, when their Note and Deed of Trust were assigned to Wells Fargo in 2003, to First Union National Bank in 2005, and then to U.S. Bank in 2011, these transfers triggered the notice requirement of § 1641 (g):

> **Notice of new creditor. (1) In general**. In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including — (A) the identity, address, telephone number of the new creditor; (B) the date of transfer;

---

[12]    In paragraphs 110-119 of their Complaint, Appellants repeatedly refer to TILA as coming from Title 11 of the United States Code. TILA is part of Title 15, and the correct citations are 15 U.S.C. §§ 1639c(h) and 1641(g), not 11 U.S.C. §§ 1639c(h) and 1641(g).

19

(C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g).  Likewise, Appellants contend that they were entitled to certain policy disclosures required by § 1639c(h):

> **(h) Policy regarding acceptance of partial payment**
> In the case of any residential mortgage loan, a creditor shall disclose prior to settlement or, in the case of a person becoming a creditor with respect to an existing residential mortgage loan, at the time such person becomes a creditor –
>
> (1)  the creditor's policy regarding the acceptance of partial payments; and
>
> (2)  if partial payments are accepted, how such payments will be applied to such mortgage and if such payments will be placed in escrow.

15 U.S.C. §1639c(h).

However, TILA contains a one-year statute of limitations for alleged violations brought by private citizens.  See 15 U.S.C. § 1640(e) ("any action under this section may be brought … within one year from the date of the occurrence of the violation.").[13]  To the extent that any of the alleged assignments trigger the requirements in §§ 1639 or 1641, the very latest that Appellants' cause of action accrued was 30 days after July 20, 2011.  The instant Complaint was not filed until September 3, 2013, well past the statutory deadline for notices triggered by assignments in 2003, 2005, and 2011.  As such, the TILA claims under Count V were time-barred, and properly dismissed by the bankruptcy court.

---

[13]  The requirements of Section 1641 apply only to the transfer or assignment of the underlying debt obligation (i.e. the note), and not the assignment of only the security interest or "beneficial interest."  *See Terry v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1832376 (D. Md. April 30, 2013).

20

IV.   COUNT VI OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE ITS FDCPA CLAIMS WERE TIME-BARRED.

Under Count VI of the Complaint, Appellants contend that, by allegedly using false, deceptive, or misleading representation or means in the collection of a debt,   U.S. Bank and Wells Fargo violated the Fair Debt Collection Procedures Act ("FDCPA"). [Appendix, pp. 49-52].  This claim, however, is time-barred under the FDCPA's one-year statute of limitation.  A cause of action for a violation of the FDCPA must be brought within one year from the date the violation occurs:

> The statute of limitations for FDCPA claims is found in 15 U.S.C. § 1629K(d), which provides that '[a]n action to enforce any liability created by this title ]15 U.S.C.A. §§ et seq.] may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, **within one year from the date on which the violation occurs.** [emphasis added]."

*Lennon v. Penn Waste, Inc.,* 2009 WL 3255294 at *6 (M.D. Pa. June 29, 2009), report and recommendation adopted in part, rejected in part on other grounds, *Lennon v. Penn Waste, Inc.,* 2009 WF 3255238 (M.D. Pa. October 7, 2009).  *See also Khaliq v. Draper & Goldberg, P.L.L.C.,* 286 Fed.Appx. 72, 73 (4th Cir. 2008); *Glover v. Federal Deposit Insurance Corporation,* 698 F.3d 139, 145 (3rd Cir. 2012) [limitations began to run on date loan modification agreement was signed and representation about Plaintiff's debt became objectively false].

The latest allegation of misconduct under FDCPA occurred on February 21, 2012, when Wells Fargo allegedly made misrepresentations about Appellants' HAMP eligibility. Complaint, ¶ 131 [Appendix, p. 51].  Thus, their cause of action accrued on that date.   The Complaint, however, was not filed until September 3, 2013, more than a year *after* the last purported violation.  As such, Appellants' claims under FDCPA were time-barred, and

21

Count VI was properly dismissed for failing to state a claim upon which relief can be granted.

> V.    COUNT VIII OF THE COMPLAINT WAS PROPERLY DISMISSED BECAUSE THERE WERE NO ALLEGATIONS OF RELIANCE ON THE ALLEGED MISREPRESENTATIONS OF U.S. BANK AND WELLS FARGO.

Under Count VIII of the Complaint, Appellants contend that U.S. Bank and Wells Fargo violated the Maryland Consumer Protection Act ("MCPA") by "falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case." Complaint, ¶ 143 [Appendix, pp. 53-54]. The MCPA generally makes unlawful any false or misleading statements that have "the capacity, tendency or effect of deceiving or misleading consumers." MCPA, § 13-301(1). "[B]ecause the ... MCPA claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Allen v. CitiMortgage, Inc.,* 2011 WL 3425665 at *9 (D. Md., August 4, 2011). Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. . . . . Such allegations typically "include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.,* 197 F.Supp.2d 298, 313–14 (D. Md. 2000) (*quoting Windsor Assocs., Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D. Md. 1983)). Specific such as these are missing from this Complaint.

Moreover, as the court wrote in *Shahed Farasat v. Wells Fargo Bank, N.A.,* 913 F.Supp.2d 197 (D.Md 2012):

> To bring an action under the MCPA, Farasat must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury." *Stewart v. Bierman,* 859 F. Supp. 2d 754, 768

(D. Md. 2012) (citing *Lloyd v. Gen Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)).

There is absolutely no reliance alleged in the instant Complaint. Appellants did not, in any way, change their conduct as a consequence of anything U.S. Bank or Wells Fargo filed or represented in the foreclosure case. They continued to reside in the Property; they paid nothing on their loan; they suffered no detriment whatsoever.

Appellants now contend that, "in justifiable reliance on the concealment," they filed for bankruptcy relief on November 15, 2012. Appellees' Amended Brief, p. 11. But, this is not the kind of reliance contemplated by the Court in *Farasat*. Appellants sought bankruptcy protection because their Property was in foreclosure, not because of any misrepresentation by either U.S. Bank or Wells Fargo. Without a credible allegation of reliance, the Complaint failed to state a claim under the MCPA, and Count VIII was properly dismissed by the bankruptcy court.

VI.    THE BANKRUPTCY COURT DID NOT ERR IN DENYING APPELLANTS' MOTION FOR RECONSIDERATION.

The bankruptcy court correctly found that the Complaint failed to state claims upon which relief can be granted. Instead of availing themselves of several opportunities to amend their claims, Appellants filed two Motions to Reconsider pursuant to Federal Rule of Civil Procedure 59(e). [Appendix, pp. 238-284, 294-296]. On July 21, 2014, the bankruptcy court entered its Order Denying Plaintiffs' Motions to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit. [Appendix, pp. 297-298].

The bankruptcy court's denial of a Rule 59(e) motion is reviewed by the district court for abuse of discretion. *Pacific Insurance Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir.1998). There are three circumstances in which the district court can

23

grant a Rule 59(e) motion: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Id., at 403.* Appellants' motions do not point to newly discovered evidence or an intervening change in law that would justify altering or amending the judgment. The bankruptcy court's decision was legally correct and did not work a manifest injustice. "[M]ere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir.1993); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir. 2002).

The bankruptcy court did not abuse its discretion in denying Appellants' Motions for Reconsideration. Accordingly, the Court should affirm the Order Denying Plaintiffs' Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit.

### Conclusion

For the reasons set forth above, the Complaint fails to state any claims upon which relief can be granted. Appellants provide no basis whatsoever for their claims that U.S. Bank, through its servicer Wells Fargo (a) was not the holder of the Note as alleged Counts I and II; (b) has filed a defective proof of claim as alleged in Count III; (c) has falsely stated that Appellants are liable for $740,334.24 as alleged in Count VI; (d) has sought to collect from Appellants amounts it knows are not lawfully due as alleged in Count VII; or (e) has falsely or wrongly asserted ownership of the Note as alleged in Count VIII. U.S. Bank, as holder, clearly had standing to file its proof of claim and, notwithstanding subsequent assignment Carrington and Christiana Trust, to defend Appellants' objection thereto. Counts V and VI are barred by limitations, and Count VIII is fatally flawed because it fails to allege reliance. There are no factual allegations of unlawful fees being

24

charge under Count IV, and nowhere is fraud pleaded with particularity. The bankruptcy court did not err in dismissing the Complaint, and its decision should now be affirmed.


s/ Douglas B. Riley
Douglas B. Riley, 01220
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
Phone: (443) 901-2369,
Email: dbriley@tph-law.com

*Attorneys for Appellees, Wells Fargo Bank, N.A. and U.S. Bank, National Association*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 13th day of October 2014, copies of the foregoing Brief of Appellees were served electronically through the Court's CM/ECF transmission facilities, as authorized by Local Rule 102(c), on each party registered as a CM/ECF participant who has consented to electronically service and, if not a party registered as a CM/ECF participant, then mailed, first-class mail, postage prepaid, fully addressed as follows:

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876
Email: www.haegerlaw.com

*Attorney for Appellants,*
*Jeffrey V. Howes and Tonya H. Howes*

Michael T. Cantrell, Esquire
Kyle J. Moulding, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Email: bankruptcymd@mwc-law.com

*Attorney for Appellees, Carrington Mortgage Services, LLC*
*and Wilmington Savings Fund Society, FSB*

Ellen W. Cosby, Esquire
300 E. Joppa Road, Suite 409
Towson, Maryland 21286

*Chapter 13 Trustee*


s/ Douglas B. Riley
Douglas B. Riley

26

ADD. 95

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

Appeal No. 1:14-cv-02814-ELH

Bankruptcy Case No. 12-30614-RAG

Adversary Proceeding No. 13-00510-RAG

JEFFREY V. HOWES, et al.,
Appellants

v.

CARRINGTON MORTGAGE SERVICES, LLC, et al.,

Appellees

Appeal from the United States Bankruptcy Court for the District of Maryland
(The Honorable Robert A. Gordon, Bankruptcy Judge)

## BREIF OF APPELLEES, CARRINGTON MORTGAGE SERVICES, LLC AND CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2013-2

Kyle J. Moulding, 30148
Michael T. Cantrell, 08793
312 Marshall Ave, Suite 800
Laurel, MD 20707
Tel: 301-490-3361, Fax 301-490-1568
Email: bankruptcymd@mwc-law.com

Attorneys for Carrington Mortgage Services, LLC, Selene Finance, LP and Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2

October 16, 2014

1

TABLE OF CONTENTS

Statement of Facts...................................................................... 4

The Standard of Review.................................................................6

The Counts in which Appellees are not included................................8

Argument.....................................................................................9

    I.     The Bankruptcy court did not err in dismissing Count 2 as a proper chain
          of title was provided to Appellants.......................................9

    II.    Count IV of the Complaint was properly dismissed because the Proof of
          Claim did not include any property inspection fees..................12

    III.   Count VI of the Complaint was properly dismissed because WSFS Bank is
          not a debt collected as defined by the FDCPA.......................12

    IV.   Count VII of the Complaint was properly dismissed because there were no
          factual allegations alleged for how WSFS Bank violated
          the MCDCA..................................................................13

Conclusion.........................................................................13

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 476-77
(6th Cir. 1996)... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...3

*In re DOW CORNING CORP.,*255 B.R. 445,2000 U.S. Dist. LEXIS 16385,2000 WL 33321424(
E.D. Mich.2000)... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).................................................4

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1960, 550 U.S. 544 (2007)............... 4, 9

*Mylan Labs., Inc. v. Matkari*, 7F.3d 726, 730 (4th Cir. 1993)...........................4

*Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).......................................5

*Revene v. Charles County Commissioners*, 882 F.2d 870 (4th Cir. 1989)...............5

*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003)..........5

*Bender v. Suburban Hosp. Inc.* 159 F.3d 186, 191 (4th Cir. 1998)......................5

*Secretary of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700,
(4th Cir. 2007)...................................................................5

*Wyeth v. Lupin Ltd.*, 505 F.Supp.2d 303 (D.Md. 2007)...................................5

*Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748 (D.Md. 1997).......................5

*Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2011)..................................11

*Perry v. Stewart Title Co.*, 765 F.2d 1197, 1208 (1985)..............................12, 13

**Statutes**

28 U.S.C. § 157(b)(1) ...............................................................6
28 U.S.C. §158(a)(1).................................................................6
Md. Code Ann., Real Prop. Article § 7-105.1(f)......................................11
15 U.S.C. § 1692a(6)................................................................12

**Rules**

Fed. R. Civ. P. 52 (F.R.B.P. 8013)..................................................6
F.R.B.P. 7008.......................................................................7
F.R.B.P. 7012.......................................................................7

3

## BRIEF OF APPELLEES

**COMES NOW** The Appellee(s) Carrington Mortgage Services, LLC ("CMS") and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("WSFS Bank"), by and through its attorneys Michael T. Cantrell, Esq. and Kyle J. Moulding, Esq., and respond to the Brief filed by Appellants, Jeffrey V Howes and Tonya H Howes ("Appellants"). Note that, Selene Finance, LP ("Selene") has taken over the servicing of this loan for CMS on behalf of WSFS Bank. Selene is also represented by Michael Cantrell, Esq. and Kyle J. Moulding, Esq. Appellee(s) respectfully represent to the Court as follows:

### I. Statement of Facts

1.      On November 30, 2001 the appellants executed a Construction Note ("Note") payable to the order of The Columbia Bank.

2.      On November 30, 2001, the appellants also executed a Deed of Trust ("Deed of Trust") in favor of The Columbia Bank, in the amount of $696,130.00 thereby securing the loan against the real property known as 7000 Meandering Stream Way, Fulton, Maryland 20759 ("Property").   The Deed of Trust is recorded among the land records of Howard County, Maryland at Liber 5939 Folio 0610. Thereafter, the Deed of Trust was transferred via an assignment to Wells Fargo Home Mortgage Inc. and recorded among the land records of Howard County at Liber 07153 Folio 099. The Deed of Trust was then transferred via an assignment of Deed of Trust to First Union Nation Bank, As Trustee and recorded among the land records of Howard County at Liber 9083 Folio 417. The Deed of Trust was then assigned by Wells Fargo Bank, N.A. s/b/m Wachovia Bank, N.A., f/k/a First Untion National Bank, As Trustee over to assignee, US Bank National Association, as Trustee, successor in interest to Wachovia Bank,

4

National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 and recorded among the land records of Howard County at Liber 13351 Folio 169.

3.      On November 15, 2012, the Appellants filed a petition for bankruptcy under chapter 13 of the bankruptcy code.

4.      On March 8, 2013, Wells Fargo Home Mortgage, servicing for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, filed claim number 4-1 in the amount of $740,334.24 with arrears in the amount of $200,196.79.

5.      On March 15, 2013, Wells Fargo Home Mortgage amended the claim to identify Wells Fargo Bank N.A. as the entity to which the debtor owes money.

6.      On May 29, 2013, a Transfer of Claim was filed that incorrectly identified CMS as the Transferee.

7.      On June 11, 2013, the Transfer of Claim was corrected to indicate that the Transferee is WSFS Bank with CMS identified as the servicer of the loan.

8.      On September 9, 2013 Appellants filed an adversary proceeding asserting claims of fraud and stating that Appellees could not proceed with a valid foreclosure claim based on an improper chain of title.

9.      On October 9, 2013, Appellees filed their Motion to Dismiss Counts One, Three, Four, Five, Six, Seven and Eight. The Motion to Dismiss was later amended on December 18, 2013.

5

10.     On March 4, 2014 a hearing was held on the Motion to Dismiss and the Court granted the Motion to Dismiss as to all counts and requested that Appellees file an Affidavit with the court under penalty of perjury providing a complete chain of title to Appellants.

11.     On April 3, 2014 the Affidavit was provided to the Court and copies of all documents showing the chain of title were sent to Appellants.

12.     On May 5, 2014 the Appellants filed a Motion to Reconsider the Order Granting the Motion to Dismiss claiming that the Ownership Affidavit was insufficient.

13.     On July 14, 2014, a Transfer of Claim was filed for the new servicer, Selene who is now servicing the loan on behalf of WSFS Bank and has replaced CMS as servicer of the loan. The secured creditor remains WSFS Bank.

14.     On July 16, 2014 a hearing was held on the Motion to Reconsider at which time the Court denied the Motion to Reconsider.

15.     On August 6, 2014 Appellants filed their Notice of Appeal to the United States District Court.

## The Standard of Review

16.     Appellants argue that the standard of review is set forth in Bankruptcy Rule 8013 that conclusions of law may be reviewed *de novo*. Appellants are correct to acknowledge that findings of fact may not be set aside unless clearly erroneous. "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous." *FRCP 52*. The district court has jurisdiction over appeals from final orders of the bankruptcy court in core proceedings. 28 U.S.C. §§ 157(b)(1) and 158(a)(1)....A bankruptcy court's findings of fact are reviewed under [464] a clearly erroneous standard, while its conclusions of law are reviewed de novo. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 476-77 (6th Cir. 1996);* Bankr. R.

6

8013. Where a bankruptcy court's determination involves a mixed question of fact and law, the district court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 106 F.3d 1255, 1259 (6th Cir. 1997)(quoting Investors Credit Corp. v. Batie (In re Batie), 995 F.2d 85, 88 (6th Cir. 1993)).  In re DOW CORNING CORP.,255 B.R. 445,2000 U.S. Dist. LEXIS 16385,2000 WL 33321424( E.D. Mich.2000).*

17.    Since the Appellants have asked this court to review the conclusions of law do novo, the standards for a motion to dismiss should be applied to the Amended Complaint as filed by the debtor just as the Bankruptcy Court concluded. Therefore, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure ("FRBP"), the assertions set forth in a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If the pleader fails to do so, then a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FRBP Rule 7012.  The legal standard to be applied when evaluating a motion to dismiss is one of plausibility – "a complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim. *Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1960, 550 U.S. 544 (2007).*  If the pleader is unable to meet this plausibility standard, then the complaint must be dismissed.

18.    While the Court "should view the complaint in a light most favorable to the Appellant," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari, 7F.3d 726, 730 (4th Cir. 1993)*, the complaint must assert "factual allegations…that raise a right to relief above the speculative level." *Bell Atlantic*, at 1965.  In order to defeat a motion to dismiss, apellants cannot rely upon "allegations that are merely conclusory, unwarranted deductions of

7

fact ... unreasonable references" or factual allegations completely without basis to actual events. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); See, *Revene v. Charles County Commissioners*, 882 F.2d 870 (4th Cir. 1989). And, the complaint must allege facts the support each element of the claim being asserted. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). The allegations in a complaint must give rise to entitlement to relief and while a court may be generous in its review of a complaint, such generosity does not require a court to entertain apellants' belief that they can proceed to prosecute a claim when there are no facts upon which to support it. *Bender v. Suburban Hosp. Inc.* 159 F.3d 186, 191 (4th Cir. 1998).

19.    The Court is not limited to the allegations contained in the complaint; it may also consider documents incorporated or referenced in the complaint, including matters of public record, i.e. land records. *Secretary of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700, (4th Cir. 2007); *Wyeth v. Lupin Ltd.*, 505 F.Supp.2d 303 (D.Md. 2007); *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748 (D.Md. 1997).

## The Counts of the Complaint in which Appellees are not included

A)    **Inapplicability of Counts One, Three, Four, Five, Six, Seven, and Eight to CMS.**

20.    In Counts One, Three, Four, Five, Six, Seven, and Eight of the Complaint, the Appellants did not specifically ask for relief as to CMS. Since these Counts did not specifically pray for relief, Counts One, Three, Four, Five, Six, Seven and Eight were correctly dismissed by the Bankruptcy Court for failure to state a claim as to CMS.

21.    Furthermore, Counts One, Three, Four, Five, Six, and Eight of the Complaint were correctly dismissed as to CMS since they did not allege any facts upon which entitlement to relief may be granted as to CMS.

8

**B)** **Inapplicability of Counts One, Three, and Eight as to WSFS Bank.**

22.     In Counts One, Three, and Eight of the Complaint, the Appellants did not specifically request relief as to WSFS Bank. Since those Counts do not specifically pray for relief or allege any facts upon which entitlement to relief may be granted, Counts One, Three, and Eight were properly dismissed by the Bankruptcy Court.

23.     Furthermore, One, Three, and Eight of the Complaint were correctly dismissed as to WSFS Bank since they did not allege any facts upon which entitlement to relief may be granted as to WSFS Bank.

## ARGUMENT

**C) Count 2 was properly dismissed by the Bankruptcy Court as Appellees provided a proper chain of title evidencing the current note holder's right to collect on the debt.**

24.     As part of the Order Granting the Motion to Dismiss the Complaint in the Bankruptcy Adversary proceeding, the Honorable Judge Gordon ordered that CMS provide to counsel for the Appellants a complete chain of title providing counsel with all of the documents that evidence the entity that currently has right to collect on the debt. As such, Appellees and undersigned counsel provided an affidavit signed under penalty of perjury showing a complete chain of assignments and an executed Lost Note Affidavit ("LNA"). As the Appellants admitted at the hearing on July 16, 2014, no one else is attempting to collect this debt. Appellees, Wells Fargo and U.S. Bank have not disputed that WSFS Bank is now the secured creditor. Wells Fargo and U.S. Bank are also no longer attempting to collect the debt.

25.     As the Bankruptcy Court noted "the Debtor probably does have a right to at least know with certainty the basis for the present noteholder's claim to ownership of the note, because of the sloppiness that has gone on historically in this case. And that sloppiness doesn't

9

add up to a cause of action for fraud." *Tr. 3/14/14, 20 at 12-25, 21 at 12-14.* Furthermore, the Bankruptcy Court stated that the Appellant's allegations that the trust terminated because the loan was paid off was not an argument that was "plausible on its face." *Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965, 550 U.S. 544, 555, (2007).* The Bankruptcy Court found that, "[Appellants] failed to state, and could not assert, a legitimate claim for fraud…" *Order Dismissing Complaint, Appendix, p. 286.* Since it is not plausible that someone else paid the $740,334.24 that Appellants owed on the loan as of the Bankruptcy filing, the Court properly dismissed the argument that the termination of the trust that formerly owned the note makes any difference as to the current standing of Appellees to file a Proof of Claim. Clearly, the Appellants owe someone the money as they have never argued that they did not sign the Note or that they paid the entirety of the debt on their own accord. The Appellants have provided no facts or support to show that anyone other than the Appellees has attempted to collect this debt from them through the filing of another Proof of Claim or the commencement of a foreclosure action.

26.    While Appellants have made no argument that they paid off the loan themselves, they continue to state that because the original Note was lost they have somehow pled facts in the Complaint sufficient to void their entire obligation on the debt. Appellants ignore the chain of assignments provided and recorded among the land records in making this assertion. They are further ignoring the Proof of Claim, Amended Proof of Claim and subsequent Transfer of Claims filed in the Bankruptcy Case at Claim number 4. *Appendix pg 370.* In reality, the entirety of the Complaint relies on the false conclusion of law that since the original Note was lost, that no party has the ability nor should be granted the opportunity to show that they are entitled to be repaid for the money borrowed. To the contrary, Maryland Law specifically provides for how the creditor is able to foreclose on a property where the creditor has lost the original note. See *Md.*

10

*Code Ann., Real Prop. Article § 7-105.1(f).* The LNA as currently provided may or may not comply with the Real Property Code as Appellants suggest, but this statutory provision simply provides a mechanism to allow the foreclosure process to move forward and has no effect on standing to file a Proof of Claim in a Bankruptcy case. The Maryland Court of Appeals has also ruled that in the context of the foreclosure case the current holder or nonholder with the right to enforce the Note and Deed of Trust is allowed to present testimony and evidence in support of its right to enforce the instruments should there be any challenge presented. *Anderson v. Burson, 424 Md. 232, 35 A.3d 452 (2011).* Furthermore, should a Maryland Circuit Court rule that the LNA is not sufficient to proceed with the Foreclosure case, the current creditor could then follow the chain of assignments back to the entity that lost the note and have them execute a new LNA.

27. Additionally, while the Complaint alleges erroneous representations of holder status they are not well pled allegations. Instead, the Complaint confusingly concludes that since Appellants have alleged that they do not know who holds the Note because of the Trust termination, they should no longer have to make payments. The Appellants have audaciously asked the Bankruptcy Court to eliminate a pre-petition obligation of more than $200,000.00. *Appendix pg. 380.*

28.    The Bankruptcy Court properly ruled that the Appellants are entitled to know who their creditor is and where to send their mortgage payments. The transfer of claim filed on behalf of Selene on July 14, 2014 provides that information to the borrower.

29.    For all of the aforementioned reasons, this court should deny the Appellants' requests and affirm the Bankruptcy Court's dismissal as to CMS and WSFS.

11

**D)** **Count Four of the Complaint was properly dismissed as to WSFS Bank because the Proof of Claim does not include any property inspection fees.**

30.     The Proof of Claim originally filed by Wells Fargo did not contain any property inspection fees. In fact, the Proof of Claim explicitly labels the fees that the Appellants contend are "property inspection fees" as "Appraisal/broker's price opinion fees." The Appellants provided no evidence at all that the fees were "property inspection fees" or anything other than "Appraisal/broker's price opinion" fees except that one of the fees is in a different amount. Since Appellants provided no factual support for the conclusory allegation that the fees were anything other than "Appraisal/broker's price opinion fees," Count four failed to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007).* Therefore, Count Four was properly dismissed as to WSFS Bank by the Bankruptcy Court.

**E)** **Count Six was properly dismissed because WSFS Bank is not a debt collector as defined by the Fair Debt Collection Practices Act ("FDCPA").**

31.     The Complaint alleges that WSFS Bank is a debt collector as defined by 15 U.S.C. § 1692a(6) which reads: "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." However, the statute continues to define the term debt collector by clarifying that, "The term does not include— (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* As such, mortgage lenders and servicers have been expressly excluded from FDCPA claims. *See Perry v. Stewart Title Co.*, 765 F.2d 1197, 1208 (1985) ("[t]he legislative history of [FDCPA] indicates

12

conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."). Because WSFS Bank is the creditor in the present case, it is exempt from the FDCPA challenge. Count Six was properly dismissed for failure to state a claim upon which relief could be granted by the Bankruptcy Court.

**F)    Count Seven was properly dismissed because there are no specific factual allegations as to WSFS Bank giving rise to a violation of the Maryland Consumer Debt Collection Act ("MCDCA").**

32.    The Complaint provides that the Appellees attempted to "collect amounts that they knew they are not lawfully entitled to collect." The Complaint left WSFS Bank  and the Bankruptcy Court guessing as to why WSFS Bank was included in the count. There are no specific amounts, acts or any other allegations that would lead WSFS Bank to understand how it violated the MCDCA. As a result, Count Seven was properly dismissed for failure to state a claim upon which relief could be granted.

## IV. CONCLUSION

The Appellants failed to state claims upon which relief could be granted as to Appellees CMS, Selene and WSFS Bank Counts, One, Two, Three, Four, Five, Six, Seven and Eight and therefore the Bankruptcy Court correctly dismissed those Counts as to Appellees.

Respectfully Submitted,

/s/ Michael T. Cantrell
Michael T. Cantrell, Esq (08793)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
301-490-3361
Email: bankruptcymd@mwc-law.com

/s/ Kyle J. Moulding
Kyle J. Moulding, Esq (30148)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
301-490-3361
Email: bankruptcymd@mwc-law.com

13

## CERTIFICATE OF SERVICE

I hereby certify and affirm under the penalties of perjury that I served a copy of

the aforementioned pleading to the following by first class mail, postage prepaid, or ECF means

on this 16th day of October 2014:


Robert Haeger
Haeger Law
11403 Seneca Forest Circle
Germantown, MD 20876

Ellen W. Cosby
300 E. Joppa Road, Suite 409
Towson, MD 21286

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

/s/ Kyle J. Moulding, Esq.
Kyle J. Moulding, Esq.

14

APPEAL NO. 1:14-cv-02814-ELH
(BANKRUPTCY CASE NO. 12-30614-RAG
& ADV. PROC. 13-00510-RAG)

IN THE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

IN THE MATTER OF JEFFREY V. HOWES,

*Debtor*

JEFFREY V. HOWES, ET AL.

*Plaintiff-Appellants*

Wells Fargo Bank N.A., et al.

*Defendant-Appellees*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

APPELLANTS' REPLY BRIEF

ROBERT J. HAEGER, BAR NO. 25434
ATTORNEY FOR APPELLANTS  JEFFREY V. HOWES AND TONYA H. HOWES
11403 SENECA FOREST CIRCLE
GERMANTOWN, MD 20876
(888) 463-3520; www.haegerlaw.com
BOARD CERTIFIED – CONSUMER BANKRUPTCY LAW
– AMERICAN BOARD OF CERTIFICATION

## TABLE OF CONTENTS

I.    THE BANKS' BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    US Bank Cannot Be Holder of Howes Note
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            1.    Abandoned Theories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            2.    New Theory Equally Defective. . . . . . . . . . . . . . . . . . . . . . 3
                  a.    Brock Case Not On Point. . . . . . . . . . . . . . . . . . . . 4
                  b.    Deed of Trust Follows the Note. . . . . . . . . . . . . . . 5
            3.    Essential To Establish Right to Enforce. . . . . . . . . . . . . . . 6
      B.    Counts 3-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   THE CARRINGTON BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.    Inapplicability of Counts One, Three, Four, Five, Six, Seven and Eight **to CMS**
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      B.    Inapplicability of Counts One, Three, and Eight **to CT**
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.    Misstatement of Appellants' Positions. . . . . . . . . . . . . . . . . . . . 8
      D.    Invalid Lost Note Affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.    Count Six - CT is a debt collector under the FDCPA
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      F.    Count Seven - Maryland Consumer Debt Collection Act (MCDCA)
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Jaimes v. JPMorgan Chase Bank, N.A.,* WL 677740 (N.D .Ill. February 25, 2013). . . . . . . . . . . 2

*Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . 10

*Zervos v. Ocwen Loan Servicing, L.L.C.,* 2012 WL 1107689 (D. Md. Mar. 29, 2012). . . . . . . 10

*In re Patterson,* Case No. 12-50201 (Bankr. W.D.N.C., 2012) (Apx. 282). . . . . . . . . . . . . . . . 9

*Jaimes v. JPMorgan Chase Bank, N.A.,* WL 677740 (N.D .Ill. February 25, 2013). . . . . . . . . . . 2

*Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . 10

*Zervos v. Ocwen Loan Servicing, L.L.C.,* 2012 WL 1107689 (D. Md. Mar. 29, 2012). . . . . . . 10

**FEDERAL STATUTES**

15 U.S.C. § 1692a(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL RULES**

Bankruptcy Rule 3001(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE CASES**

*Anderson v. Burson,* 424 Md. 232, 35 A.3d 452, 2011 Md. LEXIS 777 (Md. 2011)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-6, 9

*Deutsche Bank v. Brock,* 430 Md. 714, 63 A.3d 40 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-7

**STATE STATUTES**

Md. Code Ann., Commercial Law Article, § 14-202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Md. Code Ann., Commercial Law Article, § 1–201(b)(21)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ii

Md. Code Ann., Commercial Law Article, § 3-301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Md. Code Ann., Commercial Law Article, § 3-602(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Md. Code Ann., *Real Prop.* § 7-105.1(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iii

**APPELLANTS' REPLY BRIEF**

Appellants Jeffrey V. Howes and Tonya H. Howes, by their attorney, Robert J. Haeger, hereby reply to the briefs filed by U.S. Bank, National Association ("US Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Banks") (ECF 11, hereinafter "Banks' Brief"), and Appellees Carrington Mortgage Services, LLC ("CMS") and Christiana Trust ("CT") (collectively, "Carrington"), a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (ECF 15, hereinafter "Carrington Brief").

## I.    THE BANKS' BRIEF

### A.    US Bank Cannot Be Holder of Howes Note

The Banks argue in their Brief, for the first time, that US Bank was the holder of Appellants' Note at all times relevant to the Complaint, and Wells Fargo was the servicer (Banks' Brief 11). This new position directly contradicts their previous position, that Wells Fargo was the Note Holder, that they advanced throughout the adversary proceeding below (*see, e.g.,* Appendix ("Apx."), pp. 85-90), and should lay to rest any pretense that "holder" status has been established in this case.

This is the third theory Appellees have relied upon in their effort to demonstrate the right to enforce Appellants' Note and the requisite standing to foreclose. They raise it for the first time in their Brief before this Court, and it is just as flawed as their previous attempts to demonstrate standing. Before addressing their latest theory, Appellants will briefly reprise Appellees' now abandoned reversion and "two masters" arguments.

### 1.    Abandoned Theories

The two theories Appellees previously relied upon were that the Note automatically

reverted to Wells Fargo[1] upon trust termination (Apx. 88), and, second, that trust termination is irrelevant since no one else sought to enforce the Note (relying on the *Jaimes*[2] case (the so called "two masters" rule) (Apx. 185)). In connection with both prior theories, US Bank and Wells Fargo insisted throughout the adversary proceeding below that Wells Fargo was the Note holder at all times relevant to the Complaint.

Appellees' abandoned their reversion argument after the bankruptcy court asked them to explain what happens upon trust termination in a supplemental memorandum to their motion to dismiss, and they made the "two masters" argument from the *Jaimes* case instead. *See* Wells Fargo & US Bank's Supp. Memo (Apx. 185). The problem with Appellees' "two masters" theory, that trust termination does not matter when no other claimant has appeared to collect on the Note, is that it fails to adhere to Maryland law as set out in *Anderson*,[3] improperly puts the burden on the borrowers, and would no doubt lead to a great deal of mischief. *See* Appellants' Am. Brief 14-22 (ECF 8).

Finally, neither abandoned theory could have established Wells Fargo's "holder" status. In *Anderson*, the Maryland Court of Appeals puts the burden to prove the right to enforce the Note on the party seeking to enforce it, and details what proof is required:

> [A] reputed transferee in possession of an unindorsed mortgage note has the **burden** to establish its rights under that note. [T]he Maryland Commercial Law Article *** requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to

---

[1] As successor to Wells Fargo Home Mortgage, Inc., the loan servicer.

[2] *Jaimes v. JPMorgan Chase Bank, N.A.,* WL 677740 (N.D .Ill. February 25, 2013).

[3] *Anderson v. Burson*, 424 Md. 232, at 245-246, 35 A.3d 452, 2011 Md. LEXIS 777 (Md. 2011).

2

payment under *§ 3-308(a)*). Additionally, given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

*Anderson v. Burson*, 424 Md. at 245-246 (footnote omitted; emphasis added). Under section 1–201(b)(21)(i) of Maryland's Commercial Law Article, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Wells Fargo cannot be the holder since the Note is order paper and it is not made payable to Wells Fargo. *See* Appellants' Am. Brief 22; Compl. ¶ 77 (Apx. 41). Instead, the Note is made payable to the order of the terminated trust. Compl. ¶¶ 43-45, 54, 75 (Apx. 33-34, 36, 41). In addition, the Note is lost; therefore, it appears that Wells Fargo also lacked possession, another requirement for holder status. Compl. ¶ 63 (Apx. 38); Lost Note Affidavit (Apx. 272). US Bank and Wells Fargo now acknowledge their error and have abandoned their position that Wells Fargo was the Note holder:

> In the Memorandum in Support of Motion to Dismiss, counsel for U.S. Bank and Wells Fargo confused his clients' respective roles, drew no distinction between the owner of the Note and its holder, and argued that Wells Fargo acquired Appellants' loan in 2012. See, e.g., Appendix, pp. 85-90. However, as the bankruptcy court correctly discerned,[4] U.S. Bank was the holder, and Wells Fargo the servicer, at all times relevant to the Complaint.

