In The

# United States Court of Appeals
### For The Fourth Circuit

## JEFFERY V. HOWES; TONYA H. HOWES,

*Plaintiffs – Appellants*,

v.

## WELLS FARGO BANK, N.A.; US BANK NATIONAL ASSOCIATION; CARRINGTON MORTGAGE SERVICES, LLC; CHRISTIANA TRUST, a Division of Wilmington Savings Fund Society, FSB,

*Defendants – Appellees*,

**and**

## SELENE FINANCE, L.P.,

*Defendant,*

## ELLEN W. COSBY,

*Trustee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

_____

### APPENDIX

_____

Gregory Bryl, Esq.
BRYL LAW OFFICES
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 360-4950

*Counsel for Appellants*

**TABLE OF CONTENTS - APPENDIX TO APPELLANTS' BRIEF**

| ECF Number (Bookmark) | Document Description | Page |
|---|---|---|
| | Claim 4 | 370 |
| | Amended Claim 4 | 374 |
| 16 (Bkr) | Statement of Financial Affairs | 407 |
| | | |
| 1 | Notice of Appeal | 1 |
| 1-3 | Docket Bankruptcy Case | 4 |
| 1-4 | Complaint | 22 |
| 1-14 | Motion to Dismiss Memo (Wells Fargo & US Bank) | 77 |
| 1-21 | Response Memo to (1-14) Motion to Dismiss Memo (Wells Fargo & US Bank) | 127 |
| 1-23 | Joint Rule 26(f) Report | 158 |
| 1-24 | Scheduling Order | 162 |
| 1-25 | Amended Motion to Dismiss (Carrington & Christiana Trust) | 165 |
| 1-26 | Response to (1-25) Amended Motion to Dismiss (Carrington & Christiana Trust) | 172 |
| 1-29 | Supplemental Memo (Wells Fargo & US Bank) | 182 |
| 1-31 | Supplemental Memo (Appellants) | 200 |
| 1-32 | Transcript Hearing March 4, 2014 | 207 |
| 1-33 | Line Ownership Affidavit | 234 |
| 1-35 | Motion to Reconsider Oral Ruling Dismissing & Objection to Ownership Affidavit | 238 |
| 1-39 | Order Dismissing Complaint | 285 |
| 1-40 | Response to Motion to Reconsider  (Carrington & Christiana Trust) | 288 |
| 1-42 | Motion to Reconsider Dismissal Order & Objection to Ownership Affidavit | 294 |
| 1-45 | Order Denying Motion to Reconsider | 297 |
| 1-46 | Designation of Record on Appeal & Issues Presented | 299 |
| 1-48 | Amended Statement of Issues Presented | 304 |
| 2-1 | Plan Objection | 307 |
| 2-2 | Objection to Amended Claim 4 | 309 |
| 2-21 | Order Denying Claim Objection Without Prejudice | 312 |
| 4-1 | Docket Adv. Proc. No. 13-510 | 313 |
| 4-2 | Transcript Hearing January 6, 2014 | 324 |
| 4-4 | Transcript Hearing July 16, 2014 | 352 |
| 5 | Docket Sheet from the District Court | 418 |
| 6 | Bankruptcy Court's Memorandum Opinion dated Nov. 5, 2014 | 422 |
| 7 | District Court Memorandum Opinion dated Sept. 30, 2015 | 447 |
| 8 | Notice of Appeal to U.S. Court of Appeals | 547 |
| 9 | Bankruptcy Court's Order dismissing case, dated March 4, 2016 | 550 |

Respectfully submitted,
*/s/ Robert J. Haeger, October 5, 2014*
Robert J. Haeger, Bar No. 25434
Attorney for Appellants
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing No Opposition Motion to Extend Time to File Appellants' Brief to be sent on October 5, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Appellees*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorneys for Appellees Carrington*
*Mortgage Services, LLC and Wilmington*
*Savings Fund Society, FSB*

*/s/ Robert J. Haeger, October 5, 2014*
Robert J. Haeger

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| _____ | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| _____ | | |

NOTICE OF APPEAL

Jeffrey V. Howes and Tonya H. Howes, Plaintiffs herein, by their attorney, Robert J.

Haeger, appeal under 28 U.S.C. § 158(a) from the judgment, order, or decree of the bankruptcy

judge, Hon. Robert A. Gordon, entered in this adversary proceeding as follows: *Order Denying*

*Plaintiffs' Motions to Reconsider Order Dismissing Complaint and Objection to Ownership*

*Affidavit* (Doc. 36), entered July 22, 2014, and the *Order Dismissing Complaint for Failure to*

*State a Claim* (Doc. 28), entered May 12, 2014.

The names of all parties to the judgment, order, or decree appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

Wells Fargo Bank, N.A., Defendant
U.S. Bank, National Association, Defendant
Douglas B. Riley, Esquire

Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
443-901-2360

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Carrington Mortgage Services, LLC, Defendant
Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich
Mortgage Loan Trust, Series 2013-2, Defendant
Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
*301-490-3361*

*Attorneys for Defendants Carrington Mortgage Services, LLC and Wilmington Savings Fund*
*Society, FSB.*

          Respectfully submitted,
          */s/ Robert J. Haeger, August 5, 2014*
          Robert J. Haeger, Bar No. 25434
          Attorney for Appellant
          11403 Seneca Forest Circle
          Germantown, MD 20876
          (888) 463-3520; www.haegerlaw.com
          Board Certified – Consumer Bankruptcy Law
          – American Board of Certification

## CERTIFICATE OF SERVICE

   I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing Notice of Appeal to be sent on August 5, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire  
Treanor Pope & Hughes, P.A.  
500 York Road  
Towson, Maryland 21204  

*Attorneys for Defendants,*  
*Wells Fargo Bank, N.A. and*  
*U.S. Bank, National Association*  

Ellen W. Cosby  
Chapter 13 Trustee  
300 E Joppa Road, #409  
Baltimore, MD 21286  

Michael T. Cantrell, Esquire  
McCabe, Weisberg & Conway  
312 Marshall Avenue, Suite 800  
Laurel, Maryland 20707  

*Attorneys for Carrington Mortgage*  
*Services, LLC and Wilmington Savings Fund*  
*Society, FSB*  

         */s/ Robert J. Haeger, August 5, 2014*  
         Robert J. Haeger

3

**EXHIBITS**

# U.S. Bankruptcy Court
## District of Maryland (Baltimore)
## Bankruptcy Petition #: 12-30614

|  |  |
|---|---|
| | *Date filed:* 11/15/2012 |
| *Assigned to:* Judge Robert A. Gordon | *341 meeting:* 12/21/2012 |
| Chapter 13 | |
| Voluntary | *Case Administrator:* Shannon McKenna |
| Asset | *Team Phone:* 301-344-3964 |

| | |
|---|---|
| ***Debtor*** | represented by **Robert Haeger** |
| **Jeffrey V Howes** | Haeger Law |
| 7000 Meandering Stream Way | 11403 Seneca Forest Circle |
| Fulton, MD 20759 | Germantown, MD 20876 |
| HOWARD-MD | 888-463-3520 |
| SSN / ITIN: xxx-xx-8923 | Fax : 888-463-3520 |
| | Email: ecf@haegerlaw.com |
| | |
| ***Trustee*** | represented by **Ellen W. Cosby** |
| **Ellen W. Cosby** | 300 E. Joppa Road, Suite 409 |
| 300 E Joppa Road, Suite 409 | Towson, MD 21286 |
| Towson, MD 21286 | (410) 825-5923 |
| (410) 825-5923 | Fax : (410) 825-5904 |
| Fax : (410) 825-5904 | Email: ECF@ch13balt.com |
| Email: ECF@ch13balt.com | |

| Filing Date | # | Docket Text |
|---|---|---|
| 08/21/2014 | **125**<br>(2 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)124 Order on Motion to Continue/Reschedule Confirmation Hearing). No. of Notices: 1. Notice Date 08/21/2014. (Admin.) (Entered: 08/22/2014) |
| 08/19/2014 | **124**<br>(1 pg) | Order Granting Motion To Continue/Reschedule Confirmation Hearing (related document(s):83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, 122 Motion to Continue/Reschedule Confirmation Hearing filed by Debtor Jeffrey V Howes). Confirmation hearing to be held on 9/17/2014 at 11:15 AM at Courtroom 1-B, Baltimore - Judge Gordon. (McKenna, Shannon) (Entered: 08/19/2014) |

Apx. 4

| | | |
|---|---|---|
| 08/14/2014 | 123<br>(2 pgs) | Sixth Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 08/14/2014) |
| 08/08/2014 | 122<br>(4 pgs; 2 docs) | Motion to Continue Confirmation Hearing August 20, 2014, at 11:15 am, and Phone Hearing Request if Necessary Filed by Jeffrey V Howes (related document(s)83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Attachments: # 1 Proposed Order) (Haeger, Robert) (Entered: 08/08/2014) |
| 07/19/2014 | 120<br>(3 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)118 Notice of Hearing). No. of Notices: 24. Notice Date 07/19/2014. (Admin.) (Entered: 07/20/2014) |
| 07/17/2014 | 119<br>(2 pgs) | BNC Certificate of Mailing. (related document(s)116 Assignment of Claim filed by Creditor Carrington Mortgage Services, LLC). No. of Notices: 1. Notice Date 07/17/2014. (Admin.) (Entered: 07/18/2014) |
| 07/17/2014 | 118<br>(1 pg) | Notice of Hearing/Status conference (related document(s)83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, 84 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, 113 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby. Hearing/status conference scheduled for 8/20/2014 at 11:15 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 07/17/2014) |
| 07/16/2014 | 121<br>(1 pg) | Hearing Held (related document(s)83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, 113 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby). CONTINUED TO 8/20/14 AT 11:15 AM (Frank, Sandy) (Entered: 07/21/2014) |
| 07/15/2014 | 117<br>(1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 07/15/2014) |
| 07/15/2014 | | Receipt of filing fee for Transfer of claim fee. Receipt Number 40101273. Fee Amount $ 25.00 received by SH. (admin) (Entered: 07/15/2014) |

Apx. 5

| 07/14/2014 | [116](#)<br>(5 pgs; 2 docs) | Assignment of Claims Transfer Agreement 3001 (e) 2 Transferor: Christiana Trust, A Division of Wilmington (Claim No. 4) To Christiana Trust,c/o Selene Finance LP Receipt Number 40101273, Fee Amount $25 Filed by Carrington Mortgage Services, LLC . (McKenna, Shannon) (Entered: 07/15/2014) |
| --- | --- | --- |
| 07/11/2014 | [115](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[114](#) Order on Motion to Continue/Reschedule Confirmation Hearing). No. of Notices: 25. Notice Date 07/11/2014. (Admin.) (Entered: 07/12/2014) |
| 07/09/2014 | [114](#)<br>(1 pg) | Order Granting Motion To Continue/Reschedule Confirmation Hearing (related document(s):[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, [112](#) Motion to Continue/Reschedule Confirmation Hearing filed by Debtor Jeffrey V Howes). Confirmation hearing to be held on 7/16/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (McKenna, Shannon) (Entered: 07/09/2014) |
| 07/08/2014 | [113](#)<br>(2 pgs) | Fifth Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 07/08/2014) |
| 07/02/2014 | [112](#)<br>(4 pgs; 2 docs) | Motion to Continue Confirmation Hearing on July 16, 2014 Filed by Jeffrey V Howes (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Attachments: # [1](#) Proposed Order) (Haeger, Robert) (Entered: 07/02/2014) |
| 07/01/2014 | [111](#)<br>(1 pg) | Chapter 13 Interim Business Report for Filing Period March-May 2014 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 07/01/2014) |
| 05/07/2014 | [110](#)<br>(1 pg) | Supplemental Disclosure of Compensation of Attorney for Debtor Filed by Robert Haeger. (Haeger, Robert) (Entered: 05/07/2014) |
| 03/28/2014 | [109](#)<br>(3 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)[108](#) Notice of Status Conference/Hearing). No. of Notices: 24. Notice Date 03/28/2014. (Admin.) (Entered: 03/29/2014) |

Apx. 6

| 03/26/2014 | [108](#)<br>(1 pg) | Notice of Status Conference/Hearing (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, [84](#) Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby). Status hearing to be held on 7/16/2014 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Frank, Sandy) (Entered: 03/26/2014) |
|---|---|---|
| 03/23/2014 | [106](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[105](#) Order on Motion to Continue/Reschedule Confirmation Hearing). No. of Notices: 24. Notice Date 03/23/2014. (Admin.) (Entered: 03/24/2014) |
| 03/21/2014 | [105](#)<br>(1 pg) | Order Granting Motion To Continue/Reschedule Confirmation Hearing (related document(s):[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, [102](#) Motion to Continue/Reschedule Confirmation Hearing filed by Debtor Jeffrey V Howes). Confirmation hearing to be held on 7/16/2014 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (McKenna, Shannon) (Entered: 03/21/2014) |
| 03/19/2014 | [107](#)<br>(2 pgs) | Hearing Held (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, [84](#) Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby. CONTINUED TO 7/16/14 AT 10:00 AM, COURTROOM 1-B, BALTIMORE; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) (Entered: 03/26/2014) |
| 03/18/2014 | [104](#)<br>(1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 03/18/2014) |
| 03/18/2014 | [103](#)<br>(1 pg) | Chapter 13 Interim Business Report for Filing Period Nov 2013 to Feb 2014 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 03/18/2014) |
| 03/17/2014 | [102](#)<br>(3 pgs; 2 docs) | Motion to Continue Confirmation Hearing set for March 19, 2014 and Appear by Phone if Not Continued Filed by Jeffrey V Howes (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Attachments: # [1](#) Proposed Order) (Haeger, Robert) (Entered: 03/17/2014) |

Apx. 7

| | | |
|---|---|---|
| 02/11/2014 | [101](#) (4 pgs) | Support Document Filed by Robert Haeger (related document(s)94 Application for Compensation filed by Debtor Jeffrey V Howes). (Haeger, Robert) (Entered: 02/11/2014) |
| 01/27/2014 | [100](#) (2 pgs) | Hearing Held (related document(s)80 Application for Compensation filed by Debtor Jeffrey V Howes, 85 Objection to Professional Fees filed by Trustee Ellen W. Cosby, 94 Application for Compensation filed by Debtor Jeffrey V Howes, 96 Motion for Miscellaneous Relief filed by Debtor Jeffrey V Howes). UNDER ADVISEMENT; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) (Entered: 02/05/2014) |
| 01/10/2014 | [99](#) (3 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)98 Notice of Hearing). No. of Notices: 24. Notice Date 01/10/2014. (Admin.) (Entered: 01/11/2014) |
| 01/08/2014 | [98](#) (1 pg) | Notice of Hearing (related document(s)94 Application for Compensation filed by Debtor Jeffrey V Howes, 96 Motion for Miscellaneous Relief filed by Debtor Jeffrey V Howes). Hearing scheduled for 1/27/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 01/08/2014) |
| 01/06/2014 | [97](#) (1 pg) | Withdrawal of Document on behalf of Jeffrey V Howes Filed by Robert Haeger (related document(s)95 Motion for Miscellaneous Relief filed by Debtor Jeffrey V Howes). (Haeger, Robert) (Entered: 01/06/2014) |
| 01/06/2014 | [96](#) (2 pgs) | Instruction Clarification Request Filed by Jeffrey V Howes. (Haeger, Robert). Related document(s) 89 Hearing Held (Bk), 94 Amended Application for Compensation for Robert Haeger, Debtor's Attorney, 8/23/2012 - 9/19/2013, Fee: $50525, Expenses: $436.99.. Notice Served on 1/5/2014 filed by Debtor Jeffrey V Howes. Modified on 1/7/2014 (McKenna, Shannon). (Entered: 01/06/2014) |
| 01/06/2014 | [95](#) (3 pgs) | Motion Seeking Clarification of Court Instructions Filed by Jeffrey V Howes. (Haeger, Robert) (Entered: 01/06/2014) |
| 01/05/2014 | [94](#) (48 pgs; 4 docs) | Amended Application for Compensation for Robert Haeger, Debtor's Attorney, 8/23/2012 - 9/19/2013, Fee: |

Apx. 8

| | | |
|---|---|---|
| | | $50525, Expenses: $436.99.. Notice Served on 1/5/2014 Filed by Robert Haeger. (Attachments: # 1 Notice of Motion # 2 Exhibit Exhibits 1-5 # 3 Proposed Order) (Haeger, Robert) (Entered: 01/05/2014) |
| 11/27/2013 | 93<br>(2 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)90 Notice of Hearing). No. of Notices: 1. Notice Date 11/27/2013. (Admin.) (Entered: 11/28/2013) |
| 11/27/2013 | 92<br>(3 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)91 Confirmation Hearing Rescheduled/Continued). No. of Notices: 24. Notice Date 11/27/2013. (Admin.) (Entered: 11/28/2013) |
| 11/25/2013 | 91<br>(1 pg) | Notice of Continued Confirmation Hearing (related document(s)83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, 84 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby). Confirmation hearing to be held on 3/19/2014 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Frank, Sandy) (Entered: 11/25/2013) |
| 11/25/2013 | 90<br>(1 pg) | Notice of Hearing (related document(s)80 Application for Compensation filed by Debtor Jeffrey V Howes, 85 Objection to Professional Fees filed by Trustee Ellen W. Cosby). Hearing scheduled for 1/27/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (Frank, Sandy) (Entered: 11/25/2013) |
| 11/20/2013 | 89<br>(2 pgs) | Hearing Held (related document(s)80 Application for Compensation filed by Debtor Jeffrey V Howes, 83 Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes, 84 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, 85 Objection to Professional Fees filed by Trustee Ellen W. Cosby). APPLC P.80-DENIED WITHOUT PREJUDICE AND WITH INSTRUCTIONS, HEARING TO BE HELD 1/27/14 AT 2:00 PM; CONFIRMATION HEARING CONTINUED TO 3/19/14 AT 10:00 AM, COURTROOM 1-B, BALTIMORE; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) (Entered: 11/25/2013) |
| 11/19/2013 | 88<br>(4 pgs) | Amended Schedules filed: Schedule C, on Behalf of Jeffrey V Howes. Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/19/2013) |

Apx. 9

| | | |
|---|---|---|
| 11/18/2013 | [87](#)<br>(1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/18/2013) |
| 11/18/2013 | [86](#)<br>(1 pg) | Chapter 13 Interim Business Report for Filing Period August-October 2013 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/18/2013) |
| 11/18/2013 | [85](#)<br>(5 pgs) | Objection to Professional Fees on behalf of Ellen W. Cosby Filed by Ellen W. Cosby (related document(s)[80](#) Application for Compensation filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 11/18/2013) |
| 11/18/2013 | [84](#)<br>(2 pgs) | Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)[83](#) Amended Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 11/18/2013) |
| 10/04/2013 | [83](#)<br>(6 pgs) | Amended Chapter 13 Plan. Amount of Payments per Month: $321, Number of Months:36, Filed by Jeffrey V Howes. (Haeger, Robert) (Entered: 10/04/2013) |
| 09/25/2013 | [82](#)<br>(3 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)[81](#) Notice of Hearing). No. of Notices: 24. Notice Date 09/25/2013. (Admin.) (Entered: 09/26/2013) |
| 09/23/2013 | [81](#)<br>(1 pg) | Notice of Hearing (related document(s)[80](#) Application for Compensation filed by Debtor Jeffrey V Howes). Hearing scheduled for 11/20/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 09/23/2013) |
| 09/19/2013 | [80](#)<br>(30 pgs; 5 docs) | Application for Compensation for Robert Haeger, Debtor's Attorney, 8/23/2012 - 9/19/2013, Fee: $50525, Expenses: $436.99.. Notice Served on 9/19/2013 Filed by Robert Haeger. (Attachments: # [1](#) Notice of Motion # [2](#) Exhibit Time # [3](#) Exhibit Costs # [4](#) Proposed Order) (Haeger, Robert) (Entered: 09/19/2013) |
| 09/14/2013 | [79](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[77](#) Order Denying Confirmation of Chapter 13 Plan with Leave to Amend). No. of Notices: 1. Notice Date 09/14/2013. (Admin.) (Entered: 09/15/2013) |
| 09/12/2013 | [78](#)<br>(1 pg) | Supplemental Disclosure of Compensation of Attorney for Debtor Filed by Robert Haeger. (Haeger, Robert) |

Apx. 10

| | | |
|---|---|---|
| | | (Entered: 09/12/2013) |
| 09/12/2013 | [77](#)<br>(2 pgs) | Order Denying Confirmation of Chapter 13 Plan with Leave to Amend (related document(s)[13](#) Chapter 13 Plan filed by Debtor Jeffrey V Howes). Amended Chapter 13 Plan due by 10/4/2013. Confirmation hearing to be held on 11/20/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Horning, Kelly) (Entered: 09/12/2013) |
| 09/04/2013 | [76](#)<br>(2 pgs) | Hearing Held (related document(s)[13](#) Chapter 13 Plan filed by Debtor Jeffrey V Howes, [23](#) Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, [25](#) Objection to Confirmation of the Plan filed by Creditor Wells Fargo Bank, NA, [33](#) Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, [41](#) Third Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, [73](#) Fourth Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby). CONFIRMATION DENIED WITH LEAVE TO AMEND BY 10/4/13. CONFIRMATION HEARING TO BE HELD 11/20/13 at 10:00 AM, COURTROOM 1-B, BALTIMORE; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) (Entered: 09/10/2013) |
| 09/03/2013 | [75](#)<br>(1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 09/03/2013) |
| 09/03/2013 | [74](#)<br>(55 pgs; 7 docs) | Adversary case 13-00510. (21 (Validity, priority or extent of lien or other interest in property)) Complaint by Robert Haeger on behalf of Jeffrey V Howes, Tonya H Howes against Wells Fargo Bank, N.A., US Bank, National Association, Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB. FEE EXEMPT. (Attachments: # [1](#) Exhibit 1-Ownership Affidavit # [2](#) Exhibit Ex. 2A.Certificateholder Distribution Summary # [3](#) Exhibit Ex. 2B. Collateral Statement # [4](#) Exhibit Ex. 2C. Loan Level Data # [5](#) Exhibit Ex. 3. Sub Tee Decl Affidavit # [6](#) Exhibit Ex. 4. NIF Affidavit) (Haeger, Robert) (Entered: 09/03/2013) |
| 08/29/2013 | [73](#)<br>(2 pgs) | Fourth Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)[13](#) Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: |

Apx. 11

| | | |
|---|---|---|
| | | 08/29/2013) |
| 08/26/2013 | [72](#)<br>(1 pg) | Chapter 13 Interim Business Report for Filing Period May through July 2013 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 08/26/2013) |
| 07/30/2013 | [71](#)<br>(2 pgs) | Consent Order Partially Disallowing Claim No. 3 (related document(s):[63](#) Motion to Approve Stipulation/Settlement Regarding Claim 3 Objection. Notice Served on 6/21/2013, Filed by Jeffrey V Howes). (James, Stephanie) (Entered: 07/30/2013) |
| 07/26/2013 | [70](#)<br>(3 pgs) | Amended Certificate of Service Filed by Robert Haeger (related document(s)[63](#) Motion to Approve Stipulation/Settlement and Notice of Motion filed by Debtor Jeffrey V Howes, [68](#) Court Instruction). (Haeger, Robert) (Entered: 07/26/2013) |
| 07/25/2013 | [69](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[68](#) Court Instruction). No. of Notices: 5. Notice Date 07/25/2013. (Admin.) (Entered: 07/26/2013) |
| 07/23/2013 | [68](#)<br>(1 pg) | Court Instruction (related document(s)[63](#) Motion to Approve Stipulation/Settlement Regarding Claim 3 Objection. Notice Served on 6/21/2013, Filed by Jeffrey V Howes. Responses due by 7/15/2013. (Attachments: # 1 Notice of Motion # 2 Exhibit Proposed Consent Order # 3 Proposed Order). Responses due by 8/7/2013. (Horning, Kelly) (Entered: 07/23/2013) |
| 06/26/2013 | [67](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[65](#) Order on Objection to Claim). No. of Notices: 4. Notice Date 06/26/2013. (Admin.) (Entered: 06/27/2013) |
| 06/26/2013 | [66](#)<br>(4 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[64](#) Court Instruction). No. of Notices: 1. Notice Date 06/26/2013. (Admin.) (Entered: 06/27/2013) |
| 06/24/2013 | [65](#)<br>(1 pg) | Order Denying (related document(s)[36](#) Objection to Claim Number 4 In Re: Wells Fargo Bank N.A. in the Amount of $740,334.24filed by Debtor Jeffrey V Howes). (Horning, Kelly) (Entered: 06/24/2013) |

Apx. 12

| 06/24/2013 | [64](#)<br>(2 pgs) | Court Instruction (related document(s)[34](#) Objection to Claim filed by Debtor Jeffrey V Howes). (Horning, Kelly) (Entered: 06/24/2013) |
| 06/21/2013 | [63](#)<br>(9 pgs; 4 docs) | Motion to Approve Stipulation/Settlement Regarding Claim 3 Objection. Notice Served on 6/21/2013, Filed by Jeffrey V Howes. Responses due by 7/15/2013. (Attachments: # [1](#) Notice of Motion # [2](#) Exhibit Proposed Consent Order # [3](#) Proposed Order) (Haeger, Robert) (Entered: 06/21/2013) |
| 06/19/2013 | | Disposition Without Hearing: re: [13](#) Chapter 13 Plan, re: [23](#) Trustee's Objection to Confirmation of Plan (batch), re: [25](#) Objection to Confirmation of the Plan, re: [33](#) Trustee's Objection to Confirmation of Plan, re: [41](#) Trustee's Objection to Confirmation of Plan - ALL MATTERS ARE CONTINUED TO 09/04/2013 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (related document(s) [13](#) Chapter 13 Plan, [23](#) Trustee's Objection to Confirmation of Plan (batch), [25](#) Objection to Confirmation of the Plan, [33](#) Trustee's Objection to Confirmation of Plan, [41](#) Trustee's Objection to Confirmation of Plan ) (Livingston, Booker) (Entered: 06/20/2013) |
| 06/17/2013 | [62](#)<br>(2 pgs) | CORRECTIVE ENTRY: SEE PROCEEDING MEMO FOR ADDITIONAL NOTES/Hearing Held (related document(s)[34](#) Objection to Claim filed by Debtor Jeffrey V Howes, [36](#) Objection to Claim filed by Debtor Jeffrey V Howes, [37](#) Response filed by Creditor Comptroller of Maryland. CONSENT-PP.34,37; DENIED WITHOUT PREJUDICE P.36 (Frank, Sandy) Modified on 6/21/2013 (Frank, Sandy). (Entered: 06/21/2013) |
| 06/17/2013 | [61](#)<br>(103 pgs; 13 docs) | Exhibit/Witness List Filed by Robert Haeger (related document(s)[36](#) Objection to Claim filed by Debtor Jeffrey V Howes). (Attachments: # [1](#) Exhibit 1 Expert Affidavit # [2](#) Exhibit 1A Report part 1 # [3](#) Exhibit 1A Expert Report - part 2 # [4](#) Exhibit 1A Expert Report - part 3 # [5](#) Exhibit 1A Expert Report - part 4 # [6](#) Exhibit Ex 2 Trust Summary # [7](#) Exhibit Ex 3 Appt Sub Tees # [8](#) Exhibit Ex 4 Owship Affd # [9](#) Exhibit Ex 5A Docket Case 2 # [10](#) Exhibit Ex 5B Docket Case 1 # [11](#) Exhibit Ex 6A Loan History # [12](#) Exhibit Ex 6B Spreadsheet) (Haeger, Robert) (Entered: 06/17/2013) |

Apx. 13

| 06/16/2013 | [60](#)<br>(1 pg) | Chapter 13 Interim Business Report for Filing Period April 2013 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 06/16/2013) |
|---|---|---|
| 06/14/2013 | [59](#)<br>(3 pgs) | BNC Certificate of Mailing. (related document(s)[57](#) Assignment of Claim filed by Creditor Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2). No. of Notices: 1. Notice Date 06/14/2013. (Admin.) (Entered: 06/15/2013) |
| 06/11/2013 | 58 | Receipt of filing fee for Assignment of Claim(12-30614) [claims,trclm] ( 25.00). Receipt number 22122177. Fee amount 25.00 (re: Doc # [57](#)) (U.S. Treasury) (Entered: 06/11/2013) |
| 06/11/2013 | [57](#)<br>(2 pgs; 2 docs) | Amended Assignment of Claims Transfer Agreement 3001 (e) 2 Transferor: Carrington Mortgage Services, LLC (Claim No. 4) To Christiana Trust, A Division of Wilmington Fee Amount $25 Filed by Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2. (Cantrell, Michael) (Entered: 06/11/2013) |
| 06/06/2013 | [56](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[54](#) Order on Motion to Shorten Time). No. of Notices: 1. Notice Date 06/06/2013. (Admin.) (Entered: 06/07/2013) |
| 06/04/2013 | [55](#)<br>(1 pg) | Supplemental Disclosure of Compensation of Attorney for Debtor Filed by Robert Haeger. (Haeger, Robert) (Entered: 06/04/2013) |
| 06/04/2013 | [54](#)<br>(1 pg) | Order Granting Motion to Shorten Time (related document(s):[45](#) Motion to Shorten Time to Respond to Debtor's Discovery Requests Filed by Jeffrey V Howes (related document(s)44 Certificate of Service filed by Debtor Jeffrey V Howes). (Attachments: # 1 Exhibit Discovery Requests # 2 Proposed Order). (Horning, Kelly) (Entered: 06/04/2013) |
| 05/31/2013 | [53](#)<br>(3 pgs) | BNC Certificate of Mailing. (related document(s)[51](#) Assignment of Claim filed by Creditor Carrington Mortgage Services, LLC). No. of Notices: 1. Notice Date 05/31/2013. (Admin.) (Entered: 06/01/2013) |

Apx. 14

| | | |
|---|---|---|
| 05/29/2013 | 52 | Receipt of filing fee for Assignment of Claim(12-30614) [claims,trclm] ( 25.00). Receipt number 22021977. Fee amount 25.00 (re: Doc # 51) (U.S. Treasury) (Entered: 05/29/2013) |
| 05/29/2013 | 51 (2 pgs; 2 docs) | Assignment of Claims Transfer Agreement 3001 (e) 2 Transferor: Wells Fargo Home Mortgage (Claim No. 4) To Carrington Mortgage Services, LLC Fee Amount $25 Filed by Carrington Mortgage Services, LLC. (Cantrell, Michael) (Entered: 05/29/2013) |
| 05/16/2013 | 50 (3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)48 Order on Motion to Continue/Reschedule Confirmation Hearing). No. of Notices: 1. Notice Date 05/16/2013. (Admin.) (Entered: 05/17/2013) |
| 05/15/2013 | 49 (2 pgs) | Withdrawal of Document on behalf of Wells Fargo Bank, NA Filed by Brian S. McNair (related document(s)9 Notice of Appearance filed by Creditor Wells Fargo Bank, NA). (McNair, Brian) (Entered: 05/15/2013) |
| 05/14/2013 | 48 (1 pg) | Order Granting Motion To Continue/Reschedule Confirmation Hearing (related document(s):13 Chapter 13 Plan filed by Debtor Jeffrey V Howes, 23 Trustee's Objection to Confirmation of Plan (batch) filed by Trustee Ellen W. Cosby, 25 Objection to Confirmation of the Plan filed by Creditor Wells Fargo Bank, NA, 33 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby, 41 Trustee's Objection to Confirmation of Plan filed by Trustee Ellen W. Cosby). Confirmation hearing to be held on 6/19/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Horning, Kelly) (Entered: 05/14/2013) |
| 05/14/2013 | 47 (1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 05/14/2013) |
| 05/13/2013 | 46 (3 pgs; 2 docs) | Emergency Motion to Continue Confirmation Hearing on 5/15/13 Filed by Jeffrey V Howes (related document(s)13 Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Attachments: # 1 Proposed Order) (Haeger, Robert) (Entered: 05/13/2013) |
| 05/13/2013 | 45 (8 pgs; 3 docs) | Motion to Shorten Time to Respond to Debtor's Discovery Requests Filed by Jeffrey V Howes (related |

Apx. 15

| | | |
|---|---|---|
| | | document(s)44 Certificate of Service filed by Debtor Jeffrey V Howes). (Attachments: # 1 Exhibit Discovery Requests # 2 Proposed Order) (Haeger, Robert) (Entered: 05/13/2013) |
| 05/13/2013 | 44 (1 pg) | Certificate of Service DEBTORS INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO THE RESPONDENT COMPTROLLER OF THE TREASURY Filed by Robert Haeger. (Haeger, Robert) (Entered: 05/13/2013) |
| 05/12/2013 | 43 (4 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)42 Notice of Hearing). No. of Notices: 20. Notice Date 05/12/2013. (Admin.) (Entered: 05/13/2013) |
| 05/10/2013 | 42 (1 pg) | Notice of Hearing (related document(s)36 Objection to Claim filed by Debtor Jeffrey V Howes). Hearing scheduled for 6/17/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 05/10/2013) |
| 05/09/2013 | 41 (2 pgs) | Third Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)13 Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 05/09/2013) |
| 05/08/2013 | 40 (1 pg) | Chapter 13 Interim Business Report for Filing Period December 2012 to March 2013 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 05/08/2013) |
| 05/04/2013 | 39 (4 pgs) | BNC Certificate of Mailing - Hearing. (related document(s)38 Notice of Hearing). No. of Notices: 19. Notice Date 05/04/2013. (Admin.) (Entered: 05/05/2013) |
| 05/02/2013 | 38 (1 pg) | Notice of Hearing (related document(s)34 Objection to Claim filed by Debtor Jeffrey V Howes, 37 Response filed by Creditor Comptroller of Maryland). Hearing scheduled for 6/17/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 05/02/2013) |
| 05/01/2013 | 37 (5 pgs; 2 docs) | Response on behalf of Comptroller of Maryland Filed by Kimberly Stephens (related document(s)34 Objection to Claim filed by Debtor Jeffrey V Howes). (Attachments: # 1 Proposed Order) (Stephens, Kimberly) (Entered: |

Apx. 16

| | | |
|---|---|---|
| | | 05/01/2013) |
| 04/03/2013 | | Disposition Without Hearing: re: [13] Chapter 13 Plan, re: [23] Trustee's Objection to Confirmation of Plan (batch), re: [25] Objection to Confirmation of the Plan, re: [33] Objection to Confirmation of Plan - ALL MATTERS ARE CONTINUED TO 05/15/2013 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (related document(s) [13] Chapter 13 Plan, [23] Trustee's Objection to Confirmation of Plan (batch), [25] Objection to Confirmation of the Plan, [33] Objection to Confirmation of Plan) (Livingston, Booker) (Entered: 04/04/2013) |
| 04/02/2013 | [36] (4 pgs; 2 docs) | Objection to Claim Number 4 In Re: Wells Fargo Bank N.A. in the Amount of $740,334.24. Notice Served on 4/2/2013 Filed by Jeffrey V Howes. Responses due by 5/2/2013. (Attachments: # [1] Proposed Order)(Haeger, Robert) (Entered: 04/02/2013) |
| 04/02/2013 | [35] (1 pg) | Chapter 13 Pre-Confirmation Certificate on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 04/02/2013) |
| 04/01/2013 | [34] (4 pgs; 2 docs) | Objection to Claim Number 3 In Re: Comptroller of the Treasury in the Amount of $11,277. Notice Served on 4/1/2013 Filed by Jeffrey V Howes. Responses due by 5/1/2013. (Attachments: # [1] Proposed Order)(Haeger, Robert) (Entered: 04/01/2013) |
| 03/29/2013 | [33] (2 pgs) | Supplemental Objection to Confirmation of Plan Filed by Ellen W. Cosby (related document(s)[13] Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Cosby, Ellen) (Entered: 03/29/2013) |
| 03/28/2013 | [32] (1 pg) | Chapter 13 Interim Business Report for Filing Period 12/1/12 through 2/28/13 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 03/28/2013) |
| 02/28/2013 | [31] (3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[30] Order on Objection to Debtor's Claim of Exemptions). No. of Notices: 1. Notice Date 02/28/2013. (Admin.) (Entered: 03/01/2013) |
| 02/26/2013 | [30] (1 pg) | Order on Objection to Debtor's Claim of Exemptions (related document(s)[22] Objection to Debtor's Claim of |

Apx. 17

|  |  | Exemptions filed by Trustee Ellen W. Cosby). Trustee's Objection to Claimed Exemptions (dkt. no. 22) is denied as moot as Debtor as filed an amended Schedule C (dkt. no. 27), which significantly a (Horning, Kelly) (Entered: 02/26/2013) |
|---|---|---|
| 02/07/2013 | [29](# ) <br> (3 pgs) | BNC Certificate of Mailing - Notice of Requirement to Complete Financial Management Course. (related document(s)[28](# ) Notice of Requirement to Complete Course in Financial Management). No. of Notices: 2. Notice Date 02/07/2013. (Admin.) (Entered: 02/08/2013) |
| 02/05/2013 | [28](# ) <br> (1 pg) | Notice of Requirement to Complete Course in Financial Management. (admin) (Entered: 02/05/2013) |
| 01/16/2013 |  | Disposition Without Hearing: re: [13](# ) Chapter 13 Plan, re: [23](# ) Trustee's Objection to Confirmation of Plan (batch), re: [25](# ) Objection to Confirmation of the Plan - ALL MATTERS ARE CONTINUED TO 04/03/2013 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (related document(s) [13](# ) Chapter 13 Plan, [23](# ) Trustee's Objection to Confirmation of Plan (batch), [25](# ) Objection to Confirmation of the Plan ) (Livingston, Booker) (Entered: 01/17/2013) |
| 01/15/2013 | [27](# ) <br> (2 pgs) | Amended Schedules filed: Schedule C, on Behalf of Jeffrey V Howes. Filed by Robert Haeger. (Haeger, Robert) (Entered: 01/15/2013) |
| 01/10/2013 | [26](# ) <br> (1 pg) | Chapter 13 Interim Business Report for Filing Period 7/1/12 to 11/30/12 on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 01/10/2013) |
| 01/10/2013 |  | Hearing Set On (related document(s)[25](# ) Objection to Confirmation of the Plan filed by Creditor Wells Fargo Bank, NA. Confirmation hearing to be held on 1/16/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Travers, Alisca) (Entered: 01/10/2013) |
| 01/09/2013 | [25](# ) <br> (2 pgs) | Objection to Confirmation of Plan Filed by Wells Fargo Bank, NA (related document(s)[13](# ) Chapter 13 Plan filed by Debtor Jeffrey V Howes). (McNair, Brian) (Entered: 01/09/2013) |
| 01/04/2013 |  | The Debtor(s) is/are certified as having complied with all filing requirements of 11 U.S.C. Sec. 521(a)(1), with the exception of subparagraph 521(a)(1)(B)(iv), which is not |

Apx. 18

| | | |
|---|---|---|
| | | filed with the Court pursuant to LBR 1007-4. (Travers, Alisca) (Entered: 01/04/2013) |
| 01/04/2013 | | Hearing Set On (related document(s)23 Trustee's Objection to Confirmation of Plan (batch) filed by Trustee Ellen W. Cosby). Confirmation hearing to be held on 1/16/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Travers, Alisca) (Entered: 01/04/2013) |
| 01/03/2013 | 24 (1 pg) | Statement Under Penalty of Perjury Re: Payment Advices on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 01/03/2013) |
| 01/03/2013 | 23 (1 pg) | Objection to Confirmation of Chapter 13 Plan. (Cosby, Ellen) (Entered: 01/03/2013) |
| 01/03/2013 | | 341 Meeting Held Filed by Ellen W. Cosby. (Cosby, Ellen) (Entered: 01/03/2013) |
| 12/19/2012 | 22 (3 pgs; 2 docs) | Objection to Debtor's Claim of Exemptions on behalf of Ellen W. Cosby. Notice Served on 12/19/2012, Filed by Ellen W. Cosby. Responses due by 1/16/2013. (Attachments: # 1 Proposed Order) (Cosby, Ellen) (Entered: 12/19/2012) |
| 12/18/2012 | 21 | Receipt of filing fee for Amended Creditor Matrix(12-30614) [misc,amdcma] ( 30.00). Receipt number 20899008. Fee amount 30.00 (U.S. Treasury) (Entered: 12/18/2012) |
| 12/18/2012 | 20 (2 pgs) | Amendment to List of Creditors. Supplementing Matrix. Fee Amount $30 Filed by Robert Haeger. (Haeger, Robert) (Entered: 12/18/2012) |
| 12/16/2012 | 19 (3 pgs) | BNC Certificate of Mailing. (related document(s)17 Deficiency Notice). No. of Notices: 1. Notice Date 12/16/2012. (Admin.) (Entered: 12/17/2012) |
| 12/14/2012 | 18 (2 pgs) | Certificate of Service Filed by Robert Haeger (related document(s)13 Chapter 13 Plan filed by Debtor Jeffrey V Howes). (Haeger, Robert) (Entered: 12/14/2012) |
| 12/14/2012 | | Hearing Set On (related document(s)13 Chapter 13 Plan filed by Debtor Jeffrey V Howes). Confirmation hearing to be held on 1/16/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (Travers, Alisca) (Entered: 12/14/2012) |

Apx. 19

| 12/14/2012 | [17](#)<br>(1 pg) | Deficiency Notice (related document(s)[13](#) Chapter 13 Plan filed by Debtor Jeffrey V Howes). Cured Pleading due by 12/28/2012. (Travers, Alisca) (Entered: 12/14/2012) |
|---|---|---|
| 12/13/2012 | [16](#)<br>(8 pgs) | Statement of Financial Affairs on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 12/13/2012) |
| 12/13/2012 | [15](#)<br>(9 pgs) | Chapter 13 Statement of Current Monthly and Disposable Income on Behalf of Jeffrey V Howes Filed by Robert Haeger (related document(s)[11](#) Order on Motion to Extend Time). (Haeger, Robert) (Entered: 12/13/2012) |
| 12/13/2012 | [14](#)<br>(36 pgs) | Schedules A-J on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 12/13/2012) |
| 12/13/2012 | [13](#)<br>(4 pgs) | Chapter 13 Plan and Pre Confirmation Certificate Filed by Jeffrey V Howes. (Haeger, Robert) Modified on 12/14/2012 (Travers, Alisca). (Entered: 12/13/2012) |
| 12/09/2012 | [12](#)<br>(3 pgs) | BNC Certificate of Mailing - PDF Document. (related document(s)[11](#) Order on Motion to Extend Time). No. of Notices: 1. Notice Date 12/09/2012. (Admin.) (Entered: 12/10/2012) |
| 12/07/2012 | [11](#)<br>(1 pg) | Order Granting Motion to Extend Time to File Statement of Financial Affairs, Schedules, Payment Advices, Chapter 13 Monthly and Disposable Income Form 22c, and Chapter 13 Plan (related document(s):[10](#) Motion to Extend Time filed by Debtor Jeffrey V Howes). Chapter 13 Plan and Certificate of Service due by 12/13/2012. Statement of Financial Affairs due 12/13/2012. Schedules A-J due 12/13/2012. Summary of schedules due 12/13/2012.Chapter 13 Monthly and Disposable Income Form 22C due 12/13/2012. Incomplete Filings due 12/13/2012 (Travers, Alisca) (Entered: 12/07/2012) |
| 11/29/2012 | [10](#)<br>(3 pgs; 2 docs) | Motion to Extend Time to December 13, 2012 to File Statement of Financial Affairs, Schedules, Payment Advices, Chapter 13 Monthly and Disposable Income Form 22c, and Chapter 13 Plan Filed by Jeffrey V Howes. (Attachments: # [1](#) Proposed Order) (Haeger, Robert) (Entered: 11/29/2012) |
| 11/28/2012 | [9](#)<br>(2 pgs) | Notice of Appearance and Request for Notice Filed by Wells Fargo Bank, NA. (McNair, Brian) (Entered: 11/28/2012) |

Apx. 20

| | | |
|---|---|---|
| 11/18/2012 | [8](#)<br>(3 pgs) | BNC Certificate of Mailing. (related document(s)[1](#) Voluntary Petition (Chapter 13) filed by Debtor Jeffrey V Howes). No. of Notices: 1. Notice Date 11/18/2012. (Admin.) (Entered: 11/19/2012) |
| 11/18/2012 | [7](#)<br>(4 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (related document(s)[6](#) Meeting of Creditors Chapter 13). No. of Notices: 10. Notice Date 11/18/2012. (Admin.) (Entered: 11/19/2012) |
| 11/15/2012 | [6](#)<br>(2 pgs) | Meeting of Creditors & Notice of Appointment of Trustee Ellen W. Cosby with 341(a) meeting to be held on 12/21/2012 at 11:00 AM at 341 meeting room 2650 at 101 W. Lombard St., Baltimore. Proof of Claim due by 03/21/2013. Confirmation to be held on 01/16/2013 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. Objection to Confirmation due by 01/08/2013. Objection to Dischargeability of Certain Debts due by 02/19/2013. (Entered: 11/15/2012) |
| 11/15/2012 | 5 | Receipt of filing fee for Voluntary Petition (Chapter 13)(12-30614) [misc,volp13a] ( 281.00). Receipt number 20689955. Fee amount 281.00 (U.S. Treasury) (Entered: 11/15/2012) |
| 11/15/2012 | [4](#)<br>(1 pg) | Certificate of Credit Counseling on Behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/15/2012) |
| 11/15/2012 | [3](#)<br>(2 pgs) | Disclosure of Compensation of Attorney for Debtor Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/15/2012) |
| 11/15/2012 | [2](#) | Social Security Number Verification Page on behalf of Jeffrey V Howes Filed by Robert Haeger. (Haeger, Robert) (Entered: 11/15/2012) |
| 11/15/2012 | [1](#)<br>(9 pgs; 2 docs) | Chapter 13 Voluntary Petition. Fee Amount $281 Filed by Jeffrey V Howes. Government Proof of Claim due by 05/14/2013. Chapter 13 Plan and Certificate of Service due by 11/29/2012. Schedules A-J due 11/29/2012. Statement of Financial Affairs due 11/29/2012. Summary of schedules due 11/29/2012.Chapter 13 Monthly and Disposable Income Form 22C due 11/29/2012. Incomplete Filings due 11/29/2012 Section 521(i)(1) Incomplete Filing date: 01/2/2013. (Haeger, Robert) (Entered: 11/15/2012) |

Apx. 21

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes, and | : | |
| Tonya H. Howes, | | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. _____ |
| Wells Fargo Bank N.A., Individually and as | : | |
| Servicer for U.S. Bank National Association; | | |
| U.S. Bank National Association, Individually | : | |
| and as Trustee for Wells Fargo Asset Securities | : | |
| Corporation, Mortgage Pass-Through Certificates, | | |
|  Series 2003-4; | | |
| Carrington Mortgage Services, LLC, | | |
| Individually and as Servicer for Christina Trust; | | |
| | : | |
| Christiana Trust, A Division of Wilmington | | |
| Savings Fund Society, FSB, Individually and as | : | |
| Trustee for Stanwich Mortgage Loan Trust, | | |
| Series 2013-2; and Unknown Defendants 1 | : | |
| through 10, | | |
| | : | |
| Defendants | : | |

_____

**COMPLAINT TO DETERMINE SECURED STATUS,
SANCTIONS, AND OTHER RELIEF**

**INTRODUCTION**

1.      This is an action filed by the Debtor and his spouse pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure in which they challenge the validity and/or extent of the secured claim asserted in Amended Proof of Claim No. 4 (hereinafter "Claim") filed by Wells Fargo Bank N.A. (hereinafter "Wells Fargo") (Counts II and IX), on the basis Wells Fargo lacked standing to file the Claim, it is excessive, and subject to their counterclaims for Fraud Upon the Court pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9011 (Count I), sanctions for defective proof of claim pursuant to Bankruptcy Rule 3001(c)(2)(D) (Count III), unlawful inspection fees pursuant to § 12-1027 of the Commercial Law Article, Annotated Code of Maryland (Count IV), violation of the Truth in Lending Act new owner notices, 15 U.S.C. §§ 1639c(h) and 1641(g) ("TILA") (Count V), Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") (Count VI), Maryland Consumer Debt Collection Act, CL §§ 14-201 *et seq*. ("MCDCA") (Count VII), and Maryland Consumer Protection Act, §§ 13-301 *et seq*. ("MCPA") (Count VIII).

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court pursuant to the provisions of 28 U.S.C. §§ 1334, 157(a), and  Local Rule 402 of the United States District Court of the District of Maryland, in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor in that case.

3.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 U.S.C. §§ 133 and 157(b)(2).

4.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has jurisdiction to hear the claims for relief under the Truth in Lending

2

Act pursuant to 15 U.S.C. § 1640(e), and the Fair Debt Collection Practices Act violations pursuant to 15 U.S.C. § 1692. Thus, federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331.

6.     This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order.  However, in the event this case is determined to be a non-core proceeding then and in that event Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1409.

## PARTIES

8.     Plaintiffs Jeffrey V. Howes and Tonya H. Howes are adult citizens and residents of Fulton, Maryland. Jeffrey V. Howes (hereinafter referred to as "Debtor") is the Debtor under Chapter 13 of Title 11 of the United States Code in case number 12-30614-RAG, filed in the United States Bankruptcy Court for the District of Maryland on November 15, 2012, which case is presently pending before this Court (hereinafter the "Bankruptcy Case"). The Plaintiffs are hereinafter referred to collectively as "Plaintiffs" or "Howes."

9.     Defendant Wells Fargo is a national banking association owned and controlled by Wells Fargo & Company, San Francisco, California (hereinafter "WFC"), a registered bank holding company. WFC is a publicly-traded corporation under the symbol "WFC." Wells Fargo's principal office is 101 N PHILLIPS AVE, SIOUX FALLS, SOUTH DAKOTA 57104. Wells Fargo is being sued in its individual capacity and as Servicer for U.S. Bank, National Association, Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 (hereinafter the "Trust"). Wells Fargo Home Mortgage (hereinafter

3

"WFHM") is a division of Wells Fargo. At all times relevant to this Complaint, Wells Fargo's employees were acting within the scope of their employment.

10.    Defendant U.S. Bank, National Association (hereinafter "US Bank"), is a national banking association owned and controlled by U.S. Bancorp (hereinafter "USB"), a registered bank holding company headquartered in Minneapolis, Minnesota. USB is a publicly traded corporation under the symbol "USB." US Bank's principal office is at 800 NICOLLET MALL, BC-MN-H210, MINNEAP-OLIS, MINNESOTA 55402. US Bank is being sued in its individual capacity and as Trustee for the Trust. At all times relevant to this Complaint, US Bank's employees and agents were acting within the scope of their employment or agency. At all times relevant to this Complaint, Wells Fargo, and the law firms of Covahey, Boozer, Devan & Dore, P.A. and Huesman, Jones and Miles, LLC, were acting as US Bank's authorized agents and within the scope of their agency.

11.    Carrington Mortgage Services, LLC (hereinafter "CMS") is a mortgage servicer head-quartered in California and is a wholly owned subsidiary of Carrington Holding Company, LLC (hereinafter "CHC"), a privately managed investment management company. CMS has a principal office at 599 WEST PUTNAM AVENUE, GREENWICH, CONNECTICUT 06830. CMS is being sued in its individual capacity and as Servicer for Christiana Trust.

12.    Christiana Trust (hereinafter "WSFS Bank") is a  Division of Wilmington Savings Fund Society, FSB,  a federal savings bank headquartered at 500 Delaware Avenue, Wilmington, Delaware 19801, and the retail banking subsidiary of WSFS Financial Corporation. WSFS Bank is being sued individually and as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (hereinafter the "Stanwich Trust").

4

13.     Unknown Defendants 1 through 10 are corporate entities and/or individuals that may have a legal interest in the promissory notes, deed of trust, assignments or the real property which is the subject of this proceeding and/or who may be responsible for the acts complained of herein.

14.     Collectively the defendants named above will be referred to as "Defendants."

## COMMON FACTUAL ALLEGATIONS

### The Debtor's Mortgage

15.     On or about November 30, 2001, Plaintiffs executed a Construction Note (hereinafter the "Note") payable to the order of The Columbia Bank, and a deed of trust (hereinafter the "Deed of Trust") conveying their interest in real property to Trustee for The Columbia Bank in trust to secure repayment of the Note (hereinafter the "Mortgage"). The Deed of Trust was recorded January 22, 2002, among the land records of Howard County, Maryland, at Liber 5939, Folio 610.

16.     The subject real property (hereinafter the "Property") is the Howes' principal residence and is more particularly described as:

Lot 45 in a subdivision known as "Pindell Woods, Lots 1 thru 47 and Preservation Parcels A thru F" as recorded among the Land Records of Howard County, Maryland in Plat numbered 14922.

17.     The Howes suffered a decline in their income in 2008 as a result of the Great Recession, with insufficient income to cover the Note payments, so they used their savings to bridge the gap until their savings were exhausted. The Howes defaulted on the Note on April 2, 2009, and then fell more than 60 days behind in June 2009. The Howes made partial Note payments of $747.26 on June 26, 2009, $1,097.09 on July 21, 2009, $3,500 on August 5, 2009, and $1,500 on August 31,

2009, until they discovered that they were receiving no benefit from their payments, since Wells

Fargo was holding their partial payments in suspense and not applying them to their account despite

aggregating more than a regular payment.

<u>Loan Modification Efforts</u>

18.     In July, 2009, Debtor contacted Wells Fargo, as the alleged servicer of the Note, to

determine modification eligibility and completed a loss mitigation telephone application. Upon

completion of the telephone application, Wells Fargo told Debtor that the Howes were eligible for a

mortgage modification under the U.S. Treasury's Home Affordable Modification Program

(hereinafter "HAMP"). Accordingly, the Howes completed a HAMP application dated August 18,

2009, and submitted it to Wells Fargo.

19.     Debtor spent over nineteen hundred hours of lost time from work through July 19,

2010, preparing and submitting to Wells Fargo at least five full HAMP applications, and engaging in

over 100 communications with Wells Fargo involving information request responses, re-

documentation and re-submission responses, all as required by Wells Fargo to process the Howes'

HAMP application.

20.     On July 19, 2010, Wells Fargo's employee Susan Gordon informed Debtor by email

that the Howes were not eligible for a HAMP loan modification.

21.     On October 15, 2010, Jason Mullen, Executive Mortgage Specialist, Office of the

President of WFHM (hereinafter the "Mullen Denial"), advised the Howes that "our MBS loans are

currently not participating in the Making Home Affordable Program. Therefore, we are unable to

allow your loan to be considered for the Home Affordable Modification Program (HAMP)."

22.     On October 6, 2010, Wells Fargo Home Mortgage offered the Howes a Special

6

Forbearance Agreement in which it temporarily agreed to accept reduced payments of $4,712.77 per month for three months starting November 1, 2010 (hereinafter the "Trial Payments"). The Howes timely made all three Trial Payments. Wells Fargo then offered the Howes a Wells Secondary Modification Agreement (hereinafter "Wells Proprietary Offer") to be effective January 26, 2011, with a temporary five-year rate reduction modification from 5.75% to 5.375%, initial monthly principal and interest payments of $3,746.36 plus a monthly escrow payment of $1,069.92 starting March 1, 2011, a required immediate contribution from the Howes of $24,683.61, and with a $58,766.56 balloon payment due at maturity. The 5.375% rate was more than 100 basis points above the market rate at the time.

23.     Since the whole purpose of the Howes' loan modification effort was to make their loan more affordable by lowering their monthly payment, they rejected the Wells Proprietary Offer and offered instead to cure the default in exchange for a new fixed rate mortgage at the current market average rate (hereinafter the "Howes First Offer"). Wells Fargo rejected this offer.

24.     On June 14, 2012, Mary Betty Vendemia, an employee of Wells Fargo's foreclosure counsel, Covahey, Boozer, Devan & Dore, P.A. (hereinafter "CBD&D"), of Hunt Valley, Maryland, acting within the scope of her employment, advised Debtor during the foreclosure mediation process that Wells Fargo changed its position regarding HAMP eligibility and advised the Howes that they may qualify for a HAMP modification of their Mortgage.

25.     Debtor was reluctant to devote any more time to the HAMP process due to Wells Fargo's prior statements that the Howes did not qualify for HAMP, and he therefore asked Ms. Vendemia to explain Wells Fargo's change of position. On June 15, 2012, Ms. Vendemia, responded as follows (hereinafter the "June 15 Explanation"):

7

Also, in regards to HAMP eligibility, I asked for an explanation of why you were at first ineligible and now eligible, below [is] the response, then I asked for a bit better clarification, please see second very similar but helpful response.

> "I apologize for the previous miscommunication, however the policy with the reserves for 3 months payments is HAMP policy if a customer is current. Having 3 months of reserves but being so far in arrears makes that requirement void. Please let me know if you have any further questions. Thank you!"

> "Again, I apologize for the previous miscommunication but I believe I answered that in the previous e-mail. He is now so far in arrears that the requirement the previous reps were speaking about regarding having 3 months payments in reserves is no now void due to his delinquency level, thus making him HAMP eligible at this time. Please let me know if you have any further questions."

26.     The June 15 Explanation makes no sense since the alleged "3 months of reserves" eligibility criteria had never before been communicated to the Howes by Wells Fargo, and contradicts Wells Fargo's prior statement in the Mullen Denial that the reason for HAMP ineligibility was that "our MBS loans are currently not participating in the Making Home Affordable Program." Upon information and belief, the June 15 Explanation is false and was meant to cover up the fact that the investor Trust terminated by January 2012 and ceased to exists before the February 21, 2012 date the Trust filed a foreclosure case against the Howes (hereinafter "Second Foreclosure Case") – a case which is still pending – perpetrating a fraud on the Howes and on the Circuit Court for Howard County.

27.     On or about June 28, 2012, the Howes submitted another HAMP loan modification application (hereinafter the "2012 HAMP Application") at Wells Fargo's request pursuant to their Foreclosure Mediation Agreement dated May 15, 2012.

28.     On or about June 12, 2012, the Howes submitted another loss mitigation offer to Wells Fargo to pay down the Note a maximum of $175,000 if it would result in an equitable, long-

8

term modification of the resulting balance. (hereinafter the "Howes Second Offer"). Wells Fargo also rejected this offer.

29.    Upon information and belief, Wells Fargo had a duty to inform the beneficial owner of the Note about the Howes' First and Second Offers but failed to do so.

30.    Wells Fargo denied the 2012 HAMP Application by letter dated August 9, 2012 (hereinafter "HAMP Denial"), but not sent to the Howes until August 13, 2012, stating that "In this case, your mortgage cannot be modified based on the results of your NPV evaluation" and it attached its Net Present Value (NPV) Input Data Values, including a property value of $795,000 at Input Data Field 7.

31.    The HAMP Denial stated at Input Data Field 13 (Investor Code) that Wells Fargo is the investor, not US Bank as alleged in the Second Foreclosure Case then and now pending.

32.    On September 11, 2012, the Howes' counsel faxed Wells Fargo a letter (hereinafter "NPV Dispute Fax") disputing the NPV test results, requested the input data not already disclosed, and asserted that "Your valuation is overstated by more than $150,000, since the interior is in need of work, its poor condition significantly reduces the value of this property, and the fact that it is not possible to get an accurate valuation of this property without an appraisal. This is obvious after reviewing your prior BPOs, which are all over the place, with values of $625,000 on 5/4/11 and $830,000 on 11/5/11 (a 33% difference over six months!)."

33.    Although it has a duty to do so, Wells Fargo never responded to the Howes' NPV Dispute Fax.

34.    Had Wells Fargo used reasonable input variables and properly run the NPV test on the 2012 HAMP Application, the result would have been positive and the application would have been

9

granted, resulting in a modified Note capitalizing the arrears, all late fees waived, new interest rates of

2% for five years then 3.2% thereafter to maturity, and with a new monthly Mortgage payment of

$3,137.56.

The Foreclosure Cases

35.     In *Notices of Intention to Foreclose* regarding the Mortgage dated June 16, 2009, July

22, 2009, and September 28, 2009 (hereinafter the "WFHM NIFs"), the "Secured Party" and "Loan

Servicer" are identified as Wells Fargo Home Mortgage. In *Notices of Intention to Foreclose* dated

December 1, 2009 and May 10, 2011[1] (hereinafter the "Trust NIFs"), the "Secured Party" is

identified as "US Bank National Association, as Trustee for WFASC 2003-4", and "Loan Servicer" is

identified as Wells Fargo Home Mortgage.

36.     Defendants US Bank as principal, and Wells Fargo acting as its agent and within the

scope of that agency, caused two foreclosure cases to be filed against the Howes regarding the

Mortgage in the Circuit Court for Howard County: Case Number 13C10080927, *Dore, et al. vs.*

*Howes, et al*., filed January 20, 2010, voluntarily dismissed by plaintiffs on January 3, 2011

(hereinafter "First Foreclosure Case"), and Case Number 13C12089855, *Dore, et al. vs. Howes, et al*.,

filed February 21, 2012 and still pending (hereinafter "Second Foreclosure Case").

37.     Plaintiffs' counsel in the First Foreclosure Case was Thomas P. Dore, Esquire and

CBD&D. Plaintiffs' counsel in the Second Foreclosure Case are Gerard F. Miles, Esquire, and

Huesman, Jones and Miles, LLC (hereinafter "HJ&M"), of Hunt Valley, Maryland, as of counsel to

CBD&D, and CBD&D, as of counsel to HJ&M.

---

[1]  The May 10, 2011 Notice was sent to the wrong address and never received by the Howes
until produced during mediation.

10

38.     The First Foreclosure Case includes numerous affidavits dated January 19, 2010 and allegedly signed by lead plaintiff Thomas P. Dore, Esquire, including (a) Affidavit Pursuant to 7-105.1(d) and 14-207(b)(1) regarding the lien instrument, (b) Affidavit Pursuant to 14-207(b)(4) regarding the Declaration of Substitution of Trustees, (c) Affidavit Pursuant to 7-105.9(B)(1) regarding notice to all occupants, and (d) a Statement of Debt allegedly notarized by Alysha Currie (the "Dore Affidavits"). Upon information and belief, Mr. Dore did not sign the Dore Affidavits, nor was the Statement of Debt signed by him in the presence of Alysha Currie.

39.     The First Foreclosure Case includes numerous affidavits dated December 31, 2009 allegedly signed by notorious robo signer Herman John Kennerty, including the (a) Affidavit Pursuant to 7-105.1(d) and 14-207(b)(3) regarding ownership of the debt instrument, (b) Non-Military Service Affidavit allegedly notarized, and (c) Affidavit Pursuant to 7-105.1(c) regarding the NIF, default, and right to foreclose (hereinafter the "Kennerty Affidavits"). Mr Kennerty testified under oath on May 20, 2010 that he signs "50 to 150 documents per day" and that he is "simply signing the document that's presented" and "just making sure that the date is correct." None of the Kennerty Affidavits are based on any investigation by Mr. Kennerty, other than to ensure they were properly dated, and they are therefore devoid of his personal knowledge of the other facts stated therein.

40.     Upon information and belief, the First Foreclosure Case was dismissed by plaintiffs due to the defective Dore and Kennerty Affidavits.

Second Foreclosure Case

41.     Plaintiffs lacked standing to file the Second Foreclosure Case since the alleged owner of the Note ceased to exist by February 21, 2012, the date the case was filed.

42.     Filed in the Second Foreclosure Case on February 21, 2012, at Doc No. 5, is an

11

Apx. 32

Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith

(hereinafter "Ownership Affidavit"), dated January 18, 2012, allegedly signed by Alisha M. Allen,

Vice President of Loan Documentation for WFHM, as servicing agent, which identifies "US Bank

National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as

Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series

2003-4" (hereinafter the "Trust"), as the "owner and holder of the loan evidenced by the Note." A true

and correct copy of the Ownership Affidavit is attached hereto as EXHIBIT 1.

43.     The Mortgage was removed from the Trust on January 1, 2012, and the Trust

terminated and ceased to exist on January 25, 2012, before the Second Foreclosure Case was filed, as

evidenced by the Certificateholder Distribution Summary for the Trust showing an ending certificate

balance total for all Trust certificates of zero, attached as EXHIBIT 2A, the Collateral Statement

showing all loans in the Trust as Paid in Full, attached as EXHIBIT 2B, and the Loan Level Data for

the Mortgage reported by US Bank showing the Mortgage was paid off on January 1, 2012, attached

as EXHIBIT 2C.

44.     Attached to the Ownership Affidavit is an alleged copy of the Note with the

following endorsements: (A) Pay to the order of Wells Fargo Home Mortgage, Inc., by Michael

Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of Wachovia Bank, National

Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003, by

Beverly Cro[ckett], Assistant Secretary, Wells Fargo Home Mortgage, Inc.

45.     Attached to the Ownership Affidavit is what purports to be an Allonge dated

November 21, 2009 (hereinafter the "Allonge"), identifying "Wachovia Bank, National Association,

as Trustee under the pooling and servicing agreement dated as of May 29, 2003[,]" (hereinafter

12

"Wachovia") as the present holder, further stating it "hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4[,]" and then states "Pay to the Order of US Bank National Association, as Trustee for WFASC 2003-4 (Without recourse, representation, or warranty express or implied)" and is allegedly signed by Karan Abernethy as Vice President of Wachovia.

46.     Filed in the Second Foreclosure Case on February 21, 2012 at Doc No. 7 is an *Affidavit Pursuant to 14-207(b)(4)* (hereinafter "Declaration Affidavit") allegedly signed by Shannon Mennapace as one of the Substituted Trustees in the action, stating that a true and correct copy is attached thereto of the *Declaration of Substitution of Trustees*, dated October 28, 2011 (hereinafter "Declaration"), allegedly executed by Defendant Wells Fargo as attorney-in-fact for the Trust, attached as EXHIBIT 3, and purports to appoint the Second Foreclosure Case plaintiffs as trustees for the Trust under the Deed of Trust.

47.     Filed in the Second Foreclosure Case on February 21, 2012 at Doc No. 11 is an *Affidavit of Date and Nature of Default and Mailing of Notice of Intent to Foreclose* (hereinafter "NIF Affidavit"), attached as EXHIBIT 4 (all pages following the third page of NIF are omitted from this exhibit), purportedly executed by Erinn T. Rochelle as Vice President of Loan Documentation for Defendant Wells Fargo on January 12, 2012, which identifies Wells Fargo as servicer for the Trust, and which attaches one of the Trust NIFs dated May 10, 2011.

48.     Filed in the Second Foreclosure Case on February 21, 2012 at Doc No. 15 is a *Final Loss Mitigation Affidavit*, dated February 15, 2012, and purportedly executed by Daryl J. Rollins, Vice President of Loan Documentation, stating he is "authorized to act on behalf of the secured party who is the holder of the beneficial interest in the mortgage or deed of trust" and "why borrower(s) did

13

not qualify for a loss mitigation program: Borrower did not return loan modification documents to complete loan modification."

49.     On April 30, 2012, an Order was entered in the Second Foreclosure Case, at Doc No. 21, stating that "It is determined that the service of the Order to Docket and related documents was deficient. If plaintiff does not demonstrate to the Court within 30 days of entry of this Order ... that the deficiency has been cured ... then the Court will dismiss the action without prejudice[.]" No response was filed withing the time allowed. The case was stayed by this Bankruptcy Case.

The Debtor's Bankruptcy

50.     On November 15, 2012, the Debtor filed the Bankruptcy Case by filing a chapter 13 petition with the Clerk of this Court, and he also filed a chapter 13 plan (hereinafter "Plan") and related schedules on December 13, 2012. The Plan provides for payment of $35,662 in pre-petition Mortgage arrears while Debtor maintains post-petition payments directly to Wells Fargo Home Mortgage (as Servicer). The amount owed, the ownership of the Note, and the secured status of the alleged owner and holder of the Note were all scheduled as "disputed" on Schedule D and in the Plan.

51.      The deadline to file a proof of claim (except a governmental unit) in the Bankruptcy Case was established as March 21, 2013 (hereinafter the "Bar Date"), and the Meeting of Creditors was scheduled for December 21, 2012, in the *Notice of Chapter 13 Bankruptcy Case, Meeting of Credityors, & Deadlines* served November 18, 2012 on all scheduled creditors and parties in interest. On December 21, 2012, the section 341(a) meeting of creditors was held and concluded in Baltimore, Maryland.

52.     On January 9, 2013, Defendant Wells Fargo filed at Docket No. 25 in the Bankruptcy Case an *Objection to Confirmation of Plan* (hereinafter "Plan Objection"), and identified itself as

14

Apx. 35

"Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank,
National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-
Through Certificates, Series 2003-4."

53.     On March 8, 2013, Defendant US Bank caused to be filed in the Bankruptcy Case as
Claim No. 4 (hereinafter the "Claim") (a sworn proof of claim in the amount of $740,334.24, of
which $200,196.79  was claimed as pre-petition arrears. US Bank was identified in the claim as
creditor with all notices to be sent to WELLS FARGO HOME MORTGAGE, ATTENTION
Bankruptcy Department MAC #D3347-014, 3476 STATEVIEW BLVD, FORT MILL, SC
29715.The claim was signed on January 2, 2013 by Brian McNair who identified himself as an
attorney with the law firm of CBD&D. No documents were attached to the claim, thus no evidence of
perfection was provided nor was any breakdown of the claimed arrearage.

54.     On March 15, 2013, Defendant Wells Fargo caused to be filed Amended Claim 4
(hereinafter the "Amended Claim"), which identifies Wells Fargo as creditor, is dated March 15,
2013, and attached thereto is a Mortgage Proof of Claim Attachment pursuant to Rule 3001(c)(2), an
Escrow and Account Disclosure Statement dated November 21, 2012, the Deed of Trust, and what it
claims to be the endorsed Note and Allonge. No evidence of Wells Fargo's standing to file the
Amended Claim was attached.

55.     On April 2, 2013, Debtor filed in the Bankruptcy Case an objection to the Amended
Claim (hereinafter "Claim Objection"), alleging Wells Fargo lacked standing to file the Amended
Claim, and that the amount claimed is excessive due to not all payments being credited, foreclosure
fees and costs are sought although incurred without the requisite standing to file the foreclosure
action, and unlawful inspection fees disguised as broker's price opinion fees are claimed. The Claim

Objection was properly served on Wells Fargo on April 2, 2013, and it provided notice to Wells

Fargo it had 30 days to respond unless it wished to rely solely on the Amended Claim. Wells Fargo

filed no response. On May 10, 2013, the Court scheduled a hearing on the objection for June 17,

2013.

56.     On May 29, 2013, Michael T. Cantrell filed in the Bankruptcy Case as agent for

Defendant CMS a notice of *Transfer of Claim Other Than for Security* of the Amended Claim, listing

CMS as transferee and Wells Fargo as transferor (hereinafter the "Transfer Notice"). CMS failed to

attach the required proof of transfer. On May 31, 2013, the Clerk caused mailed notice of the transfer

to be sent to Wells Fargo Home Mortgage, MAC #D3347-014, ATTENTION Bankruptcy

Department, 3476 Stateview Blvd, Fort Mill, SC 29715-7203.

57.     On June 11, 2013, Michael T. Cantrell filed in the Bankruptcy Case as agent for

Defendant WSFS Bank an *Amended Transfer of Claim Other Than for Security* of the Amended

Claim, listing WSFS Bank as transferee and Wells Fargo as transferor, with notices to WSFS Bank

and transferee payments to be sent to CMS (hereinafter the "Amended Transfer Notice"). WSFS

Bank failed to attach the required proof of transfer. On June 14, 2013, the Clerk caused mailed notice

of the transfer to be sent to Carrington Mortgage Services, LLC, 1610 E. Saint Andrew Place, Suite

B150, Santa Ana, California 92705-4931, the transferee's agent, rather than to Wells Fargo, the

transferor. Notice of this transfer was not mailed to the transferor by the clerk as required by

Bankruptcy Rule 3001(e).

58.     Debtor appeared at the June 17, 2013 hearing on his objection to the Amended Claim.

None of the Defendants appeared. The Court denied the relief Debtor requested without prejudice due

to the alleged claim transferees not having been served with Claim Objection, and instructed Debtor

16

to serve the Amended Claim transferees either by supplemental service, amended objection, or, in view of all the transfers, by initiating an adversary proceeding incorporating the claim objection to determine the party entitled to enforce the Note.

59.     On or about May 2, 2013, and June 13, 2013, Defendant Wells Fargo rejected and returned Debtor's post-petition mortgage payments in the amount of $4,835.64 each.

60.     The Howes have received no notice of transfer of their Note or of the right to service their Mortgage from Wells Fargo.

61.     The Howes have received no communication from Defendants CMS or WSFS Bank regarding their interest in the Howes' Mortgage other than the notices filed in the Bankruptcy Case.

62.     The Howes do not know the identity of the rightful owner of the Note.

63.     Upon information and belief, none of the Defendants are in possession of the Note.

**COUNT I - FRAUD UPON THE COURT**
**11 U.S.C. § 105 and Bankruptcy Rule 9011**
**(As to Defendants Wells Fargo and US Bank)**

64.     Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

65.     Wells Fargo and US Bank filed the Claim on behalf of the Trust with the intent to defraud this Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012.

66.     The Claim included a false arrearage claim for $200,196.79, not itemized, but the same arrearage amount as stated in the Amended Claim.  The $200,196.79 arrearage is itemized in the Amended Claim and includes $2,924.50 in fees and costs allegedly incurred from May 27, 2011 through October 26, 2012 ("Second Foreclosure Fees"). Upon information and belief, the Second

17

Foreclosure Fees all relate to the Second Foreclosure Case.

67.     Wells Fargo filed its Amended Claim as creditor with the intent to defraud this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees. Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, although required to do so by Bankruptcy Rule 3001 and the settlement it reached with the 49 State Attorneys' General effective April 5, 2012 (hereinafter "AG Settlement"). Wells Fargo failed to disclose Trust termination in the Amended Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed, contained numerous false and fraudulent affidavits regarding standing to foreclose, including the Ownership Affidavit, Declaration Affidavit, and NIF Affidavit, and the fact that the Trust lacked standing to file the Claim.

68.     In furtherance of its scheme to defraud and hide the fact of Trust termination, Wells Fargo and US Bank filed the Plan Objection in which they maintained the continued existence of the Trust and its ownership of the Note over one year after the Note was removed from the Trust and nearly 12 months after the Trust terminated and ceased to exist.

69.     Wells Fargo and US Bank have engaged in a pattern or practice of filing so many false proofs of claim in the United States Bankruptcy Courts that the sheer numbers involved indicate the fraud is being perpetrated on an institutional basis.

70.     Properly filed proofs of claim are entitled to a presumption of validity and are deemed allowed absent objection by 11 U.S.C. § 502. Wells Fargo and US Bank relied on the presumption of validity and the paucity of time Debtor had to evaluate the Claim, filed March 8, 2013, and the Amended Claim, filed March 15, 2013, in attempting to perpetrate their fraud by filing them less than

18

30 days before the plan confirmation hearing scheduled for April 3, 2013 in the Bankruptcy Case. Due to the presumption of validity, the limited time available to investigate claims, and the pressure to confirm chapter 13 plans without delay, it is difficult to detect fraud in the bankruptcy claims filing process which might otherwise be exposed during the usual discovery process provided in a civil action.

71.     There is an enormous disparity of resources between Wells Fargo and US Bank, two of the largest financial institutions in the world, and the Howes or any chapter 13 debtor, indicating a limited ability of debtors to ferret out fraud on a case by case basis.

72.     The Debtor has a great deal more to lose by choosing to object to a mortgage claim than Wells Fargo or US Bank in asserting a false claim, since Defendants are playing with "house money" and are in control of most of the facts, while the Debtor must use his limited financial resources and overcome Defendants' enormous information advantage to prevail. Debtor already has incurred substantial legal fees as a result of the Claim Objection and preparation of this adversary proceeding. Often debtors choose to not object to claims they know are off by thousands of Dollars, since the potential reward does not justify the risk of using their limited resources against a much stronger adversary.

73.     Although an enormous number of claims are filed in bankruptcy court, very few are actually litigated with evidence taken, suggesting that the fraud perpetrated by Wells Fargo and US Bank in filing false proofs of claim often goes undetected. In those instances where the debtor does detect the "error," Wells Fargo and US Bank can withdraw or amend the claim under the guise of an error and thwart detection of a larger pattern by the Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order

granting judgment for the following:

    A.      A finding that Wells Fargo and US Bank purposefully committed fraud upon this Court and order such sanctions and other remedies necessary to address such fraud and to prevent any future fraud or abuse of process;

    B.      The costs associated with this action, including reasonable attorney's fees; and

    C.      Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

### COUNT II - DETERMINATION OF SCOPE, EXTENT AND VALIDITY OF LIEN
### 11 U.S.C. §§ 105 and 506
### (As to all Defendants)

74.      Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

75.      The Note and Allonge attached to the Amended Claim contain a series of purported endorsements resulting, if bona fide, in the Note being payable to the order of US Bank as trustee for the Trust.

76.      US Bank does not have the right to enforce the Note or standing to file the Claim since the Trust terminated and ceased to exist in January 2012.

77.      The Note is "order paper" under section 3-201(b) of the Commercial Law Article, Annotated Code of Maryland; therefore, negotiation requires transfer of possession of the instrument and its indorsement by the holder.

78.      US Bank did not endorse the Note and make it payable to the order of Wells Fargo.

79      Wells Fargo is not a holder of the Note.

80.      Upon information and belief, Wells Fargo did not possess the Note when it filed the Amended Claim.

20

81.     Wells Fargo did not attach to the Amended Claim any evidence that it has the right to enforce the Note under applicable state law.

82.     Wells Fargo does not have the right to enforce the Note or standing to file the Amended Claim.

83.     Defendant CMS acquired no interest in the Note or Amended Claim, notwithstanding the Transfer Notice, since the purported transferor, Wells Fargo, did not have the right to enforce the Note or standing to file the Amended Claim, and CMS cannot acquire greater rights in the Note or Amended Claim than its purported transferor had. CMS also failed to attach to its Transfer Notice the required proof of transfer.

84.     Defendant WSFS Bank acquired no interest in the Note or Amended Claim, notwithstanding the Amended Transfer Notice, since the purported transferor, Wells Fargo, did not have the right to enforce the Note or standing to file the Amended Claim, and WSFS Bank cannot acquire greater rights in the Note or Amended Claim than its purported transferor had. WSFS Bank also failed to attach to its Amended Transfer Notice the required proof of transfer.

85.     None of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.     A determination that none of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law;

B.     A determination that none of the Defendants has an enforceable secured or unsecured claim against property of the estate in the Bankruptcy Case;

21

Apx. 42

C.      The costs associated with this action, including reasonable attorney's fees; and

D.      Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

### COUNT III - SANCTIONS FOR DEFECTIVE PROOF OF CLAIM
### Bankruptcy Rule 3001(c)(2)(D)
### (As to Wells Fargo and US Bank)

86.     Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

87.     The Claim filed by US Bank, which was dated January 2, 2013, but filed March 8, 2013, claimed a security interest in property that is Debtor's principal residence, and it claimed interest, fees, and expenses incurred before the Bankruptcy Case was filed.

88.     US Bank failed to attach to the Claim a copy of the writing upon which it was based such as the Note and Deed of Trust, or evidence that the security interest claimed has been perfected.

89.     US Bank also failed to attached to the Claim (a) an itemized statement of the interest, fees, and expenses incurred before the Bankruptcy Case was filed, (b) the attachment prescribed by the proof of claim Official Form, and (c) an escrow account statement prepared as of the date the Bankruptcy Case was filed in a form consistent with applicable non-bankruptcy law.

90.     The Amended Claim filed by Wells Fargo claimed a security interest in property that is Debtor's principal residence, and it claimed interest, fees, and expenses incurred before the Bankruptcy Case was filed.

91.     Wells Fargo failed to attach to the Amended Claim a copy of the writing upon which it was based since the Note it attached is made payable to the order of the Trust, and the Trust terminated and ceased to exist in January 2012.

92.     In Debtor's Claim Objection filed April 2, 2013, Debtor notified Wells Fargo that the

Amended Claim is defective since it included no evidence of Wells Fargo's standing to file it.

93.     Debtor's Claim Objection also notified Wells Fargo: "Since the underlying foreclosure cases were filed by entities that lacked standing, and inspection fees are prohibited by Section 12-121 of the Commercial Law Article, Annotated Code of Maryland, the foreclosure fees and costs, and the inspection fees, are not authorized by the Note or Deed of Trust and must be disallowed."

94.     Wells Fargo entered into a Consent Order in connection with the AG Settlement (hereinafter the "Wells Fargo AG Consent Order") which provides in relevant part, at Exhibit A, I.D.1: [Wells Fargo] shall ensure that each POC is documented by attaching: a. The original or a duplicate of the note, including all indorsements."

95.     The Wells Fargo AG Consent Order also provides, at Exhibit A, I.A.15:

> Servicer shall not file a POC in a bankruptcy proceeding which,
> when filed, contained **materially inaccurate information**. In cases
> in which such a POC may have been filed, **Servicer shall not rely
> on such POC and shall** (a) in active cases, at Servicer's expense,
> take appropriate action, consistent with state and federal law and
> court procedure, to **substitute such POC with an amended POC as
> promptly as reasonably practicable (and, in any event, not more
> than 30 days) after acquiring actual knowledge of such material
> inaccuracy** and provide appropriate written notice to the borrower
> or borrower's counsel; and (b) in other cases, at Servicer's
> expense, take appropriate action after acquiring actual knowledge
> of such material inaccuracy.

96.     Wells Fargo did not respond to the Claim Objection. Although more than four months have passed since Wells Fargo was put on notice of the absence of evidence of its standing to file the Amended Claim and of the errors in the amount claimed, it still has not filed a second amended claim with the missing evidence of its standing, nor has it amended the amount claimed in the Amended

Claim by removing the bogus foreclosure fees and costs and the inspection fees and crediting all of Debtor's payments.

97.     Defendants' failure to comply with Rule 3001 has harmed Debtor and caused him to incur substantial attorney's fees in preparing and prosecuting his Claim Objection and this adversary proceeding, in addition to the mental anguish he has suffered due to the resulting delay in resolving this Bankruptcy Case through confirmation of his Plan.

WHEREFORE, PREMISES CONSIDERED, Debtor prays that this Court enter an order granting judgment for the following:

A.     Wells Fargo and US Bank, their agents and successors or assigns, be precluded from presenting in any form, as evidence in any contested matter or adversary proceeding, the information omitted in Claim 4 or Amended Claim 4;

B.     This Court award reasonable expenses including attorney's fees caused by Defendants' failure to provide the required information in Claim 4 or Amended Claim 4; and

C.     Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

### COUNT IV - UNLAWFUL INSPECTION FEES
### CL § 12-1027, ACM
### (As to Wells Fargo, US Bank, and WSFS Bank)

98.     Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

99.     Each Plaintiff is a "consumer borrower" as that term is defined in § 12-1001(f) of the Commercial Law Article, Annotated Code of Maryland (hereinafter, "CL").

100.    By filing the Amended Claim, Wells Fargo asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

101.    By filing the Claim, US Bank asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

102.    By filing the Amended Transfer Notice, WSFS Bank asserted it is a "credit grantor" as that term is defined in CL § 12-1001(g).

103.    The Claim and Amended Claim include the following charges: "Appraisal/broker's price opinion fees 9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00, 6/13/12: $90.00 (collectively, "Inspection Fees").

104.    The Inspection Fees were for visual inspections of the Property, were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants.

105.    The Inspection Fees are violations of CL § 12-1027 and may not be imposed. Any credit grantor who violates § 12-1027 may collect only the principal amount of the Note and may not collect any interest, costs, fees, or other charges with respect to the Note. In addition, a credit grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

106.    Plaintiffs have been damaged by the imposition of the Inspection Fees, including incurring attorney's fees and costs to vindicate their rights.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.      A determination that the Inspection Fees are knowing violations of CL § 12-1027;

B.      A determination that neither Wells Fargo, US Bank, or WSFS Bank, nor any of their successors or assigns, may collect any interest, costs, fees, or other charges with respect to the Note.

25

C.      This Court award reasonable expenses including attorney's fees; and

D.      Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

**COUNT V - TILA NEW OWNER NOTICES**
**15 U.S.C. §§ 1639c(h), 1641(g)**
**(As to Wells Fargo, US Bank, Unknown Defendant, and WSFS Bank)**

107.    Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

108.    The Note and Mortgage is a consumer credit transaction secured by the Plaintiffs' principal dwelling within the meaning of TILA.

109.    US Bank asserts by the Ownership Affidavit and Allonge it filed in the Second Foreclosure Case (EXHIBIT 1) that the Note was transferred to it on November 21, 2009, as Trustee of the Trust.

110.    US Bank did not provide Plaintiffs, or either one of them, with the new creditor notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner of the Note on November 21, 2009.

111.    US Bank did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note on November 21, 2009.

112.    Upon information and belief, the Note was paid off on January 1, 2012, as stated in Loan Level Data report attached as EXHIBIT 2C, and the new owner, identified herein as Unknown Defendant, failed to provide Plaintiffs, or either one of them, with the notice of new creditor required by 11 U.S.C. § 1641(g).

113     Unknown Defendant did not provide Plaintiffs, or either one of them, with the partial

payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note on or after January 1, 2012.

114.    Wells Fargo asserts in the Amended Claim that it became Debtor's creditor and the new owner of the Note.

115.    Wells Fargo did not provide Plaintiffs, or either one of them, with the new creditor notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner of the Note.

116.    Wells Fargo did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note.

117.    WSFS Bank filed the Amended Transfer Notice alleging it became the new owner of the Amended Claim and related Note.

118.    WSFS Bank did not provide Plaintiffs, or either one of them, with the new creditor notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner of the Note.

119.    WSFS Bank did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note.

120.    Plaintiffs have suffered actual damages as a result of not receiving these notices by not knowing the true owner of their Note and the corresponding loss mitigation rights such ownership entailed, as well as not promptly learning that the Second Foreclosure Case plaintiffs lacked standing to file that case.

121.    Pursuant to 15 U.S.C. 1640(a), Plaintiffs may recover from Defendants actual damages, costs and reasonable attorney fees for each failure of Defendants to comply with any part of 15 U.S.C. § 1641(g).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.    Awarding Plaintiff the relief provided by TILA as to each of the six separate violations of TILA set forth above, including statutory damages in the amount of $4,000.00 for each violation, actual damages, reasonable attorney's fees, and costs expended in this proceeding.

B.    Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are otherwise barred by a limitations or other defense.

C.    Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

## COUNT VI - FDCPA
## 15 U.S.C. §§ 1692-1692o
## (As to Wells Fargo, US Bank, and WSFS Bank)

122.    Plaintiffs repeat and re-allege each and every preceding paragraph as if fully set forth herein.

123.    Each plaintiff is a "consumer" as defined by FDCPA, 15 U.S.C. § 1692a(3). The Note is a "debt" as defined by FDCPA, 15 U.S.C. § 1692a(5).

124.    At all times relevant hereto, US Bank was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. US Bank is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). US Bank claims it acquired ownership of the Note and

28

Mortgage by the Allonge dated November 21, 2009, after the April 2, 2009 date the Note went into default.

125.     At all times relevant hereto, Wells Fargo was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. Wells Fargo is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). Wells Fargo claims in its Amended Claim to have acquired ownership of the Note and Mortgage, which must have occurred after US Bank sold the Note on January 1, 2012 (EXHIBIT 2C), after the April 2, 2009 date the Note went into default.

126.     At all times relevant hereto, WSFS Bank was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. WSFS Bank is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). WSFS Bank claims in its Amended Transfer Notice to have acquired ownership of the Note and Mortgage on or about June 11, 2013, the date it filed the Amended Transfer Notice, after the April 2, 2009 date the Note went into default.

127.     On January 9, 2013, Wells Fargo, through counsel, filed its Plan Objection on behalf of US Bank as trustee for the Trust (¶ 52 *infra*), and falsely claimed that US Bank is the holder of the Note secured by the Mortgage.

128.     US Bank filed the Claim on March 8, 2013, through its attorneys, and falsely stated that Debtor was liable to it for $740,334.24.

129.     Wells Fargo filed the Amended Claim on March 15, 2013, through its attorneys, and falsely stated that Debtor was liable to it for $740,334.24.

130.     US Bank caused at least three false affidavits to be filed in the First Foreclosure Case,

including the Kennerty Affidavits (¶ 39 *infra*).

131.    US Bank caused the Second Foreclosure Case to be filed against Plaintiffs on February 21, 2012, falsely claiming to be the owner of the Note. Wells Fargo sought to hide Trust termination from the Howes by lying about their HAMP eligibility in the June 15 Explanation (¶ 25 *infra*).

132.    US Bank caused at least four false affidavits to be filed in the Second Foreclosure Case, including the Ownership Affidavit (¶ 42 *infra*), the Declaration Affidavit (¶ 46 *infra*), the NIF Affidavit (¶ 47 *infra*), and the Final Loss Mitigation Affidavit (¶ 48 *infra*).

133.    The Second Foreclosure Case is still pending.

134.    The Second Foreclosure Case has been reported numerous times within the past year to the credit reporting agencies, negatively impacting Plaintiffs' credit rating.

135.    Defendants violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt, as prohibited by 15 U.S.C. § 1692e, including but not limited to falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and used false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10).

136.    As a result of the acts alleged above, Plaintiffs have lost wages, lost time from other activities, been afraid they would lose the Property to foreclosure, lost hope the government's various foreclosure prevention programs were honest attempts to help them, worried that bankruptcy did not protect them from bogus claims, suffered mental anguish and emotional distress, and incurred attorney's fees.

137.     As a result of the foregoing violations of the FDCPA, Defendants Wells Fargo, US Bank, and WSFS Bank are liable to Plaintiffs pursuant to 11 U.S.C. § 1692k for declaratory judgment that these Defendants' conduct violated the FDCPA, actual damages, statutory damages, punitive damages, costs, and attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.     Awarding Plaintiffs the relief provided by FDCPA as to each of the separate violations of FDCPA set forth above, including statutory damages in the amount of $1,000.00 for each violation, actual damages, reasonable attorney's fees, and costs expended in this proceeding.

B.     Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are otherwise barred by a limitations or other defense.

C.     Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

## COUNT VII
## VIOLATION OF MARYLAND CONSUMER DEBT COLLECTION ACT
### CL § 14-201 *et seq*., ACM
### (As to Wells Fargo, US Bank, and WSFS Bank)

138.     The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

139.     The Defendants Wells Fargo, US Bank, and WSFS Bank are "collectors" as defined by the Maryland Consumer Debt Collection Act ("MCDCA"), § 14-201(b) of the Commercial Law Article, Annotated Code of Maryland.

140.     The Defendants sought to collect from Plaintiffs amounts that they knew they are not lawfully entitled to collect. This conduct violated the MCDCA.

31

141. As a proximate result of the Defendants' violations of the MCDCA, Plaintiffs have suffered damages, including emotional distress and mental anguish.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A. Awarding Plaintiffs actual damages, reasonable attorney's fees, and costs expended in this proceeding.

B. Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are otherwise barred by a limitations or other defense.

C. Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

## COUNT VIII
## VIOLATION OF MARYLAND CONSUMER PROTECTION ACT
### CL § 13-101 *et seq.*, ACM
### (As to Wells Fargo and US Bank)

142. The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

143. Defendants' conduct was unfair and deceptive and violated the MCPA, which prohibits violations of the MCDCA, and:

(1) False, falsely disparaging, or misleading oral or written statement, ... which has the capacity, tendency, or effect of deceiving or misleading consumers ...,

by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case, Claim, and Amended Claim, by falsely telling the Debtor that the Howes were eligible for a HAMP modification (¶¶ 18, 20-21 *infra*), by concealing Trust termination, by failing to inform the beneficial owner of the Note about the Howes First and Second Offers (¶¶ 23, 28-29 *infra*), and by failing to run the NPV test in accordance with HAMP requirements (¶¶ 30-34 *infra*). As a proximate

32

result of the Defendants' violations of the MCPA, Plaintiffs have suffered damages, including emotional distress and mental anguish, lost wages (¶ 19 *infra*), and incurred legal fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.    Awarding Plaintiffs actual damages, reasonable attorney's fees, and costs expended in this proceeding.

B.    Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are otherwise barred by a limitations or other defense.

C.    Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

**COUNT IX**
**OBJECTION TO CLAIM**
**11 U.S.C. § 502**

LOCAL BANKRUPTCY RULE 3007-1 NOTICE: within thirty (30) days after the date on the certificate of service of the objection, the claimant may file and serve a memorandum in opposition, together with any documents and other evidence the claimant wishes to attach in support of its claim, unless the claimant wishes to rely solely upon the proof of claim; and (b) an interested party may request a hearing that will be held at the court's discretion.

144.    The preceding allegations of this complaint are re-alleged and incorporated herein by this reference.

145.    Debtor previously filed the Claim Objection, Wells Fargo filed no response, the Court scheduled the matter for hearing, then notices of claim transfer were filed by CMS and WSFS Bank (¶¶ 55-58 *infra*). The Court denied the objection without prejudice due to notice of the Claim Objection not having been provided to CMS and WSFS Bank. Cause exists pursuant to 11 U.S.C. §

33

502(j) to reconsider the Amended Claim, since the Claim Objection was denied without prejudice to Debtor bringing this adversary proceeding and providing notice of its objection to CMS and WSFS Bank.

146.     The Claim and Amended Claim must be disallowed for the following reasons:

a.       Defendants US Bank and Wells Fargo lacked standing to file the Claim or Amended Claim;

b.       Alternatively, the claim must be reduced by the damages awarded Plaintiffs pursuant to this Complaint, and by their recoupment rights for those claims otherwise barred by a statute of limitations;

c.       The Claim and Amended Claim fail to credit Plaintiffs with all payments made (¶¶ 17, 22 *infra*);

d.       The Claim and Amended Claim seek (i) foreclosure fees and costs that were unreasonably incurred in the First Foreclosure Case, which was dismissed due to numerous and fatal robo signing defects (¶¶ 36-40 *infra*), (ii) foreclosure fees and costs for the Second Foreclosure Case filed without standing on behalf of the Trust after it ceased to exists (¶¶ 41-49 *infra*), and (iii) unlawful inspection fees disguised as broker's price opinion fees (Count IV).

WHEREFORE, PREMISES CONSIDERED, Debtor pray that this Court enter an order granting judgment for the following:

A.       Disallowing the Claim and Amended Claim.

B.       Such other relief to which the Debtor and this bankruptcy estate may be entitled.

Respectfully submitted,
*/s/ Robert J. Haeger, September 2, 2013*
Robert J. Haeger, Bar No. 25434

34

Attorney for Debtors-Plaintiffs
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

35

EXHIBIT 1

| | |
|---|---|
| Thomas P. Dore, et al<br>as Substituted Trustees | IN THE |
| VS. | CIRCUIT COURT |
| Jeffrey V. Howes<br>Tonya H. Howes | FOR |
| Defendant(s) | HOWARD COUNTY |
| | CASE NO. |

## AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND ACCURACY OF NOTE SUBMITTED HEREWITH

I CERTIFY in compliance with Maryland Code Section 7-105.1(d)(2)(iii) and Maryland Rule 14-207(b)(3) that the debt instrument submitted herewith is a true and correct copy of the Note applicable to the present foreclosure action, that US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 is the owner and holder of the loan evidenced by the Note.

I SOLEMNLY AFFIRM under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Dated: _January 18th, 2012_

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, by Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., as servicing agent)

Alisha M. Allen

Vice President of Loan Documentation

Apx. 57

EXHIBIT 1

# CONSTRUCTION NOTE

November 30, 2001

AP#   HOWES J010842
LN#

7000 MEANDERING STREAM WAY,FULTON,MD 20759
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for this loan, I, the undersigned borrower or borrowers who shall be referred to in the singular, promise to pay U.S. __$696,130.00__ ("principal"), plus interest, to the order of the Lender. The Lender is **The Columbia Bank.**   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest shall accrue daily on that part of principal which has been advanced and has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid. Beginning on the date of this Note, I will pay interest at __6.0000__ % per annum. This rate is called the "Initial Interest Rate." The interest rate I will pay will change as and when the Index changes. The Index is the per annum rate published on the first publication date of each calendar month as the Prime Rate in The Wall Street Journal in its compilation of Key United States and foreign annual interest rates. If more than one Prime Rate is reported, the highest rate reported shall be the Prime Rate. The interest rate shall never exceed __11.0000__ % per annum and never shall be less than __6.0000__ % per annum. If the Index is discontinued or substantially altered, the Note Holder may, at its option, choose another index made available to me and verifiable by me and beyond the Note Holder's control. If this happens, the substitute index will, for the purposes of this Note, be considered to be the "Index," although it may be necessary to adjust the number of percentage points above the Index the interest rate will be in order to make the interest rate under the new Index comparable to the interest rate under the prior index. The Note Holder will calculate my interest rate by adding __1.0000__ % to the Index.

## 3.  PAYMENTS

I will pay interest by making payments every month. I will make my monthly interest payments on the 1st · day of each month beginning on January 1, 2002 . On __September 1, 2002__ I will pay all principal, unpaid interest and any other amounts I owe under this Note in full. This date is called the "Maturity Date." I will make my monthly payments at __5585 STERRETT PLACE, COLUMBIA, MD 21044__
or at a different place if required by the Note Holder. ·

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays.

## 5.  LOAN CHARGES

To the extent the charges described in this paragraph apply and actually are incurred by the Note Holder, I may pay the following charges in connection with this loan: loan fees, finder's fees and points; attorney's fees for services rendered in connection with the preparation, closing or disbursement of this loan; any expense, tax or charge paid to governmental agencies; examination of title, appraisal or other costs necessary or appropriate to the security of the loan; premiums for optional credit life, credit disability, involuntary unemployment benefit and similar insurance coverage; premiums for property insurance, title insurance and credit loss insurance purchased from an insurer chosen by me; and any other charges permitted by applicable law.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED AND DEFAULT

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the overdue part of my payment of interest. I will pay this late charge only once on each late payment.

EXHIBIT 1

(B) Default

If (1) I do not pay the full amount of each monthly payment on its due date, or (2) any bankruptcy, insolvency or receivership proceeding is commenced by or against me and such petition is not dismissed within ten (10) days, or (3) I die, or (4) a default occurs under the Residential Construction Loan Agreement with the Lender I am signing today ("Loan Agreement"), or (5) I fail to keep any of the promises I have made in or an event permitting acceleration occurs under the Deed of Trust which secures this Note ("Deed of Trust"), or (6) I made any material misrepresentation or omitted any material information in my application and other material supplied to the Lender in connection with this loan, I will be in default. If I am in default, the Note Holder may require me to pay the full amount of principal remaining unpaid, plus all interest and other charges due on this Note. The Note Holder also may exercise all of its rights and remedies under this Note, the Deed of Trust, the Loan Agreement and applicable law.

(C) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses, to the extent not prohibited by applicable law, in enforcing this Note. These expenses include, for example, court costs and reasonable attorney's fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method of giving notice, any notice that must be given to me under this Note will given by delivering it or by mailing it by first class mail addressed to me at the Property Address above or at a different address if I give the Note Holder a notice in writing of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. Any person who takes over the obligations of a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. LAW THAT APPLIES

Maryland law and Federal law, as applicable, govern this Note. The Lender elects to make this loan under Subtitle 10 of Title 12 of the Maryland Commercial Law Article. I may pay fees and charges discussed in the Deed of Trust and in disclosures I am given, all of which are evidence of this loan.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid.

_____ 11-30-2001 (SEAL)     _____ (SEAL)
Borrower JEFFREY V HOWES            Borrower TONYA M HOWES
(Sign Original Only) Wachovia Bank, National Association, as Trustee
under the pooling and servicing agreement dated
as of May 29, 2003

WITHOUT RECOURSE
PAY TO THE ORDER OF

Pay To The Order Of, Without Recourse    WELLS FARGO HOME MORTGAGE, INC.
Wells Fargo Home Mortgage, Inc.
The Columbia Bank                        BY: _____
                                         Beverly Crossett, Assistant Secretary
By: _____
Michael Torcisi Vice President

Apx. 59

EXHIBIT 1

STATE OF MARYLAND
COUNTY OF __Prince George's__

    I hereby certify, that on this ___16___ of ___April___ , 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____,
personally appeared __Jeffrey V. Howes, individually and as attorney in fact__ for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the    Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS: My hand and notarial seal

My Commission Expires: ~~10/17/05~~
                            09/01/05

Melvin L. Schneider

ALLONGE

EXHIBIT 1

This Allonge made this 21 day of November, 2009 and is attached to and made a part of that certain Promissory Note:

Dated:              November 30, 2001

Executed by:      Jeffrey V. Howes and Tonya H. Howes

Original Amount:   $696,130.00

Present Holder:    Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

It is to be read together with, and is hereby incorporated by reference in, the attached instrument and constitutes an integral part thereof.

For good and valuable consideration, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4 and as a result of said transfer, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 has no further interest in said Note. This Allonge shall be annexed to the original Note (or a copy of the Note with a Lost Note Affidavit if the original cannot be located) referenced above for purposes of transferring same.

Pay to the Order of

US Bank National Association , as Trustee for

WFASC 2003-4

(Without recourse, representation, or

warranty express or implied)

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

By: _____

Officer: Karan Abernethy

Title: Vice President

Wells Fargo Asset Securities Corporation
Mortgage Pass-Through Certificates
Distribution Date:        25-Jan-2012

Contact:   Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:        1-866-846-4526
Fax:                240-586-8675

**Wells Fargo Asset Securities Corporation**
**Mortgage Pass-Through Certificates**
**Series 2003-4**
# EXHIBIT 2A

20-Jan-2012       3:16:04PM

**Certificateholder Distribution Summary**

| Class | CUSIP | Record Date | Certificate Pass-Through Rate | Beginning Certificate Balance | Interest Distribution | Principal Distribution | Current Realized Loss | Ending Certificate Balance | Total Distribution | Cumulative Realized Losses |
|---|---|---|---|---|---|---|---|---|---|---|
| A-PO | 94978RAR2 | 12/30/2011 | 0.00000 % | 28,240.68 | 0.00 | 28,240.68 | 0.00 | 0.00 | 28,240.68 | 0.00 |
| A-1 | 94978RAA9 | 12/30/2011 | 4.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-2 | 94978RAB7 | 12/30/2011 | 5.50000 % | 3,153,305.91 | 14,452.55 | 3,153,305.91 | 0.00 | 0.00 | 3,167,758.46 | 0.00 |
| A-3 | 94978RAC5 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-4 | 94978RAD3 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-5 | 94978RAE1 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-6 | 94978RAF8 | 12/30/2011 | 1.87022 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-7 | 94978RAG6 | 12/30/2011 | 18.80919 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-8 | 94978RAH4 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-9 | 94978RAJ0 | 12/30/2011 | 5.50000 % | 793,265.69 | 3,635.78 | 793,265.69 | 0.00 | 0.00 | 796,901.47 | 0.00 |
| A-10 | 94978RAK7 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-11 | 94978RAL5 | 12/30/2011 | 5.50000 % | 4,749,466.41 | 21,768.23 | 4,749,466.41 | 0.00 | 0.00 | 4,771,234.64 | 0.00 |
| A-12 | 94978RAM3 | 12/30/2011 | 5.50000 % | 8,774,275.59 | 40,215.15 | 8,774,275.59 | 0.00 | 0.00 | 8,814,490.74 | 0.00 |
| A-13 | 94978RAN1 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-14 | 94978RAP6 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-15 | 94978RAQ4 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-16 | 94978RAX9 | 12/30/2011 | 5.50000 % | 5,264,000.00 | 24,126.50 | 5,264,000.00 | 0.00 | 0.00 | 5,288,126.50 | 0.00 |
| A-17 | 94978RAY7 | 12/30/2011 | 4.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-18 | 94978RAZ4 | 12/30/2011 | 5.50000 % | 19,600,763.13 | 89,836.20 | 19,600,763.13 | 0.00 | 0.00 | 19,690,599.33 | 0.00 |
| A-R | 94978RAS0 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| A-LR | 94978RAT8 | 12/30/2011 | 5.50000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| B-1 | 94978RAU5 | 12/30/2011 | 5.50000 % | 3,001,725.52 | 13,757.81 | 3,001,725.52 | 0.00 | 0.00 | 3,015,483.33 | 0.00 |
| B-2 | 94978RAV3 | 12/30/2011 | 5.50000 % | 1,441,116.18 | 6,605.07 | 1,441,116.18 | 0.00 | 0.00 | 1,447,721.25 | 0.00 |
| B-3 | 94978RAW1 | 12/30/2011 | 5.50000 % | 840,291.19 | 3,851.31 | 840,291.19 | 0.00 | 0.00 | 844,142.50 | 0.00 |
| B-4 | 94978RBA8 | 12/30/2011 | 5.50000 % | 480,372.06 | 2,201.69 | 480,372.06 | 0.00 | 0.00 | 482,573.75 | 0.00 |
| B-5 | 94978RBB6 | 12/30/2011 | 5.50000 % | 360,399.02 | 1,651.82 | 360,399.02 | 0.00 | 0.00 | 362,050.84 | 0.00 |
| B-6 | 94978RBC4 | 12/30/2011 | 5.50000 % | 116,956.05 | 536.04 | 116,060.90 | 895.15 | 0.00 | 116,596.94 | 313,259.92 |
| Totals | | | | 48,604,177.43 | 222,638.15 | 48,603,282.28 | 895.15 | 0.00 | 48,825,920.43 | 313,259.92 |

All Record Dates are based upon the governing documents and logic set forth as of closing.



Ending Certificate balance is zero

Wells Fargo Asset Securities Corporation
Mortgage Pass-Through Certificates
Distribution Date:        25-Jan-2012

20-Jan-2012        3:16:04PM

Contact:   Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:        1-866-846-4526
Fax:        240-586-8675

**Wells Fargo Asset Securities Corporation**
**Mortgage Pass-Through Certificates**
**Series 2003-4**
# EXHIBIT 2B

| Collateral Statement | |
|---|---|
| Group | Total |
| Collateral Description | Fixed 30 Year |
| Weighted Average Coupon Rate | 6.017968 |
| Weighted Average Net Rate | 5.496803 |
| Weighted Average Pass-Through Rate | 5.500000 |
| Weighted Average Remaining Term | 0 |
| Principal and Interest Constant | 346,061.14 |
| Beginning Loan Count | 127 |
| Loans Paid in Full | 127 |
| Ending Loan Count | 0 |
| Beginning Scheduled Balance | 48,604,177.42 |
| Ending Scheduled Balance | 0.00 |
| Actual Ending Collateral Balance | 2,264,221.37 |
| Scheduled Principal | 109,757.24 |
| Unscheduled Principal | 48,494,420.18 |
| Scheduled Interest | 233,170.55 |
| Servicing Fees | 10,125.87 |
| Master Servicing Fees | 405.04 |
| Trustee Fee | 0.00 |
| FRY Amount | 10,578.09 |
| Special Hazard Fee | 0.00 |
| Other Fee | 0.00 |
| Pool Insurance Fee | 0.00 |
| Spread 1 | 0.00 |
| Spread 2 | 0.00 |
| Spread 3 | 0.00 |
| Net Interest | 212,061.56 |
| Realized Loss Amount | 895.15 |
| Cumulative Realized Loss | 313,259.97 |
| Percentage of Cumulative Losses | 0.0626 |
| Prepayment Penalty Paid Amount | 0.00 |
| Prepayment Penalty Paid Count | 0 |
| Special Servicing Fee | 0.00 |
| | |
| Class A Optimal Amount | 42,529,112.49 |
| Class AP Deferred Amount | 0.00 |
| | |
| Ending Scheduled Balance for Premium Loans | 0.00 |
| Ending Scheduled Balance for Discount Loans | 0.00 |

127 remaining loans were paid in full.  Ending loan count = 0

The Weighted Average Remaining Term is utilizing a step-down method.
NOTE: PLEASE REFER TO CTSLINK'S SHELF DOCUMENTS SECTION FOR LOAN LEVEL DETAIL ON LOAN MODIFICATIONS.

# EXHIBIT 2C

## LOAN LEVEL DATA

| | |
|---|---|
| LewtanDealName | Wells Fargo Mortgage Backed Securities 2003-4 |
| LoanId | 0127973402 |
| LoanStatus | ==Paid Off== |
| OriginalLoanBalance | 650,000.00 |
| LoanOriginationDate | 11/30/2001 |
| MaturityDate | 5/1/2033 |
| OriginalInterestRate | 5.75 |
| CurrentInterestRate | |
| FirstPaymentDate | 6/1/2001 |
| PropertyCity | FULTON |
| PropertyState | MD |
| PropertyZip | 20759 |
| Servicer | |
| OrigServicer | Wells Fargo |
| Originator | Wells Fargo Bank N.A. |
| ModificationDate | |
| ModificationType | |
| PeriodicRateCap | |
| PeriodicRateFloor | |
| PeriodicPaymentCapPercentage | |
| PeriodicPaymentFloorPercentage | |
| LifetimeMaximumRateCap | |
| LifetimeRateFloor | |
| RateAdjustmentFrequency | |
| PaymentAdjustmentFrequency | |
| Margin | |
| InterestOnlyTerm | 0 |
| DaysInForeclosure | 428 |
| DaysInREO | |
| BankruptcyDate | |
| ForeclosureDate | 5/1/2011 |
| ReoDate | |
| LiquidationDate | |
| PrepaymentDate | ==1/1/2012== |
| RepurchaseDate | |
| PropertyType | Single Family Residence |
| DelinquentStatusMBADays | |
| PaidThroughDate | |

## EXHIBIT 2C

| | |
|---|---|
| NextDueDate | |
| DaysInBankruptcy | |
| ActualEndingBalance | 0.00 |
| OriginalTerm | 360 |
| HistLoanStatus | AAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAAA FFFAAAAAFFFAAAAAAFFFFFFFFFPPPPPPPPPPPPPPPP |
| CurServicer | Wells Fargo |
| PoolGroupId | 0 |
| ScheduledPrincipalAndInterest | |
| TotalPaymentDue | |
| OriginalAppraisedValue | 940,000.00 |
| OriginalLtv | 69.10 |
| CurrentEstimatedLTV_HPI | 0.00 |
| LifetimeHPIChange | 53.92 |

# EXHIBIT 3

| | |
|---|---|
| **Thomas P. Dore, et al**<br>**as Substituted Trustees** | **IN THE** |
| **VS.** | **CIRCUIT COURT** |
| **Jeffrey V. Howes**<br>**Tonya H. Howes** | **FOR** |
| **Defendants** | **HOWARD COUNTY** |
| | **CASE NO.** |

## AFFIDAVIT PURSUANT TO 14-207(b)(4)

On this 17th day of February, 2012, I solemnly affirm under the penalties of perjury that the contents of the following are true and correct to the best of my knowledge, information, and belief:

1. That I, __Shannon Menapace__, am __SUBSTITUTED TRUSTEE__ in the subject case.

2. That I am at least eighteen (18) years of age and competent to testify.

3. That the copy of the Substitution of Trustees attached hereto is a true and accurate copy.

Shannon Menapace
Covahey, Boozer, Devan & Dore, P.A.
of counsel to
Huesman, Jones and Miles, LLC
11350 McCormick Road
Executive Plaza III, Suite 200
Hunt Valley, Maryland 21031
Office: 443-541-8600
Fax: 410-296-2131

EXHIBIT 3

THIS DECLARATION OF SUBSTITUTION OF TRUSTEES, effective this 28th day of
October, 2011, by Wells Fargo Bank, N.A., Attorney-in-fact for US Bank National Association, as
Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset
Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4
, Declarant.

WHEREAS, By Deed of Trust dated November 30, 2001 and recorded among the Land Records
of Howard County in liber 5939, folio 610, from Jeffrey V. Howes and Tonya H. Howes to Michael T.
Galeone an Matthew T. Becker who were named as Trustee for The Columbia Bank, the Beneficiary
therein. The Deed of Trust secures the property known as 7000 Meandering Stream Way, Fulton, MD
20759, Howard County, State of Maryland; and

WHEREAS, the aforesaid Deed of Trust provides inter alia that the holder of the indebtedness
secured by said Deed of Trust shall be entitled to substitute Trustees by the recording of an appropriate
instrument among the Land Records of the appropriate County; and

WHEREAS, Declarant herein, being the present holder of the indebtedness as hereinabove set
forth, desires to substitute Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace,
and Erin Gloth, as Substituted Trustees in the place and stead of Michael T. Galeone an Matthew T.
Becker and in the place and stead of any subsequently appointed Substituted Trustees with full powers
to them as set forth in said Deed of Trust;

NOW THEREFORE, this Declaration witnesseth, that the said US Bank National Association,
as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo
Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4
, in pursuance of the power and authority vested in it by the said Deed of Trust, does hereby substitute
Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace, and Erin Gloth, as
Substituted Trustees in the place and stead of Michael T. Galeone an Matthew T. Becker and in the
place and stead of any subsequently appointed Substituted Trustees under that Deed of Trust dated

# EXHIBIT 3

November 30, 2001 and recorded as aforesaid, with full power and authority in them as set forth in said

Deed of Trust. The act of one Substituted Trustee shall bind all of the Substituted Trustees.

AS WITNESS the signature of the Declarant on the day and year first above written.

Liber: 11507
Folio: 402

US Bank National Association, as Trustee, successor in interest
to Wachovia Bank, National Association as Trustee for Wells
Fargo Asset Securities Corporation, Mortgage Pass-Through
Certificates, Series 2003-4,
by Wells Fargo Bank, N.A., its Attorney-in-fact

_____ 10/28/2011

By: Samir Erian, Vice President Loan Documentation

STATE OF California
COUNTY OF Orange

On October 28, 2011 before me, J. Garcia _____ Notary Public,
personally appeared Samir Erian _____, who proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Notary Public Signature

J. GARCIA
COMM. #1805018
Notary Public-California
ORANGE COUNTY
My Comm. Exp. JULY 1, 2012

I hereby certify that the within instrument was prepared under the supervision of an attorney admitted
to practice before the Court of Appeals.

_____
**Shannon Menapace**

RETURN TO:
Title Co.: Covahey, Boozer, Devan, & Dore, P.A.
11350 McCormick Road
Executive Plaza III, Suite 400
Hunt Valley, MD 21031
(443) 541-8600

Apx. 68

# EXHIBIT 4

| | |
|---|---|
| **Thomas P. Dore, et al** <br> **as Substituted Trustees** | **IN THE** |
| **VS.** | **CIRCUIT COURT** |
| **Jeffrey V. Howes** <br> Tonya H. Howes | **FOR** |
| **Defendants** | **HOWARD COUNTY** |
| | **CASE NO.** |

## AFFIDAVIT OF DATE AND NATURE OF DEFAULT AND OF MAILING OF NOTICE OF INTENT TO FORECLOSE
### (Real Property 7-105.1(d)(1)(ii))

1.  I, Erinn T. Rochelle, being duly sworn, hereby certify and affirm upon personal knowledge that I am the Vice President of Loan Documentation of Wells Fargo Bank, NA, a company duly organized and existing under law, and doing business in York County, South Carolina.

2.  I am authorized to make this Affidavit on behalf of Wells Fargo Bank, NA, the Servicer in this action. In the regular performance of my job functions, I am familiar with business records maintained by Wells Fargo Bank, NA for the purpose of servicing mortgage loans and I have personal knowledge of the operation of and the circumstances surrounding the preparation, maintenance, distribution, and retrieval of records in Wells Fargo Bank, NA's record keeping systems. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of business activity conducted regularly by Wells Fargo Bank, NA. It is the regular practice of Wells Fargo Bank, NA's mortgage servicing business to make these records.

008-MD-V2

EXHIBIT 4

In connection with making this affidavit, I have acquired personal knowledge of the matters stated herein by personally examining these business records.

3.   I hereby certify and affirm that Jeffrey V. Howes and Tonya H. Howes are in default under the terms of the promissory note and Deed of Trust.

4.   I hereby certify and affirm in compliance with Real Property § 7-105.1(d)(1)(ii)(1) that the default occurred on September 2, 2009, and that the nature of the default is Loan Payment Default.

5.   I hereby certify and affirm in compliance with Real Property § 7-105.1(d)(1)(ii)(2) that a Notice of Intent to Foreclose in compliance with Real Property § 7-105.1(c) was enclosed in a certified and first class mail, return receipt requested, and postage prepaid envelope bearing a postmark from the United States Postal Service and properly addressed to Jeffrey V. Howes and Tonya H. Howes and was deposited in an official depository in the exclusive care and custody of the United States Postal Service.

6.   I hereby certify and affirm that, as of the date the Notice of Intent to Foreclose was sent, the contents of the Notice were accurate.

7.   I hereby certify and affirm in compliance with Real Property § 7-105.1(d)(1)(ii)(2) that said notice was mailed on May 14, 2011, that being more than 45 days before the commencement of the instant foreclosure action.

8.   I hereby certify and affirm that said notice was in the form prescribed by the

008-MD-V2

EXHIBIT 4

Commissioner of Financial Regulation and complied with the informational requirements of Real Property § 7-105.1(c) and contained: the names and telephone numbers of the secured party, the mortgage servicer, if applicable, and an agent of the secured party who is authorized to modify the terms of the mortgage loan; the name and license number of the Maryland mortgage lender; the total amount required to cure the default and reinstate the loan; the telephone and internet address of nonprofit and government resources available to assist mortgagors and grantors facing foreclosure, as identified by the Commissioner of Financial Regulation; an explanation of the Maryland foreclosure process and time line, as prescribed by the Commissioner of Financial Regulation.

9. I hereby certify and affirm that, in compliance with Real Property § 7-105.1(c)(5), said notice was accompanied by a loss mitigation application and all required documents and addressed envelopes.

10. I hereby certify and affirm that, in compliance with Real Property § 7-105.1(c)(3), a copy of said notice was electronically sent to the Commissioner of Financial Regulation.

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 By Wells Fargo Home Mortgage, Inc., A Division of Wells Fargo Bank, NA. as servicing agent.

Erinn T. Rochelle
Vice President of Loan Documentation

008-MD-V2

# EXHIBIT 4

State of South Carolina     )

County of York     )


Sworn and subscribed to before me this 12th day of January, 2012.



Notary Public

My Commission expires: _01 - 15 - 2013_


OFFICIAL SEAL
Notary Public
State of South Carolina
GERALDINE JOHNSON
My Commission Expires Jan. 15, 2013

# EXHIBIT 4



P.O. Box 1225
Charlotte, NC 28201-1225

MDCM053011000‑4
JEFFREY V HOWES
TONYA H HOWES
14900 SWEITZER LANE SUITE 201
LAUREL, MD 20707

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights as against the property.

EXHIBIT 4

## NOTICE OF INTENT TO FORECLOSE (Mortgage Loan Default)

This Notice is Required by Maryland Law (Real Property Article, §7-105.1(a), Annotated Code of Maryland).

**You are at risk of losing the property described in this Notice to foreclosure.** You are in default on your mortgage loan and if you do not pay what is owed, or otherwise cure your default, or enter into a loss mitigation agreement with us (such as a loan modification or other loss mitigation program) we may file a foreclosure action against the property upon the later of 45 days after we sent this notice to you or 90 days after your default.

**You may be eligible for certain programs to avoid foreclosure,** but you must submit the enclosed Loss Mitigation Application and required documents to your lender or servicer.

**It is recommended that you seek housing counseling services.** Call the Maryland HOPE Hotline at 1-877-462-7555 or go to www.MDHOPE.org for information on housing counseling.

**Attached is a list of state and federal foreclosure-related resources available to help you.**

Please follow the instructions that are outlined below.

**Instructions**

□   Read this entire Notice carefully and act immediately.

□   For more information about your loan status contact a representative in our Loss Mitigation Department at 1-800-416-1472.

□   Either: (i) pay the amount noted below that is required to reinstate your loan and/or otherwise cure your default in the manner identified below, or (ii) complete the enclosed Loss Mitigation Application according to its instructions.

•   If you complete a Loss Mitigation Application:

•   Mail your completed Loss Mitigation Application to your lender or servicer in (or at the address on) the preprinted envelope provided AS SOON AS POSSIBLE.

•   Be sure to include copies of all required documentation.

Keep for your records a copy of your Loss Mitigation Application and accompanying documents, your mail receipt confirmation, and your date of mailing.

If you have already sent a loss mitigation request to your lender or servicer, please call your lender or servicer at the number above to confirm the status of your request.

Beware of anyone offering to "save" your home or who seeks an upfront fee before providing assistance. Free resources are available at the Maryland HOPE Hotline at 1-877-462-7555 or go to www.MDHOPE.org.

# EXHIBIT 4

The following is important information about your mortgage loan:

Date of Notice: <u>5/10/2011</u>

Address of Property Subject to This Notice:

<u>7000   MEANDERING STREAM, FULTON, MD 20759</u>

Name of Borrower(s): <u>JEFFREY V HOWES    TONYA H HOWES</u>

Mailing Address of Borrower(s):

<u>14900 SWEITZER LANE SUITE 201, LAUREL, MD 20707</u>

Name of Record Owner (if different from Borrower(s)):

<u>N/A</u>

Mailing Address of Record Owner (if different from Borrower(s)):

<u>N/A</u>

Mortgage Loan Number (at least last four digits)

Lien Position (Indicate whether first or subordinate lien): <u>1st Lien</u>

Date Most Recent Loan Payment Received: <u>12/21/2010</u>

Period to Which Most Recent Mortgage Loan Payment Was Applied: <u>8/1/2009</u>

Date of Default: <u>9/2/2009</u>

Total Amount Required to Cure Default as of the Date of this Notice: <u>$111,205.68</u>

Name of Secured Party: <u>US Bank National Association , as Trustee for WFASC 2003-4</u>

Telephone Number of Secured Party: <u>1-866-599-5505</u>

Name of Loan Servicer (if different from Secured Party): <u>Wells Fargo Home Mortgage</u>

Telephone Number of Loan Servicer (if applicable): <u>1-800-416-1472</u>

Your mortgage loan payment is currently 616 past due and is in default.

**You can avoid foreclosure and cure the default by doing the following: On or before 6/24/2011 you must pay $ 111,205.68 plus any additional payments, late charges, fees, penalties or costs that may be due after the date of this notice to bring your mortgage loan current.  Your payment must be made in Certified Funds to Wells Fargo Home Mortgage, 1200 West 7th Street, Suite L2-200, Los Angeles, CA 90017.**

To obtain the exact amount needed to bring your loan current and cure this default, please call us at the toll-free telephone number provided above.  Send your full payment to us at this address: **Wells Fargo Home Mortgage, 1200 West 7th Street, Suite L2-200, Los Angeles, CA 90017.**

**If you are unable to cure the default, please contact us immediately to discuss loan repayment options or other possible foreclosure avoidance options, or you may fill out the enclosed Loss Mitigation Application and send it to us along with the required documents in (or at the address on) the preprinted envelope provided.**

**IMPORTANT NOTE: If you do not bring your loan current and cure your default or negotiate a resolution with us, we may file a foreclosure action upon the later of 45 days**

# EXHIBIT 4

**after this Notice is sent or 90 days from the default date. After a foreclosure action is filed, the residential property may be sold.**

Name of Mortgage Lender (if applicable):

<u>The Columbia Bank</u>

Maryland Mortgage Lender License Number (if applicable):

<u>N/A</u>

Name of Mortgage Loan Originator (if applicable): <u>N/A</u>

Maryland Mortgage Loan Originator License Number (if applicable): <u>N/A</u>

**cc: A copy of this Notice of Intent to Foreclose has been electronically filed with the Commissioner of Financial Regulation in accordance with the Code of Maryland Regulation 09.03.12.02.**

**Explanation of the Maryland Foreclosure Process and Time Line, Including Requests for Mediation, for Owner-Occupied First Mortgages:**

The process leading up to a foreclosure of your home begins when you receive a "Notice of Intent to Foreclose" in the mail. Your home is not yet in foreclosure, but you should act immediately. You may avoid foreclosure by curing the default as described in the Notice. Alternatively, you may complete the Loss Mitigation Application you receive with the Notice of Intent to Foreclose and return it, together with all required documents, in (or to the address on) the envelope that was included.

A foreclosure may be filed in circuit court 45 days after the Notice of Intent to Foreclose was sent, or 90 days after your loan went into default, whichever is later. When a foreclosure action is filed against your property, you should be served with a packet of papers called an "Order to Docket" or "Complaint to Foreclose."

Maryland law requires most lenders or their servicers to review your circumstances to see if you are eligible for a loan modification or other program that avoids foreclosure before your home can be sold at foreclosure. This review is called loss mitigation analysis.

If the loss mitigation analysis is completed before the "Order to Docket" or "Complaint to Foreclose" is filed and there is a document called a "Final Loss Mitigation Affidavit" in the packet that you receive, you should refer to Timeline # 1 below.

If the loss mitigation analysis is not completed before the "Order to Docket" or "Complaint to Foreclose" is filed, there will be a document called a "Preliminary Loss Mitigation Affidavit" in the packet and you should look at Timeline # 2 below.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| IN RE: | * | |
| JEFFREY V. HOWES, | * | Case No.: 12-30614-RAG |
| Debtors | * | Chapter 13 |
| *    *    *    *    *    * | * | *    *    *    *    * |
| JEFFREY V. HOWES, et al., | * | |
| Plaintiffs | * | Adversary Proceeding No. 13-00510 |
| v. | * | |
| WELLS FARGO BANK, N.A., et al. | * | |
| Defendants | * | |
| | * | |
| *    *    *    *    *    * | * | *    *    *    *    * |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COMPLAINT TO DETERMINE
SECURED STATUS, SANCTIONS, AND OTHER RELIEF**

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank, National Association ("U.S. Bank"), by their undersigned attorneys, file herein their Memorandum in Support of Motion to Dismiss Complaint to Determine Secured Status, Sanctions, or Other Relief.

**Statement of the Case**

On September 3, 2013, Plaintiffs filed a 35-page, nine-count, Complaint to Determine Secured Status, Sanctions, or Other Relief ("Complaint") against four defendants: Wells Fargo and U.S. Bank, Carrington Mortgage Services, LLC

("Carrington"), and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB ("Christiana Trust").

On September 9, 2013, the Court issued a Summons and Notice of Pre-Trial Conference that, according to the Affidavit of Service, was mailed to Defendants eight days later on September 17, 2013.

Defendants' answers or other first responsive pleadings were due 30 days after the Summons was issued, or on October 9, 2013.

On October 9, 2013, Carrington Mortgage Services, LLC and Christiana Trust filed their Motion to Dismiss for Failure to State a Claim.

On October 9, 2013, Wells Fargo and U.S. Bank, with Plaintiff's consent, requested an additional eight days in which to file their answers or other first responsive pleadings; the Court thereupon extended the responsive pleading date to October 17, 2013.

Wells Fargo and U.S. Bank, now move for dismissal on grounds that the Complaint fails to state a claim upon which relief can be granted.

## The Allegations of the Complaint

Notwithstanding its length, the Complaint, when stripped of its superfluous text, boils down to the following factual averments:

1.      On or about November 30, 2001, Plaintiffs Jeffrey V. Howes and Tonya H. Howes ("Mr. and Mrs. Howes") executed a Construction Note payable to The Columbia Bank in the principal amount of $696,130.00.[1]  Complaint, ¶ 15, Exhibit 1.

---

[1]   The Construction Note was amended by a Loan Modification Agreement dated April 16, 2003 and recorded among the Land Records of Howard County at Liber 07153, folio 094.   Under the Loan Modification Agreement, Mr. and Mrs. Howes' unpaid

2.      The Note was secured by certain real property owned by Mr. and Mrs. Howes and described as Lot 45 in the subdivision known as "Pindell Woods" located in Howard County, Maryland ("Property").[2]  Complaint, ¶15, 16.

3.      In April 2009, Mr. and Mrs. Howes defaulted on the Note and fell more than 60 days behind by June 2009.  After August 31, 2009, they stopped making any payments on the Note.[3]  Complaint, ¶ 17.

4.      On August 18, 2009, Mr. and Mrs. Howes applied to Wells Fargo for a loan modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP").[4]  Complaint, ¶ 19.

---

principal balance was $650,000.00, and their interest rate was lowered from a floating rate of 6%-11% to a fixed rate of 5.75%.  A copy of the Loan Modification Agreement, which is a modification of the Construction Note, is attached and incorporated herein as **Exhibit A.**

[2]   The Property is commonly known as 7000 Meandering Stream, Fulton, Maryland 20759.  See Complaint, Exhibits 3 and 4.

[3]   As reflected in paragraphs 17 and 59 of the Complaint, Mr. and Mrs. Howes paid nothing toward their mortgage loan from August 31, 2009 until May 2, 2013, almost four years later.  On May 2, 2013 and June 13, 2013, Mr. and Mrs. Howes allegedly sent two monthly payments to Wells Fargo, but there were returned as Wells Fargo, among others, had filed objections to Mr. Howes' proposed plan.  On September 12, 2013, the Court entered its Order Denying Confirmation of Chapter 13 Plan.  Bankruptcy Case Docket No. 77.

[4]   According to the Land Records of Howard County, The Columbia Bank assigned the Deed of Trust on the Property, together with the Note and all money due thereunder ("Security Instrument") to Wells Fargo Home Mortgage, Inc. on April 16, 2003. [Liber 07153, folio 099].  On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union National Bank, as Trustee.  [Liber 9083, folio 417].  Then, on July 20, 2011, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank,  National Association as Trustee  for Wells Fargo  Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust"). [Liber 13351, folio 169].  These Assignments are attached hereto and incorporated herein as **Exhibit B.**

5.      On July 19, 2010, Mr. and Mrs. Howes were informed that they were not eligible for a HAMP loan modification, and were subsequently told:  "… we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP)."  Complaint, ¶¶ 21, 22.

6.      Nevertheless, on October 6, 2010, Wells Fargo offered Mr. and Mrs. Howes a Forbearance Agreement temporarily reducing their payments and lowering their interest rate, but requiring an upfront payment of $24,683.61, and a balloon payment of $58,766.56 at maturity.[5]  Complaint, ¶ 22.

7.      Mr. and Mrs. Howes rejected Wells Fargo's offered Forbearance Agreement.  Complaint, ¶ 23.

8.      Upon rejecting Wells Fargo's Forbearance Agreement, Mr. and Mrs. Howes made a counter offer to Wells Fargo, offering to cure their default "in exchange for a new fixed rate mortgage at the current market average rate."  Wells Fargo rejected the counter offer.  Complaint, ¶ 23.

9.      On February 21, 2012, U.S. Bank as principal, and Wells Fargo, as agent, initiated a foreclosure action ("Foreclosure Case") against Mr. and Mrs. Howes.[6]  Complaint, ¶ 36.

---

[5]      According to the terms of the Loan Modification Agreement, Mr. and Mrs. Howes' monthly payments of principal and interest were $3,792.22.  With additional amounts escrowed for taxes and insurance, their monthly payments were approximately $4,500. Accordingly, having made no mortgage payments since August 31, 2009, Mr. and Mrs. Howes were more than 11 months in arrears, or approximately $50,000.00 delinquent.  The upfront cash payment proposed was less than half the amount then due. Wells Fargo presumed that, even though Mr. and Mrs. Howes had stopped paying their mortgage nearly a year prior, nevertheless, they were setting aside at least a portion of their monthly payment eventually cure their default.

[6]      According to the Complaint, this was the second foreclosure action initiated by U.S. Bank and Wells Fargo.  The first had been filed on January 20, 2010, but voluntarily

10.     In June 2012, Mr. and Mrs. Howes renewed their efforts to obtain "an equitable, long-term modification" from Wells Fargo and submitted a second HAMP loan modification.[7]  Complaint, ¶¶ 27- 28.

11.     On or about August 13, 2012, Wells Fargo advised Mr. and Mrs. Howe that, due to their Net Present Value ("NPV"), including the value of the Property, their Mortgage could not be modified.  Complaint, ¶ 30.

12.     On September 11, 2012, Mr. and Mrs. Howe disputed the NPV, but Wells Fargo did not respond.  Complaint, ¶ ¶ 32-33.

13.     On November 15, 2012, Mr. Howe filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code, and filed a plan providing to cure $35,662 in pre-petition mortgage arrears, while maintaining post-petition payments directly to Wells Fargo.  Complaint, ¶ 50.

15.     On January 9, 2013, Wells Fargo filed an Objection to Confirmation of Plan ("Plan Objection") as Servicer for U.S. Bank, Trustee for the Trust.[8]  Complaint, ¶ 52.

---

dismissed a year later on January 3, 2011, apparently because it was supported by defective affidavits.  Complaint, ¶¶ 36, 38-40.

[7]     U.S. Bank and Wells Fargo object to, and ask the Court to strike, paragraphs 24-26 of the Complaint, and so much of paragraph 27 as refers to a Foreclosure Mediation Agreement between the parties.  This is because these paragraphs contain allegations of conduct and statements made during compulsory foreclosure mediation.  Under Maryland Rule 5-408, the alleged statements of Mary Betty Vendemia, and her explanation of Wells Fargo's position, would be inadmissible in the State court foreclosure action as "conduct and statements made in compromise negotiations and mediation."   Pursuant to 28 U.S.C. §652(d), Local Rule 607(4), and Local Bankruptcy Rule 9019-2(e), they should also be inadmissible in this proceeding as a violation of the confidentiality that the parties expected during, and that is necessary for the success of, settlement talks and mediation.

15.     On March 8, 2013, U.S. Bank filed a timely proof of claim which, on March 15, 2013, was amended by Wells Fargo, asserting a secured claim of $740,334.24, with pre-petition arrearages of $200,196.79.  Complaint, ¶¶ 53-54.

16.     On June 11, 2013, Wells Fargo's proof of claim was transferred to Wilmington Savings Fund Society, FSB, with payments to be made to Carrington Mortgage Services, LLC.  Complaint, ¶ 57.

17.     Mr. and Mrs. Howe do not know the identity of the rightful owner of the Note because, according to Exhibit 2 attached to their Complaint, the Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012.[9]  Complaint, ¶¶ 43, 62.

### The Counts of the Complaint

Based on these factual allegations, Mr. and Mrs. Howes make the following nine claims:

COUNT I - Fraud Upon the Court.  By not disclosing that the Trust allegedly terminated in January 2012, U.S. Bank and Wells Fargo intended to defraud the Court when Wells Fargo (1) objected to Mr. Howes' Chapter 13 plan as Servicer for U.S. Bank, and (2) filed its Amended Proof of Claim in the name of Wells Fargo Bank, N.A.  Mr.

---

[8]     On September 19, 2013, the Court entered an Order Denying Confirmation of Chapter 13 Plan with Leave to Amend.  On October 4, 2013, Mr. Howe filed an Amended Plan that provides, *inter alia¸* that, if not disallowed, the secured claim of the "Successor to The Columbia Bank … shall be paid or otherwise dealt with outside the plan directly by the Debtor, and it will not be discharged upon completion of the plan."  As the amended plan fails to address the pre-petition arrearage and does not explain how the debt will be "otherwise dealt with," the current holder of the claim will presumably file a timely objection to the plan prior to the confirmation hearing on November 20, 2013.

[9]     As identified in Footnote 4, above, the Trust refers to Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4

and Mrs. Howes seek sanctions, attorneys' fees, and such other relief as necessary to prevent future fraud.

COUNT II – Determination of Scope, Extent and Validity of Lien.  As U.S. Bank did not endorse the Note and make it payable to the order of Wells Fargo Bank, N.A., Wells Fargo is not the holder of the Note and, therefore, lacks standing to file the Amended Proof of Claim. Mr. and Mrs. Howes seek a determination that the Note is unenforceable, and there is no secured claim against the Property.

COUNT III – Sanctions for Defective Proof of Claim.  The Amended Proof of Claim, which asserts a secured claim under a Note not payable to Wells Fargo, failed to include an itemized statement of the interest, fees, and expenses incurred pre-petition, an escrow account statement, or other necessary attachments.  Moreover, when Mr. Howes filed his initial Claim Objection, Wells Fargo did not respond.  The Court is asked to preclude Wells Fargo and U.S. Bank from presenting any evidence in support of their Amended Proof of Claim, and to award attorneys fees' to Mr. and Mrs. Howes.

COUNT IV – Unlawful Inspection Fees.  The Amended Proof of Claim includes inspection fees that violate § 12-1027 of the Maryland Commercial Law Article.  The Court is asked to find that Wells Fargo, U.S. Bank, or its successors cannot collect any interest, costs, fees, or other charges with respect to the Note.

COUNT V – TILA New Owner Notices.  The ownership of the Note was transferred several times to at least U.S. Bank and to Wells Fargo, but, under the Trust in Lending Act, these parties did not provide to Mr. and Mrs. Howes the new creditor notice required by 15 U.S.C. § 1641(g) or a partial payment policy disclosure required by 15

U.S.C. § 1639c(h).  The Court is asked to find that Mr. and Mrs. Howes are entitled to statutory damages in the amount of $4,000 for each violation.

COUNT VI – Fair Debt Collection Procedures Act.  The Amended Proof of Claim falsely states that Mr. Howes is liable to Wells Fargo for $740,334.24, and that U.S. Bank filed multiple false affidavits in the foreclosure cases, including the Ownership Affidavit.  Such false, deceptive, or misleading representations are prohibited under the Fair Debt Collection Procedures Act [15 U.S.C. §§1692e(2)(A) and 1692e(10)].  The Court is asked to find that Mr. and Mrs. Howes are entitled to statutory damages in the amount of $1,000 for each violation, and a reduction in the balance of the Note by way of recoupment.

COUNT VII – Maryland Consumer Debt Collection Act.  Wells Fargo and U.S. Bank have sought to collect from Mr. and Mrs. Howes amounts that they know are not lawfully due, which constitutes conduct violating the Maryland Consumer Debt Collection Action [Md. Com. Law Code, § 14-201, *et seq.*].  The Court is asked to find that  Mr. and Mrs. Howes are entitled to actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment.

COUNT VIII – Maryland Consumer Protection Act.  The conduct of Wells Fargo and U.S. Bank in falsely or wrongly asserting ownership of the Note and monies due was unfair and deceptive and violated the Maryland Consumer Protection Action [Md. Com. Law. Code, § 13-101, *et seq.*].  The Court is asked to find that  Mr. and Mrs. Howes are entitled to actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment.

COUNT IX – Objection to Claim.  As U.S. Bank and Wells Fargo lack standing to file the Amended Proof of Claim, fail to credit Mr. and Mrs. Howes with all payments made, and seek fees and other costs to which they are not entitled, the Amended Proof of Claim should be disallowed or reduced by the amount of damages awarded by the Court under their Complaint.  The Court is asked to disallow the Amended Claim.

## The Gist of the Complaint

The Complaint's core contention is that neither Wells Fargo nor U.S. Bank has standing to foreclose on the Property, to object to Mr. and Mrs. Howes' Chapter 13 plan, or to file a proof of claim pursuant to the Note and Deed of Trust under which Mr. and Mrs. Howes borrowed $650,000.00 to improve the subject Property. Further, they contend, the Amended Proof of Claim is defective in that it includes improper fees, misstates the pre-petition arrearage, and fails to include certain exhibits.

## The Opposing Argument

There is neither harm nor foul here.  Even if the Mortgage was removed from the Trust, or the Trust terminated as alleged on January 25, 2012, Mr. and Mrs. Howes are still indebted to the holder of the Note and Deed of Trust, whoever that might be.  There is no allegation that Mr. and Mrs. Howes have paid their loan. On the contrary, they admit in the Complaint that they are in default thereunder.

If the Trust terminated, as alleged, on January 25, 2012, then its assets returned to Wells Fargo, the grantor which had conveyed them to the Trust in the first place.  Wells Fargo was, thus, their owner of the Mortgage on February 21, 2012, when the Substitute Trustees filed the Foreclosure Case at Wells Fargo's behest.  Likewise, Wells Fargo was the owner when the Proof of Claim was filed in its name on March 15, 2013.  There have

been no material misstatements as to ownership, and no damages that can credibly be ascribed to the mistakes of inconsequence alleged.

### **Standard of Review**

The purpose of a motion to dismiss filed pursuant to Federal Rule 12(b)(6), as made applicable to adversary proceedings by Bankruptcy Rule 7012, is to test the sufficiency of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). The complaint itself must demonstrate "entitlement to relief" that consists of more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. Dismissal is proper when the face of the complaint reveals the existence of a meritorious defense. *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996).

Generally when documents not appended to a complaint are submitted to the court in connection with a motion to dismiss pursuant to Rule 12(b)(6), those documents either are not considered or the motion is converted to a summary judgment motion with proper notice to the parties. *Biospherics, Inc. v. Forbes, Inc.,* 989 F.Supp.748, 749 (D.Md.,1997). An exception to the general rule is made for documents which are referred to in the complaint and upon which plaintiff relies in bringing the action. *See, Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). This exception has been

recognized with favor and relied upon in this circuit and district. *See, New Beckley Min. Corp. v. International Union, United Mine Workers of America,* 18 F.3d 1161, 1164 (4th Cir.1994); *In re Medimmune, Inc. Securities Litigation,* 873 F.Supp. 953, 957 (D.Md.1995).

## Argument

I.    COUNTS I, II, III, VI, VII, VIII AND IX OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THEY ARE BASED ON THE FALSE PREMISE THAT WELLS FARGO WAS NOT THE OWNER OF THE NOTE AND DEED OF TRUST WHEN IT FILED THE FORECLOSURE CASE, OBJECTION TO CHAPTER 13 PLAN, AND PROOF OF CLAIM.

Counts I, II, III, VI, VII, VIII, and IX of the Complaint border on the frivolous. They are all based on the unfounded contention that Wells Fargo was not the rightful owner of the Note and, therefore, lacked standing to (1) collect the amounts due thereunder; (2) initiate the Foreclosure Case; (3) object to Mr. Howes' Chapter 13 plan; and (4) file an Amended Proof of Claim.

But if, for the purpose of this motion, we accept as true Mr. and Mrs. Howes' allegation that the Mortgage was removed from the Trust on January 1, 2012, and that the Trust then terminated on January 25, 2012, all this means (in the absence of an allegation to the contrary) is that Wells Fargo became, again, the owner of the Mortgage. Wells Fargo was the grantor, or settlor, which initially assigned the Mortgage and its underlying loan obligation to the Trust on July 20, 2011. See Footnote 4, above.[10]

---

[10]    The Court is asked to take judicial notice of the Land Records of Howard County, which include **Exhibits A, B, and C,** pursuant to Rule 201(b), Federal Rule of Evidence, which allows a court to take judicial notice of facts not subject to reasonable dispute including facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."

When a trust terminates with property not yet administered, the remaining assets revert by law to the grantor. *Evans v. Safe Deposit & Trust Co. of Baltimore*, 58 A.2d 649, 190 Md. 332 (1948). As alleged in the Complaint, the Mortgage was removed from the Trust, and the Trust was terminated, in January 2012. The reasonable inference, in the absence of contrary allegations, is that Wells Fargo again owned the Mortgage in its own name.

On March 15, 2013, Wells Fargo timely filed a Proof of Claim which, on its face, identified itself, "Wells Fargo Bank, N.A.", as the creditor. This is entirely consistent with the alleged termination of the Trust on January 25, 2012, and the reversion of the Mortgage to Wells Fargo. In Count I, Mr. and Mrs. Howe make much of the fact that, several days earlier, Wells Fargo had filed an identical proof of claim, but in the name of the Trust. Within the week, however, this inconsequential mistake was corrected, and Wells Fargo filed its amended Proof of Claim which correctly identifies itself as the creditor. There is no credible allegation of any intent to defraud the Court, and no particulars are pleaded from which fraud could be discerned. Wells Fargo itself caught its error, and Wells Fargo corrected it. The liberal amendment of pleadings is welcomed by a court of equity.

Likewise, Counts II, III, VI, VII ,VIII and IX must fall because, based on the Proof of Claim referred to in the Complaint, and the allegation that the Trust no longer owns the Mortgage, Mr. and Mrs. Howe provide no factual basis whatsoever for their claims that Wells Fargo (a) is not the holder of the Note as alleged Counts I and  II; (b) has filed a defective proof of claim as alleged in Count III; (c) has falsely stated that Mr. Howes is liable to Wells Fargo for $740,334.24 as alleged in Count VI; (d) has sought to

Apx. 88

collect from Mr. and Mrs. Howes amounts it knows are not lawfully due as alleged in
Count VII;  and (e) has falsely or wrongly asserted ownership of the Note as alleged in
Count VIII.

These counts are not based solely on Wells Fargo's Proof of Claim, but also on
its Objection to Confirmation of Plan ("Objection") filed by Wells Fargo on January 9,
2013, ostensibly as Servicer for U.S. Bank, National Association, Trustee. While the
Objection misstates Wells Fargo's role (servicer rather than holder), this is of no legal
consequence under the Complaint  – and certainly caused Mr. and Mrs. Howes no harm –
because Wells Fargo was, in fact, the holder of the claim when the Objection was filed.
More significantly, on the basis of objections filed by the United States Trustee, the Court
denied confirmation of the Plan on September 19, 2013.

Wells Fargo's Objection is therefore moot and, in any event, Wells Fargo
subsequently clarified its role when, on March 15, 2013, its amended Proof of Claim was
filed.  From that date until the assignment of the claim to Carrington Mortgage Services,
LLC on May 29, 2013, everything in the bankruptcy case clearly reflected that Wells
Fargo held the Note and Deed of Trust in its own name.[11]

Clearly, at least until the assignment of its claim to Carrington and Christiana
Trust, Wells Fargo had standing to assert its claim in this Court.  Counts I, II, III, VI, VII,

---

[11]  Mr. and Mrs. Howe also contend that Wells Fargo should be barred from
defending its Proof of Claim because, having allegedly been served with an Objection to
Claim on April 2, 2003 [Docket No 36], Wells Fargo failed to respond after assigning the
claim to Carrington or Christiana Trust.  On June 24, 2013, the Court denied the
Objection to Claim upon finding that Mr. and Mrs. Howes had failed to serve Carrington
or Christiana Trust. [Docket No. 65].  Under Count IX of the Complaint, the Court can
hardly preclude Wells Fargo from presenting evidence on behalf of its assignees, if called
to do so.  However, Wells Fargo and U.S. Bank, having no interest in the Proof of Claim,
should be dismissed from Count IX of the Complaint.

VIII, and IX, all based on the mistaken premise that Wells Fargo was not the holder, fail
to state a claim for relief and should be dismissed.

**II.**  **COUNT IV OF THE COMPLAINT SHOULD BE DISMISSED
BECAUSE THE PROOF OF CLAIM DOES NOT INCLUDE AN
ILLEGAL INSPECTION FEE.**

In Count IV of the Complaint, Mr. and Mrs. Howes contend that Wells Fargo's
Proof of Claim contains inspection fees that are proscribed by §12-1027 of the Maryland
Commercial Law Article.  Specifically, they refer to the Statement of Prepetition Fees,
openly attached to the Proof of Claim, that itemize in detail every element of Wells
Fargo's claim.  Among these itemized fees, of which there are 21 categories, are the
following charges:

| 9. | **Appraisal/broker's price opinion fees** | $ 320.00 |
|---|---|---|

9/16/10: $50.00, 5/27/11: $90.00
11/29/11: $90.00, 6/13/12: $90.00

| 10. | **Property inspection fees** | $   0.00 |
|---|---|---|

Neither subtly nor with any factual predicate, Mr. and Mrs. Howes then re-label
the "Appraisal/broker's price opinion fees" as unlawful "Inspection Fees."  Complaint,
¶ 103.  In a conclusory allegation, they contend that these Inspection Fees "were not
bona fide appraisals of the value of the Property, and were not needed to ascertain
completion of construction of a new home or repairs, alterations, or other work required
by Defendants.  Complaint, ¶ 104.  This, however, is but an opinion without any factual
basis.

The Deed of Trust, to which the Complaint repeatedly refers, provides at
paragraph 9 as follows:

**Protection of Lender's Interest in the Property and Rights Under this
Security Instrument.**  If (a) Borrower fails to perform the covenants and

14

agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or right under this Security Instrument (such as a proceeding in bankruptcy …), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, …

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. …

A copy of the Deed of Trust is attached and incorporated herein as **Exhibit C.**

Thus, Mr. and Mrs. Howes expressly agreed that, if they stopped paying their mortgage or went into bankruptcy, Wells Fargo would have the right to charge them for periodically assessing the value of the Property.  There is no factual allegation in the Complaint that warrants the relabeling of this value assessment as an unlawful  inspection fee, or that allows Count IV to stand.

On its face, Count IV fails to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007).  There is nothing here but a legal conclusions, and not a single allegation upon which this conclusion is plausibly supported.  See *Faulkner  Adver. Assocs., Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991); s*ee, e.g., Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995). Count IV fails to state a claim upon which relief can be granted, and should be dismissed.

III.    COUNT V OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE ITS CLAIM UNDER TILA IS TIME-BARRED.

Count V of the Complaint fails to state a claim under TILA.[12]  Mr. and Mrs. Howe contend that, when their Note and Deed of Trust were assigned to Wells Fargo in 2003, to

---

[12]    In paragraphs 110-119 of their Complaint, Mr. and Mrs. Howes repeatedly refer to TILA as coming from Title 11 of the United States Code.  Of course, TILA is part of Title 15, and the correct citations are 15 U.S.C. §§ 1639c(h) and 1641(g), not 11

U.S. Bank in 2009 or 2011, or to Wells Fargo again on January 25, 2012, these transfers triggered the notice requirement of § 1641 (g):

> **Notice of new creditor.  (1) In general**.  In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including — **(A)** the identity, address, telephone number of the new creditor; **(B)** the date of transfer; **(C)** how to reach an agent or party having authority to act on behalf of the new creditor; **(D)** the location of the place where transfer of ownership of the debt is recorded; and **(E)** any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g).  Likewise, they contend that they were entitled to certain policy disclosures required by § 1639c(h):

> **(h) Policy regarding acceptance of partial payment**
>
> In the case of any residential mortgage loan, a creditor shall disclose prior to settlement or, in the case of a person becoming a creditor with respect to an existing residential mortgage loan, at the time such person becomes a creditor-
>
> (1) the creditor's policy regarding the acceptance of partial payments; and
>
> (2) if partial payments are accepted, how such payments will be applied to such mortgage and if such payments will be placed in escrow.

15 U.S.C. §1639c(h).

However, TILA contains a one-year statute of limitations for alleged violations brought by private citizens.  See 15 U.S.C. § 1640(e) ("any action under this section may be

---

U.S.C. §§ 1639c(h) and 1641(g). The irony is not lost that, in a Complaint filled with allegations of fraud based on obvious mistakes, Mr. and Mrs. Howes have misspoken in their pleading.  Notwithstanding these errors, Wells Fargo and U.S. Bank do not ascribe to them an intent to mislead the Court or to misrepresent the law to Defendants.

16

brought … within one year from the date of the occurrence of the violation.").[13]  To the

extent that any of the alleged assignments trigger the requirements in §§ 1639 or 1641, the

very latest that Mr. and Mrs. Howes' cause of action accrued was on December 31, 2011.

The instant Complaint was not filed until September 3, 2013, well past the statutory

deadline for notices triggered by assignments in 2003, 2009, 2011, and even in January

2012.  As such, the TILA claims under Count V are time-barred, and must be dismissed.

IV.    COUNT VI OF THE COMPLAINT SHOULD BE DISMISSED
       BECAUSE ITS CLAIMS UNDER FDCPA ARE TIME-
       BARRED.

Under Count VI of the Complaint, Mr. and Mrs. Howe contend that, by allegedly

use false, deceptive, or misleading representation or means in the collection of a debt,

Wells Fargo and U.S. Bank violated the Fair Debt Collection Procedures Act

("FDCPA").  This claim, however, is time-barred under the FDCPA's one-year statute of

limitation.  Causes of action for a violation of the FDCPA must be brought within one

year from the date the violation occurs:

> The statute of limitations for FDCPA claims is found in 15 U.S.C. §
> 1629K(d), which provides that '[a]n action to enforce any liability created
> by this title ]15 U.S.C.A. §§ et seq.] may be brought in an appropriate
> United States district court without regard to the amount in controversy, or
> in any other court of competent jurisdiction, **within one year from the
> date on which the violation occurs.**  [emphasis added]."

*Lennon v. Penn Waste, Inc.,* 2009 WL 3255294 at *6 (M.D. Pa. June 29, 2009), report

and recommendation adopted in part, rejected in part on other grounds, *Lemmon v. Penn*

*Waste, Inc.,* 2009 WF 3255238 (M.D. Pa. October 7, 2009).  *See also Khaliq v. Draper &*

---

[13]    The requirements of Section 1641 apply only to the transfer or assignment of
the underlying debt obligation (i.e. the note), and not the assignment of only the security
interest or "beneficial interest."  *See Terry v. Mortgage Electronic Registration Systems,
Inc.*, 2013 WL 1832376 (D. Md. April 30, 2013).

*Goldberg, P.L.L.C.,* 286 Fed.Appx. 72, 73 (4th Cir. 2008); *Glover v. Federal Deposit Insurance Corporation,* 698 F.3d 139, 145 (3rd Cir. 2012) [limitations began to run on date loan modification agreement was signed and representation about Plaintiff's debt became objectively false].

The latest allegation of misconduct under FDCPA occurred on February 21, 2012, when Wells Fargo allegedly made misrepresentations about Mr. and Mrs. Howes' HAMP eligibility. Complaint, ¶ 131. Thus, their cause of action accrued on that date. The Complaint, however, was not filed until September 3, 2013, more than a year *after* the last purported violation. As such, Mr. and Mrs. Howes' claims under FDCPA are time-barred, and Count VI must be dismissed for failing to state a claim upon which relief can be granted.

> V.   COUNT VIII OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THERE ARE NO ALLEGATIONS OF RELIANCE ON THE ALLEGED MISREPRESENTATIONS OF U.S. BANK AND WELLS FARGO.

Under Count VIII of the Complaint, Mr. and Mrs. Howes contend that Wells Fargo and U.S. Bank violated the Maryland Consumer Protection Act ("MCPA") by "falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case." Complaint, ¶ 143. The MCPA generally makes unlawful any false or misleading statements that have "the capacity, tendency or effect of deceiving or misleading consumers." MCPA, § 13-301(1). "[B]ecause the ... MCPA claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Allen v. CitiMortgage, Inc.,* 2011 WL 3425665 at *9 (D. Md., August 4, 2011). Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. . . . . Such allegations

typically "include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby." *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.,* 197 F.Supp.2d 298, 313–14 (D. Md. 2000) (*quoting Windsor Assocs., Inc. v. Greenfeld,* 564 F.Supp. 273, 280 (D. Md. 1983)).

As the court wrote in *Shahed Farasat v. Wells Fargo Bank, N.A.,* -- F.Supp.2d --, 2012 WL 649592 (D.Md.):

> To bring an action under the MCPA, Farasat must allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [him] actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen Motors Corp*., 916 A.2d 257, 277 (Md. 2007)).

There is absolutely no reliance alleged in the instant Complaint. Mr. and Mrs. Howes did not, in any way, change their conduct as a consequence of anything Wells Fargo or U.S. Bank filed or represented in either foreclosure action. They continued to reside in the Property; they paid nothing on their loan; they suffered no detriment whatsoever. Without an allegation of reliance, the Complaint fails to state a claim under the MCPA and Count VIII should be dismissed.

## Conclusion

For the reasons set forth above, the Complaint fails to state any claims upon which relief can be granted. Mr. and Mrs. Howe provide no basis whatsoever for their claims that Wells Fargo (a) is not the holder of the Note as alleged Counts I and II; (b) has filed a defective proof of claim as alleged in Count III; (c) has falsely stated that Mr. Howes is liable to Wells Fargo for $740,334.24 as alleged in Count VI; (d) has sought to collect from Mr. and Mrs. Howes amounts it knows are not lawfully due as alleged in Count VII; or (e) has falsely or wrongly asserted ownership of the Note as alleged in

Count VIII. Wells Fargo clearly had standing to file its proof of claim and, notwithstanding its subsequent assignment to Carrington and Christiana Trust, to defend Mr. and Mrs. Howes' objection thereto – which it intends to do for itself or for its assignees. Counts V and VI are barred by limitations, and Count VIII is fatally flawed because it fails to allege reliance. There are no factual allegations of unlawful fees being charge under Count IV, and nowhere is fraud pleaded with particularity. The entire Complaint should be dismissed, and Mr. and Mrs. Howe should file, and properly serve, a claim objection if they question any part of Wells Fargo's $740,334.24 Proof of Claim.

s/ Douglas B. Riley
Douglas B. Riley
Federal Bar No. 01220
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
Phone: (443) 901-2369
Email: dbriley@tph-law.com

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 17th day of October 2013, copies of the foregoing Memorandum in Support of Motion to Dismiss were served electronically through the Court's CM/ECF transmission facilities, as authorized by Local Bankruptcy Rule 9013-4 (a), on each party registered as a CM/ECF participant who has consented to electronically service and, if not a party registered as a CM/ECF participant, then mailed, first-class mail, postage prepaid, fully addressed as follows:

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876
Email:  www.haegerlaw.com

*Attorney for Plaintiffs,*
*Jeffrey V. Howes and Tonya H. Howes*

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Email:  bankruptcymd@mwc-law.com

*Attorney for Carrington Mortgage Services, LLC*
*and Wilmington Savings Fund Society, FSB*

Ellen W. Cosby, Esquire
300 E. Joppa Road, Suite 409
Towson, Maryland 21286

*Chapter 13 Trustee*


s/ Douglas B. Riley
Douglas B. Riley

LIBER 07153 FOLIO 094

HC 0295

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this          16th                     day of
April, 2003          , between JEFFREY V HOWES and TONYA H HOWES

("Borrower") and

THE COLUMBIA BANK

("Lender"), amends and
supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
November 30,2001                    and recorded in Book or Liber 5939     , at page(s) 610        ,
of the            Land        Records of HOWARD, MD

[Name of Records]                              [County and State, or other Jurisdiction]
and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real
and personal property described in the Security Instrument and defined therein as the "Property," located at

7000 MEANDERING STREAM WAY, FULTON, MD 20759                              ,
[Property Address]

HOWPERM J030442                        030442                              0

**LOAN MODIFICATION AGREEMENT**-Single Family- Fannie Mae Uniform Instrument

-852R (0005)         Form 3179  1/01
Page 1 of 4   MW 05/00   Initials: 
VMP MORTGAGE FORMS - (800)521-7291

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0094. Printed 10/12/2013. Online 01/13/2004.

Apx. 98

LIBER 07153 FOLIO 0 9 5

the real property described being set forth as follows:
LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of  04/16/03                             , the amount payable under the Note and the
    Security Instrument (the "Unpaid Principal Balance") is U.S. $ 650,000.00              ,
    consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.
    Interest will be charged on the Unpaid Principal Balance at the yearly rate of
    5.7500            %, from April 16, 2003                      . Borrower
    promises to make monthly payments of principal and interest of U.S. $ 3,793.22            ,
    beginning on the First      day of June        2003        , and continuing
    thereafter on the same day of each succeeding month until principal and interest are paid in full.
    If on May 1, 2033                     (the "Maturity Date"), Borrower still owes
    amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower
    will pay these amounts in full on the Maturity Date.

    Borrower will make such payments at 5585 STERRETT PLACE, COLUMBIA, MD 21044,

    or at such other place as Lender may require.
HOWPERM J030442                    030442                                              0
                                                        Initials:
(LMP)·862R (0005)                  Page 2 of 4                            Form 3179 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0095. Printed 10/12/2013. Online 01/13/2004.

Apx. 99

3.   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4.   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)   all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

HOWPERM J030442                    030442                                    0

VMP-862R (0005)                    Page 3 of 4            Initials: _____    Form 3179 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0096. Printed 10/12/2013. Online 01/13/2004.

Apx. 100

LIBER 0 7 1 5 3 FOLIO 0 9 7

_____ (Seal)      _Tonya Howes by Jeffrey V Howes_ (Seal)
JEFFREY V HOWES            -Borrower     TONYA H HOWES BY JEFFREY V        -Borrower
                                         HOWES HER ATTORNEY-IN-FACT

_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                          -Borrower                                -Borrower

                                         THE COLUMBIA BANK           (Seal)

                                         By: _____
                                         MICHAEL T. GALEONE
                                         EXECUTIVE VICE PRESIDENT

                    _____[Acknowledgments To Be Attached]_____

HOWPERM J030442                  030442
VMP-852R (0006)              Page 4 of 4                    Form 3179 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0097. Printed 10/12/2013. Online 01/13/2004.

Apx. 101

LIBER 07153 FOLIO 0.98

STATE OF MARYLAND
COUNTY OF __Prince George's__.

    I hereby certify, that on this ___16___ of ___April___ 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____,
personally appeared __Jeffrey V. Howes, individually and as attorney in fact__ for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the    Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS:  My hand and notarial seal

My Commission Expires: ~~10/17/05~~ 04/01/05

Melvin L. Schneider

```
IMP FD SURE $        5.00
RECORDING FEE       20.00
TOTAL               25.00
Rest #0082   Rcpt # 23491
NDR   JMK    Blk $ 3101
May 09, 2003        10:37 am
```

LIBER 07153 FOLIO 099

PLEASE RETURN TO:
THE COLUMBIA BANK
5585 STERRETT PLACE, STE. 100
COLUMBIA, MD 21044

HC 0296

## ASSIGNMENT OF SECURITY INSTRUMENT

Loan #:   030442

KNOW ALL MEN BY THESE PRESENTS THAT  THE COLUMBIA BANK
organized and existing under the laws of   THE STATE OF MARYLAND
party of the first part, in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration in
lawful money of the United States to it in hand paid by  Wells Fargo Home Mortgage, Inc. a California Corp.
    3601 MINNESOTA DR MACX4701-022, BLOOMINGTON, MN 55435

party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby
acknowledged, has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant,
bargain, sell, assign, transfer and set over unto the said party of the second part that certain Security Instrument executed
by  JEFFREY V HOWES and TONYA H HOWES

dated   11/30/01                                                and to be filed for record in the Clerk's office of the Circuit Court of the
County of  HOWARD                              , State of  Maryland                    on the following described property:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

together with the Note or obligation described in said Security Instrument and the money due and to become due thereon,
with interest accrued and owing thereon.

TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns forever, the said
party of the first part has caused these presents to be signed in its name by its officer, and its corporate seal to be affixed
this   16th     day of  April 2003

WITNESSES:                                              THE COLUMBIA BANK

_____              _____
                                                By:  MICHAEL T. GALEONE
                                                Its:  EXECUTIVE VICE PRESIDENT
_____                          (SEAL)

State of  MARYLAND                              )
                                                ) SS:
County of  HOWARD                               )

I, an Officer duly authorized to take acknowledgements of deeds according to the laws of the State of MARYLAND
, duly qualified and acting, hereby certify that  MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT
personally known to me, this day acknowledged before me that said person executed the foregoing Assignment of Security
Instrument as such officer of said organization and that said person affixed thereto the Official Seal of the said
organization and I further certify that I know the said person making said acknowledgement to be the individual described
in and who executed said Assignment of Security Instrument.

IN WITNESS WHEREOF, I hereunto set my hand and Official Seal in said county and state this   16th       day
of   April 2003                              .

                                                _____
    (SEAL)                                            Notary Public

My commission expires:  9-25-04

This instrument was prepared by:   BARB MCCLANAHAN

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0099. Printed 10/12/2013.

Apx. 103

LIBER 0 7 1 5 3 FOLIO 1 0 0

STATE OF MARYLAND
COUNTY OF ___HOWARD___

    I hereby certify, that on this ___16TH___ of ___APRIL___, 2003, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of ___BALTIMORE___ personally appeared ___MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT___ known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS: My hand and notarial seal

My Commission Expires:  9–25–04

                                    _Barb McClanahan_
                                    Notary Public



BARB McCLANAHAN
NOTARY PUBLIC
BALTIMORE CO. MD.

```
IMP FD SURE $        5.00
RECORDING FEE       20.00
TOTAL               25.00
Rcpt H082   Rcpt # 23491
HDR    JNR.   Blk $ 3102
May 09, 2003      10:37 am
```

Apx. 104

IEN 9083 FOLIO 417                                    37

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Wells Fargo Bank, N.A.
3601 MINNESOTA DRIVE, STE 200
BLOOMINGTON, MN 55435
Attn: MAC # x4701-022
Loan #:  0127973402
Prepared By: VIET TRAN

MIN #:  100011399992927849
MERS Phone: 1-888-679-6377

Space Above this Line for County Recorder

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

First Union National Bank, As Trustee
4527 Metropolitan Court Suite C, Frederick, MD 21704

all beneficial interest under that certain Deed of Trust dated:
executed by:  JEFFREY V HOWES and TONYA H HOWES, Trustor

Beneficiary:   The Columbia Bank

and recorded as Instrument No.  on May 09, 2003 in Book: 07153
Page: 094            , of Official Records in the County Recorders office of
MD    , describing land therein as:                        Howard County
LEGAL DESCRIPTION AS SHOWN AND/OR ATTACHED TO THE DEED OF TRUST REFERRED TO HEREIN.
Pin or Tax ID #:                     LoanAmount:      $650,000.00
Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759
TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IMP FD SURE $        $0.00
RECORDING FEE      $0.00
TOTAL               $0.00
Rect CH05    Rcpt # 27866
MDR    P3R    Blk # 14
Apr 01, 2005    07:08:00

Wells Fargo Bank, N.A., successor by merger
to Wells Fargo Home Mortgage, Inc.

Dated: March 16, 2005

State of Minnesota        ) ss.
County of Hennepin

GEORGIANA RICE
Vice President Loan Documentation, Wells Fargo Bank,
N.A., successor by merger to Wells Fargo Home
Mortgage, Inc.

On    March 16, 2005                                          before me
personally appeared GEORGIANA RICE, Vice President Loan Documentation  of Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc. known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies). entity upon behalf of which the person(s) acted,
executed the Instrument.  WITNESS my hand and official seal.

FOR NOTARY SEAL OR STAMP

VIET TRAN
Notary Public
Minnesota
My Commission Expires Jan 31, 2010

_____ (Seal)

VIET TRAN

This is to certify that the within instrument has been prepared by a party to the instrument.

VIET TRAN

HO CIRCUIT COURT (Land Records) [MSA CE 53-9067] MDR 9083, p. 0417. Printed 10/12/2013. Online 04/08/2005.

\13

(Space above this line for recorder use only)

ASSIGNMENT OF DEED OF TRUST

For value received, **Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee**, herein "Assignor", whose address is 301 SOUTH TRYON STREET, WACHOVIA PLAZA CHARLOTTE, NC, the undersigned hereby grants, assigns, and transfers to:

**US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4**
4801 Frederica Street, Owensboro, KY 42301

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Jeffrey V Howes and Tonya H Howes, dated November 30, 2001, in the amount of $696,130.00 and given to The Columbia Bank and recorded on January 22, 2002 as Document or Instrument Number 000383 and/or in Book 5939, Page 0610 in the Recorder's office of the County of Howard, Maryland, describing land therein as:

Property Address:        7000 Meandering Stream Way, Fulton, MD 20759
Property Tax ID or PIN:  n/a
Legal Description:       See Attached

Signed this _July 20, 2011_ .        **Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee**

_Bao Thao_

VICE PRESIDENT LOAN DOCUMENTATION

**MARYLAND ALL PURPOSE NOTARY ACKNOWLEDGEMENT**

STATE OF MINNESOTA        }
COUNTY OF DAKOTA          }

On this _07/20/2011_ before me, _Steven T Schmidt_, personally appeared: _Bao Thao_, VICE PRESIDENT LOAN DOCUMENTATION, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Document drafted and prepared by; when recorded, return to:

Wells Fargo Home Mortgage
Ashley Dauwalter, x9999-018
PO Box 1629
Minneapolis, MN  55440-9790

This is to certify that the within instrument has been prepared by a party to the instrument.

_____
Name: Ashley Dauwalter

WITNESS my hand and official seal.

Notary _Steven T Schmidt_

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan. 31, 2014

TAP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Rest H082    Rcpt # 68947
HDR   TLR   Blk # 352
Jul 26, 2011        08:07 am

Page 1 of 2

Apx. 106

**Legal Description**

(Type of Recording Jurisdiction)

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 46 AND 47 and PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

HO CIRCUIT COURT (Land Records) [MSA CE 53-13342] MDR 13351, p. 0170. Printed 10/12/2013. Online 07/28/2011.

Apx. 107

LIBER 5 9 3 9 FOLIO 0 6 1 0

000383

Return To:
THE COLUMBIA BANK
9151 BALTIMORE NATIONAL
PIKE ELLICOTT CITY, MD
21042

Prepared By:
BARB MCCLANAHAN

MELVIN L. SCHNEIDER
7701 GREENBELT RD. #202
GREENBELT, MD 20770

————————————[Space Above This Line For Recording Data]————————————

PURCHASE MONEY as to $215,000.00

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated November 30, 2001 ,
together with all Riders to this document.
**(B) "Borrower"** is JEFFREY V HOWES and TONYA H HOWES

5.00
75.00
2002.50

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is THE COLUMBIA BANK

Lender is a corporation
organized and existing under the laws of THE STATE OF MARYLAND .

HOWES J010842            010842                        0
**MARYLAND**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021 1/01

VMP -6(MD) (0005)
Page 1 of 15          MW 04/00.03    Initials: HH
VMP MORTGAGE FORMS - (800)521-7291

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0610. Printed 10/12/2013. Online 05/10/2004.

Apx. 108

LIBER 5 9 3 9 FOLIO 0 6 1 1

Lender's address is 5585 STERRETT PLACE, COLUMBIA, MD 21044

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is MICHAEL T. GALEONE AND MATTHEW T. BECKER,

(E) "Note" means the promissory note signed by Borrower and dated    November 30, 2001
The Note states that Borrower owes Lender Six Hundred Ninety Six Thousand One
Hundred Thirty and                                                                           Dollars
(U.S. $696,130.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    September 1, 2002
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

HOWES J010B42                         010842                                        0
Ⓜ-6(MD) (0005)                    Page 2 of 16          Initials:                Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0611. Printed 10/12/2013. Online 05/10/2004.

Apx. 109

LIBER 5 9 3 9 FOLIO 0 6 1 2

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the Land Records of HOWARD County :

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS. LOTS 1 THRU 45 XXXX 47 and PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

Parcel ID Number:                                    which currently has the address of
7000 MEANDERING STREAM WAY                                             [Street]
FULTON                               [City], Maryland    20759    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

HOWES J010842                    010842                                           0

⑱-6(MD) (0005)              Page 3 of 16          Initials:        Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0612. Printed 10/12/2013. Online 05/10/2004.

Apx. 110

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

HOWES J010842                              010842                    Initials: *JHM*                         0

-6(MD) (0005)                         Page 4 of 16                                          Form 3021  1/01

LIBER 5 9 3 9 FOLIO 0 6 1 4

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

HOWES  J010842                          010842                                              0

-6(MD) (0005)                           Page 5 of 15                    Initials: ___            Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0614. Printed 10/12/2013. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 1 5

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

HOWES  J010842                                    010842                                              0

(VMP) -6(MD) (0008)                          Page 6 of 15            Initials: _____      Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0615. Printed 10/12/2013. Online 05/10/2004.

Apx. 113

LIBER 5 9 3 9 FOLIO 0 6 1 6

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒ ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒ ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒ ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒ ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒XX

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

HOWES J010842                                   010842                                   0

-6(MD) (0005)                          Page 7 of 15              Initials: _____              Form 3021  1/01


HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0616. Printed 10/12/2013. Online 05/10/2004.

Apx. 114

LIBER 5939 FOLIO 0617

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

HOWES J010842                                        010842                                                    0

-6(MD) (0005)                         Page 8 of 18                    Initials: _JHA_            Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0617. Printed 10/12/2013. Online 05/10/2004.

Apx. 115

LIBER 5939 FOLIO 0618

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

HOWES J010842                               010842                                              0

VMP ®-6(MD) (0005)                    Page 9 of 16              Initials: JHM            Form 3021   1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0618. Printed 10/12/2013. Online 05/10/2004.

Apx. 116

LIBER 5939 FOLIO 0619

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

HOWES J010842                                  010842                                          0

VMP -6(MD) (0005)                       Page 10 of 16              Initials: _A H_          Form 3021 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0619. Printed 10/12/2013. Online 05/10/2004.

Apx. 117

LIBER 5 9 3 9 FOLIO 0 6 2 0

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

HOWES J010842                       010842                       0

-6(MD) (0005)                Page 11 of 15          Initials: _JHM_          Form 3021   1/01

Apx. 118

LIBER 5 9 3 9 FOLIO 0 6 2 1

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

HOWES J010842                    010842                    Initials: _____    0

VMP®-6(MD) (0005)              Page 12 of 15              Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0621. Printed 10/12/2013. Online 05/10/2004.

Apx. 119

LIBER 5939 FOLIO 0 6 2 2

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  5.0000          % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Possession of the Property. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

HOWES  J010842                         010842                                        0

VMP®-6(MD) (0005)                      Page 13 of 16          Initials: _____     Form 3021  1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0622. Printed 10/12/2013. Online 05/10/2004.

Apx. 120

LIBER 5 9 3 9 FOLIO 0 6 2 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JEFFREY V HOWES                 -Borrower

_____          _____ (Seal)
                                          TONYA H HOWES                   -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                         -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                         -Borrower

HOWES J010842                    010842                           0

VMP-6(MD) (0005)                 Page 14 of 15                    Form 3021  1/01

Apx. 121

LIBER 5 9 3 9 FOLIO 0 6 2 4

**STATE OF MARYLAND,**     Prince George's        County ss:
     I Hereby Certify, That on this    30    day of    November, 2001 before me, the subscriber, a
Notary Public of the State of Maryland, in and for the    County of Montgomery
personally appeared JEFFREY V HOWES and TONYA H HOWES

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
     AS WITNESS: my hand and notarial seal.
My Commission Expires:                Notary Public
~~December XX, XXXX~~
     4/1/05

**STATE OF** Maryland      , Prince George's        County ss:
     I Hereby Certify, That on this 30    day of    November, 2001    ,before me, the subscriber,
a Notary Public of the State of Maryland and for the    County of Montgomery
personally appeared
       Andrea Henske
the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
funds in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.
     AS WITNESS: my hand and notarial seal.
My Commission Expires:                Notary Public
~~December XX, XXXX~~
     4/1/05

This is to certify that the within instrument was prepared by:

THE COLUMBIA BANK

BARB MCCLANAHAN

LIBER 5 9 3 9 FOLIO 0 6 2 5

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this                     30th            day of
November, 2001                          , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
THE COLUMBIA BANK

                                                                                (the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

7000 MEANDERING STREAM WAY,FULTON,MD 20759
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
PINDELL WOODS

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

HOWES J010842                         010842                                              0
MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
                                        Page 1 of 3                                Initials: 

-7R (0008)        MW 08/00        VMP MORTGAGE FORMS - (800)521-7291

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MOR 5939, p. 0625. Printed 10/12/2013. Online 05/10/2004.

Apx. 123

LIBER 5939 FOLIO 0626

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

HOWES J010842                     010842                                        0

Initials: *[signature]*

®-7R (0008)                      Page 2 of 3                            Form 3150 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0626. Printed 10/12/2013. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 2 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
JEFFREY V HOWES              -Borrower      TONYA A HOWES              -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                 -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                 -Borrower


HOWES J010842                    010842                              0

-7R (0008)                    Page 3 of 3                     Form 3150 1/01

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0627. Printed 10/12/2013. Online 05/10/2004.

Apx. 125

LIBER 5 9 3 9 FOLIO 0 6 2 8

## TRANSFER AND RECORDATION TAX CALCULATION
## DEED OF TRUST FROM JEFFREY V. HOWES AND TONYA H. HOWES
## TO MICHAEL T. GALEONE AND MATTHEW T. BECKER
## TRUSTEES FOR THE COLUMBIA BANK

Full loan amount: $696,130.00

Purchase money: $215,000.00  (Deed recorded in Howard County)

Amount secured by Howard County property: $696,130.00

Amount secured by Prince George's County property: $335,000.00

Non-purchase money secured in Howard County only: $361,130.00

Non-purchase money secured in both counties: $120,000.00.

Total Value of both properties: $665,550.00

Value of Howard County property: $215,000.00 (32.5%)

Value of Prince George's county property: $450,550.00 (67.5%)

Additional Transfer tax due to Howard County: 0.00

Additional Transfer tax due to Prince George's County: $1,134.00 (67.5% of 120,000.00 = 81,000 x 1.4% = $1,134.00)

Additional Recordation tax due to Howard County: $2,002.50  (361.5 x 5.00 = 1,807.50; 32.5% of 120,000.00 = 39,000.00; 39 x 5 = 195.00).

Additional Recordation tax due to Prince George's County: $356.40 (67.5% of 120,000.00 = 81,000.00; 81 x 4.4 = 356.40).

```
IMP FD SURE $        5.00
RECORDING FEE       75.00
RECORDATION T    2,082.50
TOTAL            2,082.50
Reg# H082   Rcp# $ 72190
MDR   MDG   Blk $ 3227
Jan 22, 2002     02:41 PM
```

HO CIRCUIT COURT (Land Records) [MSA CE 53-5923] MDR 5939, p. 0628. Printed 10/12/2013. Online 05/10/2004.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

|  |  |  |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |

_____

|  |  |  |
|---|---|---|
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |

_____

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FILED BY**
**WELLS FARGO BANK, N.A. AND U.S. BANK, N.A.**

Plaintiffs Jeffrey V. Howes and Tonya H. Howes, by undersigned counsel, hereby provide

their Memorandum in Support of Plaintiffs' Response to Motion to Dismiss Filed By Wells Fargo

Bank, N.A. ("Wels Fargo") and U.S. Bank, National Association ("US Bank").

**I.      Introduction**

Plaintiffs filed a nine count complaint against Movants Wells Fargo and US Bank, and

Carrington Mortgage Services, LLC ("Carrington") and Christiana Trust ("WSFS Bank"), a Division

of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series

2013-2, alleging fraud on the court (Count I) for trying to collect foreclosure fees from Plaintiffs

by hiding the fact that a foreclosure case was prosecuted by US Bank as trustee for a trust that

ceased to exist before the foreclosure case was filed. Plaintiffs also seek a determination of

Defendants' rights in the mortgage on their home (Count II), sanctions for Rule 3001 violations (Count III), damages for unlawful inspection fees (Count IV), failure to provide Truth in Lending Act transfer notices (Count V), violations of the Fair Debt Collection Practices Act (Count VI), violations of the Maryland Consumer Debt Collection Act (Count VII), violations of the Maryland Consumer Protection Act (Count VIII), and an objection to related mortgage Claim No. 4.

Wells Fargo and US Bank have moved to dismiss the Complaint pursuant to Bankruptcy Rules 7012(b)(6), Bankruptcy Rule 7009, and Federal Rules of Civil Procedure 12(b)(6) and 9(b), for failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and some Counts are time barred.

The Motion should be denied. Plaintiffs' Complaint paints an all too familiar picture of the rampant mortgage servicing abuses that have bedeviled consumers for years, including false foreclosure affidavits, a foreclosure case prosecuted without standing, proofs of claim filed without standing or adequate supporting documentation and claiming bogus foreclosure and inspection fees.

## II.     Facts

Plaintiffs rely on the facts as fully alleged in their Complaint. However, an abbreviated version of those facts follows.

1.       Plaintiffs executed a Construction Note ("Note") in 2001 payable to the order of The Columbia Bank and secured by a deed of trust ("Mortgage") on their residence. Compl. ¶¶ 15-16.

2.       Plaintiffs suffered a decline in their income in 2008 as a result of the Great

Recession and defaulted on the Note on April 2, 2009.

Loan Modification Efforts

3.      In July, 2009, Debtor contacted Wells Fargo in its role as the alleged servicer of the Note, to determine mortgage modification eligibility, and Wells Fargo told Debtor that Plaintiffs were eligible for a mortgage modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP"). Accordingly, the Howes completed a HAMP application dated August 18, 2009, and submitted it to Wells Fargo. Compl. ¶ 18.

4.      Debtor spent over nineteen hundred hours of lost time from work through July 19, 2010, preparing and submitting to Wells Fargo at least five full HAMP applications, and engaging in over 100 communications with Wells Fargo involving information request responses, redocumentation and re-submission responses, all as required by Wells Fargo to process the Howes' HAMP application. Compl. ¶ 19.

5.      On July 19, 2010, Wells Fargo's employee Susan Gordon informed Debtor by email that the Howes were not eligible for a HAMP loan modification. Compl. ¶ 20. On October 15, 2010, Jason Mullen, Executive Mortgage Specialist, Office of the President of WFHM (hereinafter the "Mullen Denial"), advised the Howes that "our MBS loans are currently not participating in the Making Home Affordable Program. Therefore, we are unable to allow your loan to be considered for the Home Affordable Modification Program (HAMP)." Compl. ¶ 21.

6.      In October 2010, Plaintiffs offered to cure their Mortgage default in exchange for a new fixed rate mortgage at the then current market average rate ("Howes First Offer"), but Wells Fargo rejected this offer. Compl ¶ 23. In June 2012, Plaintiffs submitted another loss mitigation offer to Wells Fargo to pay down the Note a maximum of $175,000 if it would result

3

in an equitable, long term modification of the resulting balance ("Howes Second Offer"), but Wells Fargo rejected this offer as well. Compl. ¶ 28.

7.      Wells Fargo denied the Plaintiffs' 2012 HAMP Application as a result of its Net Present Value evaluation, and used a property value of $795,000. Compl. ¶ 30. Plaintiffs timely disputed the valuation used as overstated by more than $150,000 ("NPV Dispute Fax"). Compl. ¶ 32. Although Wells Fargo has a duty to respond to the NPV Dispute Fax, it has not done so.

The Foreclosure Cases

8.      Defendants US Bank as principal, and Wells Fargo acting as its agent and within the scope of that agency, caused two foreclosure cases to be filed against the Howes regarding the Mortgage in the Circuit Court for Howard County: Case Number 13C10080927, *Dore, et al. vs. Howes, et al.*, filed January 20, 2010, voluntarily dismissed by plaintiffs on January 3, 2011 (hereinafter "First Foreclosure Case"), and Case Number 13C12089855, *Dore, et al. vs. Howes, et al.*, filed February 21, 2012 and still pending (hereinafter "Second Foreclosure Case"). Compl. ¶ 36.

9.      The First Foreclosure Case includes numerous affidavits dated January 19, 2010 and allegedly signed by lead plaintiff Thomas P. Dore, Esquire (the "Dore Affidavits"). Upon information and belief, Mr. Dore did not sign the Dore Affidavits, nor was the Statement of Debt signed by him in the presence of Alysha Currie. Compl. ¶ 39.

10.     The First Foreclosure Case includes numerous affidavits dated December 31, 2009 allegedly signed by notorious robo signer Herman John Kennerty. Mr Kennerty testified under oath on May 20, 2010 that he signs "50 to 150 documents per day" and that he is "simply signing the document that's presented"  and "just making sure that the date is correct." None of

4

the Kennerty Affidavits are based on any investigation by Mr. Kennerty, other than to ensure they were properly dated, and they are therefore devoid of his personal knowledge of the other facts stated therein. Compl. ¶ 39.

11.    Upon information and belief, the First Foreclosure Case was dismissed by the foreclosure plaintiffs due to the defective Dore and Kennerty Affidavits.

<u>Second Foreclosure Case</u>

12.    The foreclosing plaintiffs lacked standing to file the Second Foreclosure Case since the alleged owner of the Note ceased to exist by February 21, 2012, the date the case was filed.

13.    Filed in the Second Foreclosure Case on February 21, 2012, at Doc No. 5, is an Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith (hereinafter "Ownership Affidavit"), dated January 18, 2012, allegedly signed by Alisha M. Allen, Vice President of Loan Documentation for WFHM, as servicing agent, which identifies "US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" (hereinafter the "Trust"), as the "owner and holder of the loan evidenced by the Note." A true and correct copy of the Ownership Affidavit is attached to the Complaint as EXHIBIT 1. Compl. ¶ 42.

14.    The Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012, before the Second Foreclosure Case was filed, as evidenced by the following exhibts attached to the Complaint: Certificateholder Distribution Summary for the Trust showing an ending certificate balance total for all Trust

5

certificates of zero, attached as EXHIBIT 2A, the Collateral Statement showing all loans in the

Trust as Paid in Full, attached as EXHIBIT 2B, and the Loan Level Data for the Mortgage

reported by US Bank showing the Mortgage was paid off on January 1, 2012, attached as

EXHIBIT 2C. Compl. ¶ 43.

   15.  Attached to the Ownership Affidavit is an alleged copy of the Note with the

following endorsements: (A) Pay to the order of Wells Fargo Home Mortgage, Inc., by Michael

Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of Wachovia Bank,

National Association, as Trustee under the pooling and servicing agreement dated as of May 29,

2003, by Beverly Cro[ckett], Assistant Secretary, Wells Fargo Home Mortgage, Inc. Compl. ¶ 44.

   16.  Attached to the Ownership Affidavit is what purports to be an Allonge dated

November 21, 2009 (hereinafter the "Allonge"), identifying "Wachovia Bank, National

Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003[,]"

(hereinafter "Wachovia") as the present holder, further stating it "hereby assigns all of its rights,

title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-

4[,]" and then states "Pay to the Order of US Bank National Association, as Trustee for WFASC

2003-4 (Without recourse, representation, or warranty express or implied)" and is allegedly

signed by Karan Abernethy as Vice President of Wachovia. Compl. ¶ 45.

   17.  Filed in the Second Foreclosure Case on February 21, 2012 at Doc No. 7 is an

*Affidavit Pursuant to 14-207(b)(4)* (hereinafter "Declaration Affidavit") allegedly signed by

Shannon Mennapace as one of the Substituted Trustees in the action, stating that a true and

correct copy is attached thereto of the *Declaration of Substitution of Trustees*, dated October 28,

2011 (hereinafter "Declaration"), allegedly executed by Defendant Wells Fargo as attorney-in-

6

fact for the Trust, attached as EXHIBIT 3, and purports to appoint the Second Foreclosure Case

plaintiffs as trustees for the Trust under the Deed of Trust. Compl. ¶ 46.

<u>The Debtor's Bankruptcy</u>

18.     On January 9, 2013, Defendant Wells Fargo filed at Docket No. 25 in the

Bankruptcy Case an *Objection to Confirmation of Plan* (hereinafter "Plan Objection"), and

identified itself as "Servicer for US Bank National Association, as Trustee, successor in interest

to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities

Corporation, Mortgage Pass-Through Certificates, Series 2003-4." Compl. ¶ 52.

19.     On March 8, 2013, Defendant US Bank caused to be filed in the Bankruptcy Case

as Claim No. 4 (hereinafter the "Claim") (a sworn proof of claim in the amount of $740,334.24,

of which $200,196.79  was claimed as pre-petition arrears. US Bank was identified in the claim

as creditor with all notices to be sent to WELLS FARGO HOME MORTGAGE, ATTENTION

Bankruptcy Department MAC #D3347-014, 3476 STATEVIEW BLVD, FORT MILL, SC

29715.The claim was signed on January 2, 2013 by Brian McNair who identified himself as an

attorney with the law firm of CBD&D. No documents were attached to the claim, thus no

evidence of perfection was provided nor was any breakdown of the claimed arrearage. Compl. ¶

53.

20.     On March 15, 2013, Defendant Wells Fargo caused to be filed Amended Claim 4

(hereinafter the "Amended Claim"), which identifies Wells Fargo as creditor, is dated March 15,

2013, and attached thereto is a Mortgage Proof of Claim Attachment pursuant to Rule

3001(c)(2), an Escrow and Account Disclosure Statement dated November 21, 2012, the Deed of

Trust, and what it claims to be the endorsed Note and Allonge. No evidence of Wells Fargo's

7

standing to file the Amended Claim was attached. Compl. ¶ 54.

21.     On April 2, 2013, Debtor filed in the Bankruptcy Case an objection to the Amended Claim (hereinafter "Claim Objection"), alleging Wells Fargo lacked standing to file the Amended Claim, and that the amount claimed is excessive due to not all payments being credited, foreclosure fees and costs are sought although incurred without the requisite standing to file the foreclosure action, and unlawful inspection fees disguised as broker's price opinion fees are claimed. The Claim Objection was properly served on Wells Fargo on April 2, 2013, and it provided notice to Wells Fargo it had 30 days to respond unless it wished to rely solely on the Amended Claim. Wells Fargo filed no response. On May 10, 2013, the Court scheduled a hearing on the objection for June 17, 2013. Compl. ¶ 55.

22.     On May 29, 2013, Michael T. Cantrell filed in the Bankruptcy Case as agent for Defendant CMS a notice of *Transfer of Claim Other Than for Security* of the Amended Claim, listing CMS as transferee and Wells Fargo as transferor (hereinafter the "Transfer Notice"). CMS failed to attach the required proof of transfer. On May 31, 2013, the Clerk caused mailed notice of the transfer to be sent to Wells Fargo Home Mortgage, MAC #D3347-014, ATTENTION Bankruptcy Department, 3476 Stateview Blvd, Fort Mill, SC 29715-7203. Compl. ¶ 56.

23.     On June 11, 2013, Michael T. Cantrell filed in the Bankruptcy Case as agent for Defendant WSFS Bank an *Amended Transfer of Claim Other Than for Security* of the Amended Claim, listing WSFS Bank as transferee and Wells Fargo as transferor, with notices to WSFS Bank and transferee payments to be sent to CMS (hereinafter the "Amended Transfer Notice"). WSFS Bank failed to attach the required proof of transfer. On June 14, 2013, the Clerk caused mailed notice of the transfer to be sent to Carrington Mortgage Services, LLC, 1610 E. Saint

8

Andrew Place, Suite B150, Santa Ana, California 92705-4931, the transferee's agent, rather than to Wells Fargo, the transferor. Notice of this transfer was not mailed to the transferor by the clerk as required by Bankruptcy Rule 3001(e). Compl. ¶ 57.

24.     Debtor appeared at the June 17, 2013 hearing on his objection to the Amended Claim. None of the Defendants appeared. The Court denied the relief Debtor requested without prejudice due to the alleged claim transferees not having been served with Claim Objection, and instructed Debtor to serve the Amended Claim transferees either by supplemental service, amended objection, or, in view of all the transfers, by initiating an adversary proceeding incorporating the claim objection to determine the party entitled to enforce the Note. Compl. ¶ 58.

25.     The Howes have received no notice of transfer of their Note or of the right to service their Mortgage from Wells Fargo. Compl. ¶ 60.

26.     The Howes have received no communication from Defendants CMS or WSFS Bank regarding their interest in the Howes' Mortgage other than the notices filed in the Bankruptcy Case. Compl. ¶ 61.

27.     The Howes do not know the identity of the rightful owner of the Note. Compl. ¶ 62.

28.     Upon information and belief, none of the Defendants are in possession of the Note. Compl. ¶ 63.

Count I

29.     Wells Fargo and US Bank filed the Claim on behalf of the Trust with the intent to defraud this Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact

9

that the Trust terminated back in January 2012. Compl. ¶ 65.

30.     The Claim included a false arrearage claim for $200,196.79, not itemized, but the same arrearage amount as stated in the Amended Claim.  The $200,196.79 arrearage is itemized in the Amended Claim and includes $2,924.50 in fees and costs allegedly incurred from May 27, 2011 through October 26, 2012 ("Second Foreclosure Fees"). Upon information and belief, the Second Foreclosure Fees all relate to the Second Foreclosure Case. Compl. ¶ 66

31.     Wells Fargo filed its Amended Claim as creditor with the intent to defraud this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees. Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, although required to do so by Bankruptcy Rule 3001 and the settlement it reached with the 49 State Attorneys' General effective April 5, 2012 (hereinafter "AG Settlement"). Wells Fargo failed to disclose Trust termination in the Amended Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed, contained numerous false and fraudulent affidavits regarding standing to foreclose, including the Ownership Affidavit, Declaration Affidavit, and NIF Affidavit, and the fact that the Trust lacked standing to file the Claim. Compl. ¶ 67.

32.     In furtherance of its scheme to defraud and hide the fact of Trust termination, Wells Fargo and US Bank filed the Plan Objection in which they maintained the continued existence of the Trust and its ownership of the Note over one year after the Note was removed from the Trust and nearly 12 months after the Trust terminated and ceased to exist. Compl. ¶ 68.

33.     Wells Fargo and US Bank have engaged in a pattern or practice of filing so many

false proofs of claim in the United States Bankruptcy Courts that the sheer numbers involved indicate the fraud is being perpetrated on an institutional basis. Compl. ¶ 69.

Count II

34.     The Note is "order paper" under section 3-201(b) of the Commercial Law Article, Annotated Code of Maryland; therefore, negotiation requires transfer of possession of the instrument and its indorsement by the holder. Compl. ¶ 77.

35.     US Bank did not endorse the Note and make it payable to the order of Wells Fargo. Compl. ¶ 78.

36.     Wells Fargo is not a holder of the Note. Compl. ¶ 79.

Count III

37.     US Bank failed to attach to the Claim a copy of the writing upon which it was based such as the Note and Deed of Trust, or evidence that the security interest claimed has been perfected. Compl. ¶ 88.

38.     US Bank also failed to attached to the Claim (a) an itemized statement of the interest, fees, and expenses incurred before the Bankruptcy Case was filed, (b) the attachment prescribed by the proof of claim Official Form, and (c) an escrow account statement prepared as of the date the Bankruptcy Case was filed in a form consistent with applicable non-bankruptcy law. Compl. ¶ 89.

39.     The Amended Claim filed by Wells Fargo claimed a security interest in property that is Debtor's principal residence, and it claimed interest, fees, and expenses incurred before the Bankruptcy Case was filed. Compl. ¶ 90.

40.     Wells Fargo failed to attach to the Amended Claim a copy of the writing upon

11

which it was based since the Note it attached is made payable to the order of the Trust, and the

Trust terminated and ceased to exist in January 2012. Compl. ¶ 91.

41.     In Debtor's Claim Objection filed April 2, 2013, Debtor notified Wells Fargo that

the Amended Claim is defective since it included no evidence of Wells Fargo's standing to file it.

Compl. ¶ 92.

42.     Debtor's Claim Objection also notified Wells Fargo: "Since the underlying

foreclosure cases were filed by entities that lacked standing, and inspection fees are prohibited by

Section 12-121 of the Commercial Law Article, Annotated Code of Maryland, the foreclosure

fees and costs, and the inspection fees, are not authorized by the Note or Deed of Trust and must

be disallowed." Compl. ¶ 93.

43.     Wells Fargo entered into a Consent Order in connection with the AG Settlement

(hereinafter the "Wells Fargo AG Consent Order") which provides in relevant part, at Exhibit A,

I.D.1: [Wells Fargo] shall ensure that each POC is documented by attaching: a. The original or a

duplicate of the note, including all indorsements." Compl. ¶ 94.

44.     The Wells Fargo AG Consent Order also provides, at Exhibit A, I.A.15:

> Servicer shall not file a POC in a bankruptcy proceeding which,
> when filed, contained **materially inaccurate information**. In cases
> in which such a POC may have been filed, **Servicer shall not rely
> on such POC and shall** (a) in active cases, at Servicer's expense,
> take appropriate action, consistent with state and federal law and
> court procedure, to **substitute such POC with an amended POC as
> promptly as reasonably practicable (and, in any event, not more
> than 30 days) after acquiring actual knowledge of such material
> inaccuracy** and provide appropriate written notice to the borrower
> or borrower's counsel; and (b) in other cases, at Servicer's
> expense, take appropriate action after acquiring actual knowledge
> of such material inaccuracy.

Compl. ¶ 95.

45.     Wells Fargo did not respond to the Claim Objection. Although more than four
months have passed since Wells Fargo was put on notice of the absence of evidence of its
standing to file the Amended Claim and of the errors in the amount claimed, it still has not filed a
second amended claim with the missing evidence of its standing, nor has it amended the amount
claimed in the Amended Claim by removing the bogus foreclosure fees and costs and the
inspection fees and crediting all of Debtor's payments. Compl. ¶ 96.

46.     Defendants' failure to comply with Rule 3001 has harmed Debtor and caused him
to incur substantial attorney's fees in preparing and prosecuting his Claim Objection and this
adversary proceeding, in addition to the mental anguish he has suffered due to the resulting delay
in resolving this Bankruptcy Case through confirmation of his Plan. Compl. ¶ 97.

<u>Count IV</u>

47.     Each Plaintiff is a "consumer borrower"  as that term is defined in § 12-1001(f) of
the Commercial Law Article, Annotated Code of Maryland (hereinafter, "CL"). Compl. ¶ 99.

48.     By filing the Amended Claim, Wells Fargo asserted it is a "credit grantor" as that
term is defined in CL § 12-1001(g). Compl. ¶ 100.

49.     By filing the Claim, US Bank asserted it is a "credit grantor" as that term is
defined in CL § 12-1001(g). Compl. ¶ 101.

50.     By filing the Amended Transfer Notice, WSFS Bank asserted it is a "credit
grantor" as that term is defined in CL § 12-1001(g). Compl. ¶ 102.

51.     The Claim and Amended Claim include the following charges:
"Appraisal/broker's price opinion fees 9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00,

13

6/13/12: $90.00 (collectively, "Inspection Fees"). Compl. ¶ 103.

52.     The Inspection Fees were for visual inspections of the Property, were not bona

fide appraisals of the value of the Property, and were not needed to ascertain completion of

construction of a new home or repairs, alterations, or other work required by Defendants. Compl.

¶ 104.

53.     The Inspection Fees are violations of CL § 12-1027 and may not be imposed. Any

credit grantor who violates § 12-1027 may collect only the principal amount of the Note and may

not collect any interest, costs, fees, or other charges with respect to the Note. In addition, a credit

grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of

interest, fees, and charges collected in excess of that authorized by this subtitle. Compl. ¶ 105.

54.     Plaintiffs have been damaged by the imposition of the Inspection Fees, including

incurring attorney's fees and costs to vindicate their rights. Compl. ¶ 106.

Count V

55.     The Note and Mortgage is a consumer credit transaction secured by the Plaintiffs'

principal dwelling within the meaning of TILA. Compl. ¶ 108.

56.     US Bank asserts by the Ownership Affidavit and Allonge it filed in the Second

Foreclosure Case (EXHIBIT 1) that the Note was transferred to it on November 21, 2009, as

Trustee of the Trust. Compl. ¶ 109.

57.     US Bank did not provide Plaintiffs, or either one of them, with the new creditor

notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner

of the Note on November 21, 2009. Compl. ¶ 110.

58.     US Bank did not provide Plaintiffs, or either one of them, with the partial payment

14

policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note on November 21, 2009. Compl. ¶ 111.

59.      Upon information and belief, the Note was paid off on January 1, 2012, as stated in Loan Level Data report attached as EXHIBIT 2C, and the new owner, identified herein as Unknown Defendant, failed to provide Plaintiffs, or either one of them, with the notice of new creditor required by 11 U.S.C. § 1641(g). Compl. ¶ 112.

60.      Unknown Defendant did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note on or after January 1, 2012. Compl. ¶ 113.

61.      Wells Fargo asserts in the Amended Claim that it became Debtor's creditor and the new owner of the Note. Compl. ¶ 114.

62.      Wells Fargo did not provide Plaintiffs, or either one of them, with the new creditor notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner of the Note. Compl. ¶ 115.

63.      Wells Fargo did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note. Compl. ¶ 116.

64.      WSFS Bank filed the Amended Transfer Notice alleging it became the new owner of the Amended Claim and related Note. Compl. ¶ 117.

65.      WSFS Bank did not provide Plaintiffs, or either one of them, with the new creditor notice required by 11 U.S.C. § 1641(g) within 30 days after allegedly becoming the new owner of the Note. Compl. ¶ 118.

15

66.     WSFS Bank did not provide Plaintiffs, or either one of them, with the partial payment policy disclosure required by 11 U.S.C. § 1639c(h) at the time it allegedly became the new owner of the Note. Compl. ¶ 119.

67.     Plaintiffs have suffered actual damages as a result of not receiving these notices by not knowing the true owner of their Note and the corresponding loss mitigation rights such ownership entailed, as well as not promptly learning that the Second Foreclosure Case plaintiffs lacked standing to file that case. Compl. ¶ 120.

Count VI

68.     Each plaintiff is a "consumer" as defined by FDCPA, 15 U.S.C. § 1692a(3). The Note is a "debt" as defined by FDCPA, 15 U.S.C. § 1692a(5). Compl. ¶ 123.

69.     At all times relevant hereto, US Bank was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. US Bank is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). US Bank claims it acquired ownership of the Note and Mortgage by the Allonge dated November 21, 2009, after the April 2, 2009 date the Note went into default. Compl. ¶ 124.

70.     At all times relevant hereto, Wells Fargo was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. Wells Fargo is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). Wells Fargo claims in its Amended Claim to have acquired ownership of the Note and Mortgage, which must have occurred after US Bank sold the Note on January 1, 2012 (EXHIBIT 2C), after the April 2,

16

2009 date the Note went into default. Compl. ¶ 125.

71.     At all times relevant hereto, WSFS Bank was engaged in the business of collecting debts in the state of Maryland and made use of the United States mail in regularly collecting or attempting to collect debts owed or due or asserted to be owed or due another. WSFS Bank is a "debt collector" as defined by FDCPA, 15 U.S.C. § 1692a(6). WSFS Bank claims in its Amended Transfer Notice to have acquired ownership of the Note and Mortgage on or about June 11, 2013, the date it filed the Amended Transfer Notice, after the April 2, 2009 date the Note went into default. Compl. ¶ 126.

72.     On January 9, 2013, Wells Fargo, through counsel, filed its Plan Objection on behalf of US Bank as trustee for the Trust (Compl. ¶ 52), and falsely claimed that US Bank is the holder of the Note secured by the Mortgage. Compl. ¶ 127.

73.     US Bank filed the Claim on March 8, 2013, through its attorneys, and falsely stated that Debtor was liable to it for $740,334.24. Compl. ¶ 128.

74.     Wells Fargo filed the Amended Claim on March 15, 2013, through its attorneys, and falsely stated that Debtor was liable to it for $740,334.24. Compl. ¶ 129.

75.     US Bank caused at least three false affidavits to be filed in the First Foreclosure Case, including the Kennerty Affidavits (Compl. ¶ 39). Compl. ¶ 130.

76.     US Bank caused the Second Foreclosure Case to be filed against Plaintiffs on February 21, 2012, falsely claiming to be the owner of the Note. Wells Fargo sought to hide Trust termination from the Howes by lying about their HAMP eligibility in the June 15 Explanation (Compl. ¶ 25). Compl. ¶ 131.

77.     US Bank caused at least four false affidavits to be filed in the Second Foreclosure

17

Case, including the Ownership Affidavit (Compl. ¶ 42), the Declaration Affidavit (Compl. ¶ 46),

the NIF Affidavit (Compl. ¶ 47), and the Final Loss Mitigation Affidavit (Compl. ¶ 48). Compl.

¶ 132.

78.    The Second Foreclosure Case is still pending. Compl. ¶ 133.

79.    The Second Foreclosure Case has been reported numerous times within the past

year to the credit reporting agencies, negatively impacting Plaintiffs' credit rating. Compl. ¶ 134.

80.    Defendants violated the FDCPA by using false, deceptive, or misleading

representations or means in connection with the collection of a debt, as prohibited by 15 U.S.C. §

1692e, including but not limited to falsely representing the character, amount, or legal status of a

debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and used false representation or deceptive means

to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10).

Compl. ¶ 135.

81.    As a result of the acts alleged above, Plaintiffs have lost wages, lost time from

other activities, been afraid they would lose the Property to foreclosure, lost hope the

government's various foreclosure prevention programs were honest attempts to help them,

worried that bankruptcy did not protect them from bogus claims, suffered mental anguish and

emotional distress, and incurred attorney's fees. Compl. ¶ 136.

Count VII

82.    The Defendants Wells Fargo, US Bank, and WSFS Bank are "collectors" as

defined by the Maryland Consumer Debt Collection Act ("MCDCA"), § 14-201(b) of the

Commercial Law Article, Annotated Code of Maryland. Compl. ¶ 139.

83.     The Defendants sought to collect from Plaintiffs amounts that they knew they are not lawfully entitled to collect. This conduct violated the MCDCA. Compl. ¶ 140.

84.     As a proximate result of the Defendants' violations of the MCDCA, Plaintiffs have suffered damages, including emotional distress and mental anguish. Compl. ¶ 141.

Count VIII

85.     Defendants' conduct was unfair and deceptive and violated the MCPA, which prohibits violations of the MCDCA, and:

> (1) False, falsely disparaging, or misleading oral or written statement, ... which has the capacity, tendency, or effect of deceiving or misleading consumers ...,

by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case, Claim, and Amended Claim, by falsely telling the Debtor that the Howes were eligible for a HAMP modification (Compl. ¶¶ 18, 20-21), by concealing Trust termination, by failing to inform the beneficial owner of the Note about the Howes First and Second Offers (Compl. ¶¶ 23, 28-29), and by failing to run the NPV test in accordance with HAMP requirements (Compl. ¶¶ 30-34).  As a proximate result of the Defendants' violations of the MCPA, Plaintiffs have suffered damages, including emotional distress and mental anguish, lost wages (Compl. ¶ 19 ), and incurred legal fees. Compl. ¶ 143.

Count IV

86.     Debtor previously filed the Claim Objection, Wells Fargo filed no response, the Court scheduled the matter for hearing, then notices of claim transfer were filed by CMS and WSFS Bank (Compl. ¶¶ 55-58). The Court denied the objection without prejudice due to notice of the Claim Objection not having been provided to CMS and WSFS Bank. Cause exists

19

pursuant to 11 U.S.C. § 502(j) to reconsider the Amended Claim, since the Claim Objection was denied without prejudice to Debtor bringing this adversary proceeding and providing notice of its objection to CMS and WSFS Bank. Compl. ¶ 145.

87.     The Claim and Amended Claim must be disallowed for the following reasons:

a.     Defendants US Bank and Wells Fargo lacked standing to file the Claim or Amended Claim;

b.     Alternatively, the claim must be reduced by the damages awarded Plaintiffs pursuant to this Complaint, and by their recoupment rights for those claims otherwise barred by a statute of limitations;

c.     The Claim and Amended Claim fail to credit Plaintiffs with all payments made (Compl. ¶¶ 17, 22);

d.     The Claim and Amended Claim seek (i) foreclosure fees and costs that were unreasonably incurred in the First Foreclosure Case, which was dismissed due to numerous and fatal robo signing defects (Compl. ¶¶ 36-40), (ii) foreclosure fees and costs for the Second Foreclosure Case filed without standing on behalf of the Trust after it ceased to exists (Compl. ¶¶ 41-49), and (iii) unlawful inspection fees disguised as broker's price opinion fees (Count IV). Compl. ¶ 146.

## III.     Standard of Review

The standard of review for motions to dismiss pursuant to Rule 12(b)(6) was succinctly stated by Judge Catliota in *McGinley v. Cent. Mortg. Co. (In re McGinley)*, Adv. Proc. No. 12-745-TJC (Bankr. Md., 2013).

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id*. (internal quotation and alterations omitted); see also *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id*. at 677 (quoting *Twombly*) (internal citations and brackets omitted). As further guidance, the Supreme Court noted that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

*McGinley v. Cent. Mortg. Co. (In re McGinley)*, Adv. Proc. No. 12-745-TJC, 2-4 (Bankr. Md., 2013).

## IV.     Argument

### A.        Counts I, II, III, VI, VII, VIII and IX

Movants argue that Counts I, II, III, VI, VII, VIII, and IX should be dismissed because Wells Fargo became owner of the Mortgage when the Trust terminated on January 25, 2012, by equitable reversion due to its status as grantor when the Mortgage was initially assigned to the Trust, citing *Evans v. Safe Deposit & Trust Co. Of Baltimore*, 58 A.2d 649, 190 Md. 332 (1948). Memo. 11. There are at least two problems with this argument: it is based on the faulty premise of equitable reversion, and it ignores the fact that US Bank lacked standing to file the Second Foreclosure Case regardless of who became the owner of the Mortgage in January 2012.

Movant mistakenly assumes that the Mortgage was not administered at the time of Trust termination. Memo. 12. However, the Mortgage was paid off and removed from the Trust on January 1, 2012, prior to Trust termination on January 25, 2012. Compl. ¶ 43. Therefore, the Mortgage was not property of the Trust when it terminated, leaving no Mortgage to revert. Accordingly, the *Evans* case is not on point.

Movants also invite the Court to infer that Wells Fargo again owned the Mortgage following Trust termination. Memo. 12. However, it was Wells Fargo's burden to establish ownership of the Mortgage when it filed its Amended Claim, and it failed to do so. *See* Compl. ¶¶ 78-80. Wells Fargo again failed to provide any evidence of ownership when it chose not to respond to Debtor's Claim Objection. Compl. ¶ 55. The allegations of the Complaint make clear that the Mortgage was paid in full and removed from the Trust, but provides nothing from which to infer the identify of the subsequent owner. Indeed, that is the point of Count II, to establish the true owner of the Mortgage. The Court should not infer Wells Fargo's ownership when it could have easily provided that evidence itself if true, but chose not to in order to conceal termination

22

of the Trust. Finally, all reasonable inferences are to be made in favor of Plaintiffs in evaluating the Motion, not against them.

Movants' equitable reversion argument also ignores the fact that US Bank and Wells Fargo sought to hide the fact of Trust termination when filing the Claim and Amended Claim so foreclosure fees from the Second Foreclosure Case could be claimed. Compl. ¶¶ 66-68.

Movants also argue that Counts I (Fraud upon the Court) and II (Determination of Scope, Extent and Validity of Lien) should be dismissed because Plaintiffs have provided no evidence that Wells Fargo is not the holder of the Note. Memo. 12. However, since the Note is made payable to the order of US Bank, Wells Fargo cannot be the holder. Compl. ¶¶ 77-79.

Movants argue that Count III (Sanctions for Defective Proof of Claim) should be dismissed because Plaintiffs have provided "no factual basis whatsoever" that Wells Fargo filed a defective proof of claim. Memo. 12. This argument also is without merit as the Complaint is replete with such evidence. Wells Fargo failed to comply with Rule 3001 and the AG Consent Order when it did not attach to the Amended Claim evidence of its standing to file it. Compl. ¶ 91, 94-95. In addition, the Amended Claim contains bogus fees and fails to credit all of Debtor's payments. Compl. ¶ ¶ 36-47, 96, 99-105. By focusing only on Wells Fargo's conduct, moreover, Movants apparently concede that US Bank's Claim was defective.

Movants also argue that Count VI (Fair Debt Collection Practices Act) should be dismissed because Plaintiffs have provided no evidence that Wells Fargo falsely stated that Debtor was liable to it for $740,334.24 (as stated in ¶ 129 of the Complaint). Memo. 12. However, as stated in the preceding paragraph, there is ample evidence in the Complaint that the Amended Claim contains bogus fees and fails to credit all of Debtor's payments. Compl. ¶ ¶ 36-

47, 96, 99-105. Likewise, Movants' argument that there is no evidence to support the allegation

in Count VII (Violation of Maryland Consumer Debt Collection Act), that Wells Fargo sought to

collect amounts it knows are not lawfully due, also fails. *Id.*

      Movants attack Count VIII (Violation of Maryland Consumer Protection Act) for lack of

evidence Wells Fargo falsely or wrongly asserted ownership of the Note in the Second

Foreclosure Case, Claim, and Amended Claim. Memo. 13. This argument also fails since Wells

Fargo falsely asserted that the Trust was the owner of the Note in the Second Foreclosure Case

and Claim despite the fact that the Trust had ceased to exist. Compl ¶¶ 41-47. Movants also

ignore the other allegations of Count VIII regarding

> falsely telling the Debtor that the Howes were eligible for a HAMP modification ( ¶¶ 18,
> 20-21 *infra*), by concealing Trust termination, by failing to inform the beneficial owner of
> the Note about the Howes First and Second Offers (¶¶ 23, 28-29 *infra*), and by failing to
> run the NPV test in accordance with HAMP requirements (¶¶ 30-34 *infra.*

Compl. ¶ 143. Accordingly, Count VIII states a valid claim.

      Finally, Wells Fargo argues that its Plan Objection was harmless since it was the holder

of the claim rather than the servicer for the Trust as stated in the Objection. Memo. 13. However,

there is no evidence of Wells Fargo's holder status, Plaintiffs allege Wells Fargo is not the note

holder, Compl. ¶¶ 77-79. and Movants ignore the role the Plan Objection played in their scheme

to defraud.

> In furtherance of its scheme to defraud and hide the fact of Trust termination, Wells
> Fargo and US Bank filed the Plan Objection in which they maintained the continued
> existence of the Trust and its ownership of the Note over one year after the Note was
> removed from the Trust and nearly 12 months after the Trust terminated and ceased to
> exist.

Compl. ¶ 68.

Accordingly, Plaintiffs have stated valid claims in Counts I, II, III, VI, VII, VIII, and IX since there is no evidence of Wells Fargo's holder status and these Counts are not based solely on Wells Fargo's holder status.

**B.     Count IV - Unlawful Inspection Fees**

Plaintiffs allege that Movants have sought to collect unlawful Inspection Fees in the Claim and Amended Claim in violation of Section 12-1027 of Maryland's Commercial Law Article. Compl. ¶¶ 98-106. Movants seek dismissal of this Count IV because the fees are characterized as "Appraisal/broker's price opinion fees" in the Amended Claim, rather than inspection fees. Memo. 14. However, these four alleged valuations are claimed to have occurred over a very short period of time, from September 16, 2010 through June 13, 2012, from which a reasonable inference is that some or all of these fees are disguised inspection fees. In addition, one of the fees is for $50, while three are for $90 each, also leading to a reasonable inference that the $50 fee was not for a valuation.

Plaintiffs also believe that Movants regularly charged them for other inspection fees not disclosed in the Amended Claim and therefore ask the Court for leave to amend Court IV should the Court dismiss it.

**C.     Count V - TILA Recoupment**

In Count V, Plaintiffs seek recovery under the Truth in Lending Act for Movants' failure to provide the required statutory notices required by 15 U.S.C. §§ 1639c(h) and 1641(g) when the Mortgage was allegedly transferred. Compl. ¶¶ 107-121. Movants seek dismissal of this Count V because of the one year limitations period set forth in 15 U.S.C. § 1640(e).

Plaintiffs' damage claims in Count V are valid as recoupment or setoff claims to reduce the Note balance should the Amended Claim be allowed. Section 1640(e) provides:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e); *In re Coxson*, 43 F.3d 189 (5th Cir. 1995) (TIL claim can be raised defensively by way of adversary proceeding objecting to proof of claim in a chapter 13 case).

Here, Plaintiffs have objected to the Amended Claim in Count IX, and they requested recoupment relief in Count V:

> Reduce the Note balance by way of recoupment to the extent Plaintiffs' claims are otherwise barred by a limitations or other defense.

Compl. ¶ 121, Wherefore Clause. Accordingly, Plaintiffs stated a valid claim in Count V.

### D.    Count VI - FDCPA

Plaintiffs seek recovery against Movants in Count VI under the Fair Debt Collection Practices Act for using false, deceptive, or misleading representations or means in connection with the collection of a debt, as prohibited by 15 U.S.C. § 1692e. Compl ¶¶ 135. Movants seek dismissal on the basis the latest allegation of misconduct occurred on February 21, 2012, more than one year before the September 3, 2013 date the Complaint was filed. Memo. 17-18.

Plaintiffs state a valid claim in Count VI for at least two reasons. Plaintiffs' are entitled to recoupment against the Amended Claim, should it be allowed, since Plaintiffs' FDCPA claims arise out of the same transaction as the Amended Claim and Maryland recognizes the common law right of recoupment. *See, e.g., Pines Plaza Ltd. P'ship v. Berkley Trace, LLC,* 431 Md. 652,

675-676, 66 A.3d 720, 2013 Md. LEXIS 296 (Md. 2013) (recoupment allowed even though could not affirmatively seek to collect indemnification judgment); *Imbesi v. Carpenter Realty Corp.,* 357 Md. 375, 388-389, 744 A.2d 549, 2000 Md. LEXIS 11 (Md. 2000).

Secondly, the limitations period had not yet run on some of the misrepresentations, since Plaintiffs allege the Plan Objection, Claim, and Amended Claim all violated the FDCPA, yet those representations all occurred within one year before filing the Complaint. Compl. ¶¶ 127-129.

In addition, Maryland recognizes the discovery rule in determining when a cause of action accrues under the FDCPA. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 760 (D. Md., 2012), *aff'd* (4th Cir. June 12, 2013) (unpublished opinion). Plaintiffs request leave to amend Count VI of the Complaint to add allegations regarding when Plaintiffs discovered the alleged misrepresentations in the event the Court dismisses Count VI.

### E.      Count VIII - Maryland Consumer Protection Act

In Count VIII of the Complaint, Plaintiffs seek recovery from Movants for their violations of the Maryland Consumer Protection Act ("MCPA"), Sections 13-101 *et seq.* of Maryland's Commercial Article, which prohibits the violations of Maryland's Consumer Debt Collection Act ("MCDCA") set forth in Count VII, and any

> (1) False, falsely disparaging, or misleading oral or written statement, ... which has the capacity, tendency, or effect of deceiving or misleading consumers ...

Compl. ¶ 143. The Plaintiffs further allege that Movants violated MCPA

> by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure Case, Claim, and Amended Claim, by falsely telling the Debtor that the Howes were eligible for a HAMP modification (¶¶ 18, 20-21 *infra*), by concealing Trust termination, by failing to inform the beneficial owner of the Note about the Howes First

27

and Second Offers (¶¶ 23, 28-29 *infra*), and by failing to run the NPV test in accordance with HAMP requirements (¶¶ 30-34 *infra*).

Compl. ¶ 143.

Movants seek dismissal of Count VIII on the basis that Plaintiffs have failed to allege reliance. Memo. 19. Since a violation of the MCDCA is a violation of the MCPA, and there is no reliance requirement to finding a violation of the MCDCA, Count VIII states a valid claim to the extent Count VII states a valid claim, regardless of reliance. However, Plaintiffs did allege reliance on Movants' false statements that they were eligible for a HAMP mortgage modification.

18.    In July, 2009, Debtor contacted Wells Fargo, as the alleged servicer of the Note, to determine modification eligibility and completed a loss mitigation telephone application. Upon completion of the telephone application, Wells Fargo told Debtor that the Howes were eligible for a mortgage modification under the U.S. Treasury's Home Affordable Modification Program (hereinafter "HAMP"). Accordingly, the Howes completed a HAMP application dated August 18, 2009, and submitted it to Wells Fargo.

19.    Debtor spent over nineteen hundred hours of lost time from work through July 19, 2010, preparing and submitting to Wells Fargo at least five full HAMP applications, and engaging in over 100 communications with Wells Fargo involving information request responses, re-documentation and re-submission responses, all as required by Wells Fargo to process the Howes' HAMP application.

20.    On July 19, 2010, Wells Fargo's employee Susan Gordon informed Debtor by email that the Howes were not eligible for a HAMP loan modification.

Compl. ¶¶ 18-20. Accordingly, Plaintiffs have stated a valid claim in Count VIII.

**F.    Movants' Proposed Exhibits**

Movants attached exhibits to their Motion and ask the Court to take judicial notice of them. Memo. 11, fn. 10. However, Plaintiffs have asked the Court in Count III to sanction

28

Movants and preclude them from presenting in any form, as evidence in any contested matter or

adversary proceeding, the information omitted in Claim 4 or Amended Claim 4. Movants'

Exhibit A is a Loan Modification Agreement (Memo. fn.1), Exhibit B is a series of assignments

(Memo. fn.4), and Exhibit C is the Deed of Trust (Memo. 15). Plaintiffs have no objection to

consideration of Exhibit C since the Deed of Trust was attached to the Amended Claim and is

referred to in the Complaint. Plaintiffs object to consideration of Exhibits A and B since no

mention is made of those documents in the Complaint and consideration of them would be

inconsistent with the relief requested in Count III.

**V.     Conclusion**

For the foregoing reasons, the Court should deny Movants' Motion to Dismiss. In the

event the Court dismisses any Count of the Complant, Plaintiffs request leave to amend.

Respectfully submitted,
*/s/ Robert J. Haeger, October 31, 2013*
Robert J. Haeger, Bar No. 25434
Attorney for Debtor-Plaintiffs
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

29

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on October 31, 2013, by first class U.S. mail, postage prepaid, to the creditors and other parties in interest listed on the Court's mailing matrix, and to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorney for Carrington Mortgage Services,*
*LLC and Wilmington Savings Fund Society,*
*FSB*

*/s/ Robert J. Haeger, October 31, 2013*
Robert J. Haeger

30

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| _____ | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| _____ | | |

**ORDER DENYING MOTION TO DISMISS**

Upon consideration of the Motion to Dismiss [Doc. 8] filed by Defendants Wells Fargo Bank, N.A. and U.S. Bank, National Association, and Plaintiffs' Response thereto, good cause having been shown, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the motion be, and the same hereby is, DENIED.

**End of Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| IN RE: | * | |
| JEFFREY V. HOWES, | * | Case No.: 12-30614-RAG |
| Debtors | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JEFFREY V. HOWES, et al., | * | |
| Plaintiffs | * | Adversary Proceeding No. 13-00510 |
| v. | * | |
| WELLS FARGO BANK, N.A., et al. | * | |
| Defendants | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PARTIES' JOINT RULE 26(f) REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiffs Jeffrey V. Howes and Tonya H. Howes, and Defendants Carrington Mortgage Services, LLC ("Carrington") and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("Christiana Trust"), and Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("U.S. Bank"), by their respective undersigned attorneys, conferred on October 21, 2013  to consider the nature and basis of their claims and defenses, the possibilities of a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan.

Preliminary Motion.  On October 9, 2013, Defendants Carrington and Christiana Trust filed a Motion to Dismiss for Failure to State a Claim, and on October 17, 2013, Wells Fargo Bank and U.S. Bank filed their Motion to Dismiss Complaint to Determine Secured Status,

Sanctions, or Other Relief (jointly, "The Motions"). Plaintiffs expect to file responsive pleadings, and all parties would like the opportunity to present oral argument. The Parties have agreed that, if The Motions are denied, the discovery schedule will begin from the date of the Court's decision ["Decision Date].

Rule 26(a)(1) Disclosures. Rule 26(a)(1) disclosures (regarding the identity of witnesses, description of documents, computation of damages, and inspection of insurance agreements) will be made to one another, in writing, signed, and served, not later than fourteen (14) days after the Decision Date.

Rule 26(a)(2) Disclosures. Rule 26(a)(2) disclosures (regarding the identity and reports of expert witnesses) will be made to one another, in writing, signed, and served, not later than ninety (90) days after the Decision Date.

Rule 26(a)(3) Disclosures. Rule 26(a)(3) disclosures (regarding the designation of witnesses and exhibits) will be made to the Court and to one another, in writing, signed, and served, not later than forty-five (45) days before trial, and objections thereto, if any, will be made to the Court and to one another, in writing, signed, and served, not later than thirty (30) days before trial.

Time for Commencement and Completion of Discovery. The Parties have agreed that discovery will commence fourteen (14) days after the Decision Date and continue for a period of one hundred twenty (120) days ("Discovery Period").

Discovery Requests. The Parties have agreed that no changes should be made in the limitations on discovery imposed under the Bankruptcy Rules or this Court's local rules and no additional limitations should be imposed.

Depositions. The Parties have agreed that they may take depositions any time during the Discovery Period.

Supplementation of Discovery Responses.  The Parties have agreed to timely supplement their discovery responses in accordance with Rules 26(e)(1) and (2) of the Federal Rules of Civil Procedure.

Dispositive Motions.  The Parties have agreed that dispositive motions will be filed within six (6) weeks after the end of the Discovery Period, and that responses to dispositive motions will be filed within twenty-one (21) days after their filing.

Pretrial Order.  If this adversary proceeding cannot be resolved on dispositive motions, the Parties have agreed to file a Joint Pretrial Report within thirty (30) days of the Court's ruling on dispositive motions.

Settlement.  The Parties have agreed to discuss settlement, if not sooner, at least by the end of the Discovery Period.

Length of Trial.  The Parties estimate that the time required to try this adversary proceeding will be three (3) days.

/s/ Robert J. Haeger,
Robert J. Haeger, 25434
11403 Seneca Forest Circle
Germantown, Maryland 20876
Tel: 888-463-3520
Fax: 888-463-3520
Email:  bob@haegerlaw.com

*Attorney for Jeffrey V. Howes and Tonya H. Howes, Plaintiffs*

/s/ Douglas B. Riley
Douglas B. Riley, 01220
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21401
Tel:  (443) 901-2360
Fax:  (410) 494-1658
Email:  dbriley@tph-law.com

*Attorneys for Wells Fargo Bank, N.A.  and U.S. Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, Defendants*

[Signature continue on the next page]

3

/s/ Michael E. Cantrell
Michael T. Cantrell, 08793
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Tel: 301-490-3361
Fax:  (301) 490-1568
Email:  bankruptcymd@mwc-law.com

*Attorneys Carrington Mortgage Services,
LLC and Christiana Trust, A Division of
Wilmington Savings Fund Society, FSB, as
trustee for Stanwich Mortgage Loan Trust,
Series 2013-2, Defendants*

4

**SO ORDERED**



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at BALTIMORE

In Re:                                    *

  Jeffrey V Howes                         *   Case No.      12-30614 RAG

                      *   Chapter       13

           Debtor(s)               *

*************************************   *

Jeffrey V Howes, et al                    *

                      *

                      *

          Plaintiff(s)               *

  vs.                                     *   Adversary   No. 13-00510

                      *

Wells Fargo Bank, N.A., et al             *

                      *

         Defendant(s)               *

## SCHEDULING ORDER AND RULE 26(f) REPORT APPROVAL

For good cause appearing, IT IS ORDERED

1.     The parties' Rule 26(f) Report (the "Report") filed in this adversary proceeding is approved.

2.     The parties are required to observe all deadlines and scheduled dates set forth in the Report.

2a.    A hearing on the Motions to Dismiss will be heard on **JANUARY 6, 2014**  at  **2:00 PM.**

3.     A final Pre-Trial Conference shall be held on **N/A**, at **N/A**.

3a.  A Joint Status Report from all counsel setting forth fully the status of the case is due on **SEPTEMBER 8, 2014**.

4.  The original and two copies of the exhibit list and exhibits and list of witnesses are to be filed, as required by Local Bankruptcy Rule 7016-1(c), and copies exchanged with opposing counsel by **OCTOBER 6, 2014**.

**INSTRUCTIONS FOR EXHIBITS REQUIRED TO BE PRE-FILED.**

Each set of pre-filed Exhibits shall be bound, or in loose leaf cover, and shall begin with the exhibit list identifying each exhibit by number.  Each exhibit shall be tabbed by exhibit number.

**IF EXHIBITS ARE NOT FILED AS REQUIRED BY THIS ORDER, THEY MAY BE EXCLUDED FROM EVIDENCE**.

5.  Exhibits not objected to in writing by **OCTOBER 14, 2014** will stand as admitted into evidence.

6.  TRIAL IS SET FOR **OCTOBER  20-22, 2014**,  at **10:00 AM.**.

7.  All parties must file pre-trial statements in conformity with Local Bankruptcy Rule 7016-1(b) by **OCTOBER 14, 2014**.

8.  Copies of all pleadings are to be served on the Office of the U.S. Trustee at 101 W. Lombard St., Room 2650, Baltimore, MD 21201.

cc:  Robert Haeger, Esq.
     Douglas B. Riley, Esq.

**End of Order**

Sched-33.2 -- 7/11/11 **(slf)**

**ATTACHMENT TO THE SCHEDULING ORDER**

**INSTRUCTIONS FOR PRETRIAL MEMORANDA**

     A.  Each plaintiff shall set out a brief statement of facts to be proven in support of plaintiff's claims and a separate statement of the legal theories supporting each claim.

     B.  Each defendant shall set out a brief statement of facts to be proven as a defense to each claim and a separate statement of the legal theories in support of each affirmative defense.

The following items must be supplied by all parties:

     1.  Where applicable, similar statements shall be filed with respect to a counter-claim, cross claim or third-party claim and defense thereto.

     2.  All parties must file a statement of claims and defenses no longer prosecuted.

     3.  Stipulations of fact by the parties are encouraged to shorten trial time and to obviate the necessity of calling witnesses solely for the purposes of authentication of undisputed facts.

     4.  Damages claimed must be stated in details of the date of the pre-trial memorandum and, if applicable, a precise statement of any other relief sought.

     5.  List separately each document or other exhibit that may be offered in evidence other than those expected to be used solely for impeachment.

     6.  List the name of each witness expected to be called on the party's behalf, other than a witness who may be called solely for impeachment purposes.  Give address and telephone number of each witness listed.

     7.  List the name and area of expertise of each expert that the party proposes to call as a witness.

     8.  If any portion of a deposition will be offered by a party in its case in chief, identify the date, line numbers and pages of the deposition.  Any other party must make a counter-designation as under Rule 32(a)(4) Fed.R.Civ.P.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

In re: Jeffrey V Howes

Bankruptcy Case No. 13-30614
Adversary Case No. 13-00510
Chapter 13

**************************

Jeffrey V Howes and
Tonya H Howes
                Plaintiffs(s)

      vs.

Carrington Mortgage Services, LLC
Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for
Stanwich Mortgage Loan Trust, Series 2013-2
                Defendant(s)

## <u>AMENDED MOTION TO DISMISS COMPLAINT FOR FALURE TO STATE A CLAIM</u>

     **COMES NOW** the Defendant(s) Carrington Mortgage Services, LLC ("CMS") and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("WSFS Bank"), by and through its attorneys Michael T. Cantrell, Esq and Kyle J. Moulding, Esq., and move to dismiss the Complaint filed by plaintiffs Jeffrey V Howes and Tonya H Howes ("plaintiffs"), and respectfully represents to the Court as follows:

## I. Facts and Procedural History

     1.     On November 30, 2001 the plaintiffs executed a Construction Note ("Note") payable to the order of The Columbia Bank.

2.     On November 30, 2001, the plaintiffs also executed a Deed of Trust ("Deed of Trust") in favor of The Columbia Bank, in the amount of $696,130.00 thereby securing the loan against the real property known as 7000 Meandering Stream Way, Fulton, Maryland 20759 ("Property").   The Deed of Trust is recorded among the land records of Howard County, Maryland at Liber 5939 Folio 0610. Thereafter, the Deed of Trust was transferred via an assignment to Wells Fargo Home Mortgage Inc. and recorded among the land records of Howard County at Liber 07153 Folio 099. The Deed of Trust was then transferred via an assignment of Deed of Trust to First Union Nation Bank, As Trustee and recorded among the land records of Howard County at Liber 9083 Folio 417. The Deed of Trust was then assigned by Wells Fargo Bank, N.A. s/b/m Wachovia Bank, N.A., f/k/a First Untion National Bank, As Trustee over to assignee, US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 and recorded among the land records of Howard County at Liber 13351 Folio 169.

3.     On November 15, 2012, the plaintiffs filed a petition for bankruptcy under chapter 13 of the bankruptcy code.

4.     On March 8, 2013, Wells Fargo Home Mortgage, servicing for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, filed claim number 4-1 in the amount of $740,334.24 with arrears in the amount of $200,196.79.

5.     On March 15, 2013, Wells Fargo Home Mortgage amended the claim to identify Wells Fargo Bank N.A. as the entity to which the debtor owes money.

6.　　On May 29, 2013, a Transfer of Claim was filed that incorrectly identified CMS as the Transferee.

7.　　On June 11, 2013, the Transfer of Claim was corrected to indicate that the Transferee is WSFS Bank with CMS identified as the servicer of the loan.

## II.  Standard

8.　　Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure ("FRBP"), the assertions set forth in a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   If the pleader fails to do so, then a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FRBP Rule 7012.  The legal standard to be applied when evaluating a motion to dismiss is one of plausibility – "a complaint must state a claim that is plausible on its face" and incorporate "sufficient factual matter" in support of the claim.  *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1960, 550 U.S. 544 (2007).  If the pleader is unable to meet this plausibility standard, then the complaint must be dismissed.

9.　　While the Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari* , 7F.3d 726, 730 (4th Cir. 1993), the complaint must assert "factual allegations…that raise a right to relief above the speculative level." *Bell Atlantic*, at 1965.  In order to defeat a motion to dismiss, plaintiffs cannot rely upon "allegations that are merely conclusory, unwarranted deductions of fact … unreasonable references" or factual allegations completely without basis to actual events. *Veney v. Wyche* , 293 F.3d 726, 730 (4th Cir. 2002); See, *Revene v. Charles County Commissioners*, 882 F.2d 870 (4th Cir. 1989).  And, the complaint must allege facts the support each element of the claim being asserted. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761,

764-65 (4th Cir. 2003). The allegations in a complaint must give rise to entitlement to relief and while a court may be generous in its review of a complaint, such generosity does not require a court to entertain plaintiffs' belief that they can proceed to prosecute a claim when there are no facts upon which to support it. *Bender v. Suburban Hosp. Inc.* 159 F.3d 186, 191 (4th Cir. 1998).

10.     The  Court is not limited to the allegations contained in the complaint; it may also consider documents incorporated or referenced in the complaint, including matters of public record, i.e. land records.  *Secretary of State for Defens e v. Trimble Navigation, Ltd* ., 484 F.3d 700, (4th Cir. 2007); *Wyeth v. Lupin Ltd* ., 505 F.Supp.2d 303 (D.Md. 2007); *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748 (D.Md. 1997).

### III.  Arguments

**A)     Inapplicability of Cou nts One, T hree, Four, Five, Six, Seven, and Eight to CMS.**

11.     In Counts One, Three, Four, Five, Six, Seven, and Eight of the Complaint, the plaintiff does not specifically ask for relief as to CMS. Since these Counts do not specifically pray for relief, Counts One, Three, Four, Five, Six, Seven and Eight must be dismissed for failure to state a claim as to CMS.

12.     Furthermore, Counts One, Three, Four, Five, Six, Seven, and Eight of the Complaint must be dismissed as to CMS since they do not allege any facts upon which entitlement to relief may be granted as to CMS.

**B)     Inapplicability of Counts One, Three, and Eight as to WSFS Bank.**

13.     In Counts One, Three, and Eight of the Complaint, the plaintiff does not specifically ask for relief as to WSFS Bank. Since these Counts do not specifically pray for relief

or allege any facts upon which entitlement to relief may be granted, Counts One, Three, and Eight must be dismissed for failure to state a claim as to WSFS Bank.

**C)      Count Four of the Complaint should be  dismissed as to WSFS Bank because the Proof of Claim does not include any property inspection fees.**

14.      The Proof of Claim originally filed by Wells Fargo does not contain any property inspection fees. In fact, the Proof of Claim explicitly labels the fees that the plaintiffs contend are "property inspection fees" as "Appraisal/broker's price opinion fees." The plaintiffs provide no evidence at all that these fees are "property inspection fees" or anything other than "Appraisal/broker's price opinion" fees. Since plaintiffs provide no factual support for the conclusory allegation that these fees are anything other than "Appraisal/broker's price opinion fees," Count four fails to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007). Therefore, Count Four must be dismissed.

**D)      Count Six should be dismissed because  WSFS Bank is not a debt collector as defined by the Fair Debt Collection Practices Act ("FDCPA").**

15.      The Complaint alleges that WSFS Bank is a debt collector as defined by 15 U.S.C. § 1692a(6) which reads: "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." However, the statute continues to define the term debt collector by clarifying that, "The term does not include— (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id*. As such, mortgage lenders and servicers have been expressly excluded from FDCPA claims.  *See Perry v. Stewart Title Co.*, 765 F.2d 1197, 1208 (1985) ("[t]he legislative history of [FDCPA] indicates

conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."). Because WSFS Bank is exempt from FDCPA challenges in light of their position as a lender, Count Six must be dismissed for failure to state a claim upon which relief can be granted.

**E)      Count Seven should be dismissed b      ecause there are no specific factual allegations as to WSFS Bank giving rise     to a violation of the Maryland Cons   umer Debt Collection Act ("MCDCA").**

16.     The Complaint says that the Defendants attempted to "collect amounts that they knew they are not lawfully entitled to collect." The Complaint leaves WSFS Bank guessing as to why it was included in the count. There are no specific amounts, acts or any other allegations that would lead WSFS Bank to understand how it violated the MCDCA. As a result, Count Seven must be dismissed for failure to state a claim upon which relief can be granted.

# IV. CONCLUSION

The plaintiffs have failed to state claims upon which relief can be granted in in the following counts and therefore the Counts must be dismissed:

Wherefore, it is respectfully requested that the Court:

A.     Dismiss Counts One, Three, Four, Five, Six, Seven, and Eight as to CMS.

B.     Dismiss Counts One, Three, Four, Six, Seven and Eight as to WSFS Bank.

C.     Grant such other and further relief as it deems just and appropriate.

Respectfully Submitted,

/s/ Michael T. Cantrell
Michael T. Cantrell, Esq (08793)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
301-490-3361
Email: bankruptcymd@mwc-law.com

/s/ Kyle J. Moulding
Kyle J. Moulding, Esq (30148)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
301-490-3361
Email: bankruptcymd@mwc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify and affirm under the penalties of perjury that I served a copy of

the aforementioned pleading to the following by first class mail, postage prepaid, or ECF means

on this 18th day of December 2013:

Robert Haeger
Haeger Law
11403 Seneca Forest Circle
Germantown, MD 20876

Ellen W. Cosby
300 E. Joppa Road, Suite 409
Towson, MD 21286

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

/s/ Michael T. Cantrell
Michael T. Cantrell, Esq.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| ——————————————— | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| ——————————————— | | |

**PLAINTIFFS' RESPONSE TO AMENDED MOTION TO DISMISS FILED BY
CARRINGTON MORTGAGE SERVICES, LLC AND CHRISTINA TRUST**

Plaintiffs Jeffrey V. Howes and Tonya H. Howes, by undersigned counsel, hereby respond to

the Amended Motion to Dismiss Complaint for Failure to State Claim [Doc. 16] filed by Defendants

Carrington Mortgage Services, LLC ("CMS") and Christiana Trust ("WSFS Bank"), a Division of

Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series

2013-2, and object to the relief sought, and for grounds state as follows.

**I. INTRODUCTION**

1.      Plaintiffs filed a nine count complaint against Movants, Wells Fargo, and US

Bank, alleging fraud on the court (Count I) for trying to collect foreclosure fees from Plaintiffs by

hiding the fact that a foreclosure case was prosecuted by US Bank as trustee for a trust that

ceased to exist before the foreclosure case was filed. Plaintiffs also seek a determination of

Defendants' rights in the mortgage on their home (Count II), sanctions (Count III), damages for

unlawful inspection fees (Count IV), failure to provide Truth in Lending Act transfer notices

(Count V), violations of the Fair Debt Collection Practices Act (Count VI), violations of the

Maryland Consumer Debt Collection Act (Count VII), violations of the Maryland Consumer

Protection Act (Count VIII), and in which they object to related mortgage Claim No. 4.

2.      CMS seeks dismissal of Counts One, Three, Four, Five, Six, Seven, and Eight of

the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Bankruptcy Procedure, although

those counts do not apply to CMS. Mot. 4. WSFS Bank seeks dismissal of Counts One, Three,

and Eight, although those counts do not apply to WSFS Bank. Mot. 4-5. In addition, WSFS Bank

seeks dismissal of Counts Four, Six, and Seven, because those counts allegedly fail to state facts

upon which relief may be granted, Mot. 5-6. The Motion is without merit and should be denied,

or Plaintiffs should be granted leave to amend the Complaint in the event any count is dismissed.

## II. FACTS

3.      In the interest of brevity, the facts relevant to Plaintiffs' response to the pending

motion are set forth in the following analysis.

## III. STANDARD OF REVIEW

4.      The standard of review of motions to dismiss pursuant to Rule 12(b)(6) was

succinctly stated by Judge Catliota in *McGinley v. Cent. Mortg. Co. (In re McGinley)*, Adv. Proc.

No. 12-745-TJC (Bankr. Md., 2013).

> "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve
> contests surrounding the facts, the merits of a claim, or the applicability of defenses."
> *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v.
> City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and
> alterations omitted). When ruling on such a motion, the court must "accept the well-pled

allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id*. (internal quotation and alterations omitted); see also *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding).

The Supreme Court summarized the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id*. at 677 (quoting *Twombly*) (internal citations and brackets omitted). As further guidance, the Supreme Court noted that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

*McGinley v. Cent. Mortg. Co. (In re McGinley)*, Adv. Proc. No. 12-745-TJC, 2-4 (Bankr. Md., 2013).

## IV. ANALYSIS

### A.    Inapplicability of Counts One, Three, Four, Five, Six, Seven and Eight to CMS

5.    CMS seeks dismissal of Counts One, Three, Four, Five, Six, Seven and Eight of the Complaint. However, the headings for these counts all state they do not apply to CMS.

3

Therefore, there was no need for CMS to respond to these counts, and the relief requested should

be denied.

**B.      Inapplicability of Counts One, Three, and Eight to WSFS Bank**

6.      WSFS Bank seeks dismissal of Counts One, Three, and Eight of the Complaint.

However, the headings for these counts all state they do not apply to WSFS Bank. Therefore,

there was no need for WSFS Bank to respond to these counts, and the relief requested should be

denied.

**C.      Count Four, WSFS Bank (Property Inspection Fees)**

7.      WSFS Bank seeks dismissal of Count Four of the Complaint because "plaintiffs

provide no factual support for the conclusory allegation that these fees are anything other than

'Appraisal/broker's price opinion fees.'" Mot. 5. Count Four states:

> 98.      Plaintiffs repeat and re-allege each and every preceding paragraph as if
> fully set forth herein.
> 99.      Each Plaintiff is a "consumer borrower" as that term is defined in § 12-
> 1001(f) of the Commercial Law Article, Annotated Code of Maryland (hereinafter,
> "CL").
> 100.      By filing the Amended Claim, Wells Fargo asserted it is a "credit grantor"
> as that term is defined in CL § 12-1001(g).
> 101.      By filing the Claim, US Bank asserted it is a "credit grantor" as that term
> is defined in CL § 12-1001(g).
> 102.      By filing the Amended Transfer Notice, WSFS Bank asserted it is a "credit
> grantor" as that term is defined in CL § 12-1001(g).
> 103.      The Claim and Amended Claim include the following charges:
> "Appraisal/broker's price opinion fees 9/16/10: $50.00, 5/27/11: $90.00, 11/29/11:
> $90.00, 6/13/12: $90.00 (collectively, "Inspection Fees").
> 104.      The Inspection Fees were for visual inspections of the Property, were not
> bona fide appraisals of the value of the Property, and were not needed to ascertain
> completion of construction of a new home or repairs, alterations, or other work required
> by Defendants.
> 105.      The Inspection Fees are violations of CL § 12-1027 and may not be
> imposed. Any credit grantor who violates § 12-1027 may collect only the principal
> amount of the Note and may not collect any interest, costs, fees, or other charges with

4

respect to the Note. In addition, a credit grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle.

106.    Plaintiffs have been damaged by the imposition of the Inspection Fees, including incurring attorney's fees and costs to vindicate their rights.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order granting judgment for the following:

A.    A determination that the Inspection Fees are knowing violations of CL § 12-1027;

B.    A determination that neither Wells Fargo, US Bank, or WSFS Bank, nor any of their successors or assigns, may collect any interest, costs, fees, or other charges with respect to the Note.

C.    This Court award reasonable expenses including attorney's fees; and

D.    Such other relief to which the Plaintiffs and this bankruptcy estate may be entitled.

Compl. ¶¶ 98-106.

8.    The subject charges are stated in the Claim and Amended Claim as follows: "Appraisal/broker's price opinion fees 9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00, 6/13/12: $90.00." Plaintiffs allege that these charges are in fact disguised inspection fees in violation of CL § 12-1027, since these four alleged valuations are claimed to have occurred over a very short period of time, from September 16, 2010 through June 13, 2012, from which a reasonable inference is that some or all of these fees are disguised inspection fees. In addition, one of the fees is for $50, while three are for $90 each, also leading to a reasonable inference that the $50 fee was not for a valuation.

9.    Plaintiffs also reasonably believe that Movant's alleged predecessors in interest regularly charged Plaintiffs for other unlawful inspection fees not disclosed in the Amended Claim and therefore ask the Court for leave to amend Court IV to add that allegation should the Court dismiss Count IV. Plaintiffs belief is based on the fact that Defendants Wells Fargo Bank, N.A. ("Wels Fargo") and U.S. Bank, National Association ("US Bank") claimed to have performed

5

numerous inspections of Plaintiffs' residence, and the fact that they have failed to provide

Plaintiffs with a transaction history of Plaintiffs' account despite numerous requests. Plaintiffs

directed separate qualified written requests (QWR) under the Real Estate Settlement Procedures

Act (RESPA) to Wells Fargo and CMS, dated September 24, 2013, in which they requested a

copy of the life of loan transaction history for their mortgage account, and disputed their right to

enforce Plaintiffs' Note. Although both Wells Fargo and CMS have responded to these QWRs,

Plaintiffs have yet to receive the requested transaction history.[1] Therefore, Plaintiffs directed

another QWR to CMS, dated November 12, 2013, and to Wells Fargo, dated December 6, 2013,

repeating their request for the life of loan transaction history. Plaintiffs, through undersigned

counsel, also asked prior counsel, Brian S. McNair, for this information on April 2, 2013, as well

as the original note and collateral file. Mr. McNair responded on April 10, 2013, that "I have

requested the history and the original note.  When received, I will contact you to [sic] about

reviewing the original documents." Mr. McNair never did provide Plaintiffs or their counsel with

the promised information. Plaintiffs are at a loss to understand why Defendants have such

difficulty providing them with this most basic information about their account and Defendants'

claim unless they are intent on hiding something.

      10.    Accordingly, Count Four states a valid claim and WSFS Bank's motion to dismiss

it must be denied, or Plaintiffs should be granted leave to amend this count in the event it is

dismissed.

---

[1]  Plaintiffs will seek leave to amend the Complaint to add a count for these violations of RESPA.

**D.      Count Six - WSFS Bank is a debt collector under the FDCPA**

11.      WSFS Bank seeks dismissal of Count Six because it is not a "debt collector" as

defined by the Fair Debt Collection Practices Act (FDCPA), citing 15 U.S.C. § 1692a(6) and the

case of *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[t]he legislative history

of [FDCPA] indicates conclusively that a debt collector does not include the consumer's

creditors, a mortgage servicing company, or an assignee of a debt, **as long as the debt was not**

**in default at the time it was assigned**."). (Emphasis added.) Mot. 5-6. However, as the *Perry*[2]

case makes clear, mortgage servicers and assignees are liable under the FDCPA if the debt was in

default at the time it was assigned, as was the case here.

> 126.      At all times relevant hereto, WSFS Bank was engaged in the business of
> collecting debts in the state of Maryland and made use of the United States mail in
> regularly collecting or attempting to collect debts owed or due or asserted to be owed or
> due another. WSFS Bank is a "debt collector" as defined by FDCPA, 15 U.S.C. §
> 1692a(6). **WSFS Bank claims in its Amended Transfer Notice to have acquired**
> **ownership of the Note and Mortgage on or about June 11, 2013, the date it filed the**
> **Amended Transfer Notice, after the April 2, 2009 date the Note went into default.**

Compl. ¶ 126 (emphasis added). Accordingly, WSFS Bank is a debt collector as defined by the

FDCPA, and its motion to dismiss Count Six must be denied.

**E.      Count Seven - Maryland Consumer Debt Collection Act (MCDCA)**

12.      WSFS Bank seeks dismissal of Count Seven because "there are no specific

amounts, acts or any other allegations that would lead WSFS Bank to understand how it violated

the MCDCA." Mot. 6. Movant ignores paragraph 138 of the Complaint incorporating the

---

[2] *See, also, Zervos v. Ocwen Loan Servicing, L.L.C*., 2012 WL 1107689 (D. Md. Mar. 29,
2012) ("Defendant argues that Plaintiffs cannot state a claim against it under the FDCPA because
loan servicers are not considered "debt collectors" under that law. That exemption, however, does
not apply where a loan servicer acquires a loan after it has already gone into default.")

preceding paragraphs of the Complaint. Count Seven provides:

>   138.    The preceding allegations of this complaint are re-alleged and incorporated
>   herein by this reference.
>   139.    The Defendants Wells Fargo, US Bank, and WSFS Bank are "collectors"
>   as defined by the Maryland Consumer Debt Collection Act ("MCDCA"), § 14-201(b) of
>   the Commercial Law Article, Annotated Code of Maryland.
>   140.    The Defendants sought to collect from Plaintiffs amounts that they knew
>   they are not lawfully entitled to collect. This conduct violated the MCDCA.
>   141.    As a proximate result of the Defendants' violations of the MCDCA,
>   Plaintiffs have suffered damages, including emotional distress and mental anguish.

Compl. ¶¶ 138-141.

Section 14-202 of the Commercial Law Article sets forth the acts prohibited by the

MCDCA, including "(8) Claim, attempt, or threaten to enforce a right with knowledge that the

right does not exist[.]" Plaintiffs allege that WSFS Bank sought to collect from them amounts

that they knew they are not lawfully entitled to collect. Compl. ¶ 140. Plaintiffs further alleged

that the Amended Claim contains bogus foreclosure and inspection fees, and fails to credit all of

Debtor's payments. Compl. ¶¶ 17, 22, 36-47, 55, 96, 99-105. Finally, Plaintiffs provided notice

of these defects in their Claim Objection filed April 2, 2013, Compl. ¶ 55, before WSFS Bank's

agent, CMS, filed on May 29, 2013 its notice of Transfer of Claim Other Than for Security of the

Amended Claim, Compl. ¶ 56. Accordingly, WSFS Bank's motion to dismiss Count Seven must

be denied since Plaintiffs have provided it with adequate specificity of its violations of the

MCDCA and they have otherwise stated a valid claim in Count Seven.

## IV. CONCLUSION

For the reasons provided, the Court should deny the Motion. The relief requested by

CMS, for dismissal of Counts One, Three, Four, Five, Six, Seven, and Eight of the Complaint,

should be denied since those counts do not apply to CMS. The relief requested by WSFS Bank,

for dismissal of Counts One, Three, and Eight, should be denied since those counts do not apply

to WSFS Bank. Finally, WSFS Bank's request for dismissal of Counts Four, Six, and Seven,

should be denied since those counts state facts upon which relief may be granted.

      WHEREFORE, the premises considered, Plaintiffs request that the Court enter an order

denying the Amended Motion to Dismiss and granting such other relief as is just and proper.

                    Respectfully submitted,
                    */s/ Robert J. Haeger, January 2, 2014*
                    Robert J. Haeger, Bar No. 25434
                    Attorney for Debtors-Plaintiffs
                    11403 Seneca Forest Circle
                    Germantown, MD 20876
                    (888) 463-3520; www.haegerlaw.com
                    Board Certified – Consumer Bankruptcy Law
                    – American Board of Certification

## CERTIFICATE OF SERVICE

      I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on January 2, 2014, by first class U.S. mail, postage prepaid, to the creditors and other parties in interest listed on the Court's mailing matrix, and to:

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorney for Carrington Mortgage Services, LLC and Wilmington Savings Fund Society, FSB*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Defendants, Wells Fargo Bank, N.A. and U.S. Bank, National Association*

                    */s/ Robert J. Haeger, January 2, 2014*
                    Robert J. Haeger

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| _____ | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| _____ | | |

**ORDER DENYING MOTION TO DISMISS**

Upon consideration of the Amended Motion to Dismiss for Failure to State Claim [Doc. 16] filed by Defendants Carrington Mortgage Services, LLC, and Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, and Plaintiffs' Response thereto, good cause having been shown, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the motion be, and the same hereby is, DENIED.

**End of Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| IN RE: | * | |
| JEFFREY V. HOWES, | * | Case No.: 12-30614-RAG |
| Debtors | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JEFFREY V. HOWES, et al., | * | |
| Plaintiffs | * | Adversary Proceeding No. 13-00510 |
| v. | | |
| | * | |
| WELLS FARGO BANK, N.A., et al. | | |
| | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS COMPLAINT FILED BY WELLS FARGO AND U.S. BANK**

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank, National Association ("U.S. Bank"), by their undersigned attorneys, in accord with the Court's request on January 6, 2014, file this Supplemental Memorandum to address the allegations of the Complaint that, if Plaintiffs' loan was removed from the Trust[1] on January 25, 2012, the Trust thereafter had no legal right to enforce the Note or to foreclose on the Deed of Trust and could not do so through its Trustee, U.S. Bank, or its loan servicer, Wells Fargo.

---

[1]   As alleged in the Complaint, the "Trust" refers to Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, a residential mortgage-backed securitization trust.  Complaint, ¶ 42.

### The Trust Allegations

The Trust holding Plaintiffs' loan is referred to in the following eight paragraphs

of the Complaint:[2]

> 41.    Plaintiffs [sic] lacked standing to file the Second
> Foreclosure Case since the alleged owner of the Note ceased to exist by
> February 21, 2012, the date the case was filed.

> 42.    Filed in the Second Foreclosure Case on February 21,
> 2012, at Doc No. 5, is an Affidavit Certifying Ownership of Debt
> Instrument and Accuracy of Note Submitted Herewith (hereinafter
> "Ownership Affidavit"), dated January 18, 2012, allegedly signed by
> Alisha M. Allen, Vice President of Loan Documentation for WFHM
> [Wells Fargo Home Mortgage], as servicing agent, which identifies "US
> Bank National Association, as Trustee, successor in interest to Wachovia
> Bank, National Association, as Trustee for Wells Fargo Asset Securities
> Corporation, Mortgage Pass-Through Certificates, Series 2003-4"
> (hereinafter the "Trust"), as the "owner and holder of the loan evidence by
> the Note."  A true and correct copy of the Ownership Affidavit is attached
> hereto as EXHIBIT 1.

> 43.    The Mortgage was removed from the Trust on January 1,
> 2012, and the Trust terminated and ceased to exist on January 25, 2012,
> before the Second Foreclosure Case was filed, as evidenced by the
> Certificateholder Distribution Summary for the Trust showing an ending
> certificate balance total for all Trust certificates of zero, attached as

---

[2]    According to the Land Records of Howard County, The Columbia Bank assigned
the Deed of Trust on the Property, together with the Note and all money due thereunder
("Security Instrument") to Wells Fargo Home Mortgage, Inc. on April 16, 2003. [Liber
07153, folio 099].  On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union
National Bank, as Trustee. [Liber 9083, folio 417].  Then, on July 20, 2011, Wells Fargo
Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First
Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National
Association, as Trustee, successor in interest to Wachovia Bank,  National Association as
Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through
Certificates, Series 2003-4 ("Trust"). [Liber 13351, folio 169].  These Assignments are
attached hereto and incorporated herein as **Exhibit B.**  On October 30, 2013, Wells Fargo
Bank, N.A., as attorney-in-fact for U.S. Bank National Association, assigned the Deed of
Trust to Wells Fargo Bank, N.A..  There is also an assignment from Wells Fargo Bank,
N.A. to Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as
Trustee for Stanwich Mortgage Loan Trust, Series 2013-2.  These two assignments are
not yet recorded.

Case 1:14-cv-02814-ELH   Document 91-29   Filed 06/09/14   Page 187 of 497

EXHIBIT 2A, the Collateral Statement showing all loans in the Trust as Paid in Full, attached as EXHIBIT 2B, and the Loan Level Data for the Mortgage reported by US Bank showing the Mortgage was paid off on January 1, 2012, attached as EXHIBIT 2C.

66.    Wells Fargo and US Bank filed the [Proof of Claim] on behalf of the Trust with the intent to defraud this Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012.

67.    Wells Fargo filed its Amended Claim as creditor with the intent to defraud the Court, the Debtor, and the estate created by this Bankruptcy Case, by hiding the fact that the Trust terminated back in January 2012 and therefore it was not entitled to collect the Second Foreclosure Fees.  Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, …

68.    In furtherance of its scheme to defraud and hide the fact of Trust termination, Wells Fargo and US Bank filed the Plan Objection in which they maintained the continued existence of the Trust and its ownership of the Note over one year after the Note was removed from the Trust and nearly 12 months after the Trust terminated and ceased to exist.

76.    US Bank does not have the right to enforce the Note or standing to file the Claim since the Trust terminated and ceased to exist in January 2012.

82.    Wells Fargo does not have the right to enforce the Note or standing to file the Amended Claim.

In a nutshell, Plaintiffs allege that their Deed of Trust was removed from the Trust, and the Trust ceased to exist, *before* U.S. Bank, as Trustee (acting through its servicer, Wells Fargo), initiated foreclosure proceedings, filed a proof of claim, or objected to Plaintiffs' Chapter 13 plan.   As such, they contend, neither U.S. Bank nor Wells Fargo had standing to enforce the Note, to foreclose on the Deed of Trust, or to file a proof of claim or plan objection in Plaintiffs' Chapter 13 case.

3

Apx. 184

## Argument

I.  A TRUST'S TERMINATION DOES NOT TERMINATE
    THE PAYMENT OBLIGATIONS ON THE MORTGAGES
    IN THE TRUST.

A persuasive discussion of the issue at bar is found in *Jaimes v. JPMorgan Chase Bank, N.A.,* WL 677740 (N.D .Ill. February 25, 2013).[3]  In *Jaimes,* the complaint alleged that Chase Bank, N.A. ("Chase"), successor-as-servicer to Washington Mutual Bank, F.A. ("WaMu"), was fraudulently holding itself out as servicer of the mortgage debt even though both WaMu and Chase knew that the trust which owned the loan had terminated. In dismissing plaintiffs' claims under the Fair Debt Collection Practices Act [15 U.S.C. §§ 1692, et seq.], various consumer protection laws of Illinois, and common law claims of quiet title and unjust enrichment, the court explained:

> First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust. *See Pagano v. One West Bank, F.S.B.,* No. 11–00192, 2012 WL 74034, at *5 n. 6 (D.Haw. Jan.10, 2012); *Reyes v. GMAC Mortg. LLC,* No. 2:11–CV–100, 2011 WL 1322775, at *3 (D.Nev. Apr. 5, 2011) ("securitization "merely creates a 'separate contract, distinct from [p]laintiffs['] debt obligations" under the note and does not change the relationship of the parties in any way") (citing *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.,* No. 2:10–cv–375, 2010 WL 4788209, at *4 (D.Utah Nov.16, 2010)); *Upperman v. Deutsche Bank Nat'l Trust Co.,* No. 1:10–CV–149, 2010 WL 1610414, at *3 (E.D.Va. Apr. 16, 2010) ("[t]here is no authority ... that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.")

Id. at 4.

---

[3]  Not reported in F.Supp.2d.

In *Jaimes,* the mortgage expressly provided that (1) the note could be transferred and (2) the sale of the note might result in a change in the loan servicer. "It is reasonable, therefore, for the Court to infer … that, upon the Trust's termination, the servicing rights on Plaintiffs' debt remained with WaMu.  WaMu was the original servicer, the servicer under the Trust, and Plaintiffs fail to allege that anyone other than WaMu was the servicer of their debt after the Trust's termination."  Id. at 5.

In reaching this view, the court favorably cited *Sipe v. Countrywide Bank,* No. CVF–09–798, 2010 WL 2773253, at *14 (E.D.Cal. July 13, 2010).  In *Sipe,* the court rejected plaintiff's claim that defendant misrepresented it had the right to collect payments on pooled mortgages, reasoning that, "Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan …Whether or not [defendant] is legally entitled to service Plaintiff's [loan] does not harm Plaintiff in the absence of allegations that Plaintiff was also making loan payments to a third party."  *Sipe,* supra, at 14;  *Jaimes*, supra, at 5.

The *Jaimes* court further explained:

In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination. Plaintiffs' theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allowed the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. Moreover, Plaintiffs' theory fails to provide the Court with "the who, what, when, where and how," of Chase's fraud as required by Rule 9(b), Fed.R.Civ.P. 0(b); *Rolls-Royce Corp., 570 F.3d at 853.*

Because Plaintiffs have failed to plead factual content that allows the Court to draw a reasonable inference that Chase never had an interest in

5

their debt, and all of Plaintiffs' claims against Chase are predicted on that theory, Plaintiffs' claims against Chase are dismissed.

*Jaimes*, supra, at 5-6.

In the case at bar, the Deed of Trust executed by Mr. and Mrs. Howes contains the identical provision:

> 20. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Period Payments due under the Note and this Security Instrument and provides other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There may also be one or more changes of the Loan Servicer unrelated to a sale of the Note. …

Deed of Trust, ¶ 20, attached to Wells Fargo's and U.S. Bank's principal Memorandum as Exhibit C. Plaintiffs' Deed of Trust never states that upon securitization, transfer, or a change in loan servicers, Mr. and Mrs. Howes' payment obligations would disappear.

As in *Jaimes,* Mr. and Mrs. Howes have failed to allege who became the servicer of their loan upon the Trust's termination. Likewise, there is no allegation that they are making mortgage payments to a third-party, or that a third-party has ever demanded payment from them. The Complaint provides no factual context from which the Court could draw the reasonable inference that neither Wells Fargo nor U.S. Bank had an interest in the loan when they initiated foreclosure proceedings, filed a proof of claim, or objected to Plaintiffs' Chapter 13 plan. As such, the Complaint fails to state a claim upon which relief can be granted, and should be dismissed.

## II.  THE COMPLAINT FAILS TO PLEAD THAT U.S. BANK AND WELLS FARGO HAVE NO INTEREST IN PLAINTIFFS' MORTGAGE LOAN.

Plaintiffs allege that their mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012.  Complaint, ¶ 43.  To make these allegations, Plaintiffs rely entirely on three exhibits attached to the Complaint:   Exhibit 2A is a Certificateholder Distribution Summary which is alleged to show a zero balance in the Trust as of January 25, 2012; Exhibit 2B is a Collateral Statement which is alleged to show that 127 loans held by the Trust were paid in full; and Exhibit 2C is Loan Level Data which is alleged to establish that Plaintiffs' loan was fully paid on January 1, 2012.

However, none of these exhibits supports Plaintiffs' contention that, upon initiating foreclosure proceedings on February 21, 2012, U.S. Bank, as Trustee was no longer the owner and holder of the loan, as sworn to in the Ownership Affidavit attached to the Complaint as Exhibit 1.  These exhibits also fail to establish that Wells Fargo, as servicer, had no authority to file a proof of claim or to object to Plaintiffs' plan.

On the contrary, Plaintiffs have attached to their Complaint, as Exhibit 1, an Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith.  This affidavit states, under oath, that Plaintiffs' Note is held and owned by:

> US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4, by Wells Fargo Home Mortgage, a division of Wells Faro Bank, N.A., as servicing agent.

Plaintiffs offer nothing to refute this, except a conclusory allegation that the Trust was terminated in January 2012, and "The Howes do not know the identity of the rightful

owner of the Note." Complaint, ¶ 62. The rightful owner, though, is not only identified in the Ownership Affidavit attached to Plaintiff's Complaint, but also in the assignments from the original lender, The Columbia Bank, to the current owner, Christiana Trust, a division of Wilmington Savings Fund Society, FSA. These assignments are all identified in Footnote 2, above, and establish U.S. Bank's and Wells Fargo's continuing interest in Plaintiff's property. As public records, the Court may take judicial notice of them.

## Conclusion

For the reasons set forth above and in the principal Memorandum, the Complaint fails to state any claims upon which relief can be granted. Mr. and Mrs. Howe provide no basis for their claims that Wells Fargo (a) is not the holder of the Note as alleged Counts I and II; (b) has filed a defective proof of claim as alleged in Count III; (c) has falsely stated that Mr. Howes is liable to Wells Fargo for $740,334.24 as alleged in Count VI; (d) has sought to collect from Mr. and Mrs. Howes amounts it knows are not lawfully due as alleged in Count VII; or (e) has falsely or wrongly asserted ownership of the Note as alleged in Count VIII. Counts V and VI are barred by limitations, and Count VIII is fatally flawed because it fails to allege reliance. There are no factual allegations of unlawful fees being charge under Count IV, and nowhere is fraud pleaded with particularity. The entire Complaint should now be dismissed.

s/ Douglas B. Riley
Douglas B. Riley, 01220
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
Phone: (443) 901-2369,
Email: dbriley@tph-law.com

*Attorneys for Defendants, Wells Fargo Bank
and U.S. Bank, National Association*

8

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 21st day of January, 2014, copies of the foregoing Supplemental Memorandum in Support of Motion to Dismiss were served electronically through the Court's CM/ECF transmission facilities, as authorized by Local Bankruptcy Rule 9013-4 (a), on each party registered as a CM/ECF participant who has consented to electronically service and, if not a party registered as a CM/ECF participant, then mailed, first-class mail, postage prepaid, fully addressed as follows:

> Robert J. Haeger, Esquire
> 11403 Seneca Forest Circle
> Germantown, Maryland 20876
> Email:  www.haegerlaw.com
>
> *Attorney for Plaintiffs,*
> *Jeffrey V. Howes and Tonya H. Howes*
>
> Michael T. Cantrell, Esquire
> Kyle J. Moulding, Esquire
> McCabe, Weisberg & Conway
> 312 Marshall Avenue, Suite 800
> Laurel, Maryland 20707
> Email:  bankruptcymd@mwc-law.com
>
> *Attorney for Carrington Mortgage Services, LLC*
> *and Wilmington Savings Fund Society, FSB*
>
> Ellen W. Cosby, Esquire
> 300 E. Joppa Road, Suite 409
> Towson, Maryland 21286
>
> *Chapter 13 Trustee*

> s/ Douglas B. Riley
> Douglas B. Riley

9

United States District Court,
N.D. Illinois,
Eastern Division.

# Robert JAIMES and Beata Jaimes, Plaintiffs,
## v.
# JPMORGAN CHASE BANK, N.A. and Washington Mutual Bank, F.A., Defendant.

**N.D.Ill.,2013.**
**Jaimes v. JPMorgan Chase Bank, N.A.**
**Not Reported in F.Supp.2d, 2013 WL 677740 (N.D.Ill.)**

No. 12 C 3162.
Feb. 25, 2013.

Robert Lee Stone, Property Rights Law Group, P.C., Chicago, IL, for Plaintiffs.

Edward J. Lesniak, Tiffany Lin Sorge Smith, Burke, Warren, MacKay & Serritella, PC, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

## JOHN Z. LEE, District Judge.

*1 Plaintiffs Robert and Beata Jaimes ("Plaintiffs") have sued Defendants JPMorgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank, F.A. ("WaMu") alleging that Chase fraudulently held itself out as the creditor and servicer of the mortgage debt on Plaintiffs' house and sought and received payments from Plaintiffs when Chase knew that it had no interest in the debt. Plaintiffs bring claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.,* the Illinois Fair Debt Collection Practices Act, 225 Ill. Comp. Stat. 425 *et seq.* , the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* , the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.* , and common law claims of quiet title and unjust enrichment. Chase moves to dismiss Plaintiffs' claims alleging that it owned Plaintiffs' debt. For the reasons provided herein, the Court grants Chase's motion. Chase is dismissed as a defendant, but Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

## *Facts*

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of resolving this Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir.2010). On March 26, 2004, Plaintiffs entered into a mortgage loan agreement with WaMu and signed a promissory note ("Note") secured by a mortgage ("Mortgage") for property located at 1759 East Cree Lane, Mount Prospect, Illinois. (Compl.¶ 1.) On May 1, 2004, WaMu sold and transferred the Note and Mortgage to a mortgage-backed-securities trust, the "WaMu Mortgage Pass–Through Certificates, Series 2004–AR5" ("Trust"). ( *Id.* ¶ 15.) Under the terms of the Trust, WaMu retained possession of the notes and mortgages as custodian for the Trust and remained the servicer of the mortgage loans in the Trust. ( *Id.* Ex. C, Trust Prospectus Supplement S–12.) On March 30, 2005, the Trust was terminated. (Compl.¶ 17.)

Beginning on or about September 25, 2008, Chase sent, and Plaintiffs paid, many bills in which Chase asserted that it was the creditor and servicer of Plaintiffs' Note and Mortgage. (Compl.¶ 1.)

According to public records, which the Court may consider in a motion to dismiss, *see U.S. v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991),[FN1] on September 25, 2008, the federal government's Office of Thrift Supervision closed WaMu and the Federal Deposit Insurance Corporation ("FIDC") was named receiver. (Purchase and Assumption Agreement between JP Morgan Chase Bank, NA and the FDIC ("P & A Agreement") 1.)[FN2] That same day, Chase and the FDIC entered into an agreement pursuant to which Chase purchased "all right, title, and interest of the Receiver in and to all of the assets" of WaMu and its subsidiaries. ( *Id.* § 3.1.) The P & A Agreement also stated that Chase "specifically purchases all mortgage servicing rights and obligations of [WaMu]." ( *Id.*)

FN1. The Court may also consider public court documents at the motion to dismiss stage without converting a motion to dismiss into a motion for summary judgment. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994).

FN2. The P & A Agreement is publicly available on the FDIC's website: www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. Other courts have taken judicial notice of the P & A Agreement because it is a public record and not the subject of reasonable dispute. *See e.g., Yetiv v. Chase Home Fin. LLC,* No. 4:11–cv–01250, 2012 WL 112597, at *4 n. 1 (S.D.Tex. Jan.11, 2012) (taking judicial notice of the P & A Agreement and collecting cases in which other courts also took judicial notice of the P & A Agreement and its provisions); *Nguyen v. Bank of Am. Nat. Ass'n,* 11–CV–03318, 2011 WL 5574917, at *3–4 (N.D.Cal. Nov.15, 2011); *McCann v. Quality Loan Service Corp.,* 729 F.Supp.2d 1238, 1241 (W.D.Wash.2010); *Molina v. Wash. Mut. Bank,* No. 09–CV–00894, 2010 WL 431439, at *3 (S.D.Cal. Jan. 29, 2010); *Allen v. United Fin. Mortgage Corp.,* 660 F.Supp.2d 1089, 1093–94 (N.D.Cal.2009). Additionally, Plaintiffs acknowledge the P & A Agreement in their Response Brief and recognize that the P & A Agreement "transferred servicing rights and obligations of WaMu to Chase." (Pl.'s Resp.

2

Opp'n Mot. 5.) Plaintiffs deny, however, that the P & A Agreement transferred rights related to their Note and Mortgage to Chase because, Plaintiffs argue, "WaMu lost all interest in the loan" when the Trust was terminated in March 2005. (*Id.*)

*2 On August 8, 2011, a law firm sent Plaintiffs a letter identified as "an attempt to collect a debt." (*Id.* ¶ 21.) The letter stated that the firm "represents the holder of a Mortgage and Note" for Plaintiffs' house. (Compl., Ex. H, Debt Collection Letter ¶ 3.) The letter also stated that "the current creditor is JP Morgan Chase Bank" and "[t]he current servicer of the loan is JP Morgan Chase Bank." (*Id.* ¶ 4.)

According to public court documents, on August 11, 2011, Chase filed a complaint for foreclosure against Plaintiffs in the Circuit Court of Cook County. *See* Circuit Court of Cook County, County Dep't, Chancery Division, case number 11–CH–28430.

On April 27, 2012, Plaintiffs filed this suit alleging that Chase never acquired an interest in their Note or Mortgage and, therefore, that Chase's attempts to collect payments from them were fraudulent. Chase contends that it owned Plaintiffs' debt and moves to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b).

## *Legal Standard*

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. Of Boone,* 483 F.3d 454, 457 (7th Cir.2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Id.*

However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Additionally, Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This heightened pleading standard for claims involving fraud requires a party to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *U.S. ex rel. Lusby v. Rolls–Royce Corp.,* 570 F.3d 849, 853 (7th Cir.2009). The particularity requirement of Rule 9(b) is designed to discourage a "sue

first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir.2011).

## *Discussion*

## I. Chase's Interest in Plaintiffs' Debt

*3 All of Plaintiffs' claims in their five-count complaint are grounded on their theory that Chase had no interest in their Note or Mortgage.[FN3] If Chase had an interest in their debt, either equitably as servicer or legally as owner, none of Plaintiffs' claims can survive a motion to dismiss.

FN3. In Count I, Plaintiffs allege that Chase violated the Fair Debt Collection Practices Act ("FDCPA"), which imposes civil liability on debt collectors who use misrepresentation in debt collection, 15 U.S.C. §§ 1692e, by seeking and receiving mortgage debt payments from Plaintiffs which "were actually "owed ... to another," " and by "knowingly and intentionally communicat[ing] ... false ... statements to Mr. and Mrs. Jaimes representing or implying that JPMorgan Chase was and is the servicer of the Note." (Compl.¶¶ 28–42.) Plaintiffs also allege that Chase violated the FDCPA provisions that prohibit harassment and nondisclosure, §§ 1692d-g, by using "unfair and unconscionable means to collect the alleged debt," by sending "threatening correspondence" to Plaintiffs regarding the debt, and by failing to properly validate the debt. (*Id.*) In Count II, Plaintiffs allege that Chase "falsely asserted that JPMorgan Chase was the "creditor" and "servicer" of the Note and the Mortgage" and that these "false claims" cloud title on their home. (*Id.* ¶¶ 45–50.) In Count III, Plaintiffs allege that Chase was unjustly enriched when it collected debt payments from Plaintiffs because "JPMorgan Chase has no legal interest in the Note or the Mortgage." (*Id.* ¶¶ 51–58.) In Count IV, Plaintiffs allege that Chase violated the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act by fraudulently asserting that it had an interest in Plaintiffs' debt when "they had no rights under the Note or Mortgage." (*Id.* ¶¶ 59–65.) And in count V, Plaintiffs allege that Chase violated the Illinois Fair Debt Collection Practices Act by seeking and receiving payments "that were actually owed to another entity" because "JPMorgan Chase is not a creditor." (*Id.* ¶¶ 66–71.)

## A. Transfer to Trust

To support their contention that Chase had no interest in their debt, Plaintiffs allege that after they signed the Note and Mortgage in March 2004 with WaMu, the original mortgagee, WaMu sold the Note and Mortgage to the Trust in May 2004. (Compl.¶ 15.) Plaintiffs attach to the Complaint a Prospectus Supplement the Trust filed with the Securities and Exchange Commission ("SEC") in May 2004 that describes the assets of the Trust. (*Id.,* Ex. C, Trust Prospectus Supplement S–18.) According to the Prospectus Supplement, the Trust held 725 mortgage loans, each of which had (1) a first payment

date between September 2003 and June 2004; (2) an original term to maturity of not more than thirty years; (3) payments due on the first day of each month; and (4) a conventional mortgage loan evidenced by a mortgage note with a fixed interest rate for approximately the first five years after origination and an adjustable interest rate after that. ( *Id.*) The Prospectus Supplement also indicates that 19 of the 725 mortgage loans in the Trust were Illinois mortgage loans. ( *Id.* S–60.)

Plaintiffs contend that their Note and Mortgage was among the 19 Illinois mortgage loans placed in the Trust. (Compl.¶ 15.) Plaintiffs admit that the Trust's Prospectus Supplement does not mention their specific loan, property, or any transfer of their Note or Mortgage, but they claim that at this point they do not have access to all of the information that Defendants have, including information about whether their Mortgage was placed in the Trust. (Pls.' Resp. Opp'n. Dismiss ¶ 7.)

At the motion to dismiss stage when the Court must accept as true all well-pleaded facts and draw all possible inferences in the plaintiff's favor, *Tamayo,* 526 F.3d at 1081, Plaintiffs have pled enough facts to make it plausible that their Mortgage was sold to the Trust. The Trust's Prospectus Supplement does not identify any of the specific mortgages that were sold to the Trust; it identifies only the characteristics of the mortgages sold to the Trust. Plaintiffs' Mortgage, attached to the Complaint as Exhibit A, has the characteristics of the mortgages held by the Trust as described in the Prospectus Supplement: the first payment date on Plaintiffs' Mortgage is May 1, 2004; the original term to maturity is thirty years; payments are due on the first of each month; the initial interest rate is 4.250% for the first five years and adjustable after that; and the mortgage originated in Illinois. (Compl. Ex. A, Jaimes Mortgage 1–2.)

But the Court's analysis does not end there. The Seventh Circuit has held that a mortgage servicer may have equitable ownership of a claim against a borrower and, therefore, may, like a mortgage owner, sue the borrower. *CWCapital Asset Management, LLC v. Chi. Properties, LLC,* 610 F.3d 497, 501 (7th Cir.2010). In *CWCapital,* a mortgage servicer brought suit against the borrower. *Id.* at 499. The mortgage was part of a mortgage-backed security held by a trust. *Id.* at 500. Pursuant to a pooling and servicing agreement ("PSA") signed by the trustee and the servicer, the trust held legal title to the mortgage and the servicer acted as the trust's collection agent. *Id.* at 500–501. The PSA provided that the servicer "shall ... have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which it may deem necessary or desirable." *Id.* at 500. The Seventh Circuit held that this language established that "[t]he securitization trust holds merely the bare legal title; the Pooling and Servicing Agreement delegates what is effectively equitable ownership of the claim ... to the servicer." *Id.* at 502. The Court also noted that the trustee submitted an affidavit ratifying the servicer's suit against the borrower. *Id.* Consequently, the Seventh Circuit held, the servicer "ha[d] the whip hand" and could bring suit against the borrower. *Id.*

*4 Here, when WaMu sold mortgages and notes to the Trust, WaMu relinquished legal title to those notes and mortgages. (Trust Prospectus Supplement S–17.) ("The

mortgage pool will be the primary asset of the Trust. The Trust will own the right to receive all payments of principal and interest on the mortgage loans due after May 1, 2004.") WaMu remained, however, the servicer of the mortgages and notes in the Trust. (Compl.¶ 15.) As servicer, WaMu's duties included "collection and remittance of principal and interest payments, administration of mortgage escrow accounts, collection of insurance claims and, if necessary, foreclosure." (Trust Prospectus 24–24.) Thus, WaMu retained equitable ownership of the mortgages in the Trust and could collect payments from borrowers whose mortgages were in the Trust.

As a result, if Plaintiffs' Note and Mortgage were transferred to the Trust, as Plaintiffs contend, Chase would still have an interest in Plaintiffs' debt if WaMu had remained the servicer of the Trust until September 25, 2008, when WaMu closed and Chase entered into a P & A Agreement pursuant to which Chase purchased WaMu's assets, including Plaintiffs' Note and Mortgage. In such a scenario, Plaintiffs would not have a plausible theory that allows the court to draw the reasonable inference that Chase is liable for the misconduct alleged.

## B. Trust's Termination

Under Plaintiffs' theory, however, whether WaMu had an equitable ownership in Plaintiffs' debt after it was transferred to the Trust is immaterial because Plaintiffs contend that the Trust was terminated on March 30, 2005, and the Trust's assets "were distributed to the certificate-holders of the Trust" such that the certificate-holders "became the only mortgagees, the only owners and legal holders of the Note and the Mortgage." (Compl.¶¶ 17–18.) As a result, Plaintiffs argue, "WaMu lost all interest in the loan" and neither WaMu nor any of its subsidiaries, parents, or successors had any authority to collect mortgage payments, assign the Note or Mortgage, or foreclose. ( *Id.* ¶ 19, Pl.'s Resp. Opp'n Mot. ¶ 12.)

This is where Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.

First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust. *See Pagano v. One West Bank, F.S.B.,* No. 11–00192, 2012 WL 74034, at *5 n. 6 (D.Haw. Jan.10, 2012) ("Courts have rejected theories that securitization alters the relationship or rights of the original parties"); *Reyes v. GMAC Mortg. LLC,* No. 2:11–CV–100, 2011 WL 1322775, at *3 (D.Nev. Apr. 5, 2011) ("securitization "merely creates a 'separate contract, distinct from [p]laintiffs['] debt obligations" under the note and does not change the relationship of the

parties in any way") (citing *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.,* No. 2:10–cv–375, 2010 WL 4788209, at \*4 (D.Utah Nov.16, 2010)); *Upperman v. Deutsche Bank Nat'l Trust Co.,* No. 1:10–CV–149, 2010 WL 1610414, at \*3 (E.D.Va. Apr. 16, 2010) ("[t]here is no authority ... that the mere existence of a pooling and servicing agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust.")

\*5 Plaintiffs' own Mortgage confirms this. Plaintiffs' Mortgage provides that the "Lender may transfer this Note" and that "the Note ... can be sold one or more times without prior notice to Borrower." (Compl. Ex. B, Jaimes Mortgage ¶ 20.) The Mortgage further provides that such a sale "might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note." ( *Id.*) The Mortgage never states that upon securitization or transfer or a change in servicer that the borrowers' payment obligations disappear. Rather, the Mortgage provides that the "Borrower has promised to pay this debt ... in full," regardless of who owns or services the loan. ( *Id.* 1.) It is reasonable, therefore, for the Court to infer, even under Plaintiffs' theory, that, upon the Trust's termination, the servicing rights on Plaintiffs' debt remained with WaMu. WaMu was the original servicer, the servicer under the Trust, and Plaintiffs fail to allege that anyone other than WaMu was the servicer of their debt after the Trust's termination.

Second, in September 2008, Chase assumed, through the P & A Agreement, "all right, title, and interest ... in and to all of the assets" of WaMu and its subsidiaries, including "all mortgage servicing rights and obligations of [WaMu]." (P & A Agreement § 3.1.) At that same time, Chase began sending Plaintiffs bills for their Mortgage, which Plaintiffs paid. (Compl.¶ 1.) Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them. *See Sipe v. Countrywide Bank,* No. CVF–09–798, 2010 WL 2773253, at \*14 (E.D.Cal. July 13, 2010) (rejecting the claim that defendant misrepresented it had the right to collect payments on pooled mortgages, reasoning that "Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan ... Whether or not [defendant] is legally entitled to service Plaintiff's [loan] does not harm Plaintiff in the absence of allegations that Plaintiff was also making loan payments to a third party.") Thus, again, even under Plaintiffs' theory, it is reasonable for the Court to infer that the servicing rights on Plaintiffs' debt transferred from WaMu to Chase pursuant to the P & A Agreement in September 2008.

In short, it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase fraudulently serviced the debt beginning in September 2008 without offering any allegation as to who became the servicer of their debt upon the Trust's termination. Plaintiffs' theory that their loan obligations terminated when the Trust was terminated because the servicing rights on their debt were not sold or transferred to another entity does not provide the Court with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Moreover, Plaintiffs' theory fails to provide the Court

with "the who, what, when, where, and how," of Chase's fraud as required by Rule 9(b). Fed.R.Civ.P. 9(b); *Rolls–Royce Corp.,* 570 F.3d at 853.

*6 Because Plaintiffs have failed to plead factual content that allows the Court to draw a reasonable inference that Chase never had an interest in their debt, and all of Plaintiffs' claims against Chase are predicated on that theory, Plaintiffs' claims against Chase are dismissed.[FN4]

FN4. Because Plaintiffs' claims against Chase fail for the reasons stated, the Court need not address Chase's argument that, as a bank, the FCDPA and ICAA are not applicable to Chase.

## II. Leave to Amend

In its Motion to Dismiss, Chase contends that Plaintiffs should not be given leave to amend their complaint because any amendments would be futile. (Def.'s Mot. Dismiss 6–7.) Plaintiffs have not moved for leave to amend their complaint, and Plaintiffs stated in their Response Brief that they "do not believe that any amendment will be necessary." (Pls.' Resp. Opp'n Mot. 4.)

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n,* 377 F.3d 682, 687 (th Cir.2004) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Given this standard, it would be premature for the Court to bar Plaintiffs from amending their complaint at this stage of the litigation. Plaintiffs have not yet moved to amend their complaint, and the Court cannot conclude at this time that all possible amendments would be futile. Thus, Defendant's request to bar Plaintiffs from amending their complaint is denied.

The Court reminds Plaintiffs, however, that Rule 11 prohibits parties and attorneys from bringing claims for an improper purpose, such as to harass cause an unnecessary delay. Fed.R.Civ.P. 11(b) (1). The Court also notes that other courts have found similar claims to be baseless and sanctionable. *See, e.g., Nguyen,* 2011 WL 5574917, at *6 (ordering Plaintiff's counsel to show cause as to why he should not be sanctioned under Rule 11 for bringing repeated actions alleging Chase had no interest in Plaintiff's debt for an improper purpose and stating that "the Court finds that the complaint in this case has been filed for the purpose of causing undue delay to avoid what appears to be a proper foreclosure sale. To allow Plaintiff yet another bite at the apple at this point would unduly prejudice the Defendants ... Therefore, the Court finds that any amendment would likely

8

be futile.") If Plaintiffs seek leave to amend their complaint, they must do so within twenty-eight (28) days of this order.

## *Conclusion*

For the reasons herein, the Court grants Chase's motion to dismiss [20]. Plaintiffs are granted leave to file an amended complaint within twenty-eight (28) days of this Order.

**SO ORDERED.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
|     Debtor; | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes, et al., | : | |
|     Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
|     Defendants | : | |

_____

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FILED BY
WELLS FARGO BANK, N.A. AND U.S. BANK, N.A.**

Plaintiffs Jeffrey V. Howes and Tonya H. Howes, by undersigned counsel, file this

Supplemental Memorandum in Support of Plaintiffs' Response to Motion to Dismiss Filed By Wells

Fargo Bank, N.A. ("Wels Fargo") and U.S. Bank, National Association ("US Bank"), as the Court

requested on January 6, 2014, to address the effect of Trust[1] termination on the Trust's right to

enforce Plaintiffs' Note.

**I.    Introduction**

Plaintiffs allege in the Complaint that their Mortgage was removed from the Trust on

January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012, before the

_____

[1]  The "Trust" is the Wells Fargo Asset Securities Corporation, Mortgage Pass-Through
Certificates, Series 2003-4. Compl. ¶ 42.

Second Foreclosure Case was filed. Compl. ¶43. Accordingly, the Trust lacked standing to file the Second Foreclosure Case, Compl. ¶¶ 41, 46, 131, the Claim, Compl. ¶¶ 53, 65, 127, and the Plan Objection, Compl. ¶¶ 52, 68, 127. In addition, since Plaintiffs' Note is payable to the order of the Trust, Compl. ¶¶ 44-45, Wells Fargo failed to establish a right to file Amended Claim 4, Compl. ¶¶ 67, 90-96.

## II.     Argument

### A.     The Power To Act on Behalf of the Trust Terminated When the Trust Terminated

Defendants argue that they continued to have the power to act on behalf of the Trust after it terminated, since Plaintiffs' obligation to pay their Mortgage survived Trust termination, and Plaintiffs have failed to allege: who became the servicer thereafter, that they are making mortgage payments to a third-party, or that a third-party ever demanded payment from them. Defs' Supp Memo 6. This argument is nonsense. Plaintiffs have never maintained that their Mortgage is not enforceable. Instead, they allege the Trust had no power over their Mortgage after Trust termination, resulting in the filing of the Second Foreclosure Case without standing, and Wells Fargo failed to establish in Amended Claim 4 its right to enforce the Mortgage in its effort to hide Trust termination.

In support of their argument for continued Trust viability, Defendants cite the case of *Jaimes v. JPMorgan Chase Bank, N.A.,* WL 677740 (N.D .Ill. February 25, 2013), involving a mortgage that had been owned by a terminated Washington Mutual securitized mortgage trust. Following trust termination, Chase claimed it was the current creditor and servicer of the Jaimes' mortgage, and filed a foreclosure action against them. *Id.* at 3. The Jaimes filed suit under the

2

Fair Debt Collection Practices Act alleging Chase never acquired an interest in their note or mortgage. *Id*. The court dismissed the complaint with leave to amend based on a public record establishing that Chase purchased all of Washington Mutual's assets from its receiver, the Federal Deposit Insurance Corporation, *Id.* at 2, and Seventh Circuit precedent that a servicer could bring a foreclosure suit against the borrower if it retained the servicing rights when transferring title to the trust, the pooling and servicing agreement granted the servicer the power to foreclose, and the servicer retained the servicing rights after trust termination. *Id.* at 7.

The Jaimes case is not on point. Here, the Second Foreclosure Case was filed by the substituted trustees appointed by the Trust, not Wells Fargo acting as servicer. Compl. ¶ 46. Since the Trust terminated and ceased to exist before the Second Foreclosure Case was filed, the substituted trustees' power to foreclose also terminated. Accordingly, plaintiffs in the Second Foreclosure Action lacked standing to file it, and that foreclosure case filing was a nullity. *See Pines Point Marina v. Rehak*, 406 Md. 613, 641, 961 A.2d 574, 591 (2008) (no standing to bring suit where corporate charter had been forfeited). Whatever rights Wells Fargo may have had as servicer are simply irrelevant since it was the terminated Trust that purported to foreclose, not Wells Fargo as servicer for some unidentified viable entity. Likewise, the terminated Trust purported to file the Claim and Plan Objection, not Wells Fargo, as Defendants seemingly assert. Defs' Supp Memo 6.

Finally, the Jaimes case offers Defendants no support on the propriety of the Amended Claim filed in this case by Wells Fargo, since Wells Fargo filed the Amended Claim as creditor, not servicer, and it failed to establish therein its right to enforce the Mortgage as required by Bankruptcy Rule 3001 and the AG Settlement. Compl. ¶¶ 67, 90-96. Wells Fargo entered into a

3

Consent Order in connection with the AG Settlement which provides in relevant part, at Exhibit

A, I.D.1: "[Wells Fargo] shall ensure that each POC is documented by attaching: a. The original

or a

duplicate of the note, including all indorsements." Compl. ¶ 94.

There is simply nothing in the Complaint from which the Court can reasonably infer that

the Trust had an interest in the Mortgage when the substituted trustees filed the Second

Foreclosure Case. The allegations of the Complaint make clear that the Mortgage was paid in full

and removed from the Trust, but provides nothing from which to infer the identify of the

subsequent owner. Indeed, that is the point of Count II, to establish the true owner of the

Mortgage. The Court should not infer Wells Fargo's ownership when it could have easily

provided that evidence itself – if true, but chose not to in order to conceal termination of the

Trust. Compl. ¶¶ 67-68. All reasonable inferences, moreover, are to be made in favor of Plaintiffs

in evaluating the Defendants' Motion, not against them.

### B. Wells Fargo Has The Burden To Establish Its Right To Enforce The Mortgage

The Maryland Court of Appeals, in <u>Anderson v. Burson</u>, 424 Md. 232; 35 A.3d 452; 2011

Md. LEXIS 777 (Md. 2011), puts the burden to prove the right to enforce the Note on Wells

Fargo, including all prior transfers, but it failed to do so when it filed its Amended Claim,

Compl. ¶¶ 78-80, and when it chose not to respond to Debtor's Claim Objection, Compl. ¶ 55.

Under § 3-201 of Maryland's Commercial Law Article, the subject Note is order paper, and since

it is not made payable to Wells Fargo, there is no evidence in the Amended Claim that Wells

Fargo has the right to enforce it. The Anderson Court stated the rule:

4

a reputed transferee in possession of an unindorsed mortgage note has the **burden** to establish its rights under that note. [T]the Maryland Commercial Law Article *** requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to payment under *§ 3-308(a)*). Additionally, given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

Anderson v. Burson, 424 Md. at 245-246 (footnote omitted; emphasis added).

Defendants argue that Plaintiffs have failed to plead that Defendants have no interest in Plaintiffs' mortgage. Plaintiffs have alleged, however, that the Trust terminated and ceased to exist, Compl. ¶43, which can be, if not explicitly, reasonably inferred as stating, it has no interest in the Mortgage. Plaintiffs also allege Wells Fargo failed in its Amended Claim to establish its right to enforce the Mortgage. Compl. ¶¶ 67, 90-96. Nothing more is required at this juncture, since Wells Fargo bears the burden of establishing its right to enforce the Mortgage due to the fact that the Note is made payable to the order of the terminated Trust, not Wells Fargo.

Defendants also argue that Complaint Exhibits 2A, 2B, and 2C fail to establish that the Trust was no longer the owner and holder of the loan when filing foreclosure proceedings on February 21, 2012, claiming the allegation of trust termination is conclusory. Defs' Supp Memo 6. Defendants' characterization is not credible. It is hard to imagine a more specific allegation of trust termination with documentary support to boot.

### C.    Movants' Proposed Exhibits

Defendants ask the Court to take judicial notice of recorded assignments and argue that they establish their continuing interest in Plaintiffs' property. Defs' Supp Memo 8. However, Plaintiffs have asked the Court in Count III to sanction Defendants and preclude them from presenting in any form, as evidence in any contested matter or adversary proceeding, the

information omitted in Claim 4 or Amended Claim 4. Plaintiffs therefore object to consideration of these assignments since no mention is made of those documents in the Complaint, and consideration of them would be inconsistent with the relief requested in Count III.

The recorded assignments add nothing material to what is set forth in the Complaint in any event, since the chain of title ends in the terminated Trust. The unrecorded assignments also are of no help to Defendants' position since the Trust had terminated, along with US Bank's role as Trustee thereunder, well before U.S. Bank's purported assignment to Wells Fargo on October 30, 2013; this alleged assignment also is inconsistent with Wells Fargo's purported prior transfer of all its rights in the Mortgage to Christiana Trust.

## III.    Conclusion

For the foregoing reasons, Trust termination precludes any inference that the Trust thereafter continued to have any interest in the Mortgage, becuase the Trust ceased to exist upon termination. Since Plaintiffs' Note is order paper, moreover, made payable to the order of the Trust, it remains Wells Fargo's burden to establish it had the right to enforce the Note when it filed the Amended Claim.

> Respectfully submitted,
> */s/ Robert J. Haeger, February 5, 2014*
> Robert J. Haeger, Bar No. 25434
> Attorney for Debtor-Plaintiffs
> 11403 Seneca Forest Circle
> Germantown, MD 20876
> (888) 463-3520; www.haegerlaw.com
> Board Certified – Consumer Bankruptcy Law
> – American Board of Certification

6

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on February 5, 2014, by first class U.S. mail, postage prepaid, to:

| | |
|---|---|
| Douglas B. Riley, Esquire | Michael T. Cantrell, Esquire |
| Treanor Pope & Hughes, P.A. | McCabe, Weisberg & Conway |
| 500 York Road | 312 Marshall Avenue, Suite 800 |
| Towson, Maryland 21204 | Laurel, Maryland 20707 |
| | |
| *Attorneys for Defendants,* | *Attorney for Carrington Mortgage Services,* |
| *Wells Fargo Bank, N.A. and* | *LLC and Wilmington Savings Fund Society,* |
| *U.S. Bank, National Association* | *FSB* |

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

*/s/ Robert J. Haeger, February 5, 2014*
Robert J. Haeger

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

```
- - - - - - - - - - - - - - - - - -x
IN RE:                            :   Case No. 12-30614-RAG
                                  :
JEFFREY V. HOWES,                 :   Chapter 13
                                  :
            Debtor.               :
- - - - - - - - - - - - - - - - - -x
JEFFREY V.  HOWES                 :
and                               :
TONYA H. HOWES,                   :
                                  :
          Plaintiffs,             :   Adversary No.
                                  :   13-00510
   v                              :
                                  :
WELLS FARGO BANK, N.A.,           :
US BANK, NATIONAL ASSOCIATION,    :
CARRINGTON MORTGAGE SERVICES, LLC, :
CHRISTIANA TRUST, A DIVISION OF   :
WILMINGTON SAVINGS FUND SOCIETY, FSB,: March 4, 2014
                                  :
          Defendants.             :
- - - - - - - - - - - - - - - - - -x   Baltimore, Maryland
```

**HEARING**

[5] **MOTION TO DISMISS COUNTS ONE, THREE, FOUR, FIVE, SIX, SEVEN
AND EIGHT FILED BY CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB**

[8] **MOTION TO DISMISS ADVERSARY PROCEEDING FILED BY US BANK,
NATIONAL ASSOCIATION, WELLS FARGO BANK, N.A.**

[11] **RESPONSE ON BEHALF OF JEFFREY V HOWES, TONYA H HOWES FILED
BY ROBERT HAEGER (RELATED DOCUMENT(S) 5 MOTION TO DISMISS COUNT
FILED BY DEFENDANT CHRISTIANA TRUST, A DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY, FSB)**

Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

[12]  **RESPONSE ON BEHALF OF JEFFREY V HOWES, TONYA H HOWES**

**FILED BY ROBERT HAEGER (RELATED DOCUMENT(S) 8 MOTION TO DISMISS ADVERSARY PROCEEDING FILED BY DEFENDANT WELLS FARGO BANK, N.A., DEFENDANT US BANK, NATIONAL ASSOCIATION)**


BEFORE THE HONORABLE ROBERT A. GORDON, Judge


APPEARANCES:                    ROBERT HAEGER, Esq.
                                Haeger Law
                                11403 Seneca Forest Circle
                                Germantown, Maryland  20876
                                  On Behalf of the Plaintiffs

                                DOUGLAS B. RILEY, Esq.
                                Treanor Pope & Hughes, P.A.
                                500 York Road
                                Towson, Maryland  21204
                                  On Behalf of US Bank, National
                                  Association
                                Wells Fargo Bank, N.A.

                                KYLE MOULDINE, Esq.
                                McCabe, Weisberg & Conway, P.C.
                                312 Marshall Avenue
                                Suite 800
                                Laurel, Maryland  20707
                                  On Behalf of Christiana Trust, a
                                  Division of Wilmington Savings Fund
                                  Society, FSB

Audio Operator:                 Booker Livingston

Transcription Company:          CompuScribe
                                5100 Forbes Boulevard
                                Suite 101
                                Lanham, MD 20706
                                301/577-5882

1                    P R O C E E D I N G S

2           THE CLERK:  Silence, please.  All rise.

3           All persons having any manner of business before the

4    United States Bankruptcy Court for the District of Maryland

5    draw near and give your attention.  This Court is now in

6    session.  The Honorable Robert A. Gordon presides.

7           Please be seated.

8           We have the case of Jeffrey Howes, Case No. 12-

9    30614, Adversary 13-00510.  Counsel, will you please identify

10   yourself and your client for the record?

11          MR. HAEGER:  Good afternoon, Your Honor.  Robert

12   Haeger on behalf of the Plaintiffs --

13          THE COURT:  Hi, Mr. Haeger.

14          MR. HAEGER:  -- Tonya and Jeffrey Howes.

15          THE COURT:  Hi, Mr. Haeger.  How are you?

16          MR. HAEGER:  I am fine, thank you.  Yourself?

17          THE COURT:  Good.

18          MR. RILEY:  Good afternoon, Your Honor.  Douglas

19   Riley on behalf of Wells Fargo Bank and US Bank, National

20   Association.

21          THE COURT:  Hi, Mr. Riley.  How are you doing?

22          MR. RILEY:  Thank you.

23          MR. MOULDINE:  Good afternoon, Your Honor.  Kyle

24   Mouldine on behalf of Carrington Mortgage Services and

25   Christiana Trust.

1            THE COURT:  Hi.  How are you?

2            MR. MOULDINE:  Great.

3            THE COURT:  Good.  Well, I know you have filed

4    supplemental papers, because I asked you to, raising the issue

5    that we raised at the last argument.  So does anyone want to

6    make a comment before I give the ruling?

7            MR. RILEY:  Nothing from Wells Fargo, US Bank, Your

8    Honor.

9            THE COURT:  Okay.

10           MR. HAEGER:  Nothing further from the Plaintiffs,

11   Your Honor.

12           THE COURT:  Okay.  So this is the oral ruling in

13   Adversary Proceeding No. 13-00510.  And let me ask a question

14   first before I get into the meat of it.

15           First to the Debtor, Mr. Haeger.  Just so the record

16   is clear, has the Debtor made any post-petition payments to

17   either Christiana Trust or Carrington Mortgage Services?

18           MR. HAEGER:  Yes, he has, Your Honor.

19           THE COURT:  Okay.  When did they start?

20           MR. HAEGER:  I believe it started promptly after the

21   case was filed.

22           THE COURT:  So the Debtor has been making regular

23   post-petition payments?

24           MR. HAEGER:  Until they were rejected.

25           THE COURT:  How many payments were made, then?

1           MR. HAEGER:  I am afraid I don't have that

2    information at my fingertips.  But if I remember correctly, it

3    was about five payments.

4           THE COURT:  Okay.  Do you know, counsel?

5           MR. MOULDINE:  I am not aware at this time, Your

6    Honor.

7           THE COURT:  Okay.

8           MR. MOULDINE:  I just don't have that information.

9           MR. RILEY:  And my understanding, when we did our

10   briefing, was that Wells Fargo had not been paid anything.  But

11   we have turned the loan over to Carrington.

12          THE COURT:  Okay.  All right.  Well, let me ask you

13   this, Mr. Mouldine.  I mean, your client or clients, are they

14   the note holder?

15          MR. MOULDINE:  Yes, Your Honor.

16          THE COURT:  They are.

17          MR. MOULDINE:  Christiana Trust currently is the

18   note holder.

19          THE COURT:  Okay.

20          MR. MOULDINE:  And Carrington is servicing the loan.

21          THE COURT:  Okay.  All right.  Fine.

22          Well, here is my ruling, then.  I appreciate that

23   information.  So the complaint is the Debtor, Mr. Howes, as

24   Plaintiff, and his wife, Tanya Howes, because they own the

25   property as tenants by the entirety, versus Wells Fargo Bank

1    individually and as servicer for US Bank, N.A., US Bank, N.A.,

2    individually and as trustee for Wells Fargo Assets Securities

3    Corp., Mortgage Pass-through Certificates Series 2003-4, and

4    Carrington Mortgage Services, LLC, individually and as servicer

5    for Christiana Trust, and Christiana Trust, a division of

6    Wilmington Savings Fund Society, FSB, individually and as

7    trustee for Stanwich -- that is Stanwich, S-t-a-n-w-i-c-h --

8    Mortgage Loan Trust Series 2013-2, and unknown Defendants One

9    through Ten.

10           And the complaint is entitled "Complaint to

11   determine secured status sanctions and other relief filed

12   September 3, 2013."  A complaint was filed that date.  That's

13   not part of the title.  It was responded to with motions to

14   dismiss by all of the Defendants.  And Wells Fargo's/US Bank's

15   motion to dismiss was the most extensive and really the one

16   that gets into the meat of whether or not the complaint can

17   stand.

18           So we held a hearing on January 6 on the motions to

19   dismiss, at which time argument was presented.  And at that

20   time it seemed to me that there was still a definitive lack of

21   clarity as to who holds the note, notwithstanding what I was

22   told at the beginning of this hearing by counsel.  I don't

23   think anyone spoke up and took ownership that day.  But my

24   confusion was mainly derived from Wells Fargo's memorandum in

25   support of its motion to dismiss, where on page nine it did not

1    specifically identify the noteholder, but simply said "whoever

2    that might be" in an obvious reference to the noteholder.

3           So now today I understand, and obviously that is why

4    I asked the question.  I was still a little bit uncertain or

5    confused, notwithstanding what the claims docket says because

6    of what appeared to be a lack of a corresponding definitive

7    statement in the papers with respect to the complaint, as I

8    went through them.

9           But in any event, in part because of that apart

10   uncertainty with respect to the ownership of the note, I asked

11   the question as to what happens when the trust complained of by

12   the Debtor is "terminated," as is alleged in the complaint.

13   And before I go any further, I will note here that while the

14   Debtor alleges that the particular securitization trust

15   complained of was terminated, and that is basically the

16   operative fact that forms the basis of much of what is alleged

17   in the complaint after that allegation in terms of wrongdoing

18   by the Defendants, the reason the trust seems to have

19   "terminated" is because all of the loans, including this one,

20   were paid in full.  I mean, that is what the complaint says.

21          But we know that that is not true by the Debtor's

22   own admission.  So fundamentally the complaint takes us into an

23   unreal world, one where the Debtor has to know and realize that

24   the operative fact that he relied upon to suggest that his

25   mortgage is now floating in space without ownership, or at

1    least that he "doesn't know who the owner is," is false in the

2    operative fact.  I mean, the payment in full is what it takes

3    to terminate the trust, or at least one thing, the one cited

4    reason in the complaint.  And that didn't happen here, which

5    really makes you wonder.  And I will get into a little bit of

6    that.

7              But nevertheless, I did ask the question about what

8    happens as a matter of law when the trust terminates.  I think

9    Wells Fargo relied upon Maryland law, and the Debtor responded

10   to that and said, well, even if Maryland law says that, then

11   it's not the case here for some factual difference.  But I

12   wondered whether Maryland law even applied to the transaction,

13   knowing that it would be unlikely that the great minds that

14   fashioned these securitization trusts and set up all of these

15   transactions that led to the worst economic disaster since the

16   Great Depression probably wouldn't look to Maryland law to

17   figure out what it all meant, if that became necessary.

18             But nevertheless, it seems that now Defendant Wells

19   Fargo has answered the question in a manner that could and

20   probably should be devastating to the Debtor's alleged causes

21   of action.  And that answer, the one provided in *Jaimes* -- that

22   is J-a-i-m-e-s -- *v. J.P. Morgan Chase*, 2013 West Law 677740,

23   out of the Federal District Court in the Northern District of

24   Illinois, a 2013 case just about a year or so ago was entered,

25   is one that makes estimable sense.  The answer in that case

1  does.

2          It is, and the answer is, insofar as the Debtor's

3  obligation to pay goes, termination of the trust doesn't

4  matter.  The Debtor/Creditor relationship is unchanged by the

5  existence of the trust.  Termination would only matter if the

6  Debtor was put in the position of having to choose between two

7  masters, if one of these Defendants was demanding or, worse,

8  receiving payment that it was not legally entitled to receive

9  or demand.  The question raised in the *Jaimes* case, and that

10 question must be put to the Debtor, is who else became the

11 servicer.

12         And we can go around and around and around in

13 circles, which is certainly a lot of what we have been doing

14 with this particular case, from now until the end of time.  And

15 I don't think the Debtor is going to have a realistic answer to

16 that.  The Debtor says, well, none of them are the servicer,

17 but I don't know who the servicer is.  And maybe there is a

18 thin thread that is infinitesimal that the Debtor sort of

19 relies on to support that argument that we will talk about at

20 the end of this.  But it all sort of makes me think, to be

21 honest, this complaint is really more a big bunch of nonsense

22 than anything else.

23         Fundamentally, we know that as a matter of reality

24 that doesn't matter here, the question of who became the

25 servicer.  Because unlike the bars in the *Jaimes* case, at least

1   for most of the period of time, that complaint was filed in

2   response to a foreclosure sale.  The Debtor here has not been

3   paying the debt regularly for at least seven to ten years.

4   That was the Debtor's admission on the stand when we had the

5   most recent hearing in the main case on Mr. Haeger's fee

6   application.  Hence, there has been no violation of the

7   Debtor's rights or even an impact on the duty to pay and,

8   therefore, no damage as a result of the trust termination.  And

9   that is based upon my interpretation of the *Jaimes* case, which

10  is, if not exactly on point, is very close to being on point,

11  at least certainly in terms of the legal principle that is

12  expressed.

13          But before we get to the very bottom line, let's

14  review the dispute as set forth in the complaint.  Complaint is

15  bad.  And what I mean by that is an example of a lawyer

16  combining the historical context of Wall Street's mortgage

17  meltdown, the distasteful and ugly securitization process.  And

18  when I say distasteful and ugly, I mean the change from

19  historical relationship that borrowers would have with either a

20  bank or a mortgage company where they could expect, reasonably

21  expect, that their mortgage would stay local or at least with

22  the same bank for the life of the mortgage instead of turning

23  it into, you know, something that is better suited for a

24  gambling casino, which is what the securitization process

25  essentially did.  And of course we lost, meaning the American

1   public.  And the stumbles and bumbles and missteps taken by the

2   Defendant lenders and those servicing it regarding the Debtor's

3   particular mortgage over the last few years and spinning all of

4   that into a magic lantern show cause of action that falls well

5   short of legitimacy.

6          What do I mean by magic lantern show?  Well, if you

7   bend the light and distort your point of few just the right

8   way, you might think that there is a significant claim there.

9   But if you take a close reading of it, you know that there

10  really isn't.

11         I don't admire this at all.  I have said this

12  before, and I will say it again.  Maybe I will have another

13  opportunity to say it in the future.  What this Debtor needs,

14  if it is missing, is certainty as to whom to deal with and then

15  a negotiated deal to cure the arrears and pay off the balance

16  of the mortgage, if possible, and not a complaint that raises a

17  lot of fluff and a lot of fuss and feathers but really doesn't

18  state a legitimate claim.  Because we can't lose sight of the

19  fundamental fact that the Debtor's financial problems and

20  uncured default started this mess, not Wall Street, not asset-

21  backed securities, and not the bailouts.  If the Debtor had

22  been able to pay the mortgage, then he would not be in

23  bankruptcy, and none of this adversarial process would be

24  necessary.

25         The Debtor's default does not turn the lenders into

1    villains.  And it doesn't appear that anything of significant

2    substance is alleged by which the Defendants have cast

3    themselves as villains, notwithstanding the incompetence in

4    managing these or this mortgage that has been shown in the

5    various transitions.

6            The first substantive section of the complaint is

7    entitled the Debtor's mortgage.  And it describes the 2001

8    creation of the deed of trust and note with Columbia Bank.

9    That was secured by the Debtor and his wife's home in Howard

10   County.  In 2008 the Debtor acknowledges that their income went

11   down, and they could not pay the mortgage as before.  In the

12   complaint it says they stopped altogether in 2009.  It may even

13   be longer than that, based upon the Debtor's testimony at the

14   fee hearing.  But essentially, the mortgage has been in default

15   since then.

16           The next section lists the loan modification efforts

17   and essentially says from July 2009 to September 2012 the

18   Debtor and his wife tried to obtain a modification of the

19   mortgage.  The back and forth is set out from the Debtor's

20   perspective with the Howes being rejected for modification and

21   then settlement proposals being exchanged thereafter with none

22   agreed to.  They made a proposal.  The bank made a proposal or

23   vice versa, but an agreement was not reached, again with the

24   Debtor in default.

25           This section also recites that foreclosure was

 1    commenced.  And during the mediation process, the Howes were

 2    given reasons why they were deemed ineligible for prior

 3    modification.  It is alleged that the explanations made no

 4    sense and contradicted prior statements from the lender as to

 5    why they were ineligible.  But it is also alleged that the

 6    explanation was given to hide the fact that the securitization

 7    trust did not exist before the foreclosure proceeding was

 8    commenced, which the Debtor extrapolates from to say, well,

 9    there was no -- no one had the ability to start the foreclosure

10    proceeding, because the securitization trust did not exist, or

11    at least those who commenced it didn't have the standing to do

12    it.

13          So the question in my mind would be, would the

14    trust's existence have matters relative to the Howes' rights

15    surrounding the mortgage?  If so, what difference would it have

16    made?  Would it have impacted on their duty to pay?  If it

17    ceased to exist, how did that injure the Howes?  In other

18    words, to the extent that you look at the mortgage as an asset

19    at that point, did that asset still exist and did the Howes

20    still have an obligation to pay it?  I think the answer is

21    yes.

22          The next section of the complaint describes

23    foreclosure cases.  And, let me see, to read in from the

24    complaint at page 10, it gives a pretty good shorthand in

25    paragraph 36.  "Defendants US Bank, as principal, and Wells

 1  Fargo acting as its agent and within the scope of that agency

 2  caused two foreclosure cases to be filed against the Howes

 3  regarding the mortgage in the Circuit Court for Howard County,

 4  Case No. 13C10080927, *Dorr, et al., versus Howes, et al.*, filed

 5  January 20, 2010, voluntarily dismissed by Plaintiffs on

 6  January 3, 2011, hereinafter first foreclosure case, and Case

 7  No. 13C12089855, *Dorr, et al., versus Howes, et al.*, filed

 8  February 21, 2012, and still pending -- that case is still

 9  pending -- hereinafter second foreclosure case.  That was the

10  one that was stopped by the filing of the bankruptcy.

11          Now, the allegations in this section do reflect

12  confusion, incompetence, and problems common during this time

13  period to noteholders and their agents in trying to process the

14  foreclosures.  I think that is a fair statement of it.  The

15  Plaintiffs list -- and it is based upon the record.

16  Plaintiffs list the various affidavits and the representations

17  included in them, that some may have been "robo-signed," that

18  some were not made on personal knowledge, and that one or more

19  referred to the securitization trust as the owner of the note

20  and loan after it no longer existed, after the trust no longer

21  existed.

22          Buried in here is the assertion that one or more

23  affidavits alleged that the trust had been terminated because

24  the loans in it had been paid in full.  Again, we know that is

25  not true as to this loan.  And if it is not true, then it

1   cannot be proper for the Plaintiff to allege grievous

2   wrongdoing on the part of the lenders in attempting to "cover

3   up" or "hide" the termination of the trust, when he has to know

4   that, if payment in full is the basis for termination, then

5   termination could not have occurred.  But nevertheless, that is

6   what the complaint does.

7          All the allegations of misrepresentation and fraud

8   flow from this simple allegation.  But it is a circumstance

9   that the Plaintiff cannot rely upon because he has not paid the

10  mortgage regularly for at least seven years.  And it has been

11  in default for that long.

12         The first foreclosure was dismissed voluntarily by

13  the lender in the wake of the bad affidavits.  The second one

14  was pending when this bankruptcy was filed.

15         And the next section of the complaint deals with the

16  bankruptcy.  The main case was filed on November 15, 2012.  The

17  Chapter 13 plan originally called for the cure of arrears of

18  approximately $35,600 with post-petition payments to Wells

19  Fargo.  But in contradiction to that, the ownership of the note

20  secured status of the claim and amount owed were all scheduled

21  or disputed on Schedule D and in the plan.

22         Wells Fargo filed an objection to the plan on

23  January 9.  US Bank filed a proof of claim on March 8 in the

24  amount of $740,300, give or take a few dollars, with pre-

25  petition arrears of approximately $200,000, which sounds like

 1    it is probably about right in light of the length of the

 2    default, and a request that notices be sent to Wells Fargo Home

 3    Mortgage at a South Carolina address.  No documents were

 4    attached in support of that proof of claim.

 5              Eight days later, Wells Fargo filed an amended claim

 6    with documentation attached.  The Debtor objected to the

 7    amended claim and, among other things, alleged lack of standing

 8    to file the claim on Wells Fargo's part.  Wells Fargo did not

 9    respond to the objection.

10              On May 29, Carrington Mortgage Services filed a

11    notice of transfer of claim listing Carrington Mortgage

12    Service as a transferee and Wells Fargo as transferor.

13    Amended notice of transfer filed on June 11 indicated transfer

14    from Wells Fargo to Christiana Trust.  Because of this

15    transfer activity, I overruled the objection without prejudice

16    in order to bring in the transferees and to allow the Debtor to

17    file an adversary proceeding, if appropriate, in light of the

18    relief that seemed to me went a little bit beyond what you can

19    get in an objection of claim more appropriate to an adversary

20    proceeding.

21              The Debtor asserts in the complaint that he and his

22    wife had not received any notice of transfer of a right to

23    serve with the deed of trust and note from Wells Fargo.  The

24    Debtor claims that they have received no communication from

25    Carrington or Christiana regarding any alleged interest in the

1    mortgage.  And the Debtor finally claims at the end of the

2    factual allegations that he does not know who owns the note,

3    and therefore he doesn't know who to pay.

4              Claims for relief.  Count one is fraud upon the

5    Court, that the proof of claims were filed to defraud the Court

6    by hiding the fact that the trust had terminated, and Wells

7    Fargo was not entitled to recover fees from the foreclosure.

8    This is spiced with a fleeting but basically unexplained

9    mention of an AG, attorney general, settlement and how that

10   impacts upon Wells Fargo's claim filing duties generally, a

11   "pattern and practice" of Wells Fargo and US Bank of filing

12   fraudulent proof of claims and a spiel at the end about how

13   tough it is to get better and how easy it is to be a bank.

14             All of that may be true, but how does it set out a

15   claim for fraud upon the Court in this case?  Absolutely no

16   detailed allegation of how misfiling of the proof of claims

17   caused an injury to the Debtor or the Court or allowed Wells

18   Fargo or US Bank to gain an advantage.  And I mean a real

19   advantage.  If they are not entitled to fees or charges

20   assessed in a foreclosure on the merits, then that can be

21   sorted out via an accounting or objection to claim.

22             But there is no question at all that there was an

23   entitlement to foreclose under the loan documents.  There still

24   is but for the bankruptcy.  So what detailed facts are set out

25   in the complaint that support even the slimmest case that all

1   of this was a fraudulent scheme to cover up the fact of trust

2   termination or the foreclosure to secure some nefarious

3   purpose?  The short answer is it couldn't be, because the

4   termination had already been revealed in the foreclosure.  The

5   long answer is that there are no facts that set out a

6   fraudulent scheme on the part of either US Bank or Wells Fargo

7   with the requisite detail, as required by Rule 7009.

8          The filing of an incorrect claim is not actionable

9   unless there is a knowing and fraudulent filing.  The Debtor's

10  assertion simple assumes without explanation that the proof of

11  claim, proofs of claim, were filed to claim fees to which the

12  Defendants were not entitled because the trust terminated.  But

13  there is no explanation as to why trust termination would cut

14  off the right to enforce the note.  And that is the crucial

15  problem with the complaint.

16         This is especially true under the enlightened

17  analysis of the *Jaimes* case.  If it was wrong for either US

18  Bank or Wells Fargo to claim credit or slash service or status,

19  then the Debtor must proffer who the correct servicer was or,

20  at a minimum, show some colorable injury to him and his wife,

21  as a result of the purported confusion, to pay down the

22  mortgage and get the credit that someone who pays down their

23  mortgage is due to get instead of playing dumb and acting as

24  if you don't know who is supposed to receive the payments,

25  even in light of the confusion that went on here.  And some of

1   it I can understand, the Debtor's frustration, et cetera.  I

2   talked about that before.  But there comes a time when it has

3   to end.

4          As observed in *Jaimes*, that the Debtor was paying

5   someone the monthly payments but not getting credit for the

6   money paid, as indicated in *Jaimes*, this Debtor can't do that

7   because he has been living in the house without making regular

8   payments for almost seven years.

9          What it comes down to is the allegation that this

10  mortgage became part of the securitization package, and that's

11  not fair.  And therefore, I, the Debtor, have been injured.

12  That doesn't state a claim for relief and certainly doesn't

13  state a claim for relief for fraud.  Therefore, count one will

14  be dismissed with prejudice.

15         There is no proper fraud allegation.  And I don't

16  believe there is any fraud at all.  And the Debtor and counsel

17  have had more than enough time to come up with a legitimate

18  cause of action that is, let's be honest, supposed to be the

19  centerpiece of the complaint.  These allegations do not cut it

20  at all in that regard.

21         With the amount of money counsel is billing and with

22  the amount of work allegedly put in to preparing this

23  complaint, the Debtor should have known whether fraud occurred.

24  And the allegations do not support a claim for relief in that

25  regard.

 1              Count two alleges that because of the defects in the

 2    transfer of the note, none of the subsequent transferees

 3    obtained good title.  Debtor does not know who holds the note.

 4    And again, to quote directly from the complaint at page 21, it

 5    says at paragraph 85, "None of the Defendants has the right to

 6    enforce the note and deed of trust lien under applicable state

 7    law."  I don't know how you get to that, but that is what the

 8    complaint says.  So the bottom line is the Debtor is taking the

 9    position none of these Defendants have an interest in it, even

10    including the last transferee standing at this point, either

11    Carrington or Christiana.

12              This is my ruling as to count two.  There is

13    confusion here created by the securitization process that has

14    been exacerbated by bumbling.  Therefore, the present holder of

15    the note will provide a detailed affidavit, under penalty of

16    perjury, within 30 days of today confirming who owns and has a

17    right to enforce the loan documents.  All relevant

18    transactional documents will be identified and provided to the

19    Debtor, if the Debtor requests them.  In other words, we don't

20    want this to turn into harassment.  But under the

21    circumstances, the Debtor probably does have a right to at

22    least know with certainty the basis for the present

23    noteholder's claim to ownership to the note, because of the

24    sloppiness that has gone on historically in this case.  And

25    that sloppiness doesn't add up to a cause of action for fraud.

1   And it probably doesn't add up to a cause of action for

2   anything else.

3           But a proof of claim has been filed.  And the Debtor

4   is going to continue to say "I don't know who to pay" and take

5   that position.  And that needs to stop, because this case needs

6   to move forward on a Chapter 13 confirmation track or not.  So

7   that is why I am calling upon the claimant to clear this up

8   once and for all hopefully.  And if an amended claim is

9   necessary that sets out an accounting of all the charges that

10  are being made, then that should be filed, too, within the same

11  time frame.

12          The Debtor will have 30 days from the filing of the

13  affidavit and documents to file an objection to claim or an

14  amended complaint or both.  However, the ruling as to fraud,

15  based upon the *Jaimes* case and the other reasons I have

16  listed, and the affidavit requirement that I have placed upon

17  the owner of the loan documents should narrow considerably what

18  the Debtor can legitimately allege in this court, if anything,

19  in contesting either the claim or the standing of the

20  noteholders.

21          In other words, I agree that the alleged fraud and

22  misrepresentations complained of with respect to the Truth in

23  Lending Act and state consumer protection claims and any other

24  claims set out in the complaint beyond the first two counts

25  find their source in the claim that the proofs of claims were

1    fraudulently filed because the trust termination was not

2    revealed.  That ground no longer applies because no legitimate

3    fraud claim was made.  Therefore, it seems to me that much of

4    the basis for the truth in lending and state consumer

5    protection law claims must also fail.  Since that is the case,

6    the expectation is that those claims should be narrowed

7    considerably, if not abandoned, in light of the duty of good

8    faith under Rule 7011.

9           In other words, any other state consumer claim or

10   truth in lending claim that is based upon some

11   misrepresentation of fact that traces back to the foreclosure,

12   the termination of the trust, the filing of the proofs of

13   claims, I don't think there is any basis for that.  I can't

14   tell whether there is a basis for anything else that is

15   alleged, whether there is some strict statutory liability

16   because of a failure to give notice along the way, et cetera.

17   There may be some viable claim there, but it certainly not

18   going to be enough, or it should not be enough, I don't think

19   it will be enough, to have a real significant impact on the

20   overall claim and the total amount of the claim.

21          Even if legitimate state law or truth in lending

22   claims exist, I am concerned about whether I should abstain

23   from hearing them, because there are no legitimate claims under

24   the Bankruptcy Code that I can see.  Particularly so once the

25   proper filer, noteholder, the owner of the proof of claim and

 1    noteholder is clarified once and for all.

 2            So if after the proof of claim note owner issue is

 3    resolved, the Debtor files frivolous claims, then I am going to

 4    sanction the Debtor and his counsel.  And this is also going to

 5    impact upon the Debtor's good faith in prosecuting his plan.

 6    Why?  Because in bankruptcy there is the opportunity to ask

 7    questions first, to paraphrase what the District Court judge

 8    wrote in the *Jaimes* case, via a 2004 examination and document

 9    protection before illegitimate claims are filed.  And clearly

10    that should have happened here, but it didn't.  To emphasize

11    again, it is clear that there is no fraud.  The Debtor is in

12    default.  And whatever confusion went on in the foreclosure

13    proceeding, it had no impact upon the Debtor's obligation to

14    pay the debt.

15            So using that as a smokescreen is going to stop now.

16    The Debtor can object or complain and seek relief of

17    legitimate claims that are not time barred exist, but if they

18    don't, then the Debtor is not going to give bankruptcy relief

19    in this court, and the house is going to be sold at

20    foreclosure.

21            What needs to happen is the dispute needs to be

22    resolved and a workable Chapter 13 plan put in place.  If

23    state law or other federal claims not based upon the

24    Bankruptcy Code are filed in an amended complaint, then

25    Debtor's counsel is going to accompany the next iteration of

 1   the complaint with a memorandum establishing why I should not

 2   abstain from hearing them.  The Defendant shall have the same

 3   time to respond to that memorandum as they will to the amended

 4   complaint.

 5           So the complaint is dismissed in full without

 6   prejudice, but with the conditions I have just set out.  So if

 7   a new complaint, an amended complaint, is filed within the time

 8   period, which is 30 days after the proof of claim issue is

 9   cleared up, then we will deal with it from there.  But my

10   expectation would be is that it would be significantly

11   different from the claim that was filed previously and that's

12   just been dismissed, albeit without prejudice.  Okay?

13           Any questions?  Go ahead.

14           MR. MOULDINE:  You said that you wanted an affidavit

15   filed under penalty of perjury.  And along with that affidavit

16   you would like the loan documents to be included.

17           THE COURT:  No.  An inventory of documents that

18   establish the noteholder's right to enforce the claim.  In

19   other words, I want you to list.  You don't have to file that,

20   but you need to provide it to Mr. Haeger.

21           MR. MOULDINE:  Okay.

22           THE COURT:  Okay?  And say this is why we are the

23   noteholder.  And they can be referred to in the affidavit,

24   chronologically, this is how we gained our title to the note.

25   Okay?

```
 1              MR. MOULDINE:  The affidavit just goes to
 2    Mr. Haeger.
 3              THE COURT:  No, no, no.  Yes, yes.  Okay.  That's
 4    fine.
 5              MR. MOULDINE:  The affidavit including the list?
 6              THE COURT:  Yes.  The affidavit with the list can go
 7    to Mr. Haeger.
 8              MR. MOULDINE:  Okay.
 9              THE COURT:  All right?
10              MR. MOULDINE:  Thank you, Your Honor.
11              THE COURT:  Okay.  Sure.
12              Mr. Haeger?
13              MR. HAEGER:  And they are to provide the documents,
14    also, to me?
15              THE COURT:  Why don't you go through the inventory
16    first and tell them which ones you want, because I am sure you
17    probably have some of them already.
18              MR. HAEGER:  And how quickly --
19              THE COURT:  If you want all of them, then you can
20    have all of them, but I would like you to not waste a lot of
21    money on this.
22              MR. HAEGER:  How quickly should they --
23              THE COURT:  I already said that, 30 days.
24              MR. HAEGER:  And if I go through it and I say I need
25    these documents, they are to provide that immediately?
```

 1              THE COURT:  Yes.  Right.  The order will say all of

 2    that.

 3              MR. HAEGER:  Okay.  I have no further questions,

 4    Your Honor.

 5              THE COURT:  All right.

 6              MR. MOULDINE:  Thank you, Your Honor.

 7              THE COURT:  Mr. Riley, any questions from you?

 8              MR. RILEY:  No, sir.

 9              THE COURT:  All right.  Thanks.

10              THE CLERK:  All rise, please.  This Honorable Court

11    now stands adjourned.

12              (Whereupon, the hearing was concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

        I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings in the

above-entitled matter.

 /s/   Gail A. Williams                     March 15, 2014
Gail A. Williams                                    Date
Certified Transcriber
Certificate No.:  CET**D-434

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

In re: Jeffrey V Howes

Bankruptcy Case No. 13-30614
Adversary Case No. 13-00510
Chapter 13

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jeffrey V Howes and
Tonya H Howes
                    Plaintiffs(s)

          vs.

Carrington Mortgage Services, LLC
Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for
Stanwich Mortgage Loan Trust, Series 2013-2
                    Defendant(s)


          \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## LINE TO COURT REGARDING SERVICE OF AFFIDAVIT
## CERTIFYING OWNERSHIP OF DEBT INSTRUMENT

          COMES NOW, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB as trustee of Stanwich Mortgage Loan Trust, Series 2013-2 (Carrington Mortgage Services, LLC, Servicer) by and through undersigned counsel and confirms that a copy of the attached Affidavit Certifying Ownership of Debt Instrument was served to debtor's counsel via ECF means on April 3, 2014. A true and accurate copy of the documents listed in the Affidavit will be sent directly to counsel for the debtor via e-mail to the address listed in the docket report.

                                        /s/  Michael T. Cantrell, Esq. (kmg)
                                        Michael T. Cantrell, Esq.
                                        Attorney for Creditor
                                        Bar No. 08793
                                        312 Marshall Avenue, Suite 800
                                        Laurel, MD 20707
                                        301-490-1196
                                        bankruptcymd@mwc-law.com

                                        /s/  Kyle J. Moulding, Esq. (kmg)
                                        Kyle J. Moulding, Esq.

Attorney for Creditor
Bar No. 30148
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcymd@mwc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Line along with the attached Affidavit was sent electronically via the CM/ECF system on April 3, 2014, to Robert Haeger, Esq., Attorney for Debtor.

/s/ Michael T. Cantrell, Esq.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

In re: Jeffrey V Howes

Bankruptcy Case No. 13-30614
Adversary Case No. 13-00510
Chapter 13

***************************

Jeffrey V Howes and
Tonya H Howes
                    Plaintiffs(s)

        vs.

Carrington Mortgage Services, LLC
Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for
Stanwich Mortgage Loan Trust, Series 2013-2
                    Defendant(s)

AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT

        The undersigned does hereby certify that the list of documents attached hereto is a true
and accurate copy of the documents confirming that Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for Stanwich    Mortgage Loan Trust, Series 2013-2 is
the owner of the loan.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS
OF THIS AFFIDAVIT ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION
AND BELIEF.

Carrington Mortgage Services, LLC as loan servicer for Christiana Trust, A Division of
Wilmington Savings Fund Society, FSB, as trustee for Stanwich    Mortgage Loan Trust, Series
2013-2

Signature: _____ 3|31|14

Name: ____Elizabeth A. Ostermann, Vice President, Default, SCRA____
            for Carrington Mortgage Services, LLC, Attorney in Fact

Title: _____

2013-37835

**List of  Exhibits Confirming that Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 is the Owner of the Loan.**

1. Deed of Trust – November 30, 2001
2. Construction Note – November 30, 2001
3. Lost Note Affidavit – February 12, 2013
4. Assignment – April 16, 2003
5. Assignment – March 16, 2005
6. Assignment – July 20, 2011
7. Assignment – October 30, 2013
8. Assignment – March 20, 2014

2013-37835

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |

_____

**PLAINTIFFS' MOTION TO RECONSIDER ORAL RULING ON MOTIONS TO DISMISS
AND OBJECTION TO OWNERSHIP AFFIDAVIT**

Plaintiffs Jeffrey V. Howes and Tonya H. Howes, by undersigned counsel, move pursuant to Rules 54 and 59 of the Federal Rules of Civil Procedures, made applicable to this adversary proceeding by Rules 7054 and 9023, respectively, of the Federal Rules of Bankruptcy Procedure, for reconsideration of the Court's oral ruling of March 4, 2014, dismissing the Complaint. In addition, Plaintiffs also hereby object to the Affidavit Certifying Ownership of Debt Instrument filed herein on April 3, 2014, as Doc. No. 26, by Carrington Mortgage Services, LLC as loan servicer for Stanwich Mortgage Loan Trust, Series 2013-2, and request an order directing the present owner of Plaintiffs' loan to establish its right to enforce it.

1.      This adversary proceeding involves Plaintiffs' mortgage on their home, the actions Defendants have taken to enforce it, and the proofs of claim regarding it filed herein.

Plaintiffs filed a nine count complaint against Defendants Wells Fargo Bank, N.A. ("Wels Fargo"), U.S. Bank, National Association ("US Bank"), Carrington Mortgage Services, LLC ("Carrington"), and Christiana Trust ("WSFS Bank"), a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (the "Stanwich Trust"), alleging fraud on the court (Count I) for trying to collect foreclosure fees from Plaintiffs by hiding the fact that a foreclosure case was prosecuted by US Bank as trustee for a trust ("Trust") that no longer owned Plaintiffs loan and ceased to exist before the foreclosure case was filed. Plaintiffs also sought a determination of Defendants' rights in the mortgage on their home (Count II), sanctions for Rule 3001 violations (Count III), damages for unlawful inspection fees (Count IV), failure to provide Truth in Lending Act transfer notices (Count V), violations of the Fair Debt Collection Practices Act (Count VI), violations of the Maryland Consumer Debt Collection Act (Count VII), violations of the Maryland Consumer Protection Act (Count VIII), and an objection to related mortgage Claim No. 4.

2.      Defendants moved to dismiss the Complaint pursuant to Bankruptcy Rules 7012(b)(6), Bankruptcy Rule 7009, and Federal Rules of Civil Procedure 12(b)(6) and 9(b), for failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and that some Counts are time barred.

3.      In an oral ruling on March 4, 2014, the Court dismissed the entire Complaint, with prejudice as to Count I (fraud on the Court), and with leave to amend Counts II through IX within 30 days after the proof of claim issue is cleared up. The ruling was based primarily on the Court's finding that the foreclosing Trust did not terminate, as Plaintiffs alleged in their Complaint, since Plaintiffs admit they have not paid off their loan.

2

I will note here that while the Debtor alleges that the particular securitization trust complained of was terminated, and that is basically the operative fact that forms the basis of much of what is alleged in the complaint after that allegation in terms of wrongdoing by the Defendants, the reason the trust seems to have "terminated" is because all of the loans, including this one, were paid in full. I mean, that is what the complaint says. But we know that that is not true by the Debtor's own admission. *** I mean, the payment in full is what it takes to terminate the trust, or at least one thing, the one cited reason in the complaint. And that didn't happen here, which really makes you wonder. Tr. 7, 13-22; 8, 2-5.
***
Buried in here is the assertion that one or more affidavits alleged that the trust had been terminated because the loans in it had been paid in full. Again, we know that is not true as to this loan. And if it is not true, then it cannot be proper for the Plaintiff to allege grievous wrongdoing on the part of the lenders in attempting to "cover up" or "hide" the termination of the trust, when he has to know that, if payment in full is the basis for termination, then termination could not have occurred. But nevertheless, that is what the complaint does.

All the allegations of misrepresentation and fraud flow from this simple allegation. But it is a circumstance that the Plaintiff cannot rely upon because he has not paid the mortgage regularly for at least seven years. And it has been in default for that long. Tr. 14 at 22 to 15 at 11.

Transcript, Oral Ruling March 4, 2014.

4.    Plaintiffs alleged Trust termination and lack of standing to foreclose as follows.

41. Plaintiffs lacked standing to file the Second Foreclosure Case since the alleged owner of the Note ceased to exist by February 21, 2012, the date the case was filed.

42. Filed in the Second Foreclosure Case on February 21, 2012, at Doc No. 5, is an Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith (hereinafter "Ownership Affidavit"), dated January 18, 2012, allegedly signed by Alisha M. Allen, Vice President of Loan Documentation for WFHM, as servicing agent, which identifies "US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" (hereinafter the "Trust"), as the "owner and holder of the loan evidenced by the Note." A true and correct copy of the Ownership Affidavit is attached hereto as EXHIBIT 1.

43. The Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012, before the Second Foreclosure Case was filed, as evidenced by the Certificateholder Distribution Summary for the Trust showing an ending certificate balance total for all Trust certificates of zero, attached as EXHIBIT 2A, the Collateral Statement showing all loans in the Trust as Paid in Full, attached as EXHIBIT 2B, and the Loan Level Data for the Mortgage reported by US Bank showing the Mortgage was paid off on January 1, 2012, attached as EXHIBIT 2C.

3

Compl. ¶¶ 41-43.

5.      The Court's ruling that the Trust did not terminate as alleged is clear error. Trust termination occurs when the Trust receives payment in full for all loans in the Trust, as set forth in paragraph 43 of the Complaint. The "payment in full" condition is not dependent on the identity of the payor, just that the Trust received payment in full from some source. Therefore, Plaintiffs' allegation that the Trust received payment in full, resulting in Trust termination, is entirely consistent with Plaintiffs being in default since April 2009 as alleged and as Debtor testified on January 27, 2014.[1]

6.      Plaintiffs' allegations regarding removal of Plaintiffs' loan from the Trust and Trust termination are substantiated, moreover, by three exhibits, all prepared by one of the Defendants and publicly available online to the mortgage backed asset securities community. The Loan Level Data sheet attached as Exhibit 2C to the Complaint shows that the Trust was paid in full for Plaintiffs' loan and the loan was removed from the Trust on January 1, 2012. Exhibit 2C is data reported by US Bank as trustee for the Trust that was obtained by Plaintiffs' forensic expert, Bernard Jay Patterson, a Certified Fraud Examiner and Forensic Accountant, from ABSNet, a subscription software. In addition, Complaint Exhibits 2A and 2B, prepared by Wells Fargo and also obtained by Mr. Patterson, show that on January 25, 2012, the Trust was paid in full for all loans in the Trust (Compl. Ex. 2B) and all the Trust certificate holders had been paid in full (Compl. Ex. 2A), whereupon the Trust terminated.

7.      Since Plaintiffs' loan was removed from the Trust, and the Trust terminated and

_____

[1] Debtor corrected his prior testimony and testified that he has been in default since April 2009, not for seven to ten years.

4

ceased to exist before the Second Foreclosure Case was filed, the substituted trustees' power to foreclose also terminated. The substituted trustees could not continue to act for a principal that no longer had any interest in Plaintiff's loan. *See Pines Point Marina v. Rehak*, 406 Md. 613, 641, 961 A.2d 574, 591 (2008) (no standing to bring suit where corporate charter had been forfeited); Anderson v. Burson,[2] 424 Md. 232, 236; 35 A.3d 452; 2011 Md. LEXIS 777 (Md. 2011) (prerequisites to foreclose); Maryland Rules 14-204 (institution of action)[3], 2-201 (real party in interest); Md. Code Ann., *Real Prop*. § 7-105.1(d-1) (affidavit certifying ownership of debt instrument and copy thereof). Accordingly, plaintiffs in the Second Foreclosure Action (Compl. ¶ 46) lacked standing to file it. Therefore, that factual predicate for the misbehavior alleged in the rest of Plaintiffs' Complaint is present, and the Court erred when it found Trust termination absent and dismissed the Complaint.

Ownership Affidavit

8.      The Court also directed the present holder of the note to provide Plaintiffs' counsel with a detailed affidavit under the penalty of perjury within 30 days confirming who owns and has a right to enforce the loan documents, identifying all relevant transactional

---

[2] "A foreclosure plaintiff commences an action to foreclose a deed of trust, which contains a power of sale provision, by filing an order to docket. *See Md. Rule 14-207(a)(1)*; *Md. Code Ann., Real Prop. § 7-105.1(d)* (LexisNexis Supp. 2011). An **[***7]** order to docket must include, among other documentation: a copy of the deed of trust, supported by an affidavit that it is a true and accurate copy; a copy of the debt instrument, supported by an affidavit certifying ownership of the debt instrument; and a deed of appointment of a substitute trustee, supported by an affidavit that it is a true and accurate copy of the deed of appointment. *Md. Rule 14-207(b)*; *Real Prop. § 7-105.1(d)(1)-(2)*." *Anderson v. Burson*, *supra*, 424 Md. 232 at 236 n6.

[3] Md. Rule 14-204(a)(1): Under power of sale. Subject to compliance with subsection (a)(3) of this Rule, any individual authorized to exercise a power of sale may institute an action to foreclose the lien

5

documents and providing them to Plaintiffs counsel at his request. Pursuant thereto, WSFS Bank filed an Affidavit Certifying Ownership of Debt Instrument herein on April 3, 2014, as Doc. No. 26, executed by Elizabeth A. Ostermann, Vice President, Default, SCRA for Carrington, Attorney in Fact, as loan servicer for WSFS Bank, as trustee for the Stanwich Trust ("Ostermann Affidavit"). In addition, Plaintiffs' counsel was provided with a copy of the documents listed in the Affidavit and attached hereto as **EXHIBIT 1** ("Affidavit Documents") and made a part hereof. Unfortunately, Defendants are still unable or unwilling to establish their right to enforce Plaintiffs' loan.

9.      The Affidavit Documents included a defective Lost Note Affidavit from Wells Fargo dated February 12, 2013 (the "LNA"), although the Exhibit A referenced therein was not produced. **EXHIBIT 1** at 23. Plaintiffs hereby request a copy of that Exhibit A. The requirements for a valid lost note affidavit are set forth in Md. Code Ann., *Real Prop.* § 7-105.1(f).

> Notwithstanding any other law, the court may not accept a lost note affidavit in lieu of a copy of the debt instrument required under subsection (e)(2)(iii) of this section, unless the affidavit:
> (1) Identifies the owner of the debt instrument and states from whom and the date on which the owner acquired ownership;
> (2) States why a copy of the debt instrument cannot be produced; and
> (3) Describes the good faith efforts made to produce a copy of the debt instrument.

*Id*. The Anderson Court summarized the rule as follows:

> The Circuit Court may not accept a lost note affidavit, in lieu of a copy of the debt instrument, unless the affidavit: "(1) [i]dentifies the owner of the debt instrument and states from whom and the date on which the owner acquired ownership; (2) [s]tates why a copy of the debt instrument cannot be produced; and (3) [d]escribes the good faith efforts made to produce a copy of the debt instrument." *Real Prop. § 7-105.1(d-1).*

*Anderson v. Burson*, *supra*, 424 Md. 232 at 236 n6.

6

10.     Here, the LNA is defective and may not be used to foreclose since it fails to satisfy the first prong of the test because it does not identify "from whom and the date on which the owner acquired ownership." The LNA also fails to satisfy the third prong of section 7-105(f) since it does not "[d]escribe the good faith efforts made to produce a copy of the debt instrument." Wells Fargo was denied stay relief due to a defective lost note affidavit and its resulting inability to enforce the note by the U.S. Bankruptcy Court for the Western District of North Carolina.

> The terms of the Note do not appear to be in dispute under § 25-3-309(b), but the parties do dispute Wells Fargo's right to enforce it. And simply put, the Affidavit prepared by Wells Fargo is insufficient to demonstrate its right to enforce the Note. Although the Affidavit indicates that the Note could not be located after a thorough and diligent search, it does not provide that Wells Fargo was in possession of the Note and entitled to enforce it when loss of possession occurred or that the loss of possession was not the result of a transfer by Wells Fargo or a lawful seizure. Therefore, the court concludes that because Wells Fargo has not complied with the lost note provisions of § 25-3-309, it has not demonstrated that it is entitled to enforce the Note and denies the Motion for Relief without prejudice.

*In re Patterson*, Case No. 12-50201 (Bankr. W.D.N.C., 2012) (attached hereto as **EXHIBIT 2**).

11.     The Affidavit Documents also included an unrecorded Corporate Assignment of Deed of Trust, dated October 31, 2013, from Wells Fargo as attorney-in-fact for U.S. Bank as trustee for the Trust, assignor, to Wells Fargo as assignee, effective October 30, 2013, purportedly signed by Susan E. Balfanz, Vice President Loan Documentation, and notarized by Jonathen Edward Johnson in Minneapolis, Minnesota (the "2013 Trust Assignment"). **EXHIBIT 1** at 29. The 2013 Trust Assignment also is defective since the Trust no longer owned Plaintiffs' note after it received payment in full for it on January 1, 2012, and the Trust ceased to hold any assets and terminated on January 25, 2012. Compl. ¶ 43. Plaintiffs hereby request a copy of the

7

agreements authorizing Wells Fargo to sign the 2013 Trust Assignment as US Bank's attorney in fact.

12.     Finally, the Affidavit Documents included an unrecorded Assignment of Deed of Trust, dated March 20, 2014, from Wells Fargo as assignor, to WSFS Bank as trustee for the Stanwich Trust, and executed by Carrington as Wells Fargo's attorney in fact by Elizabeth A. Osterman, Vice President, Default, SCRA for Carrington, attorney in fact (the "2014 Assignment"). **EXHIBIT 1** at 31. Plaintiffs have not been provided with the documents evidencing the attorney-in-fact powers exercised in the 2014 Assignment and hereby request a copy. Since Wells Fargo has not established its title to Plaintiffs' note, as a result of claiming to take title from the Trust after the Trust no longer owned Plaintiffs' note, it has not established its power to assign the corresponding deed of trust.

13.     The Maryland Court of Appeals puts the burden to prove the right to enforce the Note on Defendants, including all prior transfers, but they failed to do so in the Ostermann Affidavit and Affidavit Documents. Under § 3-201 of Maryland's Commercial Law Article, the subject Note is order paper, and since it is not made payable to Wells Fargo, there is no evidence that Wells Fargo had the right to assign it to the Stanwich Trust. The Anderson Court stated the rule:

> a reputed transferee in possession of an unindorsed mortgage note has the **burden** to establish its rights under that note. [T]the Maryland Commercial Law Article *** requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to payment under *§ 3-308(a)*). Additionally, given the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly.

Anderson v. Burson, 424 Md. at 245-246 (footnote omitted; emphasis added).

8

14.     In conclusion, the Court committed clear error in finding that the trust did not terminate because Plaintiffs have not paid off their loan, and dismissing Plaintiffs' Complaint accordingly. In addition, the Ostermann Affidavit and Documents fail to resolve the chain of ownership problems identified in the Complaint, and leave that issue no closer to certain resolution.

WHEREFORE, the premises considered, Plaintiffs respectfully ask the Court to reconsider its oral ruling dismissing the Complaint, deny Defendants' motion to dismiss instead, determine that the present owner of Plaintiffs' note has failed to establish its right to enforce it, and direct it to provide Plaintiffs' counsel with a detailed affidavit under the penalty of perjury within 15 days establishing who owns and has a right to enforce the loan documents, and identify and provide all relevant transactional documents.

Respectfully submitted,
*/s/ Robert J. Haeger, May 5, 2014*
Robert J. Haeger, Bar No. 25434
Attorney for Debtor-Plaintiffs
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

9

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on May 5, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorney for Carrington Mortgage Services,*
*LLC and Wilmington Savings Fund Society,*
*FSB*

*/s/ Robert J. Haeger, May 5, 2014*
Robert J. Haeger

10

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| _____ | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| _____ | | |

**ORDER GRANTING PLAINTIFFS' MOTION TO RECONSIDER ORAL RULING,
DENYING DEFENDANTS' MOTION TO DISMISS,
AND DIRECTING DEFENDANTS TO ESTABLISH NOTE OWNERSHIP**

Upon consideration of Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit, the Motion to Dismiss [Doc. 8] filed by Defendants Wells Fargo Bank, N.A. and U.S. Bank, National Association, the Amended Motion to Dismiss Complaint filed by Carrington Mortgage Services, LLC and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 [Doc. 16], Plaintiffs' Response thereto, good cause having been shown, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Plaintiffs' Motion for Reconsideration is GRANTED; and it is further

ORDERED, that Defendants' Motions to Dismiss are DENIED; and it is further

ORDERED, that since the present owner of Plaintiffs' note has failed to establish its right to enforce it, it shall provide Plaintiffs' counsel with a detailed affidavit under the penalty of perjury within 15 days establishing who owns and has a right to enforce Plaintiffs' loan documents, and identify and provide Plaintiffs with all relevant transactional documents.

**End of Order**

LIBER 5 9 3 9 FOLIO 0 6 1 0

EXHIBIT 1

000383

Return To:
THE COLUMBIA BANK
9161 BALTIMORE NATIONAL
PIKE, ELLICOTT CITY, MD
21042

Prepared By:
BARB MCCLANAHAN

THIS IS TO CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL DOCUMENT
WELLS FARGO BANK, N.A.

MELVIN L. SCHNEIDER
7701 GREENBELT RD. #202
GREENBELT, MD 20770

[Space Above This Line For Recording Data]

PURCHASE MONEY as to $215,000.00

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     November 30, 2001     , together with all Riders to this document.
(B) "Borrower" is JEFFREY V HOWES and TONYA H HOWES

5.00
15.00
2002.50

Borrower is the trustor under this Security Instrument.
(C) "Lender" is THE COLUMBIA BANK

Lender is a corporation
organized and existing under the laws of          THE STATE OF MARYLAND

Redacted

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021 1/01          0

-6(MD) (0005)
Page 1 of 15          MW 08/99.03     Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

LIBER 5 9 3 9 FOLIO 0 6 1 1

EXHIBIT 1

Lender's address is 5585 STERRETT PLACE, COLUMBIA, MD 21044

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is MICHAEL T. GALEONE AND MATTHEW T. BECKER.

(E) "Note" means the promissory note signed by Borrower and dated    November 30, 2001
The Note states that Borrower owes Lender Six Hundred Ninety Six Thousand One
Hundred Thirty and                                                    Dollars
(U.S. $696,130.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    September 1, 2002
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Redacted

-6(MD) (0005)         Page 2 of 15         Initials: ___    Form 3021  1/01

0

EXHIBIT 1

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the Land Records of HOWARD County :

[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU ~~45~~ 47 and PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

Parcel ID Number:   which currently has the address of
7000 MEANDERING STREAM WAY   [Street]
FULTON   [City], Maryland   20759   [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Redacted

-6(MD) (0006)   Page 3 of 15   Initials: ___   Form 3021   1/01

EXHIBIT 1

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Redacted

-6(MD) (0005)                         Page 4 of 15                    Initials: _____          Form 3021   1/01

JEF 85939 FOLIO 0614

EXHIBIT 1

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Redacted

-6(MD) (0005)                 Page 5 of 15          Initials: _____          Form 3021   1/01

LIBER 5 9 3 9 FOLIO 0 6 1 5

EXHIBIT 1

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Redacted

0

-6(MD) (0005)                    Page 6 of 15          Initials: _____          Form 3021  1/01

LIBER 5939 FOLIO 0616

**EXHIBIT 1**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. 

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Redacted

-6(MD) (0005)                    Page 7 of 15          Initials: _____        Form 3021   1/01

JOER 5939 FOLIO 0617

EXHIBIT 1

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Redacted

0

-6(MD) (0005)          Page 8 of 16          initials: _JHA_          Form 3021   1/01

LIBER 5 9 3 9 FOLIO 0 6 1 8

EXHIBIT 1

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Redacted

0

-6(MD) (0005)                    Page 9 of 15              Initials: _____          Form 3021   1/01

LIBER 5 9 3 9 FOLIO 0 6 1 9

EXHIBIT 1

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Redacted

0

-6(MD) (0005)

Page 10 of 15

Initials: _JH M_

Form 3021 1/01

BCR5939 FOL00620

**EXHIBIT 1**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Redacted

-6(MD) (0005)     Page 11 of 16     Initials: _JH M_     Form 3021  1/01

BK 5939 FOLIO 0621

**EXHIBIT 1**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

Redacted

-6(MD) (0005)                     Page 12 of 15                     Initials ___            Form 3021  1/01

EXHIBIT 1

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  5.0000       % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

Redacted

-6(MD) (0005)                     Page 13 of 15                    Initials: _____      Form 3021  1/01

LIBER 5939 FOLIO 0623

EXHIBIT 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
JEFFREY V HOWES                    -Borrower

_____ (Seal)
TONYA H HOWES                      -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                  -Borrower                              -Borrower

Redacted

0

-6(MD) (0005)            Page 14 of 15            Form 3021   1/01

LIBER 5939 FOLIO 0624

EXHIBIT 1

STATE OF MARYLAND,   Prince George's ,          County ss:
   I Hereby Certify, That on this   30   day of   November, 2001 before me, the subscriber, a
Notary Public of the State of Maryland, in and for the   County of Montgomery
personally appeared JEFFREY V HOWES and TONYA H HOWES

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
   AS WITNESS: my hand and notarial seal.
My Commission Expires:                              Notary Public
December 18, 2005
   4/1/05

STATE OF Maryland          , Prince George's          County ss:
   I Hereby Certify, That on this 30   day of   November, 2001   ,before me, the subscriber,
a Notary Public of the State of Maryland and for the   County of Montgomery
personally appeared   Andrea Henske

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
funds in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; agent made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.
   AS WITNESS: my hand and notarial seal.
My Commission Expires:                         Notary Public
December 18, 2005
   4/1/05

This is to certify that the within instrument was prepared By/

THE COLUMBIA BANK

BARB MCCLANAHAN

Redacted

UMBP-BLMDT (0005)          Page 15 of 15          Form 3021  1/01          0

LIBER 5 9 3 9 FOLIO 0 6 2 5

EXHIBIT 1

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      30th      day of
November, 2001         , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
THE COLUMBIA BANK

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as

PINDELL WOODS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

    **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

0

Redacted

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3150 1/01
Page 1 of 3      Initials: _AA_
-7R (0008)    MW 08/00      VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 1

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Redacted

-7R (0008)　　　　　　Page 2 of 3　　　　Initials: _P M_　　　Form 3150 1/01

LIBER 5 9 3 9 FOLIO 0 6 2 7

EXHIBIT 1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
JEFFREY V HOWES         -Borrower        TONYA A HOWES          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

Redacted                                          0

-7R (0008)                    Page 3 of 3                    Form 3150 1/01

Apx. 267

Redacted

# CONSTRUCTION NOTE

Redacted **BIT 1**

November 30, 2001

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for this loan, I, the undersigned borrower or borrowers who shall be referred to in the singular, promise to pay U.S. $696,130.00 ("principal"), plus interest, to the order of the Lender. The Lender is **The Columbia Bank.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest shall accrue daily on that part of principal which has been advanced and has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid. Beginning on the date of this Note, I will pay interest at 6.0000 % per annum. This rate is called the "Initial Interest Rate." The interest rate I will pay will change as and when the Index changes. The Index is the per annum rate published on the first publication date of each calendar month as the Prime Rate in The Wall Street Journal in its compilation of key United States and foreign annual interest rates. If more than one Prime Rate is reported, the highest rate reported shall be the Prime Rate. The interest rate shall never exceed 11.0000 % per annum and never shall be less than 6.0000 % per annum. If the Index is discontinued or substantially altered, the Note Holder may, at its option, choose another index made available to me and verifiable by me and beyond the Note Holder's control. If this happens, the substitute index will, for the purposes of this Note, be considered to be the "Index," although it may be necessary to adjust the number of percentage points above the Index the interest rate will be in order to make the interest rate under the new Index comparable to the interest rate under the prior index. The Note Holder will calculate my interest rate by adding 1.0000 % to the Index.

## 3. PAYMENTS

I will pay interest by making payments every month. I will make my monthly interest payments on the 1st day of each month beginning on January 1, 2002 . On September 1, 2002 I will pay all principal, unpaid interest and any other amounts I owe under this Note in full. This date is called the "Maturity Date." I will make my monthly payments at 5585 STERRETT PLACE, COLUMBIA, MD 21044
or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays.

## 5. LOAN CHARGES

To the extent the charges described in this paragraph apply and actually are incurred by the Note Holder, I may pay the following charges in connection with this loan: loan fees, finder's fees and points; attorney's fees for services rendered in connection with the preparation, closing or disbursement of this loan; any expense, tax or charge paid to governmental agencies; examination of title, appraisal or other costs necessary or appropriate to the security of the loan; premiums for optional credit life, credit disability, involuntary unemployment benefit and similar insurance coverage; premiums for property insurance, title insurance and credit loss insurance purchased from an insurer chosen by me; and any other charges permitted by applicable law.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED AND DEFAULT

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the overdue part of my payment of interest. I will pay this late charge only once on each late payment.

THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT WELLS FARGO BANK, N.A.

EXHIBIT 1

### (B) Default

If (1) I do not pay the full amount of each monthly payment on its due date, or (2) any bankruptcy, insolvency or receivership proceeding is commenced by or against me and such petition is not dismissed within ten (10) days, or (3) I die, or (4) a default occurs under the Residential Construction Loan Agreement with the Lender I am signing today ("Loan Agreement"), or (5) I fail to keep any of the promises I have made in or an event permitting acceleration occurs under the Deed of Trust which secures this Note ("Deed of Trust"), or (6) I made any material misrepresentation or omitted any material information in my application and other material supplied to the Lender in connection with this loan, I will be in default. If I am in default, the Note Holder may require me to pay the full amount of principal remaining unpaid, plus all interest and other charges due on this Note. The Note Holder also may exercise all of its rights and remedies under this Note, the Deed of Trust, the Loan Agreement and applicable law.

### (C) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses, to the extent not prohibited by applicable law, in enforcing this Note. These expenses include, for example, court costs and reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method of giving notice, any notice that must be given to me under this Note will given by delivering it or by mailing it by first class mail addressed to me at the Property Address above or at a different address if I give the Note Holder a notice in writing of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. Any person who takes over the obligations of a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. LAW THAT APPLIES

Maryland law and Federal law, as applicable, govern this Note. The Lender elects to make this loan under Subtitle 10 of Title 12 of the Maryland Commercial Law Article. I may pay fees and charges discussed in the Deed of Trust and in disclosures I am given, all of which are evidence of this loan.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid.

_____ 11-20-2001 (SEAL)     _____ (SEAL)
Borrower                                Borrower
JEFFREY V HOWES                         TONYA H HOWES
(Sign Original Only) Wachovia Bank, National Association, as Trustee
under the pooling and servicing agreement dated
as of May 29, 2003

WITHOUT RECOURSE
PAY TO THE ORDER OF

Pay To The Order Of, Without Recourse
Wells Fargo Home Mortgage, Inc.
The Columbia Bank

WELLS FARGO HOME MORTGAGE, INC.

By: _____              BY: _____
Michael Torcish Vice President      Beverly Crouch, Assistant Secretary

EXHIBIT 1

STATE OF MARYLAND
COUNTY OF __Prince George's__

    I hereby certify, that on this __16__ of __April__ , , 2003, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of_____, personally appeared __Jeffrey V. Howes, individually and as attorney in fact for Tonya H. Howes__ known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS: My hand and notarial seal

My Commission Expires: ~~10/17/08~~ 04/01/05

Melvin L. Schneider

Apx. 270

## ALLONGE

EXHIBIT 1

This Allonge made this 21 day of November, 2009 and is attached to and made a part of that certain Promissory Note:

| | |
|---|---|
| Dated: | November 30, 2001 |
| Executed by: | Jeffrey V. Howes and Tonya H. Howes |
| Original Amount: | $696,130.00 |

Present Holder: Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

It is to be read together with, and is hereby incorporated by reference in, the attached instrument and constitutes an integral part thereof.

For good and valuable consideration, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4 and as a result of said transfer, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 has no further interest in said Note. This Allonge shall be annexed to the original Note (or a copy of the Note with a Lost Note Affidavit if the original cannot be located) referenced above for purposes of transferring same.

Pay to the Order of

US Bank National Association , as Trustee for

WFASC 2003-4

(Without recourse, representation, or

warranty express or implied)

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

By: _____

Officer: Karan Abernethy

Title: Vice President

# LOST NOTE AFFIDAVIT AND INDEMNIFICATION AGREEMENT

EXHIBIT 1
Loan: Redacted

STATE OF **MINNESOTA**
COUNTY OF **HENNEPIN**

**Michael L. Hambleton**, (the "Affiant") being first duly sworn upon oath deposes and states:

That he is the Vice President of Loan Documentation for Wells Fargo Bank, N.A. ("Wells Fargo").

That he is authorized by Wells Fargo to execute this Lost Note Affidavit and Indemnification Agreement in favor of **Stanwich Mortgage Acquisition Company II LLC** ("Purchaser").  Notwithstanding anything contained herein, he shall have no personal liability pursuant to this Lost Note Affidavit and Indemnification Agreement.

That the Mortgage Note, executed by the **JEFFREY V HOWES AND TONYA H HOWES** in the original principal sum of **$650,000.00** payable to the order of **THE COLUMBIA BANK**, a copy of which is attached hereto as Exhibit A (the "Note"), was lost, is missing and/or destroyed and neither the Affiant nor, to the best of Affiant's knowledge, any of the directors, officers, or employees of Wells Fargo have any knowledge of the location or whereabouts of said Note and, to the best of Affiant's knowledge, said Note has not been paid, satisfied, transferred, assigned, pledged, or hypothecated in any way.

NOW, THEREFORE, for and in consideration of Purchaser and its successors and assigns, accepting a certified copy of the Note in lieu of the original Note, Wells Fargo does hereby agree to defend, indemnify and hold harmless Purchaser, its respective transferees, and their respective assigns, officers, directors, employees, agents, attorneys and representatives (collectively, the "Indemnified") from and against any and all loss or damage together with all reasonable costs, charges and expenses (whether or not a lawsuit is filed) (collectively, the "Loss") incurred by reason of any claim, demand, suit, cause of action or proceeding by a third party arising out of (i) the inability of the Indemnified to enforce the Note according to its terms, (ii) the inability of the Indemnified to recover any related insurance proceeds, or (iii) the inability of the Indemnified to foreclose on the collateral securing the Note, in each case due to the unavailability of the original Note.  Wells Fargo shall pay any such Loss upon demand, provided that Wells Fargo is notified of any such Loss in writing, within thirty (30) calendar days after the Indemnified becomes aware of same at the following address:  Wells Fargo Bank, N.A., 2701 Wells Fargo Way, MAC X9901-03A, Minneapolis, MN 55467; Attention: Mike Hambleton; with copy to:  Wells Fargo Bank, N.A., 800 Walnut Street, MAC N0001-09A, Des Moines, IA  50309; Attention:  General Counsel (Capital Markets); provided further, that Wells Fargo will not be liable to the Indemnified for any additional costs, expenses, damages, charges and losses associated with such Loss that are attributable to the diminished ability of the Indemnified and/or Wells Fargo to enforce or defend any rights that the Indemnified may have under the related original Note, if the Indemnified does not notify Wells Fargo of any such Loss within thirty (30) calendar days; and further provided that Wells Fargo is given full opportunity to direct or assist, at Wells Fargo's option, the defense or settlement of any such Loss.

Wells Fargo does hereby further agree that should the original Note ever be found by it, it will promptly notify Purchaser and upon receipt by Wells Fargo of the original Note, will endorse to Purchaser or its designee without recourse such original Note and promptly forward said original Note to Purchaser or its designee.  Upon receipt of the original Note by Purchaser, this Lost Note Affidavit and Indemnification Agreement shall become null and void as to any loss accruing subsequent to Purchaser's receipt of such original Note; provided, however, Wells Fargo shall remain liable as to any Loss accruing on or prior to Purchaser's receipt of such original Note.

Executed this day, February 12, 2013.

WELLS FARGO BANK, N.A.

By: _Michael L. Hambleton_

Name:   Michael L. Hambleton
Its:   Vice President of Loan Documentation

Subscribed and sworn to before me this day, February 12, 2013.

_____
Notary Public

VALERIE A. DE SOUZA
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2017
Commission # 31019711

LIBER 07153 FOLIO 099

HC 0296    EXHIBIT 1

PLEASE RETURN TO:
THE COLUMBIA BANK
5585 STERRETT PLACE, STE. 100
COLUMBIA, MD 21044

## ASSIGNMENT OF SECURITY INSTRUMENT

Loan #: Redacted

KNOW ALL MEN BY THESE PRESENTS THAT THE COLUMBIA BANK organized and existing under the laws of THE STATE OF MARYLAND party of the first part, in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable consideration in lawful money of the United States to it in hand paid by Wells Fargo Home Mortgage. Inc. a California Corp.

3601 MINNESOTA DR MACX4701-022, BLOOMINGTON. MN 55435

party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part that certain Security Instrument executed by JEFFREY V HOWES and TONYA H HOWES

dated 11/30/01 and to be filed for record in the Clerk's office of the Circuit Court of the County of HOWARD , State of Maryland on the following described property:

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 AND PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

together with the Note or obligation described in said Security Instrument and the money due and to become due thereon, with interest accrued and owing thereon.

TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns forever, the said party of the first part has caused these presents to be signed in its name by its officer, and its corporate seal to be affixed this 16th day of April 2003 .

WITNESSES:

THE COLUMBIA BANK

By: MICHAEL T. GALEONE
Its: EXECUTIVE VICE PRESIDENT
(SEAL)

State of MARYLAND )
) SS:
County of HOWARD )

I, an Officer duly authorized to take acknowledgements of deeds according to the laws of the State of MARYLAND , duly qualified and acting, hereby certify that MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT personally known to me, this day acknowledged before me that said person executed the foregoing Assignment of Security Instrument as such officer of said organization and that said person affixed thereto the Official Seal of the said organization and I further certify that I know the said person making said acknowledgement to be the individual described in and who executed said Assignment of Security Instrument.

IN WITNESS WHEREOF, I hereunto set my hand and Official Seal in said county and state this 16th day of April 2003 .

(SEAL)

Notary Public

My commission expires: 9-25-04

This instrument was prepared by: BARB MCCLANAHAN

Apx. 273

**EXHIBIT 1**

STATE OF MARYLAND
COUNTY OF ___HOWARD___

    I hereby certify, that on this ___16TH___ of ___APRIL___, 2003, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of ___BALTIMORE___ personally appeared ___MICHAEL T. GALEONE, EXECUTIVE VICE PRESIDENT___ known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS: My hand and notarial seal

My Commission Expires: 9-25-04

                                Notary Public



```
IMP FD SURC $        5.00
RECORDING FEE       20.00
TOTAL               25.00
Rcpt H002  Rcpt # 23491
HOR    JHR    Blk $ 3102
May 09, 2003      10:37 am
```

HO CIRCUIT COURT (Land Records) [MSA CE 53-7137] MDR 7153, p. 0100. Printed 10/12/2013. Online 01/13/2004.

Apx. 274

IBEN 9083 FOLIO 417

*37*

EXHIBIT 1

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Wells Fargo Bank, N.A.
3601 MINNESOTA DRIVE, STE 200
BLOOMINGTON, MN 55435
Attn: Redacted
Loan #: Redacted
Prepared By: VIET TRAN

MIN #: Redacted
MERS Phone: Redacted

Space Above this Line for County Recorder

## Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:
First Union National Bank, As Trustee
4527 Metropolitan Court Suite C, Frederick, MD 21704

all beneficial interest under that certain Deed of Trust dated:
executed by: JEFFREY V HOWES and TONYA H HOWES, Trustor

Beneficiary: The Columbia Bank

and recorded as Instrument No. on May 09, 2003 in Book: 07153
Page: 094 , of Official Records in the County Recorders office of
MD , describing land therein as: Howard County
LEGAL DESCRIPTION AS SHOWN AND/OR ATTACHED TO THE DEED OF TRUST REFERRED TO HEREIN.
Pin or Tax ID #:                    LoanAmount:    $650,000.00
Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759
TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

INP FD SURE $    20.00
RECORDING FEE    20.00
TOTAL            20.00
Rent CH05  Rcpt # 27866
MDR   PJR   Blk # 14
Apr 01, 2005   07:02 am

Wells Fargo Bank, N.A., successor by merger
to Wells Fargo Home Mortgage, Inc.

Dated: March 16, 2005

State of Minnesota ) ss.
County of Hennepin

GEORGIANA RICE
Vice President Loan Documentation, Wells Fargo Bank,
N.A., successor by merger to Wells Fargo Home
Mortgage, Inc.

On    March 16, 2005                                    before me
personally appeared GEORGIANA RICE, Vice President Loan Documentation  of Wells Fargo Bank, N.A., successor by merger to
Wells Fargo Home Mortgage, Inc. known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies). entity upon behalf of which the person(s) acted,
executed the instrument.  WITNESS my hand and official seal.

_____ (Seal)

VIET TRAN

| FOR NOTARY SEAL OR STAMP |
| --- |
| VIET TRAN |
| Notary Public |
| Minnesota |

This is to certify that the within instrument has been prepared by a party to the instrument.

VIET TRAN

Apx. 275

13

EXHIBIT 1

(Space above this line for recorder use only)

ASSIGNMENT OF DEED OF TRUST

For value received, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, herein "Assignor", whose address is 301 SOUTH TRYON STREET, WACHOVIA PLAZA CHARLOTTE, NC, the undersigned hereby grants, assigns, and transfers to:

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4
4801 Frederica Street, Owensboro, KY 42301

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain Deed of Trust, herein "Security Instrument" executed by Jeffrey V Howes and Tonya H Howes, dated November 30, 2001, in the amount of $696,130.00 and given to The Columbia Bank and recorded on January 22, 2002 as Document or Instrument Number 000383 and/or in Book 5939, Page 0610 in the Recorder's office of the County of Howard, Maryland, describing land therein as:

Property Address:       7000 Meandering Stream Way, Fulton, MD 20759
Property Tax ID or PIN: n/a
Legal Description:      See Attached

Signed this _July 20, 2011_ .

Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee

_Bao Thao_
VICE PRESIDENT LOAN DOCUMENTATION

MARYLAND ALL PURPOSE NOTARY ACKNOWLEDGEMENT

STATE OF MINNESOTA        }
COUNTY OF DAKOTA          }

On this 07/20/2011 before me, Steven T Schmidt , personally appeared: Bao Thao , VICE PRESIDENT LOAN DOCUMENTATION, Wells Fargo Bank, N.A., s/b/m Wachovia Bank, N.A., f/k/a First Union National Bank, As Trustee, ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary _Steven T Schmidt_

Document drafted and prepared by; when recorded, return to:

Wells Fargo Home Mortgage
Ashley Dauwalter, x9999-018
PO Box 1629
Minneapolis, MN  55440-9790

This is to certify that the within instrument has been prepared by a party to the instrument.

Name:Ashley Dauwalter

STEVEN T SCHMIDT
Notary Public
Minnesota
My Commission Expires Jan. 31, 2014

IMP FD SURE $        40.00
RECORDING FEE        20.00
TOTAL                60.00
Rcpt# H082   Rcpt # 68947
HDR    TLR    Blk # 352
Jul 26, 2011      08:07 am

Page 1 of 2

Apx. 276

Legal Description

**EXHIBIT 1**

(Type of Recording Jurisdiction)

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 45 and 47 and
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

HO CIRCUIT COURT (Land Records) [MSA CE 53-13342] MDR 13351, p. 0170. Printed 10/12/2013. Online 07/28/2011.

Apx. 277

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

FINAL DOCUMENTS
WELLS FARGO BANK, N.A.
MAC X4502-04T
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

EXHIBIT 1

|| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| ||| |||

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Howard, Maryland
"HOWES"

# **RECORD 1ST**

Date of Assignment: October 30th, 2013
Assignor: WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL
ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-4 at 60 LIVINGSTON AVE, ST. PAUL,
MN 55107
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: JEFFREY V HOWES AND TONYA H HOWES To: THE COLUMBIA BANK
Date of Deed of Trust: 11/30/2001 Recorded: 01/22/2002 in Book/Reel/Liber: 5939 Page/Folio: 0610 as
Instrument No.: 000383 in the County of Howard, State of Maryland.

Property Address: 7000 MEANDERING STREAM WAY, FULTON, MD 20759

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Deed of Trust having an original principal sum of $696,130.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor
hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Deed of
Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever,
subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

WELLS FARGO BANK, N.A. AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS
TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2003-4
On 10/31/13

By _____
Susan E. Balfanz
Vice President Loan Documentation

*VHVFVHMWFEV*10/30/2013 02:59:43 PM* WFEMO2WFBMA0000000000000000861555* MOHOWAR* MDSTATE_TRUST_ASSIGN_ASSN **RS2WFEM*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF __Minnesota__                                          **EXHIBIT 1**
COUNTY OF __Hennepin__

On __OCT 31 2013__, before me, __Jonathan Edward Johnson__, a Notary Public in
and for __Hennepin__ in the State of __Minnesota__,
personally appeared __Susan E. Balfanz__, Vice President Loan Documentation,
personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

                                         JONATHAN EDWARD JOHNSON
                                         NOTARY PUBLIC - MINNESOTA
                                         MY COMMISSION EXPIRES 01/31/15

__Jonathan Edward Johnson__
Notary Expires:  /  /
          /31/L_0_15                      (This area for notarial seal)

**PREPARED BY: WELLS FARGO BANK, N.A.**

"VHVFVHMWFEM"10/30/2013 02:59:43 PM" WFEV02WFEMA00000000000000000091355" MOHOWAR" MOSTATE_TRUST_ASSIGN_ASSN "PS2WFEM"

EXHIBIT 1

MARYLAND

## ASSIGNMENT OF DEED OF TRUST

ORIGINAL MORTGAGE AMOUNT - $696,130.00

FOR VALUE RECEIVED, the undersigned **Wells Fargo Bank, N.A.** (Assignor), hereby, grants, assigns and transfers unto Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust, Series 2013-2, all beneficial interest under that certain Deed of Trust dated November 30, 2001 executed by Tonya H. Howes and Jeffrey V. Howes, Borrowers, to Michael T. Galeone and Matthew T. Becker, Trustees, and The Columbia Bank as Beneficiary, recorded on January 22, 2002 in Liber 5939, Folio 0610 of the Official Records of the Clerk of the Circuit Court for HOWARD COUNTY, State of MARYLAND, describing land therein.

**PROPERTY ADDRESS:** 7000 Meandering Stream, Fulton, Maryland 20759

IN WITNESS WHEREOF, Assignor, Wells Fargo Bank, N.A., has caused this Assignment to be signed in its corporate name and its corporate seal to be hereunto affixed and attested, this 20 day of March , 2014.

IN THE PRESENCE OF:

MARY ROMO
COMM. #2026317
Notary Public - California
Orange County
My Comm. Expires May 26, 2017

Wells Fargo Bank, N.A. by Carrington Mortgage Services, LLC, Attorney in Fact
BY:
Title:
Elizabeth A. Ostermann, Vice President, Default, SCRA
for Carrington Mortgage Services, LLC, Attorney in Fact

STATE OF ___CALIFORNIA___
COUNTY OF ___ORANGE___

On the 20 day of March , 2014, before me, a Notary Public in and for said State personally appeared Elizabeth A. Ostermann , who proved to me on the basis of satisfactory evidence to be the person(s) who name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Notary Public
My Commission Expires:

Tonya H & Jeffrey V Howes
2013-37835
Page 1
(kmg 3-20-14)

EXHIBIT 1

LEGAL DESCRIPTION:

(Type of encumbering instrument)          (Name of recording jurisdiction)

LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS, LOTS 1 THRU 46 AND 47 and
PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF
HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

**Please Record and Return to:**
**McCabe, Weisberg & Conway, LLC**
**312 Marshall Avenue, Suite 800**
**Laurel, MD 20707**
**(301) 490-3361**

Tonya H. & Jeffrey V. Howes
2013-37835
Page 2
(kmg 3-20-14)

## EXHIBIT 2

**In re: JOEL HAMPTON PATTERSON, III KAREN YVETTE PATTERSON, Debtors.**
**Case No. 12-50201**
**UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF NORTH CAROLINA**
**WILKESBORO DIVISION**
**Dated: November 26, 2012**

_____
Laura T. Beyer
United States Bankruptcy Judge

Chapter 7

**ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY WITHOUT PREJUDICE**

This matter came before the court for hearing on the Motion for Relief from the Automatic Stay of Section 362 or in the Alternative Adequate Protection of Wells Fargo Bank, NA ("Wells Fargo"). The court conducted a hearing on this matter on October 9, 2012, in Charlotte, North Carolina.

**Findings of Fact**

1. On February 24, 2012, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

2. It is undisputed that the Debtors executed a promissory note in favor of Wachovia Mortgage Corporation in the original principal amount of $340,000 dated June 20, 2005 (the

Page 2

"Note"). The Note is secured by a deed of trust encumbering the Debtors' principal residence at 643 Isle of Pines Rd, Mooresville, NC 28117 (the "Deed of Trust").

3. Wells Fargo attached a copy of the Note to the Motion for Relief along with an Affidavit of Lost Note or Modification Agreement executed by Shane Stutzman, Vice President of Loan Documentation of Wells Fargo Bank, N.A. (the "Affidavit"). In short, the Affidavit provides that Wells Fargo is the payee and "Lender" under the Note; Wells Fargo is the lawful owner of the Note and it has not been cancelled, altered, assigned, or hypothecated; the Note was

not located after a thorough and diligent search; and attached to the Affidavit was a true and accurate copy of the fully executed Note.

4. The Note and Deed of Trust have been transferred and assigned to Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee of Morgan Stanley Mortgage Loan Trust 2006-5AR ("Bank of America"). The movant, Wells Fargo Bank, NA, is the servicer for Bank of America.

5. On their Schedule D, the Debtors listed Wells Fargo Home Mortgag[e] as having a first lien deed of trust on their principal residence in the amount of $321,296.68 and Wells Fargo Bank, N.A. as having a second lien deed of trust on their principal residence in the amount of $234,931.41.

Page 3

6. Wells Fargo filed the Motion for Relief on August 7, 2012, alleging that the Debtors had fallen behind on their post-petition mortgage payments. The Motion for Relief asserted that as of the date of its filing, the Debtors were fourteen payments or $26,658.57 in default on their post-petition mortgage payments, exclusive of attorneys fees and costs. Because of this default, Wells Fargo moved for relief from the automatic stay under 11 U.S.C. § 362(d)(1) for cause, including lack of adequate protection.

7. The Debtors filed a response to the Motion for Relief asserting that Wells Fargo is only a "nominal" party to this proceeding and thus has no legal standing to move this court for relief from the automatic stay.

8. On November 5, 2012, the court entered its Order granting the Debtors a discharge under 11 U.S.C. § 727.



- 1 -

EXHIBIT 2

## Conclusions of Law

9. Pursuant to 11 U.S.C. § 362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . ." The Bankruptcy Code does not define the term "party in interest," but, in the context of a motion for relief from stay, courts have found that "[t]he real party in interest with respect to . . . enforcement of the rights of a mortgagee in a bankruptcy is the party entitled to enforce the note and its accompanying mortgage."

Page 4

See In re Robinson, No. 07-02146-5-JRL, 2011 WL 5854905, at *2 (Bankr. E.D.N.C. Nov. 22, 2011) (citations omitted). In order for Wells Fargo to prove that it is the holder of the Note entitled to enforce it and the related Deed of Trust, it must provide evidence demonstrating that it is in possession of the original note or comply with the relevant lost note provisions. See In re Tucker, 441 B.R. 638, 646 (Bankr. W.D. Mo. 2010). Finally, as the movant, Wells Fargo has the burden of establishing that it is the "real party in interest" under Federal Rule of Civil Procedure 17(a), which is made applicable to this proceeding by Rules 7017 and 9014(c) of the Federal Rules of Bankruptcy Procedure. See In re Neals, 459 B.R. 612, 617 (Bankr. D.S.C. 2011).

10. Wells Fargo recognizes that it is not in possession of the Note but argues that it is entitled to enforce it under the provisions of North Carolina General Statutes §§ 25-3-301 and 25-3-309. Pursuant to North Carolina law, a person not in possession of a negotiable instrument has the right to enforce the instrument if they meet the requirements of § 25-3-309. See § 25-3-301.

11. N.C. GEN. STAT. § 25-3-309, in turn, provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the

instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by

Page 5

> the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
> (b) A person seeking enforcement of an instrument under subsection (a) of this section must prove the terms of the instrument and the person's right to enforce the instrument.

12. The terms of the Note do not appear to be in dispute under § 25-3-309(b), but the parties do dispute Wells Fargo's right to enforce it. And simply put, the Affidavit prepared by Wells Fargo is insufficient to demonstrate its right to enforce the Note. Although the Affidavit indicates that the Note could not be located after a thorough and diligent search, it does not provide that Wells Fargo was in possession of the Note and entitled to enforce it when loss of possession occurred or that the loss of possession was not the result of a transfer by Wells Fargo or a lawful seizure. Therefore, the court concludes that because Wells Fargo has not complied with the lost note provisions of § 25-3-309, it has not demonstrated that it is entitled to enforce the Note and denies the Motion for Relief without prejudice.

13. Wells Fargo also argues that the Debtors are precluded from challenging its standing to file a motion for relief from stay under the principle of *res judicata* because they listed



EXHIBIT 2

Page 6

Wells Fargo as having an undisputed secured claim on their Schedule D. Wells Fargo cites In re Neals, 459 B.R. 612, 617 (D.S.C. October 6, 2011), in support of that proposition.

14. In Neals, the Bankruptcy Court in South Carolina observed its prior holding that "a confirmed [C]hapter 13 plan, which represents a new contractual agreement between debtors and their creditors, is *res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay." However, the Neals case is factually distinguishable from this one because it involved a Chapter 13 case rather than a Chapter 7. Here, there is no confirmed plan to serve as a new contractual agreement between the Debtors and Wells Fargo. Moreover, the Debtors listed Wells Fargo Home Mortgage as having a first lien deed of trust on their principal residence rather than Wells Fargo Bank, N.A., the movant in this case. According to its own motion, Wells Fargo filed the Motion for Relief in its capacity as servicer for Bank of America rather than as the successor to Wachovia Mortgage Corporation.

15. In conclusion, Wells Fargo has not complied with the lost note provisions of § 25-3-309 and, therefore, has not met its burden of demonstrating that it is entitled to enforce the Note. Accordingly, the court denies the Motion for Relief without prejudice. As a practical matter, the court notes that the Debtors received their discharge on November 5, 2012, and

Page 7

this case will be closed upon the entry of this Order and the filing of the Trustee's Final Report. Therefore, the stay will not apply and Wells Fargo will be free to pursue its state court remedies against the Debtors' property. The court does not intend for this Order to prevent a state court from revisiting these issues in any subsequent proceedings.

16. Thus, for the reasons stated above it is hereby **ORDERED** that the Motion for Relief from Stay is **DENIED** without prejudice.

**This Order has been signed electronically. The judge's signature and the court's seal appear at the top of the Order.**

**United States Bankruptcy Court**



Apx. 284



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Jeffrey V. Howes | * | Case No. 12-30614-RAG |
| | | Chapter 13 |
| | * | |
| Debtor | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| Jeffrey V. Howes | * | |
| Tonya H. Howes | | |
| | * | |
| Plaintiffs | | |
| | * | |
| v. | | Adversary No. 13-00510 |
| | * | |
| Wells Fargo Bank, N.A. | | |
| U.S. Bank, N.A. | * | |
| Carrington Mortgage Services, LLC | | |
| Christiana Trust, a Division of | * | |
| Wilmington Savings Fund Society, | | |
| FSB | * | |
| Defendants | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER DISMISSING COMPLAINT FOR
## <u>FAILURE TO STATE A CLAIM</u>

This Adversary Proceeding was commenced by the filing of a Complaint to Determine

Secured Status, Sanctions, and Other Relief (Complaint) on September 3, 2013.  Underlying the

1

Apx. 285

Complaint is (1) the theme that as a result of the assignments of the loan documents (including to a securitized trust), the Plaintiffs "do not know" which one of the Defendants is entitled to receive their residential mortgage payments and (2) their somewhat contradictory yet corollary efforts to establish that at some point, the trust terminated and/or the assignments were somehow botched, so that none of the Defendants are legitimately entitled to enforce the obligation and/or may owe the Plaintiffs damages for "fraud" and technical violations of consumer protection laws.  None of the alleged claims are grounded in substantive rights created by the Bankruptcy Code.  Defendants Carrington Mortgage Services, FSB (Carrington) and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 (Christiana) filed a motion to dismiss (Dkt. No. 5) on October 9, 2013.  Defendants Wells Fargo Bank, N.A. and U.S. Bank National Association filed a motion to dismiss (Dkt. No. 8) on October 17, 2013.  A hearing was held on January 6, 2014 to debate the issues.  The parties filed supplemental papers before and after that hearing.  The January 6th hearing was continued until March 4, 2014 for the Court's oral ruling.  At that time, the Court stated that Count I would be dismissed with prejudice because the Plaintiffs failed to state,  and could not assert, a legitimate claim for fraud and that the remaining claims would be dismissed without prejudice pending (a) Carrington's and Christiana's provision of proof of ownership of the defaulted note and mortgage secured by the Plaintiffs' residence and (b) an opportunity to the Plaintiffs to file either an objection to claim, an amended complaint, or both, that assert legitimate, non-specious claims for relief.  Accordingly, it is by the United States Bankruptcy Court for the District of Maryland, for the reasons explained on the record on March 4th,

ORDERED, that Count I is dismissed with prejudice for its failure to state a claim upon which relief may be granted; and it is further,

2

ORDERED, that the remaining Counts of the Complaint are dismissed without prejudice; and it is further,

ORDERED, that Carrington and Christiana shall, by April 3, 2014, submit an affidavit that (1) explains their claim of ownership to the note and mortgage that underlie Claim No. 4-2 and which are secured by the Plaintiffs' residence and (2) supplies an inventory of documents that memorializes their chain of title; and it is further,

ORDERED, that the Debtor shall, by May 3, 2014, file either an objection to Claim No. 4-2 or an amended complaint or both or the Complaint shall be dismissed with prejudice.


cc:  Plaintiffs – Jeffrey & Tonya Howes
     Counsel for Plaintiffs – Robert Haeger, Esquire
     Counsel for Wells Fargo Bank, N.A. & U.S. Bank, N.A. – Douglas B. Riley. Esquire
     Counsel for Carrington Mortgage Services and Christiana Trust – Michael Cantrell, Esquire
     Chapter 13 Trustee – Ellen Cosby


**End of Order**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### Baltimore Division

In re: Jeffrey V Howes                              Bankruptcy Case No. 13-30614
                                                    Adversary Case No. 13-00510
                                                    Chapter 13

**************************

Jeffrey V Howes and
Tonya H Howes
                    Plaintiffs(s)


            vs.


Carrington Mortgage Services, LLC
Christiana Trust, A Division of Wilmington
Savings Fund Society, FSB, as trustee for
Stanwich Mortgage Loan Trust, Series 2013-2
                    Defendant(s)


## RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER ORAL RULING ON MOTIONS TO DISMISS AND OBJECTION TO OWNERSHIP OF AFFIDAVIT


     **COMES NOW** the Defendant(s) Carrington Mortgage Services, LLC ("CMS") and

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich

Mortgage Loan Trust, Series 2013-2 ("WSFS Bank"), by and through its attorneys Michael T.

Cantrell, Esq and Kyle J. Moulding, Esq., and respond to the motion to reconsider filed by

Plaintiffs Jeffrey V Howes and Tonya H Howes ("plaintiffs"), and respectfully represent to the

Court as follows:

     1.      The Plaintiffs ask the court to reconsider the dismissal of this adversary

proceeding based on the fact that the Trust ("U.S. Bank National Association, as Trustee,

successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset

Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4") terminated as the

Trust received payment in full. As the court in *Jaimes v. JPMorgan Chase Bank, N.A.*, WL

2013-37835

677740 (N.D. Ill. February 25, 2013) stated quite clearly, this argument does not relieve the debtors of their obligation to make their mortgage payments. "First, a trust's termination does not terminate the payment obligations on the mortgages in the trust." (Memo at Docket 21; Page 4).

2.       The Trust was not terminated because the Plaintiffs allege to have paid their loan in full, to the contrary, the Plaintiffs and their attorney continue to represent to the court that they have not been making payments for quite some time. The Plaintiffs now seek to manipulate Maryland case law to state that no one has the right to foreclose on the property.

3.       After the filing of an Affidavit under penalty of perjury providing the Plaintiffs with the complete chain of title, the Plaintiffs now seek to have the Lost Note Affidavit ruled "defective" by this court. With an interpretation of the facts in a light most favorable to the Plaintiffs, a defective lost note affidavit pursuant to Maryland law may be a defense to the foreclosure action itself, but it is not a matter to be adjudicated before the Bankruptcy Court. If the Circuit Court in Maryland rules that the lost note affidavit is not sufficient to proceed with the foreclosure case, a new lost note affidavit will be executed with the appropriate information included pursuant to Maryland law for the foreclosure case to proceed. Defendants' counsel does not understand why this new allegation was included in the motion to reconsider and does not understand its connection to the termination of the Trust as noted by the Plaintiffs. It is clear that the Plaintiffs are simply seeking to re-litigate the case with the same set of facts that do not warrant a motion to reconsider. [1]

---

[1] Pursuant to Rule 60(b), grounds for relief are limited to accommodating an intervening change in controlling law, accounting for new evidence not previously available, or correcting clear error of law or preventing manifest injustice. United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002). Pursuant to Rule 60(b), a party may obtain relief from a judgment or final order based upon: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Plaintiff's motion does not meet the burden of rule 60. The Plaintiffs have not presented any new facts that would warrant

2013-37835

4.       The Plaintiffs continue to base all of their arguments surrounding the Lost Note Affidavit and the assignments on the allegation that the trust terminated and therefore the loan was paid in full. Wells Fargo's counsel made it very clear at the hearing on the motion to dismiss that upon the termination of the Trust the loan reverted back to Wells Fargo. This fact alone proves that they would then have the right to foreclose and to continue to assign the loan to any purchaser. This is the proper conclusion that has been reached by this court and the Plaintiffs have no new facts that would support a claim that the loan was ever paid in full. The chain of assignments clearly shows the chain of title, yet the Plaintiffs remain convinced that the trust termination paid off the loan and eradicated the standing of any future assignee to enforce the terms of the Deed of Trust.

**WHEREFORE**, Defendants, Carrington Mortgage Services, LLC ("CMS") and Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("WSFS Bank"), ask this court to deny the motion to reconsider and to deny the request for another Affidavit to be filed by the Defendants as the documents provided clearly establish the Defendants right to enforce the loan documents.

Respectfully Submitted,

/s/ Michael T. Cantrell (kmg)
Michael T. Cantrell, Esq (08793)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
301-490-3361
Email: bankruptcymd@mwc-law.com

/s/ Kyle J. Moulding (kmg)
Kyle J. Moulding, Esq (30148)
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

---

reconsideration of the original complaint or to revise the order dismissing the adversary proceeding.  In fact, the Plaintiffs continue to rely on facts that they state are publicly available and in direct conflict with FRCP 60.

2013-37835

301-490-3361
Email: bankruptcymd@mwc-law.com

## CERTIFICATE OF SERVICE

I hereby certify and affirm under the penalties of perjury that I served a copy of

the aforementioned pleading to the following by first class mail, postage prepaid, or ECF means

on this 19th day of May 2014:

Robert Haeger
Haeger Law
11403 Seneca Forest Circle
Germantown, MD 20876

Ellen W. Cosby
300 E. Joppa Road, Suite 409
Towson, MD 21286

Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

/s/ Michael T. Cantrell
Michael T. Cantrell, Esq.

2013-37835

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| IN RE: | * | |
| JEFFREY V. HOWES, | * | Case No.: 12-30614-RAG |
| Debtors | * | Chapter 13 |

\* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| JEFFREY V. HOWES, et al., | * | |
| Plaintiffs | * | Adversary Proceeding No. 13-00510 |
| v. | * | |
| WELLS FARGO BANK, N.A., et al. | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**ORDER DENYING PLAINTIFFS' MOTION TO
RECONSIDER ORAL RULING ON MOTION TO
DISMISS AND OBJECTION TO OWNERSHIP AFFIDAVIT**

Upon consideration of Plaintiffs' Motion to Reconsider Oral Ruling on Motions
to Dismiss and Objection to Ownership Affidavit ("Motion to Reconsider"), the
Responses filed thereto by Defendants Wells Fargo Bank, N.A., U.S. Bank, National
Association, Carrington Mortgage Services, LLC and Christiana Trust, A Division of
Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust,

Series 2013-2, and all matters of record, and the Court finding that the Motion to Reconsider is untimely filed and, in any event, fails to set forth a cognizable reason to alter and amend the Court's ruling of March 4, 2014, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion to Reconsider be, and is hereby, DENIED.


Copies to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204
dbriley@tph-law.com

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Robert J. Haeger, Esquire
11403 Seneca Forest Circle
Germantown, Maryland 20876
Email:  www.haegerlaw.com

*Attorney for Plaintiffs,*
*Jeffrey V. Howes and Tonya H. Howes*

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
Email:  bankruptcymd@mwc-law.com

*Attorney for Carrington Mortgage Services, LLC*
*and Wilmington Savings Fund Society, FSB*

Ellen W. Cosby, Esquire
300 E. Joppa Road, Suite 409
Towson, Maryland 21286

*Chapter 13 Trustee*

END OF ORDER

2

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| ——————————————— | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510 |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| ——————————————— | | |

**PLAINTIFFS' MOTION TO RECONSIDER ORDER DISMISSING COMPLAINT AND OBJECTION TO OWNERSHIP AFFIDAVIT**

Plaintiffs Jeffrey V. Howes and Tonya H. Howes, by undersigned counsel, for the reasons stated in Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit, filed as Doc. No. 27, move pursuant to Rule 59 of the Federal Rules of Civil Procedures, made applicable to this adversary proceeding by Rule 9023 of the Federal Rules of Bankruptcy Procedure, for reconsideration of the Court's Order Dismissing Complaint for Failure to State a Claim ( Doc. No. 28), object to the Affidavit Certifying Ownership of Debt Instrument filed herein on April 3, 2014, as Doc. No. 26, by Carrington Mortgage Services, LLC as loan servicer for Stanwich Mortgage Loan Trust, Series 2013-2, and request an order directing the present owner of Plaintiffs' loan to establish its right to enforce it.

WHEREFORE, the premises considered, Plaintiffs respectfully ask the Court to

reconsider its Order Dismissing Complaint, deny Defendants' motion to dismiss instead,

determine that the present owner of Plaintiffs' note has failed to establish its right to enforce it,

direct it to provide Plaintiffs' counsel with a detailed affidavit under the penalty of perjury within

15 days establishing who owns and has a right to enforce the loan documents, and identify and

provide all relevant transactional documents.

Respectfully submitted,
*/s/ Robert J. Haeger, May 27, 2014*
Robert J. Haeger, Bar No. 25434
Attorney for Debtor-Plaintiffs
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

2

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on May 27, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorney for Carrington Mortgage Services,*
*LLC and Wilmington Savings Fund Society,*
*FSB*

*/s/ Robert J. Haeger, May 27, 2014*
Robert J. Haeger

3

**SO ORDERED**



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Jeffrey V. Howes | * | Case No. 12-30614-RAG |
| | | Chapter 13 |
| | * | |
| Debtor | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| Jeffrey V. Howes and | * | |
| Tonya H. Howes | | |
| | * | |
| Plaintiffs | | |
| | * | |
| v. | | Adversary No. 13-00510 |
| | * | |
| Wells Fargo Bank, N.A. | | |
| U.S. Bank, N.A. | * | |
| Carrington Mortgage Services, LLC | | |
| Christiana Trust, a Division of | * | |
| Wilmington Savings Fund Society, FSB | | |
| | * | |
| Defendants | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER DENYING PLAINTIFFS' MOTIONS TO
## RECONSIDER ORDER DISMISSING COMPLAINT AND OBJECTION TO
## <u>OWNERSHIP AFFIDAVIT</u>

1

Before this Court are the Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit (Motion to Reconsider) (Dkt. No. 27) filed on May 5, 2014 and Plaintiffs' Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (Second Motion to Reconsider) (Dkt. No. 34) filed on May 27, 2014.[1] Essentially, both papers seek reconsideration of the ruling memorialized in the Order.  Because Count I of the Complaint fails to state a cognizable, good faith claim for fraud, the Order will not be reconsidered.  Moreover, to the extent the Plaintiffs may have legitimate claims that (a) one or more of the present defendant/claimants are not entitled to enforce the underlying loan documents or (b) the amount of debt asserted in Proof of Claim No. 4-2 is incorrect, then those assertions must be raised through either an objection to claim or amended complaint. Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, for the reasons explained on the record on July 16, 2014,

ORDERED, that the request for reconsideration of the dismissal with prejudice of Count I is denied; and it is further,

ORDERED, that the Debtor shall, by July 23, 2014, file either an amended complaint or objection to claim, or both, or the Complaint shall be dismissed with prejudice.

cc:     Plaintiffs – Jeffrey & Tonya Howes
        Counsel for Plaintiffs – Robert Haeger, Esquire
        Counsel for Wells Fargo Bank, N.A. & U.S. Bank, N.A. – Douglas B. Riley, Esquire
        Counsel for Carrington Mortgage Services and Christiana Trust – Michael Cantrell, Esquire
        Chapter 13 Trustee – Ellen Cosby

**End of Order**

---

[1] The Motion to Reconsider was filed in the wake of the Court's oral ruling but before an order was entered.  The Second Motion to Reconsider was filed after the entry of the May 12, 2014 Order Dismissing Complaint for Failure to State a Claim (Order) (Dkt. No. 28).  The two motions raise the same arguments.

2

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |
| _____ | | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510-RAG |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |
| _____ | | |

**DESIGNATION OF RECORD ON APPEAL AND STATEMENT OF ISSUES
PRESENTED**

Jeffrey V. Howes and Tonya H. Howes, Plaintiffs herein, by their attorney, Robert J.

Haeger, pursuant to Bankruptcy Rule 8006, hereby designate the items to be included in the

record on appeal, and state the issues presented.

**ISSUES PRESENTED**

1.     Did the bankruptcy court err, when ruling on Defendants' motions to dismiss, in holding

that trust termination did not affect the trust's standing to enforce Plaintiffs' mortgage.

2.     Did the bankruptcy court err, when ruling on Defendants' motions to dismiss, in finding

that the trust holding Plaintiffs' mortgage did not cease to exist before it purported to

cause the filing of the Second Foreclosure Case?

3.      Did the bankruptcy court err in directing Plaintiffs to omit, when amending the

Complaint, any reference to fraud or misrepresentation arising from the lack of standing

to foreclose or file bankruptcy claims by the trust that held Plaintiffs' mortgage?

4.      Did the bankruptcy court err in granting Defendants' motions to dismiss for failure to

state claims upon which relief can be granted, and dismissing all nine counts of the

Complaint, including Counts 2 and 9 although not all Defendants requested their

dismissal, since there were other plausible claims for relief that were independent of fraud

or trust termination?

5.      Did the bankruptcy court err in looking beyond the four corners of the Complaint, when

ruling on Defendants' motions to dismiss, and relying on patently false and defective

ownership documents, provided by Defendant Carrington upon order of the court to prove

its status as owner, holder, or person entitled to enforce Plaintiffs' Note?


**ITEMS DESIGNATED**

**Items Filed in Main Case (12-30614-RAG)**

| Paper | File Date | Pleading Title |
|---|---|---|
| 25 | 01/09/13 | Objection to Confirmation of Plan |
|  | 03/08/13 | Proof of Claim 4 |
|  | 03/15/13 | Amended Proof of Claim 4 |
| 36 | 040/2/13 | Objection to Claim Number 4: Wells Fargo Bank N.A. |
| 51 | 05/29/13 | Assignment of Claims Transfer Agreement (Claim 4) |
| 57 | 06/11/13 | Amended Assignment of Claims Transfer Agreement (Claim 4) |

2

| 61 | 06/17/13 | Exhibits Filed re #36 Claim Objection |
| 65 | 06/24/13 | Order Denying Objection to Claim 4 |
| 83 | 10/04/13 | Amended Chapter 13 Plan |
| 111 | 070/1/14 | Chapter 13 Interim Business Report |

## Items Filed in Adversary Proceeding (13-510-RAG)

| Paper | File Date | Pleading Title |
|-------|-----------|----------------|
| 1 | 09/03/13 | Complaint |
| 5 | 10/09/13 | Motion to Dismiss Filed by Christiana Trust and Carrington Mortgage |
| 8 | 10/17/13 | Motion to Dismiss filed by US Bank & Wells Fargo |
| 11 | 10/23/13 | Plaintiffs' Response to Motion to Dismiss (ECF #5) |
| 12 | 10/31/13 | Plaintiffs' Response to Motion to Dismiss (ECF #8) |
| 13 | 11/04/13 | General Provisions Governing Discovery Jointly Submitted by All Parties |
| 14 | 11/19/13 | Scheduling Order |
| 16 | 12/18/13 | Amended Motion to Dismiss Filed by Carrington Mortgage & Christiana |
| 17 | 01/02/14 | Plaintiffs' Response to Amended Motion to Dismiss (ECF #16) |
| 18 | 01/06/14 | Hearing Held - Transcript Ordered |
| 21 | 01/21/14 | Supplemental Motion to Dismiss Filed by US Bank & Wells Fargo |
| 22 | 02/05/14 | Plaintiffs' Memo Response to Supplemental Motion to Dismiss (ECF #21) |
| 24 | 03/17/14 | Hearing Transcript (03/04/14) |
| 26 | 04/03/14 | Line re Affidavit Certifying Ownership of Debt Instrument |
| 27 | 05/05/14 | Plaintiffs' Motion to Reconsider Oral Ruling & Objection to Ownership Affidavit |

3

| 28 | 05/12/14 | Order Dismissing Complaint for Failure to State a Claim |
| 30 | 05/19/14 | Response to Motion to Reconsider Filed by Carrington & Christiana Trust |
| 31 | 05/20/14 | Memo in Opposition to Motion to Reconsider (US Bank & Wells Fargo) |
| 34 | 05/27/14 | Plaintiffs' Motion to Reconsider Order Dismissing Complaint |
| 35 | 07/16/14 | Hearing Held - Transcript Ordered |
| 36 | 07/22/14 | Order Denying Motion to Reconsider |
| 38 | 08/05/14 | Notice of Appeal |

Respectfully submitted,
*/s/ Robert J. Haeger, August 19, 2014*
Robert J. Haeger, Bar No. 25434
Attorney for Appellant
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified – Consumer Bankruptcy Law
– American Board of Certification

4

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing Notice of Appeal to be sent on August 19, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire                    Michael T. Cantrell, Esquire
Treanor Pope & Hughes, P.A.                  McCabe, Weisberg & Conway
500 York Road                                312 Marshall Avenue, Suite 800
Towson, Maryland 21204                       Laurel, Maryland 20707

*Attorneys for Defendants,*                  *Attorneys for Carrington Mortgage*
*Wells Fargo Bank, N.A. and*                 *Services, LLC and Wilmington Savings Fund*
*U.S. Bank, National Association*            *Society, FSB*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

                                             */s/ Robert J. Haeger, August 19, 2014*
                                             Robert J. Haeger

5

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes, | : | Chapter 13 |
| Debtor; | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | Adv. Proc. No. 13-510-RAG |
| Wells Fargo Bank N.A., et al. | : | |
| Defendants | : | |

_____

**AMENDED STATEMENT OF ISSUES PRESENTED**

Jeffrey V. Howes and Tonya H. Howes, Plaintiffs herein, by their attorney, Robert J.

Haeger, pursuant to Bankruptcy Rule 8006, hereby amends their statement of issues presented.

1.  Did the bankruptcy court err in looking beyond the four corners of the Complaint, when

ruling on Defendants' motions to dismiss, relying on patently false and defective

ownership documents provided by Defendant Carrington, at the court's direction, to

prove its right to enforce Plaintiffs' Note, or rejecting Plaintiffs' allegations of

misrepresentation and fraudulent intent?

2.  Did the bankruptcy court err in granting Defendants' motions to dismiss for failure to

state claims upon which relief can be granted, and dismissing all nine counts of the

Complaint, including Counts 2 and 9 although not all Defendants requested their

Apx. 304

dismissal, even though there were other plausible claims for relief that were independent of fraud or trust termination?

3.   Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1), holding that Defendants did not act with fraudulent intent in concealing the true identity of the secured creditor, or that Plaintiffs' allegations, when presumed as fact, fail to state a valid claim.

4.   Did the bankruptcy court err, when ruling on Defendants' motions to dismiss, in finding that the trust purported to have held Plaintiffs' mortgage did not cease to exist before Wells Fargo executed and filed multiple documents on its behalf, including the Second Foreclosure Case, Objection to Plan Confirmation, and the assignment of the Deed of Trust dated October 30, 2013?

5.   Did the bankruptcy court err in directing Plaintiffs to omit, when amending the Complaint, any reference to fraud or misrepresentation arising from the lack of standing to foreclose or file bankruptcy claims by the trust that held Plaintiffs' mortgage?

> Respectfully submitted,
> */s/ Robert J. Haeger, August 26, 2014*
> Robert J. Haeger, Bar No. 25434
> Attorney for Appellant
> 11403 Seneca Forest Circle
> Germantown, MD 20876
> (888) 463-3520; www.haegerlaw.com
> Board Certified – Consumer Bankruptcy Law
> – American Board of Certification

2

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing Notice of Appeal to be sent on August 26, 2014, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire                           Michael T. Cantrell, Esquire
Treanor Pope & Hughes, P.A.                         McCabe, Weisberg & Conway
500 York Road                                       312 Marshall Avenue, Suite 800
Towson, Maryland 21204                              Laurel, Maryland 20707

*Attorneys for Defendants,*                         *Attorneys for Carrington Mortgage*
*Wells Fargo Bank, N.A. and*                        *Services, LLC and Wilmington Savings Fund*
*U.S. Bank, National Association*                    *Society, FSB*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

                                                    */s/ Robert J. Haeger, August 26, 2014*
                                                    Robert J. Haeger

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE | BANKRUPTCY NO.  12-30614-RAG |
| **JEFFREY V. HOWES** <br> **DEBTOR(S)** | CHAPTER 13 |

## OBJECTION TO CONFIRMATION OF PLAN

Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

, a secured creditor, by its attorney, Brian McNair, files this Objection to Confirmation of Plan and states:

1.    That Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

is the holder of a note secured by a Deed of Trust/Mortgage on the property known as 7000 Meandering Stream Way, Fulton, MD 20759 which is owned by the Debtor(s).

2.    The plan does not provide for full payments of the arrearages.  The plan provides for $35,662.00, which is less than the amount of the full arrears.  The arrears are approximately $200,196.79.

WHEREFORE, Wells Fargo Bank, N.A. as Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

requests this Honorable Court deny confirmation of the Plan as filed by the Debtor(s).

/s/  Brian McNair
_____

Brian McNair
Bar Number 25270
Covahey, Boozer, Devan, & Dore, P.A.
11350 McCormick Road
Executive Plaza III, Suite 200
Hunt Valley, MD 21031
(443) 541-8600
Attorney for Movant

Apx. 307

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of January, 2013, a copy of the foregoing Objection to Confirmation of Plan has been served upon the following parties in interest, via either electronic mail or first class mail postage prepaid:


Robert Haeger
Haeger Law
11403 Seneca Forest Circle
Germantown, MD 20876
ecf@haegerlaw.com


Ellen W. Cosby
300 East Joppa Rd, Suite 409
Towson, MD 21286
ECF@ch13balt.com

/s/ Brian McNair
_____
Brian McNair
bankruptcy@mdmtglaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes | : | Chapter 13 |
|     Debtor | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes | : | |
|     Movant | : | |
| vs. | : | Rule 9014 Contested Matter |
| Wells Fargo Bank N.A. | : | |
|     Respondent | : | |

_____

### DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM
### FILED BY WELLS FARGO BANK N.A.

Jeffrey V. Howes, debtor-movant herein, by his attorney, Robert J. Haeger, hereby objects to the allowance of Claim No. 4 filed by Wells Fargo Bank N.A. (hereinafter "Claimant"), in the amount of $740,334.24, and as grounds, states as follows:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, being a case arising under Title 11, United States Code; and under 28 U.S.C. § 157, which provides for referral of cases arising under Title 11 to the bankruptcy judges of the District. This is a core proceeding. 28 U.S.C. §157(b)(2)(B).

2.      Claimant asserts a secured mortgage claim in the amount of $740,334.24, of which $200,196.79 is asserted as the arrearage, allegedly secured by Debtor's residence known as 7000 Meandering Stream Way, Fulton, MD 20759. Attached to the Claim is a Construction Note dated November 30, 2001 in the amount of $696,130, payable to the order of The Columbia Bank, with

the following endorsements: (A) Pay to the order of Wells Fargo Home Mortgage, Inc., by

Michael Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of Wachovia Bank,

NA, as Trustee under the pooling and servicing agreement dated as of May 29, 2003, by Beverly

Cro[ckett], Assistant Secretary, Wells Fargo Home Mortgage, Inc. Claimant also attached an (C)

Allonge dated November 21, 2009, that purports to assign all rights under the Note to US Bank

National Association, as Trustee for WFASC 2003-4, by Karan Abernethy, Vice President,

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement

dated as of May 29, 2003. There being no further endorsements, the right to collect on the Note

remains with US Bank National Association. Therefore, Claimant lacks standing to file this Claim as

Creditor.

3.      The Claim fails to contain a credit for the trial modification payments Debtor made.

4.      The Claim includes $13,926.94 in pre-petition fees, expenses, and charges, consisting

primarily of foreclosure fees and costs in the amount of $9,624.08, and $320 for what appear to be

unlawful inspection fees disguised as broker's price opinion fees. Since the underlying foreclosure cases

were filed by entities that lacked standing, and inspection fees are prohibited by Section 12-121 of the

Commercial Law Article, Annotated Code of Maryland, the foreclosure fees and costs, and the

inspection fees, are not authorized by the Note or Deed of Trust and must be disallowed.

5.      Claimant has failed to attach to its claim the writings that are necessary to establish its

claim.

6.      Debtor reserves his right to assert other grounds for disallowance of the subject claim

pending completion of discovery in this matter.

7.      PLEASE TAKE NOTICE, PURSUANT TO LOCAL RULE 3007-1, THAT (1)
WITHIN THIRTY (30) DAYS AFTER THE DATE ON THE CERTIFICATE OF SERVICE OF THE
OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION,
TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO
ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY

UPON THE PROOF OF CLAIM; AND (2) AN INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD IN THE COURT'S DISCRETION.

      WHEREFORE, the premises considered, debtor respectfully requests that an order be entered

sustaining this objection, disallowing and expunging this claim without leave to amend, and for such

other and further relief as is just.

Respectfully submitted,
*/s/ Robert J. Haeger, April 2, 2013*
Robert J. Haeger, Bar No. 25434
Attorney for Debtor-Movant
11403 Seneca Forest Circle
Germantown, MD 20876
(888) 463-3520; www.haegerlaw.com
Board Certified - Consumer Bankruptcy Law
 - American Board of Certification

CERTIFICATE OF SERVICE

      I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing to be sent on April 2, 2013, by first class U.S. mail, postage prepaid, certified mail where indicated, to:

| | |
|---|---|
| Ellen W. Cosby<br>300 E. Joppa Road, Suite 409<br>Towson, MD 21286 | Brian McNair, Esquire<br>Covahey, Boozer, Devan & Dore, P.A.<br>11350 McCormick Road<br>Executive Plaza III, Suite 200 |
| WELLS FARGO HOME MORTGAGE<br>Brian McNair, Counsel of Claimant<br>ATTN Bankruptcy Dept MAC #D3347-014<br>3476 STATEVIEW BLVD<br>FORT MILL, SC 29715 | Hunt Valley, MD 21031<br><br>BY CERTIFIED MAIL - RETURN RECEIPT<br>John Stumpf, Chairman and CEO<br>Wells Fargo Bank N.A.<br>420 Montgomery Street<br>San Francisco, CA 94132 |

/s/ Robert J. Haeger, April 2, 2013
Robert J. Haeger

3

Entered: June 24, 2013
Signed: June 21, 2013

**DENIED**
**Debtor's Objection to Allowance of**
**Claim Filed by Wells Fargo Bank, N.A.**
**(Dkt. No. 36) is denied without**
**prejudice for the reasons stated on the**
**record at hearing.**



_____
**ROBERT A. GORDON**
**U. S. BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re: | : | Case No. 12-30614-RAG |
| Jeffrey V. Howes | : | Chapter 13 |
| Debtor | : | |

_____

| | | |
|---|---|---|
| Jeffrey V. Howes | | |
| Movant | | |
| vs. | : | Rule 9014 Contested Matter |
| Wells Fargo Bank N.A. | : | |
| Respondent | : | |

_____

ORDER SUSTAINING OBJECTION TO CLAIM

Upon consideration of the objection of Jeffrey V. Howes, the captioned debtor, to the allowance of Claim No. 4 filed by Wells Fargo Bank N.A. ("Claimant"), any opposition thereto, notice thereof having been provided to Claimant, and good cause having been shown, it is,

ORDERED, that Debtor's objection to the allowance of the Proof of Claim of Wells Fargo Bank N.A. in the amount of $740,334.24 is hereby sustained; the claim is hereby disallowed and expunged, without leave to amend.

Copies To:
Debtor
Debtor's Counsel
Chapter 13 Trustee
Respondent

**End of Order**

DISMISSED, APPEAL

# U.S. Bankruptcy Court
## District of Maryland (Baltimore)
## Adversary Proceeding #: 13-00510

*Assigned to:* Judge Robert A. Gordon          *Date Filed:* 09/03/13
*Lead BK Case:* 12-30614                        *Case Administrator :*  Shannon
*Lead BK Title:* Jeffrey V Howes                McKenna
*Lead BK Chapter:* 13                           *Team Phone:*   301-344-3964
*Demand:* $250000

*Nature[s] of Suit:*  21 Validity, priority or extent of lien or other interest in property
                      02 Other (e.g. other actions that would have been brought in state court if unrelated to
                         bankruptcy)
                      91 Declaratory judgment
                      14 Recovery of money/property - other


*Plaintiff*
-----------------------
**Jeffrey V Howes**                      represented by **Robert Haeger**
7000 Meandering Stream Way                              Haeger Law
Fulton, MD 20759                                        11403 Seneca Forest Circle
SSN / ITIN: xxx-xx-8923                                 Germantown, MD 20876
                                                        888-463-3520
                                                        Fax : 888-463-3520
                                                        Email: ecf@haegerlaw.com
                                                        *LEAD ATTORNEY*


*Plaintiff*
-----------------------
**Tonya H Howes**                        represented by **Robert Haeger**
7000 Meandering Stream Way                              (See above for address)
Fulton, MD 20759                                        *LEAD ATTORNEY*
SSN / ITIN: xxx-xx-1015


V.

*Defendant*
-----------------------
**Wells Fargo Bank, N.A.**               represented by **Douglas B. Riley**
101 N. Phillips Avenue                                  Treanor Pope & Hughes, P.A.
Sioux Falls, SD 57104                                   500 York Road
                                                        Towson, MD 21204
                                                        443-901-2360

Apx. 313

Fax : 410-494-1658
Email: dbriley@tph-law.com

**Defendant**
------------------------
**US Bank, National Association**
800 Nicollet Mall
BC-MN-H210
Minneapolis, MN 55402

represented by **Douglas B. Riley**
(See above for address)

**Defendant**
------------------------
**Carrington Mortgage Services, LLC**
599 WEST PUTNAM AVENUE
GREENWICH, CT 06830

represented by **Michael T. Cantrell**
McCabe, Weisberg & Conway, P.C.
312 Marshall Ave.
Suite 800
Laurel, MD 20707
(301) 490-3361
Email: bankruptcymd@mwc-law.com

**Defendant**
------------------------
**Christiana Trust, a Division of Wilmington
Savings Fund Society, FSB**
500 Delaware Avenue
Wilmington, DE 19801

represented by **Michael T. Cantrell**
(See above for address)

| Case Related Information | | | |
|---|---|---|---|
| Associated Cases | No Claims | Related Transactions | Select a Sub-Docket  View  ☐ show related transactions |
| Pending Matters | Pending Deadlines | No Pending Hearings | Key Dates |
| EOrders: No Activity No Signed Upload  Log | Party | Case Opening Fees  All Fees | |

| Filing Date | # | Select all / clear | Docket Text |
|---|---|---|---|

Apx. 314

| | | | |
|---|---|---|---|
| 09/08/2014 | 🌐 47 | ☑ | Transcript of Hearing held on 7/16/2014 before Judge Robert A. Gordon. Transcript was received on 9/8/2014. TRANSCRIPT IS RESTRICTED FOR 90 DAYS BY JUDICIAL CONFERENCE POLICY. (RE: related document(s) 27 Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit Filed by Jeffrey V Howes, Tonya H Howes, 30 Response on behalf of Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB Filed by Michael T. Cantrell, 31 Memorandum of Law by Wells Fargo Bank, N.A. and U.S. Bank, National Association in Opposition to Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss Filed by Douglas B. Riley, 34 Motion to Reconsider Filed by Jeffrey V Howes, Tonya H Howes). Notice of Intent to Request Redaction Deadline Due By 9/15/2014. Redaction Request Due By 9/29/2014. Redacted Transcript Submission Due By 10/9/2014. Transcript access will be restricted through 12/8/2014. (Frank, Sandy) (Entered: 09/08/2014) |
| 09/08/2014 | 🌐 46 | ☑ | Transcript of Hearing held on 1/6/2014 before Judge Robert A. Gordon. Transcript was received on 9/8/2014. TRANSCRIPT IS RESTRICTED FOR 90 DAYS BY JUDICIAL CONFERENCE POLICY. (related document(s)5 Motion to Dismiss Count filed by Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 11 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 16 Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC, 17 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Notice of Intent to Request Redaction Deadline Due By 9/15/2014. Redaction Request Due By 9/29/2014. Redacted Transcript Submission Due By 10/9/2014. Transcript access will be restricted through 12/8/2014. (Frank, Sandy) (Entered: 09/08/2014) |
| 09/05/2014 | 🌐 | | Notice of Docketing Record on Appeal to District Court. Civil Case Number: 1:14-cv-02814-ELH (McKenna, Shannon) (Entered: 09/08/2014) |
| 09/04/2014 | 🌐 45 | ☐ | Transmittal of Record on Appeal to District Court (related document(s)38 Notice of Appeal filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 42 Appellant Designation filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (Attachments: # 1 Items Designated in Main Case)(McKenna, Shannon) (Entered: 09/04/2014) |

Apx. 315

| | | |
|---|---|---|
| 08/26/2014 | 🖱44 ☐ | Statement of Issues on Appeal,Amended Filed by Jeffrey V Howes, Tonya H Howes (related document(s)42 Appellant Designation filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (Haeger, Robert) (Entered: 08/26/2014) |
| 08/19/2014 | 🖱43 ☐ | Appellant Designation of Contents For Inclusion in Record On Appeal -- Hearing Transcripts Requested Filed by Jeffrey V Howes, Tonya H Howes (related document(s)42 Appellant Designation filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Appellee designation due by 09/2/2014. Transmission of Designation Due by 09/3/2014. (Haeger, Robert) (Entered: 08/19/2014) |
| 08/19/2014 | 🖱42 ☐ | Appellant Designation of Contents For Inclusion in Record On Appeal and Statement of Issues on Appeal Filed by Jeffrey V Howes, Tonya H Howes. Appellee designation due by 09/2/2014. Transmission of Designation Due by 09/3/2014. (Haeger, Robert) (Entered: 08/19/2014) |
| 08/08/2014 | 🖱41 ☐ | BNC Certificate of Mailing - PDF Document. (related document(s)40 Notice). No. of Notices: 6. Notice Date 08/08/2014. (Admin.) (Entered: 08/09/2014) |
| 08/06/2014 | 🖱40 ☐ | Notice of Filing of Appeal to the United States District Court (related document(s)38 Notice of Appeal filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (McKenna, Shannon) (Entered: 08/06/2014) |
| 08/05/2014 | 39 | Receipt of filing fee for Notice of Appeal(13-00510) [apappeal,ntcapl] ( 298.00). Receipt number 24864238. Fee amount 298.00 (re: Doc # 38) (U.S. Treasury) (Entered: 08/05/2014) |
| 08/05/2014 | 🖱38 ☐ | Notice of Appeal to District Court Filed by Jeffrey V Howes, Tonya H Howes. Fee Amount $298 (related document(s)28 Order on Motion to Dismiss Adversary Proceeding, Order on Motion to Dismiss Adversary Proceeding, 36 Order on Motion To Reconsider, Order on Motion To Reconsider). Appellant Designation due by 08/19/2014. (Haeger, Robert) (Entered: 08/05/2014) |
| 07/24/2014 | 🖱37 ☐ | BNC Certificate of Mailing - PDF Document. (related document(s)36 Order on Motion To Reconsider). No. of Notices: 7. Notice Date 07/24/2014. (Admin.) (Entered: 07/25/2014) |
| 07/22/2014 | 🖱36 ☐ | Order Denying Plaintiff's Motions to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (related document(s):27 Motion to Reconsider filed by Plaintiff |

| | | |
|---|---|---|
| | | Jeffrey V Howes, Plaintiff Tonya H Howes, 34 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Debtor shall, by July 23, 2014, file either an amended complaint or objection to claim, or both, or the Complaint shall be dismissed with prejudice. (McKenna, Shannon) (Entered: 07/22/2014) |
| 07/16/2014 | ◐ 35 ☐ | Hearing Held (related document(s)27 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 30 Response filed by Defendant Carrington Mortgage Services, LLC, Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 31 Memorandum of Law filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 34 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). MOTIONS PP.27,34- DENIED; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) Modified on 7/21/2014 (Frank, Sandy). (Entered: 07/21/2014) |
| 05/28/2014 | ◐ | Hearing Set On (related document(s)34 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Hearing scheduled for 7/16/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (McKenna, Shannon) (Entered: 05/28/2014) |
| 05/27/2014 | ◐ 34 ☐ | Motion to Reconsider Filed by Jeffrey V Howes, Tonya H Howes (related document(s)28 Order on Motion to Dismiss Adversary Proceeding, Order on Motion to Dismiss Adversary Proceeding). (Attachments: # 1 Proposed Order) (Haeger, Robert) (Entered: 05/27/2014) |
| 05/22/2014 | ◐ 33 ☐ | BNC Certificate of Mailing - Hearing. (related document(s)32 Notice of Hearing). No. of Notices: 6. Notice Date 05/22/2014. (Admin.) (Entered: 05/23/2014) |
| 05/20/2014 | ◐ 32 ☐ | Notice of Hearing (related document(s)27 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 30 Response filed by Defendant Carrington Mortgage Services, LLC, Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 31 Memorandum of Law filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association). Hearing scheduled for 7/16/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (Livingston, Booker) (Entered: 05/20/2014) |
| 05/20/2014 | ◐ 31 ☐ | Memorandum of Law by Wells Fargo Bank, N.A. and U.S. Bank, National Association in Opposition to Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss Filed by |

Apx. 317

| | | | |
|---|---|---|---|
| | | | Douglas B. Riley (related document(s)27 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (Attachments: # 1 Proposed Order Denying Plaintiffs' Motion to Reconsider Oral Ruling on Motion to Dismiss) (Riley, Douglas) (Entered: 05/20/2014) |
| 05/19/2014 | 30 | | Response on behalf of Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB Filed by Michael T. Cantrell (related document(s)27 Motion to Reconsider filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (Cantrell, Michael) (Entered: 05/19/2014) |
| 05/14/2014 | 29 | | BNC Certificate of Mailing - PDF Document. (related document(s)28 Order on Motion to Dismiss Adversary Proceeding). No. of Notices: 7. Notice Date 05/14/2014. (Admin.) (Entered: 05/15/2014) |
| 05/12/2014 | 28 | | Order Dismissing Complaint for Failure to State a Claim (related document(s):8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 16 Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC). COUNT I DIMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM. REMAINING COUNTS OF THE COMPLAINT ARE DIMISSED WITHOUT PREJUDICE. ORDERED THAT CARRINGTONN AND CHRISTIANA SHALL BY APRIL 3, 2014 SUBMITE AN AFFIDAVIT. DEBTOR SHALL BY MAY 3, 2014 FILE EITHER AN OBJECTION TO CLAIM 4-2 OR AN AMENDED COMPLAINT OR BOTH OR THE COMPLAINT SHALL BE DISMISSED WITH PREJUDICE. (McKenna, Shannon) (Entered: 05/12/2014) |
| 05/05/2014 | 27 | | Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit Filed by Jeffrey V Howes, Tonya H Howes (related document(s)8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 16 Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC, 21 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association). (Attachments: # 1 Proposed Order # 2 Exhibit Ownership Affidavit Documents # 3 Exhibit Patterson Opinion) (Haeger, Robert) (Entered: 05/05/2014) |
| 04/03/2014 | 26 | | Line to Court regarding service of Affidavit Certifying Ownership of Debt Instrument on behalf of Carrington |

Apx. 318

| | | | |
|---|---|---|---|
| | | | Mortgage Services, LLC Filed by Michael T. Cantrell. (Attachments: # 1 Affidavit Certifying Ownership of Debt Instrument) (Cantrell, Michael) (Entered: 04/03/2014) |
| 03/20/2014 | 💿25 | ☐ | BNC Certificate of Mailing.. No. of Notices: 1. Notice Date 03/20/2014. (Admin.) (Entered: 03/21/2014) |
| 03/17/2014 | 💿24 | ☐ | Transcript of Hearing held on 3/4/2014 before Judge Robert A. Gordon. Transcript was received on 3/17/2014. TRANSCRIPT IS RESTRICTED FOR 90 DAYS BY JUDICIAL CONFERENCE POLICY. (related document(s)5 Motion to Dismiss Count s One, Three, Four, Five, Six, Seven and Eight Filed by Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant, US Bank, National Association, 11 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes and 12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Notice of Intent to Request Redaction Deadline Due By 3/24/2014. Redaction Request Due By 4/7/2014. Redacted Transcript Submission Due By 4/17/2014. Transcript access will be restricted through 6/16/2014. (Yalley, Joyce) (Entered: 03/18/2014) |
| 03/04/2014 | 💿23 | ☐ | Hearing Held (related document(s)5 Motion to Dismiss Count filed by Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 11 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 16 Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC, 17 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 21 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 22 Memorandum of Law filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). MOTIONS PP.5,8,16 GRANTED-WITHOUT PREJUDICE AS EXPLAINED ON THE RECORD; SEE PROCEEDING MEMO FOR ADDITIONAL NOTES. (Frank, Sandy) (Entered: 03/11/2014) |
| 02/05/2014 | 💿22 | ☐ | Memorandum of Law Filed by Robert Haeger (related document(s)12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). (Haeger, Robert) (Entered: 02/05/2014) |

| | | | |
|---|---|---|---|
| 01/21/2014 | 💿 21 | ☐ | Supplemental Motion to Dismiss Adversary Proceeding Filed by US Bank, National Association, Wells Fargo Bank, N.A.. (Attachments: # 1 Exhibit Unreported case (Jaimes v. JP Morgan Chase, 2013 WL 677740)) (Riley, Douglas) (Entered: 01/21/2014) |
| 01/16/2014 | 💿 20 | ☐ | BNC Certificate of Mailing - Hearing. (related document(s)19 Notice of Hearing). No. of Notices: 6. Notice Date 01/16/2014. (Admin.) (Entered: 01/17/2014) |
| 01/14/2014 | 💿 19 | ☐ | Notice of Hearing - For Oral Ruling(related document(s)5 Motion to Dismiss Counts One, Three, Four, Five, Six, Seven and Eight filed by Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 11 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 16 Amended Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC and 17 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Hearing scheduled for 3/4/2014 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (Yalley, Joyce) (Entered: 01/14/2014) |
| 01/06/2014 | 💿 18 | ☐ | Hearing Held (related document(s)5 Motion to Dismiss Counts One, Three, Four, Five, Six, Seven and Eight filed by Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, 8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, 11 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 12 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes, 16 Amended Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC and 17 Response filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). CONTINUED TO 3/4/14 AT 2:00 P.M., COURTROOM 1-B, BALTIMORE FOR ORAL RULING. (Yalley, Joyce) (Entered: 01/14/2014) |
| 01/02/2014 | 💿 17 | ☐ | Response on behalf of Jeffrey V Howes, Tonya H Howes Filed by Robert Haeger (related document(s)16 Motion to Dismiss Adversary Proceeding filed by Defendant Carrington Mortgage Services, LLC). (Attachments: # 1 Proposed Order) (Haeger, Robert) (Entered: 01/02/2014) |
| 12/18/2013 | 💿 16 | ☐ | Amended Motion to Dismiss Adversary Proceeding Filed by Carrington Mortgage Services, LLC. (Cantrell, Michael). Related document(s) 8 Motion to Dismiss Adversary |

Apx. 320

| | | | |
|---|---|---|---|
| | | | Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association. (Entered: 12/18/2013) |
| 11/21/2013 | 🔵15 | ☐ | BNC Certificate of Mailing - PDF Document. (related document(s)14 Scheduling Order). No. of Notices: 6. Notice Date 11/21/2013. (Admin.) (Entered: 11/22/2013) |
| 11/19/2013 | 🔵14 | ☐ | Scheduling Order (related document(s)1 Complaint filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Status Letters due by 1/8/2014. Exhibit List, Exhibits, and List of Witnesses due by 10/6/2014. Written Objections to Exhibits due by 10/14/2014. Pre-Trial Memoranda due by 10/14/2014. HEARINGS ON MOTIONS TO DISMISS WILL BE HEARD JANUARY 6, 2014 @ 2:00 PM. Trial date set for 10/20/2014-10/22/14 at 10:00 AM at Courtroom 1-B, Baltimore - Judge Gordon. (McKenna, Shannon) (Entered: 11/19/2013) |
| 11/04/2013 | 🔵13 | ☐ | General Provisions Governing Discovery Jointly Submitted by All Parties and Filed by Douglas B. Riley. (Riley, Douglas) (Entered: 11/04/2013) |
| 10/31/2013 | 🔵12 | ☐ | Response on behalf of Jeffrey V Howes, Tonya H Howes Filed by Robert Haeger (related document(s)8 Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association). (Attachments: # 1 Memorandum # 2 Proposed Order) (Haeger, Robert) (Entered: 10/31/2013) |
| 10/23/2013 | 🔵11 | ☐ | Response on behalf of Jeffrey V Howes, Tonya H Howes Filed by Robert Haeger (related document(s)5 Motion to Dismiss Count filed by Defendant Christiana Trust, a Division of Wilmington Savings Fund Society, FSB). (Attachments: # 1 Proposed Order) (Haeger, Robert) (Entered: 10/23/2013) |
| 10/22/2013 | 🔵 | | Disposition Without Hearing: re: 1 Complaint. 26(F) REPORT TO BE FILED (related document(s) 1 Complaint ) (Frank, Sandy) (Entered: 10/22/2013) |
| 10/17/2013 | 🔵10 | ☐ | BNC Certificate of Mailing - PDF Document. (related document(s)7 Order on Motion to Extend Time). No. of Notices: 6. Notice Date 10/17/2013. (Admin.) (Entered: 10/18/2013) |
| 10/17/2013 | 🔵9 | ☐ | Line filing Disclosure of Corporate Affiliates Pursuant to Local Bankruptcy Rule 7003-2 Filed by Douglas B. Riley. (Riley, Douglas) (Entered: 10/17/2013) |

Apx. 321

| | | |
|---|---|---|
| 10/17/2013 | ●8 ☐ | Motion to Dismiss Adversary Proceeding Filed by US Bank, National Association, Wells Fargo Bank, N.A.. (Attachments: # 1 Memorandum in Support of Motion to Dismiss Complaint # 2 Exhibit A - Loan Modification Agreement # 3 Exhibit B - Assignments # 4 Exhibit C - Deed of Trust # 5 Proposed Order Dismissing Complaint to Determine Secured Status, Sanctions, and Other Relief) (Riley, Douglas) (Entered: 10/17/2013) |
| 10/15/2013 | ● | US Bank, National Association Answer Deadline Reset for 10/17/2013; Wells Fargo Bank, N.A. Answer Deadline Reset for 10/17/2013. (McKenna, Shannon) (Entered: 10/15/2013) |
| 10/15/2013 | ●7 ☐ | Order Granting Motion to Extend Time (related document(s):6 Motion to Extend Time to file first responsive pleading filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association). DEADLINE FOR DEFENDANT'S WELLS FARBO BANK AND U.S. BANK NATIONAL ASSOCIATION TO ANSWER COMPLAINT: OCTOBER 17, 2013. (McKenna, Shannon) (Entered: 10/15/2013) |
| 10/09/2013 | ●6 ☐ | Consent Motion to Extend Time for Defendants Wells Fargo Bank, N.A. and U.S. Bank, National Association to File First Responsive Pleadings Filed by US Bank, National Association, Wells Fargo Bank, N.A.. (Attachments: # 1 Proposed Order Extending Time for Defendants Wells Fargo Bank, N.A. and U.S. Bank, National Association to File First Responsive Pleadings) (Riley, Douglas) (Entered: 10/09/2013) |
| 10/09/2013 | ●5 ☐ | Motion to Dismiss Count s One, Three, Four, Five, Six, Seven and Eight Filed by Christiana Trust, a Division of Wilmington Savings Fund Society, FSB. (Attachments: # 1 Proposed Order) (Cantrell, Michael) (Entered: 10/09/2013) |
| 09/17/2013 | ●4 ☐ | Affidavit of Summons Service Executed on Carrington Mortgage Services, LLC 9/17/2013; Christiana Trust, a Division of Wilmington Savings Fund Society, FSB 9/17/2013; US Bank, National Association 9/17/2013; Wells Fargo Bank, N.A. 9/17/2013. (Haeger, Robert) (Entered: 09/17/2013) |
| 09/11/2013 | ●3 ☐ | BNC Certificate of Mailing. (related document(s)2 Summons Issued). No. of Notices: 2. Notice Date 09/11/2013. (Admin.) (Entered: 09/12/2013) |
| 09/09/2013 | ●2 ☐ | Summons Issued on Carrington Mortgage Services, LLC Date Issued 9/9/2013, Answer Due 10/9/2013; Christiana Trust, a Division of Wilmington Savings Fund Society, FSB Date Issued 9/9/2013, Answer Due 10/9/2013; US Bank, National Association Date Issued 9/9/2013, Answer Due 10/9/2013; Wells Fargo Bank, N.A. Date Issued 9/9/2013, Answer Due |

Apx. 322

| | | | |
|---|---|---|---|
| | | | 10/9/2013 (related document(s)1 Complaint filed by Plaintiff Jeffrey V Howes, Plaintiff Tonya H Howes). Pre-Trial Conference set for 10/22/2013 at 02:00 PM at Courtroom 1-B, Baltimore - Judge Gordon. (Horning, Kelly) (Entered: 09/09/2013) |
| 09/03/2013 | 🌑 1 | ☐ | Adversary case 13-00510. (21 (Validity, priority or extent of lien or other interest in property)) Complaint by Robert Haeger on behalf of Jeffrey V Howes, Tonya H Howes against Wells Fargo Bank, N.A., US Bank, National Association, Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB. FEE EXEMPT. (Attachments: # 1 Exhibit 1-Ownership Affidavit # 2 Exhibit Ex. 2A.Certificateholder Distribution Summary # 3 Exhibit Ex. 2B. Collateral Statement # 4 Exhibit Ex. 2C. Loan Level Data # 5 Exhibit Ex. 3. Sub Tee Decl Affidavit # 6 Exhibit Ex. 4. NIF Affidavit) (Haeger, Robert) (Entered: 09/03/2013) |

[ View Selected ]

or

[ Download Selected ]

Apx. 323

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


- - - - - - - - - - - - - - - - x
                                 :
IN RE:                           :
                                 :       Case No. 12-30614
JEFFREY V. HOWES,                :       (Chapter 13)
                                 :
          Debtor.                :
                                 :
- - - - - - - - - - - - - - - - x
                                 :
JEFFREY V. HOWES, et al.,        :       Adversary No. 13-00510
                                 :
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
WELLS FARGO BANK, N.A., et al.,  :
                                 :
          Defendants.            :       January 6, 2014
                                 :
- - - - - - - - - - - - - - - - x       Baltimore, Maryland

**(5) Motion to Dismiss Counts One, Three, Four, Five,, Six,
Seven and Eight Filed by Christina Trust, a Division of
Wilmington Savings Fund Society, FSB**

**(8) Motion to Dismiss Adversary Proceeding Filed by US Bank,
National Association, Wells Fargo Bank, N.A.**

**(11) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes
Filed by Robert Haeger**

**(12) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes
Filed by Robert Haeger**

**(16) Amended Motion to Dismiss Adversary Proceeding Filed by
Carrington Mortgage Services, LLC**

**(17) Response on Behalf of Jeffrey V. Howes, Tonya H. Howes
Filed by Robert Haeger**

BEFORE THE HONORABLE ROBERT A. GORDON


Proceeding recorded by electronic sound recording, transcript
produced by transcription service.

```
APPEARANCES:              ROBERT HAEGER, Esq.
                          Haeger Law
                          11403 Seneca Forest Circle
                          Germantown, Maryland  20876
                             On Behalf of the Debtor/Plaintiffs
                             Jeffrey Howes, Tonya Howes

                          DOUGLAS B. RILEY, Esq.
                          Treanor, Pope & Hughes, P.A.
                          500 York Road
                          Towson, Maryland  21204
                             On Behalf of Wells Fargo Bank, N.A.
                             and US Bank, National Association

                          KYLE JAMES MOULDING, Esq.
                          MICHAEL T. CANTRELL, Esq.
                          McCabe, Weisberg and Conway, LLC
                          312 Marshall Avenue
                          Suite 800
                          Laurel, Maryland  20707
                             On Behalf of Christina Trust, a
                             Division of Wilmington Savings
                             Fund Society, FSB and Carrington
                             Mortgage Service, LLC

Audio Operator:           Booker Livingston

Transcription Company:    CompuScribe
                          5100 Forbes Boulevard
                          Suite 101
                          Lanham, Maryland  20706
                          301/577-5882
```

I N D E X

                                                                        Page

Preliminary Matters                                                       4

Comments by the Court                                                     5

Arguments:

By Douglas Riley, Esq.
  on Behalf of Wells Fargo Bank and US Bank                               6

By Kyle Moulding, Esq.
  on Behalf of Carrington Mortgage Services
  and Christiana Trust                                                   16

By Robert Haeger, Esq.
  on Behalf of Jeffrey Howes and the Plaintiffs                         19

KEYNOTE:  "---" indicates inaudible in the transcript.
          "*"   indicates phonetically spelled in transcript.

1                    P R O C E E D I N G S

2              THE CLERK:  Silence please, all rise.  The United

3   States Bankruptcy Court for the District of Maryland now

4   resumes its regular session.  The Honorable Robert A. Gordon

5   presiding.  Please be seated.

6              We have the case of Jeffrey Howes, Case No.

7   12-30614, Adversary 13-00510.

8              Counsel, will you please identify yourself and your

9   client for the record.

10             MR. HAEGER:  Good afternoon, Robert Haeger on behalf

11  of Jeffrey Howes and the Plaintiffs in the adversary

12  proceeding.

13             THE COURT:  Hi, Mr. Haeger, how are you?

14             MR. HAEGER:  Fine, thank you, and yourself?

15             THE COURT:  Good.

16             MR. RILEY:  Afternoon, Your Honor, Douglas Riley on

17  behalf of Wells Fargo Bank and US Bank.

18             THE COURT:  Hi, Mr. Riley, how are you doing?

19             MR. RILEY:  Good, thank you.

20             MR. MOULDING:  Good afternoon, Your Honor,

21  Kyle Moulding on behalf of Carrington Mortgage Services and

22  Christiana Trust.  And I have with me today Michael Cantrell.

23             THE COURT:  Okay, wait one second.  How do you spell

24  your name?

25             MR. MOULDING:  K-y-l-e.

 1             THE COURT:  K-y-l-e.

 2             MR. MOULDING:  M-o-u-l-d-i-n-g.

 3             THE COURT:  Okay.

 4             MR. CANTRELL:  Good afternoon, Your Honor,

 5    Michael Cantrell.

 6             THE COURT:  Hi, Mr. Cantrell, how are you doing?

 7    All right.  I don't know whether I should say anything to

 8    start this off or not.  But I will just make the comment that

 9    I think the debtor's time could be much better spent figuring

10    out a way to come up with a workable plan than this complaint,

11    which doesn't mean that the parties on the other side of the

12    table are pristine and pure in all that went on here.

13             But it sort of telescopes the aftermath of the

14    mortgage meltdown, et cetera, et cetera, et cetera, and it is

15    almost slapstick comedy of how to handle commercial paper.  I

16    don't think there is much question about that from party, to

17    party, to party and who is on first and what is on second and

18    all of that with respect to filing proofs of claims and filing

19    foreclosures and all of that business.

20             But the fact remains that the debtors have been

21    living in the house without paying for a long time.  They have

22    a debt that apparently they can't afford.  And even if they

23    win hands down on everything that they say in the complaint,

24    which is very unlikely, they are still going to have to pay

25    the debt.  The debt is not going to go away.

1          So, it is a lot of wasted paper as far as I can see.

2   But having stood on the soapbox for a little while, I guess I

3   will hear from Mr. Riley first.  Do you want to go first?

4          MR. RILEY:  Thank you, Your Honor, again, my name is

5   Douglas Riley and I represent Wells Fargo and US Bank today,

6   the entities that previously owned or serviced the loan now at

7   issue.

8          I wanted to start the same way you just begun, Your

9   Honor, saying this is another one of those cases where, as the

10  saying goes, no good deed goes unpunished.  The lenders have

11  worked with Mr. and Ms. Howes to keep them in their home for

12  more than four and a half years now, since April of 2009,

13  according to their complaint.

14         Mr. and Ms. Howes haven't paid a penny toward their

15  mortgage loan but have lived for free in a very nice house in

16  Howard County that they purchased for $650,000 with borrowed

17  money.  But that they can no longer afford.  They were given a

18  loan modification that reduced their variable interest rate

19  more than five points.  And they were offered a subsequent

20  loan modification that they turned down.

21         And yet despite the lender's good faith and good

22  will here, and even though Mr. and Ms. Howes paid their

23  mortgage from 2001 until 2009, they now have what I would

24  describe as the audacity to ask the Court in Count 2 to

25  determine their mortgage is unenforceable.

1           And in other counts to contend that in spite of

2     their own breach of contract by not paying their mortgage loan

3     for four and a half years, their lenders are now somehow

4     indebted to them for alleged irregularities and filing of

5     proof of claim or not giving them timely notice that their

6     loan has been assigned.

7           THE COURT:  Well, let me ask you a question,

8     Mr. Riley, there is a question that comes up in my mind with

9     respect to your side of the table and hopefully this will help

10    us get to the bottom line on page 9 of your memorandum.

11          You said the opposing argument, there is neither

12    harm nor foul here.  Even if the mortgage was removed from the

13    trust or the trust terminated as is alleged on January 25th,

14    2012, Mr. and Ms. Howes are still indebted to the holder of

15    the note and deed of trust whoever that might be.

16          There is no allegations that Mr. and Ms. Howes have

17    paid their loan.  On the contrary they admit in the complaint

18    that they are in default they are under.

19          If the trust terminated as alleged on January 25th,

20    2012, then its assets returned to Wells Fargo the grantor,

21    which had conveyed them to the trust in the first place.

22          Wells Fargo was, thus, their owner of the mortgage

23    on February 21st, 2012, when the substitute trustees filed the

24    foreclosure case at Wells Fargo's behalf.

25          Okay.  So, let me try and formulate the question.

1  Who owns the mortgage?  Does Wells Fargo -- go ahead.

2            MR. RILEY:  Right now, my colleagues own the

3  mortgage.

4            THE COURT:  Okay.  Say for the record when you say

5  your colleagues, what does that mean?

6            MR. RILEY:  Carrington Bank and the Christiana

7  Trust.

8            THE COURT:  Okay.

9            MR. MOULDING:  Carrington Mortgage Services is the

10  servicer of the loan.

11            THE COURT:  Servicer.

12            MR. MOULDING:  Christiana Trust is the would be the

13  note holder.

14            THE COURT:  Okay.

15            MR. RILEY:  In other words, we are out of it now.

16            THE COURT:  You are out of it now.

17            MR. RILEY:  Except and so far as we filed the

18  original proof of claim and had begun foreclosure proceedings.

19            THE COURT:  Okay. All right.  The reason I

20  brought -- so, you will know, I mean it is pretty obvious on

21  one level why I brought it up I think but the way you wrote it

22  sounded a little like you weren't sure.

23            MR. RILEY:  No, no, I was very sure.  I was simply,

24  you know this a motion to dismiss.

25            THE COURT:  I know.  But I am giving you some

1    literary license there to write it that way because you are

2    exactly right.  It is a motion to dismiss, yes.  But when I

3    read it, I said, okay, I don't -- who owns it?  Doesn't that

4    get us closer to the bottom line, I think?  It should, I would

5    hope that it would.

6              MR. RILEY:  It is very clear that when the two

7    proofs of claims were filed, that Wells Fargo, at that point,

8    owned it.  The first one was wrong.  It was in the name of US

9    Bank with us as the servicer.  The Howes tried to make a great

10   deal out of that and suggested obviously that it was

11   fraudulent.

12             We discovered the error.  Within a week, we

13   clarified the error.  The Court encourages liberal amendment

14   of pleadings when they are not completely accurate.

15             The best way to track ownership is through the land

16   records up in Howard County, which would show that it began

17   with Columbia Bank and then it went to -- I had a cheat sheet

18   that I left on my desk at home so now I am floundering on that

19   particular part of it.

20             But I have that on a footnote where is sets forth,

21   that shows exactly the chain and then ultimately it was

22   assigned to my colleagues at the table here and to their

23   clients as well.

24             It does seem to me that the core of the complaint is

25   that neither Wells Fargo nor US Bank has standing to foreclose

1   on the property or to object to the Chapter 13 plan or to even

2   file a proof of claim.  And yet as the Court has just pointed

3   out, and I will say time and time again, there really is no

4   harm in anything that has happened.

5           Even if the mortgage was removed from the trust or

6   the trust terminated as alleged on January 25th, 2012, which

7   it did, Mr. and Ms. Howes are still indebted to whoever that

8   holder is.  There is no allegation or complaint from Mr. and

9   Ms. Howes paid the money.  And on the contrary, they admit

10  that they are in default.

11          The law is that when a trust has terminated the

12  asset is returned to the grantor and that in this case is

13  Wells Fargo.  In fact, that is what is in the trust

14  document --

15          THE COURT:  Well, does Maryland Law apply there,

16  though.  You only cited the Maryland case, which is, I don't

17  want to call it an ancient case but it was dealing with wills

18  and trusts and reversionary interest and, et cetera, et

19  cetera.  And they use a lot of language that I couldn't

20  understand.

21          MR. RILEY:  Okay.  Well, it is also in the trust

22  document, which is not before the Court, that has now been

23  sent to me.  And I didn't want to introduce it because it is

24  not at that stage.  If we end up in motion summary judgment

25  stage, which may happen after this, I will present it.  But it

1   also says this is what happens when the trust is terminated

2   and in that case it all goes back to grantor, which is Wells

3   Fargo.

4             THE COURT:  Okay.  So, for purposes of this hearing,

5   it may not be Maryland Law that governs it or is it the case

6   that it is not Maryland Law?  You might be right as a general

7   principle.  That may be the law across the country or in

8   Delaware or wherever.

9             MR. RILEY:  It may not be Maryland Law.

10           THE COURT:  Okay.

11           MR. RILEY:  Frankly, I think it is so obvious that

12   that is what the law of trust is that I just cited that one

13   case.

14           THE COURT:  I would think that too but you never

15   know Mr. Riley, right?  I don't mean that facetiously.  I mean

16   we don't know for sure unless we know for sure.

17           MR. RILEY:  I agree, Your Honor, and if you would

18   like us to further brief that issue, I would be happy to do

19   that.

20           THE COURT:  Okay.

21           MR. RILEY:  Okay.  So, I don't know quite how to

22   proceed from here.  I would like to discuss each of the

23   specific allegations.

24           THE COURT:  Go ahead, sure.

25           MR. RILEY:  Counts 1, 2, 3, 4, 7, 8 and 9 of the

1   complaint in my view border on the privilege because of what

2   we have just been talking about.  They are based on unfounded

3   contentions that Wells Fargo was not the rightful owner of the

4   note and therefore lack standing to collect the amount due to

5   initiate the foreclosure case to object to Mr. Howes' Chapter

6   13 plan or to file an amended proof of claim.

7           THE COURT:  Well, as best I can tell, if I am

8   talking about those counts, because it is confusion, all

9   right, and that is not entirely the Plaintiff's fault.  It is

10  a confusing situation.

11          But it seems to me that is what being alleged is

12  that either Wells Fargo defrauded the debtor and his wife by

13  claiming that -- by taking a position inconsistent with the

14  fact that the trust had terminated and they did this to hide

15  the foreclosure fees.  Is that right or is that wrong?

16  Mr. Riley.

17          MR. RILEY:  Again, --

18          THE COURT:  No, no, I am not asking you whether it

19  is true or not.  I am saying is that what the allegation -- is

20  that the way you read the allegation?

21          MR. RILEY:  I think that is the way we read the

22  allegation.  But under Twombly it has got to be a credible

23  allegation and it is just incredible that anything even if the

24  proof of claim had the wrong name on it, that somehow the

25  debtor was wrong and, obviously, if it has been corrected

1   since then.  So, the fact of proof of claim was filed and then

2   amended correctly just doesn't state a cause of action.

3          There is much about a first foreclosure that was

4   filed long before I was involved in the case with affidavits

5   that are alleged to have been signed by the guy who is signing

6   all of the affidavits.  You know that whole things was a

7   travesty.  But Wells Fargo, on learning of it, followed, at

8   least in Maryland, our advice and dismissed all of those

9   cases.

10          I mean it said this was wrong.  And there is no harm

11  there.  And then the new foreclosure started and under the ---

12  parties and on it went.  So, again, there is just no harm

13  being done in any of those.  And that is with regard to all of

14  those counts.  I am not going to beat a dead horse and go over

15  each one of them.

16          Count 4 of the complaint should be dismissed because

17  the proof of claim does not include an illegal inspection fee.

18  This is a case of clever pleading by Mr. and Ms. Howes where

19  they acknowledge that what we are collecting is an appraiser,

20  broker's price opinion fee.  But then they just

21  recharacterized it in their brief as an inspection fee without

22  offering any kind of evidence to the contrary.  And that

23  concludes --

24          THE COURT:  Well, what I got in the end was that

25  they were saying that somehow you were wrong because you

1  didn't assert that it wasn't an inspection fee.

2           MR. RILEY:  What we have done is filed a proof of

3  claim and that proof of claim is before the Court and it is

4  signed under oath and it says that the fees we collected were

5  appraiser, broker's price opinion fees on everything that is

6  necessary in the proof of claims in front of the Court.

7           THE COURT:  And how much were they about $900 or

8  less?

9           MR. RILEY:  I think they were $320.

10          THE COURT:  Okay.  So, that is really going to turn

11 the case around, isn't it?

12          MR. RILEY:  So, I don't there is anything to be

13 gained by pursuing that.   And in so far as they want to

14 object to the proof of claim, which they have done in this

15 pleading, there is a process for doing that.

16          Count 5 of the complaint should be dismissed because

17 it is claimed under --- as time barred.  Again, my brief cites

18 all the law on that --

19          THE COURT:  Right but they say that there is a

20 recoupment available.

21          MR. RILEY:  There may be a recoupment available as a

22 defense.  And that comes up as when we sue them to collect.

23 Although anything over what we have got a foreclosure is going

24 to be discharged anyway.

25          THE COURT:  But they don't have an affirmative

1  claim?

2          MR. RILEY:  But they don't an affirmative claim.

3          THE COURT:  Okay.

4          MR. RILEY:  And so we don't think that there is any

5  merit in that particular count.  Count 6 is also a count under

6  the Fair Debt Collection Procedures Act, which is clearly time

7  barred.

8          Interesting, they then -- and I should say that

9  Counts -- I think their count under the Maryland's Consumer

10 Protection Act is also time barred.  They say, well, wait, we

11 looked back the violation that the Federal Debt Collection

12 Procedures Act and even though that is time barred, we can

13 still use that as a basis under the Maryland Consumer

14 Protection Act.  And is clearly there is no grounds in that.

15 Clearly, it is time barred.  So, I don't think there is

16 anything there.

17         And then the other point that you already made and I

18 will just make quickly is Count 8 of the complaint contends

19 that Wells Fargo and US Bank violated Maryland Consumer

20 Protection Act by falsely and wrongly asserting ownership of

21 the note to moneys due and in the second foreclosure action.

22         And to bring an action under Maryland Consumer

23 Protection Act, there must be alleged an unfair and deceptive

24 practice or misrepresentation, which is arguably there.  But

25 it is then relied upon to cause injury.

1          And the complaint does not allege any reliance or at

2    least any credible reliance.  So when you go through the whole

3    thing, Mr. and Ms. Howes complaint provide no basis for their

4    claims that Wells Fargo is not a holder of the note to the

5    alleged Counts in 1 and 2 or has filed defective proof of

6    claim as alleged in Count 3, or has falsely stated that

7    Mr. Howes is liable to Wells Fargo for $740,000 as alleged in

8    Count 6, or has sought to collect from Mr. and Ms. Howes

9    amounts that knows are unlawful under Count 7, or has falsely

10   asserted ownership of the note as alleged under Count 8.

11         Wells Fargo has standing to file its proof of claim

12   and the other counts are barred by limitation.  So, we agree

13   with you.  We would like this bankruptcy case to proceed.  We

14   would love to get paid some of our arrearage.  We would like

15   to be able to go forward with foreclosure if we can't work

16   something out.

17         THE COURT:  It is not yours anymore, right?

18         MR. RILEY:  Yes, absolutely, Your Honor.  I have

19   gotten carried away there.  It is not ours.  And so I take

20   back that last part.  We don't care one way or the other

21   except that we did assign it and would certainly like our ---

22   to be treated fairly.  Thank you very much, Your Honor.

23         THE COURT:  All right, I got you.  All right, anyone

24   want to speak for Carrington, et cetera?

25         MR. MOULDING:  Good afternoon, again, Your Honor.

1            THE COURT:  Okay.

2            MR. MOULDING:  We, of course, would like to

3     incorporate everything that Wells Fargo has just stated to the

4     Court in their motion to dismiss and in his representations to

5     the Court this afternoon.

6            So to begin, we would like to request that Counts 1,

7     3, 4, 5, 6, 7, and 8 as to Carrington Mortgage Services be

8     dismissed as there is nothing alleged to Carrington Mortgage

9     Services.  And then 1, 3 and 8 as to Christiana Trust because

10    there is also nothing that the Plaintiff is bringing forward

11    against Christiana Trust on those counts.

12           And I will begin with Count 4, the property and

13    inspection fees.  And we agree with everything that Wells

14    Fargo has said about the property inspection fees.  To add to

15    that Christiana Trust had no involvement in any of that.  That

16    all happened before the loan was transferred to Christiana

17    Trust with Carrington servicing the loan.

18           They didn't have any knowledge of any of this.  They

19    just sort of walked into this when they filed their transfer

20    of claim back in June.

21           Moving onto Count 6, debtor's counsel has identified

22    WSFS Bank and FDCPA claim and they are the note holder and not

23    the servicer.  And it is our contention that they are not

24    subject to FDCPA as a result of that because they are not a

25    debt collector.  And they don't meet the definition of debt

1    collector under the statute.

2           And furthermore, there are no facts involved at all

3    alleging that WSFS Bank and Christiana Trust has done anything

4    that violated the FDCPA to this point.  Only the fact that we

5    have for WSFS Bank at this point is that they have filed a

6    transfer of claim and they didn't do anything improperly under

7    the FDCPA.

8           And then moving onto Count 7, under the Maryland

9    Consumer Debt Collection Act.  The Maryland Consumer Debt

10   Collection Act requires knowledge as to the invalidity of the

11   debt and nothing has been pled as to the knowledge acquired by

12   my client as to any of this invalidity, the property

13   inspection fees, any of that, any of those facts that were in

14   the complaint.

15          Nothing has been pled as to the knowledge obtained

16   by my client prior to filing the transfer of claim because,

17   again, that is all that my client has done to this point.  And

18   I have a case cite for you that I did not have in the motion

19   to dismiss.  If you would like it for the knowledge --

20          THE COURT:  No.

21          MR. MOULDING:  That is all we have for now.  I don't

22   want to repeat anything that counsel has already said.

23          THE COURT:  Okay.  Mr. Cantrell?

24          MR. CANTRELL:  No, Your Honor, I pass.

25          THE COURT:  Okay, go ahead.

1              MR. HAEGER:  Thank you, Your Honor.  Well, I would

2     say that the first point that I would like to make is that

3     this is order paper and there has been no negotiation out of

4     US Bank.

5              THE COURT:  What is the fraud?

6              MR. HAEGER:  The fraud --

7              THE COURT:  Why don't you tell me what the fraud is?

8              MR. HAEGER:  The main fraud is trying to hide the

9     fact that there was no standing to file the foreclosure case.

10             THE COURT:  How did your clients rely on that?  And

11    have they been damaged by it?

12             MR. HAEGER:  Well the fraud is alleged in connection

13    with fraud on the Court.

14             THE COURT:  No, you say on the debtors, that is what

15    your complaint says.  You say well it all goes back to when

16    they told us we were going to work out a settlement with you

17    and then they said we couldn't work out a settlement with you.

18    And my client put all this time and effort.  So, all of that

19    happened before.

20             MR. HAEGER:  Well, that is separate -- that is

21    correct.  That is a separate --

22             THE COURT:  Yes, all that happened before what you

23    just talked about.  So, what is the fraud?

24             MR. HAEGER:  So, I would say that there are two

25    areas.  The first area and the most important area is the

1   fraud on the Court by not disclosing the fact that there was

2   no standing to file that second foreclosure case.

3            THE COURT:  Because the trust terminated?

4            MR. HAEGER:  That is correct, Your Honor.

5            THE COURT:  So, what happened to the mortgage or the

6   note after the trust terminated?

7            MR. HAEGER:  The Plaintiffs would love to know.

8            THE COURT:  That is not an answer.  As a lawyer,

9   what happened to it?

10           MR. HAEGER:  Well, as a lawyer --

11           THE COURT:  What would be the law in that

12   circumstance?

13           MR. HAEGER:  As I set forth in my response the loan

14   was transferred out of the trust before the trust terminated.

15           THE COURT:  Well, in one area of the response you

16   say the mortgage was paid in full?  Is that what happened?

17           MR. HAEGER:  The records that were filed with the

18   complaint indicate that mortgage was paid in full.  I think

19   that is paid in full to the trust.

20           THE COURT:  The allegations -- this is page 22.  The

21   allegations of the complaint made clear the mortgage was paid

22   in full and removed from the trust.  But provides nothing from

23   which to infer the identity of the subsequent owner.  Indeed,

24   that is the point of Count 2 to establish the true owner of

25   the mortgage.  So, it was paid in full?

1              MR. HAEGER:  That is what the exhibit that is cited

2    in that section states.

3              THE COURT:  Well, what exhibit is that?

4              MR. HAEGER:  I am afraid I don't have that in front

5    of me, Your Honor.  It is on my computer --

6              THE COURT:  Well, you are not seriously taking the

7    position that it was paid in full, are you?

8              MR. HAEGER:  No.  That it was paid in full vis-a-vis

9    the trust.  Wells Fargo is arguing that the loan reverted back

10   to the grantor.

11             THE COURT:  So, you are saying that they are trying

12   to -- Wells Fargo intentionally misrepresented their status

13   because the trust was terminated?

14             MR. HAEGER:  That is right.

15             THE COURT:  And what were they gaining from that,

16   Covering up the $2,000 in foreclosure fees?

17             MR. HAEGER:  I have seen people do strange things.

18   And --

19             THE COURT:  No, you are the Plaintiff.  What were

20   they gaining from that?  Why did they conduct -- why did they

21   commit the fraud, per your allegations?

22             MR. HAEGER:  The main motivation would be to

23   preserve the foreclosure, the fact that they filed the

24   foreclosure case that it was a rightful foreclosure when it

25   wasn't, and to preserve the fees they sought to collect as a

 1   result of that.  You look at their behavior and you scratch

 2   your head.  What is going on here.  Why are they doing what

 3   they are doing?

 4            THE COURT:   That doesn't make it fraud.  Fraud is

 5   serious.  Fraud allegations serious business.

 6            MR. HAEGER:  I agree.

 7            THE COURT:  Right.  So, if it doesn't amount to

 8   that, then you have to expect me to take it very seriously

 9   when somebody alleges fraud in this Court and it is not.

10            MR. HAEGER:  I have taken it seriously.  Plaintiffs

11   have taken it seriously, Your Honor --

12            THE COURT:  I don't get that from your complaint.

13   This looks like one unfortunately incident after another that

14   mortgage lenders and banks were engaging in the aftermath or

15   maybe as a part of the mortgage meltdown.

16            But your clients' problems started because they

17   couldn't pay the debt.

18            MR. HAEGER:  Caused by the mortgage companies.

19            THE COURT:  Why, because you say that?  There is no

20   detailed explanation of that.  He is in the same boat as a lot

21   of other people.

22            MR. HAEGER:  Right.

23            THE COURT:  But that doesn't mean that they

24   committed fraud in this situation.

25            MR. HAEGER:  That is correct I agree with that.

1          THE COURT:  You can't pay the mortgage, you are

2   living in a house that you can't afford just like a lot of

3   people.  And that is a bad thing.   That is not a good thing.

4   That is not a good thing, all right?  I am not belittling

5   that.

6          But to file a complaint like this and think that

7   that is going to be the solution.  The debt is still there.

8   Someone owns it.  And they have to pay it.  And it seems to me

9   you would spend a lot -- your time would be much better spent

10  trying to help them figure out how they are going to get that

11  done if they want to stay in the house.

12         Maybe you might have a colorable claim on some of

13  these nitpicks, okay?  But to accuse them of fraud because

14  they filed a proof of claim and they are trying to cover up

15  the fact that the trust didn't exist anymore.  The assets had

16  to go somewhere period.

17         MR. HAEGER:  Then why didn't they disclose that?

18         THE COURT:  They said that they did disclose it.

19  That they were the owner of the asset because the trust

20  evaluated.  So, it reverted to them.  That is the position

21  they are taking.  It is entirely reasonable.

22         MR. HAEGER:  But, Your Honor, this is order paper

23  and you can't share ownership in that way.  It is clear under

24  the Anderson v. Berkson* case exactly what they have to do.

25  And they --

1          THE COURT:  Your clients have a long way to go to

2   figure out how to pay this debt.  Rather than turning this

3   into <u>Brown v. Board of Education</u>.  If you think that their

4   time is well spent and that the money that you are billing

5   them for is well spent then God bless the entire situation.

6          But what I am going to do is I am going to take a

7   real close look at this.  And I am going to take a close look

8   at the legal authorities.  And I am going to come back in

9   about 45/60 days and make an oral ruling.  So, I hope this

10  thing stands up under scrutiny because reading through it, it

11  doesn't.

12         MR. HAEGER:  Can I also point out, Your Honor, that

13  Count 4, the inspection fees, that is not a $900 count.  If

14  they prevail on that --

15         THE COURT:  The proof of claim doesn't say that they

16  are inspection fees.

17         MR. HAEGER:  And if I could address --

18         THE COURT:  You say, well, I think they are

19  inspection fees because they had to be inspection fees.

20  Notwithstanding what the proof of claims says.  How could they

21  be appraisal fees?

22         MR. HAEGER:  If I could address that?

23         THE COURT:  Would they have needed to appraise it

24  this many times, in this shorter period of time, therefore,

25  they must be inspection fees.  And, therefore, they are

1   illegitimate.

2          MR. HAEGER:  Well, the Plaintiffs have wanted to get

3   to the bottom of it.  And they served qualified written

4   requests on the Defendants.  And they asked for a life of loan

5   transaction history.  And so far none has been provided.  Now

6   that would help clarify the issue.

7          Secondly, they also asked for a copy of these

8   valuations.  That would help to substantiate whether or not

9   they are valuations or inspection fees.

10         Wells Fargo stated in a November 13, 2013, response

11  that the valuations are confidential and will not be released.

12  And then the third point on the inspections fees, and this all

13  goes to leave to amend in the event that the Court is inclined

14  to dismiss Count 4, Wells Fargo added over $500 in undisclosed

15  fees to their claim after the amended claim was filed but

16  before it was transferred to Carrington.

17         Plaintiffs believe that what we have here is a case

18  of tracking and tacking.  That the inspection fees were tacked

19  on before the claim was transferred to Carrington.  We have

20  seen this in other cases.

21         So, the reason that Count 4 is so important and why

22  it would turn this case around and make this loan much more

23  affordable is that if they prevail on Count 4, there is no

24  interest.  No interest can be charged on the loan.  All

25  interest is forfeit under the commercial law article.

1              THE COURT:  Anything else you want to tell me?

2              MR. HAEGER:  Everything else is stated in my

3    response, Your Honor, but I would be happy to walk through it

4    if the Court has any other questions.

5              THE COURT:  Anything from this side?

6              MR. RILEY:  Nothing further from Wells Fargo and US

7    Bank, Your Honor.

8              THE COURT:  All right, let's pick a date.  March 4th

9    at 2:00 p.m., is that all right?

10             MR. HAEGER:  That is fine by me, Your Honor.

11             MR. RILEY:  That is fine by me also, Your Honor.

12             MR. MOULDING:  That will be fine, thank you.

13             THE COURT:  Okay, all right.  We will come back for

14   an oral ruling March 4th, at 2:00 p.m.

15             MR.      :  Your Honor, if I may, I believe the

16   scheduling order requires that --- by January 8.  May I make a

17   request be made --- from now and March 4, it would have to

18   made ---.

19             THE COURT:  Well, why don't we just stay the

20   scheduling until we have that hearing.

21             MR.      :  Very well, thank you.

22             THE COURT:  All right.  And Mr. Riley, if you want

23   to provide a supplement on the question of the trust

24   termination and what happens and the result of that, I would

25   be happy to take a look at it.  So, why don't you have 15 days

 1   to file a supplement on that and the Plaintiffs can have 15

 2   days to respond to it.

 3             MR. RILEY:  Very good, Your Honor.

 4             THE COURT:  All right.  All right, anything else?

 5             MR. RILEY:  No, Your Honor.

 6             MR. HAEGER:  No, Your Honor.

 7             THE COURT:  All right, thanks.

 8             THE CLERK:  All rise, please.

 9             (Whereupon, the hearing was recessed to reconvene on

10   March 4 at 2:00 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

      I certify that the foregoing is a correct transcript

from the duplicated electronic sound recording of the

proceedings in the above-entitled matter.

_Cora Holliday_    09-08-2014
_____
Cora C. Holliday, Transcriber    Date

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

```
- - - - - - - - - - - - - - - - x
                                 :
IN RE:                           :
                                 :   Case No. 12-30614
JEFFREY V. HOWES,                :   (Chapter 13)
                                 :
        Debtor.              :
                                 :
- - - - - - - - - - - - - - - - x
                                 :
JEFFREY V. HOWES, et al.,        :   Adversary No. 13-00510
                                 :
        Plaintiffs,          :
                                 :
    v.                           :
                                 :
WELLS FARGO BANK, N.A., et al., :
                                 :
        Defendants.          :   July 16, 2014
                                 :
- - - - - - - - - - - - - - - - x   Baltimore, Maryland
```

**(27) Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit Filed by Jeffrey V. Howes, Tonya H. Howes (related documents (8) Motion to Dismiss Adversary Proceeding filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association, (16) Motion to Dismiss Adversary Proceeding Filed by Defendant Carrington Mortgage Services, LLC, (21) Motion to Dismiss Adversary Proceeding Filed by Defendant Wells Fargo Bank, N.A., Defendant US Bank, National Association).**

**(30) Response on Behalf of Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB Filed by Michael T. Cantrell**

**(31) Memorandum of Law by Wells Fargo Bank, N.A. and U.S. Bank, National Association in Opposition to Plaintiffs' Motion to Reconsider Oral Ruling on Motions to Dismiss Filed by Douglas B. Riley (related document (27) Motion to Reconsider Filed by Plaintiff Jeffrey V. Howes, Plaintiff Tonya H. Howes).**

Proceeding recorded by electronic sound recording, transcript produced by transcription service.

**(34) Motion to Reconsider Filed by Jeffrey V. Howes, Tonya H. Howes (related documents (28) Order on Motion to Dismiss Adversary Proceeding, Order on Motion to Dismiss Adversary Proceeding.)**

BEFORE THE HONORABLE ROBERT A. GORDON

APPEARANCES:                    ROBERT HAEGER, Esq.
                                Haeger Law
                                11403 Seneca Forest Circle
                                Germantown, Maryland  20876
                                   On Behalf of the Debtor/Plaintiffs
                                   Jeffrey Howes, Tonya Howes

                                DOUGLAS B. RILEY, Esq.
                                Treanor Pope & Hughes, P.A.
                                500 York Road
                                Towson, Maryland  21204
                                   On Behalf of Wells Fargo Bank, N.A.
                                   and US Bank, National Association

                                KYLE JAMES MOULDING, Esq.
                                McCabe, Weisberg and Conway, LLC
                                312 Marshall Avenue
                                Suite 800
                                Laurel, Maryland  20707
                                   On Behalf of Christina Trust, a
                                   Division of Wilmington Savings
                                   Fund Society, FSB and Carrington
                                   Mortgage Service, LLC

                                Martin Caskey, Esq.
                                300 E. Joppa Road, Suite 409
                                Towson, Maryland  21286
                                   On Behalf of the Chapter 13 Trustee
                                   Ellen W. Cosby

Audio Operator:                 Booker Livingston

Transcription Company:          CompuScribe
                                5100 Forbes Boulevard
                                Suite 101
                                Lanham, Maryland  20706
                                301/577-5882

Case 1:14-cv-02814-ELH   Document 94-4   Filed 10/09/14   Page 357 of 437

$$\underline{I}\ \underline{N}\ \underline{D}\ \underline{E}\ \underline{X}$$

                                                              <u>Page</u>

Preliminary Matters                                            4

<u>Argument</u>:

By Robert Haeger, Esq.
  on Behalf of Plaintiffs                                      5

Ruling - Judge Robert A. Gordon                                10

KEYNOTE:  "---" indicates inaudible in the transcript.

cch                                                                          4

```
  1                      P R O C E E D I N G S

  2              THE CLERK:  Silence please, all rise.  The United

  3   States Bankruptcy Court for the District of Maryland now

  4   resumes its regular session.  The Honorable Robert A. Gordon

  5   presiding.  Please be seated.

  6              We have the case of Jeffrey Howes, Case No.

  7   12-30614, Adversary 13-00510.

  8              Counsel, will you please identify yourself and your

  9   client for the record.

 10              MR. HAEGER:  Good afternoon, Your Honor, Robert

 11   Haeger on behalf of the Plaintiffs.

 12              THE COURT:  Hi, how are you?

 13              MR. HAEGER:  Fine, thank you, and yourself?

 14              THE COURT:  Good, I am good.

 15              MR. MOULDING:  Good afternoon, Your Honor,

 16   Kyle Moulding on behalf of Carrington Mortgage Services and

 17   Christiana Trust.

 18              THE COURT:  Hi, how are you?

 19              MR. MOULDING:  Good.

 20              THE COURT:  Good.

 21              MR. RILEY:  Afternoon, Your Honor, Douglas Riley on

 22   behalf of Wells Fargo and US Bank.

 23              THE COURT:  Hi, Mr. Riley, how are you doing?

 24              MR. RILEY:  Good.

 25              MR. CASKEY:  Martin Caskey, Your Honor, on behalf of
```

Case 11-14-cv-02814-EH  Document 94-4 Filed 10/05/14 Page 559 of 437

1    Trustee Ellen w. Cosby.

2                THE COURT:  Hi, Mr. Caskey, how are you?

3                MR. CASKEY:  Pretty good.

4                THE COURT:  Okay, go ahead Mr. Haeger.

5                MR. HAEGER:  Thank you, Your Honor.  Plaintiffs

6    filed a motion to reconsider dismissal of their complaint.

7    They have also objected to the proof of ownership provided to

8    Plaintiffs.  I will address reconsideration first.

9                Plaintiffs request reconsideration of dismissal of

10   their complaint due to clear error.  The motion was timely

11   under Bankruptcy Rule 9023, since it was filed within 14 days

12   after entry of judgment.

13               Plaintiffs filed two motions to reconsider on May 5

14   and May 27 while judgment was not entered until May 12.  Wells

15   Fargo and US Bank, which I will refer to this afternoon

16   collectively as Wells Fargo, argues that page 6 of their memo

17   that a docket entry constitutes entry of judgment --

18               THE COURT:  You can cut to the chase.

19               MR. HAEGER:  Okay.  Plaintiffs have asked for

20   reconsideration based on the Court's holding that the Trust

21   did not terminate as alleged in the complaint.

22               THE COURT:  Right.  So, if we have a trial, what are

23   you going to prove in support of fraud?

24               MR. HAEGER:  That the allegations in the complaint.

25               THE COURT:  What are you going to prove in support

1   of fraud?

2          MR. HAEGER:  That I will get the complaint and go

3   through it.

4          THE COURT:  No, I want you to tell me.  What are you

5   going to prove in support of fraud?  You are going to put

6   witnesses on the witness stand and they are going to have

7   documents as exhibits, et cetera, and what are you going to

8   prove?  What are the elements of fraud that you are going to

9   prove to win under Count 1?

10         MR. HAEGER:  I would prove that the trust

11  terminated.  That US Bank as trustee no longer owned the note.

12  That US Bank and Wells Fargo were aware of that fact.  That

13  they sought to hide it.  And --

14         THE COURT:  To what purpose?

15         MR. HAEGER:  In order to get paid for their

16  foreclosure fees and costs.  I would submit that would be the

17  primary reason.

18         THE COURT:  And that is the fraud?

19         MR. HAEGER:  And they were structured as a fraud on

20  the Court so --

21         THE COURT:  So, how has the integrity of the system

22  been damaged?

23         MR. HAEGER:  Well, if this is just a one often

24  event, then it was just be an intra-party dispute, but the --

25         THE COURT:  So, how has your client been damaged?

1          MR. HAEGER:  By having to demonstrate to the Court

2   that this claimant is not entitled to foreclosure fees and

3   costs.   And that it doesn't have standing.

4          THE COURT:  And that is your claim?  That is your

5   fraud claim?

6          MR. HAEGER:  Basically, that is it.  Of course, it

7   is set out in more detail in the complaint itself.

8          THE COURT:  No, it isn't.  You just provided more

9   detail.  But it is still not a fraud claim.

10          MR. HAEGER:  Well, I would submit that fraud on the

11   Court is different than just a garden variety of fraud claim.

12          THE COURT:  So, is it fraud on the Court or is it

13   fraud on your client?

14          MR. HAEGER:  Well, it is really both.

15          THE COURT:  It is a little of both?

16          MR. HAEGER:  It sounds primarily as fraud on the

17   Court.  And that is why it was pled --

18          THE COURT:  And the obligations still enforceable,

19   right?

20          MR. HAEGER:  Yes, my client --

21          THE COURT:  No one has ever disputed that.  So,

22   there is an enforceable obligation and a proof of claim was

23   filed.  And now all the creditors, all the Defendants, all the

24   related entities, they say Christiana and Carrington, those

25   are the two entities that have the right to enforce.  So what

 1   is the fraud?

 2           MR. HAEGER:  They have not demonstrated that they

 3   have the right to enforce.

 4           THE COURT:  What is the fraud?  There is an

 5   enforceable obligation.  The trust terminated, they have no

 6   effect on your clients' obligation to honor the obligation.

 7           MR. HAEGER:  It would have an effect on who had the

 8   right to enforce it.

 9           THE COURT:  And they all say Christiana and

10   Carrington have the right to enforce it, so what is the fraud?

11           MR. HAEGER:  Well, the Plaintiffs dispute that.

12           THE COURT:  That is fine.  But what is the fraud?

13           MR. HAEGER:  The fraud would be --

14           THE COURT:  Because the trust terminated, how does

15   that result in fraud because it doesn't impact on your clients

16   obligation and duty to honor the note and the mortgage and

17   make the payments?  There may be a separate question because

18   of the chaos and the confusion that went into the transfers of

19   the note and the mortgage, but that has nothing to do with

20   fraud that there is some deception going on because there is

21   still an enforceable obligation that demands to be enforced.

22           MR. HAEGER:  Well, if you file foreclosure and they

23   don't have the right to file foreclosure and then you seek to

24   recover fees for doing that, and try to hide all of that, that

25   is fraud.

```
 1          THE COURT:  You object to the claim and you say they
 2   shouldn't have filed the foreclosure and these fees shouldn't
 3   be allowed, Judge, period.
 4          MR. HAEGER:  Well, that is basically what the --
 5   that is the heart of the complaint.
 6          THE COURT:  Accusing them of fraud?  That is a
 7   serious matter.  They made a mistake because of all this chaos
 8   and confusion.  We have these ridiculous securitization trusts
 9   and they thought they had the right to file a proof of claim
10   so they filed it but it turns out they don't.  It is fraud,
11   they are evil.  They were trying to deceive you, Court, Your
12   Honor.
13          MR. HAEGER:  They still haven't established the
14   right to enforce it.
15          THE COURT:  They all say that Carrington and
16   Christiana are the proper creditor.
17          MR. HAEGER:  But Anderson requires that they show a
18   chain of title.  And they haven't done that.  The law is
19   clear.  Why haven't they?
20          THE COURT:  That is a different issue.  It has
21   nothing to do with fraud.  Nobody is denying that the
22   obligation exists and that your client is responsible for it
23   and has to pay it.  It is a different issue.
24          MR. HAEGER:  Yes, the issue is who has the right to
25   enforce it there.
```

```
 1           THE COURT:  And they all so that they do.  Is

 2  anybody else putting a demand on them?  Is anyone saying --

 3  sending them a bill and saying pay me these mortgage payments?

 4           MR. HAEGER:  No.

 5           THE COURT:  Is that happening?

 6           MR. HAEGER:  No, but Anderson does not require that

 7  the --

 8           THE COURT:  In Anderson, the substitute trustees

 9  won.

10           MR. HAEGER:  That is correct, Your Honor.

11           THE COURT:  In a similar situation, not identical,

12  but similar.  I am going to deny the motion for

13  reconsideration.  And I am going to tell you why.  Count 1,

14  fraud.  Yes, I did focus on the aspect of whether the trust

15  loan was put on "paid off" and/or terminated in the oral

16  ruling.  And that over-focused was probably wrong.  It wasn't

17  intended to be.

18           The focus should have been on whether a claim for

19  relief was stated and in that I was absolutely right because

20  no fraud claim was stated to the extent that the Plaintiffs --

21  you can sit down.  To the extent that the Plaintiffs are

22  claiming a fraud committed against them, the Howes do not

23  allege fraud with the required specificity.

24           Fraud in the form of concealment has five elements.

25  One, that the Defendant owed a duty to the Plaintiff to
```

1   disclose a material fact.  Two, the Defendant failed to

2   disclose that fact.  Three, the Defendant intended to defraud

3   or deceive the Plaintiff.  Four, the Plaintiff took action and

4   justifiable reliance on the concealment.  And, five, the

5   Plaintiff suffered damages as a result of the Defendant's

6   concealment.  Cite, Green v. H&R Block, Inc., 355 Md. 488, at

7   page 525, that is a 1999 case.  Citing, Finch v. Hughes

8   Aircraft Company, 57 Md. App. 190, that is a 1984 case.  None

9   of that is alleged here.

10          What we have is the mere speculative allegation that

11  the proof of claim was filed in this Court to somehow cover up

12  the termination of the trust and the claimant's ineligibility

13  to foreclose without any of the other factual elements needed

14  to support a legitimate claim of fraud to the extent they are

15  alleging a "fraud on the Court," trust termination does not

16  impact or alter their obligation to pay the debt.

17          So what is the benefit gain by the filing of the

18  proof of claim?  The sloppiness does sow confusion.  There is

19  no doubt about that, and perhaps even worse, than that.  But,

20  so what as far as the Howes' obligation to pay goes?

21          Moreover, there are no particular allegations as to

22  actionable fraud in this respect either.  That the filing of

23  the proof of claim was filed with the fraudulent intent and

24  that the Court relied upon it and that the integrity of the

25  judicial system was damaged as a result of the creditor's

1    actions.  There are no allegations that say that either.

2           Practical reality in this case is that all the

3    involved creditor-related parties are before the Court and

4    they all agree that the creditors at the end of the chain,

5    Christiana and Carrington, are entitled to enforce the

6    obligations.

7           If I were to find fraud every time a proof of claim

8    was mistakenly filed, then it would be a never ending process.

9    But here trust termination might somehow effect the identity

10   of the proper claimant but it doesn't wipe out the obligation

11   of the Plaintiffs.  And it doesn't give the Plaintiffs a cause

12   of action for fraud.

13          Count 1 is fatally defected because it does not ---

14   a legitimate claim of fraud and the order dismissing it with

15   prejudice will not be reversed.

16          Now, let's talk about the objection to the ownership

17   affidavit.  We are not going to deal with this piecemeal.  In

18   other words, the Plaintiffs need to file all of their

19   legitimate good faith, non-violative of Rule 9011 claims in an

20   amended complaint or an objection to claim, or fold the

21   objection into the amended complaint within seven days of

22   today or the complaint will be dismissed with prejudice.

23          If an amended complaint/objection of claim is filed,

24   we will see what happens.  In other words, the objection to

25   the ownership affidavit has to come down to the assertion that

 1  either Carrington or Christiana cannot enforce the claim

 2  consisting of the note and the deed of trust or that somehow

 3  the claim is incorrect as to the amount sought.  Like perhaps,

 4  there are foreclosure fees included in it that shouldn't be

 5  allowed.

 6        Substantively, that is about all that really matters

 7  at this point.  But when you go into default on your mortgage,

 8  and it takes you about six, seven, eight years to come to

 9  grips with it, then charges have a way of piling up.  But that

10  should be sorted out.

11        The debtor shouldn't have to pay anything that the

12  creditor is not entitled to receive.  And if that is a basis

13  for the objection of legitimate basis for the objection, then

14  so be it.

15        But I will tell you this, the reality before me

16  convinces that this assertion is likewise probably a sham.

17  And I mean the assertion as to who the legitimate creditor and

18  the right to enforce the claim belongs to at this point.

19        None of the prior holders are asserting an

20  entitlement to enforce either the note or the mortgage.  There

21  is no meaningful dispute raised about the present holder's

22  entitlement to enforce the mortgage and the debtor is not put

23  in the wrongful position of having to decide between competing

24  claimants.

25        In other words, there is no other lien holder, no

1    other would be mortgage company, Bank of America, Chase

2    Morgan, et cetera, et cetera, all the different alphabet soups

3    of entity names who are sending the debtor a bill and saying

4    pay me.  So, we get engaged in this circular argument again,

5    again and again.  And it is going to come to a stop.

6              It would have been a simple matter to include in a

7    confirmed plan that Carrington and Christiana have the

8    respective rights in the documents and that they can enforce

9    them and that the other prior holders cannot.

10             And if it turned out that somehow the documents

11   ended up in other hands and the debtor had to deal with that

12   tangent, then, perhaps, the debtor would have a claim against

13   any entity that wrongfully accepted payment because we have to

14   acknowledge that it appears from what has been filed the note

15   has been lost.

16             But barring that, this is not what I viewed to be a

17   legitimate complaint.  I suppose it may seem appealing to make

18   hay out of the financial prices and the resulting confusion

19   especially when the note is now lost.  Others have tried it

20   too and the reporters are full of those cases.

21             Whether that would prevent a foreclosure in

22   Maryland, I am not certain.  But as to the entitlement to

23   enforce the "right to payment" here in the Bankruptcy Court, I

24   don't see how the present claimant's right to do so can

25   reasonably be questioned.

1        And to the extent the lost notes makes difference,

2   why reasonable precautions couldn't be included in a plan that

3   protect the debtor and his wife from untoward consequences

4   that might arise after the bankruptcy case.

5        But that is getting a little ahead of myself.  The

6   debtor needs to file an objection and/or an amended complaint

7   or both to bring all of this to issue because the bottom line

8   question is whether Christiana and Carrington have the right

9   to enforce the claim at this point now that we have gotten

10  more information and now that it has been narrowed down to

11  that specific issue.

12       If the debtor believes that there are other issues

13  that need to be addressed, the other truth in lending counts,

14  the other disclosure counts, et cetera, and that these are

15  legitimate claims then the debtor, of course, has the right to

16  re-raise those in the amended complaint.  And we can go

17  forward from there.

18       But in my mind as I have said many times before, at

19  this point, the debtor should be, (a), ensuring that all the

20  charges are correct because that is a legitimate point of

21  inquiry, (b), working out a realistic and acceptable payment

22  plan for the remaining arrears that have piled up due to the

23  debtor's default and (c), working on plan confirmation to get

24  back on a going forward basis.

25       I have said it before it hasn't been heard.  I am

1 | saying it again, and we will see what the amended complaint

2 | and/or the objection look like.

3 |      If they are not filed in seven days, then this

4 | complaint is going to be dismissed with prejudice.  So, the

5 | ruling is the motion to reconsider will be denied.  And the

6 | debtor/Plaintiffs, the husband is the only debtor, just to

7 | make the record clear on that, but the wife is also a

8 | Plaintiff, are given seven days to file in good faith and

9 | incompliance with Rule 9011 and admit complaint and/or

10 | objection to claim that can be combined with the amended

11 | complaint and then we will take it from there.  Any questions?

12 |      MR. HAEGER:  Yes, Your Honor, may I have more than

13 | seven days, the Plaintiffs have more than seven days?

14 |      THE COURT:  No.  You already have had 90 days to do

15 | it approximately and you didn't do it.  So, now, you have

16 | seven days.

17 |      MR. HAEGER:  I would like to have the benefit of a

18 | transcript of the Court's ruling before appearing --

19 |      THE COURT:  The rule is crystal clear.  You have

20 | seven days.  It was crystal clear before.

21 |      MR. HAEGER:  Thank you.

22 |      THE COURT:  File whatever you are going to file and

23 | we will go from there.  And if it is not filed, the complaint

24 | is going to be dismissed with prejudiced.  Any questions from

25 | over here?

1            MR. MOULDING:  No, Your Honor.

2            MR. RILEY:  No, Your Honor.

3            THE COURT:  All right.  Thank you.

4            THE CLERK:  All rise, please.  This Honorable Court

5    now stands adjourned.

6            (Whereupon, the hearing was concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:14-cv-02814-ELH   Document 4-4   Filed 09/10/14   Page 372 of 417

C E R T I F I C A T E

        I certify that the foregoing is a correct transcript

from the duplicated electronic sound recording of the

proceedings in the above-entitled matter.


*rra Holliday*   09-08-2014
_____
Cora C. Holliday, Transcriber  Date

B 10 (Official Form 10) (12/12)                                                                                    1

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF MARYLAND | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Jeffrey V. Howes | Case Number: 12-30614-RAG | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securites Corporation, Mortgage Pass-Through Certificates, Series 2003-4

**COURT USE ONLY**

Name and address where notices should be sent:

WELLS FARGO HOME MORTGAGE
ATTENTION Bankruptcy Department MAC #D3347-014
3476 STATEVIEW BLVD
FORT MILL, SC 29715

Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM

❑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:_____**
    (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

WELLS FARGO HOME MORTGAGE
1 HOME CAMPUS
ATTENTION PAYMENT PROCESSING MAC #X2302-04C
DES MOINES, IA 50328

Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM

❑ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**      $740,334.24

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money Loaned
    (See instruction #2)

| **3. Last four digits of any number** by which creditor identifies debtor: XXXXXX3402 | **3a.** Debtor may have scheduled account as: (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** __ __ __ __ __ __ __WFCMGE1230614MDM89233402 __ __ __ __ __ __ __ __ __ __ __ __ __ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ❑ Motor Vehicle  ❑ Other
**Describe:** 7000 Meandering Stream Way, Fulton, MD 20759

**Value of Property: $_____**

**Annual Interest Rate** 5.750% ❑ Fixed  or  ☑ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$200,196.79

**Basis for perfection:**   Deed of Trust

**Amount of Secured Claim:**      $740,334.24

**Amount Unsecured:**           $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❑ Domestic support obligations under 11 U.S.C 507(a)(1)(A) or (a)(1)(B).

❑ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

❑ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

❑ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

❑ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

❑ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

B 10 (Official Form 10) (12/12)                                                                                                                          2

| | |
|---|---|
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6) | |

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.       ☑ I am the creditor's authorized agent.       ☐ I am the trustee, or the debtor,       ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                          or their authorized agent.                    (See Bankruptcy Rule 3005.)
                                                                          (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   <u>Brian McNair</u>
Title:        <u>Counsel of Claimant</u>
Company:      <u>Covahey, Boozer, Devan & Dore, P.A.</u>                    /s/  Brian McNair                              January 2, 2013

Address and telephone number (if different from notice address above):      Brian McNair, Attorney for Creditor          (Date)
<u>11350 McCormick Road</u>                                                 (Signature)
<u>Executive Plaza III, Suite 200</u>
<u>Hunt Valley, MD 21031</u>
Telephone number:  <u>(443) 541-8600</u>    email:  <u>bankruptcy@mdmtglaw.com</u>

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U.S.C §§ 152 and 3571.*

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)                                                                                          4

_____DEFINITONS_____                                    _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity
that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to
whom debtor owes a debt that was incurred before
the date of the bankruptcy filing.  See 11 U.S.C.
§101 (10).

**Claim**
A claim is the creditor's right to receive payment for
a debt owed by the debtor on the date of the
bankruptcy filing.  See 11 U.S.C. §101 (5).  A claim
may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to
indicate the amount of the debt owed by the debtor
on the date of the bankruptcy filing.  The creditor
must file the form with the clerk of the same
bankruptcy court in which the bankruptcy case was
filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property
of the debtor.  The claim is secured so long as the
creditor has the right to be paid from the property
prior to other creditors.  The amount of the secured
claim cannot exceed the value of the property.  Any
amount owed to the creditor in excess of the value of
the property is an unsecured claim.  Examples of
liens on property include a mortgage on real estate or
a security interest in a car.  A lien may be voluntarily
granted by a debtor or may be obtained through a
court proceeding.  In some states, a court judgment is
a lien.

A claim also may be secured if the creditor owes the
debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the
requirements of a secured claim.  A claim may be
partly unsecured if the amount of the claim exceeds
the value of the property on which the creditor has a
lien.

**Claim Entitled to Priority Under 11 U.S.C.
§507(a)**
Priority claims are certain categories of unsecured
claims that are paid from the available money or
property in a bankruptcy case before other unsecured
claims.

**Redacted**
A document has been redacted when the person filing
it has masked, edited out, or otherwise deleted,
certain information.  A creditor must show only the
last four digits of any social-security, individual's
tax-identification, or financial-account number, only
the initials of a minor's name, and only the year of
any person's date of birth.  If the claim is based on
the delivery of health care goods or services, limit the
disclosure of the goods or services so as to avoid
embarrassment or the disclosure of confidential
health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien,
certificate of title, financing statement, or other
document showing that the lien has been filed or
recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may
either enclose a stamped self-addressed envelope and a
copy of this proof of claim or you may access the
court's PACER system (www.pacer.psc.uscourts.gov)
for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims
for an amount less than the face value of the claims.
One or more of these entities may contact the creditor
and offer to purchase the claim.  Some of the written
communications from these entities may easily be
confused with official court documentation or
communications from the debtor.  These entities do not
represent the bankruptcy court or the debtor.  The
creditor has no obligation to sell its claim.  However, if
the creditor decides to sell its claim, any transfer of
such claim is subject to FRBP 3001(c), and any
applicable provisions of the Bankruptcy Code (11
U.S.C § 101 *et seq.*), and any applicable orders of the
bankruptcy court.

Apx. 373

B 10 (Official Form 10) (12/12) 1

| UNITED STATES BANKRUPTCY COURT _____ DISTRICT OF MARYLAND | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Jeffrey V. Howes | Case Number:  12-30614-RAG |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Wells Fargo Bank N.A.

**COURT USE ONLY**

Name and address where notices should be sent:

WELLS FARGO HOME MORTGAGE
ATTENTION Bankruptcy Department MAC #D3347-014
3476 STATEVIEW BLVD
FORT MILL, SC 29715

Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM

☑ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**____4-1____
   *(If known)*

Filed on:_____3/8/2013_____

Name and address where payment should be sent (if different from above):

WELLS FARGO HOME MORTGAGE
1 HOME CAMPUS
ATTENTION PAYMENT PROCESSING MAC #X2302-04C
DES MOINES, IA 50328

Telephone number: WFHM: 800-274-7025  email: POCNOTIFICATIONS@WELLSFARGO.COM

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $740,334.24

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money Loaned
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**  XXXXXX3402 | **3a. Debtor may have scheduled account as:**  (See instruction #3a) | **3b. Uniform Claim Identifier (optional):**  __ __ __ __ __ __ __WFCMGE1230614MDM89233402 __ __ __ __ __ __  (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:** 7000 Meandering Stream Way, Fulton, MD 20759

**Value of Property:** $_____

**Annual Interest Rate** 5.750% ☑ Fixed  or  ❏ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$200,196.79

**Basis for perfection:**  Deed of Trust

**Amount of Secured Claim:** $740,334.24

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C 507(a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

❏ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

❏ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

❏ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

Apx. 374

B 10 (Official Form 10) (12/12)                                                                                                    2

| |
|---|
| **7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)* |

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:**  (See instruction #8)

Check the appropriate box.

☐ I am the creditor.        ☑ I am the creditor's authorized agent.        ☐ I am the trustee, or the debtor,        ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                              or their authorized agent.                (See Bankruptcy Rule 3005.)
                                                                              (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  <u>Brian McNair</u>
Title:       <u>Counsel of Claimant</u>
Company:    <u>Covahey, Boozer, Devan & Dore, P.A.</u>            /s/  Brian McNair                          March 15, 2013
Address and telephone number (if different from notice address above):    Brian McNair, Attorney for Creditor        (Date)
<u>11350 McCormick Road</u>                                              (Signature)
<u>Executive Plaza III, Suite 200</u>
<u>Hunt Valley, MD 21031</u>
Telephone number:  <u>(443) 541-8600</u>    email:  <u>bankruptcy@mdmtglaw.com</u>

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U.S.C §§ 152 and 3571.*

| |
|---|
| **INSTRUCTIONS FOR PROOF OF CLAIM FORM** |
| *The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.* |
| **Items to be completed in Proof of Claim form** |

B 10 (Official Form 10) (12/12)                                                                                                                                3

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a):**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)                                                                                                      4

_____DEFINITONS_____                                          _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(c), and any applicable provisions of the Bankruptcy Code (11 U.S.C § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.**
See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Jeffrey V. Howes | **Case Number:** | 12-30614-RAG |
| **Name of creditor:** | Wells Fargo Bank N.A. | **Last four digits** of any number you use to identify the debtor's account: | XXXXXX3402 |
| **Uniform Claim Identifier:** | WFCMGE1230614MDM89233402 | | |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

1. **Principal due**  (1)  $  585,600.81

2. **Interest due**

| | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | |
|---|---|---|---|---|---|
| | 5.750 % | 08/01/2009 | 11/15/2012 | $ 110,817.78 | |
| | % | | | $ | |
| | % | | +$ | |
| | **Total interest due as of the petition date** | | | $ 110,817.78 | Copy total here ▶ (2)  +$  110,817.78 |

3. **Total principal and interest due**  (3)  $  696,418.59

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (include in the Amount of Claim listed in item 1 on the Proof of Claim form).

| | Description | Dates incurred | | Amount |
|---|---|---|---|---|
| 1. | Late charges | 10/16/09-12/16/09, 06/16/10 – 8/16/10, 5/16/11 – 7/16/12 at $189.66 | (1) | $ 3,982.86 |
| 2. | Non-sufficient funds (NSF) fees | | (2) | $ 0.00 |
| 3. | Attorney's fees | 3/8/10: $285.00, 8/31/10: $855.00, 10/5/10: $855.00, 10/21/10: $570.00 10/25/10: $570.00, 9/23/11: $285.00 4/10/12: $285.00, 5/30/12: $550.00 | (3) | $ 4,255.00 |
| 4. | Filing fees and court costs | 9/23/11: $495.00, 8/31/12: $15.00 | (4) | $ 510.00 |
| 5. | Advertisement costs | 3/8/10: $448.00, 8/31/10: $806.40, 10/5/10: $795.20 | (5) | $ 2,049.60 |
| 6. | Sheriff/auctioneer fees | 3/8/10, 8/31/10, 10/5/10 at $125.00 | (6) | $ 375.00 |
| 7. | Title costs | 8/31/10: $386.00, 10/5/10: $331.00, 10/25/10: $250.00, 10/29/10: $36.00, 9/23/11: $361.00, 10/26/12: $89.00 | (7) | $ 1,453.00 |
| 8. | Recording fees | 9/23/11 | (8) | $ 60.00 |
| 9. | Appraisal/broker's price opinion fees | 9/16/10: $50.00, 5/27/11: $90.00 11/29/11: $90.00, 6/13/12: $90.00 | (9) | $ 320.00 |
| 10. | Property inspection fees | | (10) | $ 0.00 |
| 11. | Tax advances (non-escrow) | | (11) | $ 0.00 |
| 12. | Insurance advances (non-escrow) | | (12) | $ 0.00 |
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 0.00 |
| 14. | Property preservation expenses. Specify: | | (14) | $ 0.00 |
| 15. | Other. Specify: Corporate Advances | | (15) | 0.00 |
| 16. | Other. Specify: Prior Bankruptcy Fee/Costs | | (16) | 0.00 |
| 17. | Other. Specify: Process Service | 3/8/10: $99.00, 4/10/12: $379.50 | (17) | $ 478.50 |
| 18. | Other. Specify: Certified Mail Costs | 3/8/10: $42.30, 8/31/10: $27.70 10/5/10: $27.70 | (18) | $ 97.70 |
| 19. | Other. Specify: Statutory Mail Costs | 8/31/10: $2.64, 10/5/10: $2.64 | (19) | $ 5.28 |

Apx. 378

| | | | | | |
|---|---|---|---|---|---|
| 20. | Other. Specify: | **Trustee Sale Bond** | 3/8/10, 10/24/12 at $100.00 | (20) | $ 200.00 |
| 21. | Other. Specify: | **Title & Tax Cert.** | 8/31/10, 10/5/10, 10/25/10, 9/23/11 at $35.00 | (21) +$ | 140.00 |
| 22. | **Total prepetition fees, expenses, and charges.  Add all of the amounts listed above.** | | | (23) $ | 13,926.94 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No

☑ Yes, Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

\* \* \*

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | | December 21, 2010 |
| | Number of installment payments due | (1) | 39.00 |

| 2. **Amount of installment payments due** | | | | |
|---|---|---|---|---|
| 39 | installments @ $4,776.15 | $ | 186,269.85 | |
| 0 | installments @ $0.00 | $ | 0.00 | |
| 0 | installments @ $0.00 | $ | 0.00 | |
| 0 | installments @ $0.00 | + $ | 0.00 | |

| | | | | |
|---|---|---|---|---|
| | Total installment payments due as of the petition date | $ | 186,269.85 | Copy total here ▶ (2) $ 186,269.85 |
| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | | Copy total from Part 2 here ▶ + $ 13,926.94 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | | - $ 0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | | | - $ 0.00 |
| | Total amount necessary to cure default as of the petition date | | | (3) $ 200,196.79 |

Copy total onto item 4 of
Proof of Claim form

- \* \* Due to the updated escrow analysis, the new monthly mortgage payment beginning <u>December 1, 2012</u>, will be <u>$4,835.64</u>.
- At the time of filing, escrow advances are $29,988.71.

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

# CONSTRUCTION NOTE

November 30, 2001

AP#  HOWES
LN#

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for this loan, I, the undersigned borrower or borrowers who shall be referred to in the singular, promise to pay U.S. ___$696,130.00___ ("principal"), plus interest, to the order of the Lender. The Lender is **The Columbia Bank.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest shall accrue daily on that part of principal which has been advanced and has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid. Beginning on the date of this Note, I will pay interest at ___6.0000___ % per annum. This rate is called the "Initial Interest Rate." The interest rate I will pay will change as and when the Index changes. The Index is the per annum rate published on the first publication date of each calendar month as the Prime Rate in The Wall Street Journal in its compilation of key United States and foreign annual interest rates. If more than one Prime Rate is reported, the highest rate reported shall be the Prime Rate. The interest rate shall never exceed ___11.0000___ % per annum and never shall be less than ___6.0000___ % per annum. If the Index is discontinued or substantially altered, the Note Holder may, at its option, choose another index made available to me and verifiable by me and beyond the Note Holder's control. If this happens, the substitute index will, for the purposes of this Note, be considered to be the "Index," although it may be necessary to adjust the number of percentage points above the Index the interest rate will be in order to make the interest rate under the new Index comparable to the interest rate under the prior index. The Note Holder will calculate my interest rate by adding ___1.0000___ % to the Index.

## 3. PAYMENTS

I will pay interest by making payments every month. I will make my monthly interest payments on the 1st    day   of   each   month   beginning   on   January 1, 2002                          . On ___September 1, 2002___   I will pay all principal, unpaid interest and any other amounts I owe under this Note in full. This date is called the "Maturity Date." I will make my monthly payments at ___5585 STERRETT PLACE, COLUMBIA, MD 21044___

or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment, there will be no delays in the due dates of my monthly payments unless the Note Holder agrees in writing to those delays.

## 5. LOAN CHARGES

To the extent the charges described in this paragraph apply and actually are incurred by the Note Holder, I may pay the following charges in connection with this loan: loan fees, finder's fees and points; attorney's fees for services rendered in connection with the preparation, closing or disbursement of this loan; any expense, tax or charge paid to governmental agencies; examination of title, appraisal or other costs necessary or appropriate to the security of the loan; premiums for optional credit life, credit disability, involuntary unemployment benefit and similar insurance coverage; premiums for property insurance, title insurance and credit loss insurance purchased from an insurer chosen by me; and any other charges permitted by applicable law.

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial payment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED AND DEFAULT

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the overdue part of my payment of interest. I will pay this late charge only once on each late payment.

(B) Default

If (1) I do not pay the full amount of each monthly payment on its due date, or (2) any bankruptcy, insolvency or receivership proceeding is commenced by or against me and such petition is not dismissed within ten (10) days, or (3) I die, or (4) a default occurs under the Residential Construction Loan Agreement with the Lender I am signing today ("Loan Agreement"), or (5) I fail to keep any of the promises I have made in or an event permitting acceleration occurs under the Deed of Trust which secures this Note ("Deed of Trust"), or (6) I made any material misrepresentation or omitted any material information in my application and other material supplied to the Lender in connection with this loan, I will be in default. If I am in default, the Note Holder may require me to pay the full amount of principal remaining unpaid, plus all interest and other charges due on this Note. The Note Holder also may exercise all of its rights and remedies under this Note, the Deed of Trust, the Loan Agreement and applicable law.

(C) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses, to the extent not prohibited by applicable law, in enforcing this Note. These expenses include, for example, court costs and reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method of giving notice, any notice that must be given to me under this Note will given by delivering it or by mailing it by first class mail addressed to me at the Property Address above or at a different address if I give the Note Holder a notice in writing of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. Any person who takes over the obligations of a guarantor, surety, or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. LAW THAT APPLIES

Maryland law and Federal law, as applicable, govern this Note. The Lender elects to make this loan under Subtitle 10 of Title 12 of the Maryland Commercial Law Article. I may pay fees and charges discussed in the Deed of Trust and in disclosures I am given, all of which are evidence of this loan.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice that amounts due have not been paid.

_____ 11-20-2001 (SEAL)   _____ (SEAL)
Borrower                               Borrower
JEFFREY V HOWES                        TONYA H HOWES
(Sign Original Only) Wachovia Bank, National Association, as Trustee
under the pooling and servicing agreement dated
as of May 29, 2003

                                       WITHOUT RECOURSE
                                       PAY TO THE ORDER OF
Pay To The Order Of, Without Recourse
Wells Fargo Home Mortgage, Inc.        WELLS FARGO HOME MORTGAGE, INC.
The Columbia Bank
                                       BY:_____
By:_____                   Beverly Crockett, Assistant Secretary
Michael Torcise, Vice President

Apx. 382

STATE OF MARYLAND
COUNTY OF ___Prince George's___

I hereby certify, that on this ___16___ of ___April___ , ___ , 2003, before me, the
subscriber, a Notary Public of the State of Maryland, in and for the County of_____;
personally appeared ___Jeffrey V. Howes, individually and as attorney in fact for Tonya H.
known to me or satisfactorily proven to be the person whose name is subscribed to the          Howes
within instrument and acknowledge that he executed the same for the purposes therein
contained.

AS WITNESS:  My hand and notarial seal

My Commission Expires:    ~~10/17/05~~
                    04/01/05

Notary Public

Melvin L. Schneider

## ALLONGE

This Allonge made this 21 day of November, 2009 and is attached to and made a part of that certain Promissory Note:

Dated:               November 30, 2001

Executed by:         Jeffrey V. Howes and Tonya H. Howes

Original Amount:     $696,130.00

Present Holder:      Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

It is to be read together with, and is hereby incorporated by reference in, the attached instrument and constitutes an integral part thereof.

For good and valuable consideration, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 hereby assigns all of its rights, title and interest in said Note to US Bank National Association, as Trustee for WFASC 2003-4 and as a result of said transfer, Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003 has no further interest in said Note. This Allonge shall be annexed to the original Note (or a copy of the Note with a Lost Note Affidavit if the original cannot be located) referenced above for purposes of transferring same.

Pay to the Order of

US Bank National Association , as Trustee for

(Without recourse, representation, or
warranty express or implied)

Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated as of May 29, 2003

By: _____

Officer: Karan Abernethy
Title: Vice President

LIBER 5 9 3 9 FOLIO 0 6 1 0

Return To:
THE COLUMBIA BANK
9151 BALTIMORE NATIONAL
PIKE   ELLICOTT CITY, MD
21042

Prepared By:
BARB MCCLANAHAN

MELVIN L. SCHNEIDER
7701 GREENBELT RD. #202
GREENBELT, MD 20770

——————————— [Space Above This Line For Recording Data] ———————————

PURCHASE MONEY as to   $215,000.00

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   November 30, 2001
together with all Riders to this document.
**(B) "Borrower"** is JEFFREY V HOWES and TONYA H HOWES

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is THE COLUMBIA BANK

Lender is a corporation
organized and existing under the laws of   THE STATE OF MARYLAND

HOWES                                                                                    0
MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021  1/01

-6(MD) (0005)
Page 1 of 15      MW 04/99.03    Initials:
VMP MORTGAGE FORMS - (800)521-7291

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0610. Printed 02/16/2012. Online 05/10/2004.

Case 12-30614 Claim 4 Part 3 Filed 03/15/13 Page 6 of 26
Case 1:14-cv-02814-ELH Document 9 Filed 10/05/14 Page 389 of 417

LIBER 5 9 3 9 FOLIO 0 6 1 1

Lender's address is 5585 STERRETT PLACE, COLUMBIA, MD 21044

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is MICHAEL T. GALEONE AND MATTHEW T. BECKER.

(E) "Note" means the promissory note signed by Borrower and dated        November 30, 2001
The Note states that Borrower owes Lender Six Hundred Ninety Six Thousand One
Hundred Thirty and                                                                                    Dollars
(U.S. $696,130.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        September 1, 2002
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | Second Home Rider |
| Balloon Rider | [X] Planned Unit Development Rider | 1-4 Family Rider |
| VA Rider | Biweekly Payment Rider | Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

HOWES                                                                                                    0
-6(MD) (0005)                        Page 2 of 15                Initials:              Form 3021  1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0611. Printed 02/16/2012. Online 05/10/2004.

Apx. 386

LIBER 5 9 3 9 FOLIO 0 6 1 2

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
Land Records     of HOWARD County :
   [Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]
LOT 45 IN A SUBDIVISION KNOWN AS "PINDELL WOODS. LOTS 1 THRU 47 and PRESERVATION PARCELS A THRU F" AS RECORDED AMONG THE LAND RECORDS OF HOWARD COUNTY, MARYLAND IN PLAT NUMBERED 14922.

Parcel ID Number:        which currently has the address of
7000 MEANDERING STREAM WAY     [Street]
FULTON     [City], Maryland    20759    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

HOWES       0

-6(MD) (0005)     Page 3 of 15    Initials:    Form 3021 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0612, Printed 02/16/2012. Online 05/10/2004.

Apx. 387

Case 12-30614 Claim 4 Part 3 Filed 03/15/13 Page 8 of 26
Case 1:14-cv-02814-ELH Document 9 Filed 10/05/14 Page 391 of 417

LIBER 5 9 3 9 FOLIO 0 6 1 3

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

HOWES                                                                                        0

-6(MD) (0005)                          Page 4 of 15          Initials: ____          Form 3021  1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0613. Printed 02/16/2012. Online 05/10/2004.

Apx. 388

LIBER 5 9 3 9 FOLIO 0 6 1 4

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

HOWES

-6(MD) (0005)                           Page 6 of 15              Initials: ____       Form 3021   1/01                0

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0614. Printed 02/16/2012. Online 05/10/2004.

Apx. 389

Case 12-30614   Claim 4 Part 3   Filed 03/15/13   Page 10 of 26
Case 1:14-cv-02814-ELH   Document 9   Filed 10/05/14   Page 393 of 417

LIBER 5 9 3 9 FOLIO 0 6 1 5

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

HOWES [                    ]                                         0

-6(MD) (0005)                    Page 6 of 15          Initials: _____        Form 3021   1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0615. Printed 02/16/2012. Online 05/10/2004.

Apx. 390

LIBER 5 9 3 9 FOLIO 0 6 1 6

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** ~~Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.~~ 

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

HOWES

0

-6(MD) (0005)

Page 7 of 15

Initials: _JH_

Form 3021   1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0616. Printed 02/18/2012. Online 05/10/2004.

Apx. 391

LIBER 5 9 3 9 FOLIO 0 6 1 7

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

HOWES                                                  0

-6(MD) (0005)                 Page 8 of 15              Initials: _AHA_          Form 3021 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0617. Printed 02/16/2012. Online 05/10/2004.

Apx. 392

LIBER 5 9 3 9 FOLIO 0 6 1 8

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

HOWES

0

-6(MD) (0005)

Page 9 of 16

Initials: JHN

Form 3021 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0618. Printed 02/16/2012. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 1 9

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

HOWES

0

-6(MD) (0005)

Page 10 of 15

Initials: ___

Form 3021 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0619. Printed 02/16/2012. Online 05/10/2004.

LIBER 5939 FOLIO 0620

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

HOWES

-6(MD) (0005)    Page 11 of 15    Initials: ___    Form 3021  1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0620. Printed 02/16/2012. Online 05/10/2004.

Apx. 395

LIBER 5 9 3 9 FOLIO 0 6 2 1

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

HOWES

-6(MD) (0005)                                   Page 12 of 15                        Initials:                Form 3021   1/01

0

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0621. Printed 02/16/2012. Online 05/10/2004.

Apx. 396

LIBER 5 9 3 9 FOLIO 0 6 2 2

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  5.0000        % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

HOWES

-6(MD) (0005)                        Page 13 of 15            Initials:          Form 3021  1/01

0

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0622. Printed 02/16/2012. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 2 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
                                          JEFFREY W HOWES            -Borrower

                                          _____(Seal)
                                          TONYA H HOWES              -Borrower

_____(Seal)             _____(Seal)
                -Borrower                                            -Borrower

_____(Seal)             _____(Seal)
                -Borrower                                            -Borrower

_____(Seal)             _____(Seal)
                -Borrower                                            -Borrower

HOWES                                                      0

-6(MD) (0005)                Page 14 of 16              Form 3021  1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0623. Printed 02/16/2012. Online 05/10/2004.

LIBER 5939 FOLIO 0624

**STATE OF MARYLAND,**          Prince George's                    **County ss:**
   I Hereby Certify, That on this      30      day of    November,  2001before me, the subscriber, a
Notary Public of the State of Maryland, in and for the       County of  Montgomery
personally appeared  JEFFREY V HOWES and TONYA H HOWES

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
   AS WITNESS: my hand and
My Commission Expires:                              Notary Public
December 19, 2017
   4/1/05

**STATE OF**  Maryland               ,   Prince George's                    **County ss:**
   I Hereby Certify, That on this 30      day of   November,  2001      ,before me, the subscriber,
a Notary Public of the State of  Maryland and for the       County of  Montgomery
personally appeared
                    Andrea Henske

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
funds in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.
   AS WITNESS: my hand and
My Commission Expires:                           Notary Public
December 19, 2017
   4/1/05

This is to certify that the within instrument was prepared by

THE COLUMBIA BANK,

                              BARB MCCLANAHAN

HOWES
LMD-6(MD) (0008)                        Page 15 of 15                Initials:              Form 3021  1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0624. Printed 02/16/2012. Online
05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 2 5

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this            30th           day of
November, 2001           , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
THE COLUMBIA BANK

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

7000 MEANDERING STREAM WAY, FULTON, MD 20759
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as
PINDELL WOODS

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

HOWES                                                                                    0

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01
Page 1 of 3                                    Initials:
-7R (0008)       MW 05/00       VMP MORTGAGE FORMS - (800)521-7291

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0625. Printed 02/16/2012. Online
05/10/2004.

LIBER 5939 FOLIO 0626

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

HOWES [                    ]                                                                                    0

VMP-7R (0008)                              Page 2 of 3                 Initials: _Ḵℳ_           Form 3150 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0626. Printed 02/16/2012. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 2 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
JEFFREY V HOWES          -Borrower     TONYA A HOWES           -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                             -Borrower

HOWES [                           ]                            0

-7R (0008)                    Page 3 of 3                  Form 3150 1/01

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0827. Printed 02/16/2012. Online 05/10/2004.

LIBER 5 9 3 9 FOLIO 0 6 2 8

## TRANSFER AND RECORDATION TAX CALCULATION
## DEED OF TRUST FROM JEFFREY V. HOWES AND TONYA H. HOWES
## TO MICHAEL T. GALEONE AND MATTHEW T. BECKER
## TRUSTEES FOR THE COLUMBIA BANK

Full loan amount: $696,130.00

Purchase money: $215,000.00 (Deed recorded in Howard County)

Amount secured by Howard County property: $696,130.00

Amount secured by Prince George's County property: $335,000.00

Non-purchase money secured in Howard County only: $361,130.00

Non-purchase money secured in both counties: $120,000.00.

Total Value of both properties: $665,550.00

Value of Howard County property: $215,000.00 (32.5%)

Value of Prince George's county property: $450,550.00 (67.5%)

Additional Transfer tax due to Howard County: 0.00

Additional Transfer tax due to Prince George's County: $1,134.00 (67.5% of 120,000.00 = 81,000 x 1.4% = $1,134.00)

Additional Recordation tax due to Howard County: $2,002.50 (361.5 x 5.00 = 1,807.50; 32.5% of 120,000.00 = 39,000.00; 39 x 5 = 195.00).

Additional Recordation tax due to Prince George's County: $356.40 (67.5% of 120,000.00 = 81,000.00; 81 x 4.4 = 356.40).

```
IMP FD SURE %        5.00
RECORDING FEE       75.00
RECORDATION T     2,002.50
TOTAL             2,082.50
Res$ H002      Rcp% $ 72198
MDR    MDG     Blk $ 3227
Jan 22, 2002       02:41 PM
```

HOWARD COUNTY CIRCUIT COURT (Land Records) [MSA CE 53-5923] Book MDR 5939, p. 0628. Printed 02/16/2012. Online 05/10/2004.

Wells Fargo Home Mortgage
PO Box 14547
Des Moines, IA 50306-4547

Page 1 of 3

| For informational purposes |
|---|

**Escrow account disclosure statement
and notice of new mortgage payment**

| | |
|---|---|
| Loan number: | |
| Next payment due date: | September 01, 2009 |
| New payment effective date: | December 01, 2012 |
| New payment amount: | $4,835.64 |
| Overage amount: | **$2,091.09** |
| Principal balance: | $585,600.81 |
| Interest rate: | 5.750% |
| Statement date: | November 21, 2012 |
| Account review period: | **Aug 2011 - Nov 2012** |
| Customer service: | 1-800-340-0473 |
| Customer service hours: | Mon - Fri 6 a.m. - 10 p.m. |
| | Sat 8 a.m. - 2 p.m. CT |

JEFFREY V HOWES
TONYA H HOWES
14900 SWEITZER LANE SUITE 201
LAUREL MD 20707

We accept telecommunications relay service calls.

Property address:
    7000  MEANDERING STREAM
    FULTON MD 20759-2302

Dear JEFFREY V HOWES and TONYA H HOWES:

Each year, we review your escrow account to make sure the escrow portion of your monthly mortgage payment covers your property taxes and/or insurance premiums. Increases or decreases in your annual taxes and/or insurance premiums may cause your monthly mortgage payment amount to change. Here are the details of your most recent escrow account review.

Note: This notice is for informational purposes only and is being provided as a courtesy should you voluntarily decide to make any escrow shortage payment, if applicable. This notice should not be construed as an attempt to collect a debt or a demand for payment contrary to any protection you may have received pursuant to your bankruptcy case.

**New monthly escrow and mortgage payment amount**

| New payment effective date<br>December 01, 2012[1] | Current<br>monthly payment ($) | New<br>monthly payment ($) |
|---|---|---|
| Principal and/or interest | 3,793.22 | 3,793.22 |
| Escrow payment | 982.93 | 1,042.42 |
| Escrow shortage/prepayment[2] | 0.00 | 0.00 |
| **Total payment amount** | **4,776.15** | **4,835.64** |

*1. If you use one of our automatic payment options, we will adjust your electronic withdrawal(s) to ensure your December 01, 2012 payment is made in full.*

*2. If your current monthly payment includes an amount to cover a previous escrow shortage, this amount will be added.  If your current monthly payment includes an adjustment for extra funds you deposited to your escrow account, this amount will be deducted.*

The escrow disclosure indicates an overage of $2,091.09. If your loan is current or is brought current within 30 days of this statement date, a check may be sent in a separate envelope or your next payment amount reduced by the overage amount.

**A guide to your escrow questions and answers is available at:  wellsfargo.com/escrowquestions**

*** This section intentionally left blank ***

Apx. 404

**For informational purposes**

Loan number: [                    ]

---

**The following information covers  your projected escrow account activity from Dec 2012 to Nov 2013**

**Projected escrow account disbursements**

Annualized items to be paid from your escrow account ($):

| | |
|---|---|
| COUNTY TAX | 10,844.99 |
| HAZARD INS | 1,664.00 |
| Total disbursements | 12,508.99 |
| **Monthly escrow payment** | **1,042.42**[1] |

*1. Your monthly escrow payment is calculated by dividing the total disbursements by 12.*

---

**Projected escrow account activity for the next 12 months**

| | Anticipated payments ($) | | | Escrow balance ($) | |
|---|---|---|---|---|---|
| Date | To escrow | From escrow | Description | Projected | Required |
| Dec 2012 | | | Starting balance | 8,345.56 | 6,254.47 |
| Dec 2012 | 1,042.42 | 5,171.97 | HOWARD COUNTY | 4,216.01 | 2,124.92 |
| Jan 2013 | 1,042.42 | 0.00 | | 5,258.43 | 3,167.34 |
| Feb 2013 | 1,042.42 | 0.00 | | 6,300.85 | 4,209.76 |
| Mar 2013 | 1,042.42 | 0.00 | | 7,343.27 | 5,252.18 |
| Apr 2013 | 1,042.42 | 1,664.00 | STATE FARM INS | 6,721.69 | 4,630.60 |
| May 2013 | 1,042.42 | 0.00 | | 7,764.11 | 5,673.02 |
| Jun 2013 | 1,042.42 | 0.00 | | 8,806.53 | 6,715.44 |
| Jul 2013 | 1,042.42 | 5,673.02 | HOWARD COUNTY | 4,175.93[2] | 2,084.84[3] |
| Aug 2013 | 1,042.42 | 0.00 | | 5,218.35 | 3,127.26 |
| Sep 2013 | 1,042.42 | 0.00 | | 6,260.77 | 4,169.68 |
| Oct 2013 | 1,042.42 | 0.00 | | 7,303.19 | 5,212.10 |
| Nov 2013 | 1,042.42 | 0.00 | | 8,345.61 | 6,254.52 |
| **Total** | **12,509.04** | **12,508.99** | | | |

These calculations indicate the projected escrow balance will be more than the required escrow balance.

The projected escrow account activity is based on the most recent tax and/or insurance information available as well as the assumption that your payments will be received as agreed.

*2. **Projected low point**. The point during the 12-month period at which the projected escrow balance will reach its lowest point.*

*3. **Required escrow balance**. To cover unanticipated disbursements, including increases to tax or insurance payments, there is a 2-month minimum escrow balance allowable by state law and/or your mortgage contract. This amount does not include mortgage insurance.*

- *Your 2-month minimum escrow balance is **$2,084.84***
- *State law requires that this minimum escrow balance not exceed **$2,084.84***
- *Note: If you have an adjustable rate mortgage (ARM), you will receive a notice about your new mortgage payment when your ARM rate is scheduled to change.*

---

**Information about your escrow account overage**

| | |
|---|---|
| Your lowest projected escrow balance (low point) ($) | 4,175.93 |
| Less your required minimum escrow account balance ($) | 2,084.84 |
| **This means your escrow account has an overage of ($)** | **2,091.09** |

For informational purposes                    Loan number: [          ]

**The following information covers your escrow account history activity from Aug 2011 to Nov 2012**

| Date | Payments to escrow ($) Projected | Actual | Payments from escrow ($) Projected | Actual | Description | Escrow balance ($) Projected | Actual |
|------|------|------|------|------|------|------|------|
| Aug 2011 | | | | | Starting balance | 2,341.07 | 17,479.72- |
| Aug 2011 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 3,425.49 | 17,479.72- |
| Sep 2011 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 4,509.91 | 17,479.72- |
| Oct 2011 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 5,594.33 | 17,479.72- |
| Nov 2011 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 6,678.75 | 17,479.72- |
| Dec 2011 | 1,084.42 | 0.00[1] | 5,594.33 | 5,171.97[1] | HOWARD COUNTY | 2,168.84 | 22,651.69- |
| Jan 2012 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 3,253.26 | 22,651.69- |
| Feb 2012 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 4,337.68 | 22,651.69- |
| Mar 2012 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 5,422.10 | 22,651.69- |
| Apr 2012 | 1,084.42 | 0.00[1] | 1,607.00 | 1,664.00[1] | STATE FARM INSURANCE C | 4,899.52 | 24,315.69- |
| May 2012 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 5,983.94 | 24,315.69- |
| Jun 2012 | 1,084.42 | 0.00[1] | 0.00 | 0.00 | | 7,068.36 | 24,315.69- |
| Jul 2012 | 1,084.42 | 0.00[1] | 5,811.70 | 5,673.02[1] | HOWARD COUNTY | 2,341.08 | 29,988.71- |
| *Nov 2012 est.* | 0.00 | *38,334.27[1]* | 0.00 | 0.00 | | *2,341.08* | *8,345.56* |
| **Totals** | **13,013.04** | **38,334.27** | **13,013.03** | **12,508.99** | | | |

*1. Indicates where a difference exists between the projected and actual account activity.*

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



**Manage your mortgage payments easily with the Preferred Payment Plan℠**

  • Schedule weekly, biweekly, semi-monthly or monthly payments
  • Save time and money with free, secure withdrawals
  • No due dates to remember or checks to write

It's free, secure and convenient. To enroll, call 1-866-386-8519.

**A guide to your escrow questions and answers is available at: wellsfargo.com/escrowquestions**

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## District of Maryland

In re    **Jeffrey V Howes**      Case No.    **12-30614**

Debtor(s)      Chapter    **13**

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$23,783.00** | **2012 Husband Green Delivery Service Inc.** |
| **$38,540.00** | **2011 Husband Green Delivery Service Inc.** |
| **$49,745.00** | **2010 Husband Green Delivery Service Inc.** |
| **$9,900.00** | **2012 Wife Green Delivery Service, Inc.** |
| **$22,601.00** | **2011 Wife Green Delivery Service, Inc.** |
| **$19,136.00** | **2010 Wife Green Delivery Service, Inc.** |

Apx. 407

2

**2. Income other than from employment or operation of business**

None ■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

---

**3. Payments to creditors**

None ■

***Complete a. or b., as appropriate, and c.***

a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■

b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None ■

c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None ☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Dore, Thomas P et al vs. debtor and wife, 13C12089855** | **Foreclosure** | **Circuit Court for Howard County** | **Sale scheduled for 11/16/12** |

None ■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

3

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**5.  Repossessions, foreclosures and returns**

None ■  List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**6.  Assignments and receiverships**

None ■  a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■  b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

---

**7.  Gifts**

None ■  List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

---

**8.  Losses**

None ■  List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

Apx. 409

4

**9. Payments related to debt counseling or bankruptcy**

None  ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Robert J. Haeger, Esquire** **11403 Seneca Forest Circle** **Germantown, MD 20876** | **8/29/2012** | **10000** |

**10. Other transfers**

None  ■

a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None  ■

b.  List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None  ■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None  ■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None  ■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14.  Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

NAME AND ADDRESS OF OWNER          DESCRIPTION AND VALUE OF PROPERTY          LOCATION OF PROPERTY

---

**15.  Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                                    NAME USED                                    DATES OF OCCUPANCY

---

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

---

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT           NOTICE          LAW

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT           NOTICE          LAW

None
■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                    DOCKET NUMBER                    STATUS OR DISPOSITION

**18 . Nature, location and name of business**

None  ☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Green Delivery Service, Inc.** | **1271** | **14900 Sweitzer Lane Laurel, MD 20707** | **delivery service** | **1989, incorporated 7/1/08** |

None  ■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                              ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None  ■

a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS                                              DATES SERVICES RENDERED

None  ■

b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME                          ADDRESS                          DATES SERVICES RENDERED

None  ■

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                              ADDRESS

None  ■

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS                                              DATE ISSUED

7

---

**20. Inventories**

None ■  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY          INVENTORY SUPERVISOR          DOLLAR AMOUNT OF INVENTORY
                                                        (Specify cost, market or other basis)

None ■  b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY                    NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
                                     RECORDS

---

**21 . Current Partners, Officers, Directors and Shareholders**

None ■  a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS          NATURE OF INTEREST          PERCENTAGE OF INTEREST

None ■  b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS          TITLE          NATURE AND PERCENTAGE
                                         OF STOCK OWNERSHIP

---

**22 . Former partners, officers, directors and shareholders**

None ■  a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME          ADDRESS          DATE OF WITHDRAWAL

None ■  b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS          TITLE          DATE OF TERMINATION

---

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■  If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS                    DATE AND PURPOSE          AMOUNT OF MONEY
OF RECIPIENT,                     OF WITHDRAWAL             OR DESCRIPTION AND
RELATIONSHIP TO DEBTOR                                      VALUE OF PROPERTY

---

**24. Tax Consolidation Group.**

None ■  If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION                    TAXPAYER IDENTIFICATION NUMBER (EIN)

8

**25. Pension Funds.**

None
■

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date __**December 13, 2012**__                    Signature    __**/s/ Jeffrey V Howes**__
                                                                **Jeffrey V Howes**
                                                                Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

APPEAL,CLOSED

# U.S. District Court
# District of Maryland (Baltimore)
# CIVIL DOCKET FOR CASE #: 1:14-cv-02814-ELH

Howes v. Wells Fargo Bank, N.A. et al
Assigned to: Judge Ellen L. Hollander
Related Case: 1:15-cv-01617-ELH
Case in other court: U.S. Bankruptcy Court, 12-30614 &
                         13-00510
                         Fourth Circuit Court of Appeals,
                         15-02332
Cause: 11:101 Bankruptcy (Definitions)

Date Filed: 09/04/2014
Date Terminated: 09/30/2015
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal
(801)
Jurisdiction: Federal Question

**Appellant**

**Jeffrey V. Howes**
                                  represented by  **Robert John Haeger**
                                                       Haeger Law
                                                       11403 Seneca Forest Circle
                                                       Germantown, MD 20876
                                                       13016709787
                                                       Fax: 13016706291
                                                       Email: ecf@haegerlaw.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Selene Finance LP**

V.

**Appellee**

**Wells Fargo Bank, N.A.**
                                  represented by  **Douglas B Riley**
                                                       Treanor Pope and Hughes PA
                                                     500 York Rd
                                                     Towson, MD 21204
                                                       14104947777
                                                     Fax: 14104941658
                                                     Email: dbriley@tph-law.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Appellee**

**US Bank, National Association**        represented by  **Douglas B Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Appellee**

**Carrington Mortgage Services, LLC**      represented by  **Michael Thomas Cantrell**
McCabe Weisberg and Conway PC
312 Marshall Ave Ste 800
Laurel, MD 20707
13014903361
Fax: 13014901568
Email: MdFederalEfilings@mwc-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

        **Kyle James Moulding**
McCabe Weisberg and Conway LLC
312 Marshall Ave Ste 800
Laurel, MD 20707
3014903361
Fax: 3014901568
Email: kmoulding@mwc-law.com
*ATTORNEY TO BE NOTICED*

**Appellee**

**Christiana Trust, a Division of Wilmington Savings Fund Society, FSB**      represented by  **Michael Thomas Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

        **Kyle James Moulding**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Selene Finance LP**        represented by  **Michael Thomas Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

        **Kyle James Moulding**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Debtor**

**Jeffrey V. Howes**                    represented by    **Robert John Haeger**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*


**Trustee**

**Ellen W. Cosby**                      represented by    **Ellen W Cosby**
                                                          Chapter 13 Trustee
                                                          PO Box 20016
                                                          Baltimore, MD 21284
                                                          14108255923
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Susan C Scanlon**
                                                          Office of Ellen W Cosby, Chapter 13
                                                          Trustee
                                                          300 E Joppa Rd., Ste. 409
                                                          Towson, MD 21286
                                                          14108255923
                                                          Fax: 14108255904
                                                          Email: sscanlon@ch13balt.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/04/2014 | 1 | NOTICE OF APPEAL FROM BANKRUPTCY COURT (Maryland). Adversary Proceeding Case #13-00510 and Bankruptcy Petition Case #12-30614, filed by Jeffrey V. Howes. (Attachments: # 1 Transmittal, # 2 Adversary Case Docket Sheet with designations , # 3 Bankruptcy Docket Sheet, APPELLANT DESIGNATIONS FROM ADVERSARY CASE# 13-00510: # 4 Adversary case pleading #1, # 5 Adversary case pleading #1-1, # 6 Adversary case pleading #1-2, # 7 Adversary case pleading #1-3, # 8 Adversary case pleading #1-4, # 9 Adversary case pleading #1-5, # 10 Adversary case pleading #1-6, # 11 Adversary case pleading #5, # 12 Adversary case pleading #5-1, # 13 Adversary case pleading #8, # 14 Adversary case pleading #8-1, # 15 Adversary case pleading #8-2, # 16 Adversary case pleading #8-3, # 17 Adversary case pleading #, # 18 |

| | | |
|---|---|---|
| | | Adversary case pleading #5, # <u>19</u> Adversary case pleading #11, # <u>20</u> Adversary case pleading #12, # <u>21</u> Adversary case pleading #12-1, # <u>22</u> Adversary case pleading #12-2, # <u>23</u> Adversary case pleading #13, # <u>24</u> Adversary case pleading #14, # <u>25</u> Adversary case pleading #16, # <u>26</u> Adversary case pleading #17, # <u>27</u> Adversary case pleading #17-1, # <u>28</u> Adversary case pleading #18, # <u>29</u> Adversary case pleading #21, # <u>30</u> Adversary case pleading #21-1, # <u>31</u> Adversary case pleading #22, # <u>32</u> Adversary case pleading #24, # <u>33</u> Adversary case pleading #26, # <u>34</u> Adversary case pleading #26-1, # <u>35</u> Adversary case pleading #27, # <u>36</u> Adversary case pleading #27-1, # <u>37</u> Adversary case pleading #27-2, # <u>38</u> Adversary case pleading #27-3, # <u>39</u> Adversary case pleading #28, # <u>40</u> Adversary case pleading #30, # <u>41</u> Adversary case pleading #30-1, # <u>42</u> Adversary case pleading #34, # <u>43</u> Adversary case pleading #34-1, # <u>44</u> Adversary case pleading #35, # <u>45</u> Adversary case pleading #36, # <u>46</u> Adversary case pleading #42, # <u>47</u> Adversary case pleading #43, # <u>48</u> Adversary case pleading (Entered: 09/05/2014) |
| 09/04/2014 | 2 | APPELLANT DESIGNATIONS FROM BANKRUPTCY PETITION CASE # 12-30614 by Jeffrey V. Howes (and Bankrupty case docket sheet with designations) (Attachments: # <u>1</u> Bankruptcy case pleading #25, # <u>2</u> Bankruptcy case pleading #36, # <u>3</u> Bankruptcy case pleading #36-1, # <u>4</u> Bankruptcy case pleading #51, # <u>5</u> Bankruptcy case pleading #51-1, # <u>6</u> Bankruptcy case pleading #57, # <u>7</u> Bankruptcy case pleading #57-1, # <u>8</u> Bankruptcy case pleading #61, # <u>9</u> Bankruptcy case pleading #61-1, # <u>10</u> Bankruptcy case pleading #61-2-2, # <u>11</u> Bankruptcy case pleading #61-3, # <u>12</u> Bankruptcy case pleading #61-4, # <u>13</u> Bankruptcy case pleading #61-5, # <u>14</u> Bankruptcy case pleading #61-6, # <u>15</u> Bankruptcy case pleading #61-7, # <u>16</u> Bankruptcy case pleading #61-8, # <u>17</u> Bankruptcy case pleading #61-9, # <u>18</u> Bankruptcy case pleading #61-10, # <u>19</u> Bankruptcy case pleading #61-11, # <u>20</u> Bankruptcy case pleading #61-12, # <u>21</u> Bankruptcy case pleading #65, # <u>22</u> Bankruptcy case pleading #83, # <u>23</u> Bankruptcy case pleading #111)(dass, Deputy Clerk) Modified on 9/5/2014 (dass, Deputy Clerk). (Entered: 09/05/2014) |
| 09/05/2014 | | Set Deadlines: Appellant's Brief due by 9/19/2014. (dass, Deputy Clerk) (Entered: 09/05/2014) |
| 09/05/2014 | 3 | Bankruptcy Letter to Counsel re: Briefs and ECF filing requirements. (dass, Deputy Clerk) (Entered: 09/05/2014) |
| 09/10/2014 | 4 | SUPPLEMENTAL DESIGNATION OF RECORD by Jeffrey V. Howes (Attachments: # <u>1</u> Adversary Proceeding case no. 13-0510 Docket Sheet, # <u>2</u> Adversary case pleading #46, # <u>3</u> Adversary case pleading #46-1, # <u>4</u> Adversary case pleading #, # <u>5</u> Adversary case pleading #47-1)(dass, Deputy Clerk) (Entered: 09/11/2014) |
| 09/18/2014 | 5 | Consent MOTION for Extension of Time to File *Appellants' Brief to September 29, 2014* by Jeffrey V. Howes Responses due by 10/6/2014 (Attachments: # <u>1</u> Text of Proposed Order)(Haeger, Robert) (Entered: 09/18/2014) |

| 09/18/2014 | 6 | ORDER granting 5 Consent Motion for Extension of Time to File Apellants' Brief. Signed by Judge Ellen L. Hollander on 9/18/14. (dass, Deputy Clerk) (Entered: 09/18/2014) |
|---|---|---|
| 09/18/2014 | | Set/Reset Deadlines: Appellant Brief due by 9/29/2014. (dass, Deputy Clerk) (Entered: 09/18/2014) |
| 09/29/2014 | 7 | Appellant's BRIEF by Jeffrey V. Howes. Appellee Brief due by 10/17/2014. (Haeger, Robert) (Entered: 09/29/2014) |
| 10/01/2014 | 8 | Appellant's AMENDED BRIEF by Jeffrey V. Howes. Appellee Brief due by 10/20/2014. (Haeger, Robert) Modified on 10/2/2014 (dass, Deputy Clerk). (Entered: 10/01/2014) |
| 10/05/2014 | 9 | Appellant's Appendix to 8 Amended BRIEF by Jeffrey V. Howes. (Haeger, Robert) Modified on 7/2/2015 (hmls, Deputy Clerk). (Entered: 10/05/2014) |
| 10/06/2014 | 10 | MOTION to Supplement Record on Appeal re 9 Appellant's Brief *Appendix* by Jeffrey V. Howes Responses due by 10/23/2014 (Attachments: # 1 Text of Proposed Order)(Haeger, Robert) (Entered: 10/06/2014) |
| 10/13/2014 | 11 | Appellee's BRIEF by US Bank, National Association, Wells Fargo Bank, N.A.. Appellant Reply Brief due by 10/27/2014. (Riley, Douglas) (Entered: 10/13/2014) |
| 10/14/2014 | 12 | MOTION for Extension of Time to File Response/Reply *to Appellants' Brief* by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Responses due by 10/31/2014 (Attachments: # 1 Text of Proposed Order)(Cantrell, Michael) (Entered: 10/14/2014) |
| 10/14/2014 | 13 | ORDER granting Appellees' 12 Motion for Extension of Time to File Response to Appellants Brief. Signed by Judge Ellen L. Hollander on 10/14/14. (dass, Deputy Clerk) (Entered: 10/15/2014) |
| 10/16/2014 | 14 | ORDER granting Appellants' 10 Motion to supplement record on appeal; setting deadline that Appellees may move to rescind order. Signed by Judge Ellen L. Hollander on 10/15/14. (dass, Deputy Clerk) (Entered: 10/16/2014) |
| 10/16/2014 | 15 | Appellee's BRIEF by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Appellant Reply Brief due by 10/30/2014. (Moulding, Kyle) (Entered: 10/16/2014) |
| 10/27/2014 | 16 | Consent MOTION for Extension of Time to File Response/Reply as to 11 Appellee's Brief *to October 30, 2014* by Jeffrey V. Howes Responses due by 11/13/2014 (Attachments: # 1 Text of Proposed Order)(Haeger, Robert) (Entered: 10/27/2014) |
| 10/29/2014 | 17 | ORDER granting 16 Unopposed Motion for Extension of Time to File Appellants' First Reply Brief. Signed by Judge Ellen L. Hollander on 10/28/2014. (dass, Deputy Clerk) (Entered: 10/29/2014) |

| 10/30/2014 | 18 | Appellant's REPLY BRIEF by Jeffrey V. Howes. (Haeger, Robert) (Entered: 10/30/2014) |
|---|---|---|
| 10/30/2014 | 19 | Appellant's BRIEF by Jeffrey V. Howes. Appellee Brief due by 11/17/2014. (Haeger, Robert) (Entered: 10/30/2014) |
| 10/31/2014 | 20 | MOTION to Strike 19 Appellant's Brief *[Appellants' Second Amended Brief filed on October 30, 2014]* by US Bank, National Association, Wells Fargo Bank, N.A. Responses due by 11/17/2014 (Attachments: # 1 Text of Proposed Order Striking Appellants' Second Amended Brief)(Riley, Douglas) (Entered: 10/31/2014) |
| 11/05/2014 | 21 | NOTICE of Appearance by Kyle James Moulding on behalf of Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP (Moulding, Kyle) (Entered: 11/05/2014) |
| 11/08/2014 | 22 | RESPONSE to Motion re 20 MOTION to Strike 19 Appellant's Brief *[Appellants' Second Amended Brief filed on October 30, 2014]* filed by Jeffrey V. Howes. Replies due by 12/1/2014. (Attachments: # 1 Exhibit Redlined Version, # 2 Text of Proposed Order)(Haeger, Robert) (Entered: 11/08/2014) |
| 12/15/2014 | 23 | Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* by Jeffrey V. Howes Responses due by 1/5/2015 (Attachments: # 1 Exhibit 1-Bankruptcy Continuance Motions, # 2 Exhibit 2-Amended Chapter 13 Plan, # 3 Text of Proposed Order)(Haeger, Robert) (Entered: 12/15/2014) |
| 12/15/2014 | 24 | ORDER re 23 Appellants Emergency Motion to Stay Plan Confirmation Pending Appeal filed by Jeffrey V. Howes. Signed by Judge Ellen L. Hollander on 12/15/2014. (jnls, Deputy Clerk) (Entered: 12/15/2014) |
| 12/15/2014 | 25 | RESPONSE to Motion re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by Carrington Mortgage Services, LLC, Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, Selene Finance LP. Replies due by 1/5/2015. (Attachments: # 1 Exhibit Objection to Chapter 13 Plan by Appellee, # 2 Exhibit Trustee's Opposition to Continuance)(Moulding, Kyle) (Entered: 12/15/2014) |
| 12/15/2014 | 26 | RESPONSE to Motion re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by US Bank, National Association, Wells Fargo Bank, N.A.. Replies due by 1/5/2015. (Riley, Douglas) (Entered: 12/15/2014) |
| 12/15/2014 | 27 | RESPONSE in Opposition re 23 Emergency MOTION to Stay *Pending Appeal December 17, 2014 Bankruptcy Court Hearing on Plan Confirmation* filed by Ellen W. Cosby. Replies due by 1/5/2015. (Scanlon, Susan) (Entered: 12/15/2014) |
| 12/16/2014 | 28 | NOTICE of Appearance by Susan C Scanlon on behalf of Ellen W. Cosby (Scanlon, Susan) (Entered: 12/16/2014) |

| 12/16/2014 | 29 | ORDER granting 23 Emergency Motion to Stay Plan Confirmation Pending Appeal subject to the posting of a bond by appellants within 24 hours of the docketing of this order in the bond amount of $100,000. Signed by Judge Ellen L. Hollander on 12/16/2014. (jnls, Deputy Clerk) (Entered: 12/16/2014) |
| --- | --- | --- |
| 09/30/2015 | 30 | MEMORANDUM OPINION. Signed by Judge Ellen L. Hollander on 9/30/2015. (jnls, Deputy Clerk) (Entered: 10/01/2015) |
| 09/30/2015 | 31 | ORDER denying 20 Motion of Wells Fargo and US Bank to Strike; the Bankruptcy Courts Order entered May 12, 2014, and its Order entered July 22, 2014, are AFFIRMED; denying 1 Appeal. Signed by Judge Ellen L. Hollander on 9/30/2015. (jnls, Deputy Clerk) (Entered: 10/01/2015) |
| 10/27/2015 | 32 | NOTICE OF APPEAL as to 31 Order on Motion to Strike, by Jeffrey V. Howes. Filing fee $ 505, receipt number 0416-5674561. (Haeger, Robert) Modified on 10/28/2015 (sls, Deputy Clerk). (Entered: 10/27/2015) |
| 10/28/2015 | 33 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 32 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (sls, Deputy Clerk) (Entered: 10/28/2015) |
| 10/29/2015 | 34 | USCA Case Number 15-2332 for 32 Notice of Appeal filed by Jeffrey V. Howes. Case Manager - Richard Sewell (sls, Deputy Clerk) (Entered: 10/29/2015) |
| 11/04/2015 | 35 | ORDER re teleconference. Signed by Judge Ellen L. Hollander on 11/4/2015. (jnls, Deputy Clerk) (Entered: 11/05/2015) |
| 11/10/2015 | 36 | DESIGNATION of Record on Appeal by Jeffrey V. Howes re 32 Notice of Appeal (Haeger, Robert) (Entered: 11/10/2015) |
| 11/10/2015 | 37 | DESIGNATION of Record on Appeal by Jeffrey V. Howes re 32 Notice of Appeal (Haeger, Robert) (Entered: 11/10/2015) |
| 11/23/2015 | 38 | ORDER re teleconference. Signed by Judge Ellen L. Hollander on 11/23/2015. (jnls, Deputy Clerk) (Entered: 11/23/2015) |
| 12/08/2015 | 39 | MEMORANDUM. Signed by Judge Ellen L. Hollander on 12/8/2015. (jnls, Deputy Clerk) (Entered: 12/09/2015) |
| 12/08/2015 | 40 | ORDER dismissing ELH-15-1617 as moot. Signed by Judge Ellen L. Hollander on 12/8/2015. (jnls, Deputy Clerk) (Entered: 12/09/2015) |

| PACER Service Center | | |
| --- | --- | --- |
| Transaction Receipt | | |
| 02/29/2016 13:00:54 | | |
| PACER Login: | tp0047:2647332:0 | Client Code: |

Date signed November 05, 2014



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Jeffrey V. Howes | * | Case No. 12-30614-RAG |
| | | Chapter 13 |
| Debtor | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| Jeffrey V. Howes and | * | |
| Tonya H. Howes | | |
| | * | |
| Plaintiffs | | |
| | * | |
| v. | | Adversary No. 13-00510-RAG |
| | * | |
| Wells Fargo Bank, N.A. | | |
| U.S. Bank, N.A. | * | |
| Carrington Mortgage Services, LLC | | |
| Christiana Trust, a Division of | * | |
| Wilmington Savings Fund Society, FSB | | |
| | * | |
| Defendants | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION IN SUPPORT OF ORDERS
## DISMISSING COMPLAINT AND DENYING MOTIONS TO RECONSIDER

## I.   Preliminary Statement

On July 22, 2014, this Court entered an Order Denying Plaintiff's Motion to Reconsider

Order Dismissing Complaint and Objection to Ownership Affidavit (Order Denying

Reconsideration) (Dkt. No. 36).  The Order Denying Reconsideration reaffirmed the ruling

embodied in the Order Dismissing Complaint for Failure to State a Claim (Order Dismissing)

entered on May 12, 2014 (Dkt. No. 28).  The Order Dismissing memorialized a March 4, 2014

oral ruling (March 4th Ruling) and provided as follows:

> This Adversary Proceeding was commenced by the filing of a
> Complaint to Determine Secured Status, Sanctions, and Other
> Relief (Complaint) on September 3, 2013.  Underlying the
> Complaint is (1) the theme that as a result of the assignments of the
> loan documents (including to a securitized trust), the Plaintiffs "do
> not know" which one of the Defendants is entitled to receive their
> residential mortgage payments and (2) their somewhat
> contradictory yet corollary efforts to establish that at some point,
> the trust terminated and/or the assignments were somehow
> botched, so that none of the Defendants are legitimately entitled to
> enforce the obligation and/or may owe the Plaintiffs damages for
> "fraud" and technical violations of consumer protection laws.
> None of the alleged claims are grounded in substantive rights
> created by the Bankruptcy Code.
>
> \*        \*        \*
>
> [In the March 4th Ruling], the Court stated that Count I would be
> dismissed with prejudice because the Plaintiffs failed to state, and
> could not assert, a legitimate claim for fraud and that the remaining
> claims would be dismissed without prejudice pending (a)
> Carrington's and Christiana's provision of proof of ownership of
> the defaulted note and mortgage secured by the Plaintiffs'
> residence and (b) an opportunity to the Plaintiffs to file either an
> objection to claim, an amended complaint, or both, that assert
> legitimate, non-specious claims for relief.

As of March 4th, Defendants Carrington Mortgage Services, FSB (Carrington) and

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich

Mortgage Loan Trust, Series 2013-2 (Christiana) were respectively the holder and servicer who

2

claimed to be entitled to enforce the November 30, 2001 Deed of Trust (DOT) against Plaintiffs' home.[1]  They were given until April 3, 2014 to, "submit an affidavit that (1) explains their claim of ownership to the note and mortgage (sic) that underlie Claim No. 4-2 and . . . (2) supplies an inventory of documents that memorializes their chain of title . . . ."  Thereafter, Plaintiffs were given until May 3, 2014 to file either an objection to claim, an amended complaint, or both.

Carrington and Christiana facially complied with the April 3rd deadline by filing the Line and Affidavit.  Eschewing compliance, Plaintiffs instead filed: (a) on May 5, 2014 a Motion to Reconsider Oral Ruling on Motions to Dismiss and Objection to Ownership Affidavit (First Motion to Reconsider) (Dkt. No. 27) and (b) on May 27, 2014 a Motion to Reconsider Order Dismissing Complaint and Objection to Ownership Affidavit (Second Motion to Reconsider) (Dkt. No. 34).  Those motions raised identical arguments and were heard, and orally denied, on July 16, 2014.  The Order Denying Reconsideration embodies that ruling.  It also afforded Plaintiffs seven (7) days to either file an amended complaint, an objection to claim, or both.  If they did not meet the deadline, the Order Denying Reconsideration provided that this Adversary Proceeding would be dismissed with prejudice.  The Oversigned fully expected Plaintiffs to file an amended complaint by the deadline to seek redress for the remaining alleged wrongs they claim to have suffered.  However, Plaintiffs again declined to file an amended complaint (or objection to claim) and instead filed a Notice of Appeal (Dkt. No. 38).  Because this Court orally explained its two prior rulings, it was decided that a written opinion would aid the decisional process on appeal, see *Grand Jury Proceedings Under Seal v. United States*, 947 F. 2d. 1188,

---

[1] The proofs of claim and related documents that rely upon the DOT and its companion Construction Note (Note) (also dated November 30, 2001) are included at Claim No. 4 on the Claims Register in Case No. 12-30614 (Main Case) and are also listed in the Line and Affidavit Certifying Ownership of Debt Instrument (Line and Affidavit) filed by Carrington on April 3, 2014 at Dkt. No. 26 in this Adversary Proceeding.  It appears from the Assignment of Claims Transfer Agreement filed on July 14, 2014 at Dkt. No. 116 in the Main Case that a new mortgage servicer, Selene Finance, LP (Selene) (which may also be a trade name of an existing party), may have been appointed.

3

1190 (4th Cir. 1991) and this Opinion was drafted to that end. Two questions relevant to the

appeal are presented: (1) whether Count One of the Plaintiff's Complaint to Determine Secured

Status, Sanctions and Other Relief (Complaint) alleged, or could be amended to allege, a

meritorious claim for fraud and (2) assuming that it did not (and could not) whether under the

circumstances of this Adversary Proceeding, this Court was invested with sufficient discretion to

require that an amended complaint be filed promptly and, if it was not, dismiss the Complaint

with prejudice.

## II.    The Bankruptcy Case

Plaintiff-Debtor, Jeffrey V. Howes, filed his Voluntary Petition for relief under Chapter

13 of the Bankruptcy Code on November 15, 2012.[2] Mr. Howes listed his residence at 7000

Meandering Stream Way, Fulton, MD, 20759 (Residence) on his Schedule A and valued it at

$650,000 (Dkt. No. 14). Mr. Howes also listed over $306,944.02 in personal property on

Schedule B, including over $264,000 in stock and equity funds, with approximately $160,000 of

that sum in what appear to be liquid accounts. He did not list any claims, causes of action or

rights of setoff against any of the Defendants in this Adversary Proceeding. To the contrary, he

answered "none" in response to each relevant question on his Schedule B.[3] Wells Fargo Home

Mortgage (Wells Fargo Servicer) was listed by the Debtor as the servicer of the mortgage against

the Residence, albeit with its claim disputed. A total of $27,920.70 in unsecured debt was listed

---

[2] This Court relied in part upon knowledge of the record of the Main Case in entering the orders on appeal. As courts "may properly look beyond the complaint only to items in the record of the case or to matters of general public record[,]" *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998) when ruling upon a motion to dismiss for failure to state a claim, such reliance is appropriate.

[3] Debtor also attached a lengthy "Exhibit" to his Schedules. The Exhibit seeks to confirm that the information included in the schedules is without prejudice to the alleged rights later asserted in this Adversary Proceeding while also under-cutting Debtor's affirmance under oath and penalty of perjury of the truthfulness of certain of the information included in the Schedules.

4

in Schedule F.[4]  Debtor and his wife own their own business, Green Delivery Service, Inc., and,

per Debtor's Schedule I, have gross monthly income of $6,800.  The Debtor listed monthly home

mortgage payments of $4,870 on his Schedule J and a net monthly income of $310.[5]

Debtor filed his Chapter 13 Plan (Plan) on December 13, 2012 (Main Case, Dkt. No. 13).

Debtor represented in the Plan that he would pay $1,157 per month to the Trustee with $1,018 of

that to be paid to Wells Fargo over thirty-five (35) months to cure an alleged arrears of $35,662.[6]

However, on March 8, 2013, Wells Fargo Servicer, through its attorney Brian McNair, Esquire,

filed a Proof of Claim (Claim No. 4-1).  Claim No. 4-1 identified US Bank National Association,

as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells

Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 (US

Bank as the creditor, meaning, as stated in the claim, "the person or other entity to whom the

debtor owes money or property."  Claim No. 4-1 asserted that $740,334.24 was owed to US

Bank by the Debtor and that the claim was secured by a deed of trust against the Residence.  It

was also asserted that the tidy sum of $200,196.79 was in arrears.  Seven days later, on March

15, 2013, Wells Fargo Servicer filed an Amended Proof of Claim (Claim No. 4-2), also through

Mr. McNair, but this time on behalf of creditor Wells Fargo Bank, N.A. (Wells Fargo Bank).

---

[4] Only one general unsecured claim of $560.80 was filed and total unsecured claims (including priority claims) have been reduced to less than $3,000 due to resolved objections.

[5] While $4,870 is listed as a monthly expense, Plaintiffs had not paid this obligation for over seven years prior to the commencement of the Main Case and have not paid it since the Main Case was filed.  Debtor also attempted to exempt a total of $104,763 in property per his Schedule C.  That figure is well in excess of even the most liberal, arguable exemption ceiling.  The Trustee objected to this on January 3, 2013 in the Main Case (Dkt. No. 22).  Debtor did not respond directly to the objection but did file an Amended Schedule C on January 15, 2013 that significantly reined in his blatant overreach.

[6] The Plan also included verbiage that was intended to, in large part, exempt him from the potential impact of *res judicata* upon confirmation.  An Amended Chapter 13 Plan (Amended Plan) was filed on October 4, 2014 (Main Case, Dkt. No. 83).  In it, the Debtor represented that he would pay $321 per month to the Trustee and the verbiage was eliminated.  Instead, there is an acknowledgement in the Amended Plan that the outcome of this Adversary Proceeding will likely impact upon the Amended Plan.  Because of the obvious roadblock presented by this Adversary Proceeding, the Court has put confirmation on hold pending final resolution of the Complaint.

5

Claim No. 4-2 was otherwise identical to Claim No. 4-1. However, while Claim No. 4-1 was devoid of underlying documentation, Claim No. 4-2 included (1) a mortgage proof of claim attachment that gave a detailed statement of the alleged debt included a mélange of charges and fees allegedly assessed because of the Debtor's default and the resulting foreclosures, (2) redacted loan documents, including copies of the Note,[7] the DOT and an Allonge dated November 21, 2009 that identifies Wachovia as the "Present Holder" (and indicates an intent to assign the Note without recourse to US Bank) and (3) informational correspondence from Wells Fargo Servicer. The Note and DOT are signed by the Debtor and his wife. Claim No. 4-2 was thereafter impacted by three Transfers of Claim Other than for Security filed in the Main Case at Dkt. Nos. 51, 57 and 65, respectively, pursuant to Bankruptcy Rule 3001(e)(2). Dkt. No. 51 (Transfer No. 1) was dated and filed May 29, 2013 and purported to memorialize the transfer of Claim No 4-2 from Wells Fargo Bank to Carrington. Dkt. No. 57 was dated and filed June 11, 2013 and purported to amend Dkt. No. 51 by memorializing the transfer of Claim No. 4-2 from Wells Fargo Bank to Christiana. Dkt. No. 65 is dated July 10, 2014, was filed on July 14, 2014 and purports to memorialize the transfer of Claim No. "4" (filed on March 8, 2013) from Carrington to Christiana c/o Selene.

On April 2, 2013, Debtor filed an Objection to Allowance of Claim filed by Wells Fargo Bank, N.A. (Objection to Claim) (Main Case, Dkt. No. 36). The Objection to Claim was no more than two substantive pages long and its primary thrust was that because there was no apparent endorsement of the Note from US Bank to Wells Fargo Bank, Wells Fargo Bank was

---

[7] On the signature page of the Note, it is endorsed without recourse by the Columbia Bank (Columbia) to Wells Fargo Servicer and then by an unidentified entity (through its Assistant Secretary) also to Wells Fargo Servicer and it is also endorsed to no one in particular by Wachovia Bank, National Association, (Wachovia) as Trustee under the pooling and servicing agreement dated as of May 2003.

6

not a creditor of Mr. Howes and did not have standing to file a proof of claim.[8]  Neither Wells

Fargo Bank, nor anyone else, filed a response to the Objection to Claim.  Nevertheless, on June

17, 2013, the Court held a hearing on the same (Main Case, Dkt. No. 62).  Among other things,

the hearing was held because it was apparent that the Objection to Claim had not been served on

all the potential parties in interest.[9]  Moreover, during the hearing, Mr. Haeger suggested that

perhaps the Objection to Claim should be supplanted by an adversary proceeding because the

Debtor's attack would likely draw into question the "extent" of the lien.  Transcript of Hearing at

5 (June 17, 2013) (Main Case, Dkt. No. 132).[10]  See Federal Rules of Bankruptcy Procedure

Rule 7001(2).[11]  Over two months later, on September 3, 2013, the Complaint was filed,

commencing this Adversary Proceeding.[12]

### III.    The Adversary Proceeding

At the beginning of its factual recitation, the Complaint acknowledges that Mr. and Mrs.

Howes entered into the DOT and Note with Columbia and that the Residence was secured

thereby.  The Plaintiffs also admit that they, "suffered a decline in income in 2008 as a result of

the Great Recession, [had] insufficient income to cover the Note payments [and had to use] their

---

[8] The Objection to Claim also asserted that (a) certain payments by Mr. Howes had not been credited and (b) foreclosure costs could not be recovered because the underlying foreclosures were filed by entities who lacked standing to enforce the DOT and Note. On May 15, 2013, Wells Fargo Bank withdrew its November 9, 2012 entry of appearance and request for notice in the Main Case (Dkt. Nos. 9 and 49).  Transfer No. 1 was filed fourteen days after Wells Fargo Bank's withdrawal of its entry of appearance.

[9] The Objection to Claim could not have been served on the additional parties when it was filed because those parties had not then entered the proceeding.

[10] Since then, Mr. Haeger has said or implied more than once on the record that the Oversigned suggested or recommended the filing of this Adversary Proceeding.  The Court has mistakenly said the same thing on the record at least once. However, the transcript of the June 17, 2013 hearing sets the record straight.

[11] An objection to claim may be included in an adversary proceeding. See Federal Rules of Bankruptcy Procedure Rule 3007(b).  The Objection to Claim was denied without prejudice on June 24, 2013.  From this point forward, unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[12] The confirmation hearing on Debtor's Amended Plan was scheduled for the day after the Complaint was filed.

7

savings to bridge the gap until their savings were exhausted." They further admit that they

"defaulted on the Note on April 2, 2009, and then fell more than 60 days behind in June 2009."

The Complaint then summarizes approximately four years of fruitless, and no doubt frustrating,

loan modification negotiations with Wells Fargo.[13]  Per the Complaint, these negotiations

continued after Wells Fargo began to foreclose.  Plaintiffs essentially take the position (laden

with dense jargon from the Home Affordable Modification Program (HAMP)) that the attempted

modification failed either because of the hardheadedness, incompetence or negligence of Wells

Fargo.

    The Complaint then describes the foreclosure proceedings which allegedly began in, or

around, June 16, 2009.  Per the Complaint, the first foreclosure was filed by US Bank (as

principal, per the Complaint) and Wells Fargo (as US Bank's agent, per the Complaint) but later

voluntarily dismissed on January 3, 2011 because defective, "robo-signed" affidavits were

utilized by the Substitute Trustees.  As for the second foreclosure case, Plaintiffs assert that

Wells Fargo did not have standing to file it because the "[DOT] was removed from the

[securitized trust that previously held the DOT] on January 1, 2012" and the Securitized Trust

"terminated . . . on January 25, 2012" and had "ceased to exist by February 21, 2012, the date the

[foreclosure] case was filed."[14]  Relying upon the alleged termination of the Securitized Trust

and the Exhibits listed in footnote 14, Plaintiffs allege that the "[DOT] was paid off on January

1, 2012".  Needless to say, that allegation is not true in light of the other assertions in the

---

[13] The Complaint does not appear to distinguish between Wells Fargo Bank and Wells Fargo Servicer. From this point forward, they will be collectively referred to as Wells Fargo.

[14] This allegation is purportedly supported by Exhibits 2A (Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-4 – Certificate Distribution Summary), 2B (Collateral Statement) and 2C (Loan Level Data) attached to the Complaint.

8

Complaint and Mr. Howes own testimony under oath.[15]   Transcript of Hearing at 19 (Jan. 27,

2014) (Main Case, Dkt. No. 130). Plaintiffs finally assert that the second foreclosure was on the

verge of dismissal for something akin to a failure to prosecute when Mr. Howes commenced the

Main Case.

The Howes wrap up their factual allegations with a summary of the events in the Main

Case and the claims that (1) they received no notice from Wells Fargo of the transfer of either the

Note or the right to service the DOT, (2) they received no communication from either Carrington

or Christiana regarding their asserted interest in, and right to enforce, the DOT other than the

notices filed in the Main Case and (3) they "do not know the identity of the rightful owner of the

Note" and that, on information and belief, "none of the Defendants are in possession of the

Note."

Count I of the Complaint asserts that Wells Fargo committed fraud and relies upon

Section 105 of the Code and Rule 9011 as its legal underpinning.[16]   The essence of Count I is

paragraph sixty-seven (67) which states:

> Wells Fargo filed its Amended Claim as creditor with the intent to
> defraud this Court, the Debtor, and the estate created by the
> Bankruptcy Case, by hiding the fact that the Trust terminated back
> in January 2012 and therefore it was not entitled to collect the
> Second Foreclosure Fees. Wells Fargo sought to hide Trust
> termination by not attaching to the Amended Claim evidence of
> Trust termination, although required to do so by Bankruptcy Rule
> 3001 and the settlement it reached with the 49 State Attorneys'
> General effective April 5, 2012 . . . . Wells Fargo failed to disclose
> Trust termination in the Amended Claim to conceal the fact that
> the Second Foreclosure Case was wrongfully filed, contained
> numerous false and fraudulent affidavits regarding standing to

---

[15] However, it may be that, contrary to the Complaint's express language, Plaintiffs contend that the Securitized Trust itself was "paid off" although the particulars of that are at best ambiguous. Nevertheless, Counsel for Wells Fargo acknowledged that the Securitized Trust had terminated. Transcript of Hearing at 10 (Jan. 6, 2014) (Dkt. No. 46).

[16] Section 105 is the bankruptcy "All Writs" statute and Rule 9011 is the Bankruptcy counterpart to Federal Rule of Civil Procedure 11. Neither create independent substantive rights or claims for relief, commonly understood.

9

> foreclose, including the Ownership Affidavit, Declaration
> Affidavit, and NIF Affidavit, and the fact that the Trust lacked
> standing to file the Claim.

Beyond these conclusory assertions, the balance of Count I is a mish-mosh of allegations

regarding allegedly false claims filed by Wells Fargo in other bankruptcy cases, the disparity in

strength and resources of banks versus consumer debtors, the general difficulty debtors have in

ferreting out the incipient "fraud" that underlies proofs of claim and whether Wells Fargo was

entitled to the whopping sum of $2,924.50 in foreclosure fees and costs.

Count II is allegedly grounded upon Sections 105 and 506 of the Code.[17]  It elaborates

upon the core assertion of the Objection to Claim and asserts that because (a) the Securitized

Trust terminated, (b) the Note was not properly endorsed and (c) the original Note has been lost,

none of the Defendants have a right under Maryland law to enforce the DOT and Note.  Count

III is allegedly grounded upon Bankruptcy Rule 3001(c)(2)(D).  Here, Plaintiffs seek sanctions

against Wells Fargo and US Bank for their failure to attach supporting documents to Claim Nos.

4-1 and 4-2 and then to properly amend the same. [18]

The remaining counts are all allegedly grounded upon non-bankruptcy state or federal

law.  In summary, they allege the following causes of action:

> (a) Count IV is against Wells Fargo, US Bank and Christiana and
> asserts a claim for unlawful inspection fees pursuant to § 12-1027
> of the Commercial Law Article of the Annotated Code of

---

[17] The primary objective of Section 506 is to determine a creditor's secured status based upon the value of the creditor's interest in estate collateral.  Roughly speaking, the value of the collateral will normally dictate the value of the lien, with any excess debt left unsecured.

[18] Rule 3001(c)(2)(D) is a part of a relatively new general directive that requires creditors, particularly secured creditors, to support their proofs of claim with underlying documentation when they are filed.  It is worth noting that in the event of non-compliance, subpart (D), relied upon by the Plaintiffs, provides sanctions consisting of barring the claimant from offering into evidence the underlying documentation in a contested matter or adversary proceeding, "unless the court determines that the failure was substantially justified or is harmless . . ." or, if the court concludes it is warranted, an award of "other appropriate relief" including attorney's fees caused by the failure to provide the underlying documentation.  Outright denial of the claim is not expressly included as a remedy.

10

Maryland. It is asserted by the Plaintiffs that a total of $320 in fees were illegitimate.

(b) Count V is against Wells Fargo, US Bank, "Unknown Defendant", and Christiana and asserts a claim for truth in lending violations under 15 U.S.C. §§ 1639c(h) and 1641(g). Plaintiffs allege that none of the Defendants, including the "Unknown Defendant", gave them a litany of required notices upon the transfer of the Note and that Plaintiffs suffered actual damages because they did not know (a) the true owner of the Note and (b) did not learn that Defendants lacked standing to file the second foreclosure case. Plaintiffs also seek statutory damages for each alleged violation.

(c) Count VI is against Wells Fargo, US Bank and Christiana and relies upon the Federal Fair Debt Collection Practices Act and the various alleged "false and deceptive" representations of the Defendants. Plaintiffs aver that as a result, they have been damaged in wages lost, "lost time from other activities, been afraid they would lose their property to foreclosure, lost hope the government's various foreclosure programs were honest attempts to help them, worried that bankruptcy did not protect them from bogus claims," and have also suffered mental anguish and emotional distress.

(d) Count VII is against Wells Fargo, US Bank, and Christiana and relies upon the Maryland Consumer Debt Collection Act. This Count avers that the Defendants sought to collect amounts that they knew they were not lawfully entitled to collect and that Plaintiffs have suffered emotional distress and mental anguish as a result.

(e) Count VIII is against Wells Fargo and US Bank and relies upon the Maryland Consumer Protection Act. Among other things, this Count avers that the Defendants made false representations regarding the "ownership of the Note and monies due" in the foreclosure proceedings and that Plaintiffs have suffered mental anguish as a result.

(f) The final Count, Count IX, relies upon Section 502 of the Code, re-alleges the Complaint in its entirety and objects to Claim Nos. 4-1 and 4-2 on that basis.

On October 9, 2013, Carrington and Christiana filed their Motion to Dismiss Complaint

for Failure to State a Claim (Dkt. No. 5). They asserted that because Counts One, Three, Four,

11

Five, Six, Seven and Eight do not ask for relief against them, those Counts should be dismissed as to them. On October 17, 2013, Wells Fargo Bank and US Bank filed their Motion to Dismiss Complaint to Determine Secured Status, Sanctions, and Other Relief (Dkt. No. 8). They took the position that the Complaint failed to state claim upon which relief can be granted, failed to plead fraud with particularity and was barred by the statute of limitations. The core of their argument is as follows:

> There is neither harm nor foul here. Even if the [DOT] was removed from the [Securitized] Trust, or the Trust terminated as alleged on January 25, 2012, Mr. and Mrs. Howes are still indebted to the holder of the Note and [DOT], whoever that might be. There is no allegation that Mr. and Mrs. Howes have paid their loan. On the contrary, they admit in the Complaint that they are in default thereunder.

Memorandum in Support of Motion to Dismiss Complaint to Determine Secured Status Sanctions, and Other Relief at 9 (Dkt. No. 8-1).

Wells Fargo's prime contention was that because it was the grantor of the Note and DOT to the Securitized Trust, the trust *res* (the rights of a holder of the Note and DOT) simply reverted to Wells Fargo upon termination and Wells Fargo was entitled under Maryland law to either enforce or transfer those rights as it saw fit.[19]

The Court held a hearing on the motions to dismiss on January 6, 2014. At that hearing, the following colloquy occurred between the Court and Mr. Haeger:

> THE COURT: Why don't you tell me what the fraud is?
>
> MR. HAEGER: The main fraud is trying to hide the fact that there was no standing to file the foreclosure case.
>
> THE COURT: How did your clients rely on that? And have they been damaged by it?
>
> MR. HAEGER: Well the fraud is alleged in connection with fraud on the Court.

---

[19] *See Evans v. Safe Deposit & Trust Co. of Baltimore*, 190 Md. 332 (1948).

12

THE COURT: No, you say on the debtors, that is what your complaint says. You say it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you. . . .

MR. HAEGER: Well, that is separate – that is correct. That is separate –

THE COURT: . . . So, what is the fraud?

MR. HAEGER: So, I would say that there are two areas. The first area and the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT: Because the trust terminated?

MR. HAEGER: That is correct, Your Honor.

THE COURT: So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER: The Plaintiffs would love to know.

THE COURT: That is not an answer. As a lawyer, what happened to it?

MR. HAEGER: Well, as a lawyer –

THE COURT: What would be the law in that circumstance?

MR. HAEGER: As I set forth in my response the loan was transferred out of the trust before the trust terminated.

\*      \*      \*

THE COURT: So, you are saying that they are trying to  -- Wells Fargo intentionally misrepresented their status because the trust was terminated?

MR. HAEGER: That is right.

THE COURT: And what were they gaining from that, Covering (sic) up the $2,000 in foreclosure fees?

13

MR. HAEGER: I have seen people do strange things. And —

THE COURT: No, you are the Plaintiff. What were they gaining from that? Why did they conduct — why did they commit the fraud, per your allegation?

MR. HAEGER: The main motivation would be to preserve the foreclosure, the fact that they filed the foreclosure case that it was a rightful foreclosure when it wasn't, and to preserve the fees they sought to collect as a result of that. You look at their behavior and you scratch your head. What is going on here. Why are they doing what they are doing?

THE COURT: That doesn't make it fraud. Fraud is serious. Fraud allegations are serious business.

Transcript of Hearing at 19-20, 21-22 (Jan. 6, 2014) (Dkt. No. 46).

The parties returned on March 4, 2014 for the Court's oral ruling. In part relying

upon *Jaimes v. J.P. Morgan Chase*, 2013 WL 677740 (Dist. Ct. N. D. Ill. Feb. 25, 2013),

the Oversigned ruled as follows:

The filing of an incorrect claim is not actionable unless there is a knowing and fraudulent filing. The Debtor's assertion simple (sic) assumes without explanation that the proof of claim, proofs of claim, were filed to claim fees to which the Defendants were not entitled because the trust terminated. But there is no explanation as to why trust termination would cut off the right to enforce the note. And that is the crucial problem with the complaint.

This is especially true under the enlightened analysis of the *Jaimes* case. If it was wrong for either US Bank or Wells Fargo to claim credit or slash service or status,[20] then the Debtor must proffer who the correct servicer was or, at a minimum, show some colorable injury to him and his wife, as a result of the purported confusion . . . .

What it comes down to is the allegation that this mortgage became a part of the securitization package, and that's not fair. And therefore, I, the Debtor, have been injured. That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud. Therefore, count one will be dismissed with prejudice.

---

[20] This should read, "claim creditor/servicer status."

14

Transcript of Hearing at 18, 19 (Mar. 4, 2014) (Dkt. No. 24).

This Court also observed that the remaining causes of action were either partially dependent upon, or intertwined with, the centerpiece "fraud" allegation and they would be dismissed without prejudice for a later determination as to their viability once the Complaint was cleansed of the bogus Count I. Nevertheless, this Court recognized that the multiple transfers of the Note and DOT were at best confusing and the Plaintiffs should receive an explanation from Carrington and Christiana as to the basis for their assertion that they properly stood in the shoes of holder and servicer, respectively. Accordingly, the Order Dismissing required them to provide the Plaintiffs "proof of ownership" supported by "an inventory of documents" within thirty days. The Line and Affidavit was filed to comply with that directive.

Plaintiffs, however, chose not to file an amended complaint and instead filed the First and Second Motions for Reconsideration. As to the dismissal of Count I with prejudice, Plaintiffs' averred that the Court erred in finding that the "foreclosing Trust did not terminate." First Motion to Reconsider at 2. Plaintiffs asserted that because the Trust did terminate, Count I was viable. They also attacked the chain of title leading to Carrington and Christiana in light of the information included in the Line and Affidavit. As indicated above, a hearing was held on July 16, 2014 and the First and Second Motions for Reconsideration were denied. Plaintiffs were given seven (7) days to file either an amended complaint or objection to claim (or both) but instead filed their Notice of Appeal.

## IV.   Jurisdiction and Venue

This Court properly exercised jurisdiction over this Adversary proceeding in accordance with 28 U.S.C. §§ 157(b)(1)(2)(B) and (K) and 1334 and Local Rule 402 of the United States District Court for the District of Maryland. This Court concludes that the preliminary

15

proceedings conducted so far have not violated the strictures of *Stern v. Marshall*, 131 S. Ct.

2594 (2011). Venue is proper under 28 U.S.C. § 1409.

## V.   Analysis

### (a)   The Standards that Govern the Application of Federal Rules of Civil Procedure 12(b)(6) and 9(b)

Federal Rule of Civil Procedure 12(b)(6) (Federal Rule 12(b)(6)) is made applicable to

bankruptcy proceedings through Rule 7012(b). Federal Rule 12(b)(6) permits dismissal of a

complaint if it, "fails to state a claim upon which relief can be granted." The fundamental

inquiry is whether a plausible claim is stated. As the Court stated in *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009), "[A] complaint must state a claim that is plausible on its face" and incorporate

"sufficient factual matter" in support of the claim. See also, *Bell Atlantic v. Twombly*, 550 U.S.

544 (2007). A complaint must plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at

678. If the complaint does not meet this standard, then it must be dismissed. Naturally, a

complaint should be viewed, "in a light most favorable to the plaintiff," and "all well pleaded

allegations" should be accepted. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 726, 730 (4th Cir. 1993).

Nevertheless, the factual allegations must assert a right to relief that rises, "above the speculative

level." *Twombly*, 550 U.S. at 555. When confronted with a meritorious motion to dismiss,

plaintiffs cannot rely upon "allegations that are merely conclusory, unwarranted deductions of

fact . . . [or] unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

Moreover, each element of the claim asserted must be supported by proper factual allegations in

the complaint. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). In

sum, as observed in *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998), while,

16

"notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."

When fraud is alleged, Federal Rule of Civil Procedure 9(b) (Federal Rule 9(b)) heightens the level of scrutiny. Federal Rule 9(b) provides that "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." This standard requires, "the who, what, when, where, and how: the first paragraph of any newspaper story." *U.S. ex. rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). The rule is intended to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

### (b)   The Reasons why Count I was Dismissed with Prejudice

Plaintiffs do not dispute that Wells Fargo had the right and power to enforce the Note and Mortgage for the many years they were in default and living in the Residence for free and then during the period when they attempted to negotiate a HAMP modification. But per the Plaintiffs' theory, the termination of the Securitized Trust brought about a fundamental sea change that permanently altered the landscape. The logic of Count I is that (a) the Securitized Trust terminated on January 25, 2012, (b) after its termination, Wells Fargo's standing to foreclose (status as a creditor) was negated, (c) Wells Fargo therefore did not have standing to file Claim Nos. 4-1 and 4-2, (d) Wells Fargo filed those claims to "hide" the fact that it did not have standing to file either the foreclosure or the proofs of claim, (e) Wells Fargo should have filed documented proof of the termination of the trust with Claim Nos. 4-1 and 4-2 to confirm its lack of standing and (f) Wells Fargo's actions in filing Claim Nos. 4-1 and 4-2 were all to the ultimate end of covering up foreclosure fees ($2,924.50) that are illegitimate because of Wells

17

Fargo's lack of standing. As "theories of the case" go, this is mind-bendingly obtuse. Perhaps purposefully so. Nevertheless, as a blueprint for a fraud claim it amounts to patent nonsense.

The keys to the contention are (a) that Wells Fargo had no right to foreclose or file Claim Nos. 4-1 and 4-2 because of the Securitized Trust's termination and (b) Wells Fargo was legally bound to include documentary confirmation with the two claims that it did not have standing to either foreclose or file the two claims. However, it is just as (and frankly more) plausible to conclude that Wells Fargo reasonably believed it had every right to enforce the Note and DOT, that the foreclosure fees were legitimate and recoverable and that Claims Nos. 4-1 and 4-2 were filed to achieve those simple ends. At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud.

Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of claim, *because some other, identifiable true holder of the Note and DOT was entitled to do so,* yet filed the claims anyway in contravention of that holder's rights.[21] However, during argument Mr. Haeger could not (or would not) articulate what happened to the Note and DOT when the Securitized Trust terminated: did they revert to the original owner, were they magically transferred to some other entity or did they simply disappear into nothingness? This point is crucial because without a precise allegation as to the ultimate disposition of the Note and DOT that plausibly establishes that Wells Fargo knew or should have known that it had no enforcement rights – that its attempted collection and enforcement of the

---

[21] That still would not amount to a fraud claim *in favor of the Plaintiffs* for the reasons explained, and noted *infra,* in *Jaimes.* If the mysterious, unidentified "true holder" exists, then surely that entity would be the only one with standing to sue Wells Fargo. Nevertheless, there would still be no damages; i.e., payments wrongfully accepted, because Mr. and Mrs. Howes have not, by Mr. Howes' estimate, paid the Note and DOT for over seven years and continue to refuse to pay it. *See* Transcript of Hearing at 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

18

indebtedness was at odds with the rights of the true holder – the allegation of wrongful conduct by Wells Fargo is mere fanciful malarkey.

This was the precise issue before the court in *Jaimes*. The plaintiff husband and wife homeowners sued JPMorgan Chase (Chase) for fraud as a result of its collection, and attempted collection, of their mortgage payments.[22] Plaintiffs' alleged in part that because the securitized trust had terminated, Chase (which became owner/holder of the obligation through its purchase of the assets of the failed Washington Mutual Bank, F.A.) lost standing to collect the debt. Plaintiffs asserted that the trust's assets were distributed to the certificate holders (beneficiaries) of the trust upon termination and that the certificate holders became the rightful owners and holders of the note and mortgage. Chase therefore did not have the right or authority to collect payments from the plaintiffs. *Jaimes*, 2013 WL 677740 at *1. The Court held:

> This is where the Plaintiffs' theory breaks down. Because Plaintiffs argue that "WaMu lost all interest in the loan" at the Trust's termination, they necessarily argue that WaMu lost its status as the loan's servicer. But Plaintiffs do not argue that a different loan servicer was, or should have been, servicing their debt after the Trust's termination. This is not facially plausible.
> First, a trust's termination does not terminate the payment obligations on the mortgages in the trust. A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgages loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust.
>
>            *     *     *
>
> Plaintiffs do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them.
>
>            *     *     *

---

[22] As the Howes did here, Mr. and Mrs. Jaimes also sued Chase for a bushel of consumer protection violations all based upon Chase's "fraudulent" collection of the amounts due under the note.

> In short, it is insufficient for Plaintiffs to plead that the Trust's
> termination destroyed WaMu's servicing rights and that Chase
> fraudulently serviced the debt beginning in September 2008
> without offering any allegation as to who became the servicer of
> their debt upon the Trust's termination. Plaintiff's theory that their
> loan obligations terminated when the Trust was terminated because
> the servicing rights on their debt were not sold or transferred to
> another entity does not provide the Court with "factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at
> 678.

*Jaimes,* 2013 WL 677740 at *4, *5.

Accordingly, the complaint was dismissed.[23]  Count I of Mr. and Mrs. Howes' Complaint

fails for the same reason. Because it does not (and cannot consistent with Rule 9011) identify

the entity whose rights are being usurped by Wells Fargo it cannot assert a legitimate fraud

claim, even if Plaintiffs had standing to enforce such a claim.  Assuming state law applies,[24] to

prove fraud in Maryland a plaintiff must establish the following:

> (1) that the defendant made a false representation to the plaintiff,
> (2) that its falsity was either known to the defendant or that the
> representation was made with reckless indifference as to its truth,
> (3) that the misrepresentation was made for the purpose of
> defrauding the plaintiff, (4) that the plaintiff relied on the
> misrepresentation and had the right to rely on it, and (5) that the
> plaintiff suffered compensable injury resulting from the
> misrepresentation.

*VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703 (1998).

Plaintiffs allege a "false representation" but do not allege a plausible explanation of why

Wells Fargo's holding itself out as their creditor is a knowingly false statement beyond the

termination of Securitized Trust.  Likewise, there are no allegations that Plaintiffs relied upon

---

[23] The court gave a parting warning to plaintiffs' counsel regarding the consequences that might ensue under Federal Rule Civil Procedure Rule 11 if a frivolous amended complaint was pursued.

[24] *Butner v. United States*, 440 U.S. 48 (1979); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

20

Wells Fargo's representation and were damaged as a result. Indeed, Plaintiffs cannot allege a
non-frivolous damage claim as they have not paid this debt for over seven years.

As for the assertion that Wells Fargo's filing of the proofs of claim constituted a "fraud
on the court", that occurs:

> [W]here it can be demonstrated, clearly and convincingly, that a
> party has sentiently set in motion some unconscionable scheme
> calculated to interfere with the judicial system's ability impartially
> to adjudicate a matter by improperly influencing the trier or
> unfairly hampering the presentation of the opposing party's claim
> or defense.

*Aoude v. Mobil Oil Corp*, 892 F.2d 1115, 1117 (1st Cir. 1989) (plaintiff's preparation of a bogus,
fabricated agreement, and the knowing use of it by his counsel in support of their complaint,
constituted fraud on the court). There is nothing alleged in the Complaint that plausibly supports
the notion that Wells Fargo set in motion an "unconscionable scheme calculated to interfere"
with this Court's process by filing Claim Nos. 4-1 and 4-2. Without a legitimate, non-frivolous
allegation that Wells Fargo knowingly acted in contravention of some other entity's right to
enforce the Note and DOT, a claim of "fraud on the court" cannot be alleged in good faith.
Whether Count I is characterized as fraud on the court or the Howes, it is patently frivolous and
was dismissed for that reason. Hence, Plaintiffs were given a final deadline to file an amended
complaint or suffer dismissal with prejudice.

### (c)     The Reasons why the Relevant Deadlines for Filing either a Legitimate Amended Complaint or Objection to Claim were Set by the Court

While not expressly incorporated in the 7000 series of Bankruptcy Rules, Federal Rule of
Civil Procedure 1 calls for a construction and administration of the rules, "to secure the just,
speedy, and inexpensive determination of every action and proceeding." Beyond the general
directive, there are special reasons underlying the need for alacrity in this Adversary Proceeding.

21

Mr. Howes commenced the Main Case on November 15, 2012. Section 1322(d) mandates that the term of a Chapter 13 plan may not exceed five years beyond the date of the first payment. *In re Grant*, 428 B.R. 504, 508 (Bankr. N.D. Ill. 2010); *In re Jackson*, 189 B.R. 213, 214 (M.D. Ala. 1995). Mr. Howes began making his monthly plan payments to the Trustee long ago but the Main Case is now two years old. Moreover, confirmation of the Amended Plan has necessarily been put "on hold" pending the outcome of this litigation. While Mr. Haeger suggested at the last confirmation hearing that the Amended Plan could be confirmed notwithstanding this litigation because the Howes had overpaid the Trustee, *see* Transcript of Hearing at 4 (Mar. 19, 2014) (Main Case, Dkt. No. 131), it is equally true that those payments were made without the corollary burden of the Howes making regular monthly payments of $4,870 against the Note and DOT along with payments sufficient to timely cure the steadily increasing arrears of at least $200,000. This Court exercised its discretion against confirmation on the assumption that some entity is entitled to receive payments from the Howes and the Howes will have a significant monetary burden to resolve when the time comes to pay the piper.[25]

Mr. Howes testified at the January 27, 2013 hearing on Mr. Haeger's fees as follows:

> THE COURT: ... In other words, you're not claiming that you don't owe the money, right? Or are you?
>
> THE WITNESS: No, I am not claiming that I do not owe my mortgage, Your Honor.
>
>        *      *      *
>
> THE COURT: So, in order to keep your house, you need to pay the mortgage, correct?
>
>        *      *      *
>
> THE WITNESS: I understand that, Your Honor.

---

[25] All Defendants agree that Carrington is the holder of the Note and DOT and Christiana is the servicer.

*        *        *

THE COURT: So you don't believe that any of the defendants that you're (sic) sued should receive payments for the mortgage?

THE WITNESS: That is correct, Your Honor.

THE COURT: But you believe you do owe money to someone.

THE WITNESS: That is correct, Your Honor.

*        *        *

THE COURT: And, before you filed bankruptcy, you hadn't made payments for how long? Normal payments required by the mortgage.

THE WITNESS: I'm not sure of the exact time but seven to ten years.

THE COURT: Seven to ten years.

THE WITNESS: It was 2003.

Transcript of Hearing at 18, 19 (Jan. 27, 2014) (Main Case, Dkt. No. 130).

The Objection to Claim was filed on April 2, 2013, approximately five months after Mr. Howes' bankruptcy filing. The hearing on it was held on June 17, 2013 and Mr. Haeger indicated he would supplant the Objection to Claim with a complaint to attack the lien of the DOT against the Residence. However, the Complaint was not filed until September 3, 2013, the day before the Debtor's confirmation hearing. The hearing on the sufficiency of the Complaint was held on January 6, 2014 and an oral ruling given on March 4, 2013. Count I was dismissed with prejudice and Mr. Haeger was told how the matter would be handled going forward – Carrington and Christiana would be required to document their claimed entitlement to enforce the Note and DOT and Plaintiffs would be given sixty days to file either an amended complaint, an objection to claim, or both. Yet, the filings of the First and Second Motions to Reconsider

23

unilaterally, and effectively, extended the Plaintiffs' deadline until at least the July 16, 2014

hearing on those motions. Hence, the Plaintiffs had over four months from the March 4, 2014

hearing to bring their claims in line with plausibility (if possible) and file a legitimate amended

complaint.[26] Upon the oral denial of the two motions for reconsideration, Plaintiffs were given

an additional seven days to file an amended complaint, or objection to claim, upon pain of

dismissal.[27] Instead of complying and prosecuting their alleged claims, Plaintiffs chose to note

an appeal.

     This Court is charged with the discretion to manage its docket in a fair and effective

manner to promote the ends of justice. That includes the denial of leave to amend if further

amendment would be futile. *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1173 (9th

Cir. 2013). As the court stated:

> Because the Zadroznys' claims . . . are factually and legally
> implausible, denial of leave to amend lay within the district court's
> discretion. See *Mirmehdi v. United States*, 689 F. 3d 975, 985 (9th
> Cir. 2012) ("[A] party is not entitled to an opportunity to amend
> his complaint if any potential amendment would be futile . . . ."),
> *as amended* (citation omitted). This is particularly true as the
> Zadroznys had a prior opportunity to amend their complaint.

See also, *Jaimes*, at *6; *In re Nordeen*, 495 B.R. 468, 489 (9th Cir. BAP 2013).

     Plaintiffs have been using Section 362(a)'s automatic stay as a shield against foreclosure

since November 12, 2012. They have likewise been using the pendency of the Complaint to

---

[26] The remaining counts of the Complaint also had to be cleansed of the detritus of the bogus fraud allegations. Those allegations run like toxins through Count III ("Since the underlying foreclosure cases were filed by entities that lacked standing . . . ."), Count V ("Upon information and belief, the Note was paid off on January 1, 2012, as stated in the Loan Level Data report . . . "), Count VI ("US Bank caused the Second Foreclosure Case to be filed against Plaintiffs on February 21, 2012, falsely claiming to be the owner of the Note. Wells Fargo sought to hide the Trust termination from the Howes by lying about their HAMP eligibility . . . ."), Count VIII (". . . by falsely or wrongly asserting ownership of the Note and monies due in the Second Foreclosure . . . by concealing Trust termination . . . ") and Count IX, where every allegation of the Complaint is incorporated and re-alleged.

[27] The Line and Affidavit is not a proof of claim and hence Plaintiffs' "objection" to it (included in the First Motion to Reconsider) is insufficient under Section 502(a) and Rule 3007(a) to object to Claim No. 4-2 and commence a contested matter.

stretch their ongoing default *ad nauseum*. They have had thirteen months since the filing of the
Objection to Claim to pursue legitimate claims in earnest. Hence, the Oversigned concluded on
July 16, 2014 that the time for unwarranted, strategic delay (and frivolous claims) was over. An
objective observer, watching this case from November 12, 2012, could reasonably conclude that
the Complaint, written in the lawyer crafted patois of victimhood, is nothing more than, "sound
and fury, signifying nothing."[28]  In other words, that Plaintiffs' strategy is to spin a tale suitable
enough to delay things for as long as possible with the hope that Defendants will eventually grow
weary of the contest and agree to a favorable settlement. The commercial chaos and sorry
history of the Great Recession lends itself to that approach. Cases have been filed throughout the
nation that rely upon the premise that securitization acted as magical alchemy to nullify
homeowner loan obligations. *Nordeen*, 495 B.R. at 478 (and cases cited therein); *Jaimes* at *4
(and cases cited therein). But this is the real world and not a fanciful one. Having been sued, the
Defendants are entitled to (a) have the Complaint pruned of any chaff and (b) any legitimate
claims expeditiously brought to trial. Accordingly, the seven day deadline for filing an amended
complaint was set and as it was not adhered to, the Complaint was dismissed with prejudice.[29]

## VI.   Conclusion

In conclusion, Plaintiffs were given more than a reasonable amount of time to pursue their
alleged claims. Having failed to do so, the Complaint was dismissed with prejudice.

**End of Opinion**

---

[28] WILLIAM SHAKESPEARE, MACBETH act 5, sc. 5.

[29] Among other things, dismissal with prejudice will mean that Claim No. 4-2 will be deemed allowed under Section
502(a), Plaintiffs will have to commence regular monthly payments to Carrington and Christiana and file an
amended plan that satisfies the Note arrears in a manner allowed by the Code.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY V. HOWES, *et al.*

    *Appellants,*

    v.

WELLS FARGO BANK, N.A., *et al.*,

    *Appellees.*

Civil Action No. ELH-14-2814

## MEMORANDUM OPINION

This bankruptcy appeal is rooted in the dismissal of an adversary proceeding filed in a Chapter 13 bankruptcy case.[1]

On November 15, 2012, Jeffrey Howes filed a Chapter 13 bankruptcy proceeding to prevent a foreclosure sale of his home in Fulton, Maryland. *See In re Jeffrey Howes*, Bankr. Case No. RAG-12-30614; ECF 19 at 3, 17 n.2 (Appellants' "Second Amended Brief"). Months later, on September 3, 2013, Howes and his wife, Tonya Howes, filed an adversary proceeding in the bankruptcy case, titled "Complaint to Determine Secured Status, Sanctions, and Other

---

[1] ECF 1, ECF 2, and ECF 4 contain numerous documents designated by appellants, for which ECF numbers are available. Thereafter, plaintiffs filed an Appendix, ECF 9, which contains many of the same documents. The Appendix constitutes the record on appeal, to which the parties refer in their briefs.

The Appendix exceeds 400 pages and is paginated with numbering using the prefix "Apx." However, most of the ECF page numbers of the Appendix are not legible, because they are superimposed on other text. Therefore, when citing to the Appendix, I generally refer only to the "Apx." pagination of ECF 9, found at the bottom of each page.

With respect to the parties' briefs, I cite to the ECF page numbers. The ECF page numbers do not necessarily correspond to page numbers on the submissions.

Relief."[2] ECF 1-4. The adversary proceeding "challenge[d] the validity and/or extent of the secured claim asserted in Amended Proof of Claim No. 4 . . . filed by Wells Fargo Bank N.A [in the bankruptcy case,] on the basis [that] Wells Fargo lacked standing to file [it], it is excessive, and subject to [other claims]." *See Howes, et al. v. Wells Fargo Bank, N.A., et al.*, Adv. Proc. No. 13-510, ECF 1-4, ¶ 1; Apx. 23 ("Complaint"). The allegations also challenge efforts by the defendants to enforce a promissory note ("Note") executed by the Howes in November 2001, and secured by a Deed of Trust that they executed as to their home. Apx. 22-76, Complaint. The Bankruptcy Court (Gordon, J.) dismissed the Complaint. The Howes then noted an appeal to this Court on August 5, 2014 (ECF 38 in Adv. Proc. No. 13-510), which was docketed on September 4, 2014. ECF 1.

## I. Procedural Background

In the adversary proceeding, the Howes sued "Wells Fargo Bank N.A." ("Wells Fargo");[3] U.S. Bank, National Association ("US Bank");[4] Carrington Mortgage Services, LLC ("Carrington"); and Christiana Trust ("Christiana"), a Division of Wilmington Savings Fund Society, FSB ("WSFS"), as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 ("Stanwich" or "Stanwich Trust");[5] and "Unknown Defendants 1 through 10."[6] Apx 22,

---

[2] Mr. Howes is the sole debtor in the Chapter 13 case. However, both Mr. and Ms. Howes are plaintiffs in the adversary proceeding and appellants here.

[3] Wells Fargo spells its name "Wells Fargo Bank, N.A."

[4] Throughout the record, US Bank is also referred to as U.S. Bank.

[5] The Howes refer to Christiana Trust as WSFS Bank. As indicated, Christiana is a division of WSFS Bank. Apx. 25, Complaint ¶ 12.

[6] Plaintiffs assert that "Unknown Defendants 1 through 10" constitute "corporate entities and/or individuals that may have a legal interest in the promissory notes [sic], deed of trust, assignments or the real property which is the subject of this proceeding and/or who may be

2

Complaint at 1. Selene Finance, LP ("Selene"), which was not named as a defendant in the adversary proceeding, has joined the appellees' brief submitted by Christiana and Carrington (ECF 15), without objection.[7] Numerous exhibits were appended to the suit.[8]

The Complaint contains nine counts, as follows: "Fraud Upon the Court" as to Wells Fargo and US Bank, pursuant to 11. U.S.C. § 105 and Fed. R. Bankr. P. 9011 (Count I); "Determination of Scope, Extent and Validity of Lien," as to all defendants, pursuant to 11 U.S.C. §§ 105, 506 (Count II); "Sanctions for Defective Proof of Claim," as to Wells Fargo and US Bank, pursuant to Fed. R. Bankr. P. 3001(c)(2)(D) (Count III); "Unlawful Inspection Fees" as to Wells Fargo, US Bank, and Christiana, pursuant to Md. Code (2013 Repl. Vol., 2014 Supp.), § 12-1027 of the Commercial Law Article ("C.L.") (Count IV); violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, as to Wells Fargo, US Bank, Christiana, and "Unknown Defendant" (Count V); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, as to Wells Fargo, US Bank, and Christiana (Count VI);

---

responsible for the acts complained of herein." Apx. 26, Complaint ¶ 13.

[7] Selene has replaced Carrington as servicer of the promissory note, on behalf of Christiana. ECF 15 ¶ 13, Brief of Carrington and Christiana ("Christiana Brief"). Selene is represented by the same counsel who represents Carrington and Christiana.

In his opinion of November 5, 2014, Judge Gordon explained that on March 15, 2013, Wells Fargo filed an amended proof of claim in the bankruptcy case as to appellants' mortgage debt and default. ECF 51 at 5-6, in Adv. Proc. 13-510. Thereafter, the amended proof of claim was transferred from Wells Fargo to Carrington, then to Christiana, and finally to Christiana c/o Selene. *Id.* at 6.

[8] The exhibits include the Affidavit of Alisha M. Allen, dated January 18, 2012; Distribution Summary for the Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust"), dated January 20, 2012; Collateral Statement for the Trust, dated January 20, 2012; undated Loan Level Data for loan 0127973402, purportedly held by the Trust; Affidavit of Shannon Menapace, dated February 17, 2012, with the Declaration of Substitution of Trustees, dated October 28, 2011; Notice of Intent to Foreclose Affidavit, dated January 12, 2012, along with a Notice of Intent to Foreclose, dated May 10, 2011.

3

violations of the Maryland Consumer Debt Collection Act ("MCDCA"), C.L. §§ 14-201 *et seq.*, as to Wells Fargo, US Bank, and Christiana (Count VII); violations of the Maryland Consumer Protection Act ("MCPA"), C.L. §§ 13-101 *et seq.*, as to Wells Fargo and US Bank (Count VIII); and an "Objection to Claim," pursuant to 11 U.S.C. § 502 (Count IX).

The Howes' Note, which is central to the case, was pooled at some point with several other notes in a residential mortgage-backed securitization trust. Apx 32-33, Complaint ¶¶ 42-43. Plaintiffs maintain that the trust was terminated in January 2012, and therefore any effort to collect on the Note, whether as a successor-in-interest to the trust or as an assignee of the trust, was invalid, because the trust ceased to exist. The Howes also insist that confusion as to ownership of their Note upon the trust's termination precludes any of the defendants from enforcing it. Apx. 38, Complaint ¶ 62. In addition, plaintiffs assert, *inter alia*, that Wells Fargo misrepresented itself as a creditor in a claim filed in the bankruptcy case (Apx. 39, Complaint ¶ 67), and both Wells Fargo and US Bank defrauded the Bankruptcy Court by filing a "false arrearage claim for $200,196.79," related to payments and fees due on the promissory note. Apx. 38, *id.* ¶ 66.

On October 9, 2013, Carrington and Christiana moved to dismiss the Complaint,[9] which they amended on December 18, 2013. Apx. 165-171 ("Carrington MTD"). On October 17, 2013, US Bank and Wells Fargo also moved to dismiss the Complaint. Apx. 77-126 ("Wells Fargo MTD"). The Howes opposed all motions. *See* Apx. 127-57 ("Howes Opposition to Wells Fargo MTD"); Apx. 172-81 ("Howes Opposition to Carrington MTD"). The Bankruptcy Court heard argument on the motions on January 6, 2014 (Apx. 324-51), and permitted supplemental briefing concerning the effect of the trust's termination on the enforceability of the note. Apx.

---

[9] The Appendix does not contain the initial motion to dismiss or the Howes' response.

349-50. US Bank and Wells Fargo filed a supplemental brief on January 21, 2014 (Apx. 182-199), to which the Howes responded on February 5, 2014. Apx. 200-06.

In an oral ruling on March 4, 2014, the Bankruptcy Court granted the motions to dismiss. Apx. 207-33; *see also* ECF 1-32. Judge Gordon dismissed Count I (Fraud Upon the Court), with prejudice, and dismissed the remaining counts, without prejudice, and with leave to amend or to file a claim objection by May 3, 2014. Apx. 223-230. Plaintiffs did not amend or object by that date. Instead, on May 5, 2014, they moved for reconsideration of the oral ruling. Apx. 238-49. On May 12, 2014, the Bankruptcy Court entered an "Order Dismissing Complaint For Failure To State A Claim," memorializing its oral ruling ("MTD Order"). Apx. 285-87. Plaintiffs then moved to reconsider the MTD Order. Apx. 294-96.

After briefing on the motions to reconsider, the Bankruptcy Court heard argument on July 16, 2014 (Apx. 352), and orally denied the motions to reconsider. Apx. 361, 367. And, it extended until July 23, 2014, appellants' time to amend or file a claim objection. *Id.* at 367. On July 22, 2014, the Bankruptcy Court entered an Order embodying its oral ruling. Apx. 297-98. Plaintiffs did not amend or object. Instead, they noted this appeal on August 5, 2014. *See* ECF 38 in Adv. Proc. No. 13-510; ECF 1. Specifically, the Howes have appealed both the MTD Order of May 12, 2014 (Apx. 238-49), and the Reconsideration Order of July 22, 2014. Apx. 297-98.

The appeal was transmitted to this Court on September 4, 2014. ECF 1. Plaintiffs filed their initial brief on September 29, 2014. Two days later, on October 1, 2014, plaintiffs filed an amended brief (ECF 8), without explanation. Then, on October 5, 2014, with leave of Court (ECF 14), plaintiffs filed the 417-page Appendix (ECF 9), which apparently included several documents not previously designated by plaintiffs. *See* ECF 1, ECF 2, ECF 4.

5

Wells Fargo, US Bank, Carrington, and Christiana did not object to the submission of the Appendix. Indeed, all parties cite to it. Nor did they object to the inclusion of documents not previously designated in the record, or to plaintiffs' submission of the initial amended brief.

Wells Fargo and US Bank submitted their brief on October 13, 2014. ECF 11 ("Wells Fargo Brief"). On October 16, 2014, Carrington and Christiana submitted their brief. ECF 15 ("Christiana Brief"). As noted, Selene joined the Christiana Brief. *Id.* Plaintiffs submitted their reply on October 30, 2014. ECF 18 ("Reply"). On that same date, without explanation, plaintiffs filed a "Second Amended Brief," *i.e.*, their third brief (ECF 19), without leave of court or a redlined version.

On October 31, 2014, pursuant to Fed. R. Bankr. P. 8009(a), US Bank and Wells Fargo filed a motion to strike the Second Amended Brief. ECF 20, Motion to Strike. Plaintiffs opposed the Motion to Strike, and it remains pending. ECF 22 ("Opposition to Motion to Strike"). No hearing is necessary to resolve it. *See* Local Rule 105.6.

On November 5, 2014, *i.e.*, after the appeal was filed, the Bankruptcy Court issued a "Memorandum Opinion In Support of Orders Dismissing Complaint And Denying Motions To Reconsider." ECF 51 in Adv. Proc. No. 13-510.[10]

On December 2, 2014, plaintiffs asked the Bankruptcy Court to stay the bankruptcy proceeding. ECF 25-2. The Bankruptcy Court denied the request on December 9, 2014. Bankruptcy Docket, ECF 142. Plaintiffs then filed in this Court an "Emergency Motion to Stay Plan Confirmation Pending Appeal." ECF 23 ¶ 6 ("Motion to Stay"). Pursuant to the Court's

---

[10] Judge Gordon relied on *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991), as authority to issue a post-appeal Memorandum Opinion. ECF 51 at 3-4 in Adv. Proc. No. 13-510. There, the Fourth Circuit stated that a district court "had jurisdiction" to issue a "written order simply memorializ[ing] the district court's oral ruling," issued before the appeal was filed. 947 F.2d at 1190. The Fourth Circuit observed, *id.*: "It aids the appeal by giving [the appellate court] a written order to review."

6

request (ECF 24), appellees responded and opposed the stay. *See* ECF 25 (Christiana and Carrington); ECF 26 (Wells Fargo, US Bank). In addition, the Chapter 13 Trustee filed a response in opposition. ECF 28. By Order dated December 16, 2014 (ECF 29), I granted the Motion to Stay (ECF 23), subject to the posting of a security bond by plaintiffs.[11]

## II.   Factual Background[12]

### A.   The Note and the Trust

On November 30, 2001, the Howes executed a "Construction Note" payable to the order of The Columbia Bank[13] (Apx. 26, Complaint ¶ 15), in the amount of $696,130.00. Apx. 58, Note. As security for the Note, the Howes also executed a Deed of Trust, conveying their interest in real property to the Trustee for The Columbia Bank. Apx. 26, Complaint ¶ 15; Apx. 67, Declaration of Substitution of Trustees by Wells Fargo, N.A., dated October 28, 2011 ("Declaration of Substitution of Trustees" or "Dec. of Sub. Trustees"). The property that is the subject of the Deed of Trust is located in Howard County, Maryland and serves as the principal residence of the Howes (the "Property"). Apx. 26, Complaint ¶ 16; Apx. 58, Note.

The Note was amended by a Loan Modification Agreement dated April 16, 2003, recorded in the Land Records of Howard County. *See* Apx. 98-105, Loan Modification Agreement. The Loan Modification Agreement, which reflects a loan balance of $650,000.00, reduced the interest rate from a floating rate of 6% -11% to a fixed rate of 5.75%. *Id.* According to its terms, plaintiffs had a monthly payment of principal and interest of $3,793.22. *Id.* With

---

[11] On June 3, 2015, the Howes noted an appeal to this Court challenging the Bankruptcy Court's Order of March 9, 2015, concerning the security bond pending appeal. *Howes v. Wells Fargo Bank, N.A.*, No. ELH-15-617. The appeal has not yet been fully briefed.

[12] Given the posture of the case, the facts are drawn largely from the Complaint, as well as exhibits attached to it. Apx. 22-76.

[13] The initial lender, The Columbia Bank, is not a party to the adversary proceeding.

7

additional amounts escrowed for taxes and insurance, the Howes owed a total mortgage payment of about $4,500 per month. *See* ECF 11, Wells Fargo Brief at 10 n.5.

The Note was eventually pooled with several other notes in a residential mortgage-backed securitization trust, although the precise date is not entirely clear. The trust was titled "Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4" ("Trust" or "WFASC 2003-4"). Apx 32-33, Complaint ¶¶ 42-43.[14] The Complaint does not provide a chronological trail of the assignments reflecting when or to whom The Columbia Bank sold the Note or how the Trust acquired it, although assignments were submitted to the Bankruptcy Court by Wells Fargo and US Bank.[15]

---

[14] The Maryland Court of Appeals explained in *Anderson v. Burson*, 424 Md. 232, 237, 35 A.3d 452, 455 (2011):

> Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1367 (2010). The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle,"[ ] usually in the form of a trust, and sells the income rights to other investors. *Id.* A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors. *Id.*

[15] The Christiana Brief sets forth the history of assignments, but without any citations to the record. *See* ECF 15 at 4-5. With the motion to dismiss filed by Wells Fargo and US Bank, defendants submitted as exhibits various assignments and asserted, Apx. 79 n.4, Wells Fargo MTD:

> According to the Land Records of Howard County, the Columbia Bank assigned the Deed of Trust on the Property, together with the Note and all money due thereunder ("Security Instrument") to Wells Fargo Home Mortgage, Inc. on April 16, 2003. [Liber 07153, folio 099]. On March 16, 2005, Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc., assigned the Security Instrument to First Union National Bank, as Trustee. [Liber 9083, folio 417]. Then, on July 20, 2011, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., formerly known as First Union Bank, as Trustee, assigned the Security Instrument to U.S. Bank National Association, as Trustee, successor

8

In any event, the Howes claim that, unknown to them, the Note "was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012 . . . ." Apx. 33, Complaint ¶ 43. This occurred before US Bank, as "'Trustee for WFASC 2003-4,'" and Wells Fargo, as "'Loan Servicer'" and agent of US Bank (Apx. 31, Complaint ¶ 36), initiated a second foreclosure case against the Howes on February 21, 2012.[16]  *Id.*; *see Dore, et al. vs. Howes, et al.* ("Second Foreclosure Case"), No. 13C12089855. According to the Howes, upon the Trust's termination, US Bank, as trustee, and Wells Fargo, as servicer, had no right to enforce the Note. In other words, the Howes contend that US Bank and Wells Fargo were precluded from collecting payments on the Note, assigning the Note or Mortgage, or foreclosing on the Property pursuant to the Note. *See, e.g.*, Apx. 32, 36, 39, Complaint ¶¶ 41, 54, 55, 67.

In support of their contention that "[t]he Mortgage was removed from the Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012 . . . ." (Apx. 33, Complaint ¶ 43), the Howes rely, *inter alia*, on three documents appended to their Complaint. The first document is a "Certificateholder Distribution Summary" for the Trust dated January 20, 2012 ("Distribution Summary"), which purportedly shows the distribution of the Trust's assets to certificateholders upon termination. Apx. 62. The Distribution Summary indicates that upon distribution the Trust's "Ending Certificate Balance" was zero. *Id.* The second document is a "Collateral Statement" for the Trust, dated January 20, 2012. Apx. 63. It lists the total "Beginning Loan Count" of the Trust as 127, the "Loans Paid in Full" as 127, and

---

in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4 ("Trust") [Liber 13351, Folio 169]. . . .

[16] As discussed, *infra*, the first foreclosure case against the Howes was initiated on January 20, 2010, and was voluntarily dismissed on January 3, 2011. Apx. 31, Complaint ¶ 36.

the "Ending Loan Count" as zero. *Id.* The Howes argue that this demonstrates that upon termination of the Trust, all loans were "Paid in Full" and their "Mortgage was paid off on January 1, 2012. . . ." Apx. 33, Complaint ¶ 43; *see* Apx. 63, Collateral Statement. The third document is an undated chart of "Loan Level Data" for a loan numbered 0127973402, held by the Trust. Apx. 64. The chart lists the original balance for the loan as $650,000, but denotes the current loan status as "Paid Off."[17] *Id.* The "PrepaymentDate [sic]" of the loan is listed as January 1, 2012. *Id.* According to the Complaint, the data demonstrates that "the Mortgage [at issue] was paid off on January 1, 2012 . . . ." Apx. 33, Complaint ¶ 43.

### B. Default; First Foreclosure Case

On April 2, 2009, after experiencing "a decline in their income in 2008," the Howes defaulted on the Note. Apx. 26, Complaint ¶ 17. By June 2009, they were more than sixty days delinquent on payments due under the Note. *Id.* The Howes continued to submit partial payments through August 31, 2009, "until they discovered that they were receiving no benefit from their payments, since Wells Fargo[, as servicer of the Note,] was holding their partial payments in suspense and not applying them to their account despite aggregating more than a regular payment." Apx. 26-27, Complaint ¶ 17. They made no further mortgage payments until May 2013, and June 2013, both of which were returned. Apx. 38, Complaint ¶ 59.

The Howes attempted to obtain a modification of their loan from Wells Fargo. Apx. 27-31, Complaint ¶¶ 18-34. The Complaint details various extensive efforts by the Howes to negotiate with Wells Fargo, in order to make their monthly payments "more affordable . . . ." Apx. 28, Complaint ¶ 23. For instance, in July 2009 the Howes contacted Wells Fargo to

---

[17] The Complaint does not establish that the loan number of the Loan at issue is indeed 0127973402. However, defendants do not contend that the Loan Level Data attached to the Complaint pertains to the wrong loan.

determine their eligibility "for a mortgage modification under the U.S. Treasury's Home Affordable Modification Program" ("HAMP"). Apx. 27, Complaint ¶ 18. The Howes completed a HAMP application on August 18, 2009. *Id.* Despite "over 100 communications with Wells Fargo" (Apx. 27, Complaint ¶ 19), efforts to secure a modification proved fruitless. Wells Fargo rejected the Howes' HAMP application on July 19, 2010. Apx. 27, 30, Complaint ¶¶ 20, 30.

On October 6, 2010, Wells Fargo offered plaintiffs a "Special Forbearance Agreement" that would temporarily reduce their mortgage payments and reduce their interest rate. Apx. 27-28, Complaint ¶ 22. The Howes timely made all three trial payments. Apx. 28, Complaint ¶ 22. Wells Fargo then offered a "Secondary Modification Agreement," *id.*, but it required an immediate payment of $24,683.61 and a balloon payment of $58,766.56 at maturity. *Id.*[18] Moreover, the proposed interest rate exceeded the market rate. *Id.* Plaintiffs rejected Wells Fargo's proposal but made a counter offer to cure their default "in exchange for a new fixed rate mortgage at the current market average rate . . . ." Apx. 28, Complaint ¶ 23. Wells Fargo rejected the counter offer. *Id.*

In the meantime, on January 20, 2010, US Bank, "as principal," and Wells Fargo, as "agent" of US Bank, "caused" the first foreclosure case "to be filed against the Howes," in the Circuit Court for Howard County, captioned *Dore, et al. v. Howes, et al.*, Case No. 13C10080927 ("First Foreclosure Case"). Apx. 31, Complaint ¶ 36. Wells Fargo and US Bank

---

[18] In their brief, Wells Fargo and US Bank state, ECF 11 at 10 n.5:

> Accordingly, having made no mortgage payments since August 31, 2009, Appellants were more than 11 months in arrears, or approximately $50,000.00 delinquent. The upfront cash payment [of $24,683.61] that Wells Fargo proposed was less than half the amount then due.

11

were represented by Covahey, Boozer, Devan & Dore, P.A ("CBD&D"). Apx. 31, Complaint ¶ 37.

The Howes complain that, with respect to the First Foreclosure Case, US Bank "caused" several "false affidavits" to be filed. Apx. 50, Complaint ¶ 130. In particular, the Howes call into question several affidavits dated December 31, 2009, which were allegedly "signed by notorious robo signer Herman John Kennerty . . . ." Apx. 32, Complaint ¶ 39 (collectively, the "Kennerty Affidavits"). They include the following affidavits, *id.*:

> (a) Affidavit Pursuant to [Md. Code (2003 Repl. Vol.[19]), §] 7-105.1(d) [of the Real Property Article ("R.P.")][20] and [Maryland Rule] 14-207(b)(3),[21] regarding ownership of the debt instrument, (b) Non-Military Service Affidavit, allegedly notarized, and (c) Affidavit Pursuant to [R.P. §] 7-

---

[19] Generally, I cite to the current version of the Maryland Code. But, on occasion, I cite to the version in effect during the Howes' foreclosure cases. Unless otherwise indicated, the version of the Maryland Code in effect during the Howes' foreclosure cases does not differ in any material way from the current version of the Maryland Code.

[20] In Maryland, "[a] foreclosure plaintiff commences an action to foreclose a deed of trust, which contains a power of sale provision, by filing an order to docket." *Anderson, supra,* 424 Md. at 236 n.6, 35 A.3d at 455; *see* Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(d). In particular, Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(d)(1), referenced by several of the Kennerty Affidavits and titled "*Order to docket or complaint to foreclose,*" set forth what the order to docket initiating a foreclosure action had to include. The Real Property Article has since been revised. In Md. Code (2010 Repl. Vol., 2014 Supp.), the "*Order to docket or complaint to foreclose*" provision is now found at R.P. §7-105.1(e).

[21] Title 14 of the Maryland Rules refers to "Sales of Property." Chapter 200 of Title 14 is called "Foreclosure of Lien Instruments." Rule 14-207(b) sets forth the exhibits that must be submitted with an order to docket, including, among other things "(1) a copy of the lien instrument supported by an affidavit that it is a true and accurate copy, or, in an action to foreclose a statutory lien, a copy of a notice of the existence of the lien supported by an affidavit that it is a true and accurate copy; (2) an affidavit by the secured party, the plaintiff, or the agent or attorney of either that the plaintiff has the right to foreclose and a statement of the debt remaining due and payable[.]"

12

105.1(c),[22] regarding a [Notice of Intent to Foreclose], default, and right to foreclose . . . .

The Howes allege: "None of the Kennerty Affidavits are based on any investigation by Mr. Kennerty, other than to ensure they were properly dated, and they are therefore devoid of his personal knowledge of the other facts stated therein." Apx. 32, Complaint ¶ 39. According to plaintiffs, Kennerty testified under oath on May 20, 2010, that he signs "'50 to 150 documents per day . . . .'" Id. Kennerty also testified that he "'simply sign[ed] the document that's presented'" to him and "'just [made] sure that the date is correct.'" Id.

The Howes also challenge a second set of documents submitted in the First Foreclosure Case. These are a series of affidavits purportedly signed by Thomas P. Dore, Esq. of CBD&D, dated January 19, 2010 (collectively, the "Dore Affidavits").  Apx. 32, Complaint ¶ 38.  The Dore affidavits are described in the Complaint as follows: "(a) Affidavit Pursuant to 7-105.1(d) and 14-207(b)(1) regarding the lien instrument, (b) Affidavit Pursuant to 14-207(b)(4) regarding the Declaration of Substitution of Trustees, (c) Affidavit Pursuant to 7-105.9(B)(1) regarding notice to all occupants, and (d) a Statement of Debt allegedly notarized by Alysha Currie . . . ." Id. In particular, plaintiffs assert: "Upon information and belief, Mr. Dore did not sign the Dore Affidavits, nor was the Statement of Debt signed by him in the presence of Alysha Currie." Id.

According to the Howes, the First Foreclosure Case was "voluntarily dismissed" by the

---

[22] Md. Code (2003 Repl. Vol.), R.P. § 7-105.1(c)(1), referenced in one of the Kennerty Affidavits, provided:

> Except as provided in subsection (b)(2)(iii) of this section, at least 45 days before the filing of an action to foreclose a mortgage or deed of trust on residential property, the secured party shall send a written notice of intent to foreclose to the mortgagor or grantor and the record owner.

13

foreclosure plaintiffs on January 3, 2011 (Apx. 31, Complaint ¶ 36), "due to the defective Dore and Kennerty Affidavits." Apx. 32, Complaint ¶ 40.

### C. Second Foreclosure Case

On February 21, 2012 (Apx. 29, Complaint ¶ 26), US Bank, as "principal," and Wells Fargo, as its "agent . . . caused" the filing of the Second Foreclosure Case against the Howes, also in the Circuit Court for Howard County.   Apx. 31, Complaint ¶ 36.   According to the Howes, when the Second Foreclosure Case was filed, neither US Bank nor Wells Fargo had the right to enforce the Note on behalf of the Trust, because the Trust had been terminated.  *See, e.g.,* Apx. 32, Complaint ¶ 41.   Given that the Trust "ceased to exist[ ]," plaintiffs maintain that the Second Foreclosure Case constituted "a fraud on the Howes and on the Circuit Court for Howard County," because US Bank and Wells Fargo falsely represented that they had "standing" (Apx. 32, Complaint¶ 41) to enforce the Note on behalf of the Trust. Apx. 29, Complaint ¶ 26; *see also* Apx 38, Complaint ¶ 67.   Moreover, because the Trust had already been terminated, the Howes claim that all documents filed in the case constituted misrepresentations.

In particular, the Howes allege: "US Bank caused at least four false affidavits to be filed in the Second Foreclosure Case . . . ." Apx. 51, Complaint ¶ 132.   According to the Howes, in these documents US Bank "falsely claim to be the owner of the Note" and also "sought to hide the Trust termination from the Howes . . . ." Apx. 51, Complaint ¶ 131.   In their Complaint, the Howes described the four documents, as follows.

The first document (Doc. No. 5 in the Second Foreclosure Case) is an "Affidavit Certifying Ownership of Debt Instrument and Accuracy of Note Submitted Herewith," dated January 18, 2012, which was "allegedly" signed by Alisha M. Allen, Vice President of Loan Documentation for Wells Fargo Home Mortgage, Inc., as servicer for the subject mortgage

("Allen Affidavit").   Apx. 33, Complaint ¶ 42.   The Allen Affidavit identified "'US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for [the Trust], Series 2003-4.'"  *Id.*  And, the Allen Affidavit also identified the Trust as the "'owner and holder of the loan evidenced by the Note,'" *id.*, although the Trust no longer existed.

A purported copy of the Note is attached to the Allen Affidavit.  Apx. 33, Complaint ¶ 44.  According to the Complaint, the Note contains the following "endorsements": "(A) Pay to the order of Wells Fargo Home Mortgage, Inc., by Michael Torcisi, Vice President, The Columbia Bank, and (B) pay to the order of Wachovia Bank, National Association, as Trustee under the pooling and servicing agreement dated May 29, 2003, by Beverly Cro[ckett], Assistant Secretary of Wells Fargo Home Mortgage, Inc."[23]  Apx. 33, Complaint ¶ 44 (alteration in the Complaint).

An allonge dated November 21, 2009, is also attached to the Allen Affidavit ("Allonge").[24]  Apx. 33, Complaint ¶ 45.  The Allonge identified "'Wachovia Bank, National Association ["Wachovia"], as Trustee under a pooling and servicing agreement dated as of May 29, 2003 . . . .'"  *Id.*[25]  Pursuant to the Allonge, Wachovia, as the "present holder" of the Note, "'hereby assigns all of [Wachovia's] rights, title and interest in said Note to US Bank National

---

[23] Throughout the record, the last name is spelled "Cro[ckett]," with the brackets included.

[24] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Anderson*, 424 Md. at 240 n.10, 35 A.3d at 457 n.10 (quoting BLACK'S LAW DICTIONARY 88 (9th ed. 2004)). Pursuant to Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 3-204(a), any document "affixed" to a note, such as an allonge, is considered part of the note.

[25] The pooling and service agreement is not part of the Appendix.

15

Association, as Trustee for WFASC 2003-4[.]'" Apx. 34, Complaint ¶ 45. The Allonge further provided: "'Pay to the Order of US Bank National Association, as Trustee for WFASC 2003-4 (Without recourse, representation, or warranty express or implied)' and is allegedly signed by Karan Abernethy as Vice President of Wachovia." Apx. 33-34, Complaint ¶ 45. In a nutshell, the Allonge purported to show a transfer of the Note from Wachovia, as present holder, to US Bank, as Trustee for the Trust. Again, in plaintiffs' view, the Allen Affidavit and the Allonge are fraudulent because they omitted any indication that the Trust had been terminated.

The second document (Doc. No. 7 in the Second Foreclosure Case) is the "Affidavit Pursuant to [Maryland Rule] 14-207(b)(4)," dated February 17, 2012, signed by Shannon Menapace[26] as a "SUBSTITUTED TRUSTEE in the subject case" ("Menapace Affidavit"). Apx. 66. Ms. Menapace certified that a "true and accurate" copy of the Declaration of Substitution of Trustees is attached to the Menapace Affidavit. *Id.*

The Declaration of Substitution of Trustees dated October 28, 2011, was allegedly executed by Wells Fargo as "Attorney-in-fact for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for [the Trust] . . . ." Apx. 67, Dec. of Sub. Trustees. The Declaration purported to substitute "Thomas P. Dore, Mark S. Devan, Gerard F. Miles, Jr., Shannon Menapace, and Erin Gloth, as Substituted Trustees [for the Trust,] in the place and stead of Michael T. Galeone and Matthew T. Becker . . . ." *Id.*; *see also* Apx. 34, Complaint ¶ 46.[27] Again, in plaintiffs' view, the submission was misleading

---

[26] In the Complaint, appellants spell the affiant's name as "Mennapace." I have used the spelling as it appears in the Affidavit. Apx. 66.

[27] The appointment or replacement of a substitute trustee does not convey an interest in the subject property. The Maryland Court of Special Appeals explained in *Svrcek v. Rosenberg*, 203 Md. App. 705, 729, 40 A.3d 494, 509 (2012) (internal quotations omitted) (emphasis in *Svrcek*):

because the Trust no longer existed.

Plaintiffs also challenge as fraudulent in the Second Foreclosure Case the "Affidavit of Date and Nature of Default and Mailing of Notice of Intent to Foreclose" ("NIF Affidavit," Doc. No. 11 in the Second Foreclosure Case).   Apx. 69-76; *see also* Apx. 34, Complaint ¶ 47.   It was purportedly executed on January 12, 2012, by Erinn T. Rochelle as Vice President of Loan Documentation for Wells Fargo. Apx. 69.  The NIF Affidavit identified Wells Fargo as servicer for the Trust, but omitted that the Trust had been terminated.  *Id.*  Attached to the NIF Affidavit is a Notice of Intent to Foreclose on the Property, dated May 10, 2011.  Apx. 34, Complaint ¶ 47; Apx. 69, NIF Affidavit; Apx. 75, Notice of Intent to Foreclose.

In addition, the Howes challenge Document No. 15 in the Second Foreclosure Case, titled "Final Loss Mitigation Affidavit," dated February 15, 2012, and purportedly executed by Daryl J. Rollins, Vice President of Loan Documentation.  Apx. 34, Complaint ¶ 48.[28]  Rollins averred that he was "'authorized to act on behalf of the secured party who is the holder of the beneficial interest in the mortgage or deed of trust.'"  *Id.* (quoting the Final Loss Mitigation Affidavit).

According to the Complaint, on April 30, 2012, an Order was entered in the Second Foreclosure Case (Doc. No. 21) stating: "'It is determined that the service of the Order to

---

> [An a]ppointment of substitute trustees . . . merely serves to appoint new trustees to exercise the lender's power under the deed of trust to foreclose the right of redemption, subject to the mortgagor's equitable right to redeem the property prior to the sale . . . .*Without conveyance of the Property,* the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law. . . . The substitution of trustees merely designated new individuals as having the right to enforce the deed of trust . . . . [T]he deed of appointment of substitute trustees merely authorized the trustees to foreclose the right of redemption and exercise the power of sale . . . .

[28] The Complaint fails to specify Rollins' employer.

17

Docket[29] and related documents was deficient. If plaintiff does not demonstrate to the Court within 30 days of entry of this Order . . . that the deficiency has been cured . . . then the Court will dismiss the action without prejudice[.]'" Apx. 35, Complaint ¶ 49 (quoting Order) (alteration in Complaint). The Howes allege that the foreclosure plaintiffs did not file a response within the time allowed, and the case was stayed as a result of the underlying bankruptcy case. *Id.* To my knowledge, the Second Foreclosure Case is pending. Apx. 31, Complaint ¶ 36.

### D. Bankruptcy

In June 2012, the Howes attempted to secure "an equitable, long-term modification" of their mortgage from Wells Fargo. Apx. 29-30, Complaint ¶ 28. Their efforts were unsuccessful. In August 2012, Wells Fargo rejected the Howes' second HAMP application. Apx. 30, Complaint ¶ 30.

On November 15, 2012, Mr. Howes filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code (Apx. 35, Complaint ¶ 50), in order to prevent the foreclosure sale of the Howes' residence, scheduled for November 16, 2012. ECF 19 at 3, 17 n.2, Second Amended Brief.[30] On December 13, 2012, Mr. Howes, as Debtor, filed his "Chapter 13 Plan" ("Plan") to pay $35,662.00 in pre-petition mortgage arrears, while making post-petition payments directly to Wells Fargo. *Id.* According to the Complaint, in the Plan and in Schedule D of the bankruptcy petition, Debtor indicated that "[t]he amount owed, the ownership of the Note, and the secured status of the alleged owner and holder of the Note" were "'disputed.'" *Id.*

---

[29] *See* note 20, *supra*, for an explanation of an "order to docket."

[30] The Complaint itself does not state that the Howes filed for bankruptcy to prevent the foreclosure sale, nor does it indicate that the foreclosure sale was scheduled for November 16, 2012. *See* ECF 19 at 3, 17 n.2. In the Second Amended Brief, the Howes indicate that "they will seek leave to supplement the record by adding" a statement of financial affairs that specifies the date of the foreclosure sale. *Id.*

Wells Fargo filed an "Objection to Confirmation of Plan" ("Plan Objection") in the bankruptcy case on January 9, 2013. There, Wells Fargo identified itself as "'Servicer for US Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2003-4.'" Apx. 35-36, Complaint ¶ 52 (quoting Plan Objection).

On March 8, 2013, US Bank filed a claim in the bankruptcy case designated as "Claim No. 4" ("Claim"), in the amount of $740,334.24, of which $200,196.79 was claimed as pre-petition arrearages. Apx. 36, Complaint ¶ 53. US Bank was listed on the Claim as the "creditor," with notices regarding the Claim to be sent to Wells Fargo. *Id.* The Claim was signed by Brian McNair, Esquire on January 2, 2013; he is listed as an attorney with the law firm of CBD&D. *Id.* But, no supporting documentation was attached to the Claim. *Id.* According to the Howes, the lack of such documentation demonstrated that there was "no evidence of perfection" and no "breakdown of the claimed arrearage." *Id.*

Wells Fargo filed an amended claim on March 15, 2013, designated "Claim 4-2" ("Amended Claim"), which identified Wells Fargo as the creditor, instead of US Bank. Apx. 36, Complaint ¶ 54. Pursuant to Fed. R. Bankr. P. 3001(c)(2),[31] Wells Fargo submitted with the Amended Claim an undated form "Mortgage Proof of Claim Attachment"; an "Escrow and Account Disclosure Statement" dated November 21, 2012; the Deed of Trust, and purportedly indorsed copies of the Note and Allonge. *Id.* Plaintiffs allege: "No evidence of Wells Fargo's standing to file the Amended Claim was attached." *Id.*

---

[31] Fed. R. Bankr. P. 3001 is entitled "Proof of Claim." Of relevance here, Rule 3001(c)(2)(A) provides: "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."

19

On April 2, 2013, in the bankruptcy case, Mr. Howes, as Debtor, filed an objection to Wells Fargo's Amended Claim ("Claim Objection"), challenging Wells Fargo's "standing" to file the claim.  Apx. 36, Complaint ¶ 55.  Debtor also argued that the claim amount was excessive because not all mortgage payments made by the Howes were adequately credited.  *Id.* In addition, Debtor contended that the "inspection fees [in the Amended Claim] disguised as broker's price opinion fees" were "unlawful." *Id.*

In the meantime, the Amended Claim was transferred to Christiana.  Apx. 37, Complaint ¶ 56.  As previously indicated, Christiana is a division of WSFS, trustee for Stanwich Trust. Apx. 25, Complaint ¶ 12.   At the time of the transfer, Carrington was designated as servicer of the Note on behalf of Christiana.  Apx. 25, Complaint ¶ 11.

On May 29, 2013, Michael T. Cantrell, as agent for Carrington, filed in the bankruptcy case a notice of *"Transfer of Claim Other Than for Security* of the Amended Claim" ("Transfer Notice").  Apx. 37, Complaint ¶ 56 (italics in Complaint).  There, Wells Fargo was listed as transferor, and Carrington was mistakenly listed as transferee of the Amended Claim.  *Id.* As indicated, Carrington was not the owner of the Note; it was purportedly the servicer.  Apx. 25, Complaint ¶ 12. Plaintiffs also challenge the Transfer Notice as defective because Carrington "failed to attach the required proof of transfer." Apx. 37, Complaint ¶ 56.

Mr. Cantrell, as agent for Christiana, attempted to correct the error on June 11, 2013, by filing an *"Amended Notice of Transfer of Claim Other Than for Security* of the Amended Claim" ("Amended Transfer Notice").  Apx. 37, Complaint ¶ 57 (italics in Complaint).  The Amended Transfer Notice listed Christiana as the transferee, instead of Carrington.  *Id.* According to the Complaint, Christiana "failed to attach the required proof of transfer." *Id.*

In the Complaint, the Howes contend that they "received no notice of transfer of their

20

Note or the right to service their Mortgage from Wells Fargo." Apx. 38, Complaint ¶ 60. Further, they alleged that they "received no communication from Defendants [Carrington] or [Christiana] regarding their interest in the Howes' Mortgage other than the notices filed in the Bankruptcy Case."[32] Apx. 38, Complaint ¶ 61.

In the meantime, "[o]n or about May 2, 2013, and June 13, 2013, Defendant Wells Fargo rejected and returned Debtor's post-petition mortgage payments in the amount of $4,835.64 each."[33]   Apx. 38, Complaint ¶ 59.

On June 17, 2013, the Bankruptcy Court held a hearing on the Claim Objection. Apx. 37, Complaint ¶ 55.   Debtor was present, but no adversary defendants appeared.   *Id.* ¶ 58. According to the Complaint, the Bankruptcy Court denied the relief requested in the Claim Objection because the claim transferees had not been served.   Apx. 36-37, Complaint ¶ 58. Therefore, the Bankruptcy Court "instructed Debtor to serve the Amended Claim transferees either by supplemental service, amended objection, or, in view of all the transfers, by initiating an adversary proceeding incorporating the claim objection to determine the party entitled to enforce the Note." *Id.*

### E.  Adversary Proceeding

On September 3, 2013, the Howes initiated the adversary proceeding.  In their 34-page Complaint, they challenged defendants' right to enforce the Note.  Several of their contentions have already been recounted.  The Howes asserted, *inter alia*, that they "do not know the identity

---

[32] As noted, Selene has since replaced Carrington as servicer of the Note, on behalf of Christiana.  ECF 15 ¶ 13, Christiana Brief.

[33] According to Wells Fargo and US Bank, the payments were returned because the Howes had sought Chapter 13 relief.  Apx. 79, Wells Fargo MTD ¶ 3 n.3.

of the rightful owner of the Note." Apx. 38, Complaint ¶ 62.[34]  They also alleged that none of the

defendants "are in possession of the Note." *Id.* ¶ 63.  And, they asserted, Apx. 39, Complaint ¶

67:

> Wells Fargo filed its Amended Claim as creditor with the intent to defraud
> this Court, the Debtor, and the estate created by the Bankruptcy Case, by hiding
> the fact that the Trust terminated back in January 2012 and therefore it was not
> entitled to collect the Second Foreclosure Fees. Wells Fargo sought to hide Trust
> termination by not attaching to the Amended Claim evidence of Trust
> termination . . . . Wells Fargo failed to disclose Trust termination in the Amended
> Claim to conceal the fact that the Second Foreclosure Case was wrongfully filed,
> contained numerous false and fraudulent affidavits regarding standing to
> foreclose . . . and the fact that the Trust lacked standing to file the Claim.

On January 6, 2014, the Bankruptcy Court held a hearing on the defendants' motions to

dismiss.  The following colloquy ensued between Judge Gordon and counsel for the Howes,

Apx. 342-45:

| | |
|---|---|
| THE COURT: | Why don't you tell me what the fraud is [as to Count I]? |
| MR. HAEGER: | The main fraud is trying to hide the fact that there was no standing to file the foreclosure case. |
| THE COURT: | How did your clients rely on that?  And have they been damaged by it? |
| MR. HAEGER: | Well the fraud is alleged in connection with fraud on the Court. |
| THE COURT: | No, you say on the debtors, that is what your complaint says.  You say well it all goes back to when they told us we were going to work out a settlement with you and then they said we couldn't work out a settlement with you . . . . |
| MR. HAEGER: | Well, that is separate – that is correct.  That is separate – |
| THE COURT: | . . . . So, what is the fraud? |
| MR. HAEGER: | So, I would say that there are two areas.  The first area and |

---

[34] The adversary defendants agree that Christiana is the secured creditor of the Note. ECF 15 at 6, Christiana Brief ¶ 13; ECF 11 at 7 n.1, Wells Fargo Brief.

the most important area is the fraud on the Court by not disclosing the fact that there was no standing to file that second foreclosure case.

THE COURT:        Because the trust terminated?

MR. HAEGER:       That is correct, Your Honor.

THE COURT:        So, what happened to the mortgage or the note after the trust terminated?

MR. HAEGER:       The Plaintiffs would love to know.

THE COURT:        That is not an answer.  As a lawyer, what happened to it?

MR. HAEGER:       Well, as a lawyer —

THE COURT:        What would be the law in that circumstance?

MR. HAEGER:       As I set forth in my response the loan was transferred out of the trust before the trust terminated.

*** 

THE COURT:        So, you are saying that they are trying to -- Wells Fargo intentionally misrepresented their status because the trust was terminated?

MR. HAEGER:       That is right.

THE COURT:        And what were they gaining from that, [c]overing up the $2,000 in foreclosure fees?

MR. HAEGER:       I have seen people do strange things.  And —

THE COURT:        No, you are the Plaintiff.  What were they gaining from that?  Why did they conduct — why did they commit the fraud, per your allegation?

MR. HAEGER:       The main motivation would be to preserve the foreclosure, the fact that they filed the foreclosure case that it was a rightful foreclosure when it wasn't, and to preserve the fees they sought to collect as a result of that.  You look at their behavior and you scratch your head.  What is going on here.  Why are they doing what they are doing?

23

THE COURT:        That doesn't make it fraud. Fraud is serious. Fraud
                  allegations [are] serious business.

At the conclusion of the hearing, Judge Gordon indicated that he wanted to "take a close

look at the legal authorities" involved in this case.   Apx. 347.  He also permitted the parties to

submit supplemental briefing on the significance of the Trust's termination.  Apx. 349-50.[35]

The Bankruptcy Court reconvened for a second hearing in the adversary proceeding on

March 4, 2014.  At that hearing, Judge Gordon granted the motions to dismiss.  He explained,

Apx. 213-14:

> I will note here that while the Debtor alleges that the particular securitization trust
> complained of was terminated, and that is basically the operative fact that forms

---

[35] On January 27, 2014, Judge Gordon held a hearing in the Bankruptcy case on other matters.  In his Memorandum Opinion of November 5, 2014, Judge Gordon noted that, at that hearing, Mr. Howes admitted that he was in default on the Note and that he had not paid the mortgage for many years.  See ECF 51 at 23 in Adv. Proc. No. 13-510.  The hearing transcript is filed in the bankruptcy case at ECF 130, Bankr. Case No. 12-30614.  This Court may take judicial notice of the court transcript. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (internal quotations omitted).

Of particular relevance, Mr. Howes testified as follows, ECF 51 at 22-23 in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014 (quoting hearing transcript):

> THE COURT: ... In other words, you're not claiming that you don't owe the money, right? Or are you?
>
> THE WITNESS: No, I am not claiming that I do not owe my mortgage, Your Honor.
>
> * * *
>
> THE COURT: So you don't believe that any of the defendants that you're (sic) sued should receive payments for the mortgage?
>
> THE WITNESS: That is correct, Your Honor.
>
> THE COURT: But you believe you do owe money to someone.
>
> THE WITNESS: That is correct, Your Honor.

24

the basis of much of what is alleged in the complaint after that allegation in terms of wrongdoing by the Defendants, the reason the trust seems to have "terminated" is because all of the loans, including this one, were paid in full. I mean, that is what the complaint says.

But we know that that is not true by the Debtor's own admission. So fundamentally the complaint takes us into an unreal world, one where the Debtor has to know and realize that the operative fact that he relied upon to suggest that his mortgage is now floating in space without ownership, or at least that he "doesn't know who the owner is," is false in the operative fact. I mean, the payment in full is what it takes to terminate the trust, or at least one thing, the one cited reason in the complaint. And that didn't happen here . . . .

The Bankruptcy Court added, Apx. 224-25:

The filing of an incorrect claim is not actionable unless there is a knowing and fraudulent filing. The Debtor's assertion simple [sic] assumes without explanation that the proof of claim, proofs of claim, were filed to claim fees to which the Defendants were not entitled because the trust terminated. But there is no explanation as to why trust termination would cut off the right to enforce the note. And that is the crucial problem with the complaint.

\*\*\*

What it comes down to is the allegation that this mortgage became a part of the securitization package, and that's not fair. And therefore, I, the Debtor, have been injured. That doesn't state a claim for relief and certainly doesn't state a claim for relief for fraud. Therefore, count one will be dismissed with prejudice.

The Bankruptcy Court determined that, under the circumstances of this case, "termination of the trust doesn't matter. The Debtor/Creditor relationship is unchanged. . . ." Apx. 215. Judge Gordon observed: "The Debtor's default does not turn the lenders into villains." Apx. 217-18. In his view, the termination of the Trust did not relieve the Howes of their obligations under the Note and Deed of Trust. Apx. 214-15, 223. Judge Gordon also regarded the fraud claim as defective because no cognizable injury resulted from the alleged failure to disclose that the Trust had been terminated. Apx. 223. He dismissed, with prejudice, the claim for Fraud Upon the Court (Count I). Apx. 225.

With respect to Count II, the Howes sought a "Determination of Scope, Extent and

25

Validity of Lien." Apx. 41, Complaint at 20. At the hearing on March 4, 2014, the Bankruptcy Court acknowledged the Note's complex transfer history and various blunders committed by those seeking to enforce the Note, which justified the Howes' request for clarification as to which party is the present holder of the Note. It placed the burden on the noteholder to present information establishing its entitlement to enforce the Note. Apx. 226. The Bankruptcy Court explained, *id.* (emphasis added):

> This is my ruling as to count two. There is confusion here created by the securitization process that has been exacerbated by bumbling. *Therefore, the present holder of the note will provide a detailed affidavit, under penalty of perjury, within 30 days of today confirming who owns and has a right to enforce the loan documents.* All relevant transactional documents will be identified and provided to the Debtor, if the Debtor requests them. In other words, we don't want this to turn into harassment. But under the circumstances, the Debtor probably does *have a right to at least know with certainty the basis for the present noteholder's claim to ownership to the note,* because of the sloppiness that has gone on historically in this case.

At the hearing on March 4, 2014, the Bankruptcy Court dismissed the remaining counts of the Complaint, without prejudice, and with leave to amend or to file a claim objection by May 3, 2014. Apx. 230. The Bankruptcy Court also directed the noteholder defendant to "provide a detailed affidavit, under penalty of perjury, within 30 days . . . confirming who owns and has a right to enforce the loan documents." Apx. 226.

On April 3, 2014, Carrington submitted an Affidavit Certifying Ownership Of Debt Instrument," signed by Elizabeth A. Ostermann, Vice President of Default and Attorney in Fact for Carrington, dated March 31, 2014 ("Ostermann Affidavit"). Apx. 236. Carrington is listed as the loan servicer for Christiana, trustee for the Stanwich Trust. *Id.* The Ostermann Affidavit purported to "[c]onfirm[ ] that Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-2 is the Owner of the Loan." Apx. 237 (underlining in original). Carrington also submitted a "Line" to the Bankruptcy Court

26

indicating: "A true and accurate copy of the documents listed in the Affidavit will be sent directly to counsel for the debtor . . . ." Apx. 234. The documents listed included the Note, Deed of Trust, a lost note affidavit, and five assignments of the Note.   Apx. 237 ("Christiana Ownership Materials").[36]

The Bankruptcy Court memorialized its oral ruling of March 4, 2014 in a written order, entered on May 12, 2014, *i.e.* the MTD Order,. Apx. 285-87.  In particular, the MTD Order provided for the following: (a) dismissal of Count I of the Complaint, with prejudice, for failure to state a claim; (b) dismissal of the remaining counts as to all defendants, without prejudice; (c) Carrington and Christiana were directed to submit an affidavit explaining their claim of ownership to the subject Note and mortgage; and (d) the Howes were directed to file an objection to the Amended Claim and/or an amended complaint by May 3, 2014, "or the Complaint shall be dismissed with prejudice." Apx. 286-287.

The Howes filed two motions to reconsider.  The first motion was in response to the Bankruptcy Court's oral ruling issued on March 4, 2014.  Apx. 238-49.  The Howes filed a second motion to reconsider in response to the MTD Order of May 12, 2015. Apx. 294-96.

On July 16, 2014, the Bankruptcy Court heard oral argument on both motions to reconsider.  Apx. 351.  Judge Gordon acknowledged that, in his oral ruling on the motions to dismiss, he may have "over-focused" on the matter of Trust termination. Apx. 361.  But, he noted that, whether or not the Trust was terminated, he was correct that the Complaint failed to state a claim for fraud, given the lack of "required specificity."  *Id.*  He reviewed the elements of a fraud claim (Apx. 361-62), and pointed to "sloppiness" in the proof of claim (Apx. 362), but said, Apx. 363: "If I were to find fraud every time a proof of claim was mistakenly filed, then it

---

[36] The Appendix does not include copies of the documents purportedly sent to counsel for Debtor to establish the basis for Christiana's interest in the Note.

would be a never ending process." In his view, termination of the Trust did not "wipe out the obligations of the Plaintiffs." *Id.* He added, *id.*: "And it doesn't give the Plaintiffs a cause of action for fraud." In addition, Judge Gordon found no allegations of a cognizable injury as a result of the purported misrepresentations. Apx. 363-67. Therefore, he orally denied the motions for reconsideration (Apx. 361-67) and allowed seven days for plaintiffs to amend the remaining claims or to file an objection to claim. Apx. 367.

The oral ruling was reduced to a written order, *i.e.*, the Reconsideration Order, entered on July 22, 2014. Apx. 297-98. The Reconsideration Order stated: "Because Count I of the Complaint fails to state a cognizable, good faith claim for fraud, the Order will not be reconsidered." Apx. 298. The Bankruptcy Court added: "[T]o the extent the [plaintiffs] may have legitimate claims that (a) one or more of the present defendant/claimants are not entitled to enforce the underlying loan documents or (b) the amount of debt asserted in [the Amended] Proof of Claim [ ] is incorrect, then those assertions must be raised through either an objection to claim or amended complaint." Apx. 298. Judge Gordon also granted plaintiffs until July 23, 2014, to file an amended complaint or objection to Amended Proof of Claim. *Id.* Instead, the Howes noted an appeal to this Court. *See* ECF 38 in Adv. Proc. No. 13-510; ECF 1.

On November 5, 2014, after the appeal was filed, the Bankruptcy Court issued a "Memorandum Opinion In Support Of Orders Dismissing Complaint And Denying Motions to Reconsider," in order to "aid the decisional process on appeal . . . ." ECF 51 in Adv. Proc. No. 13-510.[37] In its Memorandum Opinion, the Bankruptcy Court said, in part, *id.* at 17-18:

> Plaintiffs do not dispute that Wells Fargo had the right and power to
> enforce the Note and Mortgage for the many years they were in default and living

---

[37] As indicated in note 10, *supra*, Judge Gordon relied on *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991), to establish a basis for entering his Memorandum Opinion after the appeal had been noted. ECF 51 at 3-4 in Adv. Proc. No. 13-510.

28

in the Residence for free and then during the period when they attempted to negotiate a HAMP modification. But per the Plaintiffs' theory, the termination of the Securitized Trust brought about a fundamental sea change that permanently altered the landscape. . . . As "theories of the case" go, this is mind-bendingly obtuse. Perhaps purposefully so. Nevertheless, as a blueprint for a fraud claim it amounts to patent nonsense.

Judge Gordon continued, *id.* at 18-19 (emphasis in Memorandum Opinion):

At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud.

Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of claim, *because some other, identifiable true holder of the Note and DOT was entitled to do so*, yet filed the claims anyway in contravention of that holder's rights.[ ]  However, during argument Mr. Haeger could not (or would not) articulate what happened to the Note and DOT when the Securitized Trust terminated:  did they revert to the original owner, were they magically transferred to some other entity or did they simply disappear into nothingness?  This point is crucial because without a precise allegation as to the ultimate disposition of the Note and DOT that plausibly establishes that Wells Fargo knew or should have known that it had no enforcement rights -- that its attempted collection and enforcement of the indebtedness was at odds with the rights of the true holder -- the allegation of wrongful conduct by Wells Fargo is mere fanciful malarkey.

Further, Judge Gordon said:  "The remaining counts of the Complaint also had to be cleansed of the detritus of the bogus fraud allegations. Those allegations run like toxins" through Counts III, V, VI, VIII, and IX, "where every allegation of the Complaint is incorporated and re-alleged." ECF 51 at 24 n.26 in Adv. Proc. No. 13-510. As Judge Gordon saw it, the Howes' "strategy [was] to spin a tale suitable enough to delay things for as long as possible. . . ." *Id.* at 25. According to Judge Gordon, "the time for unwarranted, strategic delay (and frivolous claims) was over." *Id.*

### F. Appeal

The Notice of Appeal challenges two orders of the Bankruptcy Court: the MTD Order,

entered on May 12, 2014, Apx. 285-287, and the Reconsideration Order, entered on July 22,

2014. Apx. 297-298. As framed by plaintiffs, the appeal presents five issues for review, ECF 19

at 7-8, Second Amended Brief:

> 1. Did the bankruptcy court err in looking beyond the four corners of the Complaint, when ruling on Defendants' motions to dismiss, relying on patently false and defective ownership documents provided by Defendant Carrington, at the court's direction, to prove its right to enforce Plaintiffs' Note, and rejecting Plaintiffs' allegations of misrepresentation and fraudulent intent?

> 2. Did the bankruptcy court err in granting Defendants' motions to dismiss for failure to state claims upon which relief can be granted, and dismissing all nine counts of the Complaint, including Counts 2 and 9 although not all Defendants requested their dismissal, since there were other plausible claims for relief that were independent of fraud or trust termination?

> 3. Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1) for failure to state a valid claim, holding that trust termination did not affect the trust's standing to enforce Plaintiffs' mortgage, and that Defendants did not act with fraudulent intent?

> 4. Did the bankruptcy court err, when ruling on Defendants' motions to dismiss, in finding that the trust holding Plaintiffs' mortgage did not cease to exist before Wells Fargo executed and filed multiple documents on its behalf, including the Second Foreclosure Case, Objection to Plan Confirmation, and the purported assignment of the Deed of Trust dated October 30, 2013?

> 5. Did the bankruptcy court err in directing Plaintiffs to omit, when amending the Complaint, any reference to fraud or misrepresentation arising from the lack of standing to foreclose or file bankruptcy claims by the trust that held Plaintiffs' mortgage?

According to the Howes, in light of the Trust's termination, none of the adversary

proceeding defendants has standing to enforce the Note, initiate a foreclosure, object to the

Chapter 13 plan, or file a proof of claim in the bankruptcy case. In plaintiffs' view, US Bank and

Wells Fargo committed fraud in the foreclosure proceedings and in the bankruptcy case by

representing that they are entitled to enforce the Note on behalf of the Trust. The Howes also

insist that Christiana and Carrington committed fraud by attempting to prosecute the Amended

Claim in the bankruptcy case. Thus, the Howes contend that the Bankruptcy Court erred in its dismissal of Count I, "Fraud Upon the Court," and in refusing to grant leave to amend, and also erred in its dismissal of the remaining counts of the Complaint.

In response, appellees argue that, even assuming the Note was removed from the Trust and the Trust was subsequently terminated, as plaintiffs allege, the Note remains enforceable and plaintiffs remain indebted to the holder of the Note. Moreover, in appellees' view, the lack of physical possession of the Note is not dispositive of one's rights to enforce a negotiable instrument. In addition, and as discussed, *infra*, defendants US Bank and Wells Fargo have moved to strike the Howes' Second Amended Brief. *See* ECF 20 ("Motion to Strike"); ECF 19 ("Second Amended Brief").

Additional facts are included in the Discussion.

## II. Preliminary Matters
### A.    Jurisdiction

The MTD Order dismissed Count I of the Complaint, with prejudice, and Counts II through IX, without prejudice. In the Reconsideration Order, the Bankruptcy Court declined to alter its rulings. Because Counts II through IX were dismissed, without prejudice, I must first consider whether this Court has jurisdiction to review the Bankruptcy Court's orders on appeal. *See Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 345 (4th Cir. 2005) (stating that "we must initially determine whether we have [appellate] jurisdiction to consider the [ ] court's dismissal *without* prejudice") (emphasis in *Chao*).

On appeal of a bankruptcy court's order, the district court has jurisdiction pursuant to 28 U.S.C. § 158(a). *Wellness Int'l Network, Ltd. v. Sharif,* ____ U.S. ____, 135 S. Ct. 1932, 1940 (2015) (acknowledging that bankruptcy court rulings are "subject to appellate review by the district court"); *see also Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013) (recognizing

31

the district court's capacity as a bankruptcy appellate court); *In re Kirkland*, 600 F.3d 310, 314

(4th Cir. 2010) (same).  Section 158(a) provides, in relevant part (emphasis added):

> The district courts of the United States shall have jurisdiction to hear appeals[1]
>
>> (1) from *final* judgments, orders, and decrees;
>>
>> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title [in order to file a bankruptcy plan]; and
>>
>> (3) with leave of the court, from other interlocutory orders and decrees[.]

The Fourth Circuit discussed the appealability of bankruptcy court orders in *McDow v.*

*Dudley*, 662 F.3d 284 (4th Cir. 2011), stating, *id.* at 287:

> We have recognized as a general matter, as have other courts of appeals, that "the concept of finality in bankruptcy cases 'has traditionally been applied in a more pragmatic and less technical way . . . than in other situations.'" *In re Computer Learning Ctrs., Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (alteration in original)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 599-600 (5th Cir. 2011); *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011); *Ritchie Special Credit Invs., Ltd. v. U.S. Trustee*, 620 F.3d 847, 852 (8th Cir. 2010); *In re McKinney*, 610 F.3d 399, 401-02 (7th Cir. 2010); *In re Rudler*, 576 F.3d 37, 43-44 (1st Cir. 2009). As we explained in *A.H. Robins Co.*:
>
>> The special or unique reason for this relaxed rule of appealability in bankruptcy is that "[b]ankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory."
>
> 788 F.2d 994, 1009 (4th Cir.1986) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)). Thus, because of the special nature of bankruptcy proceedings, which often involve multiple parties, claims, and procedures, the postponing of review by the district court and the court of appeals of discrete issues could result in the waste of valuable time and already scarce resources. *See id.* at 1009; *see also In re Northwood Props., LLC*, 509 F.3d 15, 21 (1st Cir. 2007). We have concluded, therefore, that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *In re Computer Learning Ctrs., Inc.*, 407 F.3d at 660 (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

Despite the "more pragmatic and less technical" conception of finality that applies with respect to a bankruptcy appeal, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (internal quotations omitted), "an order must 'conclusively determine[ ] a separable dispute over a creditor's claim or priority,'" in order to be considered final. *In re Urban Broadcasting Corp.*, 401 F.3d 236, 247 (4th Cir. 2005) (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 445-46 (1st Cir. 1983) (alteration in *In re Urban Broadcasting Corp.*). In other words, a final, appealable order is one that "finally dispose[s] of discrete disputes within the larger case." *In re Computer Learning Ctrs.*, 407 F.3d 656, 660 (4th Cir. 2005) (internal quotations omitted).

In *Young v. Nickols*, 413 F.3d 416 (4th Cir. 2005), the Fourth Circuit stated, *id.* at 418 (internal quotations and citations omitted):

> Generally, an order dismissing a complaint without prejudice is not an appealable final order under 28 U.S.C. § 1291 when the plaintiff could save his action by merely amending his complaint. However, if the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact, and appellate jurisdiction exists.

Here, the MTD Order dismissed with prejudice only one count of plaintiffs' Complaint, *i.e.*, Count I (Fraud Upon the Court). Apx. 286. As to counts II through IX, the MTD Order expressly dismissed the claims without prejudice, and permitted plaintiffs to file an amended complaint. Apx. 287. Likewise, in the Reconsideration Order, the Bankruptcy Court granted plaintiffs leave to file an amended complaint. Apx. 298. Nonetheless, when a plaintiff declines to amend and instead elects to "to stand on his or her complaint," the order may indeed possess the necessary finality because the plaintiff has "'waive[d] the right to later amend . . . .'" *In re GNC Corp.*, 789 F.3d 505, 511 n.3 (4th Cir. 2015) (quoting *Chao, supra*, 415 F.3d at 345). According to the Fourth Circuit, if the plaintiff abandons the right to amend, [the court on appeal] treat[s] th[e] case as if it had been dismissed with prejudice and therefore [has] jurisdiction over this appeal." *In re GNC Corp*, 789 F.3d at 511 n.3.

33

Here, plaintiffs chose to stand on their initial Complaint; they declined to file an amended complaint. Therefore, notwithstanding that the MTD Order and the Reconsideration Order dismissed only one count with prejudice, and the remaining eight counts without prejudice, I am satisfied that this Court has jurisdiction to consider the appeal.

### B.    Motion to Strike

When the Howes filed their appeal, Rule 8009(a) provided that an appellant may file a brief within fourteen days of the docketing of the appeal. Once the appellee replied, "[n]o further briefs may be filed except with leave of the district court . . . ." Fed. R. Bankr. P. 8009(a)(3). Effective December 1, 2014, Fed. R. Bankr. P. 8009(a) was replaced by Fed. R. Bankr. P. 8018. Rule 8018 increased the time available to an appellant to file an initial brief, from fourteen days to thirty days after the docketing of the notice of appeal. *See also* Fed. R. Bankr. P. 8018 advisory comm. nn. (2014).

In the Motion to Strike, US Bank and Wells Fargo contend that plaintiffs' Second Amended Brief was improperly filed out of time, and without leave of Court, in violation of Fed. R. Bankr. P. 8009(a)(3). Moreover, they insist that acceptance of the brief "would be prejudicial to Appellees" to the extent "anything new has been added . . . ." ECF 20 at 3, Motion to Strike. They argue, *id.*:

> There is no procedural rule allowing an appellant to start the briefing process all over again after the appellant's brief, appellee's response, and appellant's reply have all been drafted and filed. Even more egregious is that Appellants' Second Amended Brief was submitted to the Court without a redlined version showing how it differs from their first Amended Brief. As each document is 50 pages long, it is inherently unreasonable to expect the Appellees to compare each and every line to determine what, if any, changes have been made.

In opposing the Motion to Strike, plaintiffs explain: "Appellants filed their Second Amended Brief (ECF 19) for the sole purpose of providing the Court with references to their

34

Appendix to Brief (ECF 9)." ECF 22 ¶ 1, Opposition to Motion to Strike. They contend: "Appellees benefitted from Appellants' Appendix and were able to refer to it when citing to the record in their briefs." *Id.* ¶ 3. In contrast, "[a]ppellants did not have the benefit of their Appendix when they prepared their brief, so all references to the record in their brief are to the Court's relevant ECF docket numbers. Appellants' Second Amended Brief was prepared and filed to correct this problem and assist the Court in finding the papers cited in Appellants' brief." *Id.* ¶ 4. Plaintiffs further insist that "no substantive change was made to Appellants' brief with the subject amendment . . . ." *Id.* ¶ 5. In this regard, they attached a redline to their Opposition to Motion to Strike, reflecting the differences between the Second Amended brief and the initial amended brief. ECF 22-1.

To be sure, plaintiffs should have requested leave of Court to file the Second Amended Brief. Nonetheless, because there is no substantive change in the Second Amended Brief, and no actual prejudice resulted from its filing, I will deny the Motion to Strike (ECF 20).

### C.   Standards of Review

#### 1.   Role of District Court

The MTD Order of May 12, 2014, granted defense motions to dismiss the Complaint filed in the adversary proceeding. The Reconsideration Order of July 22, 2014, denied plaintiffs' motions to reconsider.

The standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."); *see also In re Slaey*, No. 1:14CV1210, 2015 WL 5139317, at *3 (E.D. Va. Sept. 1, 2015) (citing 28 U.S.C.

35

§ 158(c)(2); *Haynes v. Stephenson*, No. 3:14-CV-352-MGL, 2015 WL 687133, at *3 (D.S.C. Feb. 18, 2015) (same); *Alexander v. Barnwell Cnty. Hosp.*, No. CIV.A. 1:13-02164, 2014 WL 607499, at *3 (D.S.C. Feb. 18, 2014) (same).

Accordingly, the district court reviews the bankruptcy court's findings of fact under the "clear error" standard. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta, supra*, 721 F.3d at 250. A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). The bankruptcy court's conclusions of law are subject to de novo review. *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia*, the district court's power to remand with instructions for further proceedings).

In Count III, plaintiffs sought sanctions against defendants. "A bankruptcy court's decision to impose [or deny] sanctions [ ] is within its sound discretion and is, therefore, reversible only if that discretion has been abused." *In re Nat'l Heritage Found., Inc.*, 510 B.R. 526, 541 (E.D. Va. 2014) *aff'd sub nom. Miller v. Nat'l Heritage Found.*, Inc., 599 F. App'x 107 (4th Cir. 2015); *see also In re Glasco*, 321 B.R. 695, 699 (W.D.N.C. 2005).

Fed. R. Civ. P. 59 governs a motion to amend judgment and is applicable in bankruptcy court pursuant to Fed. R. Bankr. P. 9023. Fed. R. Civ. P. 60(b) is made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9024. On appeal, a bankruptcy court's denial of a

36

motion for reconsideration is reviewed for abuse of discretion. *See In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992); *see also In re Castillo*, No. TDC-14-0924, 2015 WL 789095, at *7 (D. Md. Feb. 23, 2015); *Fuentex v. Stackhouse*, 182 B.R. 438, 442 (E.D. Va. 1995).

## 2. Fed. R. Bankr. P. 7008 and 7012; Fed. R. Civ. P. 12(b)(6)

Defendants' motions to dismiss the Complaint were predicated on Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b).[38] According to Fed. R. Bankr. P. 7012(b), Fed. R. Civ. P. 12(b) applies in adversary proceedings. And, pursuant to Fed. R. Bankr. P. 7008, Fed. R. Civ. P. 8 also applies in adversary proceedings.

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" If the pleader fails to do so, then a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Bankr. P. 7012,w hich essentially incorporates Fed. R. Civ. P. 12.

A defendant may test the sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007) (quotations omitted). A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

---

[38] The motions were also predicated on Fed. R. Bank. P. 7009, discussed *infra*.

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, courts "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, _____ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam). But, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, _____ U.S. ____, 132 S. Ct. 402 (2011); *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards, supra,* 178 F.3d at 243 (quotation marks omitted); *Tobey v. James,* 706 F.3d 379, 387 (4th Cir. 2013). But, on occasion, a defense can be resolved on the basis of the facts alleged in the complaint. "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint,*'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993)) (alteration and emphasis in *Goodman*).

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied,* ____ U.S. ____, 132 S. Ct. 1960 (2012).

Ordinarily, a court considering a motion to dismiss "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Cahaly v. Larosa,* 796 F.3d 399, 405 (4th Cir.). If a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Under certain limited exceptions, however, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary

39

judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 506 (4th Cir. 2015).

To illustrate, a court may properly consider documents attached or incorporated into the complaint, as well as documents attached to the defendant's motion, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in *Chesapeake*). In addition, without converting a motion under Rule 12(d), "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"[39] *Goldfarb, supra*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b)(stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also* Tellabs, *Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, _____ U.S. _____, 132 S. Ct. 115 (2011); *Philips, supra*, 572 F.3d at 180.

Plaintiffs attached multiple exhibits to their Complaint. *See* note 8, *supra*. Defendants did not dispute the authenticity of these documents. Moreover, because they were incorporated into the Complaint and integral to it, the Bankruptcy Court was entitled to consider them.

---

[39] "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, ADVISORY COMMITTEE'S NOTES.

### 3. Fed. R. Civ. P. 9(b)

The Complaint lodges claims of fraud. These allegations implicate the heightened pleading standard under Fed. R. Civ. P. 9, which is applicable to adversary pleadings within a bankruptcy case. *See* Fed. R. Bankr. P. 7009 (stating that "Rule 9 F.R.Civ.P. applies in adversary proceedings"). Fed. R. Civ. P. 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See, e.g., Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *E–Shops Corp. v. US Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims.").

Under Rule 9(b), a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted). As Judge Gordon put it: "The rule is intended to discourage a 'sue first, ask questions later' philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011)." ECF 51 at 17 in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.

Rule 9(b) serves several salutary purposes. In *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), the Fourth Circuit said (quoting *U.S. ex rel. Stinson,*

41

*Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1055,

1056-57 (S.D. Ga. 1990) (alteration in *Harrison*)):

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

However, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is

satisfied (1) that the defendant has been made aware of the particular circumstances for which

she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery

evidence of those facts." *Harrison*, 176 F.3d at 784. Moreover, Rule 9(b) is "less strictly

applied with respect to claims of fraud by concealment" or omission of material facts, as opposed

to affirmative misrepresentations, because "an omission 'cannot be described in terms of the

time, place, and contents of the misrepresentation or the identity of the person making the

misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D.

Md. 1997) (citation omitted); *accord Piotrowski v. Wells Fargo Bank, N.A.,* No. DKC 11–3758,

2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

### D.   Choice of Law

This case involves principles of both state and federal law. Nevertheless, the parties have

not addressed the matter of choice of law. Rather, the parties have briefed the issues as if

substantive Maryland law governs the state law claims, with little discussion or analysis as to the

applicable choice of law principles.

The Fourth Circuit provided guidance in *Compliance Marine, Inc. v. Campbell (In re*

*Merritt Dredging Co.),* 839 F.2d 203, 205 (4th Cir.1988).

> The question of what choice of law rules should be applied by a bankruptcy court presents another wrinkle. Although bankruptcy cases involve

42

federal statutes and federal questions, a bankruptcy court may, as here, face situations in which the applicable federal law incorporates matters which are the subject of state law. It is clear that a federal court in such cases must apply state law to the underlying substantive state law questions.

In *Biegler v. Heep*, 172 F.3d 43 (4th Cir. 1999) (per curiam), the Fourth Circuit observed that, when it reviews a bankruptcy proceeding on appeal, it is ordinarily "required to apply the choice of law rules of the forum state . . . ." *Id.* at *3 n.1; *see also McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014 WL 2696660, at *10 (E.D. Va. June 6, 2014); *Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010). Therefore, the law of Maryland, the forum state, guides this Court's choice-of-law analysis. *Chattery Int'l, Inc. v. JoLida, Inc.*, No. WDQ–10–2236, 2012 WL 1454158, at *3 n.10 (D. Md. Apr. 24, 2012) ("Federal courts with supplemental jurisdiction over a state law claim apply the choice of law rules of the forum state."); *Baker v. Antwerpen Motorcars Ltd.*, 807 F.Supp.2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

Insofar as the Complaint alleges common law fraud, such claims sound in tort. *See J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action."). In tort cases, Maryland courts apply the doctrine of *lex loci delicti, i.e.*, the law of the "place of the alleged harm." *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged injuries occurred in Maryland, I will look to Maryland law with respect to plaintiffs' tort claims. To the extent the Complaint includes an Objection to Claim, as explained in the Discussion of Count IX, the existence of such a claim is controlled by Maryland law, but the allowance of such a claim is governed by federal law.

43

With respect to the issues surrounding the termination of the Trust, at the hearing on January 6, 2014, Judge Gordon asked counsel for Wells Fargo if Maryland law applies to the Trust termination issue. Counsel for Wells Fargo stated: "It may not be Maryland Law." Apx. at 334. Judge Gordon also expressed doubt that Maryland law controls. At the hearing on March 4, 2014, he said, Apx. 214:

> I wondered whether Maryland law even applied to the transaction, knowing that it would be unlikely that the great minds that fashioned these securitization trusts and set up all of these transactions that led to the worst economic disaster since the Great Depression probably wouldn't look to Maryland law to figure out what it all meant, if that became necessary.

Ultimately, Judge Gordon concluded that, in view of *Jaimes v. JPMorgan Chase Bank, N.A.*, No. 12-C 3162, 2013 WL 677740 (N.D. Ill. Feb. 25, 2013), discussed *infra*, the choice of law issue was inconsequential as it related to termination of the Trust. Apx. 214, Hearing of March 4, 2014; *see also Jaimes*, 2013 WL 677740, at *4-*5 (concluding that the debtor-creditor relationship created by the execution of a note remains unchanged, notwithstanding securitization of the note, the creation of a trust whereby multiple notes are pooled together, or the subsequent termination of the trust).

As to the Trust termination, the parties relied upon Maryland law and did not identify any relevant legal principles that might differ in other jurisdictions. Maryland choice-of-law principles contain guidance for courts when the parties fail to address adequately a choice-of-law issue. In *Chambco, Div. of Chamberlin Waterproofing & Roofing, Inc. v. Urban Masonry Co.*, 338 Md. 417, 421, 659 A.2d 297, 299 (1995), the Maryland Court of Appeals said (citations omitted):

> Where the parties to an action fail to give . . . notice of an intent to rely on foreign law, and where it is clear that one or more issues in the case are controlled by another jurisdiction's law, a court in its discretion may exercise one of two choices with respect to ascertaining the foreign law. First, the court may presume

44

that the law of the other jurisdiction is the same as Maryland law. Alternatively, the court may take judicial notice of the other state's law. This discretion may be exercised by either the trial court, or by an appellate court . . . .

*Accord Felland Ltd. P'ship v. Digi–Tel Commc'ns, LLC,* 384 Md. 520, 530 n.1, 864 A.2d 1027, 1033 n.1 (2004).

Therefore, in accordance with *Chambco,* I will assume that, to the extent the law of any other jurisdiction ought to govern the issue of the Trust termination, it is the same as the law of Maryland. *See Ohio Sav. Bank v. Progressive Cas. Ins. Co.,* 521 F.3d 960, 962 (8th Cir. 2008) ("Like the district court, we will ignore what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict . . . ."); *Cleaning Auth., Inc. v. Neubert,* 739 F. Supp. 2d 807, 820 (D. Md. 2010) ("'Choice-of-law analysis becomes necessary . . . only if the relevant laws of the different states lead to different outcomes.'") (citation omitted).

### III. Discussion

#### A.    Termination of the Trust

Before addressing the Bankruptcy Court's dismissal of all nine counts, I turn to plaintiffs' threshold contention, underpinning many of their claims: termination of the Trust precluded the adversary defendants from taking any action to enforce the Note. If plaintiffs' foundational argument is erroneous, plaintiffs' claims of liability begin to unravel.

The fraud claim in Count I is based on the pursuit of the mortgage debt by US Bank and Wells Fargo, without disclosure that the Trust had terminated in January 2012.   In Count II, requesting a "Determination of Scope, Extent and Validity of Lien," Apx. 41, Complaint at 20, plaintiffs sought a ruling that the Note is unenforceable, and that no party had standing to file a secured claim against the Property because of the termination of the Trust. Apx. 42, Complaint

45

¶ 85. Count VI, alleging violations of the FDCPA, rests on the notion that because the Note was not assigned prior to the termination of the Trust, Wells Fargo, US Bank, and Christiana cannot claim ownership of the Note on behalf of the Trust. In Count VII, which alleges violations of the MCDCA, plaintiffs contend that Wells Fargo, US Bank, and Christiana sought to collect amounts to which they knew they were not entitled. Similarly, in Count VIII, in which plaintiffs allege violations of MCPA, the Howes maintain that Wells Fargo and US Bank improperly concealed the termination of the Trust. Finally, Count IX, plaintiffs' "Objection to Claim," asserts, *inter alia*, that US Bank and Wells Fargo lack standing to file the Amended Claim due to the Trust's termination. Apx. 54, Complaint at 33.

On appeal, the Howes contend that the Bankruptcy Court improperly ruled that the Trust's termination "did not affect" the defendants' right to enforce the Note. ECF 19 at 7, Second Amended Brief. Plaintiffs frame their challenge as one of "standing." In plaintiffs' view, because the Trust ceased to exist, Wells Fargo and US Bank lacked standing to enforce the Note and to prosecute the Amended Claim. And, because Wells Fargo and US Bank lacked standing, plaintiffs contend that any assignment of interest in the Note from Wells Fargo and US Bank to Christiana and Carrington was invalid. Apx. 41-42, Complaint ¶¶ 74-97. According to the Howes, it follows that Christiana and Carrington lack standing to enforce the Note in the Chapter 13 case through the Amended Claim.

Appellees rely on *Jaimes v. JPMorgan Chase Bank, N.A.*, *supra*, 2013 WL 677740, to challenge the Howes' position. In *Jaimes*, plaintiffs Roberta and Beata Jaimes entered a loan agreement with Washington Mutual Bank, F.A. ("WaMu") and executed a promissory note secured by a mortgage on certain property in Illinois. *Id.* at *1. The loan agreement designated WaMu as the servicer of the loan. *Id.* On May 1, 2004, WaMu transferred the note and

46

mortgage to a mortgage-backed securities trust ("WaMu Trust"), *id.*, which pooled together nineteen other Illinois mortgage loans. *Id.* at *3. Under the terms of the WaMu Trust, WaMu retained possession of the note and mortgage as custodian for the WaMu Trust. *Id.* at *1. WaMu also retained servicing rights for those loans held by the WaMu Trust. *Id.* Less than a year later, on March 30, 2005, the WaMu Trust was terminated. *Id.*

In 2008, JPMorgan Chase Bank, N.A. ("Chase") sent several bills to the plaintiffs, in which Chase represented that it was the creditor and the servicer of the plaintiffs' note and mortgage. *Id.* In response, plaintiffs paid several bills. *Id.* On September 25, 2008, the Federal Deposit Insurance Corporation ("FIDC") was named receiver of the WaMu Trust. *Id.* On the same date, Chase and the FDIC entered into an agreement by which Chase purchased "'all right, title, and interest of the Receiver in and to all of the assets'" of WaMu and its subsidiaries. *Id.* (quoting purchase agreement). The purchase agreement also stated that Chase "'specifically purchases all mortgage servicing rights and obligations of [WaMu].'" *Id.* (quoting purchase agreement) (alteration in *Jaimes*).

On August 8, 2011, a law firm sent a letter to plaintiffs, in "'an attempt to collect a debt.'" *Id.* at *2 (quoting the complaint). The letter indicated that the law firm "represents the holder of a Mortgage and Note" for plaintiffs' house. *Id.* at *2. The letter also identified Chase as the creditor and servicer of the note. *Id.* Then, on August 11, 2011, Chase initiated a foreclosure proceeding to enforce the note. *Id.*

Thereafter, in April 2012, plaintiffs filed suit against Chase, alleging, *inter alia*, FDCPA violations. According to the plaintiff, Chase never acquired an interest in the note, and thus its attempts to collect payments were fraudulent. In plaintiffs' view, the WaMu Trust was terminated on March 30, 2005, and its assets "'were distributed to the certificate-holders of the

47

Trust'" such that the certificate-holders "'became the only mortgagees, the only owners and legal holders of the Note and the Mortgage.'" *Id.* at *4 (quoting the complaint).   Because termination resulted in a distribution of the WaMu Trust assets to certificateholders, plaintiffs argued that neither WaMu nor its successor-in-interest, Chase, had authority to collect mortgage payments, assign the note or mortgage, or foreclose on the note. *Id.* at *2, *4.

Chase moved to dismiss. *Id.* at *2. In resolving the motion, the court considered the effect of the WaMu Trust's termination on the ability of WaMu and Chase to service the mortgage.

The *Jaimes* Court rejected plaintiffs' theory that their loan obligation terminated upon the termination of the WaMu Trust because the servicing rights were not sold or transferred prior to termination of the WaMu Trust. *Id.* at *4. The *Jaimes* Court emphasized that "a trust's termination does not terminate the payment obligations on the mortgages in the trust." *Id.* It explained further: "A mortgage-backed securitization trust, like the Trust here, merely holds a group of mortgage loans. The process of grouping mortgage loans into a security held by a trust, known as securitization, does not change the underlying loan obligations of the borrowers whose mortgages comprise the trust." *Id.* In other words, pooling mortgages together into a trust does not in any way eradicate or modify the borrower's underlying obligation to pay on the note.

The court also explained that termination of the WaMu Trust was immaterial because plaintiffs "do not argue that they were billed twice for the same loan payment obligation beginning in September 2008, nor do they contend that Chase failed to credit them for the payments they made to Chase after Chase billed them." *Id.* at *5. The court reasoned that, in the absence of two masters claiming ownership of the note, "it is reasonable for the Court to infer that the servicing rights on Plaintiffs' debt transferred from WaMu to Chase pursuant to the P &

48

A Agreement in September 2008." *Id.*

In sum, the *Jaimes* Court found that "it is insufficient for Plaintiffs to plead that the Trust's termination destroyed WaMu's servicing rights and that Chase, as successor-in-interest to WaMu, fraudulently serviced the debt beginning in September 2008, without offering any allegation as to who became the servicer of their debt upon the Trust's termination." *Id.* On this ground, the court concluded that Chase had a right to service the loan, notwithstanding the trust termination, and it dismissed the claims as to Chase.

The Howes dispute the significance of *Jaimes*. They maintain that the case is not "binding precedent" and insist the facts here are distinguishable. ECF 19 at 21, Second Amended Brief. The Howes highlight that in *Jaimes*, it was Chase, as a creditor and the servicer of the mortgage, that filed the foreclosure suit. *Id.* at 22. In plaintiffs' view, because the foreclosure action in that case was initiated by the servicer, the significance of *Jaimes* is limited to determining rights of a mortgage servicer upon trust termination and does not speak to the rights of a trustee seeking to enforce an instrument owned by a terminated trust. The Howes maintain that *Jaimes* is inapplicable because the Second Foreclosure Case was initiated by the substitute trustee on behalf of the Trust, and not by Wells Fargo as the servicer. *Id.* at 21-22.

The Howes' view of *Jaimes* is too narrow. Although the focus of *Jaimes* was indeed the effect of the trust termination on servicing rights, the case is nonetheless pertinent. It demonstrates that a borrower's obligation to pay his or her mortgage may survive securitization of the instrument and the subsequent termination of the investment trust. *Jaimes*, 2013 WL 677740, at*4-5.

Indeed, numerous cases establish that, "[a]s a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay

back his or her loan." *Dauenhauer v. Bank of New York Mellon*, No.12-CV-01026, 2013 WL 2359602, at *5 (M.D. Tenn. May 28, 2013), *aff'd*, 562 F. App'x 473 (6th Cir. 2014); *see, e.g., Beasley v. FV-I, Inc.*, No. 1:13-CV-116 JCC/TRJ, 2013 WL 1192018, at *4 (E.D. Va. Mar. 21, 2013) (". . . Plaintiff also complains that the subject Note has been securitized and therefore rendered unenforceable as to him. Plaintiff presents no plausible legal argument to bolster this assertion. Whether or not there has been transfer of the Loan, there are no facts alleged which would relieve Plaintiff of his obligation to pay."); *Upperman v. Deutsche Bank Nat. Trust Co.*, No. CIVA 01:10-CV-149, 2010 WL 1610414, at *2 (E.D. Va. Apr. 16, 2010) ("There is no legal authority that the sale or pooling of investment interest in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property."); *see Reyes v. GMAC Mortg. LLC*, 2011 WL 1322775, at *2 (D. Nev. April 5, 2011) ("[F]ive of plaintiffs' claims are based on the idea that securitization inherently changes the existing legal relationship between the parties to the extent that the original parties cease to occupy the roles they did at the closing . . . . This argument has been rejected [ ] because the securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust.") (internal quotations omitted); *see also In re Nordeen*, 495 B.R. 468, 478-79 (B.A.P. 9th Cir. 2013) (collecting cases).

*Deutsche Bank v. Brock*, 430 Md. 714, 63 A.3d 40 (2013), is informative. There, the borrower challenged the authority of various individuals and entities to foreclose on her residence. She alleged, *inter alia,* that the trust holding the note had ceased to exist and, therefore, no longer owned the note. *Id.* at 722-23, 63 A.3d at 44. The borrower insisted that, "regardless of which entity is the holder of the Note, only the owner may enforce the Note and bring an action to foreclose." *Id.* at 730, 63 A.3d at 49. Relying on Maryland Code, C.L. § 3-

50

203,[40] the Maryland Court of Appeals stated: "'The right to enforce an instrument and ownership of the instrument are two different concepts.'" *Id.* at 730, 63 A.2d at 49 (quoting Comment to C.L. § 3-203). It reasoned, *id.* at 731, 63 A.3d at 50: "Here, Brock does not contend that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case." As in *Jaimes*, the *Brock* Court concluded that "whether the Trust is (or is not) the owner of the Note is irrelevant for present purposes." *Id.* at 732-33, 63 A.3d at 51.

In this case, the Note was securitized and pooled with other notes in a mortgage-backed Trust. In April 2009, the Howes defaulted on the Note, although they made some partial payments through August 2009. Apx. 26, Complaint ¶ 17; *see e.g.*, ECF 51 at 22-25 in Adv. Proc. No. 13-510. The Howes insist that on January 1, 2012, "[t]he Mortgage was removed from the Trust" and, according to plaintiffs, its assets were distributed to certificateholders. *Id.* By January 25, 2012, the Trust ceased to exist. *Id.*

I recognize that the dispute here arises due to the termination of the Trust, and not its creation through the securitization process. Nonetheless, in view of *Brock, Dauenhauer, Beasley, Upperman,* and *Reyes,* among other cases, it follows logically that the "unpooling" of the instruments upon the Trust's termination would not disturb the underlying responsibility of the Howes to pay the obligation due on the instruments. In other words, as Judge Gordon explained, the termination of the Trust did not relieve the Howes of their obligations under the Note or the Deed of Trust. The termination of the Trust, standing alone, did not render unenforceable the instruments held by the Trust prior to its termination.

---

[40] As noted, C.L. is an abbreviation for the Commercial Law Article of the Maryland Code.

51

Accordingly, I agree with the Bankruptcy Court that the termination of the Trust, in and of itself, did not affect the enforceability of the Note or the Deed of Trust. Whether the instruments remained enforceable after termination of the Trust, and which party, if any, has "standing" or the right to enforce them, are two distinct questions, as discussed, *infra*.

As mentioned, plaintiffs' contention that the termination of the Trust precluded any claim or action to enforce the Note is the foundational argument upon which most of plaintiffs' claims rise and fall. I have rejected the underlying premise. Like a house of cards, many of plaintiffs' claims quickly collapse. I address below the ripple effect on each claim.

### B.    Count I -- Fraud Upon the Court

Count I, filed only against Wells Fargo and US Bank, is titled "Fraud Upon the Court." On appeal, plaintiffs ask: "Did the bankruptcy court err in dismissing, without leave to amend, Plaintiffs' fraud on the court count (Count 1) for failure to state a valid claim . . . .[?]" ECF 19 at 7, Second Amended Brief.[41]

The Howes complain in Count I that they "do not know the identity of the rightful owner of the Note" (Apx. 38, Complaint ¶ 62), because "the Mortgage was removed from [the] Trust on January 1, 2012, and the Trust terminated and ceased to exist on January 25, 2012, before the Second Foreclosure Case was filed . . . ." Apx. 33, Complaint ¶ 43. Appellants also allege that Wells Fargo "falsely filed its Amended Claim in the present case on March 15, 2013, misrepresenting its identity as 'Creditor' . . . and conceding the fact that the trust had not existed since January 25, 2012." ECF 19 at 11, Second Amended Brief (citing Complaint, [Apx. 39] ¶¶ 67-68). The Howes assert, ECF 19 at 20, Second Amended Brief:

---

[41] Count I was filed pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9011. Apx. 38, Complaint. Section 105 permits the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." And, Fed. R. Bankr. P. 9011 is the bankruptcy equivalent of Fed. R. Civ. P. 11.

. . . Wells Fargo engaged in executing and filing false documents in the name of the non-existent trust, in the bankruptcy court and [State] circuit court, and attempting to mislead the circuit court into believing that any proceeds awarded in the foreclosure would convey to the benefit of the trust investors, even though that was an impossibility. Appellants further allege that Wells Fargo now falsely misrepresents itself as the secured creditor in the present case, and continues to execute false documents used as evidence in this proceeding (see 2013 Trust Assignment, ECF 1-37 at 29 (Apx. 278), discussed infra under Count 2), in an attempt to abuse the judicial process and collect a debt that is not due it.

At the hearing on July 16, 2014, Judge Gordon asked counsel for plaintiffs: "So, is [Count I] fraud on the Court or is it fraud on your client?" Apx. 358. Counsel for plaintiffs replied: "Well, it really is both." *Id.* But, counsel added that Count I "sounds primarily as fraud on the Court." *Id.* Judge Gordon twice asked plaintiffs' counsel: "What are you going to prove in support of fraud?" Apx. 356-67; Apx. 357. Plaintiffs' lawyer responded, Apx. 357: "I would prove that the trust terminated. That US Bank as trustee no longer owned the note. That US Bank and Wells Fargo were aware of that fact. That they sought to hide it. . . . [i]n order to get paid for their foreclosure fees and costs. I would submit that would be the primary reason."

In addition, plaintiffs' counsel explained that his clients were "damaged" (Apx. 357) "[b]y having to demonstrate to the Court that this claimant is not entitled to foreclosure fees and costs. And that it doesn't have standing." Apx. 358. "Basically," said plaintiffs' counsel, "that is it." *Id.*

Based on the record, it is plain that there was some uncertainty as to the party legally entitled to enforce the Note. According to Judge Gordon, this confusion occurred, in part, due to "sloppiness" and "bumbling" by Wells Fargo and US Bank. Apx. 226. For instance, the Kennerty Affidavits submitted in the First Foreclosure Case to establish US Bank's right to enforce the Note proved to be affirmations made without any personal knowledge of the facts stated therein. Apx. 32, Complaint ¶ 39. Similarly, Dore apparently did not sign the Dore

53

Affidavits submitted in the First Foreclosure Case, contrary to the representations in the affidavits. Apx. 32, Complaint ¶ 38.  As a result, the First Foreclosure Case was dismissed. Apx. 32, Complaint ¶ 40.

Wells Fargo and US Bank concede that their own carelessness has contributed to confusion in this case.  For example, they acknowledge that their counsel failed to differentiate between Wells Fargo as the servicer and US Bank as the owner of the Note.  They explain, ECF 11 at 18 n.10, Wells Fargo Brief:

> In the Memorandum in Support of Motion to Dismiss, counsel for U.S. Bank and Wells Fargo confused his clients' respective roles, drew no distinction between the owner of the Note and its holder, and argued that Wells Fargo acquired Appellants' loan in 2012. See, e.g., Appendix, pp. 85-90. However, as the bankruptcy court correctly discerned, U.S. Bank was the holder, and Wells Fargo the servicer, at all times relevant to the Complaint.

Notwithstanding such missteps or errors, plaintiffs have not alleged facts that amount to fraud upon the court.

To be sure, a precise definition of "fraud on the court" is "elusive." *Great Coastal Exp., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1356 (4th Cir. 1982).  It is a "nebulous concept" that is "construed very narrowly . . . ." *Id.* Clearly, it "is not your 'garden variety fraud.'" *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 135 (4th Cir. 2014) (citation omitted).  As the Fourth Circuit has explained, *id.* at 136, "not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individual parties generally does not."

Moreover, "this doctrine should be invoked only when parties attempt 'the more egregious forms of subversion of the legal process . . . , those that we cannot necessarily expect to be exposed by the normal adversary process.'" *Fox*, 739 F.3d at 136 (quoting *Great Coastal*, 675 F.2d at 1357); *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46

(1944); *see also* 12 JAMES WM. MOORE ET AL., *Moore's Federal Practice* ¶ 60.21[4][a] (3d ed. 1999) (stating that fraud upon the court encompasses an attempt to corrupt the "integrity of the normal process of adjudication"). These "egregious cases" include "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." *Great Coastal Exp., Inc*, 675 F.2d at 1356.

Notably, fraud on the court "presents . . . a very high bar for any litigant." *Fox*, 739 F.3d at 136-37. In particular, establishing fraud on the court involves "corruption of the judicial process itself" and does not apply to a "routine evidentiary conflict." *Id.* at 136 (internal quotations omitted). Although plaintiffs need not "prove" their case at the motion to dismiss stage, their allegations must be sufficient to state a claim.

Plaintiffs acknowledge that their allegations "may not be the best fit" for a claim of fraud on the court. ECF 19 at 20, Second Amended Brief. But, they posit that the allegations "certainly state a claim for relief in some fashion. This is especially apparent from the false representations of holder status made by Appellees in the Bankruptcy Case, and Wells Fargo's impossible 2013 Trust Assignment that was provided to Appellants at the court's direction." *Id.*

Judge Gordon rejected the contention that the conduct of Wells Fargo and US Bank constituted fraud upon the court. In his Memorandum Opinion of November 5, 2014, Judge Gordon explained: "At the core of the dismissal with prejudice of Count I is the Complaint's irremediable failure to explain with precision beyond rhetoric and hyperbole why Wells Fargo's holding itself out as a creditor by filing proofs of claim amounts to fraud." ECF 51 at 18 in Adv. Proc. No. 13-510. According to the Bankruptcy Court, "Wells Fargo's actions could only possibly be wrongful if it knew or should have known that it had no right to file the proofs of

claim, because some other, identifiable true holder of the Note and DOT [*i.e.*, Deed of Trust] was entitled to do so, yet filed the claims anyway in contravention of that holder's rights." *Id*. But, he added, "it is just as (and frankly more) plausible to conclude that Wells Fargo reasonably believed it had every right to enforce the Note and DOT, that the foreclosure fees were legitimate and recoverable and that Claims Nos. 4-1 and 4-2 were filed to achieve those simple ends." *Id*.

In addition, Judge Gordon found a second critical shortcoming, pertaining to plaintiffs' failure to allege any damage resulting from the purported misrepresentations. At the hearing on March 4, 2014, for example, he stated, Apx. 223 (emphasis added):

> Count one is fraud upon the Court, that the proof of claims were filed to defraud the Court by hiding the fact that the trust had terminated, and Wells Fargo was not entitled to recover fees from the foreclosure. This is spiced with a fleeting but basically unexplained mention of an AG, attorney general, settlement[42] and how that impacts upon Wells Fargo's claim filing duties generally, a "pattern and

---

[42] In the Complaint, the Howes referred to a settlement between Wells Fargo and "49 State Attorneys' General." Apx. 38, Complaint ¶ 67. The circumstances giving rise to this settlement, and its significance here, are unclear. "

According to the Complaint, Wells Fargo entered into a "Consent Order" pursuant to the AG Settlement. The Howes allege that the AG Consent Order stated, in pertinent part, Apx. 44, Complaint ¶ 95 (emphasis in Complaint):

> Servicer shall not file a [proof of claim] in a bankruptcy proceeding which, when filed, contained **materially inaccurate information**. In cases in which such a POC may have been filed, **Servicer shall not rely on such POC and shall** (a) in active cases, at Servicer's expense, take appropriate action, consistent with state and federal law and court procedure, **to substitute such POC with an amended POC as promptly as reasonably practicable (and, in any event, not more than 30 days) after acquiring actual knowledge of such material inaccuracy** and provide appropriate written notice to the borrower or borrower's counsel; and (b) in other cases, at Servicer's expense, take appropriate action after acquiring actual knowledge of such material inaccuracy.

Plaintiffs further assert, Apx. 38, Complaint ¶ 67: Wells Fargo sought to hide Trust termination by not attaching to the Amended Claim evidence of Trust termination, although required to do so by Fed. R. Bankr. P. 3001 and the settlement it reached with the 49 State Attorneys' General effective April 5, 2012 (hereinafter 'AG Settlement')."

56

practice" of Wells Fargo and US Bank of filing fraudulent proof of claims and a spiel at the end about how tough it is to get better and how easy it is to be a bank.

All of that may be true, but how does it set out a claim for fraud upon the Court in this case? *Absolutely no detailed allegation of how misfiling of the proof of claims caused an injury to the Debtor or the Court or allowed Wells Fargo or US Bank to gain an advantage. And I mean a real advantage.*

In his Memorandum Opinion of November 5, 2014, Judge Gordon concluded: "There is nothing alleged in the Complaint that plausibly supports the notion that Wells Fargo set in motion an unconscionable scheme calculated to interfere with this Court's process by filing Claim Nos. 4-1 and 4-2. Without a legitimate, non-frivolous allegation that Wells Fargo knowingly acted in contravention of some other entity's right to enforce the Note and DOT, a claim of 'fraud on the court' cannot be alleged in good faith." ECF 51 at 21 in Adv. Proc. No. 13-510.

In my view, the Bankruptcy Court did not err in its dismissal of Count I, because the Complaint does not adequately allege fraud upon the court. It does not allege a scheme to subvert the legal process or to thwart the ability of a court to function impartially. Even assuming, *arguendo*, that Wells Fargo and US Bank should have disclosed the termination of the Trust, the omission does not constitute fraud upon the court, because the Note remains enforceable. Moreover, plaintiffs failed to identify a material adverse consequence resulting from the alleged misrepresentations.[43]

---

[43] To be sure, a lawyer who knowingly files a false document with a court may face serious professional consequences. *See, e.g., Attorney Grievance Comm'n of Maryland v. Geesing*, 436 Md. 56, 80 A.3d 718 (2013) (suspension for filing robo-signed affidavits in foreclosure proceedings); *Attorney Grievance Comm'n of Maryland v. Dore*, 433 Md. 685, 73 A.3d 161 (2013) (same); *see also* Maryland Lawyers' Rules of Professional Conduct 3.3(a)(1) (making or failing to correct a false statement to a tribunal); 8.4(c) (dishonesty, fraud, misrepresentation); 8.4(d) (conduct prejudicial to the administration of justice). But, such conduct does not necessarily constitute fraud upon the court.

In the alternative, plaintiffs argued that the misconduct of Wells Fargo and US Bank in concealing the termination of the Trust amounted to common law fraud. Apx. 358, Hearing dated July 16, 2014. At the hearing on July 16, 2014, they asserted: "The main fraud [perpetrated by Wells Fargo] is trying to hide the fact that there was no standing to file the foreclosure case." Apx. 342, Hearing of January 6, 2014. Moreover, the Howes maintain that the filing of their bankruptcy case and the related litigation that ensued constituted justifiable reliance and damages. They posit: "Appellants suffered damages as a result of the concealment by having to file the Bankruptcy Case to stop the foreclosure sale, incurred legal fees to uncover and stop Wells Fargo and US Bank from benefitting from their concealment, and they suffered damages from the delay this litigation has caused in getting their bankruptcy reorganization approved." ECF 19 at 18, Second Amended Brief.

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular theory, at a trial the plaintiff must establish the elements of fraud "by clear and convincing evidence" *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 517 (2002). In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

"A 'false representation' is a statement, conduct, or action that intentionally

58

misrepresents a material fact." *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citation omitted); *see also Gross v. Sussex Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993) (stating that, to be actionable, a false representation "must be of a material fact"). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important . . . .'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). Moreover, the fraudulent "misrepresentation must be made with the deliberate intent to deceive." *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)); *accord Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524, 958 A.2d 385, 390 (2008). So, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117, 1125 (1995).

Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions. In other words, a claim of failure to disclose "requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 138 n.11, 916 A.2d 257, 274 n.11 (2007). "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Gaynor*, 370 Md. at 97, 803 A.2d at 516. However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 239, 469 A.2d 867, 891 *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215 (1985).

Fraud based on active suppression of material facts is the variety of fraud referred to as

59

"fraudulent concealment." The Maryland Court of Appeals has said: "Fraudulent Concealment 'is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed.'" *Lloyd*, 397 Md. at 138, 916 A.2d at 274 (citation omitted). It describes a "situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from" a material fact. *Id.* at 138 n.11, 916 A.2d at 274 n.11.

"To create a cause of action, concealment must have been intentional and effective-the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive." *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223, 225–26 (1958). As the *Rhee* Court explained, 182 Md. App. at 536, 958 A.2d at 396 (quoting *Stewart v. Wyoming Cattle–Ranche Co.*, 128 U.S. 383 (1888)) (alterations in *Rhee*):

> [T]he concealment or suppression [of a material fact] is in effect a representation that what is disclosed is the whole truth. The gist of the action [for fraud] is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant . . . .

Where the fraudulent concealment claim is based on a duty to disclose, Maryland has formulated the elements of the cause of action as follows, *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010) (quoting *Lloyd*, 397 Md. at 138, 916 A.2d at 274) (emphasis omitted):

> (1) [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*See also Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999).

60

The Maryland Court of Appeals encapsulated the foregoing principles in *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 100 n.14, 756 A.2d 963, 976 n.14 (2000) (internal citations omitted):

> Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure. Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known.

In my view, the allegation of common law fraud suffers from critical defects, and therefore dismissal was proper. Although plaintiffs contend that Wells Fargo and US Bank committed fraud by the knowing filing of false documents in an effort to collect on the Note, plaintiffs rely on mere conclusory assumptions that Wells Fargo and US Bank knew the Note was unenforceable once the Trust was terminated. Apart from the absence of a factual basis for the assertion, it is also noteworthy that, under *Jaimes* and *Brock*, the Note can remain enforceable, notwithstanding the termination of the Trust. In addition, plaintiffs failed to allege facts showing that they reasonably relied on the alleged misrepresentation or suffered any injury as a result of the misrepresentation.

In any event, assuming the attempted foreclosure sale constitutes damages, this argument is unpersuasive. The Howes do not dispute that they signed the Note. They also do not suggest that their execution of the Note was induced by fraud. Moreover, they offer no facts to suggest that they paid the entirety of the debt. Nor do they deny that they were in default, which is what led to the foreclosure proceedings. Indeed, the Howes fell into default on their mortgage in April 2009, well before the alleged misrepresentations in the State foreclosure cases or in the Chapter

61

13 case, and for the most part failed ot make payments for almost four years.   Apx. 26, Complaint ¶ 17.   The facts offered in the Complaint do not suggest a different narrative.

In the alternative, plaintiffs challenge dismissal of Count I on the ground that the Bankruptcy Court improperly "look[ed] beyond the four corners of the Complaint" and relied on documents extrinsic to the Complaint.   ECF 19 at 7, Second Amended Brief.   This contention is also without merit.   At the hearing on the motions to reconsider, Judge Gordon explained that the claim for fraud failed on its face.   Moreover, the record do not suggest that, in dismissing Count I, Judge Gordon considered documents that were not appended to the Complaint or integral to it.

I turn next to plaintiffs' contention that the Bankruptcy Court should have granted leave to amend Count I.   ECF 19 at 7, Second Amended Brief.   The Bankruptcy Court dismissed Count I, without leave to amend, because it found that "amendment would be futile."   ECF 51 at 24 in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.   But, Judge Gordon allowed the Howes to assert a challenge to Christiana's right to enforce the Note if Christiana submitted documentation supporting its claim of ownership of the Note.   Apx. 366.   He also permitted the Howes to file an amended complaint or a claim objection in order to make such an argument.   *Id.*

Pursuant to Fed. R. Bankr. P. 7015, Fed. R. Civ. P. 15(a)(2) applies to adversary proceedings in a bankruptcy case.   Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."   *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118 (4th Cir. 2013), *cert. denied*, ____ U.S. ____, 134 S. Ct. 2871 (2014); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).   "Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Booth v. Maryland,* 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)); *see also Equal Rights Center v. Niles Bolton Associates,* 602 F.3d 597, 603 (4th Cir. 2010); *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

The confusion as to the identity of the holder of the Note led to defective and/or inaccurate submissions during the State foreclosure proceedings and in the bankruptcy case. Nonetheless, there are no facts alleged to show a miscarriage of justice or detrimental reliance resulting from any alleged misrepresentations. Nor are there any facts alleged to show that defendants acted with the intention of deceiving the court or the parties. Moreover, as indicated, termination of the Trust does not foreclose enforcement of the Note. And, under Maryland's Commercial Law Article, discussed *infra,* enforcement of a note is not foreclosed merely because the party seeking enforcement lacks actual possession of the instrument. As such, it cannot be fairly said that defendants committed fraud by attempting to enforce the Note. For these reasons, any amendment by plaintiffs would be futile. It follows that the Bankruptcy Court did not err in failing to grant leave to amend Count I.

Turning to the Complaint's remaining counts, as indicated, many of them relate to the Trust's termination and the same purported misrepresentations at issue in Count I. As noted, in Judge Gordon's view, dismissal of the remaining counts was warranted because they were based on the same facts as in Count I and "had to be cleansed of the detritus of the bogus fraud allegations." ECF 51 at 24, n.26, in Adv. Proc. No. 13-510, Memorandum Opinion of November 5, 2014.

63

### C.     Count II -- Determination of Scope, Extent, and Validity of Lien

In Count II, plaintiffs sought a "Determination of Scope, Extent and Validity of Lien," pursuant to 11 U.S.C. §§ 105 and 506. Apx. 41, Complaint at 20. In pertinent part, § 506(d) provides: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."

The Howes asserted in Count II that the Note and Allonge contained "endorsements" that, "if bona fide," resulted "in the Note being payable to the order of US Bank as trustee for the Trust." Apx. 41, Complaint ¶ 75. Because the Trust ceased to exist in January 2012, plaintiffs alleged that US Bank had no right to enforce the Note. *Id.* ¶ 76. Further, plaintiffs alleged that "Wells Fargo is not a holder of the Note," *id.* ¶ 79, and did not possess it when it filed the Amended Claim. *Id.* ¶ 80. According to plaintiffs, the Note is "'order paper'" under C.L. § 3-201(b), and "negotiation requires transfer of possession of the instrument and its indorsement by the holder." *Id.* ¶ 77. Further, Carrington "acquired no interest in the Note or Amended Claim" because Wells Fargo had no "standing to file the Amended Claim. . . ." Apx. 42, Complaint ¶ 83. Indeed, none of the defendants had the right to enforce the Note or the Deed of Trust, according to plaintiffs. *Id.* ¶ 85.

Plaintiffs requested a ruling, *inter alia*, that "none of the Defendants has the right to enforce the Note and Deed of Trust lien under applicable state law," and "none of the Defendants has an enforceable secured or unsecured claim against property of the estate in the Bankruptcy Case." Apx. 42, Complaint ¶ 85A.-B.

In my view, plaintiffs conflate the significance of the Trust's termination and the enforceability of the Note with questions as to which party has the right to pursue enforcement of the Note.

Under Maryland law, the right to enforce a promissory note and other negotiable instruments is governed by Maryland's Commercial Law Article. *See Deutsche Bank Nat. Trust Co. v. Brock, supra,* 430 Md. at 728, 63 A.3d at 48; *Shepherd v. Burson,* 427 Md. 541, 550, 50 A.3d 567, 573 (2012); *Anderson v. Burson,* 424 Md. 232, 245, 35 A.3d 452, 460 (2011). "Whether a negotiable instrument, such as a deed of trust note, is transferred or negotiated dictates the enforcement rights of the note transferee." *Anderson,* 424 Md. at 246, 35 A. 3d at 461. Once a note is transferred, "the right to enforce the deed of trust follow[s]." *Syrcek v. Rosenberg,* 203 Md. App. 705, 727, 40 A.3d 494, 507 (2012).

Maryland Code (2013 Repl. Vol., 2014 Supp.), C.L. § 3-301 outlines three categories of persons "entitled to enforce [an] instrument":

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder [*i.e.*, a transferee], or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418 (d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The first class of persons entitled to enforce an instrument under C.L. § 3-301(i) is a "holder of the instrument." *Id.* "Holder" is defined, *inter alia*, as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 1-201(b)(21)(i).[44] A promise or order is payable to bearer if it 1) states that it is payable to bearer or otherwise indicates that the individual or entity in possession of the promise or order is entitled to payment; (2) does not specify a payee; or (3) indicates that it is payable to cash or otherwise indicates that

---

[44] At the time of the First Foreclosure Case and the Second Foreclosure Case, this provision was found in Md. Code (2002), C.L. § 1-201(b)(20)(a), with minor differences in the text that are not material here.

it is not payable to an identified person. C.L. § 3-109(a)(1)-(3). Accordingly, "the person in possession of a note, either specially indorsed to that person or indorsed in blank,[ ] is a holder entitled generally to enforce that note."[45] *Brock*, 430 Md. at 729-30, 63 A.3d at 49.

The second class of persons "entitled to enforce an instrument" is a "nonholder" of the note who is "in possession of the instrument" and "has the rights of a holder . . . ." C.L. § 3-301(ii). A person becomes a nonholder in possession through a "transfer" of the instrument. *Compare* C.L. § 3-203(a) (defining transfer of an instrument) *with* C.L. § 3-201(a) (defining negotiation of an instrument). *See also Anderson*, 424 Md. at 246-47, 35 A.3d at 461. "A transfer has two requirements: the transferor (any person [who] transfers the note, except the issuer) must intend to vest in the transferee the right to enforce the instrument (thieves and accidental transferees are excluded) and must deliver the instrument so the transferee receives actual or constructive possession." *Id.* at 246, 35 A.3d at 461; *see* C.L. § 3-203. "A transfer vests in the transferee only the rights enjoyed by the transferor, which may include the right to enforce the instrument. C.L. § 3-203(a)-(b).[]" *Anderson*, 424 Md. at 246, 35 A.3d at 461. In addition, a transferee obtains "the rights that his transferor obtained from his own transferor." *Id.* at 248, 35 A.3d at 462. Stated another way, "[a] transferee's rights . . . can be no greater than his or her transferor's because those rights are 'purely derivative.'" *Id.* at 249, 35 A.3d at 462 (citation omitted).[46] As a result, if a holder transfers the note—for example, through a bulk sale of notes without the individual indorsement of each note—the transferee obtains from the holder the right to enforce the note even if no negotiation takes place. In such a circumstance, the

---

[45] "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." C.L. §3-205(b).

[46] The *Anderson* Court also discussed how a nonholder in possession may enforce a note. *See* 424 Md. at 248-49, 35 A.3d at 462.

66

transferee does not become an Article 3 "holder." *See* C.L. § 3-203 cmt. 1-2.

A negotiation, whether voluntary or involuntary, occurs when an instrument is transferred to one who becomes a holder. C.L. § 3-201(a).  A negotiation of an instrument payable to an identified person, however, requires the holder to transfer possession *and indorse the instrument.*" *Anderson,* 424 Md. at 246-47, 35 A.3d at 461 (emphasis added); *see* C.L. § 3-201(b).[47]  Notably, "only a holder may negotiate an instrument. C.L. § 3-203 cmt. 1. Thus, a recipient of a transferred instrument is a transferee, but a recipient of a negotiated instrument is a holder." *Anderson,* 424 Md. at 247, 35 A.3d at 461.

If the person seeking to enforce the note is neither a holder nor a nonholder in possession of the instrument, with the rights of a holder (*i.e.,* a transferee), C.L. § 3-301(iii) provides a third class of persons who may have a basis to enforce the instrument, pursuant to C.L. § 3-309 or § 3-418(d).  Of relevance here, C.L. § 3-309 provides, in part:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
>
> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 3-308 applies to the case as if the person seeking enforcement had produced the instrument. . . .[48]

---

[47] Under C.L. § 3-201(b), when "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder.  If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

[48] Potential methods of proof are set forth in C.L. § 3-308:

> (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically

In sum, under C.L. § 3-301(iii) and § 3-309(a), if the note is lost, a party may still seek to enforce the instrument. However, under C.L. § 3-309(b), the person seeking to enforce the instrument "must prove the terms of the instrument and the person's right to enforce the instrument." In other words, the nonholder who lacks possession of the note bears the burden of proving the right to enforce it.   C.L. § 3-309(b).   And, a lack of competing interests in the instrument does not establish that a person is entitled to enforce it.

As to burden of proof and enforcement of negotiable instruments in Maryland, *Anderson v. Burson, supra,* 424 Md. 232, 35 A.3d 452, is instructive.   In that case, the Andersons refinanced their home mortgage in 2006. *Id.* at 235, 35 A.3d at 454.   In doing so, Mr. Anderson executed a promissory note ("Anderson Note") in favor of Wilmington Finance, Inc. ("Wilmington") and both Mr. and Ms. Anderson signed the deed of trust, pledging their home as security for the note. *Id.* at 236, 35 A.3d at 454.   Mr. Anderson defaulted on the Anderson Note in 2007. *Id.* at 236, 35 A.3d at 455.   In 2008, substitute trustees, as agents of the trustee Deutsche Bank Trust Company Americas ("Deutsche"), commenced foreclosure proceedings

---

denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under § 3-402(a).

(b) If the validity of signatures is admitted or proved and there is compliance with subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under § 3-301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

against the Andersons in the Circuit Court for Howard County. *Id.* at 236, 35 A.3d at 455. At the time of the foreclosure, Deutsche was the purported holder of the Note. As to Deutsche's rights to enforce the Anderson Note, the substitute trustees filed a motion for acceptance of a lost note affidavit, which the circuit court granted. *Id.*

To prevent a foreclosure sale, the Andersons sought an injunction to preclude enforcement of the Anderson Note, challenging the right of the substitute trustees to enforce the Anderson Note on behalf of Deutsche. *Id.* at 239, 35 A.3d at 456.[49]  The circuit court enjoined the foreclosure proceeding until a hearing could be held regarding the requested injunction. *Id.*

The Anderson Note, initially held by Wilmington, had been transferred three times and securitized. *Id.* First, the initial lender, Wilmington, transferred the Anderson Note to Morgan Stanley Mortgage Capital Holding, Inc. ("Morgan Stanley I"), which in turn transferred the Anderson Note to Morgan Stanley ABS Capital I Inc. ("Morgan Stanley II"). *Id.* Morgan Stanley II then securitized the Anderson Note, along with several other notes, into the Morgan Stanley Home Equity Loan Trust 2007-2 ("Morgan Stanley Trust"), for which Deutsche was named as the trustee, pursuant to a pooling and servicing agreement. *Id.* The Anderson Note was not indorsed to reflect these transfers, however. *Id.*

The circuit court held three evidentiary hearings to ascertain if the substitute trustees were entitled to enforce the Anderson Note on behalf of Deutsche. *Id.* At the first hearing, the substitute trustees produced a photocopy of the unindorsed note and claimed that the original note was indorsed in blank. *Id.* at 239, 35 A.3d at 456-57. This contradicted prior representations that the Anderson Note was lost. Given the "curious turn of events," the circuit

---

[49] The Andersons also initiated a Chapter 13 proceeding in Bankruptcy Court, which "caused a temporary halt in the foreclosure action. . . ." *Anderson*, 424 Md. at 237, 35 A.3d at 455. In federal court, the Andersons "acknowledged the mortgage debt. . . ." *Id.*

court rescheduled the evidentiary hearing to determine the substitute trustees' right to enforce the Anderson Note. *Id.* at 239, 35 A.3d at 457.

At the second hearing, the substitute trustees produced the Anderson Note, but it was not indorsed. *Id.* They asserted: "'We have the original Note, but we do not have an indorsement; we do not have an assignment; *we do not have an allonge* . . . .'" *Id.* at 239-40, 35 A.3d at 457 (emphasis in *Anderson*). Because the substitute trustees failed to comply with the Andersons' discovery request for a copy of the pooling and service agreement, the court continued the evidentiary hearing. *Id.* at 240, 35 A.3d at 457.

At the third evidentiary hearing, the substitute trustees produced, *inter alia*, "an undated, unattached allonge [to the Anderson Note], signed by Wilmington purported[ly] transferring the [Anderson] Note to Deutsche," as trustee for the Morgan Stanley Trust. *Id.* at 240, 35 A.3d at 457. Notably, the allonge "did not contain indorsements from the parties that possessed intermediately the Note." *Id.* In particular, the allonge did not evidence the transfers from Wilmington to Morgan Stanley I; from Morgan Stanley I to Morgan Stanley II; or from Morgan Stanley II to the Morgan Stanley Trust, for which Deutsche served as trustee through a pooling and service agreement.

The Andersons claimed that Wilmington "lacked the capacity to indorse the Note to Deutsche, via the allonge," *id.* at 241, 35 A.3d at 457, because Wilmington had already transferred its interest in the Anderson Note to Morgan Stanley I. *Id.* Thus, in the Andesons' view, Wilmington "had no interest left to convey to Deutsche at that time." *Id.*

Despite the missing indorsements, the circuit court ruled in favor of Deutsche and the substitute trustees acting on its behalf. *Id.* at 241, 35 A.3d at 457-58. It found that Wilmington "indorsed successfully" the Anderson Note to Deutsche through the allonge, "despite

70

acknowledging indorsement gaps in the Note's overall transfer history." *Id.* at 241, 35 A.3d at 457-58. "Thus, the trial judge determined that the Substitute Trustees were holders of the Note under [C.L.] § 3–302(a),[] and denied the Andersons' demand for an injunction." *Id.* at 241, 35 A.3d at 458.

*Anderson* presents a scenario in which initially the substitute trustees who sought to enforce the Anderson Note claimed the negotiable instrument was lost and filed a lost note affidavit. But, at the final evidentiary hearing, the substitute trustees produced a copy of the instrument in question. Nevertheless, on the subject of lost instruments generally, the Maryland Court of Appeals noted: "Mortgage transferors frequently lose or misplace mortgage documents . . . ." *Id.* at 238, 35 A.3d at 456. The court also pointed to the frequent use of lost note affidavits.

Given that the Anderson Note was eventually produced, the Maryland Court of Appeals considered whether the substitute trustees, as agents for Deutsche, were "nonholders in possession of the instrument and have the rights of holders." *Id.* at 242, 35 A.3d at 458. It concluded that Deutsche was "not a holder of the Anderson Note," because the note was payable to Wilmington, and Wilmington "did not indorse the [Anderson] [N]ote itself." *Id.* at 247, 35 A.3d at 461-62. The court also agreed with the Andersons that the allonge purportedly transferring the note from Wilmington to Deutsche was "anachronistically impossible." *Id.* at 247, 35 A.3d at 462. It explained: "Deutsche's role as trustee did not arise until after Wilmington had transferred its rights to Morgan Stanley I; thus, by the time Wilmington reputedly made the allonge to Deutsche, Wilmington had no rights in the Note to transfer. Therefore, Wilmington did not negotiate the Note to Deutsche." *Id.* at 247-48, 35 A.3d at 462.

Notwithstanding Deutsche's status as a nonholder, the Maryland Court of Appeals determined that because the Andersons "conceded the transfer history of the Note, the Substitute

Trustees may enforce [it] as nonholders in possession," as agents for Deutsche, with the rights of a holder. *Id.* at 243, 35 A.3d at 458-59; *see also id.* at 252, 35 A.3d at 464 ("On the record here, the Substitute Trustees may enforce the Anderson Note as nonholders in possession who have the rights of holders."). The court also recognized that under Maryland law "a reputed transferee in possession of an unindorsed mortgage note has the burden to establish its rights under the note . . . ." *Id.* at 245, 35 A.3d at 460. The court explained, *id.*:

> We agree that, when put at issue properly (as was the case here), a reputed transferee in possession of an unindorsed mortgage note has the burden to establish its rights under that note—especially in instances where the mortgagor requests an injunction to foreclose enforcement by the possessor based on such a defense. Maryland Rule 14–207(b)(3)[ ] requires a mortgagee to produce a copy of the note. Thereafter, the Maryland Commercial Law Article takes over and . . . requires a person in possession of an unindorsed mortgage note to prove that note's prior transfer history (as opposed to a holder, whom the Commercial Code presumes is entitled to payment under § 3-308(a)).[ ]

The court added: "[G]iven the chain-of-possession document quagmire exemplified by this case, fairness dictates that the mortgagee produce the necessary proof, when that matter is put at issue properly." *Id.* at 245-46, 35 A.3d at 460.

The significance of the *Anderson* case is at least threefold. First, it recognizes that, pursuant to C.L. § 3-301, a nonholder, *i.e.* a transferee of the instrument who is in possession of the instrument, may still be entitled to enforce it. Second, the case acknowledges that there are methods to establish the right to enforce a note even without possession of the instrument, such as a lost note affidavit. Third, it emphasizes that the burden is on the person or entity seeking to enforce the instrument to establish his/its interest, and the court is permitted to take evidence on this point.

With this framework in mind, I turn to plaintiffs' contentions. They argue that, given the Trust's termination, "none of the Appellees has demonstrated a right to enforce the Howes' Note, and the bankruptcy court erred in holding otherwise and dismissing the Complaint." ECF 18 at

72

11, Reply.  Plaintiffs also contend that the Bankruptcy Court erred by "putting the burden on Appellants to find a competing claimant, or pay the claimant . . . despite [the claimant's] failure to establish its right to enforce the note." ECF 19 at 29, Second Amended Brief.  Stated differently, plaintiffs maintain that the Bankruptcy Court improperly ruled that one of the adversary defendants has a valid interest in the Note and, in so holding, alleviated the claimant of its burden to establish its standing to enforce the Note.  And, they assert that, under C.L. § 3-201, "the subject Note is order paper, and since it is payable to the Trust, and the Trust ceased to exist before the Second Foreclosure Case was filed, the plaintiffs in the Second Foreclosure case lacked the necessary standing to file it, and that case was a nullity." *Id.*

Although not identical to *Anderson*, 424 Md. 232, 35 A.3d 452, a similar "chain-of-possession [ ] quagmire" presented itself in this case.  The adversary defendants may not be "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]"  C.L. § 1-201(b)(20)(a).  The Note itself may be lost.  Nonetheless, under Maryland law these two factors are not dispositive of a party's rights under C.L. § 3-309(a).  Pursuant to C.L. § 3-309(b), however, the person or entity seeking to enforce the instrument "must prove the terms of the instrument and the person's right to enforce the instrument."

Plaintiffs misconstrue the Bankruptcy Court's ruling.  Notwithstanding Judge Gordon's view as to the termination of the Trust, the Bankruptcy Court did *not* rule that any of the adversary defendants has a definitive right to enforce the Note.  To the contrary, Judge Gordon explicitly stated that the question of who has the right to enforce the Note remains open, subject to proof and to challenge.  Indeed, he recognized that the Howes were entitled to know the identity of their creditor, and that the party seeking to enforce the Note bears the burden of

proving its right to do so. Apx. 226-27, Hearing of March 4, 2014. Therefore, the MTD Order of May 12, 2014, directed the defendant claiming the right to enforce the Note to submit evidence explaining the right to do so. Apx. 285-287. In addition, Judge Gordon permitted the Howes to file an amended complaint and/or a claim objection to dispute the right to enforce the Note. Apx. 287, MTD Order. Such a disposition comports with applicable Maryland law.

Thereafter, on April 3, 2015, Carrington, on behalf of Christiana, filed the Ostermann Affidavit, which confirmed that Christiana is the owner of the loan (Apx. 237), and sent the Christiana Ownership Materials to plaintiffs. Apx. 236-37. This, too, comports with Maryland's Commercial Law Article and *Anderson*.[50]

The Howes then had two avenues to challenge the claim of ownership of the Note or the claim of entitlement to enforce it. First, the Bankruptcy Court granted the Howes leave to file an amended claim objection to the Amended Proof of Claim. In the alternative, the Bankruptcy Court permitted the Howes to file an amended complaint. Yet, the Howes elected not to challenge Christiana's interest in the Note via either method.

For the foregoing reasons, I conclude that the record does not support the Howes' contention that the Bankruptcy Court improperly ruled that an adversary defendant was entitled to enforce the Note without first having to establish its right to do so.

### D.    Count III -- Sanctions for Defective Proof of Claim

Count III alleged "Sanctions for Defective Proof of Claim" as to Wells Fargo and US Bank. Apx. 43, Complaint at 22. In general, plaintiffs insisted that both Wells Fargo and US

---

[50] As indicated, an Amended Transfer Notice was filed in the bankruptcy case, notifying Debtor that the Amended Claim was transferred from Wells Fargo to Christiana. Apx. 37, Complaint ¶ 56.

Bank filed defective claims. They asserted that defendants failed to comply with Fed. R. Bankr. P. 3001, and sought an order prohibiting U.S. Bank and Wells Fargo from presenting any evidence in support of their Amended Proof of Claim. Apx. 45, Complaint ¶ 97.

US Bank and Wells Fargo filed proofs of claim in the bankruptcy case. As indicated, on March 8, 2013, US Bank filed its initial Claim in the bankruptcy case, designated as "Claim No. 4." Apx. 36, Complaint ¶¶ 53-54. According to the Howes, the initial Claim was flawed because it failed to include an itemized statement of the interest, fees, and expenses incurred prepetition, an escrow account statement, and other necessary attachments. Apx. 43, Complaint ¶ 89. The Howes contend that the lack of supporting documentation translated "to no evidence of perfection" and no "breakdown of the claimed arrearage." Apx. 36, Complaint ¶ 53.

On March 15, 2013, seven days after Wells Fargo filed its initial Claim, it filed an Amended Claim, designated "Claim 4-2," which identifies Wells Fargo as the creditor, instead of US Bank. Apx. 36, Complaint ¶ 54. Pursuant to Fed. R. Bankr. P. 3001(c)(2), Wells Fargo submitted with the Amended Claim a "Mortgage Proof of Claim Attachment," which itemized "the fees, expenses, and charges due on the claim," Apx. 36, Complaint ¶ 54; an "Escrow and Account Disclosure Statement" dated November 21, 2012, Apx. 403; the Deed of Trust, Apx. 385; and purportedly indorsed copies of the Note and Allonge. Apx. 381-84. With respect to the Amended Claim, the Howes insist it was defective because it "failed to attach [ ] a copy of the writing upon which it was based since the Note it attached is made payable to the order of the Trust, and the Trust terminated and ceased to exist in January 2012." Apx. 43, Complaint ¶ 91.

Debtor filed a Claim Objection on April 2, 2013, "notif[ying] Wells Fargo that the Amended Claim is defective since it included no evidence of Wells Fargo's standing to file it." Apx. 44-45, Complaint ¶ 92. The Howes complained that Wells Fargo and US Bank did not

respond to their Claim Objection. Apx. 44, Complaint ¶ 96.  As a remedy, the Howes sought to enjoin Wells Fargo and US Bank from presenting evidence in the bankruptcy case.  Apx. 45, Complaint ¶ 97. They also requested attorney's fees.  *Id.*

Fed. R. Bankr. P. 3001 is titled "Proof of Claim."  Rule 3001(c)(2)(A) states: "If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim."  Fed. R. Bankr. P. 3001(c)(2)(D) provides that "the court may" impose sanctions against a creditor who fails to attach the required documentation and information required under Fed. R. Bankr. P 3001(c)(2).  Such "remedies" are "permissive." *In re Goeller*, No. 12-17123-RGM, 2013 WL 3064594, at *2 (Bankr. E.D. Va. June 19, 2013).  Ultimately, however, "[a] bankruptcy court's decision to impose sanctions [ ] is within its sound discretion and is, therefore, reversible only if that discretion has been abused." *In re Nat'l Heritage Found., Inc.*, *supra*, 510 B.R. at 541.

Notwithstanding a failure to include all the information required under Rule 3001 in the initial claim, a bankruptcy court "retains discretion to allow an amendment to a proof of claim under appropriate circumstances . . . ."  Fed. R. Bankr. P. 3001 advisory comm. nn. (2011). Moreover, a bankruptcy court may "determine[ ] that the failure was substantially justified or is harmless . . . ."  Fed. R. Bankr. P. 3001 (b)(2)(D)(i).  In fashioning the appropriate remedy for a violation of Rule 3001, "[f]actors such as culpability, harm and materiality should be considered." *In re Goeller, supra*, 2013 WL 3064594, at *2.

Dismissal of Count III was proper.  To the extent the Howes contend that the initial Claim and the Amended Claim were fraudulent because US Bank and Wells Fargo failed to disclose the Trust's termination (Apx. 43, Complaint ¶ 91), this argument is unavailing, for the

76

reasons already discussed. And, although the initial Claim did not comport with Fed. R. Bankr. P. 3001, due to a failure to provide a breakdown of the claim arrearage, this error was corrected a mere seven days later, through the Amended Claim and the submission of the Mortgage Proof of Claim Attachment. Apx. 37. The Bankruptcy Court did not abuse its discretion by permitting the amendment or by denying plaintiffs' request for sanctions.

### E.    Count IV -- Unlawful Inspection of Fees

Count IV alleged "Unlawful Inspection of Fees." The Howes contend that the Amended Claim submitted by Wells Fargo in the bankruptcy case includes unlawful inspection fees that contravene Md. Code (2013 Repl.), C.L. § 12–1027. Apx. 46, Complaint ¶ 103; Apx. 374, Amended Claim. According to the Howes, the purported fees are actually "disguised" inspection fees. Apx. 36, Complaint ¶ 55. In particular, they allege: "The Inspection Fees were for visual inspections of the Property, were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants." Apx. 46, Complaint ¶ 104. The Howes also sought a determination that U.S. Bank, Wells Fargo, and their successors could not collect any interest, costs, fees, or other charges with respect to the Note. Apx. 46, Complaint ¶ 106.

It is not apparent from the record or the Bankruptcy Court's Memorandum Opinion why the court granted defendants' motions to dismiss as to Count IV. Unlike most of the claims in the Complaint, this claim does not rely upon the termination of the Trust. Nonetheless, upon a *de novo* review, dismissal of this claim was proper because plaintiffs failed to state a claim under Fed. R. Civ. P. 8.

The fees in issue are listed on the Mortgage Proof of Claim Attachment, submitted with the Amended Claim. Apx. 378. Of particular relevance, the attachment includes a "Statement

of Prepetition Fees, Expenses, and Charges," which "[i]temize[s] the fees, expenses, and charges due on the claim . . . ." *Id.* Next to "Property inspection fees," the amount listed is "$0.00." *Id.* But, next to "Appraisal/broker's price opinion fees," the following dates and amounts were listed: "9/16/10: $50.00, 5/27/11: $90.00, 11/29/11: $90.00, 6/13/12: $90.00." *Id.* These fees amount to $320.00, as indicated on the form. *Id.*

The Howes posit: "The Inspection Fees are violations of CL § 12-1027 and may not be imposed. Any credit grantor who violates § 12-1027 may collect only the principal amount of the Note and may not collect any interest, costs, fees, or other charges with respect to the Note. In addition, a credit grantor who knowingly violates § 12-1027 shall forfeit to Plaintiffs 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." Apx. 46, Complaint ¶ 105.

Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 12-1027 provides (italics in C.L. § 12-1027):

> (a) *"Lender's inspection fee"* defined. -- In this section, "lender's inspection fee" means a fee imposed by a credit grantor to pay for a visual inspection of residential real property.
>
> (b) Except as provided in subsection (c) of this section, a credit grantor may not impose a lender's inspection fee in connection with a loan made to a consumer borrower that is secured by residential real property.
>
> (c) A lender's inspection fee may be imposed on a consumer borrower if the inspection is needed to ascertain completion of:
>
> (1) Construction of a new home; or
>
> (2) Repairs, alterations, or other work required by the credit grantor.
>
> (d) This section does not apply to an appraisal of the value of real property by a credit grantor or to fees imposed in connection with an appraisal.

To be sure, C.L. § 12–1027(a) refers to an inspection fee, not an appraisal fee. The

statute prohibits the collection of "inspection fees" for the "visual inspection of residential real property." But, it expressly does not apply to "appraisal of the value of real property by a credit grantor or to fees imposed in connection with an appraisal." C.L. § 12-1027(d).

Carrington and Christiana maintained that the contested fees were appraisal costs and not inspection fees. They explained, Apx. at 169, Carrington MTD:

> The Proof of Claim originally filed by Wells Fargo does not contain any property inspection fees. In fact, the Proof of Claim explicitly labels the fees that the plaintiffs contend are "property inspection fees" as "Appraisal/broker's price opinion fees." The plaintiffs provide no evidence at all that these fees are "property inspection fees" or anything other than "Appraisal/broker's price opinion" fees. Since plaintiffs provide no factual support for the conclusory allegation that these fees are anything other than "Appraisal/broker's price opinion fees," Count four fails to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1974 (2007). Therefore, Count Four must be dismissed.

Wells Fargo and US Bank lodged a similar challenge to Count IV. They asserted, Apx. 90, Wells Fargo MTD: "In a conclusory allegation, [the Howes] contend that these Inspection Fees 'were not bona fide appraisals of the value of the Property, and were not needed to ascertain completion of construction of a new home or repairs, alterations, or other work required by Defendants.' Complaint, ¶ 104. This, however, is but an opinion without any factual basis." According to Wells Fargo and US Bank, the claim is nothing more than "a case of clever pleading." Apx. 336, Hearing of January 6, 2014.

As noted, under Fed. R. Bankr. P. 8, Fed. R. Civ. P. 8 applies here. To satisfy Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Twombly*, 550 U.S. at 555. Although federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss., supra*, 135 S. Ct. at 346, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Iqbal, supra*,

566 U.S. at 684; *Painter's Mill Grille, LLC, supra,* 716 F.3d at 350. Here, aside from naked allegations, plaintiffs did not provide any facts to support the notion that the contested fees listed on the "Statement of Prepetition Fees, Expenses, and Charges" as appraisal fees were actually inspection fees precluded by C.L. § 12-1027. Therefore, the court properly dismissed Count IV, with leave to amend.

### F.  Count V – Truth In Lending Act

Count V alleged violations of TILA by Wells Fargo, US Bank, Unknown Defendant, and Christiana.[51]  Apx. 47, Complaint at 26.  Plaintiffs allege that when the Note and Deed of Trust were successively assigned to Wells Fargo, US Bank, and Christiana, notice requirements were triggered under TILA with each transfer but were not satisfied by defendants.

In particular, the Howes alleged that when US Bank acquired an interest in the Note, purportedly on November 21, 2009 (Apx. 47, Complaint ¶ 109), neither US Bank nor its servicer, Wells Fargo, notified the Howes of their new creditor, as required by 15 U.S.C. § 1641(g).  According to the Howes, Wells Fargo and US Bank also failed to disclose their position on partial payments, as required by 15 U.S.C. § 1639c(h).  Similarly, they claimed that when the Note was allegedly removed from the Trust on January 1, 2012, and when the Note was purportedly transferred to Christiana, notice of a new creditor and information on the creditor's stance on partial payments, were not sent to the Howes. Apx. 47, Complaint ¶¶ 112,

---

[51] Wells Fargo and US Bank point out that plaintiffs erroneously refer to TILA as part of Title 11 of the United States Code. They assert, Apx. 91-92, MTD Memo at 15 -16 n.12:

> Of course, TILA is part of Title 15, and the correct citations are 15 U.S.C. §§ 1639c(h) and 1641(g), not 11 U.S.C. §§ 1639c(h) and 1641(g). The irony is not lost that, in a Complaint filled with allegations of fraud based on obvious mistakes, Mr. and Mrs. Howes have misspoken in their pleading. Notwithstanding these errors, Wells Fargo and U.S. Bank do not ascribe to them an intent to mislead the Court or to misrepresent the law to Defendants.

118.  For these alleged TILA violations, the Howes sought statutory damages in the amount of $4,000.

Congress enacted TILA, 15 U.S.C. §§ 1601 *et seq.*, to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'"  *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998), and imposes civil liability on creditors who fail to do so. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54, (2004); 15 U.S.C. § 1640(a).

The notice requirements are set forth in 15 U.S.C. §§ 1639c(h) and 1641(g). In pertinent part, § 1641(g) provides:

> **(g) Notice of new creditor.**
> > **(1) In general.**
> > In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including —
> > > (A) the identity, address, telephone number of the new creditor;
> > > (B) the date of transfer;
> > > (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> > > (D) the location of the place where transfer of ownership of the debt is recorded; and
> > > (E) any other relevant information regarding the new creditor.

Section 1639c(h) states:

> **(h) Policy regarding acceptance of partial payment**
>
> In the case of any residential mortgage loan, a creditor shall disclose prior to settlement or, in the case of a person becoming a creditor with respect to an existing residential mortgage loan, at the time such person becomes a creditor-
> > (1) the creditor's policy regarding the acceptance of partial payments; and
> > (2) if partial payments are accepted, how such payments will be applied to

such mortgage and if such payments will be placed in escrow.

Wells Fargo and US Bank argue that the TILA claims against them are barred by limitations, as set forth in 15 U.S.C. § 1640(e).  It states:  "[A]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation."  Wells Fargo and US Bank contend: "Mr. and Mrs. Howes' cause of action accrued . . . on December 31, 2011. The instant Complaint was not filed until September 3, 2013, well past the statutory deadline for notices triggered by assignments . . . . As such, the TILA claims under Count V are time-barred, and must be dismissed." Apx. 93, Wells Fargo MTD at 17.

Here, if the TILA violation allegedly committed by US Bank and Wells Fargo occurred in January 2012, when the Trust was terminated and the Howes were not notified of a new creditor, then the Howes had to file suit by January 2013, in order to satisfy 15 U.S.C. § 1640(e). Because suit was not filed until September 3, 2013, the TILA claims as to Wells Fargo and US Bank are barred by limitations.

In the alternative, plaintiffs argue that, even if Count V as to Wells Fargo and US Bank is time-barred, they nevertheless may assert their TILA claim as a "recoupment" defense to the Amended Claim, warranting a reduction of the Note balance for each violation.    Apx. 49, Complaint ¶ 121.B.  Plaintiffs insist recoupment as a defense in not subject to the statute of limitations. Apx. 151-52, Howes Opposition to Wells Fargo MTD.

As plaintiffs suggest, the doctrine of recoupment permits circumvention of the statute of limitations to the extent a claim is pleaded defensively. Indeed, on the subject of recoupment, the Supreme Court has stated: "Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262 (1935). With respect to TILA in particular, the statute provides guidance. Section 1640(e) provides, in part:

82

> This subsection [establishing the one-year statute of limitations] does not bar a
> person from asserting a violation of this subchapter in an action to collect the debt
> which was brought more than one year from the date of the occurrence of the
> violation as a matter of defense by recoupment or set-off in such action, except as
> otherwise provided by State law.

Notably, at the hearing on January 6, 2014, counsel for Wells Fargo insisted that plaintiffs "don't [have] an affirmative claim" for TILA violations. Apx. 338. But, counsel conceded: "There may be a recoupment available as a defense." Apx. 337.

The Fifth Circuit decision in *In Re: Coxson*, 43 F.3d 189 (5th Cir. 1995), cited by plaintiffs, is informative. There, debtors filed an adversary proceeding complaint and claimed that certain loan documents violated TILA. The *Coxson* Court concluded that the TILA violations were defensive because they were in response to the defendants' proof of claim. *Id.* at 194 (citing *In re Jones*, 122 B.R. 246, 249 (W.D. Pa. 1990)); *see also Allen v. Bank of Am., N.A.*, No. EP-14-CV-429-KC, 2015 WL 1726986, at *14 (W.D. Tex. Apr. 15, 2015) ("[T]he mere fact that the party raising the recoupment claim is the plaintiff in a TILA case does not necessarily preclude a finding that the claim is raised defensively."); *In re McClendon*, 488 B.R. 876, 887 (Bankr. E.D.N.C. 2013) ("Although procedurally offensive on its face, an adversary proceeding can serve as the proper context for recoupment when the primary objective is to defeat the basis of the original proof of claim.").

In *In re Salazar*, Adv. Pro. No. 10-00101, 2011 WL 1237648, at *6 (Bankr. D. Md. Mar. 30, 2011), Judge Catliota explained:

> [T]he Court routinely consolidates separate objections to claims with related
> adversary proceedings that involve interrelated issues concerning the same
> transaction. To deny Plaintiffs the defense of recoupment here [because it was
> included in an adversary proceeding complaint] would be to elevate form over
> substance.

Plaintiffs' decision to lodge the TILA violation via an adversary proceeding does not

83

preclude plaintiffs from using the TILA violation as a defense to the claims of the defendants. Plaintiffs' TILA violations may serve as a basis for a recoupment defense or a set-off in regard to the claim objection. Moreover, given that the plain language of 15 U.S.C. § 1640(e) provides that the one-year statute of limitations does not bar a recoupment defense, plaintiffs are not foreclosed from relying on their TILA allegations to support a recoupment defense.

It does not appear from the record or the Bankruptcy Court's Memorandum Opinion of November 5, 2014, that the Bankruptcy Court intended to foreclose the Howes from lodging a recoupment defense based on the alleged violations of TILA. Indeed, in both the MTD Order and the Reconsideration Order, the Bankruptcy Court granted plaintiffs an opportunity to file an amended objection to the Amended Claim. Plaintiffs chose not to do so. Although plaintiffs did not comport with the deadlines set by the Bankruptcy Court, the Bankruptcy Court may, under 15 U.S.C. § 1640(e), grant leave to the Howes to file a belated amended claim objection setting forth a TILA recoupment defense.

### G. Count VI -- Fair Debt Collection Practices Act

In Count VI, plaintiffs alleged violations of the FDCPA against Wells Fargo, US Bank, and Christiana. They characterize various representations made by US Bank and Wells Fargo in the foreclosure cases and in the bankruptcy case as "false, deceptive, or misleading." Apx. 51, Complaint ¶ 135.

Congress enacted the FDCPA in 1977, *see* Pub. L. 95–109, 91 Stat. 874 (1977), to protect consumers from debt collectors who engage in "abusive debt collection practices . . . , to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer &*

84

*Ulrich LPA*, 559 U.S. 573, 576 (2010) (same); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). The statute is concerned with "rights for consumers whose debts are placed in the hands of the professional debt collectors . . . ." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009). "A significant purpose of the Act" is the elimination of "abusive practices by debt collectors . . . ." *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). Because the FDCPA is a remedial statute, *id.*, it is construed liberally in favor of the debtor. *See, e.g., Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987) (recognizing that remedial statutes are to be construed liberally)); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

Section 1692e(5) of 15 U.S.C. provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .(5) The threat to take any action that cannot legally be taken or that is not intended to be taken." Section 1692f of the same Title states, *inter alia*: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

To establish a claim under the FDCPA, "a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*,

85

528 F. App'x 297 (4th Cir. 2013). "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1), (a)(3)." *Russell*, 763 F.3d at 389. "The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion. *Id.* § 1692k(a)(2)(A)." *Id.*

In particular, the Howes contend that "US Bank caused at least three false affidavits to be filed in the First Foreclosure Case, including the Kennerty Affidavits . . . ." Apx. 50-51, Complaint ¶ 130. As noted, it is unclear from the record as to the precise date that the Kennerty Affidavits were submitted in the First Foreclosure Case, but it was sometime before January 3, 2011, when the case was voluntarily dismissed. Apx. 31, Complaint ¶ 36. The Howes also contend that, when initiating the Second Foreclosure Case on February 21, 2012, US Bank and Wells Fargo falsely claimed ownership of the Note, in violation of the FDCPA. Apx. 51, Complaint ¶ 131. They also insist that during the Second Foreclosure Case, US Bank and Wells Fargo filed at least four false affidavits in an effort to establish their interest in the Note. Apx. 51, Complaint ¶ 132.

With respect to the bankruptcy case, the Howes allege that both US Bank and Wells Fargo asserted falsely that the Debtor was liable to it for $740,334.24. In addition, the Howes contend that the Plan Objection submitted by Wells Fargo on January 9, 2013, on behalf of US Bank, "falsely claimed" that US Bank was the holder of the Note. Apx. 50, Complaint ¶ 127. Collectively, according to the Howes, this conduct amounts to "falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and using false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10)." Apx. 51, Complaint ¶ 135. The Howes sought statutory damages in the amount of $1,000.00 for each purported FDCPA violation, and a

86

reduction in the balance of the Note by way of recoupment.  Apx. 52, Complaint ¶ 52.

In response, Wells Fargo and US Bank argue that the FDCPA claim is barred by limitations.  Apx. 93, Wells Fargo MTD at 17.  Under 15 U.S.C. § 1629K(d), "[a]n action to enforce any liability created by [the FDCPA] may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  It appears that the statute of limitations bars some, but not all, of the alleged FDCPA violations here.  In particular, misrepresentations in the foreclosure cases are time barred, but purported misrepresentations in the bankruptcy case are not.

The First Foreclosure Case was voluntarily dismissed on January 3, 2011.  Therefore, the time to challenge any representations made in the case as violative of the FDCPA expired long before the adversary Complaint was filed on September 3, 2013.  The initiation of the Second Foreclosure Case occurred on February 21, 2012.  Again, the adversary Complaint here was not filed until September 3, 2013.  Thus, allegations challenging statements made in the foreclosure cases were properly dismissed under the FDCPA.

Nevertheless, even if these FDCPA claims are time-barred, they may serve as a basis for a recoupment defense.  For the same reasons set forth in the discussion concerning plaintiffs' TILA claims, *supra*, the alleged FDCPA violations committed during the foreclosure cases may establish a valid recoupment defense, not barred by limitations.  Accordingly, the Bankruptcy Court may grant the Howes leave to file an amended claim objection to lodge such a defense.

Turning to the purported misrepresentations by US Bank and Wells Fargo made in the bankruptcy case, plaintiffs challenge the Plan Objection filed on January 9, 2013, the initial Claim filed on March 8, 2013, and the Amended Claim filed on March 15, 2013.  With respect to

these statements, the statute of limitations had not yet expired when the Complaint was filed on September 3, 2013.

Although the allegations of FDCPA violations appear timely, the court properly dismissed these FDCPA claims. Again, the theory of liability hinged on the effect of the termination of the Trust. In the Plan Objection, the Howes claimed that Wells Fargo, on behalf of US Bank "as trustee for the Trust . . . . falsely claimed that US Bank is the holder of the Note . . . ." Apx 50, Complaint ¶ 127. For the reasons already discussed, this theory of liability is flawed. Therefore, dismissal of the FDCPA claim was warranted.

I turn to the FDCPA claims against Christiana, which are also not barred by the statutory one-year limitations period. As indicated, Christiana did not obtain an interest in the Note until after commencement of the Chapter 13 case. Plaintiffs insist that Christiana "violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt, as prohibited by 15 U.S.C. § 1692e, including but not limited to falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and used false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10)." Apx. 51, Complaint ¶ 135. However, the Complaint does not identify a particular offending document or affidavit submitted by Christiana in the bankruptcy case that is fraudulent or deceptive. Rather, the theory of liability against Christiana appears to be that because the Trust was terminated, the transfer of the Amended Claim to Christiana was invalid. In plaintiffs' view, any effort on the part of Christiana to prosecute the Amended Claim and collect on the Note in the bankruptcy case contravenes the FDCPA.

In response, Christiana contends its conduct did not come within the ambit of the FDCPA

88

because it is not a debt collector. It explains, Apx. 169, Carrington MTD at 5:

> The Complaint alleges that WSFS Bank is a debt collector as defined by 15 U.S.C. § 1692a(6) which reads: "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." However, the statute continues to define the term debt collector by clarifying that, "The term does not include— (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* As such mortgage lenders and servicers have been expressly excluded from FDCPA claims.

Christiana's argument is flawed. It maintains that the Howes cannot state a claim against Christiana under the FDCPA because "loan servicers" and "lenders" are not "debt collectors." But, the exemption for loan servicers and lenders "does not apply where a loan servicer acquires a loan after it has already gone into default." *Zervos v. Ocwen Loan Servicing, LLC*, JKB-11-CV-03757, 2012 WL 1107689, at *3 (D. Md. Mar. 29, 2012). Indeed, contrary to the assertions of Christiana, there is no absolute rule or express exclusion in the FDCPA that precludes mortgage lenders and servicers from being debt collectors. The inquiry is much more fact-bound and requires an examination of the entity collecting or attempting to collect the debt and the status of the debt when such efforts commenced.

In particular, the FDCPA defines the term "debt collector," in relevant part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Therefore, to be subject to the FDCPA, the entity must be "a business the principal purpose of which is the collection of any debts," or one that "regularly collects or attempts to collect . . . debts . . . ." 15 U.S.C. § 1692a(6); *see Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208-09 (9th Cir. 2013); *Police v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).

Further, the Act specifies that the definition of "debt collector" "does not include" an entity that is "collecting or attempting to collect any debt . . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." § 1692(a)(6)(F)(iii).  Generally speaking, entities servicing or collecting a debt they were assigned before default are considered "*creditors*" under the Act.  A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

"The structure of the Act suggests that" an entity receiving or attempting to collect money due on a debt "must be one or the other," that is, either a debt collector or a creditor. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 539 (7th Cir. 2003); *see F.T.C. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."); *accord Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011).  In other words, creditors and debtors are generally "mutually exclusive" categories under the FDCPA. *Schlosser*, 323 F.3d at 536.

Provided the entity meets the basic criteria to be either a "debt collector" or a "creditor" under the FDCPA, the status of the entity (*i.e.*, debt collector versus creditor) in any given case is determined with respect to the particular debt at issue, and depends on the purpose for which the entity is assigned the debt. *See* 15 U.S.C. § 1692a(4) (excluding from definition of "creditor" a person who "receives an assignment or transfer of *a debt* in default *solely for the purpose of facilitating collection* of such debt for another") (emphasis added); *id.* § 1692(a)(6)(F)(iii)

90

(excluding from definition of "debt collector" a person who is collecting "any debt . . . to the extent such activity . . . (iii) concerns *a debt* which was not in default at the time it was obtained . . . .") (Emphasis added). "If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt." *Schlosser*, 323 F.3d at 536. "On the other hand, if [the entity] simply acquires the debt for collection, it is acting more like a debt collector." *Id.*[52]

"To distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment . . . ." *Schlosser*, 323 F.3d at 536; *see also* 15 U.S.C. § 1692a(4); *id.* § 1692(a)(6)(F)(iii). The Sixth Circuit has summarized the basic analysis as follows, *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012):

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.[] The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

*Accord Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013).[53]

Christiana, the party seeking to collect on the debt, did not originate the debt but instead acquired it through a transfer on or about June 11, 2013. Under these circumstances, the analysis

---

[52] Of course, an entity that does not also meet the general criteria defining "debt collector" in 15 U.S.C. § 1692a(6) would not be subject to the FDCPA even if it were assigned a debt already in default.

[53] Although the legal status of the debt itself is significant, it is not always dispositive. Under certain circumstances, in order to prevent absurd results, courts have looked to the entity's behavior with regard to the debt upon assignment. For example, an entity that mistakenly believes a debt was in default when the entity acquired the debt, and treats it as such, is not freed from the strictures of the Act by its own error. *Schlosser*, 323 F.3d at 358; *see also Bridge*, 681 F.3d at 362-63; *Gritters v. Ocwen Loan Servicing, LLC*, 14-C-00916, 2014 WL 74151682, at *4 (N.D. Ill. Dec. 31, 2014); *Belin v. Litton Loan Servicing, LP*, 8:06-cv-760-T-24 EAJ, 2006 WL 1992410, at *3 (M.D. Fla. July 14, 2006).

generally turns on whether the debt was in default at the time it was acquired.  When the Note was purportedly assigned to Christiana, the debt had long been in default.  Indeed, Mr. Howes had already sought Chapter 13 protection.  Given the default on the debt, Christiana would qualify as a debt collector under the FDCPA.  But, that does not end the analysis.

Although distinguishable, *Stewart v. Bierman, supra,* 859 F. Supp. 2d 754, is instructive. There, plaintiffs asserted that defendants violated the FDCPA and the Maryland Consumer Protection Act, C.L. §§ 13-201 *et seq.,* because law firm employees fabricated signatures on the order to docket foreclosure and other documents. In concluding that the signatures contained on the foreclosure documents were not material for the purposes of the FDCPA, Judge Titus stated, 859 F. Supp. 2d at 764:

> While the Court agrees that the Defendants' foreclosure practices were shortcuts that do not comply with the signature and acknowledgement requirements of the Maryland rules, the facts alleged by Plaintiffs do not rise to the level of materiality on which a FDCPA claim can be maintained. Although the trustee signatures are alleged not to be those of the Defendants, they are not actionable because they were not material. *See Warren* [*v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 374-75 (4th Cir. 2012)]. The Orders to Docket were correct in every way except that the signatures were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed. *See Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 332 (6th Cir. 2006) (rejecting plaintiff's argument that defendant's conduct violated Section 1692e because plaintiff "never denied in her complaint that she owed [defendant] a debt, nor did she claim that [defendants] misstated or misrepresented the amount that she owed"); *Johnson,* 2011 WL 4550142, at *10 ("To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim [because] insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e.") (quotation omitted).

Judge Titus relied on the same reasoning to dismiss plaintiffs' MCPA claim. Notably, he said: "The manner or procedure of affixing signatures to documents that are accurate in every other way except for the signature does not affect the accuracy of the underlying debt. . . . The actual process and method of affixing signatures to court documents is immaterial to a debtor

92

where the existence of the debt and a default are not disputed." *Id.* at 679.

In affirming the dismissal of the FDCPA and MCPA claims, the Fourth Circuit reasoned

in *Lembach*, 528 F. App'x at 303 (internal citation omitted):

> Although we do not look favorably upon improper behavior by attorneys, we ultimately cannot find that the misrepresentations [the substitute trustee] made are material because they have no connection to the debt at issue in this case. The Lembachs were unquestionably in default, and the documents correctly stated the debt. The Lembachs fail to allege how they, or any consumer, would be misled by a signature by someone other than the trustee that is affixed to a document that was substantively correct. We recognize the fact that the trustee's signature was required under the Maryland rules to file a foreclosure action. However, the fact that Maryland has adopted foreclosure regulations that address the particularities of filing a foreclosure action has no bearing on whether a signature is material under federal law. Because the signatures have no connection to the debt, and the Lembachs fail to show how the fraudulent signatures would mislead even the least sophisticated consumer, their claim fails.

Despite Christiana's status under FDCPA as a debt collector, dismissal of the FDCPA

claim as to Christiana was proper. As indicated, in the Complaint the Howes did not identify any

particular statement or affidavit submitted by Christiana in the bankruptcy case as false or

deceptive. This distinguishes the claims against Christiana from the claims against US Bank and

Wells Fargo. As to US Bank and Wells Fargo, plaintiffs alleged that US Bank and Wells Fargo

filed false affidavits in the First Foreclosure Case and in the Second Foreclosure Case.    In

contrast, the alleged deception committed by Christiana was merely an effort by Christiana to

prosecute the Amended Claim in the bankruptcy case, despite termination of the Trust. Apx. 50,

Complaint ¶ 126.

Once again, the theory of the liability rests on the faulty premise that because the Trust

was terminated, no adversary defendant, including Christiana, could claim ownership of the

Note. Plaintiffs suggest Christiana engaged in deceptive acts by not disclosing the termination of

the Trust. For the reasons already discussed, however, this argument is unavailing.   Therefore,

dismissal of the FDCPA claim as to Christiana was proper, because any failure to disclose the

93

termination of the Trust was not material.

**H.    Count VII – Maryland Consumer Debt Collection Act; Count VIII -- Maryland Consumer Protection Act**

Count VII alleges that Wells Fargo, US Bank, and Christiana violated the MCDCA, Md. Code (2013 Repl. Vol., 2014 Supp.), C.L. § 14-201 *et seq.* In Count VIII, plaintiffs allege that Wells Fargo and US Bank violated the MCPA, C.L. §§ 13-201 *et seq.* Both counts pertain to defendants' efforts to enforce the Note in the foreclosure cases and the bankruptcy case. In plaintiffs' view, US Bank, Wells Fargo, and Christiana allegedly sought to collect from the Howes amounts that they were not lawfully due, in violation of the MCDCA and MCPA. According to the Complaint, "as a proximate result of the Defendants' violations of the MCDCA [and MCPA], Plaintiffs have suffered damages, including emotional distress and mental anguish." Apx. 53, Complaint ¶ 141; Apx. 53-54, Complaint ¶ 143.

On appeal, the Howes clarify the particular facts alleged in the Complaint that pertain to Counts VII and VIII. ECF 18 at 15, Reply. In particular, the Howes complain, *inter alia*, that the Amended Claim contains "bogus foreclosure and inspection fees, and fails to credit all of Debtor's payments." Apx. 45, Complaint ¶ 96; *see also* Apx. 27-28, Complaint ¶ 22. They seek actual damages, attorneys' fees, and a reduction in the balance of the Note by way of recoupment, to the extent that plaintiffs' claims are otherwise barred by limitations.

The MCDCA prohibits certain enumerated actions by a debt collector in "collecting or attempting to collect" an "alleged debt arising out of a consumer transaction." C.L. §§ 14-201(b), 14-202; *see also* C.L. § 14-202(1)-(9) (enumerating prohibited actions). The statute authorizes a civil action against a collector "for any damages proximately caused by" a violation of the MCDCA, "including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." C.L. § 14-203.

94

The MCPA prohibits certain "unfair or deceptive trade practices." C.L. § 13-301. It contains a private right of action allowing a plaintiff "to recover for injury or loss sustained by him as the result of a practice prohibited by" the MCPA. C.L. § 13-408(a).   One of the "unfair or deceptive trade practices" prohibited by the MCPA is a violation of the MCDCA. *See* C.L. § 13-301(14)(iii). Here, plaintiffs' MCPA claims as to Wells Fargo and US Bank are expressly predicated on the alleged violation of the MCDCA. *See* Apx. 53, Complaint ¶ 143. Thus, it seems that, as to Wells Fargo and U.S. Bank, Counts VII and VIII stand or fall together.

To bring an action under C.L. § 13-408, a plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [him] actual injury." *Bierman, supra*, 859 F. Supp. 2d at 768 (citing *Lloyd v. Gen Motors Corp., supra*, 397 Md. at 143, 916 A.2d at 257).   Of particular relevance here, the MCPA requires an "actual injury." *Id.*

In *Citaramanis v. Hallowell*, 328 Md. 142, 151, 613 A.2d 964, 968 (1992), the Maryland Court of Appeals emphasized that because the MCPA's private right of action is limited to recovery of "injury or loss sustained," C.L. § 13-408, a "plaintiff pursuing a private action under the MCPA [must] prove actual 'injury or loss sustained'" in order to prevail. *Id.* at 151, 613 A.2d at 968 (citation omitted); *accord McDaniel v. Baranowski*, 419 Md. 560, 587–88, 19 A.3d 927, 943 (2011). Because the MCDCA's private right of action is similarly predicated on recovery of "damages proximately caused by" a violation of the statute, C.L. § 14-203, there is no basis to conclude that the Maryland courts would reach a different interpretation of the MCDCA. Thus, actual damages appear to be a necessary element under both statutes.

The decision of the Maryland Court of Appeals in *Lloyd v. Gen. Motors Corp., supra*, 397 Md. 108, 916 A.2d 257, is instructive.  There, the court stated, *id.* at 143, 916 A.2d at 277:

> This Court has held . . . that a private party suing under the Consumer
> Protection Act must establish "actual injury or loss." *Citaramanis v. Hallowell,*

328 Md. 142, 153-54, 613 A.2d 964, 969 (1992); *Morris v. Osmose,* 340 Md. 519, 538 n. 10, 667 A.2d 624, 635 n. 10 (1995); *McGraw v. Loyola Ford, Inc.,* 124 Md. App. 560, 581, 723 A.2d 502, 512 (1999), *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999). See Maryland Code, (1975, 2005 Replacement Vol.) § 13-408 of the Commercial Law Article ("any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title"). We have, in earlier cases, established that, in order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation. *Golt v. Phillips,* 308 Md. 1, 11-14, 517 A.2d 328, 333-335 (1986); *Citaramanis,* 328 Md. at 151-53, 613 A.2d at 968-70 (1992); *Morris v. Osmose,* 340 Md. at 538 n. 10, 667 A.2d at 635 n. 10 (1995); *McGraw v. Loyola Ford,* 124 Md.App. 560, 581, 723 A.2d 502, 512 (1999), *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999).

Here, plaintiffs contend that, as a result of the purported misrepresentations, they "have suffered damages, including emotional distress and mental anguish." Apx 52, Complaint ¶ 141. Judge Gordon noted that plaintiffs did not allege reliance on the purported misrepresentations.

A close review of plaintiffs' complaint reveals that their MCDCA and MCPA claims are couched in conclusory language, but are devoid of any factual detail as to the actual loss sustained as a result of the purported misrepresentations. They offer no facts to suggest that they paid any or all of the debt as a result of alleged misrepresentations. They also do not suggest that they are in default because of representations made by the adversary defendants. In the absence of any detrimental reliance on the basis of the purported misrepresentations, dismissal of the MCDCA and MCPA claims, without prejudice, was proper.

## I.      Count IX – Objection to Claim

Count IX is an "Objection to Claim," in which plaintiffs challenged the Amended Claim filed by US Bank and Wells Fargo in the bankruptcy case, but now owned by Christiana.   According to plaintiffs, U.S. Bank and Wells Fargo lacked standing to file the Amended Proof of Claim; failed to credit plaintiffs with all payments made; and sought fees and

other costs to which they are not entitled. Apx. 55, Complaint ¶ 146.[54] In view of the foregoing, plaintiffs asked the court to reject the Amended Proof of Claim or to reduce it by the amount of damages awarded under their Complaint.

Although "the existence of a claim is controlled by state law, the allowance or disallowance of a claim in bankruptcy is a matter of federal law" to be decided by the bankruptcy court in "an exercise of its equitable powers." *In re Johnson*, 960 F.2d 396, 404 (4th Cir. 1992). To guide this process, the Bankruptcy Code sets forth a burden-shifting framework to establish the amount and validity of a claim. Fed. R. Bankr. P. Rule 3001(f); *see In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004). The process commences with the filing of a proof of claim by a creditor. The proof of claim is the creditor's statement of the amount and character of the claim. Fed. R. Bankr. P. Rule 3001(a).

A proof of claim is considered *prima facie* evidence of the amount and validity of the claim. Fed. R. Bankr. P. Rule 3001(f); *see In re Reid*, No. 05-11977 NVA, 2007 WL 2898703, at *1 (Bankr. D. Md. Sept. 28, 2007), *aff'd sub nom. Reid v. Knarf Investments*, 353 F. App'x 786 (4th Cir. 2009); *In re Bird*, No. 03-52010-JS, 2007 WL 2684265, at *5 (Bankr. D. Md. Sept. 7, 2007); *In re Anderson*, 349 B.R. 448, 461 (E.D. Va. 2006. The burden then shifts to the debtor to object to the claim and to rebut the presumptive validity of the claim. *In re Bird*, 2007 WL 2684265, at *5; *In re Merry–Go–Round Enterprises*, 241 B.R. 124, 134 (D. Md. 1999).

The objection may be included in an adversary proceeding complaint, with other affirmative claims. Fed. R. Bankr. P. 3007(b); Fed. R. Bankr. P. 3007 advisory comm. nn. (2007)(stating that "[a] party in interest may [ ] include an objection to the allowance of a claim

---

[54] The allegations in Count IX parallel, in many respects, the allegations in Count II, requesting a "Determination of Scope, Extent and Validity of Lien."

in an adversary proceeding).   Nevertheless, the objecting party has the burden of "presenting sufficient evidence to overcome the prima facie effect of the filed proof of claim." *In re Dornier Aviation (N. Amierca) Inc.*, No. 02-8199-SSM, 2005 WL 4781236, at *11 (Bankr. E.D. Va. Feb. 8, 2005), *aff'd*, 453 F.3d 225 (4th Cir. 2006). "[I]f a debtor meets its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Harford*, 372 F.3d at, 640.

In this case, the Bankruptcy Court dismissed the Objection to Claim, without prejudice. Although Judge Gordon's rationale for dismissing this Objection to Claim was not explicit, he patently rejected plaintiffs' threshold argument that the Trust's termination precluded any of the adversary defendants from prosecuting a claim in the Chapter 13 case in connection with the Note.  But, he acknowledged the "confusion" as to the basis for Christiana's claim of ownership to the Note, and that the Howes may be entitled to certain reductions in the claim based on recoupment.  Apx. 226, Hearing of March 4, 2014.  As noted, he directed Christiana to file evidence in support of its claim of entitlement to enforce the Note. *Id.* at 229-230. And, he said that plaintiffs were entitled to lodge a challenge to the claim, through an amended complaint or an amended claim objection. *Id.*

The Bankruptcy Court did not err in permitting the purported holder of the Note to submit supporting documentation; the ruling was in keeping with the claims objection procedure set forth in Fed. R. Bankr. P. 3007(b). Accordingly, no error occurred in dismissal of the Objection of Claim, without prejudice.

### J.    Motions for Reconsideration

Fed. R. Civ. P. 59 governs a motion to amend judgment and is applicable in bankruptcy court pursuant to Fed. R. Bankr. P. 9023.  A motion for relief from judgment under Fed. R. Civ.

P. 60 is committed to the discretion of the bankruptcy court, pursuant to Fed. R. Bankr. P. 9024. Because Judge Gordon's rulings were not erroneous or incorrect as a matter of law, he neither erred nor abused his discretion in denying the Howes' motions for reconsideration.

## II.   Conclusion

For the foregoing reasons, I affirm the Bankruptcy Court's MTD Order entered on May 12, 2014, dismissing Count I, with prejudice, and Counts II through IX, without prejudice. I also affirm the Bankruptcy Court's Reconsideration Order entered on July 22, 2014, denying the Howes' motions for reconsideration. I also recognize that the Howes may have valid recoupment defenses warranting a reduction in the Amended Claim. As such, the Bankruptcy Court may grant the Howes leave to file an amended objection to claim.

In view of the foregoing, I shall lift the stay of plan confirmation, which was granted, pending the outcome of this appeal, by this Court's Order entered December 16, 2014. ECF 29.

A separate Order follows, consistent with this Memorandum Opinion.


Date:   September 30, 2015                        /s/
                                         Ellen L. Hollander
                                         United States District Judge

99

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY V. HOWES, *et al.*

    *Appellants,*

    v.

WELLS FARGO BANK, N.A., *et al.,*

    *Appellees.*

Civil Action No. ELH-14-2814

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion, it is this 30th day of September, 2015, by the United States District Court for the District of Maryland, ORDERED that:

1) The Motion to Strike filed by Wells Fargo and US Bank (ECF 20) is DENIED;

2) The Bankruptcy Court's Order entered May 12, 2014, and its Order entered July 22, 2014, are AFFIRMED. Therefore, the appeal (ECF 1) is DENIED;

3) The stay of plan confirmation pending the outcome of this appeal, granted by this Court's Order entered December 16, 2014 (ECF 29), is hereby lifted; and

4) The Clerk shall CLOSE THIS CASE.

                                      /s/
                                      Ellen Lipton Hollander
                                      United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

| | | |
|---|---|---|
| In re | : | |
| Jeffrey V. Howes, | : | |
| Debtor | : | |
| Jeffrey V. Howes, et al., | : | |
| Plaintiff- Appellants, | : | |
| vs. | : | Appeal No. 1:14-cv-02814-ELH |
| | | (Bankruptcy Case No. 12-30614 & Adv. |
| | | Proc. 13-00510) |
| Wells Fargo Bank N.A., et al., | : | |
| Defendant-Appellees | : | |

## NOTICE OF APPEAL TO UNITED STATES COURT
## OF APPEALS FOR THE FOURTH CIRCUIT

Jeffrey V. Howes and Tonya H. Howes, Plaintiff-Appellants herein, appeal to the United

States Court of Appeals for the Fourth Circuit from the Order of the United States District Court

for the District of Maryland, entered in this case on September 30, 2015, denying the appeal and

affirming the Bankruptcy Court's *Order Denying Plaintiffs' Motions to Reconsider Order*

*Dismissing Complaint and Objection to Ownership Affidavit*, entered July 22, 2014, and the

*Order Dismissing Complaint for Failure to State a Claim*, entered May 12, 2014.

The names of all parties to the judgment, order, or decree appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

Wells Fargo Bank, N.A., Defendant
U.S. Bank, National Association, Defendant
Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road

Towson, Maryland 21204
443-901-2360

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

Carrington Mortgage Services, LLC, Defendant
Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich
Mortgage Loan Trust, Series 2013-2, Defendant
Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707
*301-490-3361*

*Attorneys for Defendants Carrington Mortgage Services, LLC and Wilmington Savings Fund*
*Society, FSB.*

> Respectfully submitted,
> */s/ Robert J. Haeger, October 27, 2015*
> Robert J. Haeger, Bar No. 25434
> Attorney for Plaintiff-Appellants
> 11403 Seneca Forest Circle
> Germantown, MD 20876
> (888) 463-3520; bob@haegerlaw.com

2

## CERTIFICATE OF SERVICE

I hereby certify that, to the extent the following persons were not served electronically by the CM/ECF system, I caused a copy of the foregoing Notice of Appeal to be sent on October 27, 2015, by first class U.S. mail, postage prepaid, to:

Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, Maryland 21204

Michael T. Cantrell, Esquire
McCabe, Weisberg & Conway
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

*Attorneys for Defendants,*
*Wells Fargo Bank, N.A. and*
*U.S. Bank, National Association*

*Attorneys for Carrington Mortgage*
*Services, LLC and Wilmington Savings*
*Fund Society, FSB*

Ellen W. Cosby
Chapter 13 Trustee
300 E Joppa Road, #409
Baltimore, MD 21286

*/s/ Robert J. Haeger, October 27, 2015*
Robert J. Haeger

3



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

In re:                                    *

Jeffrey V. Howes                          *        Case No. 12-30614 RAG
                                                   Chapter 13
                                          *

        Debtor                            *

*     *     *     *     *     *     *     *     *     *     *     *     *

## ORDER DISMISSING CASE WITH PREJUDICE TO DEBTOR'S
## REFILING FOR TWENTY-FOUR MONTHS

On January 8, 2016, this Court entered an Interim Order Requiring Debtor to Escrow

Funds Pending Final Judgment in Adversary Proceeding (Order) [Dkt. No. 201]. Pursuant to the

Order, the Debtor is required to make certain specified payments to the Trustee on a timely basis.

The Order also provides that if the Debtor fails to timely make the payments, then the Trustee

shall give the Debtor notice of the asserted default and the Debtor would then have five days to

cure such default. Lastly, the Order provides that if the Debtor does not timely cure a default and

the Trustee files an affidavit that confirms the failure to cure, then the case shall be dismissed

with prejudice to the Debtor's ability to refile for bankruptcy protection for twenty-four (24)

months.

The Trustee filed three Lines [Dkt. No. 203, 204, and 207] alleging defaults by the Debtor for his failure to timely make, i) two of his $5,980 monthly plan payments, ii) the $155,840 escrow payment and iii) timely provide the Trustee copies of his 2013 and 2014 tax returns. The Lines were served on the Debtor and his counsel.  On March 2, 2016, the Trustee filed an Affidavit Regarding Material Default (Affidavit) [Dkt. No. 210].    The Affidavit indicates a new default, namely that the Debtor  failed to pay any of the $4,870 escrow payments required by the Order that are intended to compensate for his failure to make his regular monthly mortgage payments.  The Affidavit also indicates that the Debtor has not cured two of his earlier defaults i.e., the failure to pay the $155,840 into escrow and to supply his tax returns. Accordingly, it is by the United States Bankruptcy Court for the District of Maryland hereby

ORDERED, that this bankruptcy case is dismissed with prejudice to the Debtor's refiling for twenty-four (24) months from the date of entry of this Order; and

ALL PARTIES ARE HEREBY NOTIFIED that the automatic stay imposed by 11 U.S.C. § 362(a) is terminated.


cc:    Debtor
        Debtor's Counsel – Robert  Haeger, Esquire
        Trustee – Gerard Vetter, Esquire
        United States Trustee
        All Creditors




**End of Order**

Form ntcdsm

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### at Baltimore

**In re:   Case No.:   12−30614 RAG      Chapter:   13**

Jeffrey V Howes
Debtor(s)

### NOTICE OF DISMISSAL

TO: All Creditors and Interested Parties

You are hereby notified that an Order Dismissing the above case was entered on 3/4/16.

ALL PARTIES ARE HEREBY NOTIFIED, that the automatic stay imposed by 11 U.S.C. § 362(a) is terminated.

Dated: 3/4/16

Mark A. Neal, Clerk of Court
by Deputy Clerk, Shannon McKenna  301−344−3390