Brief 14 at fn. 10 (footnote added).

## 2.    New Theory Equally Defective

The Appellees now insist that US Bank is the Note holder, not Wells Fargo, and cite the *Brock*[5] opinion to support their changed position. The problem with this latest theory is that, as

---

[4] The bankruptcy court never stated US Bank was the holder and, for the reasons stated *nfra*, it would been error had it done so.

[5] *Deutsche Bank v. Brock,* 430 Md. 714, 63 A.3d 40 (2013).

3

was the case with Wells Fargo's alleged holder status, it is impossible for US Bank to be the

holder of Appellants' Note, since it is made payable to US Bank *as trustee* for the Trust. Compl.

¶¶ 43-45, 54, 75 (Apx. 33-34, 36, 41). The required endorsement from the Trust to US Bank is

absent. In addition, since the trust terminated, it is axiomatic that any role US Bank played as

trustee for the Trust also terminated, since an agent cannot continue to act for a principal that

ceased to exist.

    **a.**    **Brock Case Not On Point**

    Appellees' reliance on the *Brock* case, moreover, is misplaced. The key distinguishing

facts in *Brock*, and the reason the court reached the result it did, are that the Brock note was

bearer paper,[6] and the party seeking to enforce it had possession. The *Brock* court therefore held

that the entity seeking to enforce the Brock's note, BAC Home Loans Servicing, LP ("BAC"),

was the "holder" with the right to enforce it, and the trust owner's status was irrelevant under

*Anderson*.

> BAC is in possession of the Note that is indorsed in blank. BAC is therefore the holder of
> the Note, and, as the holder, is a person or entity entitled to enforce it. *See* Md. Code
> (1975, 2002 Repl. Vol.), Com. Law Art., § 3–301. Thus, whether the Trust is (or is not)
> the owner of the Note is irrelevant for present purposes.

*Brock, supra*, 430 Md. at 732-33.

    Here, in stark contrast to *Brock*, neither fact is present: the Howes Note is order, not

bearer paper, and no Appellee has possession of it, two sufficient and independent reasons under

---

    [6] Of course, as bearer paper the Brock note was not made payable to a terminated trust, as
is the case here.

section 3-301[7] that US Bank is not entitled to enforce the Howes' Note. Had there been a missing

endorsement in *Brock*, as is the case here, BAC would have had to meet its burden under

*Anderson* and prove a valid chain of title to the note to establish its standing to foreclose.

> In stark contrast to *Anderson,* however, the present case involves a Note that contains all
> necessary indorsements. There is no gap in the indorsements purporting to transfer the
> Note and, indeed, Brock does not argue in this Court that the indorsements were
> insufficient to negotiate the Note to BAC.

*Brock, supra,* 430 Md. at 732. BAC also would have had to prove its chain of title had it lacked

possession. *Id*. One has to wonder why Appellees have not proven their chain of title despite the

glaring defects in their "holder" arguments, given the ample opportunity the bankruptcy court

provided to them. *See* Appellants' Am. Brief 29-33. Appellee's reliance on Brock is really just a

red herring, since the issue of trust termination is irrelevant to the analysis of "holder" status,

except that an entity that has ceased to exist cannot be the holder.

**b.     Deed of Trust Follows the Note**

The Banks also argue that the bankruptcy court could have taken judicial notice of the

deed of trust assignments recorded in the Land Records of Howard County in support of its

decision dismissing the Complaint. Banks' Brief 12-14. There are at least two problems with this

argument. First, it improperly resolves factual disputes at the motion to dismiss stage, and rejects

well pled allegations of trust termination. Second, the assignments do not purport to transfer the

---

[7] "§ 3-301. Person entitled to enforce instrument. 'Person entitled to enforce' an
instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument
who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled
to enforce the instrument pursuant to § 3-309 or § 3-418 (d). A person may be a person entitled
to enforce the instrument even though the person is not the owner of the instrument or is in
wrongful possession of the instrument." Md. COMMERCIAL LAW Code Ann. § 3-301 (2011).

5

Note, they produce the same result as an examination of the Note in any event, i.e., the deed of trust is assigned to a terminated trust, and it is the Note that matters when determining the person entitled to foreclose.

> The deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust. *Le Brun*, 197 Md. at 474, 79 A.2d at 548.

*Anderson, supra*, 424 Md. at 246. In view of the Banks' false representations of holder status,[8] the substantial documentary support for Appellants' allegations of trust termination,[9] and the fact that the Banks do not argue that the trust continues to exist, it would be clear error to reject Appellants' trust termination allegations as speculative.

### 3.    Essential To Establish Right to Enforce

It is essential that the Howes determine that the party seeking payment on their Note has the right to enforce it, or their payments will be for naught. Section 3-602(a) of Maryland's Commercial Law Article provides:

> Subject to subsection (b), an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under § 3-306 by another person.

Md. Code Ann., Commercial Law Article, § 3-602(a). Therefore, any payment the Howes make on their Note to a person other than one entitled to enforce it will not protect them. The *Brock* court explained the rule:

> The Commercial Law Article provides that the person or entity obligated on a promissory

---

[8] *See* Appellants Am. Brief 27.

[9] Complaint, Exhibits 2A, 2B, and 2C (Apx. 62-65).

6

note must pay the obligation to, in relevant part, —a person entitled to enforce the instrument.. Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–412; *see also In re Veal,* 450 B.R. at 910 (noting that —the person obligated on the note ... must pay the obligation represented by the note to the 'person entitled to enforce' it."). If the maker of a note—in this case, Brock—pays a person entitled to enforce that promissory note, the maker's obligations under the note are discharged to the extent of the payment. Md.Code (1975, 2002 Repl.Vol.), Com. Law Art., § 3–602(a). Thus, any payment that Brock made to a person or entity entitled to enforce the Note—and thus any action taken to foreclose on the collateral secured by the Deed of Trust—is sufficient, to the extent paid, to discharge Brock's liability on the Note.

*Brock, supra,* 430 Md. at 729 (footnotes omitted). Bald assertions of "holder" status, as is the case here, do not suffice to earn the Howes a payment discharge.

For all these reasons, none of the Appellees has demonstrated a right to enforce the Howes' Note, and the bankruptcy court erred in holding otherwise and dismissing the Complaint.

**B.    Counts 3-9**

The Banks argue that all nine counts of the Complaint fail if US Bank was the holder of the Howes' Note when the Second Foreclosure Case, the proof of claims, and the Plan Objection were filed. Banks' Brief 12. However, as set forth in their Brief, Appellants' claims in Counts 3 through 9 state claims even if US Bank was the Note holder at all relevant times. *See* Appellants Am. Brief 33-46.

**II.    THE CARRINGTON BRIEF**

**A.    Inapplicability of Counts One, Three, Four, Five, Six, Seven and Eight to CMS**

CMS sought dismissal of Counts One, Three, Four, Five, Six, Seven and Eight of the Complaint. Carrington Brief 8. However, the headings for those counts all state they do not apply to CMS. Therefore, there was no need for CMS to respond to these counts, and the relief requested should have been denied.

7

**B.      Inapplicability of Counts One, Three, and Eight to CT**

CT sought dismissal of Counts One, Three, and Eight of the Complaint. Carrington Brief

9. However, the headings for these counts all state they do not apply to CT. Therefore, there was

no need for CT to respond to these counts, and the relief requested should have been denied.

**C.      Misstatement of Appellants' Positions**

CMS and CT misstate Appellants' positions. Appellants do not "state that because the

original note was lost they have somehow pled facts in the Complaint sufficient to void their

entire obligation on the debt." Carrington Brief 10 at ¶ 26. There is no pleading that the

obligation is void. CMS and CT misstate Appellants' position in order to avoid having to address

the real allegation, that the Banks lacked standing to foreclose, and they have not demonstrated

their right to enforce the Note in the Howes' bankruptcy case or transfer it CMS and CT.

CMS and CT also incorrectly characterize Appellants' position regarding their obligation

to make mortgage payments. Carrington Brief 11 at ¶ 27. Appellants have consistently attacked

Appellees' standing to enforce their Note, not their obligations thereunder.

**D.      Invalid Lost Note Affidavit**

CMS and CT argue that the defects in the Lost Note Affidavit ("LNA") (Apx. 272) under

Md. Code Ann., *Real Prop.* § 7-105.1(f)[10] "has no effect on standing to file a Proof of Claim in a

---

[10] "Notwithstanding any other law, the court may not accept a lost note affidavit in lieu of
a copy of the debt instrument required under subsection (e)(2)(iii) of this section, unless the
affidavit:

   (1) Identifies the owner of the debt instrument and states from whom and the date on
   which the owner acquired ownership;
   (2) States why a copy of the debt instrument cannot be produced; and
   (3) Describes the good faith efforts made to produce a copy of the debt instrument."

Md. Code Ann., *Real Prop.* § 7-105.1(f).

Bankruptcy case." Carrington Brief 11 at ¶ 26. However, they ignore the *Patterson*[11] case

Appellants cited below and in their Brief (at 31), and they failed to address Bankruptcy Rule

3001(c)(1), which provides:

> ...when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

Bankruptcy Rule 3001(c)(1). *See* Appellants' Am. Brief 29-31. The LNA fails to state the

circumstances of the loss or destruction and therefore violates Bankruptcy Rule 3001(c)(1). In

addition, the LNA was not attached to either proof of claim as required by Rule 3001(c)(1). US

Bank attached no writing to its Claim (Compl. 87-88) (Apx. 43), nor did it include a statement

that the note has been lost. Although Wells Fargo represented to the bankruptcy court that it was

the holder of the Note, it subsequently admitted that the Note was lost, and failed to include in

the Amended Claim (or the LNA) "a statement of the circumstances of the loss or destruction..."

as required by Rule 3001(c)(1).

    CMS and CT argument regarding the LNA also ignores the Banks' failure to prove an

unbroken chain of title, required under *Anderson* where, as is the case here, the note is not made

payable to bearer or to the party in possession. *See infra* 2-5.

    Accordingly, it was error for the bankruptcy court to dismiss Counts 2 and 3 of the

Complaint on the defective LNA basis alone. Given the Banks' flip flops about holder status and

possession of the Note, the wisdom of Rule 3001(c)(1) requirements is immediately apparent.

    **E.**    **Count Six - CT is a debt collector under the FDCPA**

---

[11] *In re Patterson*, Case No. 12-50201 (Bankr. W.D.N.C., 2012) (Apx. 282).

9

CT argues dismissal of Count Six was proper because it is not a "debt collector" as defined by the Fair Debt Collection Practices Act (FDCPA), citing 15 U.S.C. § 1692a(6) and the case of *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[t]he legislative history of [FDCPA] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, **as long as the debt was not in default at the time it was assigned**."). (Emphasis added.) Carrington Brief 12-13 at ¶ 31.

However, as the *Perry*[12] case makes clear, mortgage servicers and assignees are liable under the FDCPA if the debt was in default at the time it was assigned, as was the case here.

> 126.    At all times relevant hereto, CT was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. CT is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). **CT claims in its Amended Transfer Notice to have acquired ownership of the Note and Mortgage on or about June 11, 2013, the date it filed the Amended Transfer Notice, after the April 2, 2009 date the Note went into default.**

Compl. ¶ 126 (emphasis added) (Apx. 50). Accordingly, CT is a debt collector as defined by the FDCPA, and it was error to dismiss Count Six.

**F.    Count Seven - Maryland Consumer Debt Collection Act (MCDCA)**

CT argues dismissal of Count Seven was proper because "there are no specific amounts, acts or any other allegations that would lead CT to understand how it violated the MCDCA." Carrington Brief 13 at ¶ 32. CT ignores paragraph 138 of the Complaint incorporating the preceding paragraphs of the Complaint. Count Seven provides:

---

[12] *See, also, Zervos v. Ocwen Loan Servicing, L.L.C.*, 2012 WL 1107689 (D. Md. Mar. 29, 2012) ("Defendant argues that Plaintiffs cannot state a claim against it under the FDCPA because loan servicers are not considered "debt collectors" under that law. That exemption, however, does not apply where a loan servicer acquires a loan after it has already gone into default.")

10

138.    The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

139.    The Defendants Wells Fargo, US Bank, and CT are "collectors" as defined by the Maryland Consumer Debt Collection Act ("MCDCA"), § 14-201(b) of the Commercial Law Article, Annotated Code of Maryland.

140.    The Defendants sought to collect from Plaintiffs amounts that they knew they are not lawfully entitled to collect. This conduct violated the MCDCA.

141.    As a proximate result of the Defendants' violations of the MCDCA, Plaintiffs have suffered damages, including emotional distress and mental anguish.

Compl. ¶¶ 138-141 (Apx. 52-53).

Section 14-202 of the Commercial Law Article sets forth the acts prohibited by the MCDCA, including "(8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Appellants alleged that CT sought to collect from them amounts that they knew they are not lawfully entitled to collect. Compl. ¶ 140 (Apx. 52). Appellants further alleged that the Amended Claim contains bogus foreclosure and inspection fees, and fails to credit all of Debtor's payments. Compl. ¶ ¶ 17, 22, 36-47, 55, 96, 99-105 (Apx. 26-28, 31-34, 36-37, 44-46). Finally, Appellants provided notice of these defects in their Claim Objection filed April 2, 2013, Compl. ¶ 55 (Apx. 36-37), before CT's agent, CMS, filed on May 29, 2013 its notice of Transfer of Claim Other Than for Security of the Amended Claim, Compl. ¶ 56 (Apx. 37). Accordingly, CT's motion to dismiss Count Seven should have been denied since Appellants have provided it with adequate specificity of its violations of the MCDCA and they have otherwise stated a valid claim in Count Seven.

## III.    CONCLUSION

None of the Appellees has demonstrated a right to enforce the Howes' Note, and the

11

bankruptcy court therefore erred in holding otherwise and dismissing the Complaint. Wells Fargo and US Bank's flip flops over "holder" status and their constantly changing theories to prove that status should make it abundantly clear to the Court that neither of them has established it held the Homes' Note at the times relevant to the Complaint. It was also error for the bankruptcy court to dismiss Counts 2 and 3 of the Complaint due to the defective Lost Note Affidavit on that basis alone. Finally, Appellants' claims in Counts 3 through 9 state claims even if US Bank was the Note holder at all relevant times, so it was also reversible error to dismiss those counts.

> Respectfully submitted,
> */s/ Robert J. Haeger, October 30, 2014*
> Robert J. Haeger, Bar No. 25434
> Attorney for Appellants
> 11403 Seneca Forest Circle
> Germantown, MD 20876
> (888) 463-3520; www.haegerlaw.com
> Board Certified – Consumer Bankruptcy Law
> – American Board of Certification

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing No Opposition Motion to Extend Time to File Appellants' Brief to be sent on October 30, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire                              Baltimore, MD 21286
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Appellees*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409

12

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorneys for Appellees Carrington*
*Mortgage Services, LLC and Wilmington*
*Savings Fund Society, FSB*

                                            */s/ Robert J. Haeger, October 30, 2014*
                                            Robert J. Haeger

Date signed November 05, 2014



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Jeffrey V. Howes | * | Case No. 12-30614-RAG |
| | | Chapter 13 |
| Debtor | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| Jeffrey V. Howes and Tonya H. Howes | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Adversary No. 13-00510-RAG |
| | * | |
| Wells Fargo Bank, N.A. | * | |
| U.S. Bank, N.A. | | |
| Carrington Mortgage Services, LLC | * | |
| Christiana Trust, a Division of | | |
| Wilmington Savings Fund Society, FSB | * | |
| | | |
| Defendants | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION IN SUPPORT OF ORDERS
### DISMISSING COMPLAINT AND DENYING MOTIONS TO RECONSIDER

## I.    Preliminary Statement

On July 22, 2014, this Court entered an Order Denying Plaintiff's Motion to Reconsider

Order Dismissing Complaint and Objection to Ownership Affidavit (Order Denying

Reconsideration) (Dkt. No. 36). The Order Denying Reconsideration reaffirmed the ruling

embodied in the Order Dismissing Complaint for Failure to State a Claim (Order Dismissing)

entered on May 12, 2014 (Dkt. No. 28). The Order Dismissing memorialized a March 4, 2014

oral ruling (March 4th Ruling) and provided as follows:

> This Adversary Proceeding was commenced by the filing of a
> Complaint to Determine Secured Status, Sanctions, and Other
> Relief (Complaint) on September 3, 2013. Underlying the
> Complaint is (1) the theme that as a result of the assignments of the
> loan documents (including to a securitized trust), the Plaintiffs "do
> not know" which one of the Defendants is entitled to receive their
> residential mortgage payments and (2) their somewhat
> contradictory yet corollary efforts to establish that at some point,
> the trust terminated and/or the assignments were somehow
> botched, so that none of the Defendants are legitimately entitled to
> enforce the obligation and/or may owe the Plaintiffs damages for
> "fraud" and technical violations of consumer protection laws.
> None of the alleged claims are grounded in substantive rights
> created by the Bankruptcy Code.
>
> *          *          *
>
> [In the March 4th Ruling], the Court stated that Count I would be
> dismissed with prejudice because the Plaintiffs failed to state, and
> could not assert, a legitimate claim for fraud and that the remaining
> claims would be dismissed without prejudice pending (a)
> Carrington's and Christiana's provision of proof of ownership of
> the defaulted note and mortgage secured by the Plaintiffs'
> residence and (b) an opportunity to the Plaintiffs to file either an
> objection to claim, an amended complaint, or both, that assert
> legitimate, non-specious claims for relief.

As of March 4th, Defendants Carrington Mortgage Services, FSB (Carrington) and

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich

Mortgage Loan Trust, Series 2013-2 (Christiana) were respectively the holder and servicer who

2

ADD. 128

claimed to be entitled to enforce the November 30, 2001 Deed of Trust (DOT) against Plaintiffs' home.[1] They were given until April 3, 2014 to, "submit an affidavit that (1) explains their claim of ownership to the note and mortgage (sic) that underlie Claim No. 4-2 and . . . (2) supplies an inventory of documents that memorializes their chain of title . . . ." Thereafter, Plaintiffs were given until May 3, 2014 to file either an objection to claim, an amended complaint, or both.

Carrington and Christiana facially complied with the April 3rd deadline by filing the Line and Affidavit. Eschewing compliance, Plaintiffs instead filed: (a) on May 5, 2014 a Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit (First Motion to Reconsider) (Dkt. No. 27) and (b) on May 27, 2014 a Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (Second Motion to Reconsider) (Dkt. No. 34). Those motions raised identical arguments and were heard, and orally denied, on July 16, 2014. The Order Denying Reconsideration embodies that ruling. It also afforded Plaintiffs seven (7) days to either file an amended complaint, an objection to claim, or both. If they did not meet the deadline, the Order Denying Reconsideration provided that this Adversary Proceeding would be dismissed with prejudice. The Oversigned fully expected Plaintiffs to file an amended complaint by the deadline to seek redress for the remaining alleged wrongs they claim to have suffered. However, Plaintiffs again declined to file an amended complaint (or objection to claim) and instead filed a Notice of Appeal (Dkt. No. 38). Because this Court orally explained its two prior rulings, it was decided that a written opinion would aid the decisional process on appeal, see *Grand Jury Proceedings Under Seal v. United States,* 947 F. 2d. 1188,

---

[1] The proofs of claim and related documents that rely upon the DOT and its companion Construction Note (Note) (also dated November 30, 2001) are included at Claim No. 4 on the Claims Register in Case No. 12-30614 (Main Case) and are also listed in the Line and Affidavit Certifying Ownership of Debt Instrument (Line and Affidavit) filed by Carrington on April 3, 2014 at Dkt. No. 26 in this Adversary Proceeding. It appears from the Assignment of Claims Transfer Agreement filed on July 14, 2014 at Dkt. No. 116 in the Main Case that a new mortgage servicer, Selene Finance, LP (Selene) (which may also be a trade name of an existing party), may have been appointed.

3

1190 (4th Cir. 1991) and this Opinion was drafted to that end. Two questions relevant to the appeal are presented: (1) whether Count One of the Plaintiff's Complaint to Determine Secured Status, Sanctions and Other Relief (Complaint) alleged, or could be amended to allege, a meritorious claim for fraud and (2) assuming that it did not (and could not) whether under the circumstances of this Adversary Proceeding, this Court was invested with sufficient discretion to require that an amended complaint be filed promptly and, if it was not, dismiss the Complaint with prejudice.

## II.    The Bankruptcy Case

Plaintiff-Debtor, Jeffrey V. Howes, filed his Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code on November 15, 2012.[2]  Mr. Howes listed his residence at 7000 Meandering Stream Way, Fulton, MD, 20759 (Residence) on his Schedule A and valued it at $650,000 (Dkt. No. 14). Mr. Howes also listed over $306,944.02 in personal property on Schedule B, including over $264,000 in stock and equity funds, with approximately $160,000 of that sum in what appear to be liquid accounts. He did not list any claims, causes of action or rights of setoff against any of the Defendants in this Adversary Proceeding. To the contrary, he answered "none" in response to each relevant question on his Schedule B.[3]  Wells Fargo Home Mortgage (Wells Fargo Servicer) was listed by the Debtor as the servicer of the mortgage against the Residence, albeit with its claim disputed. A total of $27,920.70 in unsecured debt was listed

---

[2] This Court relied in part upon knowledge of the record of the Main Case in entering the orders on appeal. As courts "may properly look beyond the complaint only to items in the record of the case or to matters of general public record[,]" *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998) when ruling upon a motion to dismiss for failure to state a claim, such reliance is appropriate.

[3] Debtor also attached a lengthy "Exhibit" to his Schedules. The Exhibit seeks to confirm that the information included in the schedules is without prejudice to the alleged rights later asserted in this Adversary Proceeding while also under-cutting Debtor's affirmance under oath and penalty of perjury of the truthfulness of certain of the information included in the Schedules.

4

in Schedule F.[4]  Debtor and his wife own their own business, Green Delivery Service, Inc., and,

per Debtor's Schedule I, have gross monthly income of $6,800.  The Debtor listed monthly home

mortgage payments of $4,870 on his Schedule J and a net monthly income of $310.[5]

Debtor filed his Chapter 13 Plan (Plan) on December 13, 2012 (Main Case, Dkt. No. 13).

Debtor represented in the Plan that he would pay $1,157 per month to the Trustee with $1,018 of

that to be paid to Wells Fargo over thirty-five (35) months to cure an alleged arrears of $35,662.[6]

However, on March 8, 2013, Wells Fargo Servicer, through its attorney Brian McNair, Esquire,

filed a Proof of Claim (Claim No. 4-1).  Claim No. 4-1 identified US Bank National Association,

as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells

Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 (US

Bank as the creditor, meaning, as stated in the claim, "the person or other entity to whom the

debtor owes money or property."  Claim No. 4-1 asserted that $740,334.24 was owed to US

Bank by the Debtor and that the claim was secured by a deed of trust against the Residence.  It

was also asserted that the tidy sum of $200,196.79 was in arrears.  Seven days later, on March

15, 2013, Wells Fargo Servicer filed an Amended Proof of Claim (Claim No. 4-2), also through

Mr. McNair, but this time on behalf of creditor Wells Fargo Bank, N.A. (Wells Fargo Bank).

---

[4] Only one general unsecured claim of $560.80 was filed and total unsecured claims (including priority claims) have been reduced to less than $3,000 due to resolved objections.

[5] While $4,870 is listed as a monthly expense, Plaintiffs had not paid this obligation for over seven years prior to the commencement of the Main Case and have not paid it since the Main Case was filed.  Debtor also attempted to exempt a total of $104,763 in property per his Schedule C.  That figure is well in excess of even the most liberal, arguable exemption ceiling.  The Trustee objected to this on January 3, 2013 in the Main Case (Dkt. No. 22).  Debtor did not respond directly to the objection but did file an Amended Schedule C on January 15, 2013 that significantly reined in his blatant overreach.

[6] The Plan also included verbiage that was intended to, in large part, exempt him from the potential impact of *res judicata* upon confirmation.  An Amended Chapter 13 Plan (Amended Plan) was filed on October 4, 2014 (Main Case, Dkt. No. 83).  In it, the Debtor represented that he would pay $321 per month to the Trustee and the verbiage was eliminated.  Instead, there is an acknowledgement in the Amended Plan that the outcome of this Adversary Proceeding will likely impact upon the Amended Plan.  Because of the obvious roadblock presented by this Adversary Proceeding, the Court has put confirmation on hold pending final resolution of the Complaint.

Appeal: 15-2332    Doc: 22    Filed: 03/18/2016    Pg: 177 of 311

Claim No. 4-2 was otherwise identical to Claim No. 4-1. However, while Claim No. 4-1 was

devoid of underlying documentation, Claim No. 4-2 included (1) a mortgage proof of claim

attachment that gave a detailed statement of the alleged debt included a mélange of charges and

fees allegedly assessed because of the Debtor's default and the resulting foreclosures, (2)

redacted loan documents, including copies of the Note,[7] the DOT and an Allonge dated

November 21, 2009 that identifies Wachovia as the "Present Holder" (and indicates an intent to

assign the Note without recourse to US Bank) and (3) informational correspondence from Wells

Fargo Servicer. The Note and DOT are signed by the Debtor and his wife. Claim No. 4-2 was

thereafter impacted by three Transfers of Claim Other than for Security filed in the Main Case at

Dkt. Nos. 51, 57 and 65, respectively, pursuant to Bankruptcy Rule 3001(e)(2). Dkt. No. 51

(Transfer No. 1) was dated and filed May 29, 2013 and purported to memorialize the transfer of

Claim No 4-2 from Wells Fargo Bank to Carrington. Dkt. No. 57 was dated and filed June 11,

2013 and purported to amend Dkt. No. 51 by memorializing the transfer of Claim No. 4-2 from

Wells Fargo Bank to Christiana. Dkt. No. 65 is dated July 10, 2014, was filed on July 14, 2014

and purports to memorialize the transfer of Claim No. "4" (filed on March 8, 2013) from

Carrington to Christiana c/o Selene.

   On April 2, 2013, Debtor filed an Objection to Allowance of Claim filed by Wells Fargo

Bank, N.A. (Objection to Claim) (Main Case, Dkt. No. 36). The Objection to Claim was no

more than two substantive pages long and its primary thrust was that because there was no

apparent endorsement of the Note from US Bank to Wells Fargo Bank, Wells Fargo Bank was

---

[7] On the signature page of the Note, it is endorsed without recourse by the Columbia Bank (Columbia) to Wells
Fargo Servicer and then by an unidentified entity (through its Assistant Secretary) also to Wells Fargo Servicer and
it is also endorsed to no one in particular by Wachovia Bank, National Association, (Wachovia) as Trustee under the
pooling and servicing agreement dated as of May 2003.

6

not a creditor of Mr. Howes and did not have standing to file a proof of claim.[8]  Neither Wells

Fargo Bank, nor anyone else, filed a response to the Objection to Claim.  Nevertheless, on June

17, 2013, the Court held a hearing on the same (Main Case, Dkt. No. 62).  Among other things,

the hearing was held because it was apparent that the Objection to Claim had not been served on

all the potential parties in interest.[9]  Moreover, during the hearing, Mr. Haeger suggested that

perhaps the Objection to Claim should be supplanted by an adversary proceeding because the

Debtor's attack would likely draw into question the "extent" of the lien.  Transcript of Hearing at

5 (June 17, 2013) (Main Case, Dkt. No. 132).[10]  See Federal Rules of Bankruptcy Procedure

Rule 7001(2).[11]  Over two months later, on September 3, 2013, the Complaint was filed,

commencing this Adversary Proceeding.[12]

## III.    The Adversary Proceeding

At the beginning of its factual recitation, the Complaint acknowledges that Mr. and Mrs.

Howes entered into the DOT and Note with Columbia and that the Residence was secured

thereby.  The Plaintiffs also admit that they, "suffered a decline in income in 2008 as a result of

the Great Recession, [had] insufficient income to cover the Note payments [and had to use] their

---

[8] The Objection to Claim also asserted that (a) certain payments by Mr. Howes had not been credited and (b) foreclosure costs could not be recovered because the underlying foreclosures were filed by entities who lacked standing to enforce the DOT and Note.  On May 15, 2013, Wells Fargo Bank withdrew its November 9, 2012 entry of appearance and request for notice in the Main Case (Dkt. Nos. 9 and 49).  Transfer No. 1 was filed fourteen days after Wells Fargo Bank's withdrawal of its entry of appearance.

[9] The Objection to Claim could not have been served on the additional parties when it was filed because those parties had not then entered the proceeding.

[10] Since then, Mr. Haeger has said or implied more than once on the record that the Oversigned suggested or recommended the filing of this Adversary Proceeding.  The Court has mistakenly said the same thing on the record at least once.  However, the transcript of the June 17, 2013 hearing sets the record straight.

[11] An objection to claim may be included in an adversary proceeding. See Federal Rules of Bankruptcy Procedure Rule 3007(b).  The Objection to Claim was denied without prejudice on June 24, 2013.  From this point forward, unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[12] The confirmation hearing on Debtor's Amended Plan was scheduled for the day after the Complaint was filed.

savings to bridge the gap until their savings were exhausted." They further admit that they

"defaulted on the Note on April 2, 2009, and then fell more than 60 days behind in June 2009."

The Complaint then summarizes approximately four years of fruitless, and no doubt frustrating,

loan modification negotiations with Wells Fargo.[13]  Per the Complaint, these negotiations

continued after Wells Fargo began to foreclose.  Plaintiffs essentially take the position (laden

with dense jargon from the Home Affordable Modification Program (HAMP)) that the attempted

modification failed either because of the hardheadedness, incompetence or negligence of Wells

Fargo.

The Complaint then describes the foreclosure proceedings which allegedly began in, or

around, June 16, 2009.  Per the Complaint, the first foreclosure was filed by US Bank (as

principal, per the Complaint) and Wells Fargo (as US Bank's agent, per the Complaint) but later

voluntarily dismissed on January 3, 2011 because defective, "robo-signed" affidavits were

utilized by the Substitute Trustees.  As for the second foreclosure case, Plaintiffs assert that

Wells Fargo did not have standing to file it because the "[DOT] was removed from the

[securitized trust that previously held the DOT] on January 1, 2012" and the Securitized Trust

"terminated . . . on January 25, 2012" and had "ceased to exist by February 21, 2012, the date the

[foreclosure] case was filed."[14]  Relying upon the alleged termination of the Securitized Trust

and the Exhibits listed in footnote 14, Plaintiffs allege that the "[DOT] was paid off on January

1, 2012".  Needless to say, that allegation is not true in light of the other assertions in the

---

[13] The Complaint does not appear to distinguish between Wells Fargo Bank and Wells Fargo Servicer. From this point forward, they will be collectively referred to as Wells Fargo.

[14] This allegation is purportedly supported by Exhibits 2A (Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-4 -- Certificate Distribution Summary), 2B (Collateral Statement) and 2C (Loan Level Data) attached to the Complaint.

Complaint and Mr. Howes own testimony under oath.[15]   Transcript of Hearing at 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).  Plaintiffs finally assert that the second foreclosure was on the verge of dismissal for something akin to a failure to prosecute when Mr. Howes commenced the Main Case.

The Howes wrap up their factual allegations with a summary of the events in the Main Case and the claims that (1) they received no notice from Wells Fargo of the transfer of either the Note or the right to service the DOT, (2) they received no communication from either Carrington or Christiana regarding their asserted interest in, and right to enforce, the DOT other than the notices filed in the Main Case and (3) they "do not know the identity of the rightful owner of the Note" and that, on information and belief, "none of the Defendants are in possession of the Note."

Count I of the Complaint asserts that Wells Fargo committed fraud and relies upon Section 105 of the Code and Rule 9011 as its legal underpinning.[16]   The essence of Count I is paragraph sixty-seven (67) which states:

> Wells Fargo filed its Amended Claim as creditor with the intent to defraud this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees.  Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, although required to do so by Bankruptcy Rule 3001 and the settlement it reached with the 49 State Attorneys' General effective April 5, 2012 . . . .  Wells Fargo failed to disclose Trust termination in the Amended Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed, contained numerous false and fraudulent affidavits regarding standing to

---

[15] However, it may be that, contrary to the Complaint's express language, Plaintiffs contend that the Securitized Trust itself was "paid off" although the particulars of that are at best ambiguous.  Nevertheless, Counsel for Wells Fargo acknowledged that the Securitized Trust had terminated.  Transcript of Hearing at 10 (Jan. 6, 2014) (Dkt. No. 46).

[16] Section 105 is the bankruptcy "All Writs" statute and Rule 9011 is the Bankruptcy counterpart to Federal Rule of Civil Procedure 11.  Neither create independent substantive rights or claims for relief, commonly understood.

9

foreclose, including the Ownership Affidavit, Declaration Affidavit, and NIF Affidavit, and the fact that the Trust lacked standing to file the Claim.

Beyond these conclusory assertions, the balance of Count I is a mish-mosh of allegations regarding allegedly false claims filed by Wells Fargo in other bankruptcy cases, the disparity in strength and resources of banks versus consumer debtors, the general difficulty debtors have in ferreting out the incipient "fraud" that underlies proofs of claim and whether Wells Fargo was entitled to the whopping sum of $2,924.50 in foreclosure fees and costs.

Count II is allegedly grounded upon Sections 105 and 506 of the Code.[17]  It elaborates upon the core assertion of the Objection to Claim and asserts that because (a) the Securitized Trust terminated, (b) the Note was not properly endorsed and (c) the original Note has been lost, none of the Defendants have a right under Maryland law to enforce the DOT and Note.  Count III is allegedly grounded upon Bankruptcy Rule 3001(c)(2)(D).  Here, Plaintiffs seek sanctions against Wells Fargo and US Bank for their failure to attach supporting documents to Claim Nos. 4-1 and 4-2 and then to properly amend the same.[18]

The remaining counts are all allegedly grounded upon non-bankruptcy state or federal law.  In summary, they allege the following causes of action:

(a) Count IV is against Wells Fargo, US Bank and Christiana and asserts a claim for unlawful inspection fees pursuant to § 12-1027 of the Commercial Law Article of the Annotated Code of

---

[17] The primary objective of Section 506 is to determine a creditor's secured status based upon the value of the creditor's interest in estate collateral.  Roughly speaking, the value of the collateral will normally dictate the value of the lien, with any excess debt left unsecured.

[18] Rule 3001(c)(2)(D) is a part of a relatively new general directive that requires creditors, particularly secured creditors, to support their proofs of claim with underlying documentation when they are filed.  It is worth noting that in the event of non-compliance, subpart (D), relied upon by the Plaintiffs, provides sanctions consisting of barring the claimant from offering into evidence the underlying documentation in a contested matter or adversary proceeding, "unless the court determines that the failure was substantially justified or is harmless . . ." or, if the court concludes it is warranted, an award of "other appropriate relief" including attorney's fees caused by the failure to provide the underlying documentation.  Outright denial of the claim is not expressly included as a remedy.

10

Maryland. It is asserted by the Plaintiffs that a total of $320 in fees were illegitimate.

(b) Count V is against Wells Fargo, US Bank, "Unknown Defendant", and Christiana and asserts a claim for truth in lending violations under 15 U.S.C. §§ 1639c(h) and 1641(g). Plaintiffs allege that none of the Defendants, including the "Unknown Defendant", gave them a litany of required notices upon the transfer of the Note and that Plaintiffs suffered actual damages because they did not know (a) the true owner of the Note and (b) did not learn that Defendants lacked standing to file the second foreclosure case. Plaintiffs also seek statutory damages for each alleged violation.

(c) Count VI is against Wells Fargo, US Bank and Christiana and relies upon the Federal Fair Debt Collection Practices Act and the various alleged "false and deceptive" representations of the Defendants. Plaintiffs aver that as a result, they have been damaged in wages lost, "lost time from other activities, been afraid they would lose their property to foreclosure, lost hope the government's various foreclosure programs were honest attempts to help them, worried that bankruptcy did not protect them from bogus claims," and have also suffered mental anguish and emotional distress.

(d) Count VII is against Wells Fargo, US Bank, and Christiana and relies upon the Maryland Consumer Debt Collection Act. This Count avers that the Defendants sought to collect amounts that they knew they were not lawfully entitled to collect and that Plaintiffs have suffered emotional distress and mental anguish as a result.

(e) Count VIII is against Wells Fargo and US Bank and relies upon the Maryland Consumer Protection Act. Among other things, this Count avers that the Defendants made false representations regarding the "ownership of the Note and monies due" in the foreclosure proceedings and that Plaintiffs have suffered mental anguish as a result.

(f) The final Count, Count IX, relies upon Section 502 of the Code, re-alleges the Complaint in its entirety and objects to Claim Nos. 4-1 and 4-2 on that basis.

On October 9, 2013, Carrington and Christiana filed their Motion to Dismiss Complaint

for Failure to State a Claim (Dkt. No. 5). They asserted that because Counts One, Three, Four,

11

ADD. 137

Five, Six, Seven and Eight do not ask for relief against them, those Counts should be dismissed as to them. On October 17, 2013, Wells Fargo Bank and US Bank filed their Motion to Dismiss Complaint to Determine Secured Status, Sanctions, and Other Relief (Dkt. No. 8). They took the position that the Complaint failed to state claim upon which relief can be granted, failed to plead fraud with particularity and was barred by the statute of limitations. The core of their argument is as follows:

> There is neither harm nor foul here. Even if the [DOT] was removed from the [Securitized] Trust, or the Trust terminated as alleged on January 25, 2012, Mr. and Mrs. Howes are still indebted to the holder of the Note and [DOT], whoever that might be. There is no allegation that Mr. and Mrs. Howes have paid their loan. On the contrary, they admit in the Complaint that they are in default thereunder.

Memorandum in Support of Motion to Dismiss Complaint to Determine Secured Status Sanctions, and Other Relief at 9 (Dkt. No. 8-1).

Wells Fargo's prime contention was that because it was the grantor of the Note and DOT to the Securitized Trust, the trust *res* (the rights of a holder of the Note and DOT) simply reverted to Wells Fargo upon termination and Wells Fargo was entitled under Maryland law to either enforce or transfer those rights as it saw fit.[19]

The Court held a hearing on the motions to dismiss on January 6, 2014. At that hearing, the following colloquy occurred between the Court and Mr. Haeger:

> THE COURT: Why don't you tell me what the fraud is?

> MR. HAEGER: The main fraud is trying to hide the fact that there was no standing to file the foreclosure case.

> THE COURT: How did your clients rely on that? And have they been damaged by it?

> MR. HAEGER: Well the fraud is alleged in connection with fraud on the Court.

---

[19] *See Evans v. Safe Deposit & Trust Co. of Baltimore*, 190 Md. 332 (1948).

12

THE COURT: No, you say on the debtors, that is what your complaint says. You say it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you. . . .

MR. HAEGER: Well, that is separate – that is correct. That is separate –

THE COURT: . . . So, what is the fraud?

MR. HAEGER: So, I would say that there are two areas. The first area and the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT: Because the trust terminated?

MR. HAEGER: That is correct, Your Honor.

THE COURT: So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER: The Plaintiffs would love to know.

THE COURT: That is not an answer. As a lawyer, what happened to it?

MR. HAEGER: Well, as a lawyer –

THE COURT: What would be the law in that circumstance?

MR. HAEGER: As I set forth in my response the loan was transferred out of the trust before the trust terminated.

*       *       *

THE COURT: So, you are saying that they are trying to  -- Wells Fargo intentionally misrepresented their status because the trust was terminated?

MR. HAEGER: That is right.

THE COURT: And what were they gaining from that, Covering (sic) up the $2,000 in foreclosure fees?

13

MR. HAEGER: I have seen people do strange things. And –

THE COURT: No, you are the Plaintiff. What were they gaining from that? Why did they conduct -- why did they commit the fraud, per your allegation?

MR. HAEGER: The main motivation would be to preserve the foreclosure, the fact that they filed the foreclosure case that it was a rightful foreclosure when it wasn't, and to preserve the fees they sought to collect as a result of that. You look at their behavior and you scratch your head. What is going on here. Why are they doing what they are doing?

THE COURT: That doesn't make it fraud. Fraud is serious. Fraud allegations are serious business.

Transcript of Hearing at 19-20, 21-22 (Jan. 6, 2014) (Dkt. No. 46).

The parties returned on March 4, 2014 for the Court's oral ruling. In part relying

upon *Jaimes v. J.P. Morgan Chase*, 2013 WL 677740 (Dist. Ct. N. D. Ill. Feb. 25, 2013),

the Oversigned ruled as follows:

The filing of an incorrect claim is not actionable unless there is a knowing and fraudulent filing. The Debtor's assertion simple (sic) assumes without explanation that the proof of claim, proofs of claim, were filed to claim fees to which the Defendants were not entitled because the trust terminated. But there is no explanation as to why trust termination would cut off the right to enforce the note. And that is the crucial problem with the complaint.

This is especially true under the enlightened analysis of the *Jaimes* case. If it was wrong for either US Bank or Wells Fargo to claim credit or slash service or status,[20] then the Debtor must proffer who the correct servicer was or, at a minimum, show some colorable injury to him and his wife, as a result of the purported confusion . . . .

What it comes down to is the allegation that this mortgage became a part of the securitization package, and that's not fair. And therefore, I, the Debtor, have been injured. That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud. Therefore, count one will be dismissed with prejudice.

---

[20] This should read, "claim creditor/servicer status."

14

Transcript of Hearing at 18, 19 (Mar. 4, 2014) (Dkt. No. 24).

This Court also observed that the remaining causes of action were either partially dependent upon, or intertwined with, the centerpiece "fraud" allegation and they would be dismissed without prejudice for a later determination as to their viability once the Complaint was cleansed of the bogus Count I. Nevertheless, this Court recognized that the multiple transfers of the Note and DOT were at best confusing and the Plaintiffs should receive an explanation from Carrington and Christiana as to the basis for their assertion that they properly stood in the shoes of holder and servicer, respectively. Accordingly, the Order Dismissing required them to provide the Plaintiffs "proof of ownership" supported by "an inventory of documents" within thirty days. The Line and Affidavit was filed to comply with that directive.

Plaintiffs, however, chose not to file an amended complaint and instead filed the First and Second Motions for Reconsideration. As to the dismissal of Count I with prejudice, Plaintiffs' averred that the Court erred in finding that the "foreclosing Trust did not terminate." First Motion to Reconsider at 2. Plaintiffs asserted that because the Trust did terminate, Count I was viable. They also attacked the chain of title leading to Carrington and Christiana in light of the information included in the Line and Affidavit. As indicated above, a hearing was held on July 16, 2014 and the First and Second Motions for Reconsideration were denied. Plaintiffs were given seven (7) days to file either an amended complaint or objection to claim (or both) but instead filed their Notice of Appeal.

**IV.    Jurisdiction and Venue**

This Court properly exercised jurisdiction over this Adversary proceeding in accordance with 28 U.S.C. §§ 157(b)(1)(2)(B) and (K) and 1334 and Local Rule 402 of the United States District Court for the District of Maryland. This Court concludes that the preliminary

15

proceedings conducted so far have not violated the strictures of *Stern v. Marshall*, 131 S. Ct.

2594 (2011). Venue is proper under 28 U.S.C. § 1409.

## V.    Analysis

### (a)    The Standards that Govern the Application of Federal Rules of Civil Procedure 12(b)(6) and 9(b)

Federal Rule of Civil Procedure 12(b)(6) (Federal Rule 12(b)(6)) is made applicable to

bankruptcy proceedings through Rule 7012(b). Federal Rule 12(b)(6) permits dismissal of a

complaint if it, "fails to state a claim upon which relief can be granted." The fundamental

inquiry is whether a plausible claim is stated. As the Court stated in *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009), "[A] complaint must state a claim that is plausible on its face" and incorporate

"sufficient factual matter" in support of the claim. See also, *Bell Atlantic v. Twombly*, 550 U.S.

544 (2007). A complaint must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at

678. If the complaint does not meet this standard, then it must be dismissed. Naturally, a

complaint should be viewed, "in a light most favorable to the plaintiff," and "all well pleaded

allegations" should be accepted. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 726, 730 (4th Cir. 1993).

Nevertheless, the factual allegations must assert a right to relief that rises, "above the speculative

level." *Twombly*, 550 U.S. at 555. When confronted with a meritorious motion to dismiss,

plaintiffs cannot rely upon "allegations that are merely conclusory, unwarranted deductions of

fact . . . [or] unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Moreover, each element of the claim asserted must be supported by proper factual allegations in

the complaint. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). In

sum, as observed in *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998), while,

"notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."

When fraud is alleged, Federal Rule of Civil Procedure 9(b) (Federal Rule 9(b)) heightens the level of scrutiny. Federal Rule 9(b) provides that "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." This standard requires, "the who, what, when, where, and how: the first paragraph of any newspaper story." *U.S. ex. rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). The rule is intended to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011).

       **(b)**      **The Reasons why Count I was Dismissed with Prejudice**

Plaintiffs do not dispute that Wells Fargo had the right and power to enforce the Note and Mortgage for the many years they were in default and living in the Residence for free and then during the period when they attempted to negotiate a HAMP modification. But per the Plaintiffs' theory, the termination of the Securitized Trust brought about a fundamental sea change that permanently altered the landscape. The logic of Count I is that (a) the Securitized Trust terminated on January 25, 2012, (b) after its termination, Wells Fargo's standing to foreclose (status as a creditor) was negated, (c) Wells Fargo therefore did not have standing to file Claim Nos. 4-1 and 4-2, (d) Wells Fargo filed those claims to "hide" the fact that it did not have standing to file either the foreclosure or the proofs of claim, (e) Wells Fargo should have filed documented proof of the termination of the trust with Claim Nos. 4-1 and 4-2 to confirm its lack of standing and (f) Wells Fargo's actions in filing Claim Nos. 4-1 and 4-2 were all to the ultimate end of covering up foreclosure fees ($2,924.50) that are illegitimate because of Wells

Fargo's lack of standing. As "theories of the case" go, this is mind-bendingly obtuse. Perhaps purposefully so. Nevertheless, as a blueprint for a fraud claim it amounts to patent nonsense.

The keys to the contention are (a) that Wells Fargo had no right to foreclose or file Claim Nos. 4-1 and 4-2 because of the Securitized Trust's termination and (b) Wells Fargo was legally bound to include documentary confirmation with the two claims that it did not have standing to either foreclose or file the two claims. However, it is just as (and frankly more) plausible to conclude that Wells Fargo reasonably believed it had every right to enforce the Note and DOT, that the foreclosure fees were legitimate and recoverable and that Claims Nos. 4-1 and 4-2 were filed to achieve those simple ends. At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud.

Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of claim, *because some other, identifiable true holder of the Note and DOT was entitled to do so*, yet filed the claims anyway in contravention of that holder's rights.[21] However, during argument Mr. Haeger could not (or would not) articulate what happened to the Note and DOT when the Securitized Trust terminated: did they revert to the original owner, were they magically transferred to some other entity or did they simply disappear into nothingness? This point is crucial because without a precise allegation as to the ultimate disposition of the Note and DOT that plausibly establishes that Wells Fargo knew or should have known that it had no enforcement rights – that its attempted collection and enforcement of the

---

[21] That still would not amount to a fraud claim *in favor of the Plaintiffs* for the reasons explained, and noted *infra*, in *Jaimes*. If the mysterious, unidentified "true holder" exists, then surely that entity would be the only one with standing to sue Wells Fargo. Nevertheless, there would still be no damages; i.e., payments wrongfully accepted, because Mr. and Mrs. Howes have not, by Mr. Howes' estimate, paid the Note and DOT for over seven years and continue to refuse to pay it. *See* Transcript of Hearing at 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

18

indebtedness was at odds with the rights of the true holder – the allegation of wrongful conduct by Wells Fargo is mere fanciful malarkey.

This was the precise issue before the court in *Jaimes*. The plaintiff husband and wife homeowners sued JPMorgan Chase (Chase) for fraud as a result of its collection, and attempted collection, of their mortgage payments.[22] Plaintiffs' alleged in part that because the securitized trust had terminated, Chase (which became owner/holder of the obligation through its purchase of the assets of the failed Washington Mutual Bank, F.A.) lost standing to collect the debt. Plaintiffs asserted that the trust's assets were distributed to the certificate holders (beneficiaries) of the trust upon termination and that the certificate holders became the rightful owners and holders of the note and mortgage. Chase therefore did not have the right or authority to collect payments from the plaintiffs. *Jaimes*, 2013 WL 677740 at *1. The Court held:

> This is where the Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.
> First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgages loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust.
>
> \*        \*        \*
>
> Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them.
>
> \*        \*        \*

---

[22] As the Howes did here, Mr. and Mrs. Jaimes also sued Chase for a bushel of consumer protection violations all based upon Chase's "fraudulent" collection of the amounts due under the note.

> In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination. Plaintiff's theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

*Jaimes,* 2013 WL 677740 at *4, *5.

Accordingly, the complaint was dismissed.[23]  Count I of Mr. and Mrs. Howes' Complaint fails for the same reason. Because it does not (and cannot consistent with Rule 9011) identify the entity whose rights are being usurped by Wells Fargo it cannot assert a legitimate fraud claim, even if Plaintiffs had standing to enforce such a claim. Assuming state law applies,[24] to prove fraud in Maryland a plaintiff must establish the following:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703 (1998).

Plaintiffs allege a "false representation" but do not allege a plausible explanation of why Wells Fargo's holding itself out as their creditor is a knowingly false statement beyond the termination of Securitized Trust. Likewise, there are no allegations that Plaintiffs relied upon

---

[23] The court gave a parting warning to plaintiffs' counsel regarding the consequences that might ensue under Federal Rule Civil Procedure Rule 11 if a frivolous amended complaint was pursued.

[24] *Butner v. United States*, 440 U.S. 48 (1979); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Wells Fargo's representation and were damaged as a result. Indeed, Plaintiffs cannot allege a non-frivolous damage claim as they have not paid this debt for over seven years.

As for the assertion that Wells Fargo's filing of the proofs of claim constituted a "fraud on the court", that occurs:

> [W]here it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Aoude v. Mobil Oil Corp,* 892 F.2d 1115, 1117 (1st Cir. 1989) (plaintiff's preparation of a bogus, fabricated agreement, and the knowing use of it by his counsel in support of their complaint, constituted fraud on the court). There is nothing alleged in the Complaint that plausibly supports the notion that Wells Fargo set in motion an "unconscionable scheme calculated to interfere" with this Court's process by filing Claim Nos. 4-1 and 4-2. Without a legitimate, non-frivolous allegation that Wells Fargo knowingly acted in contravention of some other entity's right to enforce the Note and DOT, a claim of "fraud on the court" cannot be alleged in good faith. Whether Count I is characterized as fraud on the court or the Howes, it is patently frivolous and was dismissed for that reason. Hence, Plaintiffs were given a final deadline to file an amended complaint or suffer dismissal with prejudice.

**(c)    The Reasons why the Relevant Deadlines for Filing either a Legitimate Amended Complaint or Objection to Claim were Set by the Court**

While not expressly incorporated in the 7000 series of Bankruptcy Rules, Federal Rule of Civil Procedure 1 calls for a construction and administration of the rules, "to secure the just, speedy, and inexpensive determination of every action and proceeding." Beyond the general directive, there are special reasons underlying the need for alacrity in this Adversary Proceeding.

21

Mr. Howes commenced the Main Case on November 15, 2012. Section 1322(d) mandates that the term of a Chapter 13 plan may not exceed five years beyond the date of the first payment. *In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010); *In re Jackson*, 189 B.R. 213, 214 (M.D. Ala. 1995). Mr. Howes began making his monthly plan payments to the Trustee long ago but the Main Case is now two years old. Moreover, confirmation of the Amended Plan has necessarily been put "on hold" pending the outcome of this litigation. While Mr. Haeger suggested at the last confirmation hearing that the Amended Plan could be confirmed notwithstanding this litigation because the Howes had overpaid the Trustee, *see* Transcript of Hearing at 4 (Mar. 19, 2014) (Main Case, Dkt. No. 131), it is equally true that those payments were made without the corollary burden of the Howes making regular monthly payments of $4,870 against the Note and DOT along with payments sufficient to timely cure the steadily increasing arrears of at least $200,000. This Court exercised its discretion against confirmation on the assumption that some entity is entitled to receive payments from the Howes and the Howes will have a significant monetary burden to resolve when the time comes to pay the piper.[25]

Mr. Howes testified at the January 27, 2013 hearing on Mr. Haeger's fees as follows:

> THE COURT: ... In other words, you're not claiming that you don't owe the money, right? Or are you?
>
> THE WITNESS: No, I am not claiming that I do not owe my mortgage, Your Honor.
>
> *            *            *
>
> THE COURT: So, in order to keep your house, you need to pay the mortgage, correct?
>
> *            *            *
>
> THE WITNESS: I understand that, Your Honor.

---

[25] All Defendants agree that Carrington is the holder of the Note and DOT and Christiana is the servicer.

22

Appeal: 15-2332    Doc: 22    Filed: 03/18/2016    Pg: 194 of 311

\*        \*        \*

THE COURT: So you don't believe that any of the defendants that you're (sic) sued should receive payments for the mortgage?

THE WITNESS: That is correct, Your Honor.

THE COURT: But you believe you do owe money to someone.

THE WITNESS: That is correct, Your Honor.

\*        \*        \*

THE COURT: And, before you filed bankruptcy, you hadn't made payments for how long? Normal payments required by the mortgage.

THE WITNESS: I'm not sure of the exact time but seven to ten years.

THE COURT: Seven to ten years.

THE WITNESS: It was 2003.

Transcript of Hearing at 18, 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

The Objection to Claim was filed on April 2, 2013, approximately five months after Mr. Howes' bankruptcy filing. The hearing on it was held on June 17, 2013 and Mr. Haeger indicated he would supplant the Objection to Claim with a complaint to attack the lien of the DOT against the Residence. However, the Complaint was not filed until September 3, 2013, the day before the Debtor's confirmation hearing. The hearing on the sufficiency of the Complaint was held on January 6, 2014 and an oral ruling given on March 4, 2013. Count I was dismissed with prejudice and Mr. Haeger was told how the matter would be handled going forward – Carrington and Christiana would be required to document their claimed entitlement to enforce the Note and DOT and Plaintiffs would be given sixty days to file either an amended complaint, an objection to claim, or both. Yet, the filings of the First and Second Motions to Reconsider

23

ADD. 149

unilaterally, and effectively, extended the Plaintiffs' deadline until at least the July 16, 2014

hearing on those motions. Hence, the Plaintiffs had over four months from the March 4, 2014

hearing to bring their claims in line with plausibility (if possible) and file a legitimate amended

complaint.[26] Upon the oral denial of the two motions for reconsideration, Plaintiffs were given

an additional seven days to file an amended complaint, or objection to claim, upon pain of

dismissal.[27] Instead of complying and prosecuting their alleged claims, Plaintiffs chose to note

an appeal.

This Court is charged with the discretion to manage its docket in a fair and effective

manner to promote the ends of justice. That includes the denial of leave to amend if further

amendment would be futile. *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1173 (9th

Cir. 2013). As the court stated:

> Because the Zadroznys' claims . . . are factually and legally
> implausible, denial of leave to amend lay within the district court's
> discretion. See *Mirmehdi v. United States*, 689 F. 3d 975, 985 (9th
> Cir. 2012) ("[A] party is not entitled to an opportunity to amend
> his complaint if any potential amendment would be futile . . . ."),
> *as amended* (citation omitted). This is particularly true as the
> Zadroznys had a prior opportunity to amend their complaint.

See also, *Jaimes*, at *6; *In re Nordeen*, 495 B.R. 468, 489 (9th Cir. BAP 2013).

Plaintiffs have been using Section 362(a)'s automatic stay as a shield against foreclosure

since November 12, 2012. They have likewise been using the pendency of the Complaint to

---

[26] The remaining counts of the Complaint also had to be cleansed of the detritus of the bogus fraud allegations. Those allegations run like toxins through Count III ("Since the underlying foreclosure cases were filed by entities that lacked standing . . . ."), Count V ("Upon information and belief, the Note was paid off on January 1, 2012, as stated in the Loan Level Data report . . . "), Count VI ("US Bank caused the Second Foreclosure Case to be filed against Plaintiffs on February 21, 2012, falsely claiming to be the owner of the Note. Wells Fargo sought to hide the Trust termination from the Howes by lying about their HAMP eligibility . . . ."), Count VIII (". . . by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure . . . by concealing Trust termination . . . ") and Count IX, where every allegation of the Complaint is incorporated and re-alleged.

[27] The Line and Affidavit is not a proof of claim and hence Plaintiffs' "objection" to it (included in the First Motion to Reconsider) is insufficient under Section 502(a) and Rule 3007(a) to object to Claim No. 4-2 and commence a contested matter.

stretch their ongoing default *ad nauseum*. They have had thirteen months since the filing of the Objection to Claim to pursue legitimate claims in earnest. Hence, the Oversigned concluded on July 16, 2014 that the time for unwarranted, strategic delay (and frivolous claims) was over. An objective observer, watching this case from November 12, 2012, could reasonably conclude that the Complaint, written in the lawyer crafted patois of victimhood, is nothing more than, "sound and fury, signifying nothing."[28]  In other words, that Plaintiffs' strategy is to spin a tale suitable enough to delay things for as long as possible with the hope that Defendants will eventually grow weary of the contest and agree to a favorable settlement. The commercial chaos and sorry history of the Great Recession lends itself to that approach. Cases have been filed throughout the nation that rely upon the premise that securitization acted as magical alchemy to nullify homeowner loan obligations. *Nordeen*, 495 B.R. at 478 (and cases cited therein); *Jaimes* at *4 (and cases cited therein). But this is the real world and not a fanciful one. Having been sued, the Defendants are entitled to (a) have the Complaint pruned of any chaff and (b) any legitimate claims expeditiously brought to trial. Accordingly, the seven day deadline for filing an amended complaint was set and as it was not adhered to, the Complaint was dismissed with prejudice.[29]

## VI.    Conclusion

In conclusion, Plaintiffs were given more than a reasonable amount of time to pursue their alleged claims. Having failed to do so, the Complaint was dismissed with prejudice.

**End of Opinion**

---

[28] WILLIAM SHAKESPEARE, MACBETH act 5, sc. 5.

[29] Among other things, dismissal with prejudice will mean that Claim No. 4-2 will be deemed allowed under Section 502(a), Plaintiffs will have to commence regular monthly payments to Carrington and Christiana and file an amended plan that satisfies the Note arrears in a manner allowed by the Code.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY V. HOWES, *et al.*

    *Appellants,*

    v.

WELLS FARGO BANK, N.A., *et al.*,

    *Appellees.*

Civil Action No. ELH-14-2814

## MEMORANDUM OPINION

This bankruptcy appeal is rooted in the dismissal of an adversary proceeding filed in a Chapter 13 bankruptcy case.[1]

On November 15, 2012, Jeffrey Howes filed a Chapter 13 bankruptcy proceeding to prevent a foreclosure sale of his home in Fulton, Maryland. *See In re Jeffrey Howes*, Bankr. Case No. RAG-12-30614; ECF 19 at 3, 17 n.2 (Appellants' "Second Amended Brief"). Months later, on September 3, 2013, Howes and his wife, Tonya Howes, filed an adversary proceeding in the bankruptcy case, titled "Complaint to Determine Secured Status, Sanctions, and Other

---

[1] ECF 1, ECF 2, and ECF 4 contain numerous documents designated by appellants, for which ECF numbers are available. Thereafter, plaintiffs filed an Appendix, ECF 9, which contains many of the same documents. The Appendix constitutes the record on appeal, to which the parties refer in their briefs.

The Appendix exceeds 400 pages and is paginated with numbering using the prefix "Apx." However, most of the ECF page numbers of the Appendix are not legible, because they are superimposed on other text. Therefore, when citing to the Appendix, I generally refer only to the "Apx." pagination of ECF 9, found at the bottom of each page.

With respect to the parties' briefs, I cite to the ECF page numbers. The ECF page numbers do not necessarily correspond to page numbers on the submissions.

Relief."[2]  ECF 1-4.  The adversary proceeding "challenge[d] the validity and/or extent of the secured claim asserted in Amended Proof of Claim No. 4 . . . filed by Wells Fargo Bank N.A [in the bankruptcy case,] on the basis [that] Wells Fargo lacked standing to file [it], it is excessive, and subject to [other claims]."  *See Howes, et al. v. Wells Fargo Bank, N.A., et al.*, Adv. Proc. No. 13-510, ECF 1-4, ¶ 1; Apx. 23 ("Complaint").  The allegations also challenge efforts by the defendants to enforce a promissory note ("Note") executed by the Howes in November 2001, and secured by a Deed of Trust that they executed as to their home.  Apx. 22-76, Complaint. The Bankruptcy Court (Gordon, J.) dismissed the Complaint.  The Howes then noted an appeal to this Court on August 5, 2014 (ECF 38 in Adv. Proc. No. 13-510), which was docketed on September 4, 2014.  ECF 1.

## I.  Procedural Background

In the adversary proceeding, the Howes sued "Wells Fargo Bank N.A." ("Wells Fargo");[3] U.S. Bank, National Association ("US Bank");[4] Carrington Mortgage Services, LLC ("Carrington"); and Christiana Trust ("Christiana"), a Division of Wilmington Savings Fund Society, FSB ("WSFS"), as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("Stanwich" or "Stanwich Trust");[5] and "Unknown Defendants 1 through 10."[6]  Apx 22,

---

[2] Mr. Howes is the sole debtor in the Chapter 13 case.  However, both Mr. and Ms. Howes are plaintiffs in the adversary proceeding and appellants here.

[3] Wells Fargo spells its name "Wells Fargo Bank, N.A."

[4] Throughout the record, US Bank is also referred to as U.S. Bank.

[5] The Howes refer to Christiana Trust as WSFS Bank.  As indicated, Christiana is a division of WSFS Bank. Apx. 25, Complaint ¶ 12.

[6] Plaintiffs assert that "Unknown Defendants 1 through 10" constitute "corporate entities and/or individuals that may have a legal interest in the promissory notes [sic], deed of trust, assignments or the real property which is the subject of this proceeding and/or who may be

Complaint at 1. Selene Finance, LP ("Selene"), which was not named as a defendant in the adversary proceeding, has joined the appellees' brief submitted by Christiana and Carrington (ECF 15), without objection.[7] Numerous exhibits were appended to the suit.[8]

The Complaint contains nine counts, as follows: "Fraud Upon the Court" as to Wells Fargo and US Bank, pursuant to 11. U.S.C. § 105 and Fed. R. Bankr. P. 9011 (Count I); "Determination of Scope, Extent and Validity of Lien," as to all defendants, pursuant to 11 U.S.C. §§ 105, 506 (Count II); "Sanctions for Defective Proof of Claim," as to Wells Fargo and US Bank, pursuant to Fed. R. Bankr. P. 3001(c)(2)(D) (Count III); "Unlawful Inspection Fees" as to Wells Fargo, US Bank, and Christiana, pursuant to Md. Code (2013 Repl. Vol., 2014 Supp.), § 12-1027 of the Commercial Law Article ("C.L.") (Count IV); violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, as to Wells Fargo, US Bank, Christiana, and "Unknown Defendant" (Count V); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, as to Wells Fargo, US Bank, and Christiana (Count VI);

---

responsible for the acts complained of herein." Apx. 26, Complaint ¶ 13.

[7] Selene has replaced Carrington as servicer of the promissory note, on behalf of Christiana. ECF 15 ¶ 13, Brief of Carrington and Christiana ("Christiana Brief"). Selene is represented by the same counsel who represents Carrington and Christiana.

In his opinion of November 5, 2014, Judge Gordon explained that on March 15, 2013, Wells Fargo filed an amended proof of claim in the bankruptcy case as to appellants' mortgage debt and default. ECF 51 at 5-6, in Adv. Proc. 13-510. Thereafter, the amended proof of claim was transferred from Wells Fargo to Carrington, then to Christiana, and finally to Christiana c/o Selene. *Id.* at 6.

[8] The exhibits include the Affidavit of Alisha M. Allen, dated January 18, 2012; Distribution Summary for the Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust"), dated January 20, 2012; Collateral Statement for the Trust, dated January 20, 2012; undated Loan Level Data for loan 0127973402, purportedly held by the Trust; Affidavit of Shannon Menapace, dated February 17, 2012, with the Declaration of Substitution of Trustees, dated October 28, 2011; Notice of Intent to Foreclose Affidavit, dated January 12, 2012, along with a Notice of Intent to Foreclose, dated May 10, 2011.

3

violations of the Maryland Consumer Debt Collection Act ("MCDCA"), C.L. §§ 14-201 *et seq.*, as to Wells Fargo, US Bank, and Christiana (Count VII); violations of the Maryland Consumer Protection Act ("MCPA"), C.L. §§ 13-101 *et seq.*, as to Wells Fargo and US Bank (Count VIII); and an "Objection to Claim," pursuant to 11 U.S.C. § 502 (Count IX).

The Howes' Note, which is central to the case, was pooled at some point with several other notes in a residential mortgage-backed securitization trust. Apx 32-33, Complaint ¶¶ 42-43. Plaintiffs maintain that the trust was terminated in January 2012, and therefore any effort to collect on the Note, whether as a successor-in-interest to the trust or as an assignee of the trust, was invalid, because the trust ceased to exist. The Howes also insist that confusion as to ownership of their Note upon the trust's termination precludes any of the defendants from enforcing it. Apx. 38, Complaint ¶ 62. In addition, plaintiffs assert, *inter alia*, that Wells Fargo misrepresented itself as a creditor in a claim filed in the bankruptcy case (Apx. 39, Complaint ¶ 67), and both Wells Fargo and US Bank defrauded the Bankruptcy Court by filing a "false arrearage claim for $200,196.79," related to payments and fees due on the promissory note. Apx. 38, *id.* ¶ 66.

On October 9, 2013, Carrington and Christiana moved to dismiss the Complaint,[9] which they amended on December 18, 2013. Apx. 165-171 ("Carrington MTD"). On October 17, 2013, US Bank and Wells Fargo also moved to dismiss the Complaint. Apx. 77-126 ("Wells Fargo MTD"). The Howes opposed all motions. *See* Apx. 127-57 ("Howes Opposition to Wells Fargo MTD"); Apx. 172-81 ("Howes Opposition to Carrington MTD"). The Bankruptcy Court heard argument on the motions on January 6, 2014 (Apx. 324-51), and permitted supplemental briefing concerning the effect of the trust's termination on the enforceability of the note. Apx.

---

[9] The Appendix does not contain the initial motion to dismiss or the Howes' response.

349-50. US Bank and Wells Fargo filed a supplemental brief on January 21, 2014 (Apx. 182-199), to which the Howes responded on February 5, 2014. Apx. 200-06.

In an oral ruling on March 4, 2014, the Bankruptcy Court granted the motions to dismiss. Apx. 207-33; *see also* ECF 1-32. Judge Gordon dismissed Count I (Fraud Upon the Court), with prejudice, and dismissed the remaining counts, without prejudice, and with leave to amend or to file a claim objection by May 3, 2014. Apx. 223-230. Plaintiffs did not amend or object by that date. Instead, on May 5, 2014, they moved for reconsideration of the oral ruling. Apx. 238-49. On May 12, 2014, the Bankruptcy Court entered an "Order Dismissing Complaint For Failure To State A Claim," memorializing its oral ruling ("MTD Order"). Apx. 285-87. Plaintiffs then moved to reconsider the MTD Order. Apx. 294-96.

After briefing on the motions to reconsider, the Bankruptcy Court heard argument on July 16, 2014 (Apx. 352), and orally denied the motions to reconsider. Apx. 361, 367. And, it extended until July 23, 2014, appellants' time to amend or file a claim objection. *Id.* at 367. On July 22, 2014, the Bankruptcy Court entered an Order embodying its oral ruling. Apx. 297-98. Plaintiffs did not amend or object. Instead, they noted this appeal on August 5, 2014. *See* ECF 38 in Adv. Proc. No. 13-510; ECF 1. Specifically, the Howes have appealed both the MTD Order of May 12, 2014 (Apx. 238-49), and the Reconsideration Order of July 22, 2014. Apx. 297-98.

The appeal was transmitted to this Court on September 4, 2014. ECF 1. Plaintiffs filed their initial brief on September 29, 2014. Two days later, on October 1, 2014, plaintiffs filed an amended brief (ECF 8), without explanation. Then, on October 5, 2014, with leave of Court (ECF 14), plaintiffs filed the 417-page Appendix (ECF 9), which apparently included several documents not previously designated by plaintiffs. *See* ECF 1, ECF 2, ECF 4.

Wells Fargo, US Bank, Carrington, and Christiana did not object to the submission of the Appendix. Indeed, all parties cite to it. Nor did they object to the inclusion of documents not previously designated in the record, or to plaintiffs' submission of the initial amended brief.

Wells Fargo and US Bank submitted their brief on October 13, 2014. ECF 11 ("Wells Fargo Brief"). On October 16, 2014, Carrington and Christiana submitted their brief. ECF 15 ("Christiana Brief"). As noted, Selene joined the Christiana Brief. *Id.* Plaintiffs submitted their reply on October 30, 2014. ECF 18 ("Reply"). On that same date, without explanation, plaintiffs filed a "Second Amended Brief," *i.e.*, their third brief (ECF 19), without leave of court or a redlined version.

On October 31, 2014, pursuant to Fed. R. Bankr. P. 8009(a), US Bank and Wells Fargo filed a motion to strike the Second Amended Brief. ECF 20, Motion to Strike. Plaintiffs opposed the Motion to Strike, and it remains pending. ECF 22 ("Opposition to Motion to Strike"). No hearing is necessary to resolve it. *See* Local Rule 105.6.

On November 5, 2014, *i.e.*, after the appeal was filed, the Bankruptcy Court issued a "Memorandum Opinion In Support of Orders Dismissing Complaint And Denying Motions To Reconsider." ECF 51 in Adv. Proc. No. 13-510.[10]

On December 2, 2014, plaintiffs asked the Bankruptcy Court to stay the bankruptcy proceeding. ECF 25-2. The Bankruptcy Court denied the request on December 9, 2014. Bankruptcy Docket, ECF 142. Plaintiffs then filed in this Court an "Emergency Motion to Stay Plan Confirmation Pending Appeal." ECF 23 ¶ 6 ("Motion to Stay"). Pursuant to the Court's

---

[10] Judge Gordon relied on *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991), as authority to issue a post-appeal Memorandum Opinion. ECF 51 at 3-4 in Adv. Proc. No. 13-510. There, the Fourth Circuit stated that a district court "had jurisdiction" to issue a "written order simply memorializ[ing] the district court's oral ruling," issued before the appeal was filed. 947 F.2d at 1190. The Fourth Circuit observed, *id.*: "It aids the appeal by giving [the appellate court] a written order to review."

6

request (ECF 24), appellees responded and opposed the stay. *See* ECF 25 (Christiana and Carrington); ECF 26 (Wells Fargo, US Bank). In addition, the Chapter 13 Trustee filed a response in opposition. ECF 28. By Order dated December 16, 2014 (ECF 29), I granted the Motion to Stay (ECF 23), subject to the posting of a security bond by plaintiffs.[11]

## II.    Factual Background[12]

### A.  The Note and the Trust

On November 30, 2001, the Howes executed a "Construction Note" payable to the order of The Columbia Bank[13] (Apx. 26, Complaint ¶ 15), in the amount of $696,130.00. Apx. 58, Note. As security for the Note, the Howes also executed a Deed of Trust, conveying their interest in real property to the Trustee for The Columbia Bank. Apx. 26, Complaint ¶ 15; Apx. 67, Declaration of Substitution of Trustees by Wells Fargo, N.A., dated October 28, 2011 ("Declaration of Substitution of Trustees" or "Dec. of Sub. Trustees"). The property that is the subject of the Deed of Trust is located in Howard County, Maryland and serves as the principal residence of the Howes (the "Property"). Apx. 26, Complaint ¶ 16; Apx. 58, Note.

The Note was amended by a Loan Modification Agreement dated April 16, 2003, recorded in the Land Records of Howard County. *See* Apx. 98-105, Loan Modification Agreement. The Loan Modification Agreement, which reflects a loan balance of $650,000.00, reduced the interest rate from a floating rate of 6% -11% to a fixed rate of 5.75%. *Id.* According to its terms, plaintiffs had a monthly payment of principal and interest of $3,793.22. *Id.* With

---

[11] On June 3, 2015, the Howes noted an appeal to this Court challenging the Bankruptcy Court's Order of March 9, 2015, concerning the security bond pending appeal. *Howes v. Wells Fargo Bank, N.A.*, No. ELH-15-617. The appeal has not yet been fully briefed.

[12] Given the posture of the case, the facts are drawn largely from the Complaint, as well as exhibits attached to it. Apx. 22-76.

[13] The initial lender, The Columbia Bank, is not a party to the adversary proceeding.

additional amounts escrowed for taxes and insurance, the Howes owed a total mortgage payment of about $4,500 per month. *See* ECF 11, Wells Fargo Brief at 10 n.5.

The Note was eventually pooled with several other notes in a residential mortgage-backed securitization trust, although the precise date is not entirely clear. The trust was titled "Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" ("Trust" or "WFASC 2003-4"). Apx 32-33, Complaint ¶¶ 42-43.[14] The Complaint does not provide a chronological trail of the assignments reflecting when or to whom The Columbia Bank sold the Note or how the Trust acquired it, although assignments were submitted to the Bankruptcy Court by Wells Fargo and US Bank.[15]

---

[14] The Maryland Court of Appeals explained in *Anderson v. Burson*, 424 Md. 232, 237, 35 A.3d 452, 455 (2011):

> Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1367 (2010). The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle,"[ ] usually in the form of a trust, and sells the income rights to other investors. *Id.* A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors. *Id.*

[15] The Christiana Brief sets forth the history of assignments, but without any citations to the record. *See* ECF 15 at 4-5. With the motion to dismiss filed by Wells Fargo and US Bank, defendants submitted as exhibits various assignments and asserted, Apx. 79 n.4, Wells Fargo MTD:

> According to the Land Records of Howard County, the Columbia Bank assigned the Deed of Trust on the Property, together with the Note and all money due thereunder ("Security Instrument") to Wells Fargo Home Mortgage, Inc. on April 16, 2003. [Liber 07153, folio 099]. On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union National Bank, as Trustee. [Liber 9083, folio 417]. Then, on July 20, 2011, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National Association, as Trustee, successor

In any event, the Howes claim that, unknown to them, the Note "was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012 . . . ." Apx. 33, Complaint ¶ 43. This occurred before US Bank, as "'Trustee for WFASC 2003-4,'" and Wells Fargo, as "'Loan Servicer'" and agent of US Bank (Apx. 31, Complaint ¶ 36), initiated a second foreclosure case against the Howes on February 21, 2012.[16]  *Id.; see Dore, et al. vs. Howes, et al.* ("Second Foreclosure Case"), No. 13C12089855. According to the Howes, upon the Trust's termination, US Bank, as trustee, and Wells Fargo, as servicer, had no right to enforce the Note. In other words, the Howes contend that US Bank and Wells Fargo were precluded from collecting payments on the Note, assigning the Note or Mortgage, or foreclosing on the Property pursuant to the Note. *See, e.g.*, Apx. 32, 36, 39, Complaint ¶¶ 41, 54, 55, 67.

In support of their contention that "[t]he Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012 . . . ." (Apx. 33, Complaint ¶ 43), the Howes rely, *inter alia*, on three documents appended to their Complaint. The first document is a "Certificateholder Distribution Summary" for the Trust dated January 20, 2012 ("Distribution Summary"), which purportedly shows the distribution of the Trust's assets to certificateholders upon termination. Apx. 62. The Distribution Summary indicates that upon distribution the Trust's "Ending Certificate Balance" was zero. *Id.* The second document is a "Collateral Statement" for the Trust, dated January 20, 2012. Apx. 63. It lists the total "Beginning Loan Count" of the Trust as 127, the "Loans Paid in Full" as 127, and

---

in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust") [Liber 13351, Folio 169]. . . .

[16] As discussed, *infra*, the first foreclosure case against the Howes was initiated on January 20, 2010, and was voluntarily dismissed on January 3, 2011. Apx. 31, Complaint ¶ 36.

9

the "Ending Loan Count" as zero. *Id.* The Howes argue that this demonstrates that upon termination of the Trust, all loans were "Paid in Full" and their "Mortgage was paid off on January 1, 2012. . . ." Apx. 33, Complaint ¶ 43; *see* Apx. 63, Collateral Statement. The third document is an undated chart of "Loan Level Data" for a loan numbered 0127973402, held by the Trust. Apx. 64. The chart lists the original balance for the loan as $650,000, but denotes the current loan status as "Paid Off."[17] *Id.* The "PrepaymentDate [sic]" of the loan is listed as January 1, 2012. *Id.* According to the Complaint, the data demonstrates that "the Mortgage [at issue] was paid off on January 1, 2012 . . . ." Apx. 33, Complaint ¶ 43.

### B. Default; First Foreclosure Case

On April 2, 2009, after experiencing "a decline in their income in 2008," the Howes defaulted on the Note. Apx. 26, Complaint ¶ 17. By June 2009, they were more than sixty days delinquent on payments due under the Note. *Id.* The Howes continued to submit partial payments through August 31, 2009, "until they discovered that they were receiving no benefit from their payments, since Wells Fargo[, as servicer of the Note,] was holding their partial payments in suspense and not applying them to their account despite aggregating more than a regular payment." Apx. 26-27, Complaint ¶ 17. They made no further mortgage payments until May 2013, and June 2013, both of which were returned. Apx. 38, Complaint ¶ 59.

The Howes attempted to obtain a modification of their loan from Wells Fargo. Apx. 27-31, Complaint ¶¶ 18-34. The Complaint details various extensive efforts by the Howes to negotiate with Wells Fargo, in order to make their monthly payments "more affordable . . . ." Apx. 28, Complaint ¶ 23. For instance, in July 2009 the Howes contacted Wells Fargo to

---

[17] The Complaint does not establish that the loan number of the Loan at issue is indeed 0127973402. However, defendants do not contend that the Loan Level Data attached to the Complaint pertains to the wrong loan.

10

determine their eligibility "for a mortgage modification under the U.S. Treasury's Home Affordable Modification Program" ("HAMP"). Apx. 27, Complaint ¶ 18. The Howes completed a HAMP application on August 18, 2009. *Id.* Despite "over 100 communications with Wells Fargo" (Apx. 27, Complaint ¶ 19), efforts to secure a modification proved fruitless. Wells Fargo rejected the Howes' HAMP application on July 19, 2010. Apx. 27, 30, Complaint ¶¶ 20, 30.

On October 6, 2010, Wells Fargo offered plaintiffs a "Special Forbearance Agreement" that would temporarily reduce their mortgage payments and reduce their interest rate. Apx. 27-28, Complaint ¶ 22. The Howes timely made all three trial payments. Apx. 28, Complaint ¶ 22. Wells Fargo then offered a "Secondary Modification Agreement," *id.*, but it required an immediate payment of $24,683.61 and a balloon payment of $58,766.56 at maturity. *Id.*[18] Moreover, the proposed interest rate exceeded the market rate. *Id.* Plaintiffs rejected Wells Fargo's proposal but made a counter offer to cure their default "in exchange for a new fixed rate mortgage at the current market average rate . . . ." Apx. 28, Complaint ¶ 23. Wells Fargo rejected the counter offer. *Id.*

In the meantime, on January 20, 2010, US Bank, "as principal," and Wells Fargo, as "agent" of US Bank, "caused" the first foreclosure case "to be filed against the Howes," in the Circuit Court for Howard County, captioned *Dore, et al. v. Howes, et al.*, Case No. 13C10080927 ("First Foreclosure Case"). Apx. 31, Complaint ¶ 36. Wells Fargo and US Bank

---

[18] In their brief, Wells Fargo and US Bank state, ECF 11 at 10 n.5:

> Accordingly, having made no mortgage payments since August 31, 2009, Appellants were more than 11 months in arrears, or approximately $50,000.00 delinquent. The upfront cash payment [of $24,683.61] that Wells Fargo proposed was less than half the amount then due.

11

were represented by Covahey, Boozer, Devan & Dore, P.A ("CBD&D"). Apx. 31, Complaint ¶ 37.

The Howes complain that, with respect to the First Foreclosure Case, US Bank "caused" several "false affidavits" to be filed. Apx. 50, Complaint ¶ 130. In particular, the Howes call into question several affidavits dated December 31, 2009, which were allegedly "signed by notorious robo signer Herman John Kennerty . . . ." Apx. 32, Complaint ¶ 39 (collectively, the "Kennerty Affidavits"). They include the following affidavits, *id.*:

> (a) Affidavit Pursuant to [Md. Code (2003 Repl. Vol.[19]), §] 7-105.1(d) [of the Real Property Article ("R.P.")][20] and [Maryland Rule] 14-207(b)(3),[21] regarding ownership of the debt instrument, (b) Non-Military Service Affidavit, allegedly notarized, and (c) Affidavit Pursuant to [R.P. §] 7-

---

[19] Generally, I cite to the current version of the Maryland Code. But, on occasion, I cite to the version in effect during the Howes' foreclosure cases. Unless otherwise indicated, the version of the Maryland Code in effect during the Howes' foreclosure cases does not differ in any material way from the current version of the Maryland Code.

[20] In Maryland, "[a] foreclosure plaintiff commences an action to foreclose a deed of trust, which contains a power of sale provision, by filing an order to docket." *Anderson, supra,* 424 Md. at 236 n.6, 35 A.3d at 455; *see* Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(d). In particular, Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(d)(1), referenced by several of the Kennerty Affidavits and titled *"Order to docket or complaint to foreclose,"* set forth what the order to docket initiating a foreclosure action had to include. The Real Property Article has since been revised. In Md. Code (2010 Repl. Vol., 2014 Supp.), the *"Order to docket or complaint to foreclose"* provision is now found at R.P. §7-105.1(e).

[21] Title 14 of the Maryland Rules refers to "Sales of Property." Chapter 200 of Title 14 is called "Foreclosure of Lien Instruments." Rule 14-207(b) sets forth the exhibits that must be submitted with an order to docket, including, among other things "(1) a copy of the lien instrument supported by an affidavit that it is a true and accurate copy, or, in an action to foreclose a statutory lien, a copy of a notice of the existence of the lien supported by an affidavit that it is a true and accurate copy; (2) an affidavit by the secured party, the plaintiff, or the agent or attorney of either that the plaintiff has the right to foreclose and a statement of the debt remaining due and payable[.]"

105.1(c),[22] regarding a [Notice of Intent to Foreclose], default, and right to
foreclose . . . .

The Howes allege: "None of the Kennerty Affidavits are based on any investigation by
Mr. Kennerty, other than to ensure they were properly dated, and they are therefore devoid of his
personal knowledge of the other facts stated therein." Apx. 32, Complaint ¶ 39.  According to
plaintiffs, Kennerty testified under oath on May 20, 2010, that he signs '"50 to 150 documents
per day . . . ."' Id. Kennerty also testified that he '"simply sign[ed] the document that's
presented"' to him and '"just [made] sure that the date is correct."' Id.

The Howes also challenge a second set of documents submitted in the First Foreclosure
Case.  These are a series of affidavits purportedly signed by Thomas P. Dore, Esq. of CBD&D,
dated January 19, 2010 (collectively, the "Dore Affidavits").  Apx. 32, Complaint ¶ 38.  The
Dore affidavits are described in the Complaint as follows: "(a) Affidavit Pursuant to 7-105.1(d)
and 14-207(b)(1) regarding the lien instrument, (b) Affidavit Pursuant to 14-207(b)(4) regarding
the Declaration of Substitution of Trustees, (c) Affidavit Pursuant to 7-105.9(B)(1) regarding
notice to all occupants, and (d) a Statement of Debt allegedly notarized by Alysha Currie . . . ."
Id.  In particular, plaintiffs assert:  "Upon information and belief, Mr. Dore did not sign the Dore
Affidavits, nor was the Statement of Debt signed by him in the presence of Alysha Currie." Id.

According to the Howes, the First Foreclosure Case was "voluntarily dismissed" by the

---

[22] Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(c)(1), referenced in one of the Kennerty
Affidavits, provided:

> Except as provided in subsection (b)(2)(iii) of this section, at least 45 days
> before the filing of an action to foreclose a mortgage or deed of trust on
> residential property, the secured party shall send a written notice of intent to
> foreclose to the mortgagor or grantor and the record owner.

13

foreclosure plaintiffs on January 3, 2011 (Apx. 31, Complaint ¶ 36), "due to the defective Dore and Kennerty Affidavits." Apx. 32, Complaint ¶ 40.

### C. Second Foreclosure Case

On February 21, 2012 (Apx. 29, Complaint ¶ 26), US Bank, as "principal," and Wells Fargo, as its "agent . . . caused" the filing of the Second Foreclosure Case against the Howes, also in the Circuit Court for Howard County. Apx. 31, Complaint ¶ 36. According to the Howes, when the Second Foreclosure Case was filed, neither US Bank nor Wells Fargo had the right to enforce the Note on behalf of the Trust, because the Trust had been terminated. *See, e.g.,* Apx. 32, Complaint ¶ 41. Given that the Trust "ceased to exist[ ]," plaintiffs maintain that the Second Foreclosure Case constituted "a fraud on the Howes and on the Circuit Court for Howard County," because US Bank and Wells Fargo falsely represented that they had "standing" (Apx. 32, Complaint ¶ 41) to enforce the Note on behalf of the Trust. Apx. 29, Complaint ¶ 26; *see also* Apx 38, Complaint ¶ 67. Moreover, because the Trust had already been terminated, the Howes claim that all documents filed in the case constituted misrepresentations.

In particular, the Howes allege: "US Bank caused at least four false affidavits to be filed in the Second Foreclosure Case . . . ." Apx. 51, Complaint ¶ 132. According to the Howes, in these documents US Bank "falsely claim to be the owner of the Note" and also "sought to hide the Trust termination from the Howes . . . ." Apx. 51, Complaint ¶ 131. In their Complaint, the Howes described the four documents, as follows.

The first document (Doc. No. 5 in the Second Foreclosure Case) is an "Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith," dated January 18, 2012, which was "allegedly" signed by Alisha M. Allen, Vice President of Loan Documentation for Wells Fargo Home Mortgage, Inc., as servicer for the subject mortgage

14

("Allen Affidavit"). Apx. 33, Complaint ¶ 42. The Allen Affidavit identified "'US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for [the Trust], Series 2003-4.'" *Id.* And, the Allen Affidavit also identified the Trust as the "'owner and holder of the loan evidenced by the Note,'" *id.*, although the Trust no longer existed.

A purported copy of the Note is attached to the Allen Affidavit. Apx. 33, Complaint ¶ 44. According to the Complaint, the Note contains the following "endorsements": "(A) Pay to the order of Wells Fargo Home Mortgage, Inc., by Michael Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated May 29, 2003, by Beverly Cro[ckett], Assistant Secretary of Wells Fargo Home Mortgage, Inc."[23] Apx. 33, Complaint ¶ 44 (alteration in the Complaint).

An allonge dated November 21, 2009, is also attached to the Allen Affidavit ("Allonge").[24] Apx. 33, Complaint ¶ 45. The Allonge identified "'Wachovia Bank, National Association ["Wachovia"], as Trustee under a pooling and servicing agreement dated as of May 29, 2003 . . . .'" *Id.*[25] Pursuant to the Allonge, Wachovia, as the "present holder" of the Note, "'hereby assigns all of [Wachovia's] rights, title and interest in said Note to US Bank National

---

[23] Throughout the record, the last name is spelled "Cro[ckett]," with the brackets included.

[24] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Anderson*, 424 Md. at 240 n.10, 35 A.3d at 457 n.10 (quoting BLACK'S LAW DICTIONARY 88 (9th ed. 2004)). Pursuant to Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 3-204(a), any document "affixed" to a note, such as an allonge, is considered part of the note.

[25] The pooling and service agreement is not part of the Appendix.

Association, as Trustee for WFASC 2003-4[.]"' Apx. 34, Complaint ¶ 45. The Allonge further provided: "'Pay to the Order of US Bank National Association, as Trustee for WFASC 2003-4 (Without recourse, representation, or warranty express or implied)' and is allegedly signed by Karan Abernethy as Vice President of Wachovia." Apx. 33-34, Complaint ¶ 45. In a nutshell, the Allonge purported to show a transfer of the Note from Wachovia, as present holder, to US Bank, as Trustee for the Trust. Again, in plaintiffs' view, the Allen Affidavit and the Allonge are fraudulent because they omitted any indication that the Trust had been terminated.

The second document (Doc. No. 7 in the Second Foreclosure Case) is the "Affidavit Pursuant to [Maryland Rule] 14-207(b)(4)," dated February 17, 2012, signed by Shannon Menapace[26] as a "SUBSTITUTED TRUSTEE in the subject case" ("Menapace Affidavit"). Apx. 66. Ms. Menapace certified that a "true and accurate" copy of the Declaration of Substitution of Trustees is attached to the Menapace Affidavit. *Id.*

The Declaration of Substitution of Trustees dated October 28, 2011, was allegedly executed by Wells Fargo as "Attorney-in-fact for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for [the Trust] . . . ." Apx. 67, Dec. of Sub. Trustees. The Declaration purported to substitute "Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace, and Erin Gloth, as Substituted Trustees [for the Trust,] in the place and stead of Michael T. Galeone and Matthew T. Becker . . . ." *Id.*; *see also* Apx. 34, Complaint ¶ 46.[27] Again, in plaintiffs' view, the submission was misleading

---

[26] In the Complaint, appellants spell the affiant's name as "Mennapace." I have used the spelling as it appears in the Affidavit. Apx. 66.

[27] The appointment or replacement of a substitute trustee does not convey an interest in the subject property. The Maryland Court of Special Appeals explained in *Svrcek v. Rosenberg*, 203 Md. App. 705, 729, 40 A.3d 494, 509 (2012) (internal quotations omitted) (emphasis in *Svrcek*):

16

because the Trust no longer existed.

Plaintiffs also challenge as fraudulent in the Second Foreclosure Case the "Affidavit of Date and Nature of Default and Mailing of Notice of Intent to Foreclose" ("NIF Affidavit," Doc. No. 11 in the Second Foreclosure Case). Apx. 69-76; *see also* Apx. 34, Complaint ¶ 47. It was purportedly executed on January 12, 2012, by Erinn T. Rochelle as Vice President of Loan Documentation for Wells Fargo. Apx. 69. The NIF Affidavit identified Wells Fargo as servicer for the Trust, but omitted that the Trust had been terminated. *Id.* Attached to the NIF Affidavit is a Notice of Intent to Foreclose on the Property, dated May 10, 2011. Apx. 34, Complaint ¶ 47; Apx. 69, NIF Affidavit; Apx. 75, Notice of Intent to Foreclose.

In addition, the Howes challenge Document No. 15 in the Second Foreclosure Case, titled "Final Loss Mitigation Affidavit," dated February 15, 2012, and purportedly executed by Daryl J. Rollins, Vice President of Loan Documentation. Apx. 34, Complaint ¶ 48.[28] Rollins averred that he was "'authorized to act on behalf of the secured party who is the holder of the beneficial interest in the mortgage or deed of trust.'" *Id.* (quoting the Final Loss Mitigation Affidavit).

According to the Complaint, on April 30, 2012, an Order was entered in the Second Foreclosure Case (Doc. No. 21) stating: "'It is determined that the service of the Order to

---

[An a]ppointment of substitute trustees . . . merely serves to appoint new trustees to exercise the lender's power under the deed of trust to foreclose the right of redemption, subject to the mortgagor's equitable right to redeem the property prior to the sale . . . .*Without conveyance of the Property,* the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law. . . . The substitution of trustees merely designated new individuals as having the right to enforce the deed of trust . . . . [T]he deed of appointment of substitute trustees merely authorized the trustees to foreclose the right of redemption and exercise the power of sale . . . .

[28] The Complaint fails to specify Rollins' employer.

17

Docket[29] and related documents was deficient. If plaintiff does not demonstrate to the Court

within 30 days of entry of this Order . . . that the deficiency has been cured . . . then the Court

will dismiss the action without prejudice[.]'" Apx. 35, Complaint ¶ 49 (quoting Order)

(alteration in Complaint). The Howes allege that the foreclosure plaintiffs did not file a response

within the time allowed, and the case was stayed as a result of the underlying bankruptcy case.

*Id.* To my knowledge, the Second Foreclosure Case is pending. Apx. 31, Complaint ¶ 36.

### D. Bankruptcy

In June 2012, the Howes attempted to secure "an equitable, long-term modification" of

their mortgage from Wells Fargo. Apx. 29-30, Complaint ¶ 28. Their efforts were unsuccessful.

In August 2012, Wells Fargo rejected the Howes' second HAMP application. Apx. 30,

Complaint ¶ 30.

On November 15, 2012, Mr. Howes filed a voluntary petition for bankruptcy under

Chapter 13 of the United States Bankruptcy Code (Apx. 35, Complaint ¶ 50), in order to prevent

the foreclosure sale of the Howes' residence, scheduled for November 16, 2012. ECF 19 at 3, 17

n.2, Second Amended Brief.[30] On December 13, 2012, Mr. Howes, as Debtor, filed his "Chapter

13 Plan" ("Plan") to pay $35,662.00 in pre-petition mortgage arrears, while making post-petition

payments directly to Wells Fargo. *Id.* According to the Complaint, in the Plan and in Schedule

D of the bankruptcy petition, Debtor indicated that "[t]he amount owed, the ownership of the

Note, and the secured status of the alleged owner and holder of the Note" were "'disputed.'" *Id.*

---

[29] *See* note 20, *supra*, for an explanation of an "order to docket."

[30] The Complaint itself does not state that the Howes filed for bankruptcy to prevent the
foreclosure sale, nor does it indicate that the foreclosure sale was scheduled for November 16,
2012. *See* ECF 19 at 3, 17 n.2. In the Second Amended Brief, the Howes indicate that "they
will seek leave to supplement the record by adding" a statement of financial affairs that specifies
the date of the foreclosure sale. *Id.*

Wells Fargo filed an "Objection to Confirmation of Plan" ("Plan Objection") in the bankruptcy case on January 9, 2013. There, Wells Fargo identified itself as "'Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4.'" Apx. 35-36, Complaint ¶ 52 (quoting Plan Objection).

On March 8, 2013, US Bank filed a claim in the bankruptcy case designated as "Claim No. 4" ("Claim"), in the amount of $740,334.24, of which $200,196.79 was claimed as pre-petition arrearages. Apx. 36, Complaint ¶ 53. US Bank was listed on the Claim as the "creditor," with notices regarding the Claim to be sent to Wells Fargo. *Id.* The Claim was signed by Brian McNair, Esquire on January 2, 2013; he is listed as an attorney with the law firm of CBD&D. *Id.* But, no supporting documentation was attached to the Claim. *Id.* According to the Howes, the lack of such documentation demonstrated that there was "no evidence of perfection" and no "breakdown of the claimed arrearage." *Id.*

Wells Fargo filed an amended claim on March 15, 2013, designated "Claim 4-2" ("Amended Claim"), which identified Wells Fargo as the creditor, instead of US Bank. Apx. 36, Complaint ¶ 54. Pursuant to Fed. R. Bankr. P. 3001(c)(2),[31] Wells Fargo submitted with the Amended Claim an undated form "Mortgage Proof of Claim Attachment"; an "Escrow and Account Disclosure Statement" dated November 21, 2012; the Deed of Trust, and purportedly indorsed copies of the Note and Allonge. *Id.* Plaintiffs allege: "No evidence of Wells Fargo's standing to file the Amended Claim was attached." *Id.*

---

[31] Fed. R. Bankr. P. 3001 is entitled "Proof of Claim." Of relevance here, Rule 3001(c)(2)(A) provides: "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."

On April 2, 2013, in the bankruptcy case, Mr. Howes, as Debtor, filed an objection to Wells Fargo's Amended Claim ("Claim Objection"), challenging Wells Fargo's "standing" to file the claim. Apx. 36, Complaint ¶ 55. Debtor also argued that the claim amount was excessive because not all mortgage payments made by the Howes were adequately credited. *Id.* In addition, Debtor contended that the "inspection fees [in the Amended Claim] disguised as broker's price opinion fees" were "unlawful." *Id.*

In the meantime, the Amended Claim was transferred to Christiana. Apx. 37, Complaint ¶ 56. As previously indicated, Christiana is a division of WSFS, trustee for Stanwich Trust. Apx. 25, Complaint ¶ 12. At the time of the transfer, Carrington was designated as servicer of the Note on behalf of Christiana. Apx. 25, Complaint ¶ 11.

On May 29, 2013, Michael T. Cantrell, as agent for Carrington, filed in the bankruptcy case a notice of "*Transfer of Claim Other Than for Security* of the Amended Claim" ("Transfer Notice"). Apx. 37, Complaint ¶ 56 (italics in Complaint). There, Wells Fargo was listed as transferor, and Carrington was mistakenly listed as transferee of the Amended Claim. *Id.* As indicated, Carrington was not the owner of the Note; it was purportedly the servicer. Apx. 25, Complaint ¶ 12. Plaintiffs also challenge the Transfer Notice as defective because Carrington "failed to attach the required proof of transfer." Apx. 37, Complaint ¶ 56.

Mr. Cantrell, as agent for Christiana, attempted to correct the error on June 11, 2013, by filing an "*Amended Notice of Transfer of Claim Other Than for Security* of the Amended Claim" ("Amended Transfer Notice"). Apx. 37, Complaint ¶ 57 (italics in Complaint). The Amended Transfer Notice listed Christiana as the transferee, instead of Carrington. *Id.* According to the Complaint, Christiana "failed to attach the required proof of transfer." *Id.*

In the Complaint, the Howes contend that they "received no notice of transfer of their

Note or the right to service their Mortgage from Wells Fargo." Apx. 38, Complaint ¶ 60. Further, they alleged that they "received no communication from Defendants [Carrington] or [Christiana] regarding their interest in the Howes' Mortgage other than the notices filed in the Bankruptcy Case."[32] Apx. 38, Complaint ¶ 61.

In the meantime, "[o]n or about May 2, 2013, and June 13, 2013, Defendant Wells Fargo rejected and returned Debtor's post-petition mortgage payments in the amount of $4,835.64 each."[33] Apx. 38, Complaint ¶ 59.

On June 17, 2013, the Bankruptcy Court held a hearing on the Claim Objection. Apx. 37, Complaint ¶ 55. Debtor was present, but no adversary defendants appeared. *Id.* ¶ 58. According to the Complaint, the Bankruptcy Court denied the relief requested in the Claim Objection because the claim transferees had not been served. Apx. 36-37, Complaint ¶ 58. Therefore, the Bankruptcy Court "instructed Debtor to serve the Amended Claim transferees either by supplemental service, amended objection, or, in view of all the transfers, by initiating an adversary proceeding incorporating the claim objection to determine the party entitled to enforce the Note." *Id.*

### E. Adversary Proceeding

On September 3, 2013, the Howes initiated the adversary proceeding. In their 34-page Complaint, they challenged defendants' right to enforce the Note. Several of their contentions have already been recounted. The Howes asserted, *inter alia*, that they "do not know the identity

---

[32] As noted, Selene has since replaced Carrington as servicer of the Note, on behalf of Christiana. ECF 15 ¶ 13, Christiana Brief.

[33] According to Wells Fargo and US Bank, the payments were returned because the Howes had sought Chapter 13 relief. Apx. 79, Wells Fargo MTD ¶ 3 n.3.

21

of the rightful owner of the Note." Apx. 38, Complaint ¶ 62.[34]  They also alleged that none of the

defendants "are in possession of the Note."  *Id.* ¶ 63.  And, they asserted, Apx. 39, Complaint ¶

67:

> Wells Fargo filed its Amended Claim as creditor with the intent to defraud this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees. Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination . . . . Wells Fargo failed to disclose Trust termination in the Amended Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed, contained numerous false and fraudulent affidavits regarding standing to foreclose . . . and the fact that the Trust lacked standing to file the Claim.

On January 6, 2014, the Bankruptcy Court held a hearing on the defendants' motions to

dismiss.  The following colloquy ensued between Judge Gordon and counsel for the Howes,

Apx. 342-45:

| | |
|---|---|
| THE COURT: | Why don't you tell me what the fraud is [as to Count I]? |
| MR. HAEGER: | The main fraud is trying to hide the fact that there was no standing to file the foreclosure case. |
| THE COURT: | How did your clients rely on that?  And have they been damaged by it? |
| MR. HAEGER: | Well the fraud is alleged in connection with fraud on the Court. |
| THE COURT: | No, you say on the debtors, that is what your complaint says.  You say well it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you . . . . |
| MR. HAEGER: | Well, that is separate – that is correct.  That is separate – |
| THE COURT: | . . . . So, what is the fraud? |
| MR. HAEGER: | So, I would say that there are two areas.  The first area and |

---

[34] The adversary defendants agree that Christiana is the secured creditor of the Note. ECF 15 at 6, Christiana Brief ¶ 13; ECF 11 at 7 n.1, Wells Fargo Brief.

the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT:      Because the trust terminated?

MR. HAEGER:     That is correct, Your Honor.

THE COURT:      So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER:     The Plaintiffs would love to know.

THE COURT:      That is not an answer.  As a lawyer, what happened to it?

MR. HAEGER:     Well, as a lawyer –

THE COURT:      What would be the law in that circumstance?

MR. HAEGER:     As I set forth in my response the loan was transferred out of the trust before the trust terminated.

***

THE COURT:      So, you are saying that they are trying to -- Wells Fargo intentionally misrepresented their status because the trust was terminated?

MR. HAEGER:     That is right.

THE COURT:      And what were they gaining from that, [c]overing up the $2,000 in foreclosure fees?

MR. HAEGER:     I have seen people do strange things.  And –

THE COURT:      No, you are the Plaintiff.  What were they gaining from that?  Why did they conduct – why did they commit the fraud, per your allegation?

MR. HAEGER:     The main motivation would be to preserve the foreclosure, the fact that they filed the foreclosure case that it was a rightful foreclosure when it wasn't, and to preserve the fees they sought to collect as a result of that.  You look at their behavior and you scratch your head.  What is going on here.  Why are they doing what they are doing?

23

THE COURT:              That doesn't make it fraud.  Fraud is serious.  Fraud
                       allegations [are] serious business.

At the conclusion of the hearing, Judge Gordon indicated that he wanted to "take a close

look at the legal authorities" involved in this case.   Apx. 347.  He also permitted the parties to

submit supplemental briefing on the significance of the Trust's termination. Apx. 349-50.[35]

The Bankruptcy Court reconvened for a second hearing in the adversary proceeding on

March 4, 2014.  At that hearing, Judge Gordon granted the motions to dismiss.  He explained,

Apx. 213-14:

> I will note here that while the Debtor alleges that the particular securitization trust
> complained of was terminated, and that is basically the operative fact that forms

---

[35] On January 27, 2014, Judge Gordon held a hearing in the Bankruptcy case on other
matters.  In his Memorandum Opinion of November 5, 2014, Judge Gordon noted that, at that
hearing, Mr. Howes admitted that he was in default on the Note and that he had not paid the
mortgage for many years.  See ECF 51 at 23 in Adv. Proc. No. 13-510.  The hearing transcript is
filed in the bankruptcy case at ECF 130, Bankr. Case No. 12-30614.  This Court may take
judicial notice of the court transcript. *See Goldfarb v. Mayor & City Council of Baltimore*, 791
F.3d 500, 508 (4th Cir. 2015) (internal quotations omitted).

Of particular relevance, Mr. Howes testified as follows, ECF 51 at 22-23 in Adv. Proc.
No. 13-510, Memorandum Opinion of November 5, 2014 (quoting hearing transcript):

THE COURT: … In other words, you're not claiming that you don't owe the
money, right? Or are you?

THE WITNESS: No, I am not claiming that I do not owe my mortgage, Your
Honor.

* * *

THE COURT: So you don't believe that any of the defendants that you're (sic)
sued should receive payments for the mortgage?

THE WITNESS: That is correct, Your Honor.

THE COURT: But you believe you do owe money to someone.

THE WITNESS: That is correct, Your Honor.

the basis of much of what is alleged in the complaint after that allegation in terms of wrongdoing by the Defendants, the reason the trust seems to have "terminated" is because all of the loans, including this one, were paid in full. I mean, that is what the complaint says.

But we know that that is not true by the Debtor's own admission. So fundamentally the complaint takes us into an unreal world, one where the Debtor has to know and realize that the operative fact that he relied upon to suggest that his mortgage is now floating in space without ownership, or at least that he "doesn't know who the owner is," is false in the operative fact. I mean, the payment in full is what it takes to terminate the trust, or at least one thing, the one cited reason in the complaint. And that didn't happen here . . . .

The Bankruptcy Court added, Apx. 224-25:

The filing of an incorrect claim is not actionable unless there is a knowing and fraudulent filing. The Debtor's assertion simple [sic] assumes without explanation that the proof of claim, proofs of claim, were filed to claim fees to which the Defendants were not entitled because the trust terminated. But there is no explanation as to why trust termination would cut off the right to enforce the note. And that is the crucial problem with the complaint.

\*\*\*

What it comes down to is the allegation that this mortgage became a part of the securitization package, and that's not fair. And therefore, I, the Debtor, have been injured. That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud. Therefore, count one will be dismissed with prejudice.

The Bankruptcy Court determined that, under the circumstances of this case, "termination of the trust doesn't matter. The Debtor/Creditor relationship is unchanged. . . ." Apx. 215. Judge Gordon observed: "The Debtor's default does not turn the lenders into villains." Apx. 217-18. In his view, the termination of the Trust did not relieve the Howes of their obligations under the Note and Deed of Trust. Apx. 214-15, 223. Judge Gordon also regarded the fraud claim as defective because no cognizable injury resulted from the alleged failure to disclose that the Trust had been terminated. Apx. 223. He dismissed, with prejudice, the claim for Fraud Upon the Court (Count I). Apx. 225.

With respect to Count II, the Howes sought a "Determination of Scope, Extent and

25

Validity of Lien." Apx. 41, Complaint at 20. At the hearing on March 4, 2014, the Bankruptcy Court acknowledged the Note's complex transfer history and various blunders committed by those seeking to enforce the Note, which justified the Howes' request for clarification as to which party is the present holder of the Note. It placed the burden on the noteholder to present information establishing its entitlement to enforce the Note. Apx. 226. The Bankruptcy Court explained, *id.* (emphasis added):

> This is my ruling as to count two. There is confusion here created by the securitization process that has been exacerbated by bumbling. *Therefore, the present holder of the note will provide a detailed affidavit, under penalty of perjury, within 30 days of today confirming who owns and has a right to enforce the loan documents.* All relevant transactional documents will be identified and provided to the Debtor, if the Debtor requests them. In other words, we don't want this to turn into harassment. But under the circumstances, the Debtor probably does *have a right to at least know with certainty the basis for the present noteholder's claim to ownership to the note,* because of the sloppiness that has gone on historically in this case.

At the hearing on March 4, 2014, the Bankruptcy Court dismissed the remaining counts of the Complaint, without prejudice, and with leave to amend or to file a claim objection by May 3, 2014. Apx. 230. The Bankruptcy Court also directed the noteholder defendant to "provide a detailed affidavit, under penalty of perjury, within 30 days . . . confirming who owns and has a right to enforce the loan documents." Apx. 226.

On April 3, 2014, Carrington submitted an Affidavit Certifying Ownership Of Debt Instrument," signed by Elizabeth A. Ostermann, Vice President of Default and Attorney in Fact for Carrington, dated March 31, 2014 ("Ostermann Affidavit"). Apx. 236. Carrington is listed as the loan servicer for Christiana, trustee for the Stanwich Trust. *Id.* The Ostermann Affidavit purported to "[c]onfirm[ ] that Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 is the Owner of the Loan." Apx. 237 (underlining in original). Carrington also submitted a "Line" to the Bankruptcy Court

indicating: "A true and accurate copy of the documents listed in the Affidavit will be sent directly to counsel for the debtor . . . ." Apx. 234. The documents listed included the Note, Deed of Trust, a lost note affidavit, and five assignments of the Note. Apx. 237 ("Christiana Ownership Materials").[36]

The Bankruptcy Court memorialized its oral ruling of March 4, 2014 in a written order, entered on May 12, 2014, *i.e.* the MTD Order,. Apx. 285-87. In particular, the MTD Order provided for the following: (a) dismissal of Count I of the Complaint, with prejudice, for failure to state a claim; (b) dismissal of the remaining counts as to all defendants, without prejudice; (c) Carrington and Christiana were directed to submit an affidavit explaining their claim of ownership to the subject Note and mortgage; and (d) the Howes were directed to file an objection to the Amended Claim and/or an amended complaint by May 3, 2014, "or the Complaint shall be dismissed with prejudice." Apx. 286-287.

The Howes filed two motions to reconsider. The first motion was in response to the Bankruptcy Court's oral ruling issued on March 4, 2014. Apx. 238-49. The Howes filed a second motion to reconsider in response to the MTD Order of May 12, 2015. Apx. 294-96.

On July 16, 2014, the Bankruptcy Court heard oral argument on both motions to reconsider. Apx. 351. Judge Gordon acknowledged that, in his oral ruling on the motions to dismiss, he may have "over-focused" on the matter of Trust termination. Apx. 361. But, he noted that, whether or not the Trust was terminated, he was correct that the Complaint failed to state a claim for fraud, given the lack of "required specificity." *Id.* He reviewed the elements of a fraud claim (Apx. 361-62), and pointed to "sloppiness" in the proof of claim (Apx. 362), but said, Apx. 363: "If I were to find fraud every time a proof of claim was mistakenly filed, then it

---

[36] The Appendix does not include copies of the documents purportedly sent to counsel for Debtor to establish the basis for Christiana's interest in the Note.

would be a never ending process." In his view, termination of the Trust did not "wipe out the obligations of the Plaintiffs." *Id.* He added, *id.*: "And it doesn't give the Plaintiffs a cause of action for fraud." In addition, Judge Gordon found no allegations of a cognizable injury as a result of the purported misrepresentations. Apx. 363-67. Therefore, he orally denied the motions for reconsideration (Apx. 361-67) and allowed seven days for plaintiffs to amend the remaining claims or to file an objection to claim. Apx. 367.

The oral ruling was reduced to a written order, *i.e.*, the Reconsideration Order, entered on July 22, 2014. Apx. 297-98. The Reconsideration Order stated: "Because Count I of the Complaint fails to state a cognizable, good faith claim for fraud, the Order will not be reconsidered." Apx. 298. The Bankruptcy Court added: "[T]o the extent the [plaintiffs] may have legitimate claims that (a) one or more of the present defendant/claimants are not entitled to enforce the underlying loan documents or (b) the amount of debt asserted in [the Amended] Proof of Claim [ ] is incorrect, then those assertions must be raised through either an objection to claim or amended complaint." Apx. 298. Judge Gordon also granted plaintiffs until July 23, 2014, to file an amended complaint or objection to Amended Proof of Claim. *Id.* Instead, the Howes noted an appeal to this Court. *See* ECF 38 in Adv. Proc. No. 13-510; ECF 1.

On November 5, 2014, after the appeal was filed, the Bankruptcy Court issued a "Memorandum Opinion In Support Of Orders Dismissing Complaint And Denying Motions to Reconsider," in order to "aid the decisional process on appeal . . . ." ECF 51 in Adv. Proc. No. 13-510.[37] In its Memorandum Opinion, the Bankruptcy Court said, in part, *id.* at 17-18:

> Plaintiffs do not dispute that Wells Fargo had the right and power to
> enforce the Note and Mortgage for the many years they were in default and living

---

[37] As indicated in note 10, *supra*, Judge Gordon relied on *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991), to establish a basis for entering his Memorandum Opinion after the appeal had been noted. ECF 51 at 3-4 in Adv. Proc. No. 13-510.

28

in the Residence for free and then during the period when they attempted to negotiate a HAMP modification. But per the Plaintiffs' theory, the termination of the Securitized Trust brought about a fundamental sea change that permanently altered the landscape. . . . As "theories of the case" go, this is mind-bendingly obtuse. Perhaps purposefully so. Nevertheless, as a blueprint for a fraud claim it amounts to patent nonsense.

Judge Gordon continued, *id.* at 18-19 (emphasis in Memorandum Opinion):

> At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud.

> Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of claim, *because some other, identifiable true holder of the Note and DOT was entitled to do so*, yet filed the claims anyway in contravention of that holder's rights.[ ]   However, during argument Mr. Haeger could not (or would not) articulate what happened to the Note and DOT when the Securitized Trust terminated: did they revert to the original owner, were they magically transferred to some other entity or did they simply disappear into nothingness? This point is crucial because without a precise allegation as to the ultimate disposition of the Note and DOT that plausibly establishes that Wells Fargo knew or should have known that it had no enforcement rights -- that its attempted collection and enforcement of the indebtedness was at odds with the rights of the true holder -- the allegation of wrongful conduct by Wells Fargo is mere fanciful malarkey.

Further, Judge Gordon said:  "The remaining counts of the Complaint also had to be cleansed of the detritus of the bogus fraud allegations. Those allegations run like toxins" through Counts III, V, VI, VIII, and IX, "where every allegation of the Complaint is incorporated and re-alleged." ECF 51 at 24 n.26 in Adv. Proc. No. 13-510. As Judge Gordon saw it, the Howes' "strategy [was] to spin a tale suitable enough to delay things for as long as possible. . . ." *Id.* at 25.  According to Judge Gordon, "the time for unwarranted, strategic delay (and frivolous claims) was over." *Id.*

### F. Appeal

The Notice of Appeal challenges two orders of the Bankruptcy Court: the MTD Order,

entered on May 12, 2014, Apx. 285-287, and the Reconsideration Order, entered on July 22, 2014. Apx. 297-298. As framed by plaintiffs, the appeal presents five issues for review, ECF 19 at 7-8, Second Amended Brief:

> 1. Did the bankruptcy court err in looking beyond the four corners of the Complaint, when ruling on Defendants' motions to dismiss, relying on patently false and defective ownership documents provided by Defendant Carrington, at the court's direction, to prove its right to enforce Plaintiffs' Note, and rejecting Plaintiffs' allegations of misrepresentation and fraudulent intent?

> 2. Did the bankruptcy court err in granting Defendants' motions to dismiss for failure to state claims upon which relief can be granted, and dismissing all nine counts of the Complaint, including Counts 2 and 9 although not all Defendants requested their dismissal, since there were other plausible claims for relief that were independent of fraud or trust termination?

> 3. Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1) for failure to state a valid claim, holding that trust termination did not affect the trust's standing to enforce Plaintiffs' mortgage, and that Defendants did not act with fraudulent intent?

> 4. Did the bankruptcy court err, when ruling on Defendants' motions to dismiss, in finding that the trust holding Plaintiffs' mortgage did not cease to exist before Wells Fargo executed and filed multiple documents on its behalf, including the Second Foreclosure Case, Objection to Plan Confirmation, and the purported assignment of the Deed of Trust dated October 30, 2013?

> 5. Did the bankruptcy court err in directing Plaintiffs to omit, when amending the Complaint, any reference to fraud or misrepresentation arising from the lack of standing to foreclose or file bankruptcy claims by the trust that held Plaintiffs' mortgage?

According to the Howes, in light of the Trust's termination, none of the adversary proceeding defendants has standing to enforce the Note, initiate a foreclosure, object to the Chapter 13 plan, or file a proof of claim in the bankruptcy case. In plaintiffs' view, US Bank and Wells Fargo committed fraud in the foreclosure proceedings and in the bankruptcy case by representing that they are entitled to enforce the Note on behalf of the Trust. The Howes also insist that Christiana and Carrington committed fraud by attempting to prosecute the Amended

Claim in the bankruptcy case. Thus, the Howes contend that the Bankruptcy Court erred in its dismissal of Count I, "Fraud Upon the Court," and in refusing to grant leave to amend, and also erred in its dismissal of the remaining counts of the Complaint.

In response, appellees argue that, even assuming the Note was removed from the Trust and the Trust was subsequently terminated, as plaintiffs allege, the Note remains enforceable and plaintiffs remain indebted to the holder of the Note. Moreover, in appellees' view, the lack of physical possession of the Note is not dispositive of one's rights to enforce a negotiable instrument. In addition, and as discussed, *infra*, defendants US Bank and Wells Fargo have moved to strike the Howes' Second Amended Brief. *See* ECF 20 ("Motion to Strike"); ECF 19 ("Second Amended Brief").

Additional facts are included in the Discussion.

## II. Preliminary Matters
### A.    Jurisdiction

The MTD Order dismissed Count I of the Complaint, with prejudice, and Counts II through IX, without prejudice. In the Reconsideration Order, the Bankruptcy Court declined to alter its rulings. Because Counts II through IX were dismissed, without prejudice, I must first consider whether this Court has jurisdiction to review the Bankruptcy Court's orders on appeal. *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 345 (4th Cir. 2005) (stating that "we must initially determine whether we have [appellate] jurisdiction to consider the [ ] court's dismissal *without* prejudice") (emphasis in *Chao*).

On appeal of a bankruptcy court's order, the district court has jurisdiction pursuant to 28 U.S.C. § 158(a). *Wellness Int'l Network, Ltd. v. Sharif*, ____ U.S. ____, 135 S. Ct. 1932, 1940 (2015) (acknowledging that bankruptcy court rulings are "subject to appellate review by the district court"); *see also Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013) (recognizing

31

the district court's capacity as a bankruptcy appellate court); *In re Kirkland*, 600 F.3d 310, 314

(4th Cir. 2010) (same).  Section 158(a) provides, in relevant part (emphasis added):

> The district courts of the United States shall have jurisdiction to hear appeals[ ]
>
>> (1) from *final* judgments, orders, and decrees;
>>
>> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title [in order to file a bankruptcy plan]; and
>>
>> (3) with leave of the court, from other interlocutory orders and decrees[.]

The Fourth Circuit discussed the appealability of bankruptcy court orders in *McDow v.*

*Dudley*, 662 F.3d 284 (4th Cir. 2011), stating, *id.* at 287:

> We have recognized as a general matter, as have other courts of appeals, that "the concept of finality in bankruptcy cases 'has traditionally been applied in a more pragmatic and less technical way . . . than in other situations.'" *In re Computer Learning Ctrs., Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (alteration in original)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 599-600 (5th Cir. 2011); *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011); *Ritchie Special Credit Invs., Ltd. v. U.S. Trustee*, 620 F.3d 847, 852 (8th Cir. 2010); *In re McKinney*, 610 F.3d 399, 401-02 (7th Cir. 2010); *In re Rudler*, 576 F.3d 37, 43-44 (1st Cir. 2009). As we explained in *A.H. Robins Co.*:
>
>> The special or unique reason for this relaxed rule of appealability in bankruptcy is that "[b]ankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory."
>
> 788 F.2d 994, 1009 (4th Cir.1986) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)). Thus, because of the special nature of bankruptcy proceedings, which often involve multiple parties, claims, and procedures, the postponing of review by the district court and the court of appeals of discrete issues could result in the waste of valuable time and already scarce resources. *See id.* at 1009; *see also In re Northwood Props., LLC*, 509 F.3d 15, 21 (1st Cir. 2007). We have concluded, therefore, that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *In re Computer Learning Ctrs., Inc.*, 407 F.3d at 660 (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

Despite the "more pragmatic and less technical" conception of finality that applies with respect to a bankruptcy appeal, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (internal quotations omitted), "an order must 'conclusively determine[ ] a separable dispute over a creditor's claim or priority,'" in order to be considered final. *In re Urban Broadcasting Corp.*, 401 F.3d 236, 247 (4th Cir. 2005) (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 445-46 (1st Cir. 1983) (alteration in *In re Urban Broadcasting Corp.*).   In other words, a final, appealable order is one that "finally dispose[s] of discrete disputes within the larger case." *In re Computer Learning Ctrs.*, 407 F.3d 656, 660 (4th Cir. 2005) (internal quotations omitted).

In *Young v. Nickols*, 413 F.3d 416 (4th Cir. 2005), the Fourth Circuit stated, *id.* at 418 (internal quotations and citations omitted):

> Generally, an order dismissing a complaint without prejudice is not an appealable final order under 28 U.S.C. § 1291 when the plaintiff could save his action by merely amending his complaint. However, if the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact, and appellate jurisdiction exists.

Here, the MTD Order dismissed with prejudice only one count of plaintiffs' Complaint, *i.e.*, Count I (Fraud Upon the Court). Apx. 286.   As to counts II through IX, the MTD Order expressly dismissed the claims without prejudice, and permitted plaintiffs to file an amended complaint. Apx. 287.   Likewise, in the Reconsideration Order, the Bankruptcy Court granted plaintiffs leave to file an amended complaint.   Apx. 298.   Nonetheless, when a plaintiff declines to amend and instead elects to "to stand on his or her complaint," the order may indeed possess the necessary finality because the plaintiff has "'waive[d] the right to later amend . . . .'" *In re GNC Corp.*, 789 F.3d 505, 511 n.3 (4th Cir. 2015) (quoting *Chao*, *supra*, 415 F.3d at 345). According to the Fourth Circuit, if the plaintiff abandons the right to amend, [the court on appeal] treat[s] th[e] case as if it had been dismissed with prejudice and therefore [has] jurisdiction over this appeal." *In re GNC Corp*, 789 F.3d at 511 n.3.

Here, plaintiffs chose to stand on their initial Complaint; they declined to file an amended

complaint. Therefore, notwithstanding that the MTD Order and the Reconsideration Order

dismissed only one count with prejudice, and the remaining eight counts without prejudice, I am

satisfied that this Court has jurisdiction to consider the appeal.

### B.    Motion to Strike

When the Howes filed their appeal, Rule 8009(a) provided that an appellant may file a

brief within fourteen days of the docketing of the appeal. Once the appellee replied, "[n]o

further briefs may be filed except with leave of the district court . . . ." Fed. R. Bankr. P.

8009(a)(3). Effective December 1, 2014, Fed. R. Bankr. P. 8009(a) was replaced by Fed. R.

Bankr. P. 8018. Rule 8018 increased the time available to an appellant to file an initial brief,

from fourteen days to thirty days after the docketing of the notice of appeal. *See also* Fed. R.

Bankr. P. 8018 advisory comm. nn. (2014).

In the Motion to Strike, US Bank and Wells Fargo contend that plaintiffs' Second

Amended Brief was improperly filed out of time, and without leave of Court, in violation of Fed.

R. Bankr. P. 8009(a)(3). Moreover, they insist that acceptance of the brief "would be prejudicial

to Appellees" to the extent "anything new has been added . . . ." ECF 20 at 3, Motion to Strike.

They argue, *id.*:

> There is no procedural rule allowing an appellant to start the briefing
> process all over again after the appellant's brief, appellee's response, and
> appellant's reply have all been drafted and filed. Even more egregious is that
> Appellants' Second Amended Brief was submitted to the Court without a redlined
> version showing how it differs from their first Amended Brief. As each document
> is 50 pages long, it is inherently unreasonable to expect the Appellees to compare
> each and every line to determine what, if any, changes have been made.

In opposing the Motion to Strike, plaintiffs explain: "Appellants filed their Second

Amended Brief (ECF 19) for the sole purpose of providing the Court with references to their

Appendix to Brief (ECF 9)." ECF 22 ¶ 1, Opposition to Motion to Strike. They contend: "Appellees benefitted from Appellants' Appendix and were able to refer to it when citing to the record in their briefs." *Id.* ¶ 3. In contrast, "[a]ppellants did not have the benefit of their Appendix when they prepared their brief, so all references to the record in their brief are to the Court's relevant ECF docket numbers. Appellants' Second Amended Brief was prepared and filed to correct this problem and assist the Court in finding the papers cited in Appellants' brief." *Id.* ¶ 4. Plaintiffs further insist that "no substantive change was made to Appellants' brief with the subject amendment . . . ." *Id.* ¶ 5. In this regard, they attached a redline to their Opposition to Motion to Strike, reflecting the differences between the Second Amended brief and the initial amended brief. ECF 22-1.

To be sure, plaintiffs should have requested leave of Court to file the Second Amended Brief. Nonetheless, because there is no substantive change in the Second Amended Brief, and no actual prejudice resulted from its filing, I will deny the Motion to Strike (ECF 20).

### C.    Standards of Review

#### 1.  Role of District Court

The MTD Order of May 12, 2014, granted defense motions to dismiss the Complaint filed in the adversary proceeding. The Reconsideration Order of July 22, 2014, denied plaintiffs' motions to reconsider.

The standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."); *see also In re Slaey*, No. 1:14CV1210, 2015 WL 5139317, at *3 (E.D. Va. Sept. 1, 2015) (citing 28 U.S.C.

§ 158(c)(2); *Haynes v. Stephenson*, No. 3:14-CV-352-MGL, 2015 WL 687133, at *3 (D.S.C. Feb. 18, 2015) (same); *Alexander v. Barnwell Cnty. Hosp.*, No. CIV.A. 1:13-02164, 2014 WL 607499, at *3 (D.S.C. Feb. 18, 2014) (same).

Accordingly, the district court reviews the bankruptcy court's findings of fact under the "clear error" standard. *In re Taneja,* 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta, supra,* 721 F.3d at 250. A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948); *see United States v. Hall,* 664 F.3d 456, 462 (4th Cir. 2012). The bankruptcy court's conclusions of law are subject to de novo review. *In re Taneja,* 743 F.3d at 429; *In re Kirkland,* 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo,* 180 F.3d 126, 130 (4th Cir. 1999). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin,* 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.,* 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia,* the district court's power to remand with instructions for further proceedings).

In Count III, plaintiffs sought sanctions against defendants. "A bankruptcy court's decision to impose [or deny] sanctions [ ] is within its sound discretion and is, therefore, reversible only if that discretion has been abused." *In re Nat'l Heritage Found., Inc.,* 510 B.R. 526, 541 (E.D. Va. 2014) *aff'd sub nom. Miller v. Nat'l Heritage Found.,* Inc., 599 F. App'x 107 (4th Cir. 2015); *see also In re Glasco,* 321 B.R. 695, 699 (W.D.N.C. 2005).

Fed. R. Civ. P. 59 governs a motion to amend judgment and is applicable in bankruptcy court pursuant to Fed. R. Bankr. P. 9023. Fed. R. Civ. P. 60(b) is made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9024. On appeal, a bankruptcy court's denial of a

motion for reconsideration is reviewed for abuse of discretion. *See In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992); *see also In re Castillo*, No. TDC-14-0924, 2015 WL 789095, at *7 (D. Md. Feb. 23, 2015); *Fuentex v. Stackhouse*, 182 B.R. 438, 442 (E.D. Va. 1995).

### 2. Fed. R. Bankr. P. 7008 and 7012; Fed. R. Civ. P. 12(b)(6)

Defendants' motions to dismiss the Complaint were predicated on Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b).[38] According to Fed. R. Bankr. P. 7012(b), Fed. R. Civ. P. 12(b) applies in adversary proceedings. And, pursuant to Fed. R. Bankr. P. 7008, Fed. R. Civ. P. 8 also applies in adversary proceedings.

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" If the pleader fails to do so, then a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Bankr. P. 7012, which essentially incorporates Fed. R. Civ. P. 12.

A defendant may test the sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007) (quotations omitted). A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

---

[38] The motions were also predicated on Fed. R. Bank. P. 7009, discussed *infra.*

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, courts "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, _____ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam). But, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards, supra,* 178 F.3d at 243 (quotation marks omitted); *Tobey v. James,* 706 F.3d 379, 387 (4th Cir. 2013). But, on occasion, a defense can be resolved on the basis of the facts alleged in the complaint. "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint,*'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (alteration and emphasis in *Goodman*).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied,* ____ U.S. ____, 132 S. Ct. 1960 (2012).

Ordinarily, a court considering a motion to dismiss "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Cahaly v. Larosa,* 796 F.3d 399, 405 (4th Cir.). If a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Under certain limited exceptions, however, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary

judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 506 (4th Cir. 2015).

To illustrate, a court may properly consider documents attached or incorporated into the complaint, as well as documents attached to the defendant's motion, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in *Chesapeake*). In addition, without converting a motion under Rule 12(d), "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"[39] *Goldfarb, supra*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b)(stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, _____ U.S. _____, 132 S. Ct. 115 (2011); *Philips, supra*, 572 F.3d at 180.

Plaintiffs attached multiple exhibits to their Complaint. *See* note 8, *supra*. Defendants did not dispute the authenticity of these documents. Moreover, because they were incorporated into the Complaint and integral to it, the Bankruptcy Court was entitled to consider them.

---

[39] "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, ADVISORY COMMITTEE'S NOTES.

### 3.  Fed. R. Civ. P. 9(b)

The Complaint lodges claims of fraud. These allegations implicate the heightened pleading standard under Fed. R. Civ. P. 9, which is applicable to adversary pleadings within a bankruptcy case.  *See* Fed. R. Bankr. P. 7009 (stating that "Rule 9 F.R.Civ.P. applies in adversary proceedings"). Fed. R. Civ. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See, e.g., Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *E‑Shops Corp. v. US Bank N.A.,* 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims.").

Under Rule 9(b), a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted). As Judge Gordon put it:  "The rule is intended to discourage a 'sue first, ask questions later' philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011)." ECF 51 at 17 in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.

Rule 9(b) serves several salutary purposes.  In *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999), the Fourth Circuit said (quoting *U.S. ex rel. Stinson,*

41

*Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990) (alteration in *Harrison*)):

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

However, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D. Md. 1997) (citation omitted); *accord Piotrowski v. Wells Fargo Bank, N.A.,* No. DKC 11–3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

### D.    Choice of Law

This case involves principles of both state and federal law. Nevertheless, the parties have not addressed the matter of choice of law. Rather, the parties have briefed the issues as if substantive Maryland law governs the state law claims, with little discussion or analysis as to the applicable choice of law principles.

The Fourth Circuit provided guidance in *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co.)*, 839 F.2d 203, 205 (4th Cir.1988).

> The question of what choice of law rules should be applied by a bankruptcy court presents another wrinkle. Although bankruptcy cases involve

42

federal statutes and federal questions, a bankruptcy court may, as here, face situations in which the applicable federal law incorporates matters which are the subject of state law. It is clear that a federal court in such cases must apply state law to the underlying substantive state law questions.

In *Biegler v. Heep*, 172 F.3d 43 (4th Cir. 1999) (per curiam), the Fourth Circuit observed that, when it reviews a bankruptcy proceeding on appeal, it is ordinarily "required to apply the choice of law rules of the forum state . . . ." *Id.* at *3 n.1; *see also McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014 WL 2696660, at *10 (E.D. Va. June 6, 2014); *Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010). Therefore, the law of Maryland, the forum state, guides this Court's choice-of-law analysis. *Chattery Int'l, Inc. v. JoLida, Inc.*, No. WDQ–10–2236, 2012 WL 1454158, at *3 n.10 (D. Md. Apr. 24, 2012) ("Federal courts with supplemental jurisdiction over a state law claim apply the choice of law rules of the forum state."); *Baker v. Antwerpen Motorcars Ltd.*, 807 F.Supp.2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

Insofar as the Complaint alleges common law fraud, such claims sound in tort. *See J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action."). In tort cases, Maryland courts apply the doctrine of *lex loci delicti, i.e.*, the law of the "place of the alleged harm." *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged injuries occurred in Maryland, I will look to Maryland law with respect to plaintiffs' tort claims. To the extent the Complaint includes an Objection to Claim, as explained in the Discussion of Count IX, the existence of such a claim is controlled by Maryland law, but the allowance of such a claim is governed by federal law.

43

With respect to the issues surrounding the termination of the Trust, at the hearing on January 6, 2014, Judge Gordon asked counsel for Wells Fargo if Maryland law applies to the Trust termination issue. Counsel for Wells Fargo stated: "It may not be Maryland Law." Apx. at 334. Judge Gordon also expressed doubt that Maryland law controls. At the hearing on March 4, 2014, he said, Apx. 214:

> I wondered whether Maryland law even applied to the transaction, knowing that it would be unlikely that the great minds that fashioned these securitization trusts and set up all of these transactions that led to the worst economic disaster since the Great Depression probably wouldn't look to Maryland law to figure out what it all meant, if that became necessary.

Ultimately, Judge Gordon concluded that, in view of *Jaimes v. JPMorgan Chase Bank, N.A.*, No. 12-C 3162, 2013 WL 677740 (N.D. Ill. Feb. 25, 2013), discussed *infra*, the choice of law issue was inconsequential as it related to termination of the Trust. Apx. 214, Hearing of March 4, 2014; *see also Jaimes*, 2013 WL 677740, at *4-*5 (concluding that the debtor-creditor relationship created by the execution of a note remains unchanged, notwithstanding securitization of the note, the creation of a trust whereby multiple notes are pooled together, or the subsequent termination of the trust).

As to the Trust termination, the parties relied upon Maryland law and did not identify any relevant legal principles that might differ in other jurisdictions. Maryland choice-of-law principles contain guidance for courts when the parties fail to address adequately a choice-of-law issue. In *Chambco, Div. of Chamberlin Waterproofing & Roofing, Inc. v. Urban Masonry Co.*, 338 Md. 417, 421, 659 A.2d 297, 299 (1995), the Maryland Court of Appeals said (citations omitted):

> Where the parties to an action fail to give . . . notice of an intent to rely on foreign law, and where it is clear that one or more issues in the case are controlled by another jurisdiction's law, a court in its discretion may exercise one of two choices with respect to ascertaining the foreign law. First, the court may presume

44

that the law of the other jurisdiction is the same as Maryland law. Alternatively, the court may take judicial notice of the other state's law. This discretion may be exercised by either the trial court, or by an appellate court . . . .

*Accord Felland Ltd. P'ship v. Digi–Tel Commc'ns, LLC,* 384 Md. 520, 530 n.1, 864 A.2d 1027, 1033 n.1 (2004).

Therefore, in accordance with *Chambco,* I will assume that, to the extent the law of any other jurisdiction ought to govern the issue of the Trust termination, it is the same as the law of Maryland. *See Ohio Sav. Bank v. Progressive Cas. Ins. Co.,* 521 F.3d 960, 962 (8th Cir. 2008) ("Like the district court, we will ignore what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict . . . ."); *Cleaning Auth., Inc. v. Neubert,* 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.'") (citation omitted).

### III. Discussion

#### A.   Termination of the Trust

Before addressing the Bankruptcy Court's dismissal of all nine counts, I turn to plaintiffs' threshold contention, underpinning many of their claims: termination of the Trust precluded the adversary defendants from taking any action to enforce the Note. If plaintiffs' foundational argument is erroneous, plaintiffs' claims of liability begin to unravel.

The fraud claim in Count I is based on the pursuit of the mortgage debt by US Bank and Wells Fargo, without disclosure that the Trust had terminated in January 2012. In Count II, requesting a "Determination of Scope, Extent and Validity of Lien," Apx. 41, Complaint at 20, plaintiffs sought a ruling that the Note is unenforceable, and that no party had standing to file a secured claim against the Property because of the termination of the Trust. Apx. 42, Complaint

45

¶ 85.   Count VI, alleging violations of the FDCPA, rests on the notion that because the Note was not assigned prior to the termination of the Trust, Wells Fargo, US Bank, and Christiana cannot claim ownership of the Note on behalf of the Trust.  In Count VII, which alleges violations of the MCDCA, plaintiffs contend that Wells Fargo, US Bank, and Christiana sought to collect amounts to which they knew they were not entitled.  Similarly, in Count VIII, in which plaintiffs allege violations of MCPA, the Howes maintain that Wells Fargo and US Bank improperly concealed the termination of the Trust.  Finally, Count IX, plaintiffs' "Objection to Claim," asserts, *inter alia*, that US Bank and Wells Fargo lack standing to file the Amended Claim due to the Trust's termination.  Apx. 54, Complaint at 33.

On appeal, the Howes contend that the Bankruptcy Court improperly ruled that the Trust's termination "did not affect" the defendants' right to enforce the Note.  ECF 19 at 7, Second Amended Brief.  Plaintiffs frame their challenge as one of "standing."  In plaintiffs' view, because the Trust ceased to exist, Wells Fargo and US Bank lacked standing to enforce the Note and to prosecute the Amended Claim.  And, because Wells Fargo and US Bank lacked standing, plaintiffs contend that any assignment of interest in the Note from Wells Fargo and US Bank to Christiana and Carrington was invalid. Apx. 41-42, Complaint ¶¶ 74-97.  According to the Howes, it follows that Christiana and Carrington lack standing to enforce the Note in the Chapter 13 case through the Amended Claim.

Appellees rely on *Jaimes v. JPMorgan Chase Bank, N.A.*, *supra*, 2013 WL 677740, to challenge the Howes' position.  In *Jaimes*, plaintiffs Roberta and Beata Jaimes entered a loan agreement with Washington Mutual Bank, F.A. ("WaMu") and executed a promissory note secured by a mortgage on certain property in Illinois. *Id.* at *1.  The loan agreement designated WaMu as the servicer of the loan. *Id.*  On May 1, 2004, WaMu transferred the note and

mortgage to a mortgage-backed securities trust ("WaMu Trust"), *id.*, which pooled together nineteen other Illinois mortgage loans. *Id.* at *3. Under the terms of the WaMu Trust, WaMu retained possession of the note and mortgage as custodian for the WaMu Trust. *Id.* at *1. WaMu also retained servicing rights for those loans held by the WaMu Trust. *Id.* Less than a year later, on March 30, 2005, the WaMu Trust was terminated. *Id.*

In 2008, JPMorgan Chase Bank, N.A. ("Chase") sent several bills to the plaintiffs, in which Chase represented that it was the creditor and the servicer of the plaintiffs' note and mortgage. *Id.* In response, plaintiffs paid several bills. *Id.* On September 25, 2008, the Federal Deposit Insurance Corporation ("FIDC") was named receiver of the WaMu Trust. *Id.* On the same date, Chase and the FDIC entered into an agreement by which Chase purchased "'all right, title, and interest of the Receiver in and to all of the assets'" of WaMu and its subsidiaries. *Id.* (quoting purchase agreement). The purchase agreement also stated that Chase "'specifically purchases all mortgage servicing rights and obligations of [WaMu].'" *Id.* (quoting purchase agreement) (alteration in *Jaimes*).

On August 8, 2011, a law firm sent a letter to plaintiffs, in "'an attempt to collect a debt.'" *Id.* at *2 (quoting the complaint). The letter indicated that the law firm "represents the holder of a Mortgage and Note" for plaintiffs' house. *Id.* at *2. The letter also identified Chase as the creditor and servicer of the note. *Id.* Then, on August 11, 2011, Chase initiated a foreclosure proceeding to enforce the note. *Id.*

Thereafter, in April 2012, plaintiffs filed suit against Chase, alleging, *inter alia*, FDCPA violations. According to the plaintiff, Chase never acquired an interest in the note, and thus its attempts to collect payments were fraudulent. In plaintiffs' view, the WaMu Trust was terminated on March 30, 2005, and its assets "'were distributed to the certificate-holders of the

47

Trust'" such that the certificate-holders "'became the only mortgagees, the only owners and legal holders of the Note and the Mortgage.'" *Id.* at *4 (quoting the complaint). Because termination resulted in a distribution of the WaMu Trust assets to certificateholders, plaintiffs argued that neither WaMu nor its successor-in-interest, Chase, had authority to collect mortgage payments, assign the note or mortgage, or foreclose on the note. *Id.* at *2, *4.

Chase moved to dismiss. *Id.* at *2. In resolving the motion, the court considered the effect of the WaMu Trust's termination on the ability of WaMu and Chase to service the mortgage.

The *Jaimes* Court rejected plaintiffs' theory that their loan obligation terminated upon the termination of the WaMu Trust because the servicing rights were not sold or transferred prior to termination of the WaMu Trust. *Id.* at *4. The *Jaimes* Court emphasized that "a trust's termination does not terminate the payment obligations on the mortgages in the trust." *Id.* It explained further: "A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust." *Id.* In other words, pooling mortgages together into a trust does not in any way eradicate or modify the borrower's underlying obligation to pay on the note.

The court also explained that termination of the WaMu Trust was immaterial because plaintiffs "do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them." *Id.* at *5. The court reasoned that, in the absence of two masters claiming ownership of the note, "it is reasonable for the Court to infer that the servicing rights on Plaintiffs' debt transferred from WaMu to Chase pursuant to the P &

48

ADD. 199

A Agreement in September 2008." *Id.*

In sum, the *Jaimes* Court found that "it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase, as successor-in-interest to WaMu, fraudulently serviced the debt beginning in September 2008, without offering any allegation as to who became the servicer of their debt upon the Trust's termination." *Id.* On this ground, the court concluded that Chase had a right to service the loan, notwithstanding the trust termination, and it dismissed the claims as to Chase.

The Howes dispute the significance of *Jaimes*. They maintain that the case is not "binding precedent" and insist the facts here are distinguishable. ECF 19 at 21, Second Amended Brief. The Howes highlight that in *Jaimes*, it was Chase, as a creditor and the servicer of the mortgage, that filed the foreclosure suit. *Id.* at 22. In plaintiffs' view, because the foreclosure action in that case was initiated by the servicer, the significance of *Jaimes* is limited to determining rights of a mortgage servicer upon trust termination and does not speak to the rights of a trustee seeking to enforce an instrument owned by a terminated trust. The Howes maintain that *Jaimes* is inapplicable because the Second Foreclosure Case was initiated by the substitute trustee on behalf of the Trust, and not by Wells Fargo as the servicer. *Id.* at 21-22.

The Howes' view of *Jaimes* is too narrow. Although the focus of *Jaimes* was indeed the effect of the trust termination on servicing rights, the case is nonetheless pertinent. It demonstrates that a borrower's obligation to pay his or her mortgage may survive securitization of the instrument and the subsequent termination of the investment trust. *Jaimes*, 2013 WL 677740, at*4-5.

Indeed, numerous cases establish that, "[a]s a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay

back his or her loan." *Dauenhauer v. Bank of New York Mellon*, No.12-CV-01026, 2013 WL 2359602, at *5 (M.D. Tenn. May 28, 2013), *aff'd*, 562 F. App'x 473 (6th Cir. 2014); *see, e.g.*, *Beasley v. FV-I, Inc.*, No. 1:13-CV-116 JCC/TRJ, 2013 WL 1192018, at *4 (E.D. Va. Mar. 21, 2013) (". . . Plaintiff also complains that the subject Note has been securitized and therefore rendered unenforceable as to him. Plaintiff presents no plausible legal argument to bolster this assertion. Whether or not there has been transfer of the Loan, there are no facts alleged which would relieve Plaintiff of his obligation to pay."); *Upperman v. Deutsche Bank Nat. Trust Co.*, No. CIVA 01:10-CV-149, 2010 WL 1610414, at *2 (E.D. Va. Apr. 16, 2010) ("There is no legal authority that the sale or pooling of investment interest in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property."); *see Reyes v. GMAC Mortg. LLC*, 2011 WL 1322775, at *2 (D. Nev. April 5, 2011) ("[F]ive of plaintiffs' claims are based on the idea that securitization inherently changes the existing legal relationship between the parties to the extent that the original parties cease to occupy the roles they did at the closing . . . . This argument has been rejected [ ] because the securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust.") (internal quotations omitted); *see also In re Nordeen*, 495 B.R. 468, 478-79 (B.A.P. 9th Cir. 2013) (collecting cases).

*Deutsche Bank v. Brock*, 430 Md. 714, 63 A.3d 40 (2013), is informative. There, the borrower challenged the authority of various individuals and entities to foreclose on her residence. She alleged, *inter alia*, that the trust holding the note had ceased to exist and, therefore, no longer owned the note. *Id.* at 722-23, 63 A.3d at 44. The borrower insisted that, "regardless of which entity is the holder of the Note, only the owner may enforce the Note and bring an action to foreclose." *Id.* at 730, 63 A.3d at 49. Relying on Maryland Code, C.L. § 3-

50

203,[40] the Maryland Court of Appeals stated: "'The right to enforce an instrument and ownership of the instrument are two different concepts.'" *Id.* at 730, 63 A.2d at 49 (quoting Comment to C.L. § 3-203). It reasoned, *id.* at 731, 63 A.3d at 50: "Here, Brock does not contend that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case." As in *Jaimes*, the *Brock* Court concluded that "whether the Trust is (or is not) the owner of the Note is irrelevant for present purposes." *Id.* at 732-33, 63 A.3d at 51.

In this case, the Note was securitized and pooled with other notes in a mortgage-backed Trust. In April 2009, the Howes defaulted on the Note, although they made some partial payments through August 2009. Apx. 26, Complaint ¶ 17; *see e.g.,* ECF 51 at 22-25 in Adv. Proc. No. 13-510. The Howes insist that on January 1, 2012, "[t]he Mortgage was removed from the Trust" and, according to plaintiffs, its assets were distributed to certificateholders. *Id.* By January 25, 2012, the Trust ceased to exist. *Id.*

I recognize that the dispute here arises due to the termination of the Trust, and not its creation through the securitization process. Nonetheless, in view of *Brock, Dauenhauer, Beasley, Upperman,* and *Reyes,* among other cases, it follows logically that the "unpooling" of the instruments upon the Trust's termination would not disturb the underlying responsibility of the Howes to pay the obligation due on the instruments. In other words, as Judge Gordon explained, the termination of the Trust did not relieve the Howes of their obligations under the Note or the Deed of Trust. The termination of the Trust, standing alone, did not render unenforceable the instruments held by the Trust prior to its termination.

---

[40] As noted, C.L. is an abbreviation for the Commercial Law Article of the Maryland Code.

Accordingly, I agree with the Bankruptcy Court that the termination of the Trust, in and of itself, did not affect the enforceability of the Note or the Deed of Trust. Whether the instruments remained enforceable after termination of the Trust, and which party, if any, has "standing" or the right to enforce them, are two distinct questions, as discussed, *infra*.

As mentioned, plaintiffs' contention that the termination of the Trust precluded any claim or action to enforce the Note is the foundational argument upon which most of plaintiffs' claims rise and fall. I have rejected the underlying premise. Like a house of cards, many of plaintiffs' claims quickly collapse. I address below the ripple effect on each claim.

### B.    Count I -- Fraud Upon the Court

Count I, filed only against Wells Fargo and US Bank, is titled "Fraud Upon the Court." On appeal, plaintiffs ask: "Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1) for failure to state a valid claim . . . .[?]" ECF 19 at 7, Second Amended Brief.[41]

The Howes complain in Count I that they "do not know the identity of the rightful owner of the Note" (Apx. 38, Complaint ¶ 62), because "the Mortgage was removed from [the] Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012, before the Second Foreclosure Case was filed . . . ." Apx. 33, Complaint ¶ 43. Appellants also allege that Wells Fargo "falsely filed its Amended Claim in the present case on March 15, 2013, misrepresenting its identity as 'Creditor' . . . and conceding the fact that the trust had not existed since January 25, 2012." ECF 19 at 11, Second Amended Brief (citing Complaint, [Apx. 39] ¶¶ 67-68). The Howes assert, ECF 19 at 20, Second Amended Brief:

---

[41] Count I was filed pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9011. Apx. 38, Complaint. Section 105 permits the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." And, Fed. R. Bankr. P. 9011 is the bankruptcy equivalent of Fed. R. Civ. P. 11.

. . . Wells Fargo engaged in executing and filing false documents in the name of the non-existent trust, in the bankruptcy court and [State] circuit court, and attempting to mislead the circuit court into believing that any proceeds awarded in the foreclosure would convey to the benefit of the trust investors, even though that was an impossibility. Appellants further allege that Wells Fargo now falsely misrepresents itself as the secured creditor in the present case, and continues to execute false documents used as evidence in this proceeding (see 2013 Trust Assignment, ECF 1-37 at 29 (Apx. 278), discussed infra under Count 2), in an attempt to abuse the judicial process and collect a debt that is not due it.

At the hearing on July 16, 2014, Judge Gordon asked counsel for plaintiffs: "So, is [Count I] fraud on the Court or is it fraud on your client?" Apx. 358. Counsel for plaintiffs replied: "Well, it really is both." *Id.* But, counsel added that Count I "sounds primarily as fraud on the Court." *Id.* Judge Gordon twice asked plaintiffs' counsel: "What are you going to prove in support of fraud?" Apx. 356-67; Apx. 357. Plaintiffs' lawyer responded, Apx. 357: "I would prove that the trust terminated. That US Bank as trustee no longer owned the note. That US Bank and Wells Fargo were aware of that fact. That they sought to hide it. . . . [i]n order to get paid for their foreclosure fees and costs. I would submit that would be the primary reason."

In addition, plaintiffs' counsel explained that his clients were "damaged" (Apx. 357) "[b]y having to demonstrate to the Court that this claimant is not entitled to foreclosure fees and costs. And that it doesn't have standing." Apx. 358. "Basically," said plaintiffs' counsel, "that is it." *Id.*

Based on the record, it is plain that there was some uncertainty as to the party legally entitled to enforce the Note. According to Judge Gordon, this confusion occurred, in part, due to "sloppiness" and "bumbling" by Wells Fargo and US Bank. Apx. 226. For instance, the Kennerty Affidavits submitted in the First Foreclosure Case to establish US Bank's right to enforce the Note proved to be affirmations made without any personal knowledge of the facts stated therein. Apx. 32, Complaint ¶ 39. Similarly, Dore apparently did not sign the Dore

Affidavits submitted in the First Foreclosure Case, contrary to the representations in the affidavits. Apx. 32, Complaint ¶ 38. As a result, the First Foreclosure Case was dismissed. Apx. 32, Complaint ¶ 40.

Wells Fargo and US Bank concede that their own carelessness has contributed to confusion in this case. For example, they acknowledge that their counsel failed to differentiate between Wells Fargo as the servicer and US Bank as the owner of the Note. They explain, ECF 11 at 18 n.10, Wells Fargo Brief:

> In the Memorandum in Support of Motion to Dismiss, counsel for U.S. Bank and Wells Fargo confused his clients' respective roles, drew no distinction between the owner of the Note and its holder, and argued that Wells Fargo acquired Appellants' loan in 2012. See, e.g., Appendix, pp. 85-90. However, as the bankruptcy court correctly discerned, U.S. Bank was the holder, and Wells Fargo the servicer, at all times relevant to the Complaint.

Notwithstanding such missteps or errors, plaintiffs have not alleged facts that amount to fraud upon the court.

To be sure, a precise definition of "fraud on the court" is "elusive." *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1356 (4th Cir. 1982). It is a "nebulous concept" that is "construed very narrowly . . . ." *Id.* Clearly, it "is not your 'garden variety fraud.'" *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 135 (4th Cir. 2014) (citation omitted). As the Fourth Circuit has explained, *id.* at 136, "not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individual parties generally does not."

Moreover, "this doctrine should be invoked only when parties attempt 'the more egregious forms of subversion of the legal process . . . , those that we cannot necessarily expect to be exposed by the normal adversary process.'" *Fox*, 739 F.3d at 136 (quoting *Great Coastal*, 675 F.2d at 1357); *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46

(1944); *see also* 12 JAMES WM. MOORE ET AL., *Moore's Federal Practice* ¶ 60.21[4][a] (3d ed. 1999) (stating that fraud upon the court encompasses an attempt to corrupt the "integrity of the normal process of adjudication"). These "egregious cases" include "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Exp., Inc*, 675 F.2d at 1356.

Notably, fraud on the court "presents . . . a very high bar for any litigant." *Fox*, 739 F.3d at 136-37. In particular, establishing fraud on the court involves "corruption of the judicial process itself" and does not apply to a "routine evidentiary conflict." *Id.* at 136 (internal quotations omitted). Although plaintiffs need not "prove" their case at the motion to dismiss stage, their allegations must be sufficient to state a claim.

Plaintiffs acknowledge that their allegations "may not be the best fit" for a claim of fraud on the court. ECF 19 at 20, Second Amended Brief. But, they posit that the allegations "certainly state a claim for relief in some fashion. This is especially apparent from the false representations of holder status made by Appellees in the Bankruptcy Case, and Wells Fargo's impossible 2013 Trust Assignment that was provided to Appellants at the court's direction." *Id.*

Judge Gordon rejected the contention that the conduct of Wells Fargo and US Bank constituted fraud upon the court. In his Memorandum Opinion of November 5, 2014, Judge Gordon explained: "At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud." ECF 51 at 18 in Adv. Proc. No. 13-510. According to the Bankruptcy Court, "Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of

claim, because some other, identifiable true holder of the Note and DOT [*i.e.*, Deed of Trust] was

entitled to do so, yet filed the claims anyway in contravention of that holder's rights." *Id.* But,

he added, "it is just as (and frankly more) plausible to conclude that Wells Fargo reasonably

believed it had every right to enforce the Note and DOT, that the foreclosure fees were legitimate

and recoverable and that Claims Nos. 4-1 and 4-2 were filed to achieve those simple ends." *Id.*

In addition, Judge Gordon found a second critical shortcoming, pertaining to plaintiffs'

failure to allege any damage resulting from the purported misrepresentations. At the hearing on

March 4, 2014, for example, he stated, Apx. 223 (emphasis added):

> Count one is fraud upon the Court, that the proof of claims were filed to defraud
> the Court by hiding the fact that the trust had terminated, and Wells Fargo was not
> entitled to recover fees from the foreclosure. This is spiced with a fleeting but
> basically unexplained mention of an AG, attorney general, settlement[42] and how
> that impacts upon Wells Fargo's claim filing duties generally, a "pattern and

---

[42] In the Complaint, the Howes referred to a settlement between Wells Fargo and "49
State Attorneys' General." Apx. 38, Complaint ¶ 67. The circumstances giving rise to this
settlement, and its significance here, are unclear. "

According to the Complaint, Wells Fargo entered into a "Consent Order" pursuant to the
AG Settlement. The Howes allege that the AG Consent Order stated, in pertinent part, Apx. 44,
Complaint ¶ 95 (emphasis in Complaint):

> Servicer shall not file a [proof of claim] in a bankruptcy proceeding which, when
> filed, contained **materially inaccurate information**. In cases in which such a
> POC may have been filed, **Servicer shall not rely on such POC and shall** (a) in
> active cases, at Servicer's expense, take appropriate action, consistent with state
> and federal law and court procedure, to **substitute such POC with an amended
> POC as promptly as reasonably practicable (and, in any event, not more than
> 30 days) after acquiring actual knowledge of such material inaccuracy** and
> provide appropriate written notice to the borrower or borrower's counsel; and (b)
> in other cases, at Servicer's expense, take appropriate action after acquiring actual
> knowledge of such material inaccuracy.

Plaintiffs further assert, Apx. 38, Complaint ¶ 67: Wells Fargo sought to hide
Trust termination by not attaching to the Amended Claim evidence of Trust termination,
although required to do so by Fed. R. Bankr. P. 3001 and the settlement it reached with
the 49 State Attorneys' General effective April 5, 2012 (hereinafter 'AG Settlement')."

56

practice" of Wells Fargo and US Bank of filing fraudulent proof of claims and a spiel at the end about how tough it is to get better and how easy it is to be a bank.

   All of that may be true, but how does it set out a claim for fraud upon the Court in this case? *Absolutely no detailed allegation of how misfiling of the proof of claims caused an injury to the Debtor or the Court or allowed Wells Fargo or US Bank to gain an advantage. And I mean a real advantage.*

In his Memorandum Opinion of November 5, 2014, Judge Gordon concluded: "There is nothing alleged in the Complaint that plausibly supports the notion that Wells Fargo set in motion an unconscionable scheme calculated to interfere with this Court's process by filing Claim Nos. 4-1 and 4-2. Without a legitimate, non-frivolous allegation that Wells Fargo knowingly acted in contravention of some other entity's right to enforce the Note and DOT, a claim of 'fraud on the court' cannot be alleged in good faith." ECF 51 at 21 in Adv. Proc. No. 13-510.

In my view, the Bankruptcy Court did not err in its dismissal of Count I, because the Complaint does not adequately allege fraud upon the court. It does not allege a scheme to subvert the legal process or to thwart the ability of a court to function impartially. Even assuming, *arguendo*, that Wells Fargo and US Bank should have disclosed the termination of the Trust, the omission does not constitute fraud upon the court, because the Note remains enforceable. Moreover, plaintiffs failed to identify a material adverse consequence resulting from the alleged misrepresentations.[43]

---

[43] To be sure, a lawyer who knowingly files a false document with a court may face serious professional consequences. *See, e.g., Attorney Grievance Comm'n of Maryland v. Geesing*, 436 Md. 56, 80 A.3d 718 (2013) (suspension for filing robo-signed affidavits in foreclosure proceedings); *Attorney Grievance Comm'n of Maryland v. Dore*, 433 Md. 685, 73 A.3d 161 (2013) (same); *see also* Maryland Lawyers' Rules of Professional Conduct 3.3(a)(1) (making or failing to correct a false statement to a tribunal); 8.4(c) (dishonesty, fraud, misrepresentation); 8.4(d) (conduct prejudicial to the administration of justice). But, such conduct does not necessarily constitute fraud upon the court.

In the alternative, plaintiffs argued that the misconduct of Wells Fargo and US Bank in concealing the termination of the Trust amounted to common law fraud. Apx. 358, Hearing dated July 16, 2014. At the hearing on July 16, 2014, they asserted: "The main fraud [perpetrated by Wells Fargo] is trying to hide the fact that there was no standing to file the foreclosure case." Apx. 342, Hearing of January 6, 2014. Moreover, the Howes maintain that the filing of their bankruptcy case and the related litigation that ensued constituted justifiable reliance and damages. They posit: "Appellants suffered damages as a result of the concealment by having to file the Bankruptcy Case to stop the foreclosure sale, incurred legal fees to uncover and stop Wells Fargo and US Bank from benefitting from their concealment, and they suffered damages from the delay this litigation has caused in getting their bankruptcy reorganization approved." ECF 19 at 18, Second Amended Brief.

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular theory, at a trial the plaintiff must establish the elements of fraud "by clear and convincing evidence" *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 517 (2002). In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

"A 'false representation' is a statement, conduct, or action that intentionally

misrepresents a material fact." *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citation omitted); *see also Gross v. Sussex Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993) (stating that, to be actionable, a false representation "must be of a material fact"). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important . . . .'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). Moreover, the fraudulent "misrepresentation must be made with the deliberate intent to deceive." *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)); *accord Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524, 958 A.2d 385, 390 (2008). So, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117, 1125 (1995).

Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions. In other words, a claim of failure to disclose "requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 138 n.11, 916 A.2d 257, 274 n.11 (2007). "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Gaynor*, 370 Md. at 97, 803 A.2d at 516. However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 239, 469 A.2d 867, 891 *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215 (1985).

Fraud based on active suppression of material facts is the variety of fraud referred to as

"fraudulent concealment." The Maryland Court of Appeals has said: "Fraudulent Concealment 'is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed.'" *Lloyd*, 397 Md. at 138, 916 A.2d at 274 (citation omitted). It describes a "situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from" a material fact. *Id.* at 138 n.11, 916 A.2d at 274 n.11.

"To create a cause of action, concealment must have been intentional and effective-the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive." *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223, 225–26 (1958). As the *Rhee* Court explained, 182 Md. App. at 536, 958 A.2d at 396 (quoting *Stewart v. Wyoming Cattle–Ranche Co.*, 128 U.S. 383 (1888)) (alterations in *Rhee*):

> [T]he concealment or suppression [of a material fact] is in effect a representation that what is disclosed is the whole truth. The gist of the action [for fraud] is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant . . . .

Where the fraudulent concealment claim is based on a duty to disclose, Maryland has formulated the elements of the cause of action as follows, *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010) (quoting *Lloyd*, 397 Md. at 138, 916 A.2d at 274) (emphasis omitted):

> (1) [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*See also Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999).

The Maryland Court of Appeals encapsulated the foregoing principles in *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 100 n.14, 756 A.2d 963, 976 n.14 (2000) (internal citations omitted):

> Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure. Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known.

In my view, the allegation of common law fraud suffers from critical defects, and therefore dismissal was proper. Although plaintiffs contend that Wells Fargo and US Bank committed fraud by the knowing filing of false documents in an effort to collect on the Note, plaintiffs rely on mere conclusory assumptions that Wells Fargo and US Bank knew the Note was unenforceable once the Trust was terminated. Apart from the absence of a factual basis for the assertion, it is also noteworthy that, under *Jaimes* and *Brock*, the Note can remain enforceable, notwithstanding the termination of the Trust. In addition, plaintiffs failed to allege facts showing that they reasonably relied on the alleged misrepresentation or suffered any injury as a result of the misrepresentation.

In any event, assuming the attempted foreclosure sale constitutes damages, this argument is unpersuasive. The Howes do not dispute that they signed the Note. They also do not suggest that their execution of the Note was induced by fraud. Moreover, they offer no facts to suggest that they paid the entirety of the debt. Nor do they deny that they were in default, which is what led to the foreclosure proceedings. Indeed, the Howes fell into default on their mortgage in April 2009, well before the alleged misrepresentations in the State foreclosure cases or in the Chapter

61

13 case, and for the most part failed ot make payments for almost four years.  Apx. 26, Complaint ¶ 17.  The facts offered in the Complaint do not suggest a different narrative.

In the alternative, plaintiffs challenge dismissal of Count 1 on the ground that the Bankruptcy Court improperly "look[ed] beyond the four corners of the Complaint" and relied on documents extrinsic to the Complaint.  ECF 19 at 7, Second Amended Brief.  This contention is also without merit.  At the hearing on the motions to reconsider, Judge Gordon explained that the claim for fraud failed on its face.  Moreover, the record do not suggest that, in dismissing Count I, Judge Gordon considered documents that were not appended to the Complaint or integral to it.

I turn next to plaintiffs' contention that the Bankruptcy Court should have granted leave to amend Count 1.  ECF 19 at 7, Second Amended Brief.  The Bankruptcy Court dismissed Count 1, without leave to amend, because it found that "amendment would be futile."  ECF 51 at 24 in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.  But, Judge Gordon allowed the Howes to assert a challenge to Christiana's right to enforce the Note if Christiana submitted documentation supporting its claim of ownership of the Note.  Apx. 366.  He also permitted the Howes to file an amended complaint or a claim objection in order to make such an argument.  *Id.*

Pursuant to Fed. R. Bankr. P. 7015, Fed. R. Civ. P. 15(a)(2) applies to adversary proceedings in a bankruptcy case.  Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118 (4th Cir. 2013), *cert. denied*, ____ U.S. ____, 134 S. Ct. 2871 (2014); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  "Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland,* 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)); *see also Equal Rights Center v. Niles Bolton Associates,* 602 F.3d 597, 603 (4th Cir. 2010); *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

The confusion as to the identity of the holder of the Note led to defective and/or inaccurate submissions during the State foreclosure proceedings and in the bankruptcy case. Nonetheless, there are no facts alleged to show a miscarriage of justice or detrimental reliance resulting from any alleged misrepresentations. Nor are there any facts alleged to show that defendants acted with the intention of deceiving the court or the parties. Moreover, as indicated, termination of the Trust does not foreclose enforcement of the Note. And, under Maryland's Commercial Law Article, discussed *infra,* enforcement of a note is not foreclosed merely because the party seeking enforcement lacks actual possession of the instrument. As such, it cannot be fairly said that defendants committed fraud by attempting to enforce the Note. For these reasons, any amendment by plaintiffs would be futile. It follows that the Bankruptcy Court did not err in failing to grant leave to amend Count I.

Turning to the Complaint's remaining counts, as indicated, many of them relate to the Trust's termination and the same purported misrepresentations at issue in Count I. As noted, in Judge Gordon's view, dismissal of the remaining counts was warranted because they were based on the same facts as in Count I and "had to be cleansed of the detritus of the bogus fraud allegations." ECF 51 at 24, n.26, in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.

### C.    Count II -- Determination of Scope, Extent, and Validity of Lien

In Count II, plaintiffs sought a "Determination of Scope, Extent and Validity of Lien," pursuant to 11 U.S.C. §§ 105 and 506.  Apx. 41, Complaint at 20.  In pertinent part, § 506(d) provides:  "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."

The Howes asserted in Count II that the Note and Allonge contained "endorsements" that, "if bona fide," resulted "in the Note being payable to the order of US Bank as trustee for the Trust."  Apx. 41, Complaint ¶ 75.  Because the Trust ceased to exist in January 2012, plaintiffs alleged that US Bank had no right to enforce the Note.  *Id.* ¶ 76.  Further, plaintiffs alleged that "Wells Fargo is not a holder of the Note," *id.* ¶ 79, and did not possess it when it filed the Amended Claim.  *Id.* ¶ 80.  According to plaintiffs, the Note is "'order paper'" under C.L. § 3-201(b), and "negotiation requires transfer of possession of the instrument and its indorsement by the holder."  *Id.* ¶ 77.  Further, Carrington "acquired no interest in the Note or Amended Claim" because Wells Fargo had no "standing to file the Amended Claim. . . ."  Apx. 42, Complaint ¶ 83.  Indeed, none of the defendants had the right to enforce the Note or the Deed of Trust, according to plaintiffs.  *Id.* ¶ 85.

Plaintiffs requested a ruling, *inter alia*, that "none of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law," and "none of the Defendants has an enforceable secured or unsecured claim against property of the estate in the Bankruptcy Case."  Apx. 42, Complaint ¶ 85A.-B.

In my view, plaintiffs conflate the significance of the Trust's termination and the enforceability of the Note with questions as to which party has the right to pursue enforcement of the Note.

Under Maryland law, the right to enforce a promissory note and other negotiable instruments is governed by Maryland's Commercial Law Article. *See Deutsche Bank Nat. Trust Co. v. Brock, supra,* 430 Md. at 728, 63 A.3d at 48; *Shepherd v. Burson,* 427 Md. 541, 550, 50 A.3d 567, 573 (2012); *Anderson v. Burson,* 424 Md. 232, 245, 35 A.3d 452, 460 (2011). "Whether a negotiable instrument, such as a deed of trust note, is transferred or negotiated dictates the enforcement rights of the note transferee." *Anderson,* 424 Md. at 246, 35 A. 3d at 461. Once a note is transferred, "the right to enforce the deed of trust follow[s]." *Syrcek v. Rosenberg,* 203 Md. App. 705, 727, 40 A.3d 494, 507 (2012).

Maryland Code (2013 Repl. Vol., 2014 Supp.), C.L. § 3-301 outlines three categories of persons "entitled to enforce [an] instrument":

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder [*i.e.*, a transferee], or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418 (d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The first class of persons entitled to enforce an instrument under C.L. § 3-301(i) is a "holder of the instrument." *Id.* "Holder" is defined, *inter alia*, as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 1-201(b)(21)(i).[44] A promise or order is payable to bearer if it 1) states that it is payable to bearer or otherwise indicates that the individual or entity in possession of the promise or order is entitled to payment; (2) does not specify a payee; or (3) indicates that it is payable to cash or otherwise indicates that

---

[44] At the time of the First Foreclosure Case and the Second Foreclosure Case, this provision was found in Md. Code (2002), C.L. § 1-201(b)(20)(a), with minor differences in the text that are not material here.

it is not payable to an identified person.  C.L. § 3-109(a)(1)-(3).  Accordingly, "the person in possession of a note, either specially indorsed to that person or indorsed in blank,[ ] is a holder entitled generally to enforce that note."[45]  *Brock*, 430 Md. at 729-30, 63 A.3d at 49.

The second class of persons "entitled to enforce an instrument" is a "nonholder" of the note who is "in possession of the instrument" and "has the rights of a holder . . . ."  C.L. § 3-301(ii).  A person becomes a nonholder in possession through a "transfer" of the instrument. *Compare* C.L. § 3-203(a) (defining transfer of an instrument) *with* C.L. § 3-201(a) (defining negotiation of an instrument). *See also Anderson*, 424 Md. at 246-47, 35 A.3d at 461.  "A transfer has two requirements: the transferor (any person [who] transfers the note, except the issuer) must intend to vest in the transferee the right to enforce the instrument (thieves and accidental transferees are excluded) and must deliver the instrument so the transferee receives actual or constructive possession." *Id.* at 246, 35 A.3d at 461; *see* C.L. § 3-203.  "A transfer vests in the transferee only the rights enjoyed by the transferor, which may include the right to enforce the instrument. C.L. § 3-203(a)-(b).[ ]" *Anderson*, 424 Md. at 246, 35 A.3d at 461.  In addition, a transferee obtains "the rights that his transferor obtained from his own transferor." *Id.* at 248, 35 A.3d at 462.  Stated another way, "[a] transferee's rights . . . can be no greater than his or her transferor's because those rights are 'purely derivative.'" *Id.* at 249, 35 A.3d at 462 (citation omitted).[46]  As a result, if a holder transfers the note—for example, through a bulk sale of notes without the individual indorsement of each note—the transferee obtains from the holder the right to enforce the note even if no negotiation takes place.  In such a circumstance, the

---

[45] "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." C.L. §3-205(b).

[46] The *Anderson* Court also discussed how a nonholder in possession may enforce a note. *See* 424 Md. at 248-49, 35 A.3d at 462.

66

transferee does not become an Article 3 "holder." *See* C.L. § 3-203 cmt. 1-2.

A negotiation, whether voluntary or involuntary, occurs when an instrument is transferred to one who becomes a holder. C.L. § 3-201(a). A negotiation of an instrument payable to an identified person, however, requires the holder to transfer possession *and indorse the instrument.*" *Anderson,* 424 Md. at 246-47, 35 A.3d at 461 (emphasis added); *see* C.L. § 3-201(b).[47] Notably, "only a holder may negotiate an instrument. C.L. § 3-203 cmt. 1. Thus, a recipient of a transferred instrument is a transferee, but a recipient of a negotiated instrument is a holder." *Anderson,* 424 Md. at 247, 35 A.3d at 461.

If the person seeking to enforce the note is neither a holder nor a nonholder in possession of the instrument, with the rights of a holder (*i.e.,* a transferee), C.L. § 3-301(iii) provides a third class of persons who may have a basis to enforce the instrument, pursuant to C.L. § 3-309 or § 3-418(d). Of relevance here, C.L. § 3-309 provides, in part:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 3-308 applies to the case as if the person seeking enforcement had produced the instrument. . . .[48]

---

[47] Under C.L. § 3-201(b), when "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

[48] Potential methods of proof are set forth in C.L. § 3-308:

> (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically

In sum, under C.L. § 3-301(iii) and § 3-309(a), if the note is lost, a party may still seek to enforce the instrument. However, under C.L. § 3-309(b), the person seeking to enforce the instrument "must prove the terms of the instrument and the person's right to enforce the instrument." In other words, the nonholder who lacks possession of the note bears the burden of proving the right to enforce it. C.L. § 3-309(b). And, a lack of competing interests in the instrument does not establish that a person is entitled to enforce it.

As to burden of proof and enforcement of negotiable instruments in Maryland, *Anderson v. Burson, supra,* 424 Md. 232, 35 A.3d 452, is instructive. In that case, the Andersons refinanced their home mortgage in 2006. *Id.* at 235, 35 A.3d at 454. In doing so, Mr. Anderson executed a promissory note ("Anderson Note") in favor of Wilmington Finance, Inc. ("Wilmington") and both Mr. and Ms. Anderson signed the deed of trust, pledging their home as security for the note. *Id.* at 236, 35 A.3d at 454. Mr. Anderson defaulted on the Anderson Note in 2007. *Id.* at 236, 35 A.3d at 455. In 2008, substitute trustees, as agents of the trustee Deutsche Bank Trust Company Americas ("Deutsche"), commenced foreclosure proceedings

---

denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under § 3-402(a).

(b) If the validity of signatures is admitted or proved and there is compliance with subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under § 3-301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

against the Andersons in the Circuit Court for Howard County. *Id.* at 236, 35 A.3d at 455. At the time of the foreclosure, Deutsche was the purported holder of the Note. As to Deutsche's rights to enforce the Anderson Note, the substitute trustees filed a motion for acceptance of a lost note affidavit, which the circuit court granted. *Id.*

To prevent a foreclosure sale, the Andersons sought an injunction to preclude enforcement of the Anderson Note, challenging the right of the substitute trustees to enforce the Anderson Note on behalf of Deutsche. *Id.* at 239, 35 A.3d at 456.[49] The circuit court enjoined the foreclosure proceeding until a hearing could be held regarding the requested injunction. *Id.*

The Anderson Note, initially held by Wilmington, had been transferred three times and securitized. *Id.* First, the initial lender, Wilmington, transferred the Anderson Note to Morgan Stanley Mortgage Capital Holding, Inc. ("Morgan Stanley I"), which in turn transferred the Anderson Note to Morgan Stanley ABS Capital 1 Inc. ("Morgan Stanley II"). *Id.* Morgan Stanley II then securitized the Anderson Note, along with several other notes, into the Morgan Stanley Home Equity Loan Trust 2007-2 ("Morgan Stanley Trust"), for which Deutsche was named as the trustee, pursuant to a pooling and servicing agreement. *Id.* The Anderson Note was not indorsed to reflect these transfers, however. *Id.*

The circuit court held three evidentiary hearings to ascertain if the substitute trustees were entitled to enforce the Anderson Note on behalf of Deutsche. *Id.* At the first hearing, the substitute trustees produced a photocopy of the unindorsed note and claimed that the original note was indorsed in blank. *Id.* at 239, 35 A.3d at 456-57. This contradicted prior representations that the Anderson Note was lost. Given the "curious turn of events," the circuit

---

[49] The Andersons also initiated a Chapter 13 proceeding in Bankruptcy Court, which "caused a temporary halt in the foreclosure action. . . ." *Anderson*, 424 Md. at 237, 35 A.3d at 455. In federal court, the Andersons "acknowledged the mortgage debt. . . ." *Id.*

court rescheduled the evidentiary hearing to determine the substitute trustees' right to enforce the Anderson Note. *Id.* at 239, 35 A.3d at 457.

At the second hearing, the substitute trustees produced the Anderson Note, but it was not indorsed. *Id.* They asserted: "'We have the original Note, but we do not have an indorsement; we do not have an assignment; *we do not have an allonge . . . .*'" *Id.* at 239-40, 35 A.3d at 457 (emphasis in *Anderson*). Because the substitute trustees failed to comply with the Andersons' discovery request for a copy of the pooling and service agreement, the court continued the evidentiary hearing. *Id.* at 240, 35 A.3d at 457.

At the third evidentiary hearing, the substitute trustees produced, *inter alia*, "an undated, unattached allonge [to the Anderson Note], signed by Wilmington purported[ly] transferring the [Anderson] Note to Deutsche," as trustee for the Morgan Stanley Trust. *Id.* at 240, 35 A.3d at 457. Notably, the allonge "did not contain indorsements from the parties that possessed intermediately the Note." *Id.* In particular, the allonge did not evidence the transfers from Wilmington to Morgan Stanley I; from Morgan Stanley I to Morgan Stanley II; or from Morgan Stanley II to the Morgan Stanley Trust, for which Deutsche served as trustee through a pooling and service agreement.

The Andersons claimed that Wilmington "lacked the capacity to indorse the Note to Deutsche, via the allonge," *id.* at 241, 35 A.3d at 457, because Wilmington had already transferred its interest in the Anderson Note to Morgan Stanley I. *Id.* Thus, in the Andesons' view, Wilmington "had no interest left to convey to Deutsche at that time." *Id.*

Despite the missing indorsements, the circuit court ruled in favor of Deutsche and the substitute trustees acting on its behalf. *Id.* at 241, 35 A.3d at 457-58. It found that Wilmington "indorsed successfully" the Anderson Note to Deutsche through the allonge, "despite

70

acknowledging indorsement gaps in the Note's overall transfer history." *Id.* at 241, 35 A.3d at 457-58. "Thus, the trial judge determined that the Substitute Trustees were holders of the Note under [C.L.] § 3–302(a),[] and denied the Andersons' demand for an injunction." *Id.* at 241, 35 A.3d at 458.

*Anderson* presents a scenario in which initially the substitute trustees who sought to enforce the Anderson Note claimed the negotiable instrument was lost and filed a lost note affidavit. But, at the final evidentiary hearing, the substitute trustees produced a copy of the instrument in question. Nevertheless, on the subject of lost instruments generally, the Maryland Court of Appeals noted: "Mortgage transferors frequently lose or misplace mortgage documents . . . ." *Id.* at 238, 35 A.3d at 456. The court also pointed to the frequent use of lost note affidavits.

Given that the Anderson Note was eventually produced, the Maryland Court of Appeals considered whether the substitute trustees, as agents for Deutsche, were "nonholders in possession of the instrument and have the rights of holders." *Id.* at 242, 35 A.3d at 458. It concluded that Deutsche was "not a holder of the Anderson Note," because the note was payable to Wilmington, and Wilmington "did not indorse the [Anderson] [N]ote itself." *Id.* at 247, 35 A.3d at 461-62. The court also agreed with the Andersons that the allonge purportedly transferring the note from Wilmington to Deutsche was "anachronistically impossible." *Id.* at 247, 35 A.3d at 462. It explained: "Deutsche's role as trustee did not arise until after Wilmington had transferred its rights to Morgan Stanley I; thus, by the time Wilmington reputedly made the allonge to Deutsche, Wilmington had no rights in the Note to transfer. Therefore, Wilmington did not negotiate the Note to Deutsche." *Id.* at 247-48, 35 A.3d at 462.

Notwithstanding Deutsche's status as a nonholder, the Maryland Court of Appeals determined that because the Andersons "conceded the transfer history of the Note, the Substitute

Trustees may enforce [it] as nonholders in possession," as agents for Deutsche, with the rights of a holder. *Id.* at 243, 35 A.3d at 458-59; *see also id.* at 252, 35 A.3d at 464 ("On the record here, the Substitute Trustees may enforce the Anderson Note as nonholders in possession who have the rights of holders."). The court also recognized that under Maryland law "a reputed transferee in possession of an unindorsed mortgage note has the burden to establish its rights under the note . . . ." *Id.* at 245, 35 A.3d at 460. The court explained, *id.*:

> We agree that, when put at issue properly (as was the case here), a reputed transferee in possession of an unindorsed mortgage note has the burden to establish its rights under that note—especially in instances where the mortgagor requests an injunction to foreclose enforcement by the possessor based on such a defense. Maryland Rule 14–207(b)(3)[1] requires a mortgagee to produce a copy of the note. Thereafter, the Maryland Commercial Law Article takes over and . . . requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to payment under § 3-308(a)).[1]

The court added: "[G]iven the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly." *Id.* at 245-46, 35 A.3d at 460.

The significance of the *Anderson* case is at least threefold. First, it recognizes that, pursuant to C.L. § 3-301, a nonholder, *i.e.* a transferee of the instrument who is in possession of the instrument, may still be entitled to enforce it. Second, the case acknowledges that there are methods to establish the right to enforce a note even without possession of the instrument, such as a lost note affidavit. Third, it emphasizes that the burden is on the person or entity seeking to enforce the instrument to establish his/its interest, and the court is permitted to take evidence on this point.

With this framework in mind, I turn to plaintiffs' contentions. They argue that, given the Trust's termination, "none of the Appellees has demonstrated a right to enforce the Howes' Note, and the bankruptcy court erred in holding otherwise and dismissing the Complaint." ECF 18 at

11, Reply.  Plaintiffs also contend that the Bankruptcy Court erred by "putting the burden on Appellants to find a competing claimant, or pay the claimant . . . despite [the claimant's] failure to establish its right to enforce the note."  ECF 19 at 29, Second Amended Brief.  Stated differently, plaintiffs maintain that the Bankruptcy Court improperly ruled that one of the adversary defendants has a valid interest in the Note and, in so holding, alleviated the claimant of its burden to establish its standing to enforce the Note.  And, they assert that, under C.L. § 3-201, "the subject Note is order paper, and since it is payable to the Trust, and the Trust ceased to exist before the Second Foreclosure Case was filed, the plaintiffs in the Second Foreclosure case lacked the necessary standing to file it, and that case was a nullity."  *Id.*

Although not identical to *Anderson*, 424 Md. 232, 35 A.3d 452, a similar "chain-of-possession [ ] quagmire" presented itself in this case.  The adversary defendants may not be "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"  C.L. § 1-201(b)(20)(a).  The Note itself may be lost.  Nonetheless, under Maryland law these two factors are not dispositive of a party's rights under C.L. § 3-309(a).  Pursuant to C.L. § 3-309(b), however, the person or entity seeking to enforce the instrument "must prove the terms of the instrument and the person's right to enforce the instrument."

Plaintiffs misconstrue the Bankruptcy Court's ruling.  Notwithstanding Judge Gordon's view as to the termination of the Trust, the Bankruptcy Court did *not* rule that any of the adversary defendants has a definitive right to enforce the Note.  To the contrary, Judge Gordon explicitly stated that the question of who has the right to enforce the Note remains open, subject to proof and to challenge.  Indeed, he recognized that the Howes were entitled to know the identity of their creditor, and that the party seeking to enforce the Note bears the burden of

proving its right to do so. Apx. 226-27, Hearing of March 4, 2014. Therefore, the MTD Order of May 12, 2014, directed the defendant claiming the right to enforce the Note to submit evidence explaining the right to do so. Apx. 285-287. In addition, Judge Gordon permitted the Howes to file an amended complaint and/or a claim objection to dispute the right to enforce the Note. Apx. 287, MTD Order. Such a disposition comports with applicable Maryland law.

Thereafter, on April 3, 2015, Carrington, on behalf of Christiana, filed the Ostermann Affidavit, which confirmed that Christiana is the owner of the loan (Apx. 237), and sent the Christiana Ownership Materials to plaintiffs. Apx. 236-37. This, too, comports with Maryland's Commercial Law Article and *Anderson*.[50]

The Howes then had two avenues to challenge the claim of ownership of the Note or the claim of entitlement to enforce it. First, the Bankruptcy Court granted the Howes leave to file an amended claim objection to the Amended Proof of Claim. In the alternative, the Bankruptcy Court permitted the Howes to file an amended complaint. Yet, the Howes elected not to challenge Christiana's interest in the Note via either method.

For the foregoing reasons, I conclude that the record does not support the Howes' contention that the Bankruptcy Court improperly ruled that an adversary defendant was entitled to enforce the Note without first having to establish its right to do so.

### D.    Count III -- Sanctions for Defective Proof of Claim

Count III alleged "Sanctions for Defective Proof of Claim" as to Wells Fargo and US Bank. Apx. 43, Complaint at 22. In general, plaintiffs insisted that both Wells Fargo and US

---

[50] As indicated, an Amended Transfer Notice was filed in the bankruptcy case, notifying Debtor that the Amended Claim was transferred from Wells Fargo to Christiana. Apx. 37, Complaint ¶ 56.

Bank filed defective claims. They asserted that defendants failed to comply with Fed. R. Bankr. P. 3001, and sought an order prohibiting U.S. Bank and Wells Fargo from presenting any evidence in support of their Amended Proof of Claim. Apx. 45, Complaint ¶ 97.

US Bank and Wells Fargo filed proofs of claim in the bankruptcy case. As indicated, on March 8, 2013, US Bank filed its initial Claim in the bankruptcy case, designated as "Claim No. 4." Apx. 36, Complaint ¶¶ 53-54. According to the Howes, the initial Claim was flawed because it failed to include an itemized statement of the interest, fees, and expenses incurred prepetition, an escrow account statement, and other necessary attachments. Apx. 43, Complaint ¶ 89. The Howes contend that the lack of supporting documentation translated "to no evidence of perfection" and no "breakdown of the claimed arrearage." Apx. 36, Complaint ¶ 53.

On March 15, 2013, seven days after Wells Fargo filed its initial Claim, it filed an Amended Claim, designated "Claim 4-2," which identifies Wells Fargo as the creditor, instead of US Bank. Apx. 36, Complaint ¶ 54. Pursuant to Fed. R. Bankr. P. 3001(c)(2), Wells Fargo submitted with the Amended Claim a "Mortgage Proof of Claim Attachment," which itemized "the fees, expenses, and charges due on the claim," Apx. 36, Complaint ¶ 54; an "Escrow and Account Disclosure Statement" dated November 21, 2012, Apx. 403; the Deed of Trust, Apx. 385; and purportedly indorsed copies of the Note and Allonge. Apx. 381-84. With respect to the Amended Claim, the Howes insist it was defective because it "failed to attach [ ] a copy of the writing upon which it was based since the Note it attached is made payable to the order of the Trust, and the Trust terminated and ceased to exist in January 2012." Apx. 43, Complaint ¶ 91.

Debtor filed a Claim Objection on April 2, 2013, "notif[ying] Wells Fargo that the Amended Claim is defective since it included no evidence of Wells Fargo's standing to file it." Apx. 44-45, Complaint ¶ 92. The Howes complained that Wells Fargo and US Bank did not

respond to their Claim Objection. Apx. 44, Complaint ¶ 96. As a remedy, the Howes sought to enjoin Wells Fargo and US Bank from presenting evidence in the bankruptcy case. Apx. 45, Complaint ¶ 97. They also requested attorney's fees. *Id.*

Fed. R. Bankr. P. 3001 is titled "Proof of Claim." Rule 3001(c)(2)(A) states: "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c)(2)(D) provides that "the court may" impose sanctions against a creditor who fails to attach the required documentation and information required under Fed. R. Bankr. P 3001(c)(2). Such "remedies" are "permissive." *In re Goeller*, No. 12-17123-RGM, 2013 WL 3064594, at *2 (Bankr. E.D. Va. June 19, 2013). Ultimately, however, "[a] bankruptcy court's decision to impose sanctions [ ] is within its sound discretion and is, therefore, reversible only if that discretion has been abused." *In re Nat'l Heritage Found., Inc., supra*, 510 B.R. at 541.

Notwithstanding a failure to include all the information required under Rule 3001 in the initial claim, a bankruptcy court "retains discretion to allow an amendment to a proof of claim under appropriate circumstances . . . ." Fed. R. Bankr. P. 3001 advisory comm. nn. (2011). Moreover, a bankruptcy court may "determine[ ] that the failure was substantially justified or is harmless . . . ." Fed. R. Bankr. P. 3001 (b)(2)(D)(i). In fashioning the appropriate remedy for a violation of Rule 3001, "[f]actors such as culpability, harm and materiality should be considered." *In re Goeller, supra*, 2013 WL 3064594, at *2.

Dismissal of Count III was proper. To the extent the Howes contend that the initial Claim and the Amended Claim were fraudulent because US Bank and Wells Fargo failed to disclose the Trust's termination (Apx. 43, Complaint ¶ 91), this argument is unavailing, for the

reasons already discussed.  And, although the initial Claim did not comport with Fed. R. Bankr. P. 3001, due to a failure to provide a breakdown of the claim arrearage, this error was corrected a mere seven days later, through the Amended Claim and the submission of the Mortgage Proof of Claim Attachment.  Apx. 37.  The Bankruptcy Court did not abuse its discretion by permitting the amendment or by denying plaintiffs' request for sanctions.

### E.    Count IV -- Unlawful Inspection of Fees

Count IV alleged "Unlawful Inspection of Fees."  The Howes contend that the Amended Claim submitted by Wells Fargo in the bankruptcy case includes unlawful inspection fees that contravene Md. Code (2013 Repl.), C.L. § 12–1027.  Apx. 46, Complaint ¶ 103; Apx. 374, Amended Claim.  According to the Howes, the purported fees are actually "disguised" inspection fees.  Apx. 36, Complaint ¶ 55.  In particular, they allege: "The Inspection Fees were for visual inspections of the Property, were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants."  Apx. 46, Complaint ¶ 104.  The Howes also sought a determination that U.S. Bank, Wells Fargo, and their successors could not collect any interest, costs, fees, or other charges with respect to the Note.  Apx. 46, Complaint ¶ 106.

It is not apparent from the record or the Bankruptcy Court's Memorandum Opinion why the court granted defendants' motions to dismiss as to Count IV.  Unlike most of the claims in the Complaint, this claim does not rely upon the termination of the Trust.  Nonetheless, upon a *de novo* review, dismissal of this claim was proper because plaintiffs failed to state a claim under Fed. R. Civ. P. 8.

The fees in issue are listed on the Mortgage Proof of Claim Attachment, submitted with the Amended Claim.  Apx. 378.   Of particular relevance, the attachment includes a "Statement

of Prepetition Fees, Expenses, and Charges," which "[i]temize[s] the fees, expenses, and charges due on the claim . . . ." *Id.*  Next to "Property inspection fees," the amount listed is "$0.00." *Id.* But, next to "Appraisal/broker's price opinion fees," the following dates and amounts were listed: "9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00, 6/13/12: $90.00." *Id.*  These fees amount to $320.00, as indicated on the form. *Id.*

The Howes posit: "The Inspection Fees are violations of CL § 12-1027 and may not be imposed. Any credit grantor who violates § 12-1027 may collect only the principal amount of the Note and may not collect any interest, costs, fees, or other charges with respect to the Note. In addition, a credit grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." Apx. 46, Complaint ¶ 105.

Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 12-1027 provides (italics in C.L. § 12-1027):

> (a) *"Lender's inspection fee"* defined. -- In this section, "lender's inspection fee" means a fee imposed by a credit grantor to pay for a visual inspection of residential real property.
>
> (b) Except as provided in subsection (c) of this section, a credit grantor may not impose a lender's inspection fee in connection with a loan made to a consumer borrower that is secured by residential real property.
>
> (c) A lender's inspection fee may be imposed on a consumer borrower if the inspection is needed to ascertain completion of:
>
>> (1) Construction of a new home; or
>>
>> (2) Repairs, alterations, or other work required by the credit grantor.
>
> (d) This section does not apply to an appraisal of the value of real property by a credit grantor or to fees imposed in connection with an appraisal.

To be sure, C.L. § 12–1027(a) refers to an inspection fee, not an appraisal fee.  The

statute prohibits the collection of "inspection fees" for the "visual inspection of residential real property." But, it expressly does not apply to "appraisal of the value of real property by a credit grantor or to fees imposed in connection with an appraisal." C.L. § 12-1027(d).

Carrington and Christiana maintained that the contested fees were appraisal costs and not inspection fees. They explained, Apx. at 169, Carrington MTD:

> The Proof of Claim originally filed by Wells Fargo does not contain any property inspection fees. In fact, the Proof of Claim explicitly labels the fees that the plaintiffs contend are "property inspection fees" as "Appraisal/broker's price opinion fees." The plaintiffs provide no evidence at all that these fees are "property inspection fees" or anything other than "Appraisal/broker's price opinion" fees. Since plaintiffs provide no factual support for the conclusory allegation that these fees are anything other than "Appraisal/broker's price opinion fees," Count four fails to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007). Therefore, Count Four must be dismissed.

Wells Fargo and US Bank lodged a similar challenge to Count IV. They asserted, Apx. 90, Wells Fargo MTD: "In a conclusory allegation, [the Howes] contend that these Inspection Fees 'were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants.' Complaint, ¶ 104. This, however, is but an opinion without any factual basis." According to Wells Fargo and US Bank, the claim is nothing more than "a case of clever pleading." Apx. 336, Hearing of January 6, 2014.

As noted, under Fed. R. Bankr. P. 8, Fed. R. Civ. P. 8 applies here. To satisfy Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Twombly*, 550 U.S. at 555. Although federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss., supra*, 135 S. Ct. at 346, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Iqbal, supra,*

566 U.S. at 684; *Painter's Mill Grille, LLC, supra,* 716 F.3d at 350. Here, aside from naked allegations, plaintiffs did not provide any facts to support the notion that the contested fees listed on the "Statement of Prepetition Fees, Expenses, and Charges" as appraisal fees were actually inspection fees precluded by C.L. § 12-1027. Therefore, the court properly dismissed Count IV, with leave to amend.

### F. Count V – Truth In Lending Act

Count V alleged violations of TILA by Wells Fargo, US Bank, Unknown Defendant, and Christiana.[51] Apx. 47, Complaint at 26. Plaintiffs allege that when the Note and Deed of Trust were successively assigned to Wells Fargo, US Bank, and Christiana, notice requirements were triggered under TILA with each transfer but were not satisfied by defendants.

In particular, the Howes alleged that when US Bank acquired an interest in the Note, purportedly on November 21, 2009 (Apx. 47, Complaint ¶ 109), neither US Bank nor its servicer, Wells Fargo, notified the Howes of their new creditor, as required by 15 U.S.C. § 1641(g). According to the Howes, Wells Fargo and US Bank also failed to disclose their position on partial payments, as required by 15 U.S.C. § 1639c(h). Similarly, they claimed that when the Note was allegedly removed from the Trust on January 1, 2012, and when the Note was purportedly transferred to Christiana, notice of a new creditor and information on the creditor's stance on partial payments, were not sent to the Howes. Apx. 47, Complaint ¶¶ 112,

---

[51] Wells Fargo and US Bank point out that plaintiffs erroneously refer to TILA as part of Title 11 of the United States Code. They assert, Apx. 91-92, MTD Memo at 15 -16 n.12:

> Of course, TILA is part of Title 15, and the correct citations are 15 U.S.C. §§ 1639c(h) and 1641(g), not 11 U.S.C. §§ 1639c(h) and 1641(g). The irony is not lost that, in a Complaint filled with allegations of fraud based on obvious mistakes, Mr. and Mrs. Howes have misspoken in their pleading. Notwithstanding these errors, Wells Fargo and U.S. Bank do not ascribe to them an intent to mislead the Court or to misrepresent the law to Defendants.

118.  For these alleged TILA violations, the Howes sought statutory damages in the amount of $4,000.

Congress enacted TILA, 15 U.S.C. §§ 1601 *et seq.*, to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998), and imposes civil liability on creditors who fail to do so. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54, (2004); 15 U.S.C. § 1640(a).

The notice requirements are set forth in 15 U.S.C. §§ 1639c(h) and 1641(g). In pertinent part, § 1641(g) provides:

> **(g) Notice of new creditor.**
>   **(1) In general.**
>   In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including —
>       (A) the identity, address, telephone number of the new creditor;
>       (B) the date of transfer;
>       (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>       (D) the location of the place where transfer of ownership of the debt is recorded; and
>       (E) any other relevant information regarding the new creditor.

Section 1639c(h) states:

**(h) Policy regarding acceptance of partial payment**

In the case of any residential mortgage loan, a creditor shall disclose prior to settlement or, in the case of a person becoming a creditor with respect to an existing residential mortgage loan, at the time such person becomes a creditor-
    (1) the creditor's policy regarding the acceptance of partial payments; and
    (2) if partial payments are accepted, how such payments will be applied to

81

such mortgage and if such payments will be placed in escrow.

Wells Fargo and US Bank argue that the TILA claims against them are barred by limitations, as set forth in 15 U.S.C. § 1640(e). It states: "[A]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." Wells Fargo and US Bank contend: "Mr. and Mrs. Howes' cause of action accrued . . . on December 31, 2011. The instant Complaint was not filed until September 3, 2013, well past the statutory deadline for notices triggered by assignments . . . . As such, the TILA claims under Count V are time-barred, and must be dismissed." Apx. 93, Wells Fargo MTD at 17.

Here, if the TILA violation allegedly committed by US Bank and Wells Fargo occurred in January 2012, when the Trust was terminated and the Howes were not notified of a new creditor, then the Howes had to file suit by January 2013, in order to satisfy 15 U.S.C. § 1640(e). Because suit was not filed until September 3, 2013, the TILA claims as to Wells Fargo and US Bank are barred by limitations.

In the alternative, plaintiffs argue that, even if Count V as to Wells Fargo and US Bank is time-barred, they nevertheless may assert their TILA claim as a "recoupment" defense to the Amended Claim, warranting a reduction of the Note balance for each violation.   Apx. 49, Complaint ¶ 121.B.  Plaintiffs insist recoupment as a defense in not subject to the statute of limitations. Apx. 151-52, Howes Opposition to Wells Fargo MTD.

As plaintiffs suggest, the doctrine of recoupment permits circumvention of the statute of limitations to the extent a claim is pleaded defensively. Indeed, on the subject of recoupment, the Supreme Court has stated: "Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262 (1935). With respect to TILA in particular, the statute provides guidance. Section 1640(e) provides, in part:

82

> This subsection [establishing the one-year statute of limitations] does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

Notably, at the hearing on January 6, 2014, counsel for Wells Fargo insisted that plaintiffs "don't [have] an affirmative claim" for TILA violations. Apx. 338. But, counsel conceded: "There may be a recoupment available as a defense." Apx. 337.

The Fifth Circuit decision in *In Re: Coxson*, 43 F.3d 189 (5th Cir. 1995), cited by plaintiffs, is informative. There, debtors filed an adversary proceeding complaint and claimed that certain loan documents violated TILA. The *Coxson* Court concluded that the TILA violations were defensive because they were in response to the defendants' proof of claim. *Id.* at 194 (citing *In re Jones*, 122 B.R. 246, 249 (W.D. Pa. 1990)); *see also Allen v. Bank of Am., N.A.*, No. EP-14-CV-429-KC, 2015 WL 1726986, at *14 (W.D. Tex. Apr. 15, 2015) ("[T]he mere fact that the party raising the recoupment claim is the plaintiff in a TILA case does not necessarily preclude a finding that the claim is raised defensively."); *In re McClendon*, 488 B.R. 876, 887 (Bankr. E.D.N.C. 2013) ("Although procedurally offensive on its face, an adversary proceeding can serve as the proper context for recoupment when the primary objective is to defeat the basis of the original proof of claim.").

In *In re Salazar*, Adv. Pro. No. 10-00101, 2011 WL 1237648, at *6 (Bankr. D. Md. Mar. 30, 2011), Judge Catliota explained:

> [T]he Court routinely consolidates separate objections to claims with related adversary proceedings that involve interrelated issues concerning the same transaction. To deny Plaintiffs the defense of recoupment here [because it was included in an adversary proceeding complaint] would be to elevate form over substance.

Plaintiffs' decision to lodge the TILA violation via an adversary proceeding does not

preclude plaintiffs from using the TILA violation as a defense to the claims of the defendants. Plaintiffs' TILA violations may serve as a basis for a recoupment defense or a set-off in regard to the claim objection. Moreover, given that the plain language of 15 U.S.C. § 1640(e) provides that the one-year statute of limitations does not bar a recoupment defense, plaintiffs are not foreclosed from relying on their TILA allegations to support a recoupment defense.

It does not appear from the record or the Bankruptcy Court's Memorandum Opinion of November 5, 2014, that the Bankruptcy Court intended to foreclose the Howes from lodging a recoupment defense based on the alleged violations of TILA. Indeed, in both the MTD Order and the Reconsideration Order, the Bankruptcy Court granted plaintiffs an opportunity to file an amended objection to the Amended Claim. Plaintiffs chose not to do so. Although plaintiffs did not comport with the deadlines set by the Bankruptcy Court, the Bankruptcy Court may, under 15 U.S.C. § 1640(e), grant leave to the Howes to file a belated amended claim objection setting forth a TILA recoupment defense.

### G. Count VI -- Fair Debt Collection Practices Act

In Count VI, plaintiffs alleged violations of the FDCPA against Wells Fargo, US Bank, and Christiana. They characterize various representations made by US Bank and Wells Fargo in the foreclosure cases and in the bankruptcy case as "false, deceptive, or misleading." Apx. 51, Complaint ¶ 135.

Congress enacted the FDCPA in 1977, *see* Pub. L. 95-109, 91 Stat. 874 (1977), to protect consumers from debt collectors who engage in "abusive debt collection practices . . . , to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer &*

*Ulrich LPA*, 559 U.S. 573, 576 (2010) (same); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). The statute is concerned with "rights for consumers whose debts are placed in the hands of the professional debt collectors . . . ." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009). "A significant purpose of the Act" is the elimination of "abusive practices by debt collectors . . . ." *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). Because the FDCPA is a remedial statute, *id.*, it is construed liberally in favor of the debtor. *See, e.g.*, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987) (recognizing that remedial statutes are to be construed liberally)); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

Section 1692e(5) of 15 U.S.C. provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .(5) The threat to take any action that cannot legally be taken or that is not intended to be taken." Section 1692f of the same Title states, *inter alia*: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

To establish a claim under the FDCPA, "a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*,

528 F. App'x 297 (4th Cir. 2013). "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1), (a)(3)." *Russell*, 763 F.3d at 389. "The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion. *Id.* § 1692k(a)(2)(A)." *Id.*

In particular, the Howes contend that "US Bank caused at least three false affidavits to be filed in the First Foreclosure Case, including the Kennerty Affidavits . . . ." Apx. 50-51, Complaint ¶ 130. As noted, it is unclear from the record as to the precise date that the Kennerty Affidavits were submitted in the First Foreclosure Case, but it was sometime before January 3, 2011, when the case was voluntarily dismissed. Apx. 31, Complaint ¶ 36. The Howes also contend that, when initiating the Second Foreclosure Case on February 21, 2012, US Bank and Wells Fargo falsely claimed ownership of the Note, in violation of the FDCPA. Apx. 51, Complaint ¶ 131. They also insist that during the Second Foreclosure Case, US Bank and Wells Fargo filed at least four false affidavits in an effort to establish their interest in the Note. Apx. 51, Complaint ¶ 132.

With respect to the bankruptcy case, the Howes allege that both US Bank and Wells Fargo asserted falsely that the Debtor was liable to it for $740,334.24. In addition, the Howes contend that the Plan Objection submitted by Wells Fargo on January 9, 2013, on behalf of US Bank, "falsely claimed" that US Bank was the holder of the Note. Apx. 50, Complaint ¶ 127. Collectively, according to the Howes, this conduct amounts to "falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and using false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10)." Apx. 51, Complaint ¶ 135. The Howes sought statutory damages in the amount of $1,000.00 for each purported FDCPA violation, and a

86

reduction in the balance of the Note by way of recoupment. Apx. 52, Complaint ¶ 52.

In response, Wells Fargo and US Bank argue that the FDCPA claim is barred by limitations. Apx. 93, Wells Fargo MTD at 17. Under 15 U.S.C. § 1629K(d), "[a]n action to enforce any liability created by [the FDCPA] may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." It appears that the statute of limitations bars some, but not all, of the alleged FDCPA violations here. In particular, misrepresentations in the foreclosure cases are time barred, but purported misrepresentations in the bankruptcy case are not.

The First Foreclosure Case was voluntarily dismissed on January 3, 2011. Therefore, the time to challenge any representations made in the case as violative of the FDCPA expired long before the adversary Complaint was filed on September 3, 2013. The initiation of the Second Foreclosure Case occurred on February 21, 2012. Again, the adversary Complaint here was not filed until September 3, 2013. Thus, allegations challenging statements made in the foreclosure cases were properly dismissed under the FDCPA.

Nevertheless, even if these FDCPA claims are time-barred, they may serve as a basis for a recoupment defense. For the same reasons set forth in the discussion concerning plaintiffs' TILA claims, *supra*, the alleged FDCPA violations committed during the foreclosure cases may establish a valid recoupment defense, not barred by limitations. Accordingly, the Bankruptcy Court may grant the Howes leave to file an amended claim objection to lodge such a defense.

Turning to the purported misrepresentations by US Bank and Wells Fargo made in the bankruptcy case, plaintiffs challenge the Plan Objection filed on January 9, 2013, the initial Claim filed on March 8, 2013, and the Amended Claim filed on March 15, 2013. With respect to

these statements, the statute of limitations had not yet expired when the Complaint was filed on September 3, 2013.

Although the allegations of FDCPA violations appear timely, the court properly dismissed these FDCPA claims. Again, the theory of liability hinged on the effect of the termination of the Trust. In the Plan Objection, the Howes claimed that Wells Fargo, on behalf of US Bank "as trustee for the Trust . . . . falsely claimed that US Bank is the holder of the Note . . . ." Apx 50, Complaint ¶ 127. For the reasons already discussed, this theory of liability is flawed. Therefore, dismissal of the FDCPA claim was warranted.

I turn to the FDCPA claims against Christiana, which are also not barred by the statutory one-year limitations period. As indicated, Christiana did not obtain an interest in the Note until after commencement of the Chapter 13 case. Plaintiffs insist that Christiana "violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt, as prohibited by 15 U.S.C. § 1692e, including but not limited to falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and used false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10)." Apx. 51, Complaint ¶ 135. However, the Complaint does not identify a particular offending document or affidavit submitted by Christiana in the bankruptcy case that is fraudulent or deceptive. Rather, the theory of liability against Christiana appears to be that because the Trust was terminated, the transfer of the Amended Claim to Christiana was invalid. In plaintiffs' view, any effort on the part of Christiana to prosecute the Amended Claim and collect on the Note in the bankruptcy case contravenes the FDCPA.

In response, Christiana contends its conduct did not come within the ambit of the FDCPA

because it is not a debt collector. It explains, Apx. 169, Carrington MTD at 5:

> The Complaint alleges that WSFS Bank is a debt collector as defined by 15 U.S.C. § 1692a(6) which reads: "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." However, the statute continues to define the term debt collector by clarifying that, "The term does not include— (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* As such mortgage lenders and servicers have been expressly excluded from FDCPA claims.

Christiana's argument is flawed. It maintains that the Howes cannot state a claim against Christiana under the FDCPA because "loan servicers" and "lenders" are not "debt collectors." But, the exemption for loan servicers and lenders "does not apply where a loan servicer acquires a loan after it has already gone into default." *Zervos v. Ocwen Loan Servicing, LLC*, JKB-11-CV-03757, 2012 WL 1107689, at *3 (D. Md. Mar. 29, 2012). Indeed, contrary to the assertions of Christiana, there is no absolute rule or express exclusion in the FDCPA that precludes mortgage lenders and servicers from being debt collectors. The inquiry is much more fact-bound and requires an examination of the entity collecting or attempting to collect the debt and the status of the debt when such efforts commenced.

In particular, the FDCPA defines the term "debt collector," in relevant part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Therefore, to be subject to the FDCPA, the entity must be "a business the principal purpose of which is the collection of any debts," or one that "regularly collects or attempts to collect . . . debts . . . ." 15 U.S.C. § 1692a(6); *see Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208-09 (9th Cir. 2013); *Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).

Further, the Act specifies that the definition of "debt collector" "does not include" an entity that is "collecting or attempting to collect any debt . . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." § 1692(a)(6)(F)(iii).   Generally speaking, entities servicing or collecting a debt they were assigned before default are considered "*creditors*" under the Act. A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

"The structure of the Act suggests that" an entity receiving or attempting to collect money due on a debt "must be one or the other," that is, either a debt collector or a creditor. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 539 (7th Cir. 2003); *see F.T.C. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."); *accord Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011). In other words, creditors and debtors are generally "mutually exclusive" categories under the FDCPA. *Schlosser*, 323 F.3d at 536.

Provided the entity meets the basic criteria to be either a "debt collector" or a "creditor" under the FDCPA, the status of the entity (*i.e.*, debt collector versus creditor) in any given case is determined with respect to the particular debt at issue, and depends on the purpose for which the entity is assigned the debt. *See* 15 U.S.C. § 1692a(4) (excluding from definition of "creditor" a person who "receives an assignment or transfer of *a debt* in default *solely for the purpose of facilitating collection* of such debt for another") (emphasis added); *id.* § 1692(a)(6)(F)(iii)

90

(excluding from definition of "debt collector" a person who is collecting "any debt . . . to the extent such activity . . . (iii) concerns *a debt* which was not in default at the time it was obtained . . . .") (Emphasis added). "If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt." *Schlosser*, 323 F.3d at 536. "On the other hand, if [the entity] simply acquires the debt for collection, it is acting more like a debt collector." *Id.*[52]

"To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment . . . ." *Schlosser*, 323 F.3d at 536; *see also* 15 U.S.C. § 1692a(4); *id.* § 1692(a)(6)(F)(iii). The Sixth Circuit has summarized the basic analysis as follows, *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012):

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.[1] The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

*Accord Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013).[53]

Christiana, the party seeking to collect on the debt, did not originate the debt but instead acquired it through a transfer on or about June 11, 2013. Under these circumstances, the analysis

---

[52] Of course, an entity that does not also meet the general criteria defining "debt collector" in 15 U.S.C. § 1692a(6) would not be subject to the FDCPA even if it were assigned a debt already in default.

[53] Although the legal status of the debt itself is significant, it is not always dispositive. Under certain circumstances, in order to prevent absurd results, courts have looked to the entity's behavior with regard to the debt upon assignment. For example, an entity that mistakenly believes a debt was in default when the entity acquired the debt, and treats it as such, is not freed from the strictures of the Act by its own error. *Schlosser*, 323 F.3d at 358; *see also Bridge*, 681 F.3d at 362-63; *Gritters v. Ocwen Loan Servicing, LLC*, 14-C-00916, 2014 WL 74151682, at *4 (N.D. Ill. Dec. 31, 2014); *Belin v. Litton Loan Servicing, LP*, 8:06-cv-760-T-24 EAJ, 2006 WL 1992410, at *3 (M.D. Fla. July 14, 2006).

generally turns on whether the debt was in default at the time it was acquired. When the Note was purportedly assigned to Christiana, the debt had long been in default. Indeed, Mr. Howes had already sought Chapter 13 protection. Given the default on the debt, Christiana would qualify as a debt collector under the FDCPA. But, that does not end the analysis.

Although distinguishable, *Stewart v. Bierman, supra*, 859 F. Supp. 2d 754, is instructive. There, plaintiffs asserted that defendants violated the FDCPA and the Maryland Consumer Protection Act, C.L. §§ 13-201 *et seq.*, because law firm employees fabricated signatures on the order to docket foreclosure and other documents. In concluding that the signatures contained on the foreclosure documents were not material for the purposes of the FDCPA, Judge Titus stated, 859 F. Supp. 2d at 764:

> While the Court agrees that the Defendants' foreclosure practices were shortcuts that do not comply with the signature and acknowledgement requirements of the Maryland rules, the facts alleged by Plaintiffs do not rise to the level of materiality on which a FDCPA claim can be maintained. Although the trustee signatures are alleged not to be those of the Defendants, they are not actionable because they were not material. *See Warren* [*v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374-75 (4th Cir. 2012)]. The Orders to Docket were correct in every way except that the signatures were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (rejecting plaintiff's argument that defendant's conduct violated Section 1692e because plaintiff "never denied in her complaint that she owed [defendant] a debt, nor did she claim that [defendants] misstated or misrepresented the amount that she owed"); *Johnson*, 2011 WL 4550142, at *10 ("To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim [because] insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e.") (quotation omitted).

Judge Titus relied on the same reasoning to dismiss plaintiffs' MCPA claim. Notably, he said: "The manner or procedure of affixing signatures to documents that are accurate in every other way except for the signature does not affect the accuracy of the underlying debt. . . . The actual process and method of affixing signatures to court documents is immaterial to a debtor

where the existence of the debt and a default are not disputed." *Id.* at 679.

In affirming the dismissal of the FDCPA and MCPA claims, the Fourth Circuit reasoned in *Lembach*, 528 F. App'x at 303 (internal citation omitted):

> Although we do not look favorably upon improper behavior by attorneys, we ultimately cannot find that the misrepresentations [the substitute trustee] made are material because they have no connection to the debt at issue in this case. The Lembachs were unquestionably in default, and the documents correctly stated the debt. The Lembachs fail to allege how they, or any consumer, would be misled by a signature by someone other than the trustee that is affixed to a document that was substantively correct. We recognize the fact that the trustee's signature was required under the Maryland rules to file a foreclosure action. However, the fact that Maryland has adopted foreclosure regulations that address the particularities of filing a foreclosure action has no bearing on whether a signature is material under federal law. Because the signatures have no connection to the debt, and the Lembachs fail to show how the fraudulent signatures would mislead even the least sophisticated consumer, their claim fails.

Despite Christiana's status under FDCPA as a debt collector, dismissal of the FDCPA claim as to Christiana was proper. As indicated, in the Complaint the Howes did not identify any particular statement or affidavit submitted by Christiana in the bankruptcy case as false or deceptive. This distinguishes the claims against Christiana from the claims against US Bank and Wells Fargo. As to US Bank and Wells Fargo, plaintiffs alleged that US Bank and Wells Fargo filed false affidavits in the First Foreclosure Case and in the Second Foreclosure Case. In contrast, the alleged deception committed by Christiana was merely an effort by Christiana to prosecute the Amended Claim in the bankruptcy case, despite termination of the Trust. Apx. 50, Complaint ¶ 126.

Once again, the theory of the liability rests on the faulty premise that because the Trust was terminated, no adversary defendant, including Christiana, could claim ownership of the Note. Plaintiffs suggest Christiana engaged in deceptive acts by not disclosing the termination of the Trust. For the reasons already discussed, however, this argument is unavailing. Therefore, dismissal of the FDCPA claim as to Christiana was proper, because any failure to disclose the

termination of the Trust was not material.

### H.    Count VII – Maryland Consumer Debt Collection Act; Count VIII -- Maryland Consumer Protection Act

Count VII alleges that Wells Fargo, US Bank, and Christiana violated the MCDCA, Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 14-201 *et seq.*  In Count VIII, plaintiffs allege that Wells Fargo and US Bank violated the MCPA, C.L. §§ 13-201 *et seq.*   Both counts pertain to defendants' efforts to enforce the Note in the foreclosure cases and the bankruptcy case.  In plaintiffs' view, US Bank, Wells Fargo, and Christiana allegedly sought to collect from the Howes amounts that they were not lawfully due, in violation of the MCDCA and MCPA. According to the Complaint, "as a proximate result of the Defendants' violations of the MCDCA [and MCPA], Plaintiffs have suffered damages, including emotional distress and mental anguish."  Apx. 53, Complaint ¶ 141; Apx. 53-54, Complaint ¶ 143.

On appeal, the Howes clarify the particular facts alleged in the Complaint that pertain to Counts VII and VIII.  ECF 18 at 15, Reply.  In particular, the Howes complain, *inter alia*, that the Amended Claim contains "bogus foreclosure and inspection fees, and fails to credit all of Debtor's payments." Apx. 45, Complaint ¶ 96; *see also* Apx. 27-28, Complaint ¶ 22. They seek actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment, to the extent that plaintiffs' claims are otherwise barred by limitations.

The MCDCA prohibits certain enumerated actions by a debt collector in "collecting or attempting to collect" an "alleged debt arising out of a consumer transaction." C.L. §§ 14-201(b), 14-202; *see also* C.L. § 14-202(1)-(9) (enumerating prohibited actions). The statute authorizes a civil action against a collector "for any damages proximately caused by" a violation of the MCDCA, "including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." C.L. § 14-203.

94

The MCPA prohibits certain "unfair or deceptive trade practices." C.L. § 13-301. It contains a private right of action allowing a plaintiff "to recover for injury or loss sustained by him as the result of a practice prohibited by" the MCPA. C.L. § 13-408(a).   One of the "unfair or deceptive trade practices" prohibited by the MCPA is a violation of the MCDCA. *See* C.L. § 13-301(14)(iii). Here, plaintiffs' MCPA claims as to Wells Fargo and US Bank are expressly predicated on the alleged violation of the MCDCA.   *See* Apx. 53, Complaint ¶ 143.   Thus, it seems that, as to Wells Fargo and U.S. Bank, Counts VII and VIII stand or fall together.

To bring an action under C.L. § 13-408, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [him] actual injury." *Bierman, supra*, 859 F. Supp. 2d at 768 (citing *Lloyd v. Gen Motors Corp., supra*, 397 Md. at 143, 916 A.2d at 257).   Of particular relevance here, the MCPA requires an "actual injury."  *Id.*

In *Citaramanis v. Hallowell*, 328 Md. 142, 151, 613 A.2d 964, 968 (1992), the Maryland Court of Appeals emphasized that because the MCPA's private right of action is limited to recovery of "injury or loss sustained," C.L. § 13-408, a "plaintiff pursuing a private action under the MCPA [must] prove actual 'injury or loss sustained'" in order to prevail.  *Id.* at 151, 613 A.2d at 968 (citation omitted); *accord McDaniel v. Baranowski*, 419 Md. 560, 587–88, 19 A.3d 927, 943 (2011). Because the MCDCA's private right of action is similarly predicated on recovery of "damages proximately caused by" a violation of the statute, C.L. § 14-203, there is no basis to conclude that the Maryland courts would reach a different interpretation of the MCDCA. Thus, actual damages appear to be a necessary element under both statutes.

The decision of the Maryland Court of Appeals in *Lloyd v. Gen. Motors Corp., supra*, 397 Md. 108, 916 A.2d 257, is instructive.  There, the court stated, *id.* at 143, 916 A.2d at 277:

> This Court has held . . . that a private party suing under the Consumer
> Protection Act must establish "actual injury or loss." *Citaramanis v. Hallowell,*

328 Md. 142, 153-54, 613 A.2d 964, 969 (1992); *Morris v. Osmose,* 340 Md. 519, 538 n. 10, 667 A.2d 624, 635 n. 10 (1995); *McGraw v. Loyola Ford, Inc.,* 124 Md. App. 560, 581, 723 A.2d 502, 512 (1999), *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999). See Maryland Code, (1975, 2005 Replacement Vol.) § 13-408 of the Commercial Law Article ("any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title"). We have, in earlier cases, established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation. *Golt v. Phillips,* 308 Md. 1, 11-14, 517 A.2d 328, 333-335 (1986); *Citaramanis,* 328 Md. at 151-53, 613 A.2d at 968-70 (1992); *Morris v. Osmose,* 340 Md. at 538 n. 10, 667 A.2d at 635 n. 10 (1995); *McGraw v. Loyola Ford,* 124 Md.App. 560, 581, 723 A.2d 502, 512 (1999), *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999).

Here, plaintiffs contend that, as a result of the purported misrepresentations, they "have suffered damages, including emotional distress and mental anguish." Apx 52, Complaint ¶ 141. Judge Gordon noted that plaintiffs did not allege reliance on the purported misrepresentations.

A close review of plaintiffs' complaint reveals that their MCDCA and MCPA claims are couched in conclusory language, but are devoid of any factual detail as to the actual loss sustained as a result of the purported misrepresentations. They offer no facts to suggest that they paid any or all of the debt as a result of alleged misrepresentations. They also do not suggest that they are in default because of representations made by the adversary defendants. In the absence of any detrimental reliance on the basis of the purported misrepresentations, dismissal of the MCDCA and MCPA claims, without prejudice, was proper.

### I.    Count IX – Objection to Claim

Count IX is an "Objection to Claim," in which plaintiffs challenged the Amended Claim filed by US Bank and Wells Fargo in the bankruptcy case, but now owned by Christiana.    According to plaintiffs, U.S. Bank and Wells Fargo lacked standing to file the Amended Proof of Claim; failed to credit plaintiffs with all payments made; and sought fees and

other costs to which they are not entitled. Apx. 55, Complaint ¶ 146. [54] In view of the foregoing, plaintiffs asked the court to reject the Amended Proof of Claim or to reduce it by the amount of damages awarded under their Complaint.

Although "the existence of a claim is controlled by state law, the allowance or disallowance of a claim in bankruptcy is a matter of federal law" to be decided by the bankruptcy court in "an exercise of its equitable powers." *In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992). To guide this process, the Bankruptcy Code sets forth a burden-shifting framework to establish the amount and validity of a claim. Fed. R. Bankr. P. Rule 3001(f); *see In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004). The process commences with the filing of a proof of claim by a creditor. The proof of claim is the creditor's statement of the amount and character of the claim. Fed. R. Bankr. P. Rule 3001(a).

A proof of claim is considered *prima facie* evidence of the amount and validity of the claim. Fed. R. Bankr. P. Rule 3001(f); *see In re Reid*, No. 05-11977 NVA, 2007 WL 2898703, at *1 (Bankr. D. Md. Sept. 28, 2007), *aff'd sub nom. Reid v. Knarf Investments*, 353 F. App'x 786 (4th Cir. 2009); *In re Bird*, No. 03-52010-JS, 2007 WL 2684265, at *5 (Bankr. D. Md. Sept. 7, 2007); *In re Anderson*, 349 B.R. 448, 461 (E.D. Va. 2006. The burden then shifts to the debtor to object to the claim and to rebut the presumptive validity of the claim. *In re Bird*, 2007 WL 2684265, at *5; *In re Merry–Go–Round Enterprises*, 241 B.R. 124, 134 (D. Md. 1999).

The objection may be included in an adversary proceeding complaint, with other affirmative claims. Fed. R. Bankr. P. 3007(b); Fed. R. Bankr. P. 3007 advisory comm. nn. (2007)(stating that "[a] party in interest may [ ] include an objection to the allowance of a claim

---

[54] The allegations in Count IX parallel, in many respects, the allegations in Count II, requesting a "Determination of Scope, Extent and Validity of Lien."

in an adversary proceeding).   Nevertheless, the objecting party has the burden of "presenting sufficient evidence to overcome the prima facie effect of the filed proof of claim." *In re Dornier Aviation (N. Amierca) Inc.*, No. 02-8199-SSM, 2005 WL 4781236, at *11 (Bankr. E.D. Va. Feb. 8, 2005), *aff'd*, 453 F.3d 225 (4th Cir. 2006). "[I]f a debtor meets its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Harford*, 372 F.3d at, 640.

In this case, the Bankruptcy Court dismissed the Objection to Claim, without prejudice. Although Judge Gordon's rationale for dismissing this Objection to Claim was not explicit, he patently rejected plaintiffs' threshold argument that the Trust's termination precluded any of the adversary defendants from prosecuting a claim in the Chapter 13 case in connection with the Note. But, he acknowledged the "confusion" as to the basis for Christiana's claim of ownership to the Note, and that the Howes may be entitled to certain reductions in the claim based on recoupment. Apx. 226, Hearing of March 4, 2014. As noted, he directed Christiana to file evidence in support of its claim of entitlement to enforce the Note. *Id.* at 229-230. And, he said that plaintiffs were entitled to lodge a challenge to the claim, through an amended complaint or an amended claim objection. *Id.*

The Bankruptcy Court did not err in permitting the purported holder of the Note to submit supporting documentation; the ruling was in keeping with the claims objection procedure set forth in Fed. R. Bankr. P. 3007(b). Accordingly, no error occurred in dismissal of the Objection of Claim, without prejudice.

### J.    Motions for Reconsideration

Fed. R. Civ. P. 59 governs a motion to amend judgment and is applicable in bankruptcy court pursuant to Fed. R. Bankr. P. 9023.   A motion for relief from judgment under Fed. R. Civ.

P. 60 is committed to the discretion of the bankruptcy court, pursuant to Fed. R. Bankr. P. 9024. Because Judge Gordon's rulings were not erroneous or incorrect as a matter of law, he neither erred nor abused his discretion in denying the Howes' motions for reconsideration.

## II.    Conclusion

For the foregoing reasons, I affirm the Bankruptcy Court's MTD Order entered on May 12, 2014, dismissing Count I, with prejudice, and Counts II through IX, without prejudice. I also affirm the Bankruptcy Court's Reconsideration Order entered on July 22, 2014, denying the Howes' motions for reconsideration.    I also recognize that the Howes may have valid recoupment defenses warranting a reduction in the Amended Claim.  As such, the Bankruptcy Court may grant the Howes leave to file an amended objection to claim.

In view of the foregoing, I shall lift the stay of plan confirmation, which was granted, pending the outcome of this appeal, by this Court's Order entered December 16, 2014.  ECF 29.

A separate Order follows, consistent with this Memorandum Opinion.


Date:  September 30, 2015                        /s/
                                          Ellen L. Hollander
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY V. HOWES, *et al.*

    *Appellants,*

    v.                                                            Civil Action No. ELH-14-2814

WELLS FARGO BANK, N.A., *et al.*,

    *Appellees.*

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this 30th day of September, 2015, by the United States District Court for the District of Maryland, ORDERED that:

1) The Motion to Strike filed by Wells Fargo and US Bank (ECF 20) is DENIED;

2) The Bankruptcy Court's Order entered May 12, 2014, and its Order entered July 22, 2014, are AFFIRMED. Therefore, the appeal (ECF 1) is DENIED;

3) The stay of plan confirmation pending the outcome of this appeal, granted by this Court's Order entered December 16, 2014 (ECF 29), is hereby lifted; and

4) The Clerk shall CLOSE THIS CASE.

                                    /s/_____
                                    Ellen Lipton Hollander
                                    United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re | : | |
| Jeffrey V. Howes, | : | |
| Debtor | : | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiff- Appellants, | : | |
| vs. | : | Appeal No. 1:14-cv-02814-ELH |
| | | (Bankruptcy Case No. 12-30614 & Adv. |
| | | Proc. 13-00510) |
| Wells Fargo Bank N.A., et al., | : | |
| Defendant-Appellees | : | |

**NOTICE OF APPEAL TO UNITED STATES COURT
OF APPEALS FOR THE FOURTH CIRCUIT**

Jeffrey V. Howes and Tonya H. Howes, Plaintiff-Appellants herein, appeal to the United

States Court of Appeals for the Fourth Circuit from the Order of the United States District Court

for the District of Maryland, entered in this case on September 30, 2015, denying the appeal and

affirming the Bankruptcy Court's *Order Denying Plaintiffs' Motions to Reconsider Order*

*Dismissing Complaint and Objection to Ownership Affidavit,* entered July 22, 2014, and the

*Order Dismissing Complaint for Failure to State a Claim,* entered May 12, 2014.

The names of all parties to the judgment, order, or decree appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

Wells Fargo Bank, N.A., Defendant
U.S. Bank, National Association, Defendant
Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road

Towson, Maryland 21204
443-901-2360

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Carrington Mortgage Services, LLC, Defendant
Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich
Mortgage Loan Trust, Series 2013-2, Defendant
Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
*301-490-3361*

*Attorneys for Defendants Carrington Mortgage Services, LLC and Wilmington Savings Fund*
*Society, FSB.*

Respectfully submitted,
*/s/ Robert J. Haeger, October 27, 2015*
Robert J. Haeger, Bar No. 25434
Attorney for Plaintiff-Appellants
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; bob@haegerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing Notice of Appeal to be sent on October 27, 2015, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorneys for Carrington Mortgage*
*Services, LLC and Wilmington Savings*
*Fund Society, FSB*

*/s/ Robert J. Haeger, October 27, 2015*
Robert J. Haeger

3

United States District Court,
N.D. Illinois,
Eastern Division.

# Robert JAIMES and Beata Jaimes, Plaintiffs,
## v.
# JPMORGAN CHASE BANK, N.A. and Washington Mutual Bank, F.A., Defendant.

N.D.Ill.,2013.
Jaimes v. JPMorgan Chase Bank, N.A.
Not Reported in F.Supp.2d, 2013 WL 677740 (N.D.Ill.)

No. 12 C 3162.
Feb. 25, 2013.

Robert Lee Stone, Property Rights Law Group, P.C., Chicago, IL, for Plaintiffs.

Edward J. Lesniak, Tiffany Lin Sorge Smith, Burke, Warren, MacKay & Serritella, PC, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

## JOHN Z. LEE, District Judge.

*1 Plaintiffs Robert and Beata Jaimes ("Plaintiffs") have sued Defendants JPMorgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank, F.A. ("WaMu") alleging that Chase fraudulently held itself out as the creditor and servicer of the mortgage debt on Plaintiffs' house and sought and received payments from Plaintiffs when Chase knew that it had no interest in the debt. Plaintiffs bring claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.,* the Illinois Fair Debt Collection Practices Act, 225 Ill. Comp. Stat. 425 *et seq.,* the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.,* the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.,* and common law claims of quiet title and unjust enrichment. Chase moves to dismiss Plaintiffs' claims alleging that it owned Plaintiffs' debt. For the reasons provided herein, the Court grants Chase's motion. Chase is dismissed as a defendant, but Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

## *Facts*

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir.2010). On March 26, 2004, Plaintiffs entered into a mortgage loan agreement with WaMu and signed a promissory note ("Note") secured by a mortgage ("Mortgage") for property located at 1759 East Cree Lane, Mount Prospect, Illinois. (Compl.¶ 1.) On May 1, 2004, WaMu sold and transferred the Note and Mortgage to a mortgage-backed-securities trust, the "WaMu Mortgage Pass–Through Certificates, Series 2004–AR5" ("Trust"). ( *Id.* ¶ 15.) Under the terms of the Trust, WaMu retained possession of the notes and mortgages as custodian for the Trust and remained the servicer of the mortgage loans in the Trust. ( *Id.* Ex. C, Trust Prospectus Supplement S–12.) On March 30, 2005, the Trust was terminated. (Compl.¶ 17.)

Beginning on or about September 25, 2008, Chase sent, and Plaintiffs paid, many bills in which Chase asserted that it was the creditor and servicer of Plaintiffs' Note and Mortgage. (Compl.¶ 1.)

According to public records, which the Court may consider in a motion to dismiss, *see U.S. v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991),[FN1] on September 25, 2008, the federal government's Office of Thrift Supervision closed WaMu and the Federal Deposit Insurance Corporation ("FIDC") was named receiver. (Purchase and Assumption Agreement between JP Morgan Chase Bank, NA and the FDIC ("P & A Agreement") 1.) [FN2] That same day, Chase and the FDIC entered into an agreement pursuant to which Chase purchased "all right, title, and interest of the Receiver in and to all of the assets" of WaMu and its subsidiaries. ( *Id.* § 3.1.) The P & A Agreement also stated that Chase "specifically purchases all mortgage servicing rights and obligations of [WaMu]." ( *Id.*)

FN1. The Court may also consider public court documents at the motion to dismiss stage without converting a motion to dismiss into a motion for summary judgment. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994).

FN2. The P & A Agreement is publicly available on the FDIC's website: www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. Other courts have taken judicial notice of the P & A Agreement because it is a public record and not the subject of reasonable dispute. *See e.g., Yetiv v. Chase Home Fin. LLC,* No. 4:11–cv–01250, 2012 WL 112597, at *4 n. 1 (S.D.Tex. Jan.11, 2012) (taking judicial notice of the P & A Agreement and collecting cases in which other courts also took judicial notice of the P & A Agreement and its provisions); *Nguyen v. Bank of Am. Nat. Ass'n,* 11–CV–03318, 2011 WL 5574917, at *3–4 (N.D.Cal. Nov.15, 2011); *McCann v. Quality Loan Service Corp.,* 729 F.Supp.2d 1238, 1241 (W.D.Wash.2010); *Molina v. Wash. Mut. Bank,* No. 09–CV–00894, 2010 WL 431439, at *3 (S.D.Cal. Jan. 29, 2010); *Allen v. United Fin. Mortgage Corp.,* 660 F.Supp.2d 1089, 1093–94 (N.D.Cal.2009). Additionally, Plaintiffs acknowledge the P & A Agreement in their Response Brief and recognize that the P & A Agreement "transferred servicing rights and obligations of WaMu to Chase." (Pl.'s Resp.

2

Opp'n Mot. 5.) Plaintiffs deny, however, that the P & A Agreement transferred rights related to their Note and Mortgage to Chase because, Plaintiffs argue, "WaMu lost all interest in the loan" when the Trust was terminated in March 2005. ( *Id.*)

*2 On August 8, 2011, a law firm sent Plaintiffs a letter identified as "an attempt to collect a debt." ( *Id.* ¶ 21.) The letter stated that the firm "represents the holder of a Mortgage and Note" for Plaintiffs' house. (Compl., Ex. H, Debt Collection Letter ¶ 3.) The letter also stated that "the current creditor is JP Morgan Chase Bank" and "[t]he current servicer of the loan is JP Morgan Chase Bank." ( *Id* . ¶ 4.)

According to public court documents, on August 11, 2011, Chase filed a complaint for foreclosure against Plaintiffs in the Circuit Court of Cook County. *See* Circuit Court of Cook County, County Dep't, Chancery Division, case number 11–CH–28430.

On April 27, 2012, Plaintiffs filed this suit alleging that Chase never acquired an interest in their Note or Mortgage and, therefore, that Chase's attempts to collect payments from them were fraudulent. Chase contends that it owned Plaintiffs' debt and moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b).

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. Of Boone,* 483 F.3d 454, 457 (7th Cir.2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Id.*

However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Additionally, Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This heightened pleading standard for claims involving fraud requires a party to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir.2009). The particularity requirement of Rule 9(b) is designed to discourage a "sue

3

first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir.2011).

## *Discussion*

## I. Chase's Interest in Plaintiffs' Debt

*\*3* All of Plaintiffs' claims in their five-count complaint are grounded on their theory that Chase had no interest in their Note or Mortgage.[FN3] If Chase had an interest in their debt, either equitably as servicer or legally as owner, none of Plaintiffs' claims can survive a motion to dismiss.

FN3. In Count I, Plaintiffs allege that Chase violated the Fair Debt Collection Practices Act ("FDCPA"), which imposes civil liability on debt collectors who use misrepresentation in debt collection, 15 U.S.C. §§ 1692e, by seeking and receiving mortgage debt payments from Plaintiffs which "were actually "owed ... to another," " and by "knowingly and intentionally communicat[ing] ... false ... statements to Mr. and Mrs. Jaimes representing or implying that JPMorgan Chase was and is the servicer of the Note." (Compl.¶¶ 28–42.) Plaintiffs also allege that Chase violated the FDCPA provisions that prohibit harassment and nondisclosure, §§ 1692d-g, by using "unfair and unconscionable means to collect the alleged debt," by sending "threatening correspondence" to Plaintiffs regarding the debt, and by failing to properly validate the debt. ( *Id.*) In Count II, Plaintiffs allege that Chase "falsely asserted that JPMorgan Chase was the "creditor" and "servicer" of the Note and the Mortgage" and that these "false claims" cloud title on their home. ( *Id.* ¶¶ 45–50.) In Count III, Plaintiffs allege that Chase was unjustly enriched when it collected debt payments from Plaintiffs because "JPMorgan Chase has no legal interest in the Note or the Mortgage." ( *Id.* ¶¶ 51–58.) In Count IV, Plaintiffs allege that Chase violated the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act by fraudulently asserting that it had an interest in Plaintiffs' debt when "they had no rights under the Note or Mortgage." ( *Id.* ¶¶ 59–65.) And in count V, Plaintiffs allege that Chase violated the Illinois Fair Debt Collection Practices Act by seeking and receiving payments "that were actually owed to another entity" because "JPMorgan Chase is not a creditor." ( *Id.* ¶¶ 66–71.)

## A. Transfer to Trust

To support their contention that Chase had no interest in their debt, Plaintiffs allege that after they signed the Note and Mortgage in March 2004 with WaMu, the original mortgagee, WaMu sold the Note and Mortgage to the Trust in May 2004. (Compl.¶ 15.) Plaintiffs attach to the Complaint a Prospectus Supplement the Trust filed with the Securities and Exchange Commission ("SEC") in May 2004 that describes the assets of the Trust. ( *Id.,* Ex. C, Trust Prospectus Supplement S–18.) According to the Prospectus Supplement, the Trust held 725 mortgage loans, each of which had (1) a first payment

4

date between September 2003 and June 2004; (2) an original term to maturity of not more than thirty years; (3) payments due on the first day of each month; and (4) a conventional mortgage loan evidenced by a mortgage note with a fixed interest rate for approximately the first five years after origination and an adjustable interest rate after that. ( *Id.*) The Prospectus Supplement also indicates that 19 of the 725 mortgage loans in the Trust were Illinois mortgage loans. ( *Id.* S–60.)

Plaintiffs contend that their Note and Mortgage was among the 19 Illinois mortgage loans placed in the Trust. (Compl.¶ 15.) Plaintiffs admit that the Trust's Prospectus Supplement does not mention their specific loan, property, or any transfer of their Note or Mortgage, but they claim that at this point they do not have access to all of the information that Defendants have, including information about whether their Mortgage was placed in the Trust. (Pls.' Resp. Opp'n. Dismiss ¶ 7.)

At the motion to dismiss stage when the Court must accept as true all well-pleaded facts and draw all possible inferences in the plaintiff's favor, *Tamayo,* 526 F.3d at 1081, Plaintiffs have pled enough facts to make it plausible that their Mortgage was sold to the Trust. The Trust's Prospectus Supplement does not identify any of the specific mortgages that were sold to the Trust; it identifies only the characteristics of the mortgages sold to the Trust. Plaintiffs' Mortgage, attached to the Complaint as Exhibit A, has the characteristics of the mortgages held by the Trust as described in the Prospectus Supplement: the first payment date on Plaintiffs' Mortgage is May 1, 2004; the original term to maturity is thirty years; payments are due on the first of each month; the initial interest rate is 4.250% for the first five years and adjustable after that; and the mortgage originated in Illinois. (Compl. Ex. A, Jaimes Mortgage 1–2.)

But the Court's analysis does not end there. The Seventh Circuit has held that a mortgage servicer may have equitable ownership of a claim against a borrower and, therefore, may, like a mortgage owner, sue the borrower. *CWCapital Asset Management, LLC v. Chi. Properties, LLC,* 610 F.3d 497, 501 (7th Cir.2010). In *CWCapital,* a mortgage servicer brought suit against the borrower. *Id.* at 499. The mortgage was part of a mortgage-backed security held by a trust. *Id.* at 500. Pursuant to a pooling and servicing agreement ("PSA") signed by the trustee and the servicer, the trust held legal title to the mortgage and the servicer acted as the trust's collection agent. *Id.* at 500–501. The PSA provided that the servicer "shall ... have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable." *Id.* at 500. The Seventh Circuit held that this language established that "[t]he securitization trust holds merely the bare legal title; the Pooling and Servicing Agreement delegates what is effectively equitable ownership of the claim ... to the servicer." *Id.* at 502. The Court also noted that the trustee submitted an affidavit ratifying the servicer's suit against the borrower. *Id.* Consequently, the Seventh Circuit held, the servicer "ha[d] the whip hand" and could bring suit against the borrower. *Id.*

*4 Here, when WaMu sold mortgages and notes to the Trust, WaMu relinquished legal title to those notes and mortgages. (Trust Prospectus Supplement S–17.) ("The

5

mortgage pool will be the primary asset of the Trust. The Trust will own the right to receive all payments of principal and interest on the mortgage loans due after May 1, 2004.") WaMu remained, however, the servicer of the mortgages and notes in the Trust. (Compl.¶ 15.) As servicer, WaMu's duties included "collection and remittance of principal and interest payments, administration of mortgage escrow accounts, collection of insurance claims and, if necessary, foreclosure." (Trust Prospectus 24–24.) Thus, WaMu retained equitable ownership of the mortgages in the Trust and could collect payments from borrowers whose mortgages were in the Trust.

As a result, if Plaintiffs' Note and Mortgage were transferred to the Trust, as Plaintiffs contend, Chase would still have an interest in Plaintiffs' debt if WaMu had remained the servicer of the Trust until September 25, 2008, when WaMu closed and Chase entered into a P & A Agreement pursuant to which Chase purchased WaMu's assets, including Plaintiffs' Note and Mortgage. In such a scenario, Plaintiffs would not have a plausible theory that allows the court to draw the reasonable inference that Chase is liable for the misconduct alleged.

## B. Trust's Termination

Under Plaintiffs' theory, however, whether WaMu had an equitable ownership in Plaintiffs' debt after it was transferred to the Trust is immaterial because Plaintiffs contend that the Trust was terminated on March 30, 2005, and the Trust's assets "were distributed to the certificate-holders of the Trust" such that the certificate-holders "became the only mortgagees, the only owners and legal holders of the Note and the Mortgage." (Compl.¶¶ 17–18.) As a result, Plaintiffs argue, "WaMu lost all interest in the loan" and neither WaMu nor any of its subsidiaries, parents, or successors had any authority to collect mortgage payments, assign the Note or Mortgage, or foreclose. ( *Id.* ¶ 19, Pl.'s Resp. Opp'n Mot. ¶ 12.)

This is where Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.

First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust. *See Pagano v. One West Bank, F.S.B.,* No. 11–00192, 2012 WL 74034, at *5 n. 6 (D.Haw. Jan.10, 2012) ("Courts have rejected theories that securitization alters the relationship or rights of the original parties"); *Reyes v. GMAC Mortg. LLC,* No. 2:11–CV–100, 2011 WL 1322775, at *3 (D.Nev. Apr. 5, 2011) ("securitization "merely creates a 'separate contract, distinct from [p]laintiffs['] debt obligations" under the note and does not change the relationship of the

6

parties in any way") (citing *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.,* No. 2:10–cv–375, 2010 WL 4788209, at *4 (D.Utah Nov.16, 2010)); *Upperman v. Deutsche Bank Nat'l Trust Co.,* No. 1:10–CV–149, 2010 WL 1610414, at *3 (E.D.Va. Apr. 16, 2010) ("[t]here is no authority ... that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.")

*5 Plaintiffs' own Mortgage confirms this. Plaintiffs' Mortgage provides that the "Lender may transfer this Note" and that "the Note ... can be sold one or more times without prior notice to Borrower." (Compl. Ex. B, Jaimes Mortgage ¶ 20.) The Mortgage further provides that such a sale "might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note." ( *Id.*) The Mortgage never states that upon securitization or transfer or a change in servicer that the borrowers' payment obligations disappear. Rather, the Mortgage provides that the "Borrower has promised to pay this debt ... in full," regardless of who owns or services the loan. ( *Id.* 1.) It is reasonable, therefore, for the Court to infer, even under Plaintiffs' theory, that, upon the Trust's termination, the servicing rights on Plaintiffs' debt remained with WaMu. WaMu was the original servicer, the servicer under the Trust, and Plaintiffs fail to allege that anyone other than WaMu was the servicer of their debt after the Trust's termination.

Second, in September 2008, Chase assumed, through the P & A Agreement, "all right, title, and interest ... in and to all of the assets" of WaMu and its subsidiaries, including "all mortgage servicing rights and obligations of [WaMu]." (P & A Agreement § 3.1.) At that same time, Chase began sending Plaintiffs bills for their Mortgage, which Plaintiffs paid. (Compl.¶ 1.) Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them. *See Sipe v. Countrywide Bank,* No. CVF–09–798, 2010 WL 2773253, at *14 (E.D.Cal. July 13, 2010) (rejecting the claim that defendant misrepresented it had the right to collect payments on pooled mortgages, reasoning that "Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan ... Whether or not [defendant] is legally entitled to service Plaintiff's [loan] does not harm Plaintiff in the absence of allegations that Plaintiff was also making loan payments to a third party.") Thus, again, even under Plaintiffs' theory, it is reasonable for the Court to infer that the servicing rights on Plaintiffs' debt transferred from WaMu to Chase pursuant to the P & A Agreement in September 2008.

In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination. Plaintiffs' theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Moreover, Plaintiffs' theory fails to provide the Court

7

with "the who, what, when, where, and how," of Chase's fraud as required by Rule 9(b). Fed.R.Civ.P. 9(b); *Rolls–Royce Corp.*, 570 F.3d at 853.

*6 Because Plaintiffs have failed to plead factual content that allows the Court to draw a reasonable inference that Chase never had an interest in their debt, and all of Plaintiffs' claims against Chase are predicated on that theory, Plaintiffs' claims against Chase are dismissed.[FN4]

FN4. Because Plaintiffs' claims against Chase fail for the reasons stated, the Court need not address Chase's argument that, as a bank, the FCDPA and ICAA are not applicable to Chase.

## II. Leave to Amend

In its Motion to Dismiss, Chase contends that Plaintiffs should not be given leave to amend their complaint because any amendments would be futile. (Def.'s Mot. Dismiss 6–7.) Plaintiffs have not moved for leave to amend their complaint, and Plaintiffs stated in their Response Brief that they "do not believe that any amendment will be necessary." (Pls.' Resp. Opp'n Mot. 4.)

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (th Cir.2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Given this standard, it would be premature for the Court to bar Plaintiffs from amending their complaint at this stage of the litigation. Plaintiffs have not yet moved to amend their complaint, and the Court cannot conclude at this time that all possible amendments would be futile. Thus, Defendant's request to bar Plaintiffs from amending their complaint is denied.

The Court reminds Plaintiffs, however, that Rule 11 prohibits parties and attorneys from bringing claims for an improper purpose, such as to harass cause an unnecessary delay. Fed.R.Civ.P. 11(b) (1). The Court also notes that other courts have found similar claims to be baseless and sanctionable. *See, e.g., Nguyen*, 2011 WL 5574917, at *6 (ordering Plaintiff's counsel to show cause as to why he should not be sanctioned under Rule 11 for bringing repeated actions alleging Chase had no interest in Plaintiff's debt for an improper purpose and stating that "the Court finds that the complaint in this case has been filed for the purpose of causing undue delay to avoid what appears to be a proper foreclosure sale. To allow Plaintiff yet another bite at the apple at this point would unduly prejudice the Defendants ... Therefore, the Court finds that any amendment would likely

8

be futile.") If Plaintiffs seek leave to amend their complaint, they must do so within twenty-eight (28) days of this order.

### *Conclusion*

For the reasons herein, the Court grants Chase's motion to dismiss [20]. Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

**SO ORDERED.**

9

Entered: March 04, 2016
Signed: March 04, 2016
SO ORDERED



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

In re:                                          *

Jeffrey V. Howes                                *       Case No. 12-30614 RAG
                                                        Chapter 13
                                                *
        Debtor                                  *

*   *   *   *   *   *   *   *   *   *   *   *   *

## ORDER DISMISSING CASE WITH PREJUDICE TO DEBTOR'S
## REFILING FOR TWENTY-FOUR MONTHS

On January 8, 2016, this Court entered an Interim Order Requiring Debtor to Escrow

Funds Pending Final Judgment in Adversary Proceeding (Order) [Dkt. No. 201]. Pursuant to the

Order, the Debtor is required to make certain specified payments to the Trustee on a timely basis.

The Order also provides that if the Debtor fails to timely make the payments, then the Trustee

shall give the Debtor notice of the asserted default and the Debtor would then have five days to

cure such default. Lastly, the Order provides that if the Debtor does not timely cure a default and

the Trustee files an affidavit that confirms the failure to cure, then the case shall be dismissed

with prejudice to the Debtor's ability to refile for bankruptcy protection for twenty-four (24)

months.

The Trustee filed three Lines [Dkt. No. 203, 204, and 207] alleging defaults by the Debtor for his failure to timely make, i) two of his $5,980 monthly plan payments, ii) the $155,840 escrow payment and iii) timely provide the Trustee copies of his 2013 and 2014 tax returns. The Lines were served on the Debtor and his counsel. On March 2, 2016, the Trustee filed an Affidavit Regarding Material Default (Affidavit) [Dkt. No. 210].    The Affidavit indicates a new default, namely that the Debtor failed to pay any of the $4,870 escrow payments required by the Order that are intended to compensate for his failure to make his regular monthly mortgage payments. The Affidavit also indicates that the Debtor has not cured two of his earlier defaults i.e., the failure to pay the $155,840 into escrow and to supply his tax returns. Accordingly, it is by the United States Bankruptcy Court for the District of Maryland hereby

ORDERED, that this bankruptcy case is dismissed with prejudice to the Debtor's refiling for twenty-four (24) months from the date of entry of this Order; and

ALL PARTIES ARE HEREBY NOTIFIED that the automatic stay imposed by 11 U.S.C. § 362(a) is terminated.


cc:    Debtor
       Debtor's Counsel -- Robert Haeger, Esquire
       Trustee -- Gerard Vetter, Esquire
       United States Trustee
       All Creditors


**End of Order**

Form ntcdsm

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### at Baltimore

In re:  Case No.:  **12−30614 RAG**    Chapter:  **13**

Jeffrey V Howes
Debtor(s)

## NOTICE OF DISMISSAL

TO: All Creditors and Interested Parties

You are hereby notified that an Order Dismissing the above case  was entered on 3/4/16.

ALL PARTIES ARE HEREBY NOTIFIED, that the automatic stay imposed by 11 U.S.C. § 362(a) is terminated.

Dated: 3/4/16

Mark A. Neal, Clerk of Court
by Deputy Clerk, Shannon McKenna  301−344−3390